## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES,** ) | |
| ) | |
| **v.** ) | **Crim. No. 05-359-1, -2, -3 (RMU)** |
| ) | |
| **DOUGLAS JEMAL,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ALLEGED IN GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE RULE 404(b) EVIDENCE

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, hereby move this Court, pursuant to Federal Rules of Evidence 403 and 404(b), to exclude the evidence described in the Government's Notice of Intent to Introduce Evidence Under Fed. R. Evid. 404(b) ("404(b) Notice"). At this stage of the proceedings, approximately nine months prior to trial and prior to the completion of discovery, Defendants cannot address the accuracy of the government's description of the alleged 404(b) evidence. However, even accepting the allegations in the 404(b) Notice as true, the Court should exclude that alleged evidence because (1) it is pure propensity evidence offered to prove Defendants' bad character, and (2) even if relevant for a purpose other than criminal propensity, its probative value is substantially outweighed by the danger of unfair prejudice to Defendants. Alternatively, if the Court is not inclined to exclude the evidence at this time, Defendants respectfully request that the Court hold this motion in abeyance and permit Defendants to file a supplemental memorandum regarding these Rule 404(b) issues closer to trial, after discovery is complete and Defendants have been able to conduct a complete factual investigation regarding the allegations in the 404(b) Notice.

Defendants respectfully request oral argument on this motion.  A proposed Order is attached.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Erik L. Kitchen (D.C. Bar #292847)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4400

Counsel for Blake Esherick

Dated: January 18, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No.  05-359-1, -2, -3 (RMU) |
| | ) | |
| DOUGLAS JEMAL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE ALLEGED IN
GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE RULE 404(b) EVIDENCE

I.    INTRODUCTION

The Court should exclude the evidence alleged in the Government's Notice of
Intent to Introduce Evidence Under Fed. R. Evid. 404(b) ("404(b) Notice") pursuant to Federal
Rules of Evidence 404(b) and 403.  The government claims that most of the evidence at issue is
"inextricably intertwined" with the charged offenses and therefore admissible without
consideration of Rule 404(b).  However, the D.C. Circuit has narrowly defined the scope of the
"inextricably intertwined" doctrine to cover only acts that are direct evidence of the charged
offenses or contemporaneous uncharged acts that facilitated the commission of the charged
crimes.  United States v. Bowie, 232 F.3d 923, 927 (D.C. Cir. 2000).  None of the evidence at
issue meets this restrictive test.

When properly viewed as "extrinsic" to the charged offenses, the evidence at
issue must be excluded as improper character or propensity evidence that fails to satisfy any
legitimate nonpropensity purpose under Rule 404(b).  Moreover, even if some of the evidence
could satisfy Rule 404(b), the Court should nonetheless exclude the evidence pursuant to Rule

403 because its minimal probative value is substantially outweighed by the danger of unfair

prejudice to Defendants, confusion of the issues, and a burdensome "trial within a trial" on

tangential issues not alleged in the Indictment.[1]

## II.    BACKGROUND

Defendants are principals of the Douglas Development Corporation ("DDC"), a

company involved in developing, managing and leasing real estate owned by Defendant Douglas

Jemal and others.  Counts One through Three of the Indictment (the "Public Corruption Counts")

charge Defendants with conspiracy to commit bribery (Count One), bribery (Count Two), and

honest services mail fraud (Count Three).[2]  The Public Corruption Counts arise out of the

government's claim that Defendants provided Michael Lorusso, a former Deputy Director of the

District of Columbia's Office of Property Management, with several things of value as a "*quid

pro quo*" for various official acts primarily related to (a) the District's lease of and subsequent

unconsummated effort to purchase a vehicle impound lot at 4800 Addison Road, Capitol

Heights, Maryland, and (b) the District's lease of, and payment of invoices related to tenant

---

[1] Alternatively, if the Court is not inclined to exclude the evidence at this time, the Court should hold this motion in abeyance and permit Defendants to file a supplemental memorandum closer to trial after fully investigating the government's allegations.  The trial in this matter is currently scheduled for September 11, 2006.  At this early stage in the proceedings, Defendants and their counsel continue to review discovery that the government is providing on a rolling basis.  The allegations in the 404(b) Notice require further investigation to permit Defendants to address in greater detail their relevance (or lack thereof) to this proceeding.  Indeed, some of these allegations have not been previously disclosed by the government, and discovery relating to those allegations was not produced by the government until the week it filed the 404(b) Notice.  On January 6, 2006, Defendants' counsel requested specification of certain allegations in the 404(b) Notice.  See Letter from Brian M. Heberlig to Mark H. Dubester, dated January 6, 2006 (Exhibit A).  The government failed to respond to this request.

[2] Count Four alleges against Defendant Esherick only a violation of D.C. fraud statutes, D.C. Code §§ 22-3221(a) & 22-3222(a)(1), based on a small subset of the allegations in the Public Corruption Counts.

improvements at, commercial office space in a building at 77 P Street, N.E., Washington, D.C.
See Indictment at 5-8 (¶¶ 15-16), 14-15, and 17 (¶ 4).  Count Five (the "Wire Fraud Count")
alleges an unrelated wire fraud scheme in which Defendants allegedly submitted false and
fraudulent documents to the lender of the commercial loan for 77 P Street in order to obtain
leasing commissions.  Id. at 23-24 (¶¶ 11-12).  Counts Six through Eight (the "Tax Evasion
Counts") allege that during 2001, 2002 and 2003, Defendants Douglas Jemal and Esherick
willfully evaded income taxes by failing to report certain payments as income to Esherick.  Id. at
28-39.

In the 404(b) Notice, the government seeks the Court's permission to introduce
evidence regarding several events that are not charged in the Indictment.  The government
contends that the majority of evidence at issue is admissible as "inextricably intertwined" with
the charged offenses and therefore not subject to Rule 404(b), including:

- "All the acts of the defendants in the nature of direct dealings with Lorusso
  and the DC Government concerning Addison Road and 77 P Street during the
  time of the conspiracy," 404(b) Notice at 3, such as:

  - "[R]equests to have Lorusso sign or prepare documents to
    assist the defendants in connection with loans secured by those
    properties or in connection with zoning issues," id.;

  - The "submission of invoices or correspondence prepared by the
    defendants to Lorusso or the DC Government seeking
    miscellaneous payments . . . ," id.;

  - "[D]iscussions with Lorusso of means of committing fraud
    against the DC Government," id.; and

  - Defendants providing things of value to Lorusso's subordinate
    and a former city official.  Id.;

- Alleged efforts to assist Defendant Esherick in the evasion of taxes in 1998
  through 2000 and 2004 -- years prior and subsequent to the years covered by
  the Tax Evasion Counts.  Id. at 4;

- Alleged actions to increase Defendant Esherick's reported compensation in 2005, and the payment of certain obligations by Defendant Esherick that had been paid previously by DDC -- subsequent to the last tax year covered by the Tax Evasion Counts.  Id. at 4-5; and

- Allegations relating to 4800 Addison Road, including a Prince George's County zoning proceeding and an insurance fraud scheme, in which Defendants allegedly "double billed" the D.C. government for tenant improvement costs for which it also sought reimbursement from an insurance company in a claim relating to fire damage on the property.  Id. at 9-12.

With respect to some of this evidence, the government contends in conclusory fashion that even if the evidence is not "inextricably intertwined" with the charged crimes, it is admissible under Rule 404(b).  See 404(b) Notice at 8, 14 n.14.

The government further contends that the Court should admit additional evidence of uncharged criminal activity or "bad acts" pursuant to Rule 404(b), including:  (a) Defendant Douglas Jemal's alleged efforts to assist two DDC employees not charged in the Indictment to evade taxes, see 404(b) Notice at 18-21; and (b) Defendants' alleged use of MTD Real Estate Services -- the entity involved in the Wire Fraud Count -- to perpetrate a fraud on Douglas Jemal's business partner by obtaining construction management fees relating to another property that is not at issue in the Indictment.  Id. at 30-31.

As set forth below, none of the alleged evidence proffered by the government in the 404(b) Notice is admissible in this case.

## III.    ARGUMENT

### A.    None Of The Evidence At Issue Is Admissible As "Inextricably Intertwined" With The Charged Offenses

The government's attempt to admit broad categories of uncharged conduct as "inextricably intertwined" with the charged offenses is precluded by controlling D.C. Circuit authority.  In United States v. Bowie, 232 F.3d 923 (D.C. Cir. 2000), the D.C. Circuit was

- 4 -

sharply critical of the government's effort to bypass the requirements of Rule 404(b) by labeling evidence "inextricably intertwined" with the charged offenses, noting that "the only consequences of labeling evidence 'intrinsic' are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction." Id. at 927-28. The court also recognized the "danger that finding evidence 'inextricably intertwined' may too easily slip from analysis to mere conclusion." Id. at 927-28. The court specifically rejected as "overbroad" formulations by other circuits that consider evidence "'intrinsic'" if it would "'complete the story'" or "'explain the circumstances,'" stating that "all relevant prosecution evidence explains the crime or completes the story." Id. at 929. Given these concerns, the D.C. Circuit construed the "inextricably intertwined" doctrine as applying only "in a narrow range of circumstances," such as to "an act that is *part of* the charged offense" or "uncharged acts performed *contemporaneously* with the charged crime . . . *if they facilitate* the commission of the charged crime." Id. (emphasis added); see also United States v. Alexander, 331 F.3d 116, 125-26 (D.C. Cir. 2003) (confirming "narrow" scope of intrinsic evidence exception to Rule 404(b)).

The government virtually ignores Bowie in the 404(b) Notice and relies instead on earlier D.C. Circuit cases.[3] However, those cases simply confirm the narrow scope of the "inextricably intertwined" doctrine in the D.C. Circuit. For instance, in United States v. Badru, 97 F.3d 1471 (D.C. Cir. 1996), where the defendants were charged with conspiracy to distribute heroin, the court held that evidence of the defendants' involvement in smuggling the heroin that

---

[3] The government also relies upon several out-of-circuit cases in which courts admitted evidence as "inextricably intertwined" with the charged offenses. See 404(b) Notice at 2 n.2. These cases are unpersuasive because they use formulations of the "inextricably intertwined" evidence doctrine, such as the "'complete the story'" or "'explain the circumstances'" exceptions to Rule 404(b), that the D.C. Circuit has explicitly rejected. See Bowie, 232 F.3d at 928-29.

they distributed was not "other crimes" evidence but merely direct proof of acts in furtherance of the charged conspiracy, because defendants "had to obtain heroin from a source before they could distribute it." Id. at 1474-75; see also United States v. Allen, 960 F.2d 1055, 1058 (D.C. Cir. 1992) (where defendant was charged with possession of narcotics with intent to distribute, evidence that defendant watched his co-defendant sell the narcotics at issue was not "other crimes" evidence but merely "an intrinsic part of the witness' account of the circumstances surrounding the offense").

        These controlling standards preclude the admission of any of the evidence alleged in the 404(b) Notice as "inextricably intertwined" with the charged offenses. The government first contends that all of Defendants' "direct dealings with Lorusso and the DC Government concerning Addison Road and 77 P Street during the time of the conspiracy are intrinsically part of the conspiracy" even if not charged in the Indictment. 404(b) Notice at 3. The government's formulation is overbroad and conclusory. The bribery conspiracy alleged in Count One alleges that Defendants gave things of value to Lorusso in order to influence Lorusso's official acts or induce Lorusso to do or omit to do acts in violation of his official duties. Indictment at 4 (¶ 13). Not every dealing between Lorusso and Defendants regarding the properties at issue involved bribery. In fact, the government's description of the actions that it contends fall within this broad category of "dealings" with Lorusso and the D.C. Government reveals conclusively that the acts at issue are not "intrinsic" to the charged conspiracy.

        Specifically, the Court should reject the government's claim that Defendants' actions in allegedly providing items of value to Lorusso's subordinate and a former city official are somehow "intrinsic" to the charged conspiracy to bribe Lorusso, a single D.C. government

- 6 -

official.  See 404(b) Notice at 3.[4]  Alleged gifts to other government officials fall outside the

scope of the charged conspiracy.  Moreover, the government nowhere alleges that either of the

other government officials at issue performed any official acts as a "*quid pro quo*" for the alleged

items of value, further revealing that these allegations were not part of the charged bribery

conspiracy.  Similarly, Defendants' alleged "discussions with Lorusso of means of committing

fraud against the DC Government," which the government does not contend involved the bribery

scheme alleged in the Public Corruption Counts, cannot be deemed "intrinsic" to the charged

offenses.  See 404(b) Notice at 3.[5]

Equally unpersuasive is the government's claim that evidence of alleged tax

evasion activities relating to the compensation of Defendant Esherick prior to 2001 and

subsequent to 2003 is "intrinsic" to the Tax Evasion Counts, which allege tax evasion in tax

years 2001, 2002 and 2003.  See 404(b) Notice at 4-5.  The government's claim is directly

refuted by Bowie.  In that case, where the defendant was charged with possession of counterfeit

currency, the D.C. Circuit held that evidence of the defendant's possession of counterfeit

currency one month prior to the events in the indictment was not "intrinsic" to the charged

offense.  232 F.3d at 929.  Similarly, evidence that Defendants allegedly assisted Esherick evade

---

[4] It bears noting that the alleged "items of value" are *de minimus*.  The government alleged in its letter responding to Defendants' request for particulars that Defendants provided (a) Lorusso's subordinate with a ticket to an event at the MCI Center, and (b) the former city official with a cell phone (which documents in discovery indicate was actually a cell phone accessory).

[5] Other actions described by the government, such as Defendants' alleged "requests to have Lorusso sign or prepare documents" and Defendants' submission of invoices for "miscellaneous payments," are too vague to meaningfully address.  See 404(b) Notice. However, it is difficult to imagine that the government will be able to prove that such routine acts were part of an explicit "*quid pro quo*," as required to satisfy the bribery statute.

taxes prior to 2001 or subsequent to 2003 cannot conceivably be "intrinsic" to the charged

offenses that the Defendants Douglas Jemal and Esherick evaded taxes in 2001, 2002 and 2003.[6]

   Finally, the government's allegations regarding an insurance fraud scheme and a

zoning proceeding relating to the 4800 Addison Road property are not "intrinsic" to the bribery

scheme alleged in the Public Corruption Counts.  The government's claim that Defendants'

submission of expenses to Prince George's County in connection with a zoning proceeding is

"intrinsic" to the bribery scheme is vague and unclear.  That Defendants sought to obtain a

permit to use the 4800 Addison Road property as an impound lot is hardly surprising given that

an impound lot was the intended use of its tenant, the District of Columbia.  Nor is it unusual that

Defendants sought to establish reliance on the impound lot permit when the Prince George's

County officials claimed that the permit had been issued in error.  These events appear to have

nothing to do with whether Defendants bribed Lorusso, and are certainly not "intrinsic" to any of

the Public Corruption Counts.  The government further contends that a claim for reimbursement

of construction costs at 4800 Addison Road submitted by Defendants to the D.C. government

"closely track[ed]" the claims of costs submitted to Prince George's County, including certain

allegedly inflated labor costs, and that proof of the creation of the D.C. government claim

"requires proof of the creation of the similar document" for Prince George's County.  404(b)

Notice at 11.  This contention appears to be little different than the "complete the story" or

---

  [6] The cases cited by the government in support of its contention that the pre-2001 and
post-2003 tax evasion evidence is "intrinsic" to the charged offenses are inapposite or
unpersuasive.  See 404(b) Notice at 6-7.  The principal case on which the government relies,
United States v. Bok, 156 F.3d 157 (2d Cir. 1998), did not involve "inextricably intertwined"
evidence at all, but rather an analysis of whether the evidence at issue was admissible under Rule
404(b).  Bok, 156 F.3d at 165; see also United States v. Farber, 630 F.2d 569, 571 (8th Cir.
1980) (case involved Rule 404(b), not "inextricably intertwined" doctrine).  To the extent the
other out-of-circuit cases cited by the government deemed the evidence at issue intrinsic to the
charged tax evasion offenses, such cases are unpersuasive in light of the D.C. Circuit's restrictive
interpretation of the "inextricably intertwined" doctrine.  See Bowie, 232 F.3d at 927-28.

"explain the circumstances" exceptions to Rule 404(b) that the D.C. Circuit has squarely rejected. See Bowie, 232 F.3d at 929.

The government's allegations regarding an insurance fraud scheme at 4800 Addison Road fare no better. The government alleges that following a fire in the warehouse at the 4800 Addison Road property, the Defendants submitted an insurance claim in which they "double billed" certain construction costs to the insurance company that were also billed to the D.C. government or fraudulently billed the insurance company for expenses that DDC did not incur. The insurance claim was not submitted to the D.C. government and did not involve Lorusso in any respect. On its face, evidence of this separate scheme to defraud an insurance company is not "intrinsic" to the bribery scheme alleged in the Public Corruption Counts.

In sum, none of the evidence proffered by the government in the 404(b) Notice is "inextricably intertwined" with the offenses charged in the Indictment. When considered under the proper Rule 404(b) and 403 analysis, the Court should exclude the evidence at issue, as set forth below.

### B.     The Court Should Exclude The Evidence Alleged In The 404(b) Notice Pursuant To Federal Rules Of Evidence 404(b) And 403

#### 1.     Applicable Legal Standards

Under Rule 404(b), "other acts" evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) (emphasis added).[7] "The threshold inquiry a court must make before admitting similar acts evidence under

---

[7] Rule 404(b) provides in full:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other

Rule 404(b) is whether that evidence is probative of a material issue other than character."

Huddleston v. United States, 485 U.S. 681, 686 (1988).  These principles are based on the

presumption of innocence and the recognition that "[i]t is fundamental to American

jurisprudence that 'a defendant must be tried for what he did, not for who he is.'"  United States

v. Foskey, 636 F.2d 517, 523 (D.C. Cir. 1980) (citation omitted).  "The exclusion of bad acts

evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries

will tend to give it excessive weight, and on a fundamental sense that no one should be convicted

of a crime based on his or her previous misdeeds."  United States v. Daniels, 770 F.2d 1111,

1116 (D.C. Cir. 1985).

        Although the D.C. Circuit has described Rule 404(b) as a rule of inclusion rather

than exclusion, Bowie, 232 F.3d at 929, it has also "repeatedly emphasized the narrow scope of

the 'bad acts' evidence exceptions under Rule 404(b) . . . and the continuing applicability of the

Rule 403 limitation on unduly prejudicial evidence even if an exception is satisfied."  United

States v. Nicely, 922 F.2d 850, 856 (D.C. Cir. 1991).  To satisfy Rule 404(b), the evidence of

other crimes or acts must be (a) relevant under Fed. R. Evid. 401, (b) related to "a matter in issue

other than the defendant's character or propensity to commit crime," and (c) "sufficient to

support a jury finding that the defendant committed the other crime or act."  Bowie, 232 F.3d at

930.  "[S]uch evidence is never admissible unless it is '*necessary'* to establish a material fact

---

> purposes, such as proof of motive, opportunity, intent, preparation,
> plan, knowledge, identity, or absence of mistake or accident,
> provided that upon request by the accused, the prosecution in a
> criminal case shall provide reasonable notice in advance of trial, or
> during trial if the court excuses pretrial notice on good cause
> shown, of the general nature of any such evidence it intends to
> introduce at trial.

Fed. R. Evid. 404(b).

such as 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" United States v. Shelton, 628 F.2d 54, 56 (D.C. Cir. 1980) (emphasis added) (footnote omitted).

        Even if the evidence at issue is offered for a legitimate, nonpropensity purpose under Rule 404(b), it should still be excluded pursuant to Rule 403 if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. For the purposes of Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997). The D.C. Circuit has recognized that there are "unique dangers of unfair prejudice associated with evidence of other bad acts," United States v. Lavelle, 751 F.2d 1266, 1275 (D.C. Cir. 1985), and that such evidence creates "enormous danger of prejudice to the defendant" because "juries are prone to draw illogical and incorrect inferences from such evidence." Shelton, 628 F.2d at 56; see also Bowie, 232 F.3d at 931 ("Evidence of other crimes or acts having a legitimate nonpropensity purpose undoubtedly may contain the seeds of a forbidden propensity inference" and thus may be barred under Rule 403).

        Courts should also exclude "other acts" evidence pursuant to Rule 403 if its introduction will create a "trial within a trial," United States v. Aboumoussallem, 726 F.2d 906, 912 (2d Cir. 1984) (quotation marks omitted), or if the government is likely to spend more time "dealing with alleged wrongful conduct not covered by the indictment than . . . dealing with the incidents" for which the defendant is charged. United States v. Jones, 570 F.2d 765, 769 (8th

- 11 -

Cir. 1978); see also United States v. Dennis, 625 F.2d 782, 796-97 (8th Cir. 1980) ("Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues.").

> ### 2.    Alleged Uncharged Evidence Purportedly Relating To The "Fraud/Bribe Scheme Against The DC Government"

The Court should exclude the evidence alleged in the 404(b) Notice under the heading "The Fraud/Bribe Scheme Against the DC Government" as not offered for a proper purpose under Rule 404(b). See 404(b) Notice at 2-3. The government contends only that this evidence is "inextricably intertwined" with the charged bribery conspiracy -- an unfounded proposition for the reasons set forth above. Id. The government does not contend that the evidence is admissible under Rule 404(b), and does not set forth any legitimate nonpropensity purpose justifying the admission of these uncharged acts. For this reason alone, the Court should exclude the evidence.

Moreover, there is no legitimate nonpropensity purpose that the government could have identified to justify the admission of the evidence. As set forth above, much of the evidence described by the government -- i.e. all "dealings" with Lorusso and the D.C. government concerning the 4800 Addison Road and 77 P Street properties -- is too overbroad or conclusory to meaningfully address. However, the specific examples alleged by the government as falling within this broad category are inadmissible. For instance, there is no legitimate Rule 404(b) purpose for which the Court could admit the alleged evidence that Defendants provided things of value to Lorusso's subordinate and a former city official. Such evidence is not relevant to Defendants' intent in connection with the charged bribery scheme because of the significant differences in the two allegations. "'[W]hen a prior criminal act is relied upon to prove intent or

knowledge, similarity between the two events must be shown to establish the threshold requirement of relevance.'" United States v. Foskey, 636 F.2d 517, 524 (D.C. Cir. 1980). Here, in the Public Corruption Counts, Defendants are charged with bribing Lorusso by providing him with several things of value purportedly as a "*quid pro quo*" for several official acts. In contrast, the government has identified no "official acts" performed by Lorusso's subordinate or the former city official in exchange for the alleged things of value. Moreover, the *de minimus* nature of the items of value -- a ticket to an MCI center event (allegedly provided to Lorusso's subordinate) and a cell phone accessory (allegedly provided to the former city official) -- suggest that the conduct at issue may not be any crime at all, let alone a crime similar to the bribery scheme charged in the Public Corruption Counts.

Likewise, Defendants' alleged "discussions with Lorusso of means of committing fraud against the DC Government" are inadmissible propensity or character evidence. 404(b) Notice at 3. Although the government does not identify the substance of these alleged discussions, the government does not contend that Defendants had discussions with Lorusso relating to the honest services fraud or bribery scheme alleged in the Indictment. Without more information, it is difficult for Defendants to address the relevance of this evidence. On its face, however, it appears that such evidence would lead the jury to draw the impermissible conclusion that if Defendants discussed committing uncharged fraud against the D.C. government, it is more likely that they engaged in the fraud charged in the Indictment.

Finally, even if this evidence satisfied a proper purpose under Rule 404(b), the Court should exclude it pursuant to Rule 403 because the danger of unfair prejudice to Defendants substantially outweighs any minimal probative value of the evidence. For instance, even if the evidence that Defendants allegedly provided token gifts unconnected to any official

acts could be deemed tangentially relevant to the bribery scheme alleged in the Public Corruption

Counts, the probative value of that evidence is far outweighed by the risk that the jury would

improperly conclude that these alleged gifts are tantamount to bribery.  Similarly, evidence that

Defendants had discussions with Lorusso of means of committing unrelated fraud on the D.C.

government certainly appears to "contain the seeds of a forbidden propensity purpose" even if it

could be deemed somehow to have a nonpropensity purpose.  See Bowie, 232 F.3d at 931.

### 3.    Alleged Uncharged Tax Evasion

The government seeks to admit three categories of alleged uncharged tax evasion:

(a) evidence that Douglas Jemal compensated Esherick in 1998 through 2000 and in 2004, tax

years prior and subsequent to those at issue in the Tax Evasion Counts, in ways that were not

reported to the IRS, see 404(b) Notice at 4; (b) evidence that in 2005, Douglas Jemal increased

Esherick's salary and stopped paying for certain of Esherick's personal expenses, id. at 5; and

(c) evidence that Douglas Jemal compensated two other senior DDC employees in ways that

were not reported to the IRS.  Id. at 18-21.  The Court should exclude all of this evidence.

### a.    Any Remedial Measures By Defendants Subsequent To The Last Charged Year Of Tax Evasion Are Inadmissible

The Court should exclude any evidence regarding Esherick's compensation in

2005, two years after the last charged tax year, as irrelevant to whether Defendants intended to

evade taxes in prior years and highly prejudicial.  404(b) Notice at 5.  The government alleges

that in January 2005, after Defendants were "put on notice of the tax aspects of this

investigation," Douglas Jemal increased Esherick's salary and Esherick thereafter began

personally paying for certain expenses that had previously been paid by DDC.  Id. at 6.  The

government concedes that this conduct "is not a 'bad act' at all," but contends that it is "relevant

as evidence of the true intended compensation by Douglas Jemal of Esherick during the 'charged' years." Id. The government's claim has no merit, and the Court should exclude this irrelevant evidence.

The government cites no case in which a court deemed admissible evidence that a defendant charged with tax evasion stopped engaging in the tax evasion conduct alleged in the indictment subsequent to the charged tax years or after receiving notice of a government investigation. The government cites out of context a quote from the principal case upon which it relies, United States v. Bok, 156 F.3d 157, 166 (2d Cir. 1998), to suggest that the court admitted evidence of post-offense remedial conduct. In fact, in Bok, the court admitted, pursuant to Rule 404(b), evidence that the defendant *failed* to file tax returns in years subsequent to those charged in the indictment as evidence that he intended to evade taxes in the prior years charged in the indictment. Bok, 156 F.3d at 165-66. Other cases cited by the government similarly involved evidence that the defendant *continued to evade taxes* in years subsequent to the charged tax years. See United States v. Ebner, 782 F.2d 1120, 1126 n.7 (2d Cir. 1986) (defendants failed to file taxes in subsequent years); United States v. Farber, 630 F.2d 569, 571 (8th Cir. 1980) (evidence involved tax protest materials reflecting a failure to pay taxes in subsequent years); United States v. Ausmus, 774 F.2d 722, 728 (6th Cir. 1985) (evidence involved continued tax evasion in subsequent years).

Any post-offense conduct by Defendants that the government concedes was not a "bad act" or itself evidence of tax evasion is necessarily not part of any common plan or scheme to evade taxes. The government's claim that efforts to act conservatively or otherwise take remedial measures after a defendant is placed on notice of an investigation are relevant to proving a defendant's intent with respect to prior conduct is unpersuasive. Moreover, if such

evidence was admissible, it would create perverse incentives and penalize an individual for efforts to address the concerns of government regulators. Any minimal relevance of such evidence is far outweighed by its potential prejudice to a defendant and confusion of the issues.

In an analogous case, a court rejected the government's claim that a taxpayer's filing of an amended tax return established fraudulent intent with respect to the original tax return. The court noted that the filing of an amended tax return was "not an admission of fraud" and was encouraged by the taxing authorities. United States v. Dyer, 922 F.2d 105, 108 (2d Cir. 1990). The court further held: "[a]t most, filing an amended return indicates that the taxpayer *now* believes he was mistaken at the time he filed the original return; in no way does it shade that minimal assumption toward proof of the requisite fraudulent intent" when filing the original return. Id. Similarly, in this case, any evidence that Douglas Jemal and Esherick changed the manner in which Esherick was compensated in years following the Tax Evasion Counts is irrelevant to proving whether they willfully intended to evade taxes years earlier.

Even if the evidence could be deemed relevant, its minimal probative value is substantially outweighed by the danger of unfair prejudice to Defendants. In an analogous civil context, "courts have held that where a person is charged with engaging in an intentional act alleged to violate the law, that person's subsequent decision to abandon the allegedly lawless conduct is a 'remedial measure' under [Federal Rule of Evidence] 407"[8] and hence inadmissible.

---

[8] Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another

23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5284 (1980)

(collecting cases).  For example, in Malone v. Microdyne Corp., 26 F.3d 471, 480 (4th Cir.

1994), a securities fraud case, the Fourth Circuit held that the defendant's Form 10-K Annual

Report, which was filed with the SEC after the allegedly misleading statements at issue in prior

filings, was properly excluded by the district court under Rule 407.  The plaintiffs argued that the

Form 10-K included a disclosure that should have been included in two previous quarterly SEC

filings, and that the document was admissible "as evidence of 'an admission of a hotly contested

fact'" in the case.  26 F.3d at 480.  The court disagreed, finding that "[t]he potential prejudice

from introducing the Form 10K is clear:  jurors likely would view its disclosure . . . as proof of

culpable conduct, akin to a landlord's fixing a stairway after being sued by an injured tenant."

Id.  In addition, the court noted, "[t]he probative value of the Form 10-K for other purposes is

dubious."  Id.; see also Krouner v. Am. Heritage Fund, 899 F. Supp. 142, 147 (S.D.N.Y. 1995)

(in securities fraud case, the court declined to consider a prospectus issued by the defendant in

the year subsequent to the prospectus at issue in plaintiff's complaint); SEC v. Geon Indus., Inc.,

531 F.2d 39, 52 (2d Cir. 1976) (applying Rule 407).

       Similarly, the Court should exclude any evidence that Defendants changed the

manner in which Esherick was compensated subsequent to the years charged in the Tax Evasion

Counts because the government seeks to offer such conduct as evidence of Defendants' culpable

conduct in prior years, a purpose that the policy behind Rule 407 clearly prohibits.  Such

evidence presents a grave danger that jurors would improperly conclude that Defendants changed

their behavior after being put on notice of a government investigation because they believed their

---

       purpose, such as proving ownership, control, or feasibility of
       precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407.

prior conduct was unlawful -- much like the improper inference that could be drawn from "a landlord's fixing a stairway after being sued by an injured tenant." <u>Microdyne</u>, 26 F.3d at 480. In fact, Defendants could have lacked any criminal intent to evade taxes during the years at issue in the Tax Evasion Counts, but modified their conduct after receiving notice of the investigation so as to be conservative, eliminate any doubt and satisfy the concerns of the government.

For these reasons, the Court should exclude any evidence of Defendants' post-offense conduct in 2005 as irrelevant and prejudicial.

### b.    Alleged Tax Evasion Involving Esherick's Compensation In Years Prior And Subsequent To The Charged Tax Years

The Court should also exclude any evidence of purported uncharged tax evasion activities relating to the manner in which Esherick was compensated in 1998 through 2000 and 2004 -- years prior and subsequent to the tax years charged in the Indictment. The government contends that this evidence is relevant to prove Defendants' intent. 404(b) Notice at 8.

The Court should exclude this evidence pursuant to Rule 403 because the evidence would result in undue delay, waste of time and needless presentation of cumulative evidence. Fed. R. Evid. 403. The government will be able to present substantial evidence of the manner in which Esherick was compensated during the charged tax years -- 2001, 2002 and 2003. The fact that Esherick was allegedly compensated in virtually the same manner during the three years charged in the Tax Evasion Counts precludes any argument that the form of Esherick's compensation was inadvertent or an isolated event. Therefore, the presentation of a significant volume of additional evidence regarding Esherick's compensation in uncharged years has little probative value. Whatever probative value such evidence possesses is substantially outweighed by the waste of time and delay that would result from the presentation of such cumulative evidence.

- 18 -

####      c.      Alleged Tax Evasion Involving Two DDC Employees Not
              Named As Defendants In The Indictment

The Court should also exclude any uncharged tax evasion evidence relating to the

manner in which Douglas Jemal allegedly compensated two senior DDC employees not charged

as defendants in the Indictment.  The government contends that Douglas Jemal compensated

these individuals in ways that were not reported to the IRS, and that such evidence is relevant to

proving a common plan or scheme or Douglas Jemal's intent.  Rule 404(b) Notice at 18-24.

At the outset, it is far from clear based on the Rule 404(b) Notice that the

allegations regarding these other DDC employees are sufficiently closely related to the Tax

Evasion Counts to justify admission of the evidence under Rule 404(b).  See United States v.

Long, 328 F.3d 655, 661 (D.C. Cir. 2003).  From the government's description of the evidence, it

appears that each of the executives at issue had their own personal compensation arrangement

with Douglas Jemal.  These arrangements took different forms and involved different types of

payments.  Thus, the evidence of these other compensation arrangements is not relevant to

establishing whether Douglas Jemal intended to assist Esherick in evading taxes.

In any event, even if relevant, the Court should exclude this evidence pursuant to

Rule 403 because of the waste of time and delay that would result from the presentation of such

evidence.  As set forth above, "other acts" evidence should be excluded pursuant to Rule 403 if

its introduction will create a "trial within a trial," United States v. Aboumoussallem, 726 F.2d

906, 912 (2d Cir. 1984) (quotation marks omitted), or if the government is likely to spend more

time "dealing with alleged wrongful conduct not covered by the indictment than . . . dealing with

the incidents" for which the defendant is charged.  United States v. Jones, 570 F.2d 765, 769 (8th

Cir. 1978).  Here, the government seriously underestimates the length of time it will take to

present this evidence at trial.  See 404(b) Notice at 26.  The evidence regarding the compensation

of Defendant Esherick alone will be substantial and require significant trial resources, including analysis of detailed accounting records, personal expenses and IRS records.  Permitting the government to introduce the evidence of how two other DDC employees were compensated will take more time and resources than proving Esherick's compensation and distract the jurors from the real issues in this case.  Accordingly, the Court should exclude this evidence pursuant to Rule 403.

Finally, the Court should also exclude this evidence because it is admissible (if at all) only against Defendant Douglas Jemal, and its admission in this multi-defendant trial would cause substantial prejudice to Defendants Norman Jemal and Esherick that cannot be cured by any limiting instruction.  The government acknowledges that the evidence at issue is "directly aimed at Douglas Jemal" and does not contend that it is admissible against any other defendant. 404(b) Notice at 24.  The government's claim that any prejudice to the other defendants from the admission of this evidence can be cured by a limiting instruction is unpersuasive under the facts of this case.

In <u>United States v. Figueroa</u>, 618 F.2d 934 (2d Cir. 1980), the court reversed the convictions of two defendants based in part on the prejudice that they incurred from the government's introduction of Rule 404(b) evidence improperly admitted against a co-defendant. The court noted that when considering the admissibility of prior act evidence in a joint trial, "limiting instructions cannot be regarded as a guaranty against prejudice . . . ." 618 F.2d at 946. In particular, the court stated, a limiting instruction does not cure the prejudicial spill over of such evidence where "evidence of a defendant's prior act . . . tends to prove directly, or even by strong implication, that the co-defendants also participated in the prior act." <u>Id.</u>  In such a case,

"the danger of unfair prejudice to co-defendants may be so great that the prosecution must be put to a choice of forgoing either the evidence or the joint trial." Id. at 945.

Similarly, in this case, evidence that Douglas Jemal assisted other DDC employees evade taxes would strongly implicate that Defendants Norman Jemal and Esherick participated in the act. The government has already alleged that Norman Jemal "assisted" the tax evasion scheme involving Esherick. See 404(b) Notice at 4 n.5. The government has also characterized the individuals at issue as the "critical employees" of DDC, a small, private corporation that is operated in many respects like a family business. It would take no small leap for the jury to improperly infer that Defendants Norman Jemal and Esherick participated in the conduct involving the other DDC employees if the evidence was admitted against Douglas Jemal. No limiting instruction would effectively prevent the jury from reaching this improper conclusion or cure the prejudicial spill over caused by this evidence.

    **4.**    **Alleged Uncharged Evidence Relating To The 4800 Addison Road Property**

The Court should exclude the evidence alleged in the 404(b) Notice relating to 4800 Addison Road, which consists of: (a) acts relating to a zoning proceeding in Prince George's County regarding an application for a permit to use the property as an impound lot, and (b) an insurance fraud scheme relating to a warehouse fire on the property. Even taking the government's allegations in the 404(b) Notice on their face, this evidence is irrelevant or prejudicial and hence inadmissible.

    **a.**    **Evidence Regarding The Prince George's County Zoning Proceeding Is Irrelevant**

The evidence relating to the Prince George's County zoning proceeding is simply irrelevant to this case. The Indictment identifies the following "official acts" related to 4800

Addison Road that were allegedly performed by Lorusso in exchange for things of value:
(a) causing D.C. to lease 4800 Addison Road for use as an impound lot, (b) attempting to cause
D.C. to purchase 4800 Addison Road at an inflated value, (c) causing D.C. to pay an allegedly
fraudulent (in some unspecified manner) September 27, 2001 invoice for "Build Out
Reimbursement" at 4800 Addison Road, and (d) causing D.C. to pay an allegedly fraudulent (in
some unspecified manner) February 2002 invoice for construction at 4800 Addison Road.
Indictment at 7-8 (¶ 16).  The evidence relating to the Prince George's County zoning proceeding
appears to relate to the February 2002 invoice submitted by Defendants to the D.C. government.
See 404(b) Notice at 10.

        The government contends that in connection with the Prince George's County
zoning proceeding, which took place after Prince George's County had issued a permit to use the
site as an impound lot but withdrew it as having been granted in error, a DDC Construction VP
testified as to the costs that DDC had incurred in making improvements to the property in
reliance on the initial permit.  404(b) Notice at 10.  The government further contends that in
February 2002, DDC submitted a claim for reimbursement for construction costs at 4800
Addison Road to the D.C. government which "track[ed] nearly item for item a list of costs" that
had been provided to the Prince George's County zoning authorities.  Id.  However, the
government does not claim that DDC sought payment from the Prince George's County zoning
authorities for these construction expenses, or that the lease with the D.C. government prohibited
DDC from seeking reimbursement of construction costs from its tenant.  The government
completely fails to explain how this evidence about the zoning proceeding is relevant to the
criminal charges in the Indictment.

It appears that the government seeks to use this zoning proceeding evidence as a pretense to admit evidence that Defendants attempted to defraud a government entity in addition to the D.C. government.  Indeed, the only purported "bad act" described in the several pages of the government's brief devoted to the irrelevant zoning proceeding is the allegation that both the information submitted to Prince George's County and the D.C. government invoice "inflate the labor costs" incurred by DDC improving the impound lot.  404(b) Notice at 11.  To prove the charge in the Indictment that Lorusso caused the D.C. government to pay the allegedly fraudulent February 2002 invoice for construction costs at 4800 Addison Road as an "official act" performed in return for a bribe, the government may attempt to prove that the labor expenses in the February 2002 claim were inflated, that Lorusso was aware of that fact, and that Lorusso's approval of the invoice was therefore the result of the alleged bribery scheme. However, evidence that Defendants inflated the labor costs in the description of construction costs it submitted to the Prince George's County zoning board is irrelevant to the issue of whether Defendants bribed Lorusso in return for official acts.  Such evidence is mere propensity evidence offered to establish that if Defendants are willing to submit fraudulent documentation to one government authority, it is more likely that they defrauded the D.C. government through the alleged bribery scheme.  As such, the evidence should be excluded as inadmissible.

### b.    Evidence Regarding The Alleged Insurance Fraud Scheme Is Irrelevant And Prejudicial

The evidence relating to the alleged insurance fraud scheme is irrelevant and prejudicial.  The government alleges that following a warehouse fire at 4800 Addison Road in September 2001, DDC submitted an insurance claim for reimbursement of costs it incurred in repairing the damage.  404(b) Notice at 10-11.  The government alleges that Defendants engaged in insurance fraud in connection with this claim by:  (a) submitting invoices for reimbursement

- 23 -

that had not been paid by DDC, and (b) "double billing" the insurance company for invoices that Defendants represented as a cost of repairing the fire damage, which were also submitted to the D.C. government for payment as a cost of improvement of the impound lot.  With respect to this alleged "double billing," the government alleges that some of the invoices were properly billed to the insurance company but not to D.C., and that other invoices are "sufficiently vague" so as to render it unclear which entity was properly billed for the construction expenses.  Id. at 11-12. None of this evidence is alleged with any specificity in the 404(b) Notice.

The allegation that Defendants submitted invoices that DDC had not paid for reimbursement by the insurance company is plainly irrelevant propensity evidence.  The government does not explain how this evidence tends to prove any of the charges in the Public Corruption Counts.  This evidence of a completely independent alleged fraud on an insurance company does not involve bribery or the D.C. government in any respect.  The Court should exclude this irrelevant evidence.

Any evidence of "double billing" is also irrelevant.  The government contends that some of the same invoices were submitted to the D.C. government and the insurance company but that it is "not clear" which entity was obligated to reimburse DDC.  404(b) Notice at 12.  The government seeks to admit this evidence because it contends that DDC was not entitled to reimbursement from both entities, and that there necessarily must have been a fraud committed on someone.  Id.  However, from the government's own description, it is quite possible that the invoices at issue were properly submitted for reimbursement from the D.C. government.  As such, the evidence would tend only to establish that a fraud had been perpetrated on the insurance company -- an issue completely irrelevant to the criminal charges in the Indictment.

The government contends that other invoices for work related to the fire damage were submitted for reimbursement to both the D.C. government and the insurance company, and that the "truthful" insurance company claims tend to prove the falsity of the D.C. government claim. 404(b) Notice at 12. Evidence tending to establish that the February 2002 invoice that Defendants submitted to the D.C. government for reimbursement of constructions costs at 4800 Addison Road was fraudulent is arguably relevant to the Public Corruption Counts, to the extent the government can establish that Lorusso was aware of the fraudulent nature of the invoice and approved it for payment as a result of bribe payments. However, the insurance claim itself does not prove falsity. Proof of falsity would come from evidence that Defendants submitted invoices to D.C. for work unrelated to construction of the impound lot -- evidence that does not require the government to prove the insurance fraud. Thus, the evidence regarding the insurance company claims is irrelevant.

In any event, even if tangentially relevant, the probative value of the so-called "truthful" insurance claims is minimal. If the government can prove that the claims submitted to D.C. for reimbursement in February 2002 were for fire damage rather than costs of constructing the impound lot, that evidence alone would establish the falsity of the invoice submitted to the D.C. government. The additional evidence of the insurance company's involvement adds little probative value to the equation. However, evidence of the insurance company claims would require substantial trial resources, cause undue delay and confuse the issues. Accordingly, the Court should exercise its discretion to exclude this marginally relevant evidence pursuant to Rule 403.

At bottom, the government's contention that the evidence regarding the Prince George's County zoning proceeding and insurance company fraud is relevant is based on the

mistaken premise that such conduct shared the same goal or purpose as the offenses charged in the Public Corruption Counts -- namely to "enrich Douglas Jemal and entities under his control through conduct relating to his property at 4800 Addison Road." 404(b) Notice at 14 & n.14. The government ignores the fact that the goal of the Public Corruption Counts was for Defendants to enrich themselves *through bribery*. The uncharged zoning proceeding and insurance company evidence has nothing whatsoever to do with public corruption or bribery and no purpose other than to establish Defendants' bad character and criminal propensity.

     **5.      Alleged Uncharged Evidence Relating To MTD Real Estate Services**

     The Court should exclude the evidence alleged in the 404(b) Notice regarding an uncharged fraudulent scheme involving MTD Real Estate Services ("MTD") as irrelevant and prejudicial. First, the government's description of this purported scheme is vague and unclear. Although the government devotes three and a half pages of its brief to restating the allegations in the Wire Fraud Count, it describes the alleged uncharged scheme involving MTD in one vague paragraph. See 404(b) Notice at 30-31. The government contends that (1) documents "suggest" MTD was "to be paid" from construction loans in place for development of an unrelated building not at issue in the Indictment, (2) MTD invoiced DDC for construction management services, (3) Defendants and others made unidentified "deceptive" statements to Douglas Jemal's partner about MTD, and (4) there was no purpose for any payments to be made to MTD instead of DDC directly. Id. From this minimal description, the government has not sufficiently demonstrated the similarities between this alleged conduct and the conduct alleged in the Wire Fraud Count so as to render the evidence potentially relevant under Rule 404(b).

     Even taking the vague allegations on their face, however, the Court should reject the government's claim that the evidence is admissible to prove intent or common plan because

the alleged uncharged MTD scheme is not sufficiently related to the conduct alleged in the Wire Fraud Count. Among other things, the government does not allege that the uncharged scheme involving MTD resulted in any concealment of income from the IRS or involved a loan containing a tenant improvement reserve with the same restrictions on disbursements as the loan alleged in the Wire Fraud Count. The Wire Fraud Count alleges a scheme to defraud involving three different victims. At most, the uncharged scheme alleged in the 404(b) Notice involves only one of the three -- Douglas Jemal's partner. As such, it is not sufficiently related to be admissible for any nonpropensity purpose under Rule 404(b).

In any event, even if it is conceivably relevant, the Court should exclude the evidence pursuant to Rule 403. The evidence at issue relates to another commercial loan and another complicated real estate project. It will already take the government a significant amount of time to prove the allegations relating to the Wire Fraud Count. Adding a whole new transaction will prolong the trial needlessly on a tangential issue. The Court should exclude the evidence because it would waste time and confuse the issues.

### C.    If Any Of The Additional Uncharged Evidence Is Deemed Admissible, The Court Should Grant Defendants' Motion To Sever Counts

Finally, to the extent the Court is inclined to admit any of the evidence in the 404(b) Notice, the Court should grant Defendants' motion to sever counts. As the Court is aware, Defendants have moved to sever the Public Corruption Counts from the Tax Evasion Counts and from the Wire Fraud Count for separate trials. Among other things, Defendants have argued that they would be substantially prejudiced by the "spill over" of evidence at a joint trial on unrelated charges where the evidence relating to each of the three groups of charges would be inadmissible at separate trials. The prejudicial spill over would be even greater if the Court

permits the government to introduce substantial amounts of Rule 404(b) evidence. The purported Rule 404(b) evidence relating to uncharged tax evasion has nothing to do with the Public Corruption Counts or the Wire Fraud Count. Likewise, the evidence relating to the Prince George's County zoning proceeding and the alleged insurance fraud has nothing to do with the Wire Fraud Count or the Tax Evasion Counts. And the alleged uncharged scheme involving MTD has nothing to do with the Public Corruption Counts or the Tax Evasion Counts. Not content with charging three separate sets of completely unrelated criminal charges in a single indictment, the government is now seeking to prove whole new categories of uncharged criminal conduct in the apparent hope that when faced with such a broad range of allegedly fraudulent conduct, the jury will conclude that Defendants must be guilty of something. Even absent any of the Rule 404(b) evidence, a severance of counts was justified. If the Court permits the government to introduce any of the Rule 404(b) evidence, a severance is required to permit Defendants a fair trial.

Finally, the argument for severance of counts is significantly strengthened by the fact that Defendant Norman Jemal is not named as a defendant in the Tax Evasion Counts. If the Court permits the government to introduce any of the uncharged tax evasion evidence alleged in the 404(b) Notice, the prejudice that Norman Jemal would suffer at a joint trial on all three sets of charges would be severe. The government concedes that the uncharged tax evasion evidence "is directly aimed at Douglas Jemal." 404(b) Notice at 24. The government's claim that there is "little concern" that Norman Jemal would be prejudiced by the 404(b) evidence regarding tax evasion because he is not charged in any substantive tax counts is specious. Id. at 26. It is precisely because Norman Jemal is not named as a defendant in the Tax Evasion Counts that he

is prejudiced by the spill over of evidence of the alleged tax evasion.[9]  That prejudice would be greatly exacerbated if the government is permitted to introduce whole new categories of tax evasion evidence relating to other DDC employees, all to purportedly establish "intent" or a common plan for a crime not alleged against Norman Jemal.  If the Tax Evasion Counts were severed and tried separately, Norman Jemal would not be a defendant at the separate trial and none of this evidence would spill over onto him.  Accordingly, the Court should grant Defendants' motion to sever counts if it is inclined to admit any of the uncharged tax evasion evidence.

---

[9] With respect to the uncharged alleged tax evasion evidence relating to Defendant Esherick, the government contends that although "Norman Jemal is not a named defendant in the substantive tax charges, the Indictment charges, and the evidence will reveal, that Norman Jemal assisted the tax evasion scheme."  404(b) Notice at 4.  However, the Indictment does not "charge" Norman Jemal in any substantive count with aiding and abetting tax evasion.  Rather, a portion of the bribery conspiracy alleged in Count One states that Douglas and Norman Jemal "obtained the services" of Esherick by compensating him in ways not reported to the IRS.  For the reasons set forth in Defendants' Motion to Strike Surplusage, this "allegation" is improper and should be stricken from the Indictment.  It would be highly prejudicial and improper for the government to attempt to prove that Norman Jemal assisted the tax evasion scheme when he is not charged as a defendant in the Tax Evasion Counts.  The government's apparent plan to tar Norman Jemal by innuendo and evidence of uncharged criminal activity gives the Court another reason to grant Defendants' motion to sever counts.

**IV.    CONCLUSION**

   For the foregoing reasons, the Court should exclude the evidence alleged in the

404(b) Notice.

        Respectfully submitted,


        _____
        Reid H. Weingarten (D.C. Bar #365893)
        Erik L. Kitchen (D.C. Bar #292847)
        Brian M. Heberlig (D.C. Bar #455381)
        Steptoe & Johnson LLP
        1330 Connecticut Avenue, N.W.
        Washington, D.C.  20036-1795
         (202) 429-3000

        Michele A. Roberts
        Akin Gump Strauss Hauer & Feld LLP
        1333 New Hampshire Avenue, N.W.
        Washington, D.C.  20036
        (202) 887-4306

        Christopher B. Mead
        London & Mead
        1225 19th Street, N.W.
        Suite 320
        Washington, D.C.  20036
        (202) 331-3334

        Counsel for Douglas Jemal

        Stanley M. Brand
        Ross Nabatoff
        The Brand Law Group
        923 Fifteenth Street, N.W.
        Washington, D.C.  20005
        (202) 662-9700

        Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  January 18, 2006