## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                                   :

           v.                     :      **Crim. No. 05-359-01, -2, -3 (RMU)**

                                     :

DOUGLAS JEMAL, ET AL.          :

## GOVERNMENT'S OPPOSITION TO (1) DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR RELATED CIVIL LAWSUIT AND SETTLEMENT, AND (2) DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR, UNRELATED, SETTLED VENDOR/CONTRACTOR LAWSUITS.

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully opposes (1) defendants' motion in limine to exclude evidence

of a prior related civil lawsuit and settlement (involving the District of Columbia)[1] and (2)

defendants' motion in limine to exclude evidence of prior, unrelated, settled vendor/contractor

lawsuits.[2]

## INTRODUCTION

I.      **Vendor Suits Against Douglas Development Corporation.**

In this case, as in most fraud or corruption cases, the government intends on proving a

motive to steal and a motive to bribe. Thus, it will prove that, in 2001 and 2002, Douglas

Jemal's company was in significant financial distress. Creditors, particularly construction

contractors, were being paid late or not at all and were repeatedly suing him and his company for

payment. One way the government intends to establish and corroborate its proof of motive is by

---

[1]      That motion will be referred to herein as "Defs. D.C. Settlement Mot." The memorandum in support of that motion will be referred to as "Defs. D.C. Settlement Mem."

[2]      That motion will be referred to herein as "Defs. Vendor Settlements Mot." The memorandum in support of that motion will be referred to as "Defs. Vendor Settlements Mem."

introducing the numerous law suits filed against him and his company during 2001 and 2002 for non-payment of bills.

These law suits are thus relevant for the following two points:

- first, at a minimum, they constituted potential liabilities (regardless of the merits of the suits); and

- second, they elucidate in a vivid way the existence of significant cash problems in the company. Jurors well understand that suits consume time and money and that persons and companies do not sue lightly. Jurors can properly infer that Douglas Development had severe payment problems when so many contractors reached the same decision that the only way to collect was to sue.

These law suits provide compelling evidence of the financial pressures endured by Douglas Jemal in 2001 and 2002. It would truly crib the jury's assessment and appreciation of Douglas Jemal's motives if the jury was kept unaware that his cash problems were so profound that he was unable to pay routine debts and was as a result besieged by suing (or complaining) vendors. In short, the fact of the lawsuits is probative, relevant, and indeed, particularly powerful evidence of motive.[3]

The defendants root their motion in limine in Rule 408, which deals with the evidentiary uses that can properly be made of certain acts which may occur in the course of civil litigation. The government will analyze these provisions of law in the next Sections, but, for the following reasons, the defendants' legal arguments are unavailing:

---

[3] There are of course other ways the government could try to make this point. For example, it is possible to bring the contentions of financial distress to life through accountants or other opinion testimony of employees. Such evidence has obvious defects and may prove far from compelling to a jury, who may well perceive that different "experts" or employees may view the company's financial situation through completely different lenses.

- Rule 408 does not operate to keep a party from being able to introduce into evidence the fact of a law suit or the dispute that led to the suit;

- Rule 408 has a very limited reach: it only applies to bar a party from using the compromise of the dispute as proof of the validity or amount of the claim. Thus,

  - in this case, notwithstanding the perfunctory Answers of Douglas Development to the numerous plaintiffs' Complaints, the plaintiffs' claims were not seriously disputed; and

  - Rule 408 does not bar a party from using the settlement of the claims to prove motive of the defendants;

- Rule 408 does not appear to apply to criminal litigation in any event;

- Finally, we respectfully submit that this evidence will not overly complicate the trial or necessitate a series of mini-trials. The government has a right to establish the existence of outstanding debts, and its decision to rely on those instances where the complainants have actually sued and Douglas Development has actually settled is a particularly reasonable—indeed, a particularly reliable—way for it to proceed.

## II.    The District of Columbia's Suit Against Douglas Development.

In September 2001, Douglas Development submitted a claim to the D.C. Government for "tenant buildout reimbursement." This claim was approved by Michael Lorusso and paid by the D.C. Government. The funds were deposited in Douglas Development operating account, where they were quickly spent. They were not applied to the benefit of the D.C. Government.

In the summer of 2003, after a series of City Council hearings, the D.C. Government sought the return of these funds and sought other relief from Douglas Development. The D.C. Government filed suit. At some point, a city official inquired of Jemal what had happened to the $863,000. He replied that it was in escrow.

The defendants seek to suppress under Rule 408 mention of the law suit and mention of the terms of settlement. Though the defendants do not specifically raise this issue, we assume they also seek to suppress the statement of Douglas Jemal (or any other agent of his) as well.

This motion in limine should be denied, for largely the same reasons as the motion relating to the other civil law suits:

- Rule 408 does not operate to keep a party from being able to introduce into evidence the fact of a law suit;

- Rule 408 has a very limited reach: it only applies to bar a party from using the compromise as proof of the validity or amount of the claim. Thus, it does not bar a party from using the statements of an individual—in this case Jemal—made in the course of settlement negotiations, to prove aspects of intent and motive associated with the pending criminal case;

- Rule 408 does not appear to apply to criminal litigation in any event.

*     *     *

Because both motions involve the analysis of Rule 408 and raise common issues involving its application to criminal proceedings, we address both motions in this single pleading.

**BACKGROUND**

I.      **Factual Background**

A.      Suits/Statements/Settlements Regarding Disputes with Vendors.

The United States, through its agents, has located public records in various local courthouses that reflect ongoing efforts of construction contractors and other suppliers to obtain payment from Douglas Jemal and his related companies during the period of time addressed in the Indictment. These records thus reflect unpaid debts from prior to 2001, for which the

-4-

vendors filed suit in 2001 and 2002; and unpaid debts in 2001 and 2002, for which law suits were filed in 2003. The government has provided records from the District of Columbia, and, not anticipating the motion in limine, has not yet finished copying certain similar records from Montgomery County and Prince George's County. Several of the suits involve the very properties that are at issue in this case.

These certified court records thus demonstrate the existence of numerous individuals and entities demanding payment from Douglas Development. Putting aside the merits of the cases—which are really not in dispute—the volume of lawsuits tends to demonstrate the dire financial circumstances of Jemal during the years in question.

Thus, these law suits run the gamut from the small to the grand, and consist of the following:

- GX 690: Stalker Brothers, Inc. v. Cayre Jemal Peoples, L.L.C., Civ. Action No. 02-265 (D.C. Sup. Ct. Jan. 14, 2002) (seeking enforcement of mechanic's lien and alleging contract and unjust enrichment claims for nonpayment of $74,619 for work performed at 77 P Street from July 1999 through August 31, 2001);

- GX 691: Tri County Industries Inc. v. Douglas Development Co., Civ. Action No. 01-6642 (D.C. Sup. Ct. Sept. 5, 2001) (seeking payment of $62,661.75 for removal of 500 gallon used oil tank at 400 Massachusetts Avenue, NW, between March 26 and May 7, 2001);

- GX 692: Adecco Employment Serv. Inc. v. Douglas Development Co., Civ Action No. 01-5371 (D.C. Sup. Ct. July 18, 2001) (seeking payment of $8,037 for employment services billed on August 21, 2000);

- GX 693: Neary and Sons Corp. v. Douglas Development Corp., Civ. Action No. 01-2789 (D.C. Sup. Ct. April 11, 2001) (seeking $31,258.41 for electrical services provided between July 2000 and December 2000);

- GX 694: <u>The Keystone Plus Construction Corp.</u> v. <u>Douglas Development Corp.</u>, Civ. Action No. 03-406 (D.C. Sup. Ct. Jan. 21, 2003) (seeking enforcement of settlement agreement and breach of contract damages for nonpayment of $222,348 based on labor and materials provided in 2000);

- GX 695: <u>Neco Construction & Mgmt. Corp.</u> v. <u>Douglas Development Corp.</u>, Civ. Action No. 03-2827 (D.C. Sup. Ct. April 11, 2003) (seeking $37,500 for labor and materials provided between June 29, 2001, and August 10, 2001);

- GX 696: <u>Neco Construction & Mgmt. Corp.</u> v. <u>Douglas Development Corp.</u>, Civ. Action No. 03-2542 (D.C. Sup. Ct. April 2, 2003) (seeking $88,283.34 for labor and materials provided at 4800 Addison Road between March 2001 and June 2001);

- GX 697: <u>Washington Gas Light Co.</u> v. <u>Douglas Development Corp.</u>, Civ. Action No. 03-5579 (D.C. Sup. Ct. July 9, 2003) (seeking payment of $13,679.64 for gas bill for February 15, 2002, through June 18, 2003);

- GX 698: <u>Pavement Design & Eng. Consultants, Inc.</u> v. <u>Douglas Development Corp.</u>, Civ. Action No. 01-56 (D.D.C. Jan. 11, 2001) (seeking payment of $96,561.50 for paving and sealing work performed in 2000).

B.    <u>Suit and Related Statements Regarding Dispute with District of Columbia</u>.

On July 29, 2003, the District of Columbia filed a complaint in the District of Columbia Superior Court against Douglas Development Corporation, Cayre Jemal's Gateway, L.L.C., Douglas Jemal, Blake C. Esherick, and Michael A. Lorusso for false claims, false statements, conversion, common law fraud, unjust enrichment, and (as to Lorusso only) breach of fiduciary duty. See <u>District of Columbia</u> v. <u>Douglas Development Corporation</u>, Civ. Action No. 03-6457 (D.C. Sup. Ct. July 29, 2003), Complaint. On September 9, 2003, defendants Douglas Development Corporation, Cayre Jemal's Gateway, L.L.C., and Douglas Jemal filed their answer, in which they denied the allegations in the City's complaint and brought counterclaims for breach of contract and unjust enrichment. See <u>id.</u>, Answer (Sept. 9, 2003). The parties to the litigation settled the lawsuit in or around March of 2004.

## II.     Legal Background

Rule 408 of the Federal Rules of Evidence provides:

> "Evidence of (1) furnishing of or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or proceeding."

Fed. R. Evid. 408.

There are three limitations to the application of Rule 408, each of which is significant to analyzing defendants' motions. First and foremost, the Rule does not bar evidence of disputes, including lawsuits filed in connection with such suits; it only bars evidence of settlements and settlement negotiations. See id.

Second, the Rule only applies to "a claim which was disputed as to either validity or amount." See id. Thus, the drafters of the Rule note that

> "[t]he policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an admittedly due amount for a lesser sum. Hence the rule requires that the claim be disputed as to either validity or amount."

Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rules (citation omitted).[4]

---

[4]     As noted in a leading treatise,
"[t]he [Rule's Advisory Committee's] Note requires a careful distinction between a frank disclosure during the course of negotiations—such as, "All right, I was negligent. Let's talk about damages"(inadmissible)—and the less common situation in which both the validity of the claim and the amount of damages are admitted—"Of course, I owe you the money, but unless you're willing to settle for

Third, Rule 408 does not bar settlement-related information that is offered for a non-forbidden purpose, as it only bars the use of such evidence to "to prove liability for or invalidity of [a disputed] claim or its amount." Fed. R. Evid. 408. Thus, the Rule notes several situations where settlement information is not excludable, "<u>such as</u> proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or proceeding." <u>Id</u>. (emphasis added). The words "such as" indicate that the Rule does not list the only permissible uses of settlement information.[5]

Thus, courts have routinely admitted settlement-related evidence to show <u>motive</u>, see <u>Resolution Trust Corp.</u> v. <u>Blasdell</u>, 154 F.R.D. 675, 681 (D. Ariz. 1993) (admitting evidence of settlement letters and negotiations, over Rule 408 objections, to show motive); to show a <u>scheme</u>, see <u>Broadstone Capital Corp.</u> v <u>Summa Med. Corp.</u>, 972 F.2d 1183, 1194 n.16 (10th Cir. 1992) (noting that Rule 408 would not bar settlement-related evidence offered to show defendant's loan scheme); and to show <u>other violations</u>, see <u>Carney</u> v. <u>American Univ.</u>, 151 F.3d 1090, 1095 (D.C.

_____

less, you'll have to sue me for it" (admissible)."

Joseph M. McLaughlin <u>et al.</u>, Weinstein's Federal Evidence § 408.06, at 408-25 (2d ed. 2006); see also <u>In Re B.D. Int'l Discount Corp.</u>, 701 F.2d 1071, 1074 n.5 (2d Cir. 1983) (affirming trial court's admission of statement acknowledging debts owed to creditor because, at time of negotiation, validity and amount of claims not in dispute and debtor simply sought more time to pay); <u>Firestone Tire & Rubber</u> v. <u>Hillow</u>, 65 A.2d 338, 339-40 (D.C. Ct. App. 1949) (affirming trial court's admission of statement acknowledging liability for damage to plaintiff's automobile and promising to pay claimed amount less salvage costs because statement "unconditional and unqualified acknowledgment of liability and promise to pay").

[5]    Indeed, the drafters note that "bias," "prejudice," "undue delay," and "obstruction of justice" are only "illustrative situations." See Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rule; see also Charles A. Wright & Kenneth W. Graham, Jr., 23 Fed. Practice & Procedure § 5314 (1980) ("The listing of permissible uses of compromise evidence in Rule 408 is illustrative, not exhaustive. Any such use of evidence that is beyond the scope of the rule is permissible even if not mentioned * * *.") (footnote omitted).

Cir. 1998) (reversing trial court that forbid use of settlement letters proffered as being relevant to show independent civil rights violation unrelated to claim that was subject of letters).

## ARGUMENT

### I.    Rule 408 Does Not Bar Evidence of Civil Lawsuits or Settlements in Criminal Cases.

The defendants' motions in limine should be denied as an initial matter because, as the Second, Sixth, and Seventh Circuits have held,[6] Rule 408 should not be held to apply at all to criminal cases. See United States v. Baker, 926 F.2d 179, 180 (2d Cir. 1991) (affirming stolen goods convictions in rejecting claim that trial court erred by admitting testimony by defendant to arresting FBI agent about "making [a] deal[]" in holding that "Rule [408] applies only to civil litigation."); United States v. Manko, 87 F.3d 50, 55 (2d Cir. 1996) (reversing denial of habeas petition on the ground that trial court abused its discretion in excluding civil settlement in tax fraud case because "considerations of Rule 408 are inapplicable in criminal cases."); United States v. Logan, 250 F.3d 350, 367 (6th Cir. 2001) (affirming false claims and wire fraud convictions in rejecting claim that trial court erred by admitting settlement agreement because "the plain language of Rule 408 makes it inapplicable in the criminal context."); United States v. Prewitt, 34 F.3d 436, 439 (7th Cir. 1994) (affirming mail fraud convictions in rejecting claim that trial court erred in admitting defendant's settlement-related statements to state agency because "Rule 408 should not be applied to criminal cases").

---

[6]    The District of Columbia has yet to decide this issue. One case notes Rule 408 in passing. See United States v. Graham, 91 F.3d 213, 218 (D.C. Cir. 1996 ) ("The subject of [Rule 408] is the admissibility of evidence (in a civil or criminal case) of negotiations undertaken to 'compromise a claim' in a civil action * * *.") (dicta). But that discussion was not relevant to the holding, and the issue of Rule 408's applicability to criminal cases was not presented squarely for decision.

As one Second Circuit panel held, "encouraging settlement does not justify excluding probative and otherwise admissible evidence in criminal prosecutions. The public interest in the disclosure and prosecution of crime is surely greater than the public interest in the settlement of civil disputes." United States v. Gonzalez, 748 F.2d 74, 78 (2d Cir. 1984).

As the defendants note, three Circuit Court cases have applied Rule 408 to block settlement-related evidence in criminal cases. See United States v. Hays, 872 F.2d 582 (5th Cir. 1989); United States v. Bailey, 327 F.3d 1131, (10th Cir. 2003); United States v. Arias, 431 F.3d 1327 (11th Cir. 2005).

But defendants fail to acknowledge that, in each of those three cases, the settlement-related evidence was direct proof of, or directly related to, the elements in one or more of the charged criminal counts:

- In Hays, the trial court admitted evidence of a settlement agreement the defendants had reached with their savings and loan, and excerpts from civil depositions in which defendants explained why they entered the settlements, when the subject matter of the settlements was relevant to the charged offenses of conspiracy, misapplication of funds, and making false entries in the records of a federally insured savings and loan association. 872 F.2d at 583, 588-89;

- In Bailey, the trial court admitted in a prosecution alleging wire fraud based on misappropriate of partnership funds evidence from a civil settlement that the defendant had admitted withdrawing the partnership funds and placing them into his own account without authorization. 327 F.3d at 1144;

- In Arias, the trial court admitted, in a health care fraud trial alleging among other things that pharmacists were providing only labels and invoices rather than any actual medication, that a defendant pharmacist had admitted to drug-alteration allegations in a state administrative proceeding against him. 431 F.3d at 1336.

In short, all three Circuit Court cases applying Rule 408 to criminal cases do so where the settlement-related evidence is powerful evidence of or directly related to the charged conduct.

Here, by contrast, the government does not intend to introduce evidence of the actual settlement of the District of Columbia's lawsuit. It seeks to introduce evidence of the settlement of suits brought by Douglas Development vendors and a statement made by Douglas Jemal about the whereabouts of funds provided by the District of Columbia. The evidence the government seeks to admit thus will not have the prejudicial effect of the evidence found harmful in <u>Hays</u>, <u>Bailey</u>, and <u>Arias</u>.

Accordingly, the Court should adopt the position of the Second, Sixth, and Seventh Circuits and hold that Rule 408 does not apply to bar evidence of civil settlements in criminal cases. But, in any event, it should not exclude settlement-related evidence here because the evidence in question does not directly prove the charged conduct; and thus it is not at all similar to the situations in <u>Hays</u>, <u>Bailey</u>, or <u>Arias</u>.

## II.     The Court Doesn't Have to Decide Whether Rule 408 Applies to Criminal Cases, Because the Relevant Evidence Here is Otherwise Admissible.

Although the Court should deny defendants' motions on the grounds that settlement related evidence is not barred by Rule 408 in criminal cases, it does not need to decide that issue; for the motions should also be denied because the evidence the government seeks to introduce is squarely admissible under Rule 408.

### A.     <u>Evidence About Disputes and Lawsuits is Admissible Under Rule 408</u>.

The government is entitled to introduce evidence concerning the disputes between Douglas Development Corporation and its vendors and evidence about lawsuits that arose from those disputes; for Rule 408 only concerns settlements and settlement negotiations, not the suits and disputes that preceded them.

Defendant nevertheless argue, in direct conflict with the Rule, that Rule 408 bars not only settlement-related evidence (which is generally true but not dispositive here) but also evidence of civil complaints and the disputes that led to the complaints (which is false). See, e.g., Defs. D.C. Settlement Mot. at 1 (moving to "exclude any evidence referencing the False Claims lawsuit"); Defs. D.C. Settlement Mem. at 1 ("moving to exclude "evidence that refers to * * * [the City's] civil False Claims lawsuit" and "Defendants' agreement to settle the lawsuit"); id. at 4 ("The Court should prohibit the government from introducing evidence regarding the prior False Claims lawsuit or its settlement * * *."); Defs. Vendors Settlements Mot. at 1 (moving to exclude "any evidence relating to nine settled lawsuits"); Defs. Vendors Settlements Mem. at 1 (seeking to "prohibit the government from introducing at trial any evidence relating to nine civil lawsuits (and/or the agreements to settle those lawsuits)"); id. at 5 (arguing that Court should "preclude the government from introducing or referring to any of the lawsuits and/or their settlement").

Significantly, defendants cite no authority—no case, no treatise, no law review article—to support their position that Rule 408 bars not only settlement-related evidence but dispute-related evidence. The most likely reason they cite no such authority is that it finds absolutely zero support in the Rule. The plain language of the Rule does not bar any and all evidence related to disputes—e.g., the facts about the disputes and the civil complaints that flesh out the disputes—it only bars "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount * * *." Fed. R. Evid.

408.[7] That is, it only bars evidence dealing with the <u>settlement</u> of disputes, not about the <u>disputes</u> themselves.

That distinction is critical, for it helps explain why much of defendants' motions <u>in limine</u> is overbroad. The government intends to introduce, and is not barred under Rule 408 from introducing, (a) the fact of the District of Columbia lawsuits against Douglas Development Corporation, including the date on which it was filed; and (b) the facts of various lawsuits brought against Douglas Development by its vendors for non-payment, including the disputes that led up to the filing of the lawsuits. The Court should thus reject defendants' unsupported attempt to stretch Rule 408 well beyond its plain language and inherent policy choices.

Thus, at a bare minimum, the fact of the lawsuits brought by vendors and the District of Columbia is admissible.

B.    <u>The Settlement Evidence Here Is Admissible Under Rule 408</u>.

Even though evidence of disputes and lawsuits is undoubtedly admissible under Rule 408, the Court can and should admit more than just that evidence. It should also admit evidence about the discussions and settlement of the vendors' lawsuits against Douglas Development Corporation, and it should admit certain statements made by Douglas Jemal regarding the validity and amount of money given to Douglas Development by the District of Columbia for developing the basement of 77 P Street.

---

[7]    If defendants' unsupported reading of Rule 408 were correct, the language "(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise" would be superfluous; it would be enough for the Rule to have said "Evidence of a disputed claim is not admissible." See <u>Donnelly</u> v. <u>Fed. Aviation Admin.</u>, 411 F.3d 267, 271 (D.C. Cir. 2005) ("We must strive to interpret a statute to give meaning to every clause and word, and certainly not to treat an entire subsection as mere surplusage.").

The Court should do so on two grounds: (1) most, if not all, of the disputes are not genuine, but are, instead, non-payment "disputes" about "admittedly due amount[s],"[8] such that Rule 408 does not apply; and (2) the settlement-related evidence will be offered for purposes not forbidden by Rule 408, viz., to show the defendants' motives and as direct evidence of the fraudulent schemes.

(i)   Rule 408 Does Not Bar Settlement-Related Evidence
Regarding "Disputes" About Admitted Amounts or Debts.

As noted above, since Rule 408 applies only to "claims" that are "disputed as to validity or amount," it does not bar settlement-related evidence relating to claims that are not in genuine dispute.[9]

The government believes that the evidence at trial will demonstrate that most, if not all, of the vendors' lawsuits against Douglas Development involved non-payment of "admittedly due amount[s],"[10] such that settlement-related evidence about the disputes is not excluded under the Rule.

For example, on December 21, 2001, a Gaithersburg, Maryland corporation, Stalker Brothers, Inc., filed a breach-of-contract complaint in the District of Columbia Superior Court

---

[8]    See Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rules.

[9]    See In Re B.D. Int'l Discount Corp., 701 F.2d at 1074 n.5 (affirming admission of statement acknowledging debts owed to creditor because, at time of negotiation, validity and amount of claims not in dispute and debtor was simply seeking additional time to pay); Firestone Tire & Rubber, 65 A.2d at 339-40 (affirming admission of statement acknowledging liability for damage to plaintiff's automobile and promising to pay claimed amount less salvage costs because statement "unconditional and unqualified acknowledgment of liability and promise to pay").

[10]    Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rules

-14-

seeking $74,619.00 for dry wall, painting, and wall covering work done from July 27, 1999,

through August 31, 2001, at Douglas Development's 77 P Street property.  See <u>Stalker Bros.,</u>

<u>Inc.</u> v. <u>Cayre Jemal Peoples, Inc.</u>, Civ. Action No. 02-265 (D.C. Sup. Ct. Jan. 14, 2002),

Complaint at ¶¶ 2, 3, 6, 8.  Douglas Development had provided partial payment, but, according to

the complaint, it had not made good on the remaining balance of nearly $75,000.  On February

19, 2002, defendants filed their answer to the Complaint, in which among their numerous

affirmative defenses they formally asserted that "Defendant admits that Plaintiff has not been

paid but disputes that Plaintiff is entitled to the amount of money as alleged in this Complaint."

See <u>id.</u>, Answer at ¶ 8 (Feb. 19, 2002).  Despite having formally asserted that the debt was

disputed, Douglas Development on or about April 11, 2002, gave a check to Stalker Brothers,

Inc. for $74,619—the <u>entire</u> amount sought in the Complaint.  That Douglas Development paid

the entire, claimed amount belies any notion that the amount was ever truly in dispute.  Under the

circumstances, evidence related to the settlement of that complaint should not be barred by Rule

408 because the debt and its amount were undisputed.

The remaining suits similarly show that the disputes were not genuine and should not be

barred under Rule 408:

- As to the <u>Tri County Industries</u> suit, Douglas Development records reveal that, notwithstanding the numerous affirmative defenses set forth in its answer, Douglas Development engaged in a pattern of regular payments that appear to have paid nearly the entire debt;

- As to the <u>Pavement Design & Engineering</u> suit, Douglas Development entered into a settlement agreement to pay the entire amount ($100,000) pursuant to a payment plan and to pay $110,000 if it breached the plan.  Douglas Development thereafter breached, and plaintiffs obtained an order from U.S. District Court Judge Thomas Penfield Jackson permitting them to garnish Douglas Development's bank account for the balance due of $35,000 plus 18 percent

-15-

interest.  This was clearly a bona fide debt, settled in full, following yet another breach upon settlement;

- There are additional particular indicia of reliability associated with the <u>Keystone Plus Construction</u> lawsuit.  The Court records reveal that the original debt was over $500,000 and Keystone and Douglas Development "settled" this debt for $450,000, pursuant to a payment plan.  Only when Douglas Development breached the payment plan did Keystone bring suit to enforce the agreement.

(ii)    Rule 408 Does Not Bar Settlement-Related Evidence
        Offered For Non-Forbidden Purposes.

The settlement-related evidence about the disputes is also admissible because it is being offered for a legitimate, non-forbidden purpose:  to show motive.

As noted above, Rule 408 does not bar settlement-related information that is offered for a non-forbidden purpose, as it only bars the use of such evidence to "to prove liability for or invalidity of [a disputed] claim or its amount."  Fed. R. Evid. 408.

The suits by the various vendors are highly probative of the financial situation facing Douglas Development Corporation:  despite owning over 100 properties, Douglas Jemal was facing a cash crunch in the time period described in the Indictment, such that it was financially critical for the defendants to find tenants for properties that were unfilled but which generated ongoing interest, property tax, and other expenses regardless of their tenant status; and the financial crunch facing Douglas Development was reflected in its continuing and widespread inability to pay its creditors on a timely basis.  Hence the disputes with vendors are probative of the defendants' financial condition and thus relevant to show the defendants' motives in bribing a public official who could assist them in filling unleased properties with paying government tenants.  See <u>Resolution Trust Corp.</u>, 154 F.R.D. at 681 (holding that Rule 408 does not bar settlement-related evidence offered to show motive).

Another potential settlement-related portion of evidence the government seeks to introduce at trial is a statement made by Douglas Jemal at a meeting with District of Columbia officials to discuss a variety of issues, including the whereabouts of $863,299.28 provided by the City to Douglas Development on or about September 28, 2001, for construction of New Economy Act space in the basement of his 77 P Street property. At that meeting, Douglas Jemal represented that the money provided to Douglas Development (but which had not been spent on construction in the basement of 77 P Street), had been placed "in escrow" for the City.

The government expects that the evidence at trial will conclusively demonstrate that Jemal's assertion was false and that it offers, among other things, concrete evidence of his knowledge and participation in a scheme to defraud the District of Columbia. That is because the evidence will demonstrate that the $863,299.28 provided to Douglas Development was not placed in escrow for the City's benefit but was, instead, immediately upon receipt from the City put into the Douglas Development Corporation's operating account, after which a check for half that amount, or $431,000, was sent to one of Jemal's partners, Joseph Cayre, because Jemal was facing pressure from Cayre to pay partnership debts. Hence the government will seek to introduce Jemal's statement to D.C. officials about the City's money being held in escrow—not as proof that Douglas Development owed that money to the City[11]—but to show the falsity of the assertion and as proof of Jemal's scheme. See Broadstone Capital Corp, 972 F.2d at 1194 n.16 (holding that Rule 408 does not bar settlement-related evidence offered to show a scheme).

---

[11]     Jemal's statement is also admissible under Rule 408 because it is acknowledging that the $863,299.28 is actually owed: if the money were placed in escrow for the City's benefit, there could be no genuine dispute that the money was owed to the City; and, if there is no genuine dispute about a debt, Rule 408 does not bar statements about that debt.

-17-

### III. The Suits, Statements, and Settlements Are Highly Relevant.

As discussed above, contrary to defendants' claims, the disputes and settlements of the vendors' disputes, as well as Jemal's statements about City money purported in escrow, are highly relevant to establish the defendants' motives and (as to Jemal's statements) relevant to establishing fraud. Moreover, although vendor disputes and lawsuits arising from the properties at 77 P Street, 4800 Addison Road, and the 400 block of Massachusetts Avenue are particularly relevant, given the central role they play in this case, all the vendor disputes in an around the period described in the Indictment are relevant to showing the financial difficulties of Douglas Development Corporation. They are therefore admissible under Rule 402.

### IV. The Evidence Should Not Be Excluded Under Rule 403.

#### A. The Evidence Is Not Unfairly Prejudicial.

The evidence relating to Douglas Development Corporation's inability to pay its creditors on a timely basis has a very significant probative value. Any prejudice to the defendants from this evidence is more than outweighed by its probative value. In particular, the government is not seeking to introduce this evidence to suggest that "[d]efendants engaged in wrongdoing relating to their business." See Defs. Vendor Settlements Mem. at 7. It is doing so to give the jury a reason for them to understand why someone like the defendants would, despite their seemingly large financial and real-estate holdings, engage in criminal conduct.

#### B. The Evidence Will Not Be Unduly Time-Consuming.

The government respectfully submits that evidence concerning the disputes and settlement with vendors will not consume significant trial time. The defendants contend that they would be forced to "call additional witnesses, and introduce additional exhibits to explain

-18-

each of the different allegations in the nine lawsuits, as well as the reasons why each suit was settled." Defs. Vendor Settlements Mem. at 7. But if, as the government believes, the evidence would show the defendants largely paid at or near the full amount requested in the complaints, there are not likely to be genuine contested issues.[12]

Moreover, the suits and settlements are being offered to show the financial pressures facing the defendants, and the defendants have other ways to rebut the inference the government seeks to draw. Indeed, the defense has informed the government that it intends to call an expert who seeks to opine that the 77 P Street property was not a significant financial risk to Douglas Jemal.[13]

In short, there is little reason to believe that evidence concerning the disputes and settlements relating to Douglas Development vendors will take up extensive trial time, particularly since the government possesses certified copies of the court files. See Fed. R. Evid. 902.

---

[12]     Once again, defendants raise the specter of mini-trials to bolster otherwise weak arguments. The defendants will put on the defense of their choosing, subject to the Rules of Criminal Procedure, the Rules of Evidence, and the Orders of the Court. But the vague threat of multiple (unnecessary and unfounded) mini-trials should not qualify as a reason to exclude highly probative evidence.

[13]     See Defendants' Expert Disclosure of Oakleigh J. Thorne, Opinion 4 ("Mr. Thorne believes that, based on the equity available in the portfolio of properties owned by Douglas Jemal related entities, 77 P St. did not represent any substantial cash or investment risk to Mr. Jemal through 2001."). Thus, the defense wishes to introduce a retroactive analysis of the salutary financial health of Douglas Development properties while precluding far more probative contemporaneous records that cast such a rosy view into question.

## CONCLUSION

The defendant's motions in limine should be denied.

            Respectfully submitted,

            KENNETH L. WAINSTEIN
            UNITED STATES ATTORNEY

By:         _____

            Mark H. Dubester
            Timothy G. Lynch, D.C. Bar No. 456506
            Assistant United States Attorneys
            555 4th Street, NW
            Room 5233
            Washington, D.C. 20530
            (202) 353-4862

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 12th day of July, 2006, I caused to be served by e-mail, and that on this 13th day of July I caused to be served by electronic filing, a copy of the foregoing motion and following proposed order to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005


_____
Timothy G. Lynch
Assistant United States Attorney


-21-