UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

      v.                        Crim. No. 05-359-0p, -2,-3  **(RMU)**

DOUGLAS JEMAL, et al

**GOVERNMENT'S REPLY TO
DEFENDANTS' CONSOLIDATED OPPOSITION
(SET FORTH IN DEFENDANT'S FILING DOCUMENT 881
TO GOVERNMENT'S MOTIONS IN LIMINr**

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendants' Consolidated Opposition to Government's Motions in Limine, as set forth in Document 88.'

    I.   Reply to the Defendants' Opposition to the Goverment Motion
        In Limine related to the "Involvement of Others" Defense

The issue as to the latitude of the defendants to elicit testimony - on direct or on cross - that other individuals in the city Government were involved in the decisions made by Lorusso is likely to be joined witness-by-witness. The government has recognized that others were involved. Nonetheless, the fundamental legal principle must still pertain; it is no defense to the charge of bribing Lorusso that others may have been involved in some of the decisions in which he played a part, or that he lacked the power, by himself, to carry out acts, for which he was bribed. To the extent the defendants directly or indirectly attempt to elicit evidence related to the involvement of others, the government will request the Court to instruct and remind the jury

---

'     The full caption is: Defendants' Consolidated Opposition's to Government's Motion in Limine to Preclude Defendants from Introducing Evidence or Arguing That Others in Addition to Michael Lorusso Were Involved in Government Decisions and Government's Motion in Limine to (1) Preclude Defendants from Introducing Evidence to Suggest That Michael Lorusso's Actions Benefitted the Public Interest and (2) Preclude Defendants from Eliciting Testimony from Expert Witness as to Reasonableness of 77 P Street Leases.

clearly and in no uncertain terms of the applicable law making such evidence irrelevant. Moreover, defense counsel should be cautioned from implying in tone or, in context in opening statement that the involvement of others is in any way a defense.

    II.  Reply to the Defendants' Opposition to the Government Motion In Limine
    <u>Related to the "D.C. Government Benefitted/Lease Terms were Repsonable" Defense.</u>

The defendants persist in claiming their right to introduce testimony that the leases at issue "benefitted" the District of Columbia and were "commercially reasonable." The defendant. concede it is not a defense to the bribery charges, but instead say they will offer this as "circumstantial proof' bearing on their intent, though they do not explain the difference-for such evidence can bear on intent only if it is probative of non-culpable intent, and the law soundly rejects this inference.

The essence of defendants' argument is that the government's proof of their intent to bribe the D.C. Government is in some way negated if they can show that hey did not, at the sam time, intend to commit fraud in the lease terms as well. But there is no logic to linking these wo concepts, because it is clear that bribes can be made to influence "commercially reasonable" transactions.  As but one example, suppose the sales representative for a military equipment manufacturer proposed to sell $1 billion of weapons to the United States Army, and in doing so bribed the government's contracting official by paying him $100,000. According to the defendants, it would be relevant to the defense to the charge of bribery that: 1) the government "benefitted" from the arms purchases, and 2) the terms of the sale price were otherwise "commercially reasonable," that is, that the government was not overchat,ged. According to the defendants, in the face of such charges, an accused should be able to introduce evidence of what

a great deal the government got (that is, the "commercial reasonableness'i of the transactions), and how valuable the arms were to the national security (that is, how the government "benefitted"), because, as defendants seem to imply, why would the company bribe a governmen official unless there were fraud, overcharging, and other harms to the government at the same time?

This example is apt. In this case, Douglas Jemal stood to gain abut $100 million in leasing income, and stood to be able refinance a construction loan and obtain cash to pad *off* debts as a result of leasing 77 P Street in full.   Moreover, he is not the only landlord in town. As with the above example, it is irrelevant if the D.C. Government may have "benefitted" from this transaction or obtained "commercially reasonable" lease terms, just as it would be irrelevant in the prior example if the United States "benefitted" from the military equipment or obtained the military equipment at "commercially reasonable" terms, if the evidence otherwise demonstrated the defense contractor obtained the contract through a bribe.

Fundamentally, the crime of bribery is designed to ensure that the' processes of government decision-making - such as the decisions to lease office space - are not corrupted by improper inducements. Indeed, one can only imagine the outrage of defendant Douglas .Penal if he were to learn that he lost out on efforts to lease real estate to the D.C. 4overnment to another real estate contractor who bribed the Deputy Director of the D.C.  Government's Office of Property Management. It would hardly be a comfort to Mr. Jemal, and hardly a defense at the bribery trial of the real estate contractor who obtained the city lease through bribes, were it to be established that notwithstanding the corruption of the contracting process, the resulting lease terms were "commercially reasonable" and the city thereby "benefitted." To the contrary, the

crime is complete when the bribe is paid or promised. In this case, therefore, it is truly of academic interest that an "expert" 5 years after the fact has concluded the, city "benefttcd" from the 77 P Street leases. The lack of relevance to this testimony is clear, and its potential to confuse the jury compels the conclusion that whatever probativeness it may possess - and we maintain it possesses none whatsoever - is far outweighed by its prejudice, consumption of time, and potential to confuse the jury. The Court should not allow such testimony in the trial.

Thus, for reasons set forth in the Government's proposed instructions, neither the defendants' proposed "benefit to the government" evidence nor its proposed "commercial reasonableness" theory is a defense, and the admission of such evidence is absolutely contrary to law as it relates to the bribery charges.

Having essentially conceded this evidence is not admissible in the bribery case, the defendants seek to introduce it in connection with the Mail Fraud charges. But this fails because the defendants are not charged with Mail Fraud in connection with the lease ternis.

In this regard, the heart of the defendants' argument consists of three illogical, inaccurate, and misleading assertions used to support the ultimate unfounded conclusion they urge on this Court. The government takes them in turn:

> Defendants argue: "[P]roof demonstrating reasonableness of the leases is relevant to an actual element of the offense of Mail Fraud'- Defendants' specific intent to defraud the D.C. Government."
>
> **Government's response:** In truth and in fact, contrary to ,the implication suggested by the defendants, neither Mail Fraud theory set forth in the Indictment charges that the defendants overcharged the D.C. Government in connection with 77 P Street leases; it is no defense to the charge that the defendants intended to defraud the D.C. Government in connection with one chat{ged transaction that the, did not intend to defraud in connection with another.

- **Defendants' second sentence:** "It is self-evident that, all 'things being equal, the D.C. Government would seek to enter into commercially reasonable or valuable transactions."

  **Government's response:** This is true as far as it goes, but it is incomplete: what the D.C. Government wants - and is entitled to as a matter~ of law - is a fair process, consisting of arms length bargaining by public officials "free from deceit, favoritism, bias, self-enrichment, self-dealing and conflict of interest." Indictment at 16. The defendants may wish to strike the balance so that a jury should be able to weigh the benefits of "commercial reasonableness" agdinst the harm of a government for sale. Fortunately, the laws, as enacted by Congress and the Courts, treat the resulting "reasonableness" of the transaction as irrelevant.

- **Defendants'** third sentence: "The decision to enter into such transactions would not require any inducement or fraud on Defendants' part because of their objectiv value to the District."

  **Government's response:** If this were the case, no automobile or computer manufacturers would offer rebates, no clothing stores would offer discounts, indeed no seller of merchandise would ever seek to "include" a purchaser to part with his or her money by negotiating discounts, rebates, o¢, in this case bribes, because of the "objective value" of the items to the purchaser. According to the defendants, they should be permitted to argue to the jury that, so long as the tennis of the transaction are, at the end of the day, within the ream of "commercial reasonableness" the "decision to enter such transactions [by the Government] would not require any inducement." Not only is this arguthwnt illogical, but we submit that the Court can easily conclude it flies in the face of human experience.

- **Defendants' conclusion:** Therefore, evidence that the transactions at issue were valuable or commercially reasonable necessarily bears on Whether Defendants had the specific intent to defraud the D.C. Government.

  **Government's response:** Because the prior three steps in the defendants' argument are so profoundly flawed, the conclusion is flawed as well.

Indeed, the government submits that the true state of the law is precisely contrary to the assertiot advanced by the defendants, and indeed, "evidence that the transactions at issue were valuable o commercially reasonable" in the context of the 77 P Street leases <u>has absolutely no relationship whatsoever</u> to "whether Defendants had the specific intent to defraud the'D.C. Government" m

connection with the other acts at issue.

Finally, we urge the Court to treat with caution the self-serving add bootstrapping assertions that the contested evidence at issue in this Motion "will form a necessary and crucial part of the defense case;" Consolidated Opposition at p. 2, or "a necessary component of the jury's consideration of the entire case at trial," Id. at p.5, or that certain testimony is of "particula importance." Calling inadmissible evidence "important" or "crucial" does not render it admissible, and such labels add nothing to the defendants' arguments. The government is on solid ground; it has cited black letter law and standard jury instructions for the principles on which it relies.

Although the defendants have argued in their Motions in Limine that the Government's offers of proof of certain issues (such as amended returns, proof that Douglas Development \s is facing a barrage of law suits from unpaid vendors) will invite a parade of horribles, threatening "mini-trials" and the use of precious Court resources, it is the defendants', that seem determined t introduce evidence, including complicated expert opinion, the admission of which flies squarely in the face of settled law. The government certainly recognizes the right of the defendants to present their case. The government simply seeks that the Court hold the defendants to the presentation of evidence, no matter how complex, which, if fairly admitted, would actually set forth a defense, notwithstanding the defendants' claims that such evidence is "important.

WHEREFORE, the Government respectfully requests that the Court Grant Government's Motions in Limine to (1) Preclude Defendants from Introducing Evidence to Suggest That Michael Lorusso's Actions Benefitted the Public Interest and (2) Preclude Defendants from Eliciting Testimony from Expert Witness as to Reasonableness of 77 P Street Leases. .

                                                RESPECTFULLY SUBMITTED,

                                                KENNETH L. WAINSTEIN
                                                DC Bar No. 451058.
                                                UNITED STATES ATTORNEY

By:

                                                MARK H. DUBESTER
                                                ASSISTANT UNITED STATES ATTORNEY
                                                DC Bar No. 339655
                                                TIMOTHY G. LYNCH
                                                ASSISTANT UNITED STATES ATTORNEY
                                                555 Fourth Street, N.W., Room 5917
                                                Washington, D.C. 20530
                                                Ph. (202) 514-7986

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 18th day of July, 2006, 1 caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire'
Counsel for Blake C. E,sherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman Di Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

Timothy G. Lynch
Assistant United States Attorney