# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES**                   )
                                    )
  **v.**                  )  **Crim. No.  05-359-1, -2, -3 (RMU)**
                                    )
**DOUGLAS JEMAL**, *et al.*,        )
                                    )
  **Defendants.**         )
_____ )

## <u>JOINT PRETRIAL STATEMENT</u>

### July 18, 2006

Mark H. Dubester
Timothy G. Lynch
Assistant United States Attorneys
555 4th Street, N.W.
Room 5233
Washington, D.C. 20530
(202) 353-4862

Reid H. Weingarten
Brian M. Heberlig
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES            )

v.                           )       Crim. No.  05-359-1, -2, -3 (RMU)

DOUGLAS JEMAL, *et al.*,     )

Defendants.         )

_____ )

## JOINT STATEMENT OF THE CASE

This is a criminal case brought against Douglas Jemal, Norman D. Jemal and Blake Esherick.  The Defendants are principals in Douglas Development Corporation ("DDC"), a private company that develops, leases and manages commercial real estate in the District of Columbia.  Count One of the Indictment alleges that, in or about 2001 through 2004, the Defendants engaged in a Conspiracy to Commit Bribery by corruptly providing things of value to a former Deputy Director of the District of Columbia's Office of Property Management named Michael Lorusso with intent to influence him in the performance of official acts.  Count Two alleges that, in or about 2001 and 2002, the Defendants committed Bribery through that conduct.  Count Three alleges that, in or about 2001 and 2002, the Defendants committed Mail Fraud in two ways: by engaging in a scheme to deprive the District of Columbia of money and property through

false representations and promises and a scheme to deprive the people of the District of Columbia of the honest services of Mr. Lorusso. Count Four alleges that Blake Esherick committed First-Degree Fraud in connection with the preparation and submission for payment of a fraudulent invoice. Count Five alleges that, in or about 2002 through 2005, the Defendants committed Wire Fraud in connection with the preparation and submission of a document submitted to Morgan Stanley to obtain monies as part of a loan. Counts Six through Eight allege that Defendants Douglas Jemal and Blake Esherick -- but not Norman Jemal -- committed Tax Evasion in connection with Defendant Esherick's personal income tax obligations for calendar years 2001, 2002 and 2003 respectively. The Defendants deny all charges and have pleaded not guilty.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
**UNITED STATES** )
)
**v.** ) **Crim. No.  05-359-1, -2, -3 (RMU)**
)
**DOUGLAS JEMAL,** *et al.*, )
)
**Defendants.** )
_____ )

## PROPOSED *VOIR DIRE* QUESTIONS

# PROPOSED *VOIR DIRE* QUESTIONS –

# PARTIES  IN AGREEMENT

1.      Permit Government Attorneys to introduce themselves and other personnel who may assist them at counsel table.  Do you know anyone at government's counsel table or believe you have had contact with them, or have any of you heard of any of them?

2.      Permit Defense Attorneys to introduce themselves and other personnel who may assist them at counsel table.  Do you know any of the defense lawyers or defense personnel, or have any of you heard of any of them?

3.      Knowledge of the Defendants.  Do any of you know the defendants, Douglas Jemal, Norman Jemal, Blake Esherick, or believe that you have had contact with them, or have any of you heard of them?

4.      Knowledge of Douglas Development Corporation.  Douglas Jemal owns and operates a company called Douglas Development Corporation, with

-2-

offices located at 702 H Street, Northwest.  Do any of you know of Douglas

Development Corporation, other than perhaps seeing that name on a sign or

building?  Have any of you engaged in any business with Douglas Development

Corporation?

5.    <u>Knowledge of the facts of this case</u>.  As I have stated, the Indictment

alleges that some or all of the defendants bribed a D.C. Government official,

submitted false invoices to the D.C. Government, committed tax evasion, and

submitted a false document to a financial institution.  As noted, the defendants

deny these charges.  Have any of you heard of these charges?  Do any of you have

first-hand knowledge of any of the facts and circumstances of this case?

6.    <u>Knowledge of D.C. Government's real estate operations.</u>  During the

course of the presentation of evidence, you are likely to hear of certain leases

executed by the D.C. Government in the nature of renting space for various D.C.

Government agencies.  You are likely to hear about the following agencies of the

D.C. Government involved in real estate and other issues:

(a)    Office of Property Management;

(b)    Office of Deputy Mayor for Economic Development.

Are there any among you who have particular knowledge or familiarity with the

D.C. Government's handling of real estate or leasing matters?

7.  <u>Knowledge of certain facts likely to be part of trial</u>.  You are also likely

to hear reference to the following D.C. Government agencies and circumstances

surrounding their move to 77 P Street, N.E. in 2001 and 2002:

(a)    Department of Employment Services;

(b)    Department of Mental Health;

(c)    Department of Human Services;

(d)    Department of Transportation.

Are there any among you who have particular knowledge or familiarity with the

circumstances surrounding the moves of the above agencies to 77 P Street?

-4-

8.     <u>Knowledge of certain facts likely to be part of trial</u>.  Similarly, you are also likely to hear reference to the Department of Public Works' move of the D.C. Government's impoundment lot to 4800 Addison Road, in Capitol Heights, Maryland.  Are there any among you who have particular knowledge or familiarity with the circumstances surrounding the move of the impoundment lot to 4800 Addison Road?

9.     <u>Knowledge of real estate business</u>.   Have any of you ever worked for or been involved in commercial real estate, generally described as the buying, selling, or leasing of commercial properties, such as office buildings or other properties used for business.  Is there anything about your experience that would affect your ability to be a fair and impartial juror in this case?

10.     <u>Knowledge of construction business</u>.   Have any of you ever worked for a real estate construction company?  Is there anything about your experience that would affect your ability to be a fair and impartial juror in this case?

11.     <u>Knowledge of business generally</u>.  Have any of you run your own business?  Is there anything about your experience that would affect your ability to

be a fair and impartial juror in this case?

12.     <u>Knowledge of government contracting</u>.  Have any of you ever been involved in government contracting, either by working for the federal government District of Columbia, or by working for a company doing business with the government?  Is there anything about your experience that would affect your ability to be a fair and impartial juror in this case?

13.     <u>Knowledge of accounting</u>.  Do any of you have particular accounting experience or have any of you worked in an accounting position, such as accounts payable, accounts receivable, or some similar accounting job?  Is there anything about your experience that would affect your ability to be a fair and impartial juror in this case?

14.     <u>Knowledge of tax preparation</u>.  Do any of you have particular experience in preparing personal or corporate tax returns?  Is there anything about your experience that would affect your ability to be a fair and impartial juror in this case?

15. <u>Knowledge of computers</u>. Do any of you have particular computer or information technology training or expertise, other than routine use of a personal computer? Is there anything about your experience that would impact your ability to be a fair and impartial juror in this case?

16. <u>Knowledge of banking</u>. Have any of you ever worked for a financial institution in a capacity in which you have been involved in handling loans? Is there anything about your experience that would affect your ability to be a fair and impartial juror in this case?

17. <u>Experience with taxes and Internal Revenue Service</u>. Have any of you ever been the subject of a tax investigation, such as an audit, or otherwise had encounters with the Internal Revenue Service or any state or local taxing authority concerning payment of taxes? Is there anything about your experience that would affect your ability to be a fair and impartial juror in this case?

18. <u>Knowledge of witnesses</u>. The parties will now introduce the individuals -- either in person or by name -- that they expect will testify in this trial or will be prominently mentioned.

— Do any of you know the individuals listed by the government?

— Do any of you know the individuals listed by the defense?

Questions Related to General Qualifications

19.    Do any of you know any other member of the jury panel, for example, from work, school, socially, prior jury service or the neighborhood?

20.    Some of the potential witnesses in this case are law enforcement agents in the Federal Bureau of Investigation or Internal Revenue Service.  Would any of you be more likely to believe the testimony of a law enforcement officer merely because the witness is a law enforcement officer?  Would any of you be less likely to believe the testimony of a law enforcement officer merely because the witness is a law enforcement officer?

21.    Is there any juror who believes that because the charges involve the District of Columbia's local government, your ability to render a fair and impartial verdict might be affected in any way?

-8-

22.     Are you, or a close friend or relative, now employed, or have you ever been employed by a law enforcement agency or correctional facility or agency? By that I mean the Metropolitan Police Department, any of the various government offices of Inspectors General, FBI, CIA, Capitol Police, Secret Service, United States Attorney's Office, the Drug Enforcement Administration, the United States Park Police, the District of Columbia Department of Corrections, the United States Bureau of Prison, or any other police department or correctional facility or agency.

23.     Has any member of the jury panel, a close friend or relative studied law or had any legal training?  This question includes law school, paralegal, or post-graduate training.

24.     Have you, or a close friend, or a relative ever been employed by a defense attorney or by an investigator working for a defense attorney?

25.     Has any member of the jury panel applied for employment with the United States Attorney's Office, the Office of the Federal Public Defender, or the Office of the District of Columbia Public Defender Service?

-9-

26.    Has any member of the jury panel ever served on a grand jury?


27.    Has any member of the jury panel ever served on a trial jury?


28.    The United States and the Defendants are entitled to have this case heard by a fair and impartial jury that will decide this case solely according to the evidence admitted in this Court and according to the Court's instructions on the law. The law provides that the jury may not be governed by sympathy, prejudice, or public opinion. With this in mind, is there any reason why you would be unable to give either the United States or the Defendants a fair trial based solely on the evidence submitted at trial and the instructions given by the Court?


29.    Do any of you have any strongly held beliefs, whether moral, religious, philosophical, ethical, political, or otherwise, that would prevent you from being a fair and impartial juror in this case?


30.    Do any of you know of any reason that would make it difficult for you to sit in judgment of the Defendants in this case and pronounce them either not guilty or guilty, as the evidence may warrant?

31.    Have any of you, at this time before the trial and before any evidence has been presented, formed an opinion as to the guilt or innocence of Douglas Jemal, Norman Jemal, or Blake Esherick?

32.    There has been a lot of recent publicity about bribery of public officials.  Is there any juror who believes that because the charges involve allegations of bribery of a public official, your ability to render a fair and impartial verdict might be affected in any way?

33.    Do any of you have any reservations concerning the administration of criminal justice in the courts that would prevent you from rendering a fair and impartial verdict in this case?

34.    Has any member of the jury panel, any family member, or close friend been a witness to, a victim of, charged with a crime, or been the subject of a criminal investigation?

35.    Have you, or has any member of your family, either as an individual, or in the course of business, ever been a party to any legal action or dispute with

the United States, or with any of the officers, departments, agencies, or employees

of the United States, including the Federal Bureau of Investigation, or any other

law enforcement agency, other than a routine traffic case?  Have you, or has any

family member, either as an individual, or in the course of business, ever had any

legal, financial, or other interest in any such legal action or dispute, or its

outcome?

36.     Have you, or has any member of your family, either as an individual,

or in the course of business, ever been a party to any legal action or dispute with

the District of Columbia or another local government or government agency, other

than a routine traffic case?  Have you, or has any family member, either as an

individual or in the course of business, ever had any interest in any such legal

action or dispute, or its outcome?

37.     When jury selection is completed today, we will begin the trial.  We

expect that the evidence portion of the trial may last as long as six weeks, with

jury deliberations to follow thereafter.  Is there any member of the jury panel who

has an urgent or extremely important matter to attend to in that rough time period

such that you could be faced with a hardship if selected for the jury in this case?

38.    Do any of you have any hearing problems, illnesses, or other medical conditions that would make it difficult for you to sit as a juror in this case?  Do any of you need to take any medication that might cause drowsiness or otherwise make it difficult for you to remain alert and attentive during these proceedings?

39.    Many exhibits will be presented on the monitors located in the courtroom.  Are there any of you who would have difficulty with evidence presented in this fashion?

40.    Do any of you have home or family obligations that require you to be home at a certain time each day?

41.    Are any of you suffering from a sight problem uncorrected by glasses, a hearing problem, or any other health problem that would make it difficult for you to serve as a juror?

42.    Are any of you taking medication that you must receive at particular times of the day?

-13-

43.    Do any of you have a standing appointment with a physician to receive medication?

44.    Do any of you know of any other reason why you cannot sit as a juror in this case and render a fair and impartial verdict based solely upon the evidence and the law as you shall hear it?

45.    Have any of you ever been a witness in a civil or criminal case?

46.    From this point until the time when you retire to deliberate your verdict, it is your duty not to discuss this case, and not to remain in the presence of other persons who may be discussing this case.  The rule about not discussing the case with others includes discussions even with members of your own family, your friends, and the other jurors.  Will anyone have any difficulty complying with this instruction?

47.    As a juror, you will also be instructed not to read, watch, or listen to any media accounts about this case or the trial throughout the duration of this trial and your deliberations.  Will anyone have any difficulty complying with this

instruction?

# PROPOSED *VOIR DIRE* QUESTIONS –

# PARTIES  IN DISPUTE

Government's Proposal:

The government requests the following additional *voir dire* question:

1.      Have any of you ever been on a jury that failed to reach a unanimous verdict?

Defendants' Objection:

Defendants object to this question because it is irrelevant.

# PROPOSED *VOIR DIRE* QUESTIONS –

# PARTIES  IN DISPUTE

Defendants' Proposal:

Defendants request the following additional *voir dire* questions (see following pages).

Defendants also propose that for questions involving jurors' employment with law enforcement, prior experience as witness, juror, or grand juror, whether they have ever been charged with a crime or investigated, ever been a victim of a crime, or involved previous lawsuits, jurors with an affirmative response be asked to stand (or raise their hands) and then approach the bench individually where they may be questioned confidentially in more detail.

Government's Objections:

1.    Appropriateness of Federal Government Prosecution of Local Corruption Cases.  The government respectfully opposes defendants' proposed *voir dire* question inquiring about the appropriateness of the federal government prosecuting local corruption cases.  The federal government has this power, and jurors' views on this subject are irrelevant.  In truth, the question does not seek to identify jurors with particular views so much as it seeks to plant a prejudicial and inappropriate notion with the jury about federal interference in local affairs.  It is highly inappropriate and should be stricken.


2.    Prosecution of White Collar Cases with "Unusual Vigor."  The government respectfully opposes defendants' proposed *voir dire* question inquiring whether white collar offenses should be prosecuted "with unusual vigor."  The proposed question nowhere defines what is "usual" and what is "unusual" and presupposes that there is such a thing as overly vigorous enforcement.  The proposed question will not elicit relevant information and is obviously designed to cast aspersions on the motives and conduct of the government.  It is highly inappropriate and should be stricken.

-18-

3.     <u>D.C. Employees</u>.  The government respectfully objects to defendants'
proposed *voir dire* question inquiring whether any juror, or his or her family
member, is an official or employee of the District of Columbia.  The District of
Columbia has tens of thousands of employees, many of whom are called to jury
service or have relatives who are called to serve.  The government submits that,
when considering (1) the amount of time it will take to question the many
prospective jurors who will answer this question affirmatively and (2) the minimal
value of learning about everyone who, for example, has a great aunt who works as
a secretary at an agency that was not involved in the facts of the case, the question
is not worth the effort.

4.-8.   <u>Willingness to Follow Law</u>.  The government respectfully
opposes defendants' proposed *voir dire* questions four through eight.  Each
of these questions purports to set forth a particular rule of law and then
asks whether jurors would be willing to follow the particular rule.
(Notably, it does not pick and choose particular rules that are arguably
"beneficial" to the government and ask whether the prospective jurors will
follow those rules.)  The government does not necessarily disagree with the

statements of law, but it is more efficient and fair to ask prospective jurors <u>once</u> if they understand that they are judges of the facts, not of the law, and that they have a duty to follow the Court's instructions. The Court will thoroughly instruct the jury about the law.

        9.    <u>Personal Questions</u>. The government respectfully opposes defendants' proposed *voir dire* question seeking greater information about each particular juror than what is provided by the jurors' office. The government believes the jury pool members are already making great sacrifices in terms of missing work or appointments. They should not be forced to endure the highly intrusive personal questions posed by defendants. For example, defendants seek to force each and every prospective juror to provide such obviously irrelevant information as their reading habits, their hobbies and leisure-time activities, and their favorite television programs. Will the parties really be better off if they know that a particular prospective juror likes to bowl?

     But the defendants' proposal does not merely wish to pry into the prospective jurors' exercise of their First Amendment rights, it also demands complete resumes for the preceding five years; and it not only demands

prospective jurors' resumes, it also makes jurors provide five years' worth of employment information about their spouses and working children, and for any adult sharing their household. Will the parties really be better off if they learn that an elderly parent who lives with a prospective juror has not worked in the past four years but worked at Hechts four and a half years ago?

Yet the defendants want still more: each juror will have to be prepared to report to the Court under oath about his or her educational background ("including the highest degree obtained and area(s) of concentration"), the same detailed educational background of his or her spouse and working children, and the same detailed educational background of any other adult in the household. Will the parties really be better off position if they know that a prospective juror's spouse had a minor in history or got a certificate in forestry management?

If the prospective jurors are not exhausted and offended by that point, they will get to report under oath to the Court about where they have lived for each of the past ten years "(county and village, town or neighborhood)" and this same extensive background-check information about their spouses and their working children and any adult sharing the household. Will the parties really be better off to learn all the counties and villages in which a prospective juror(s working son has lived in the past decade?

In sum, the defendants have no right to impose these types of intrusive questions on prospective jurors.  Indeed, such highly intrusive questions run the risk of making jurors fearful or intimidated by defendants' access to their personal lives.

# PROPOSED *VOIR DIRE* QUESTIONS –

# PARTIES  IN DISPUTE

Defendants' Proposed Additional Questions:

1.      Is there any juror who believes that it is particularly appropriate or inappropriate for the federal government to be involved in prosecuting local government officials?

2.      The charges at issue are bribery, mail fraud, wire fraud, and tax evasion.  Is there any juror who believes that such charges should not be prosecuted or that they should be prosecuted with unusual vigor?

3.      Is any juror an official or employee of the District of Columbia local government?  Is any member of your family an official or employee of the District of Columbia local government?  Do any of you know, or have any association -- professional, business, or social -- with any official or employee of the District of Columbia local government?

4.     As I told you at the outset, the government's allegations and the indictment in this case are not evidence and merely describe the charges made against the Defendants.  The indictment may not be considered by you as any evidence of the guilt of the Defendants.  Is there any juror that will have difficulty in following this rule of law?

5.     I will instruct you that the burden is on the government to prove each defendant's guilt on each element of the crimes with which he is charged beyond a reasonable doubt.  This burden never shifts to the Defendants for the simple reason that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.  Is there any juror that would have difficulty accepting that this burden falls upon the government and that at no time are the Defendants required to produce any evidence?

6.     I will instruct you that the law presumes the Defendants to be innocent of all the charges against them.  This presumption of innocence alone is sufficient to acquit a defendant unless you as jurors are unanimously convinced beyond a reasonable doubt of his guilt, after a careful and impartial consideration of all of the evidence in this case.  If the government fails to sustain its burden,

you must find the Defendants not guilty.  Is there any juror who would have any

difficulty following these instructions and according the Defendants the

presumption of innocence to which the U.S. Constitution entitles them?

7.     I will instruct you that under the U.S. Constitution, the Defendants

have no obligation to testify or to present any other evidence because it is the

prosecution's burden to prove a defendant guilty beyond a reasonable doubt.  A

defendant is never required to prove that he is innocent.  As a result, no adverse

inference may be drawn against the Defendants if they do not take the witness

stand and you may not consider this against the Defendants in any way in your

deliberations in the jury room.  Is there any juror that would have difficulty

following this instruction and who feels that he or she could not render a fair

verdict if the Defendants choose not to testify?

8.     Does any juror believe that because the Defendants are charged with a

crime, that they are probably guilty of something?

9.     With respect to each juror, please provide the following information:

(a)    The juror's age;

(b)    The area in which the juror resides, and any other area in which the juror has resided during the last ten years (county and village, town or neighborhood);

(c)    The juror's educational background, including the highest degree obtained and area(s) of concentration;

(d)    The juror's current occupation;

(e)    The name and location of the juror's employer;

(f)    The period of employment with that employer;

(g)    The nature of the juror's work;

(h)    The same information concerning other employment within the last five years;

(i)    The same information with respect to the juror's spouse, any other adult living in the same household, and any working children of the juror;

(j)    What newspapers and magazines the juror reads;

(k)    What television programs the juror regularly watches;

(l)    The juror's hobbies and leisure-time activities.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

                       )

**UNITED STATES**       )

                       )

     **v.**                 )     **Crim. No.  05-359-1, -2, -3 (RMU)**

                       )

**DOUGLAS JEMAL, *et al.*,**   )

                       )

       **Defendants.**    )

_____ )

## PROPOSED JURY INSTRUCTIONS

The parties have conferred and attempted to resolve disagreements over proposed jury instructions. However, disagreements over fundamental legal issues have prevented the parties from reaching agreement.

# PROPOSED JURY INSTRUCTIONS – PARTIES IN AGREEMENT

The parties jointly request the following instructions.  All are from the Red Book unless otherwise noted:

[    ]      The Government as a Party [from 1 Leonard B. Sand et al., <u>Modern Federal Jury Instructions – Criminal</u> ¶ 2.01 Instr. 2-5 (Matthew Bender)]

1.01        Evaluation of Prior Inconsistent Statement of a Witness

1.16        Cautionary Instruction on Publicity

2.13        Number of Witnesses

2.22A       Witness With a Plea Agreement

2.23        Testimony of Immunized Witness

2.27        Right of Defendant Not to Testify

2.28        Defendant as Witness

2.41        Missing Witness or Other Evidence (if applicable)

2.42        Character and Reputation of Defendant

2.51A       Evidence of Other Crimes Admitted to Show Motive, Identity or Common Scheme or Plan [also adapted from Model Crim. Jury Instr. 9th Cir. 3.10 (2003)]

2.54        Multiple Defendants -- Multiple Counts

2.55        Evidence Admitted Against One Defendant Only

[    ]        Bribery:  Recipient Was a Public Official Explained [from 1 Leonard
                      B. Sand et al., <u>Modern Federal Jury Instructions – Criminal</u> ¶ 16.01
                      Instr. 16-5 (Matthew Bender)]

4.41      First-Degree Fraud:  The Essential Elements of the Offense Charged

[    ]        Redactions (if warranted)

[    ]        Declarations

## The Government as a Party

You are to perform the duty of finding the facts without bias or prejudice as to any party.  You are to perform your final duty in an attitude of complete fairness and impartiality.

The case is important to the Defendants, who are charged with serious crimes.  Equally, it is important to the government, for the enforcement of criminal laws is a matter of prime concern to the community.

The fact that the prosecution is being brought in the name of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation.  By the same token, it is entitled to no less consideration.  All parties, whether government or individuals, stand as equals at the bar of justice.

Authority:    Adapted from 1 Leonard B. Sand et al., Modern Federal Jury Instructions - Criminal ¶ 2.01 Instr. 2-5 (Matthew Bender).

## Evaluation of Prior Inconsistent Statement of a Witness

You have heard evidence that [name of witness] made a statement on an earlier occasion and that this statement may be inconsistent with his/her testimony here at trial. This earlier statement was brought to your attention to help you in evaluating the witness' believability here in court. In other words, if on an earlier occasion the witness made a statement that is inconsistent with his/her testimony in court, you may consider the inconsistency in judging the credibility of the witness. You may not consider this earlier statement as proof that what was said in the earlier statement was true.


Authority:    Red Book Instr. 1.10.

## **Cautionary Instruction on Publicity**

In some cases, although not necessarily this one, there may be reports in the newspaper or on the radio or television concerning the case while the trial is going on. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not listen to or read such reports, and you must decide this case solely on the evidence presented in this courtroom. You must consider only evidence that meets certain standards in reaching your verdict. For example, a witness may testify about events he himself has seen or heard, but he generally may not testify about matters which others have told him about. Also, witnesses must be sworn to tell the truth and must be subject to cross-examination. News reports about this case are not subject to any of those standards, and if you read, listen to, or watch these reports, you may be exposed to misleading or inaccurate information that unduly favors one side of the case, and to which the other side is unable to respond. Therefore, you must completely disregard any press, television, or radio report that you my read, see, or hear. Such reports are not evidence and you should not be influenced in any manner whatsoever by such publicity. If any publicity about this trial inadvertently comes to your attention during trial, do not discuss it with other jurors or anyone else.

Just let me or my clerk know as soon after it happens as you can.  I will then

briefly discuss it with you to make sure it does not present any problems.

     In fairness to both sides, it is essential that you comply with this instruction.


Authority:    Red Book Instr. 1.16.

## **Number of Witnesses**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side, or you may find to the contrary.

Authority:    Red Book Instr. 2.13.

## Witness With a Plea Agreement

You have heard evidence that [name of witness] entered into a plea agreement with the government pursuant to which [name of witness] agreed to testify truthfully in this case and the government agreed to [dismiss or decline prosecution of one or more charges against him/her] and/or [bring [name of witness'] cooperation to the attention of the sentencing court on the remaining charge(s) of [name of charge(s)]].

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the Defendants on the basis of this testimony alone, if it convinces you of the Defendants' guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness, because the plea agreement does not protect him/her against a prosecution for perjury or false statement, should s/he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from any other witness. A witness who realizes that s/he may be able to obtain his/her own freedom, or receive a lighter sentence by giving testimony may have a motive to lie. The testimony of a witness who has

entered into a plea agreement should be received with caution and scrutinized with

care.  You should give the testimony such weight as in your judgment it is fairly

entitled to receive.


Authority:   Red Book Instr. 2.22A.

## **Testimony of Immunized Witness**

You have heard evidence that [name of witness] has received immunity. What this means is that the testimony of the witness may not be used against him/her in any criminal case. You should consider whether such testimony may be colored in such a way as to further the witness' own interest, for a witness who realizes that s/he may [obtain his/her own freedom] [receive a benefit] [avoid prosecution] by incriminating another may have a motive to lie. However, you may also consider that the witness is under the same obligation to tell the truth as is any other witness, because the grant of immunity does not protect him/her against a prosecution for perjury or false statement, should s/he lie under oath.

The testimony of a witness as to whom immunity has been granted should be received with caution and scrutinized with care. You should give the testimony such weight as in your judgment it is fairly entitled to receive.

Authority:    Red Book Instr. 2.23.

## Right of Defendant Not to Testify

Every defendant in a criminal case has an absolute right not to testify.

[Insert defendants' names] have chosen to exercise their right to remain silent.

You must not hold this decision against them, and it would be improper for you to

speculate as to the reason or reasons for their decision, and I, therefore, instruct

you not to do so.  Most importantly, you must not draw any inference of guilt from

the Defendants' decision not to testify.


Authority:    Red Book Instr. 2.27.

## Defendant as Witness

Each defendant has a right to become a witness in his own behalf.  His testimony should not be disbelieved merely because he is a defendant.  In weighing his testimony, however, you may consider the fact that a defendant has an interest in the outcome of this trial.  As with the testimony of any other witness, you should give a defendant's testimony such weight as in your judgment it is fairly entitled to receive.

Authority:    Red Book Instr. 2.28.

**<u>Missing Witness or Other Evidence</u> (if applicable)**

If [evidence material to] [a witness who could have given material testimony on] an issue in this case was peculiarly within the power of one party to produce, was not [produced] [called] by that party, and [its] [his/her] absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the [evidence] [witness' testimony] would have been unfavorable to the party which failed to [produce it] [call him/her]. However, you should not draw such an inference from [evidence which] [a witness who] was equally available to both parties or [which] [whose testimony] would have been merely cumulative or immaterial.


Authority:    Red Book Instr. 2.41.

## **Character and Reputation of Defendant**

[Name of defendant] has introduced testimony that [he has a good reputation in the community for [character trait]] [in the witness' opinion, the defendant is a [character trait] person].  Such evidence may indicate to you that it is unlikely that a [character trait] person would [commit the crime charged] [testify untruthfully].  You should consider this evidence together with other evidence in the case in determining the guilt or innocence of [name of defendant], and should give it such weight as in your judgment it is fairly entitled to receive.

Notwithstanding this character evidence, it is your duty to convict if, after weighing all the evidence, you are convinced beyond a reasonable doubt that [name of defendant] is guilty of the crime charged.  On the other hand, the circumstances may be such that evidence of good character alone may create a reasonable doubt as to a [name of defendant]'s guilt, although without it the other evidence would be convincing.  If you have a reasonable doubt as to [name of defendant]'s guilt, you must find him not guilty.


Authority:    Red Book Instr. 2.42.

## Evidence of Other Crimes Admitted to Show
## Motive, Identity or Common Scheme or Plan

You have heard evidence that [name of defendant] [describe other crimes evidence].  It is up to you to decide whether to accept that evidence.

If you find that [name of defendant] [describe the other crimes conduct], consider that evidence only for the limited purpose of deciding whether [name of defendant] had a motive to commit [the offense[s] charged in the Indictment].

If you conclude that [name of defendant] had such a motive you may consider the existence of that motive in helping you decide whether the government has proved beyond a reasonable doubt that [name of defendant] is the person who committed [the offense[s] charged in the Indictment] [describe the contested issue].

You may not consider this evidence for any other purpose.  [Name of defendant] has not been charged with any offense relating to [describe the other crimes conduct], and you may not consider this evidence to conclude that [name of defendant] has a bad character, or that [name of defendant] has a criminal personality.  You are here only to determine whether [name of defendant] is guilty or not guilty of the charges in the Indictment.  Your determination must be made only from the evidence in the case.  [Name of defendant] is not on trial for any

-17-

conduct or offense not charged in the indictment. The law does not allow you to convict a defendant simply because you believe he may have done bad things not specifically charged as crimes in this case. [Name of defendant] is on trial for the crimes charged, and you may use the evidence of acts not charged only for the limited purpose of helping you decide whether [the defendant is the person who committed [the offense[s] charged in the Indictment] [describe the contested issue].


Authority:    Adapted from Red Book Instr. 2.51A; Model Crim. Jury Instr. 9th
              Cir. 3.10 (2003).

## Multiple Defendants -- Multiple Counts

You should consider each instruction that I have given to apply separately and individually to each defendant on trial. Each defendant is entitled to have his guilt or innocence as to each of the crimes charged to him determined from his own conduct and from the evidence that applies to him, as if he were being tried alone. The guilt or innocence of any one defendant of any of the crimes charged should not control or influence your verdicts as to the other defendants.

Unless I tell you otherwise, you should give separate consideration and return separate verdicts with respect to each defendant, as to each count. The fact that you may find a particular defendant guilty or not guilty on any one count of the Indictment should not control or influence your verdict with respect to any other count or counts of the Indictment for that defendant.

You may find one or more of the Defendants guilty or not guilty on any one or more counts of the Indictment. At any time during your deliberations you may return your verdict of guilty or not guilty with respect to any defendant on any count.

Authority:    Red Book Instr. 2.54.

## **Evidence Admitted Against One Defendant Only**

Certain evidence was admitted only with respect to a particular defendant, and not against any other defendant.  You may consider such evidence only with respect to the defendant against whom it was offered.  You must not consider it in any way in your deliberations with respect to any other defendant.


Authority:    Red Book Instr. 2.55.

## **Bribery:  Recipient Was a Public Official Explained**

The second element that the government must prove beyond a reasonable doubt is that at the time in question Michael Lorusso was then a public official as an employee of the District of Columbia Government, Office of Property Management.

A "Public official" is defined as an officer or employee or person acting for or on behalf of any department, agency, or branch of the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government.

Authority:    1 Leonard B. Sand et al., <u>Modern Federal Jury Instructions - Criminal</u>
             ¶ 16.01 Inst. 16-5 (Matthew Bender).

**First-Degree Fraud:  The Essential Elements of the Offense Charged**

To sustain its burden of proof for the crime of first-degree fraud, the government must prove the following four elements beyond a reasonable doubt:

1.     That Blake C. Esherick engaged in a scheme;

2.     That he did so with the intent to defraud the District of Columbia or obtain money  from the District of Columbia by means of a false or fraudulent pretense, representation or promise;

3.     That, as a result of that scheme, he obtained money from the District of Columbia or caused the District of Columbia to lose money; and

4.     That the money lost or obtained had a value of $250 or more.


Authority:    Adapted from Redbook Instr. No. 4.41.

**<u>Redactions</u> (if warranted)**

You may notice that some documents have been redacted, that is, the documents have pages removed or portions are covered by whiteout.  For instance, portions of Government's/ Defense Exhibit # _____ have been removed and portions of Government's/Defense Exhibit #_____ have been  covered.  These redactions were undertaken after consultation with counsel and based upon the rules of evidence.  You should consider the evidence in the form it has been submitted to you.  You should not speculate on the portions that have been redacted or the reasons that the portions have been redacted.

## **Declarations**

Instead of requiring that a custodian of records testify at trial to have records admitted into evidence, the law allows records to be submitted by a way of declaration by a custodian.  You may consider a declaration by a custodian in the same way you would consider testimony actually given in court.

## PROPOSED JURY INSTRUCTIONS – PARTIES IN DISPUTE

## GOVERNMENT'S PROPOSED JURY INSTRUCTIONS (DISPUTED)

### Bribery and Conspiracy to Commit Bribery Instructions

### (Counts One and Two)

### Government's Proposed Instruction No. 1.0

### Introduction

The indictment charges the defendants, in Count One, with Conspiracy to Commit Bribery of a Public Official.  The indictment charges the defendants, in Count Two, with Bribery.  Because the Conspiracy charge refers to the Bribery charge, I am going to instruct you on Bribery first, then Conspiracy.

The following instructions relate to Bribery.  After instructing you on bribery, I will provide instructions on the related, lesser-include offense of Payment of Unlawful Gratuities to a Government Official.[1]

Thereafter, I will instruct you on the offenses of Conspiracy to Commit Bribery, and the related, lesser-included offense of Conspiracy to Pay Gratuities to a Government Official.

---

[1] Even though conspiracy is charged in Count One, and bribery in Count Two, the Government proposes to instruct on bribery before instructing on conspiracy, because the conspiracy instruction incorporates by reference the bribery instruction.

**Defendants' Objections to Government's Proposed Instruction No. 1.0:**

Defendants object to the inclusion of an instruction on the offense of Payment of Unlawful Gratuities to a Government Official as a lesser included offense of Bribery of a Public Official. The government is not automatically entitled to an instruction on a lesser included offense over a defendant's objection. See United States v. Whitaker, 447 F.2d 314, 317 (D.C. Cir. 1971) (setting forth five-part test to be satisfied before the prosecution is entitled to lesser included offense charge). "[A]n illegal gratuity need not always be a lesser included offense of bribery." United States v. Campbell, 684 F.2d 141, 148 (D.C. Cir. 1982). As explained in United States v. Brewster, 506 F.2d 62 (D.C. Cir. 1974), "[t]he bribery section makes necessary an explicit *quid pro quo* which need not exist if only an illegal gratuity is involved; the briber is the mover or producer of the official act . . . ." 506 F.2d at 72. Thus, "[o]ne obvious resulting distinction [between the two sections] is temporal," Campbell, 684 F.2d at 148, because "[t]he gratuity section [], unlike the bribery section [], applies to past official acts as well as future ones." Brewster, 506 F.2d at 68. In other words, the difference between the two statutes is not limited solely to the degree of intent that the government must prove. A payment to reward a past official act could never satisfy the bribery statute but could conceivably violate the gratuities statute.

-2-

Defendants also object to the inclusion of an instruction on the offense of Conspiracy to Pay Gratuities to a Government Official as a lesser included offense of Conspiracy to commit Bribery of a Public Official.  This objection is more fully supported below in response to the Government's Proposed Instruction No. 3.0.

## Government's Proposed Instruction No. 2.0

## Bribery:  The Statute Defining the Offense[2]

The defendants are each charged in Count Two of the Indictment with

Bribery.

In particular, the defendants are charged with a violation of section 201(b)

of Title 18 of the United States Code.  That section, which I shall refer to as the

bribery section, provides that:

> Whoever, directly or indirectly, corruptly gives, offers or promises anything
> of value to any public official * * *, with intent–
> to influence any official act; or
> to induce such public official to do or omit to do any act in violation of the
> lawful duty of such official or person
> shall be guilty of a crime.

## Defendants' Objections to Government's Proposed Instruction No. 2.0:

Defendants object to this instruction as unnecessary.  Defendants submit

that Defendants' Proposed Instruction No. 20 adequately references the statute.

---

[2]
  1 L. Sand, et al., <u>Modern Federal Jury Instructions</u> (2004), Inst. 16-1, at p. 16-3.  This treatise
sets forth bribery and gratuity statutory language in a single instruction.  The government proposes
separating the two.

-4-

## Government's Proposed Instruction No. 2.1

## Bribery:  Purpose of the Statute[3]

The purpose of the Bribery statute is to protect the public from the consequences of corruption in public service.  It is a major concern of organized society that the community have the benefit of objective evaluation and unbiased judgment on the part of those who participate in the making of official decisions. In short, the purpose of this statute is to assure high standards of ethical behavior by government employees, and to enforce uniform treatment of all citizens who have matters before governmental agencies.

## Defendants' Objections to Government's Proposed Instruction No. 2.1:

Defendants object to this instruction because the purpose of the statute is irrelevant, unnecessary and prejudicial.  Moreover, the reference to "ethical" conduct in the instruction is potentially misleading in that it could lead the jury to believe erroneously that the failure to comply with ethical standards, such as conflict of interest standards, is alone sufficient to violate the bribery statute.

---

[3]

      1 L. Sand, et al., <u>Modern Federal Jury Instructions</u> (2004), Inst. 16-2, at p. 16-5.  Again, the language as to the purpose of the gratuity section has been taken out, and is set forth <u>infra</u>.

Defendants object to all instructions purporting to inform the jury of the public policy purposes in enacting criminal statutes.  These instructions are unnecessary because the purpose of Congress is irrelevant, and rarely as clear as these instructions suggest.  Further, these instructions suggest that the public policy purposes of the statute are sufficient to justify conviction, even if the government has failed to prove a less significant element, and therefore create unnecessary confusion.

In the alternative, there is no reason that public purposes favoring the prosecution are the only purposes that the Court should tell the jury about.  If the Court chooses to inform the jury about purported public policy reasons supporting conviction, Defendants request that the Court balance each such "purpose of the statute" instruction with the following addition:

On the other hand, the United States Constitution guarantees every person accused of a crime the right to a trial by jury, and requires the government to prove each element of each crime charged beyond a reasonable doubt.  The objective of the drafters of the Bill of Rights was to assure that the innocent would not be unjustly convicted.

## Government's Proposed Instruction No. 2.2

## Bribery:  The Elements of the Offense[4]

To find a defendant guilty of the crime of Bribery as charged in the Indictment, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant, on or about the dates charged, offered, promised or gave money or something else of value to Michael Lorusso.

Second, that Michael Lorusso was then a public official as a District of Columbia employee of the Office of Property Management.

Third, that the defendant did so with the corrupt intent to influence an official act or officials acts of Michael Lorusso or to induce Lorusso to do or omit to do an act or acts in violation of his lawful duty.


## Defendants' Objections to Government's Proposed Instruction No. 2.2:

Defendants object to this instruction because it is incomplete and respectfully request that the Court instead give Defendants' Proposed Instruction No. 20, which is a more accurate and complete statement of the elements of

---

[4]

   1 L. Sand, et al., Modern Federal Jury Instructions (2004), Inst. 16-3 at p. 16-6.

-7-

Bribery of a Public Official.  Most importantly, this instruction fails to incorporate the requirement that the defendant acted with intent to influence a particular future act, as set forth in Defendants' Proposed Instruction No. 22.  See United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 404-05 (1999); United States v. Schaffer, 183 F.3d 833, 841 (D.C. Cir. 1999), vacated as moot by Presidential pardon, 240 F.3d 245 (D.C. Cir. 2001); United States v. Alfisi, 308 F.3d 144, 149 (2d Cir. 2002).

## Government's Proposed Instruction No. 2.3

## <u>Bribery:  Offer of Giving of  Money or Something of Value Explained[5]</u>

The first element that the government must prove beyond a reasonable doubt is that the defendant, on or about the dates charged, offered, promised or gave money or a thing of value to Michael Lorusso.

The Bribery statute makes no distinction between offering, promising, or giving a bribe; the mere offer or promise of a bribe is just as much a violation of the statute as the actual giving of one.

## <u>Defendants' Objections to Government's Proposed Instruction No. 2.3:</u>

Defendants object to the second sentence of this instruction as incomplete and request that the Court add the phrase "if done seriously and with corrupt intent" so that it reads as follows:

The bribery statute makes no distinction between offering, promising, or giving a bribe; the mere offer or promise of a bribe, <u>if done seriously and with corrupt intent,</u> is just as much a violation of the statute as the actual giving of one.

---

[5]

1 L. Sand, et al., <u>Modern Federal Jury Instructions</u> (2004), Inst. 16-4 at p. 16-8.

**Government's Proposed Instruction No. 2.5**

**<u>Bribery:  Corrupt Intent to Influence Official Act—Explained</u>**[6]

The third element that government must prove beyond a reasonable doubt is that the defendant gave, promised, or offered the money or thing of value with the corrupt intent to influence an official act or official acts of Michael Lorusso or to induce Lorusso to do or omit to do acts in violation of his lawful duty.  Corrupt intent means simply having an improper motive or purpose.  The defendant must have promised, offered, or given money or a thing of value to the public official with the deliberate purpose of influencing an official act or official acts of that person.  This involves conscious wrongdoing, or as it has sometimes been expressed, a bad state of mind.  An official act means any decision or action on any question or matter that may at any time be pending or which may by law be brought before any public official in his official capacity or in his place of trust.

In considering this element, remember that it is the defendant's intent to

---

[6]

1 L. Sand, et al., <u>Modern Federal Jury Instructions</u> (2004), Inst. 16-6, at p. 16-13.

The first four paragraphs are taken nearly unchanged from the cited jury instructions, with the following minor amendments:   first, the phrase "or official acts" has been added, to reflect the charges in this case;   second, the requested instruction deletes the requirement that the defendants possess a "bad <u>or evil</u> state or mind."   The use of the word "evil" is not required by law, is not otherwise defined, and overstates what is required for an intent to be "corrupt."

influence Michael Lorusso's actions, and not the subsequent actions of Lorusso, that is important. Thus, the government does not have to prove that Lorusso accepted the bribe or did the act sought. It is not necessary that Lorusso even had the power or authority to perform the act which the defendant sought. For the same reason, it is no defense to bribery that the defendant intended to influence an official act which was lawful or even desirable or beneficial to the public interest.[7]

---

[7]

    The principles set forth in this paragraph are an integral part of the bribery instructions, and are found in other standard sets of instructions. Thus, O'Malley-Grenig-Lee, Federal Jury Practice and Instructions (5th ed. 2000) § 27.11 provides:

> It is not a defense to the crime of bribery as charged in [the Indictment] that the [offer] * * * of anything of value was made [to] * * * the public official to influence an official act which is actually lawful, desirable, or even beneficial to the public.

See, also, United States v. Dorri, 15 F.3d 888, 890 (9th Cir.), cert. denied, 513 U.S. 1004 (1994) (same). Similarly, O'Malley-Grenig-Lee, Federal Jury Practice and Instructions (5th ed. 2000) § 27.12 provides:

> It is not a defense to the crime of bribery as charged in [the Indictment] that the public official did not have the authority, power, or ability to perform the act for which the thing of value was [given or offered].

    These instructions have been used other bribery cases. In United States v. Alfisi, Cr. No. 99-1090, (S.D.N.Y 2000), a bribery prosecution involving a series of payments to a meat inspector, the trial court instructed the jury:

> In considering the element of intent remember that it is the defendant's intention to influence the public official's actions that is relevant, not the subsequent actions or intentions of the public official himself.

>     The government does not have to prove that the actual condition or grade of the fruits and vegetables that Inspector Cashin inspected differed from that reported in Cashin's inspection certificates. The government's burden is to prove beyond a reasonable doubt that the defendant, Mark Alfisi, intended, by giving payments to

A defendant may be found to have a corrupt, fraudulent, or deceptive intent
even if he possesses a dual intent—that is, partly a corrupt, fraudulent, or
deceptive intent and partly a neutral intent, like friendship.  The formation of a
friendship between a vendor and a public official does not excuse the vendor if

---

Inspector Cashin, to influence Inspector Cashin's official acts.

> It is defendant[] Alfisi's intentions, not Inspector Cashin's inspection results,
> that are at issue.

United States v. Alfisi, Cr. No. 99-1090 (S.D.N.Y. 2000), Transcript of Record at 942-43 (Oct. 24,
2000) aff'd 308 F.3d 144 (2002).  A copy of this transcript is available at the Court's request.

The government brings to the Court the abundance of authority to support these standard
instructions only because the defendants have explicitly represented they seek to prove that the
District of Columbia got good deals from the defendants and that city officials in addition to Lorusso
were involved in the official acts at issue in this case.  Indeed, counsel for defendant Douglas Jemal
stated in open court, to support his request for Rule 17(c) subpoenas for documents of the District
of Columbia government:

> We believe ... that there is a bunch of exculpatory evidence out there that
> suggests that many of the officials in the District of Columbia, not Lorusso handled
> and approved these transactions and more than that, that these transactions were
> important to the District of Columbia, that they benefitted from these transactions
> and, indeed, they got full value from the transactions.

> * * *

> We need to show who communicated with whom to put the lie to the allegation that
> Lorusso was the public official to get [a certain act] done.

United States v. Jemal, et al, Crim. No. 05-359 (RMU), Transcript of Motions Hearing, March 20,
2006, at 16.  The proposed instruction is taken nearly verbatim from standard federal jury
instructions, and makes clear that such proffered evidence does not remotely constitute a defense.
The jury should not be permitted to conclude or assume otherwise if such evidence is brought forth
by the defense, either on direct or on cross, or otherwise argued by the defense.

-12-

part of his intent is corrupt, fraudulent, or deceptive.[8]

### Defendants' Objections to Government's Proposed Instruction No. 2.5:

Defendants object to the definition of "corrupt intent" in the first paragraph of this instruction and submit that Defendants' Proposed Instruction No. 24, which defines the term "corruptly," is a more accurate statement of the law. Defendants also submit that Defendants' Proposed Instruction No. 23 defines the term "official act" more completely than this instruction.[9] Crucially, this instruction omits the Sun Diamond *quid pro quo* requirement described in Defendant's Proposed Instruction No. 22. The government's proposed instruction cannot be given in addition to these defense instructions, because it is contradictory and confusing.

Defendants also object to the penultimate paragraph of this instruction

---

[8]    United States v. Woodward, 149 F.3d 46, 71 (1st Cir. 1998) ("A defendant may be prosecution for deprivation of honest services if he has a dual purposes, i.e., if he is found to have intended both a lawful and an unlawful purpose to some degree. If the jury finds that an unlawful purpose was present, it may convict the defendant."); United States v. Coyne, 4 F.3d 100, 113 (2d Cir. 1993) (a valid purpose that partially motivates a transaction that is corrupt in part "does not insulate participants in an unlawful transaction from criminal liability").

[9]    Defendants' Proposed Instruction No. 23 cites United States v. Valdes, 437 F.3d 1276 (D.C. Cir. 2006), which was recently vacated pending rehearing *en banc*. However, Defendants submit that Valdes remains persuasive, albeit not controlling, authority, as well as a correct statement of the law, which Defendants expect to be affirmed by the Court of Appeals *en banc*.

because it has the potential to mislead the jury.  The government has filed motions

*in limine* requesting that the Court preclude Defendants from introducing (1) any

evidence that others, besides Lorusso, were involved in the District's decisions to

award business to Douglas Development Corporation, and (2) any evidence that

Lorusso's actions benefited the public interest and any expert testimony on the

reasonableness of the 77 P Street leases.  This instruction relates directly to those

motions and is unnecessary for the reasons stated in Defendants' opposition brief.

See Defendants' Consolidated Opposition to Government's Motion *In Limine* to

Preclude Defendants from Introducing Evidence or Arguing that Others in

Addition to Michael Lorusso Were Involved in Government Decisions and

Government's Motion *In Limine* to (1) Preclude Defendants from Introducing

Evidence to Suggest that Michael Lorusso's Actions Benefitted the Public Interest

and (2) Preclude Defendants from Eliciting Testimony from Expert Witness as to

Reasonableness of 77 P Street Leases.

Defendants further object to the penultimate paragraph of the instruction

because it contains rhetoric that does not assist the jury in its determination of

whether the government has proven the elements of the charged offense.

Defendants submit that Defendants' Proposed Instruction No. 22 is a more

accurate statement of the intent element required by the bribery statute.  Moreover,

-14-

Defendants' Instruction No. 22 sets forth a specific unanimity instruction on the items of value offered or paid and the specific future act intended to be influenced, which this instruction lacks.

However, if the Court believes that any of the concepts in the last three sentences of the penultimate paragraph of this instruction should be addressed, Defendants request that the Court balance the language by adding the following to the final paragraph:

On the other hand, whether Lorusso performed the act allegedly requested, or had the power or authority to perform the act, or whether the act was lawful or desirable or beneficial to the public interest, are all relevant in determining Defendants' intent. In other words, you may find that it is less likely that the Defendants sought the act or had a corrupt intent if Lorusso did not perform the act, if the Defendants knew he did not have the power to perform the act, or if the act was lawful or desirable and beneficial to the public interest.

Finally, Defendants object to the final paragraph of this instruction and submit that Defendants' Proposed Instruction No. 25 provides a more accurate and complete statement of the law of an alternative purpose or dual intent on the part of a defendant.

## Government Proposed Instruction No. 2.6

## **Intent of Government Official Irrelevant[10]**

Similarly, it is not a defense to the charge of Bribery that, had there been no alleged bribe, the government official might lawfully and properly have performed the same official act or official acts that the defendants allegedly sought to influence him to perform.[11]  Finally, it is not necessary that the recipient of the alleged bribes have had the same intent as the payors of the alleged bribes.  A bribe-payor's intent may differ completely from the bribe recipient's.  Thus the bribe payor may be convicted of giving a bribe even though that the recipient had no intention of altering his official activities, or even lacked the power to do so.[12]  In short, it is the defendant's intentions, not Lorusso's actions, that are at issue.[13]

---

[10]

    In light of the issues the defendants have indicated they expect to raise, the Government anticipates that this paragraph will be appropriate.

[11]

    "It is neither material nor a defense to bribery that 'had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make.' "  United States v. Janotti, 673 F.2d 578, 601 (3d Cir. 1982) (citing United States v. Labovitz, 251 F.2d 393, 394 (3d Cir. 1958)).

[12]

    "The payment  and the receipt of a bribe are not interdependent offenses, for obviously the donor's intent may differ completely from the donee's.  Thus the donor may be convicted of giving a bribe despite the fact that the recipient had no intention of altering his official activities, or even lacked the power to do so."  United States v. Anderson, 509 F.2d 312, 322 (D.C. Cir. 1974), cert. denied, 420 U.S. 991 (1975).

[13]

    See Alfisi, supra note 7: "It is defendant[] Alfisi's intentions, not Inspector Cashin's inspection results, that are at issue."

-16-

**Defendants' Objections to Government's Proposed Instruction No. 2.6:**

Defendants object to this instruction because it contains rhetoric that is irrelevant and not useful for the jury's deliberations.  This instruction is more akin to argument than a neutral jury instruction.  Defendants submit that Defendants' Proposed Instructions Nos. 25 and 26, which focus the jury on the intent of the giver and discuss the difference between the intent of the giver and the intent of the recipient, are more accurate and neutral statements of the law.

If, however, the Court decides to give this instruction, Defendants respectfully request that the Court alter its language so that it reads as follows:

It is not a defense to the charge of Bribery that, had there been no alleged bribe, the government official might lawfully and properly have performed the same official act or official acts that the defendants allegedly sought to influence him to perform.  However, that the defendant expected the government official to perform the same official act or official acts without a bribe is relevant to the issues of whether that defendant offered or gave a bribe, or acted with corrupt intent.  The recipient of the alleged bribe may have had a different intent than the payor of the alleged bribe.  Thus, the alleged bribe payor may be convicted of giving a bribe even though the recipient had no intention of altering his official activities.

-17-

However, you may find that the fact that the recipient of the alleged bribe had no intent to be improperly influenced is relevant to the payor's intent. In the alternative, the alleged bribe payor may not have intended the offer or gift of a thing of value as a bribe, and may not be guilty even though the recipient understood the gift or payment to be a bribe, and accepted it with corrupt intent. In short, it is the Defendants' intent, not Lorusso's intent, that is at issue.

**Government's Proposed Instruction No. 2.7**

**<u>Description of "Course of Conduct" Bribery and Unanimity</u>**

The government is not required to show that the defendants intended for specific payments to be tied to specific official acts or omissions. Rather, it is sufficient to show that the defendants had the specific intent to provide a series of things of value, by means of a course of conduct, to influence Michael Lorusso's official acts, as described in the Indictment. For example—and as an example only—payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself, the official will take specific action on the bribe-payor's behalf.[14]

To convict a defendant of Bribery, you must be unanimous as to at least one of the items of value set forth in the Indictment that the defendants provided to Michael Lorusso with the corrupt intent to influence an official act or official acts charged in the Indictment; and you must be unanimous as to at least one official act charged in the Indictment that the defendants sought to influence. As noted, the Government does not have to prove that Michael Lorusso was actually

---

[14]
        <u>United States v. Quinn</u>, 359 F.3d 666, 673 (4th Cir. 2004); <u>United States v. Jennings</u>, 160 F.3d 1006, 1014 (4th Cir. 1998). This Court has already ruled that the Indictment properly charges Bribery as a course of conduct. This instruction ensures that the jury be required to return a unanimous verdict.

influenced – it is the defendants' actions, not Lorusso's conduct, which is at issue.

## **Defendants' Objections to Government's Proposed Instruction No. 2.7:**

Defendants object to this instruction as an inaccurate statement of the law because it does not accurately describe the *quid pro quo* requirement of the bribery statute. The Supreme Court has stated that the bribery statute under which Defendants are charged requires "a *quid pro quo* -- a specific intent to give or receive something of value *in exchange* for an official act." United States v. Sun-Diamond Growers, 526 U.S. 398, 404 (1999). See also United States v. Brewster, 506 F.2d 62, 72 (D.C. Cir. 1974) ("[t]he bribery section makes necessary an explicit *quid pro quo* which need not exist if only an illegal gratuity is involved; the briber is the mover or producer of the official act"). Following Sun-Diamond, the D.C. Circuit confirmed that the bribery statute requires the thing of value to be linked explicitly to a specific official action, stating that: bribery requires a *quid pro quo*, and accordingly can be seen as having a two-way nexus. That is, bribery typically involves an intent to affect the future actions of a public official through giving something of value, and receipt of that thing of value then motivates the official act. United States v. Schaffer, 183 F.3d 833, 841 (D.C. Cir. 1999), vacated as moot by Presidential pardon, 240 F.3d 245 (D.C. Cir.

-20-

2001); see also United States v. Alfisi, 308 F.3d 144, 149 (2d Cir. 2002) ("bribery involves the giving of value to procure a specific official action from a public official.") (emphasis added).

The bribery theory on which this instruction is based comes from a Fourth Circuit case involving 18 U.S.C. § 666, in which the court stated in *dicta* that the bribery statute set forth in 18 U.S.C. § 201 covered payments "made with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf." United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998); accord United States v. Quinn, 359 F.3d 666, 673-74 (4th Cir. 2004). This *dicta* is fundamentally inconsistent with the Supreme Court's decision in Sun-Diamond and other controlling D.C. Circuit precedent.

This instruction, and the Fourth Circuit's analysis, is inconsistent with the language of the bribery statute -- which the Fourth Circuit made no attempt to analyze in Jennings -- as the Supreme Court made clear in its comprehensive statutory analysis in Sun-Diamond. The bribery statute prohibits a payment made corruptly "to influence *any official act*." 18 U.S.C. § 201(b)(1)(A) (emphasis added). In Sun-Diamond, the Supreme Court interpreted similar language in the gratuities statute, which prohibits a payment made "for or because of *any official*

-21-

*act*." 18 U.S.C. § 201(c)(1)(A) (emphasis added).  As set forth above, the

government in <u>Sun-Diamond</u> had contended that this statutory language did not

require the government to prove that the payment was "connected to a particular

act." 526 U.S. at 406.  The Supreme Court rejected this interpretation of the

statute, holding that "this interpretation does not fit comfortably with the statutory

text, which prohibits only gratuities given or received 'for or because of *any*

*official act* performed or to be performed.'"  <u>Id.</u>  This interpretation applies with

equal force to the bribery statute, which contains the identical "any official act"

statutory language.  18 U.S.C. § 201(b)(1)(A).  The Fourth Circuit's dicta in

<u>Jennings</u> cannot be squared with the Supreme Court's holding in <u>Sun-Diamond</u>.

<u>Compare</u> <u>Sun-Diamond</u>, 526 U.S. at 414 (to establish a violation of the gratuities

statute, "the Government must prove a link between a thing of value conferred

upon a public official and a specific 'official act' for or because of which it was

given."), <u>with</u> <u>Jennings</u>, 160 F.3d at 1014 (to establish a violation of the bribery

statute, "each payment need not be correlated with a specific official act.").

Furthermore, this instruction, because it is based on the Fourth Circuit's

interpretation, is also inconsistent with D.C. Circuit authority with respect to the

temporal focus of the statute.  The Fourth Circuit stated that under the bribery

statute, "the timing of the payment in relation to the official act for which it is

made is (in theory) irrelevant." <u>Jennings</u>, 160 F.3d at 1014.  However, the D.C.

Circuit has explicitly recognized that "[b]ribery is entirely future-oriented . . .

involv[ing] the present giving, promise, or demand of something in return for

some action in the future . . . ." <u>Schaffer</u>, 183 F.3d at 841.  The Fourth Circuit's

interpretation is inconsistent with this requirement of an explicit *quid pro quo*.

Accordingly, for these reasons, Defendants object to this instruction.  Although

the Court denied Defendants' motion to dismiss the bribery charge for failure to

state an offense, Defendants respectfully urge the Court to re-examine the law in

this area and provide the jury with Defendants' Proposed Instruction No. 22,

which is a more accurate statement of the law.

The second paragraph of this instruction also contradicts the first paragraph,

and demonstrates the flaw in the government's theory of bribery on an "as needed"

basis. Recognizing the requirement of jury unanimity, the Government proposes to

tell the jury that it must be "unanimous as to at least one of the items of value . . .;

and you must be unanimous as to at least one official act charged in the Indictment

that the defendants sought to influence."  If the Defendants did not intend to

influence a specific future act, but instead intended only to influence Lorusso with

respect to unspecified future acts on an "as needed" basis, the jury cannot reach

unanimity on a particular official act that the Defendants intended to influence, as

-23-

required.  The government's paragraph on unanimity in this instruction is incomplete because it lacks the requirement that the jury be unanimous on the items of value offered or paid and the specific future act intended to be influenced. Defendants therefore respectfully submit that a separate instruction on unanimity should be given with respect to the bribery charge, as set forth in Defendants' Proposed Instruction No. 27.

**Government's Proposed Instruction No. 2.8**

**Consideration of a Lesser-Included Count[15]**

If you find that the government has proven beyond a reasonable doubt each of the three elements of Bribery as I have just described them to you, you should proceed no further and report your guilty verdict.

However, if you find that the government has not proven beyond a reasonable doubt that a defendant has committed the crime of Bribery as I just defined that offense to you, then you must consider whether the defendants committed the lesser-included offense of Payment of an Unlawful Gratuity.

**Defendants' Objections to Government's Proposed Instruction No. 2.8:**

Defendants object to this instruction for the reasons set forth in Defendants' Objection to the Government's Proposed Instruction No. 1.0. Payment of an Unlawful Gratuity is not necessarily a lesser included offense of Bribery of a Public Official.

If, however, the Court decides to instruct the jury on the lesser included offense of Giving an Illegal Gratuity to a Public Official, Defendants respectfully

---

[15]

1 L. Sand, et al., <u>Modern Federal Jury Instructions</u> (2004), Inst. 16-7 at p. 16-16.

-25-

request that the Court give Defendants' Proposed Instructions Nos. 27a-27h

instead of the Government's Proposed Instruction's Nos. 2.8-2.13 because

Defendants' instructions provide a more complete and accurate statement of the

law.

## Government's Proposed Instruction 2.9

## Gratuities:  The Statute Defining the Offense[16]

As I mentioned above, there is a related, lesser-included offense of Bribery, referred to as Payment of Unlawful Gratuities.

The gratuity statute provides, in pertinent part:

Whoever, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gives, offers or promises anything of value to any public official, * * * for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official [shall be guilty of a crime].

## Defendants' Objections to Government's Proposed Instruction No. 2.9:

Defendants reiterate their objection to instructing the jury on the Payment of Unlawful Gratuities as a lesser included offense of Bribery.  Defendants also object to this instruction as unnecessary.  Defendants submit that Defendants' Proposed Instruction No. 27a adequately references the statute.

---

[16]

1 L. Sand, et al., Modern Federal Jury Instructions (2004), Inst. 16-01, at p. 16-3.

## Government's Proposed Instruction No. 2.10

### Purpose of the Statute [17]

Congress, in criminalizing the payment of gratuities to public officials, sought to prohibit any government employee from receiving in the course of his official duties any additional compensation or a tip or gratuity for or because of any official act already done or about to be done.

### Defendants' Objections to Government's Proposed Instruction No. 2.10:

As already stated above, Defendants object to instructing the jury on the Payment of Unlawful Gratuities as a lesser included offense of Bribery. Defendants also object to all instructions purporting to inform the jury of the public policy purposes in enacting criminal statutes, for the reasons given in response to the Government's Proposed Instruction No. 2.1.

---

[17]

1 L. Sand, et al., Modern Federal Jury Instructions (2004), Inst. 16-2, at p. 16-5.

## Government's Proposed Instruction No. 2.11

## <u>Gratuities:  Elements of the Offense</u>[18]

Gratuities, unlike bribes, do not involve any corrupt intent to influence a public official. The charge is based upon the same events relied upon in connection with the Bribery count, but the essential elements are different.

To find the defendant guilty of Payment of Unlawful Gratuities, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant, on or about the dates charged, knowingly offered, promised, or gave at least one of the items described in the Indictment to Michael Lorusso.

Second, that Lorusso was then a public official as an employee of the D.C. Government, Office of Property Management.

Third, that the defendant did so for or because of official acts performed or to be performed by Michael Lorusso.

---

[18]

1 L. Sand, et al., <u>Modern Federal Jury Instructions</u> (2004), Inst. 16-7, at p. 16-16.

-29-

**<u>Defendants' Objections to Government's Proposed Instruction No. 2.11:</u>**

As already stated above, Defendants object to instructing the jury on the Payment of Unlawful Gratuities as a lesser included offense of Bribery. If, however, the Court decides to instruct the jury on the gratuities offense, Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 27a, which is a more accurate statement of the law.

If the Court decides to give the government's instruction instead, Defendants object to the manner in which this instruction sets forth the first element of the offense because it does not include the requirement that the jury find that the defendant "knowingly <u>and willfully</u> offered, promised, or gave at least one of the items described in the Indictment to Michael Lorusso." <u>See, e.g.,</u> <u>United States v. Campbell</u>, 684 F.2d 141, 147, 150 (D.C. Cir. 1982) (approving instruction that defendant acted "knowingly and willfully"); <u>United States v. Brewster</u>, 506 F.2d 62 (D.C. Cir. 1974) (approving instruction that defendant acted "willfully and knowingly rather than by mistake or accident" in accepting illegal gratuity). Defendants therefore request that the Court include the words "and willfully" in describing the first element of this instruction.

## Government's Proposed Instruction No. 2.12

## <u>Gratuities: "Knowingly"—Defined</u>

The Government must prove the defendant acted "knowingly." To do something knowingly is to do it voluntarily and intentionally and not through accident, misunderstanding, inadvertence, or other innocent reason.[19]

## <u>Defendants' Objections to Government's Proposed Instruction No. 2.12:</u>

As already stated above, Defendants object to instructing the jury on the Payment of Unlawful Gratuities as a lesser included offense of Bribery. If, however, the Court decides to instruct the jury on the gratuities offense, Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 27b, which includes a definition of "willfully," and is a more accurate and complete statement of the law.

Alternatively, Defendants respectfully request that the Court add the following definition of "willfully" to this instruction: "To do something willfully is to do it intentionally, deliberately and purposely and with the intent to do what

---

[19] 1 L. Sand, et al., <u>Modern Federal Jury Instructions</u> (2004), Inst. 16-7, at p. 16-16.

the law forbids, that is, knowing that one's conduct is against the law and with the evil purpose to disobey or disregard the law." See 1 Sand et al., Modern Fed. Jury Instr. ¶ 3A.01 Instr. 3A-3.

## Government's Proposed Instruction No. 2.13

## <u>Gratuities:  "[F]or or Because of Any Official Act Performed or to Be Performed"—Defined</u>

The government is required to prove that the defendant gave the specified things of value for or because of an official act performed or to be performed. You are specifically instructed that the government is not required to prove that Michael A. Lorusso was actually influenced in the performance of his duties by the things of value allegedly provided by the defendant, or that he undertook official acts motivated by the things of value provided or to be provided.

In this regard, an unlawful gratuity can take the form of a reward for past action—that is, for a performed official act—or as a reward for future action, such as to entice a public official to maintain a position or course of conduct favorable to the giver, or to induce a public official to propose, take, or shy away from some future act.[20]

You must be unanimous as to at least one thing of value provided to

---

[20]

    "[A]n unlawful gratuity can take one of three forms.  first, a gratuity can take the form of a reward for past action -- <u>i.e.</u>, for a performed official act. [citation omitted].  Second, a gratuity can be intended to entice a public official who has already staked out a position favorable to the giver to maintain that position. [citation omitted].  Finally, a gratuity can be given with the intent to induce a public official to propose, take , or shy away from some future official act. [citation omitted]." <u>United States v. Schaffer</u>, 183 F.3rd at 841-842.

-33-

Lorusso by the defendant; and you must be unanimous as to at least one act by Lorusso for which the thing of value was provided.


## Defendants' Objections to Government's Proposed Instruction No. 2.13:

Defendants object to this instruction and respectfully request that the Court instead give Defendants' Proposed Instructions Nos. 27c – 27g, which more accurately and completely set forth the law of unlawful gratuities. Defendants' instructions, unlike the government's, also define all relevant terms and refer back to the instructions given on the offense of Bribery in order to assist the jury in their consideration of the lesser included gratuities offense.

Defendants also respectfully submit that a separate instruction on unanimity should be given with respect to the lesser included gratuities offense, as set forth in Defendants' Proposed Instruction No. 27h. The Government's proposed unanimity instruction is incomplete: the jury must be unanimous that one specific thing of value was offered for or because of a particular act.

**Government's Proposed Instruction No. 2.14**

**Bases of Liability**

There are four bases of criminal responsibility that you should consider to determine whether the government has proved the defendant guilty of the offense of Bribery, or the lesser-included offense of Payment of Unlawful Gratuities. The first is that the defendant committed the crime as a principal, that is, that the defendant personally committed the elements of the offense as I have just instructed you.

A defendant may also be found guilty if the government proves beyond a reasonable doubt that the defendant: (1) was an aider and abettor in the commission of the offense, (2) caused acts to be done that caused the commission of the offense, or (3) was a coconspirator in the offense. I will instruct you on each of these three bases of criminal responsibility at the conclusion of these instructions.

**Defendants' Objections to Government's Proposed Instruction No. 2.14:**

Defendants object to this instruction because it is unnecessary and completely unsupported by authority. The jury will be instructed on aiding and abetting liability later in the instructions in a more appropriate manner.

-35-

# Government's Proposed Instruction No. 3.0

## Conspiracy - Count One

### Introduction[21]

The defendants are charged in Count One with Conspiracy to Commit

---

[21]
    Criminal Jury Instructions for the District of Columbia (4th ed. rev. 2002) ("The Red Book") § 4.90.

    In that payment of unlawful gratuities is a lesser included offense of bribery, conspiracy to commit the offense of payment of unlawful gratuities is a lesser included offense of conspiracy to commit bribery. See, e.g., United States v. Arnold, 416 F.3d 349, 355-56 (5th Cir. 2002) (conspiracy to possess with intent to distribute 50 grams of methamphetamine is lesser included of conspiracy to possess with intent to distribute 500 grams of methamphetamine); United States v. Teslim, 869 F.2d 316, 325-26 (7th Cir. 1989) (conspiracy to possess with intent to distribute cocaine is lesser included offense of conspiracy to possess with intent to distribute in excess of 500 grams of cocaine); United States v. Vaandering, 50 F.3d 696, 703 (9th Cir. 1995) (conspiracy to possess methamphetamine is a lesser-included offense of conspiracy to possess methamphetamine with intent to distribute); United States v. Moran, 1991 WL 125461, at *4 (4th Cir. July 12, 1991) (conspiracy to posses is lesser included of conspiracy to possess with intent to distribute, citing Teslim, supra; approving lesser included instruction over government objection). See also, United States v. Hansen-Sturm, 44 F.3d 793, 794 (9th Cir. 1995) (conspiracy to commit negligent violation of Lacey Act is lesser included offense of conspiracy to commit intentional violation of Lacey Act); United States v. Acosta, 17 F.3d 538, 541 (2d Cir. 1994) (conspiracy to misbrand dugs with no intent to defraud is lesser included offense of conspiracy to misbrand drugs with intent to defraud); United States v. Smith, 1990 WL 194516, at *1 (4th Cir. Dec. 10, 1990) (conspiracy to commit second degree murder is lesser included offense of conspiracy to commit first degree murder); United States v. Smith, 43 Fed. Appx. 529, 532 (4th Cir. 2002) (conspiracy to commit unarmed bank robbery is lesser included offense of conspiracy to commit armed bank robbery); United States v. Bias, 1998 WL 708772, at *1 (9th Cir. Oct. 6, 1998) (same); Aguirre v. Dorsey, 1997 WL 253051, at *1 (10th Cir. May 15, 1997) (district court review of state court conviction, where petitioner convicted of conspiracy to commit residential burglary as a lesser included offense of conspiracy to commit aggravated burglary); United States v. Dietz, 1994 WL 319259, at **1 (10th Cir. June 30, 1994) (conspiracy to transport in interstate commerce certain killed animals is lesser included offense of conspiracy to export said animals); State v. Wilson, 43 P.3d 851, 853 (Kan. Ct. App. 2002) (conspiracy to commit second degree murder lesser included of conspiracy to commit first degree murder).

Bribery.  I am going to instruct you on this charge and also on the lesser-included

offense of Conspiracy to Pay Unlawful Gratuities.  After I give you the elements

of these crimes, I will tell you the order in which you should consider them.


### Defendants' Objections to Government's Proposed Instruction No. 3.0:

Defendants object to this instruction because the government is not entitled

to an instruction on Conspiracy to Pay Unlawful Gratuities as a lesser included

offense of Conspiracy to commit Bribery.  The essential element of conspiracy is

the existence of an agreement; in fact, "the agreement itself is the crime."  United

States v. Treadwell, 760 F.2d 327, 336 (D.C. Cir. 1985).  The agreement at the

core of a conspiracy to commit bribery is an agreement based on an explicit *quid*

*pro quo* -- to give something of value to a public official in return for a specific

official act.  The Defendants are not charged with agreeing to give a public official

a gratuity.  To instruct the jury on conspiracy to commit a gratuities offense would

allow the jury to convict Defendants of an offense that was not found by the grand

jury, in violation of the Fifth Amendment to the United States Constitution.  See

United States v. Lemire, 720 F.3d 1327, 1344 (D.C. Cir. 1983) ("[a] substantial

deviation of instructions from an indictment is impermissible because . . . it

requires a defendant to answer a criminal charge that was not brought by a grand

jury").

**Government's Proposed Instruction No. 3.1**

**Conspiracy to Commit Bribery:  Elements of the Offense[22]**

I am now going to tell you about the charge of Conspiracy to Commit

Bribery–charged in Count One–which is a separate charge from bribery–charged

in Count Two–with which defendants also are charged.

Count One of the Indictment charges defendants Douglas Jemal, Norman

Jemal and Blake Esherick with Conspiracy to Commit Bribery.  It is against the

law to agree with someone to commit the crime of Bribery.  I have just defined for

you the crime of Bribery.[23]

The government is not required to prove that the objective of the conspiracy

was achieved. To find the defendants Douglas Jemal, Blake Esherick or Norman

Jemal guilty of the crime of Conspiracy, you must be convinced that the

government has proved each of the following three elements beyond a reasonable

doubt:

First, that between January 2001 and April 15, 2004, an agreement existed

---

[22]    Criminal Jury Instructions for the District of Columbia (4th ed. rev. 2002) ("The Red Book") § 4.93.

[23]    Even though Conspiracy is Count One of the Indictment, the Government maintains it makes sense to instruct on the bribery count prior to instructing on conspiracy, because the conspiracy instruction incorporates by reference the bribery instruction.

between two or more people, to commit the crime of Bribery. This does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests, or do similar things does not necessarily show that an agreement exists to commit the crime of Bribery. It is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crime of Bribery. So, the first thing that must be shown is the existence of an agreement.

Second, the government must prove that the specific defendant intentionally joined in that agreement. It is not necessary to find he agreed to all the details of the crime, or that he knew the identity of all the other people the government has claimed were participating in the agreement. A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy. Even if a defendant was not part of the agreement at the very start, he can become a member of a conspiracy later if the government proves that he intentionally joined the agreement. Different people may become part of the conspiracy at different times.

-40-

But mere presence at the scene of the agreement or of the crime, or merely being with the other participants, does not show that the defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy. So the second thing that must be shown is that the defendant was part of the conspiracy.

Third, the government must show that one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This something is referred to as an overt act. The government must show that one of the people involved in the conspiracy did one of the overt acts to carry out the conspiracy. The charged overt acts are as follows:

1.     In or about a date in early May 2001, defendant BLAKE C. ESHERICK invited Michael A. Lorusso to go to Las Vegas with himself and others from Douglas Development.

2.     On or about a day in or about mid-May 2001, a member of the conspiracy used, or caused defendant NORMAN D. JEMAL's American Express credit card to be used, to pay for Michael A. Lorusso's room at the Bellagio Hotel in Las Vegas.

3.     On or about July 9, 2001, defendant NORMAN D.

-41-

JEMAL caused checks to be prepared, payable to American Express,

drawn on a Douglas Development and a personal bank account, to

pay for the American Express bill containing the Bellagio Hotel

charges, described above.

4.      In or about July or August 2001, the precise date being

unknown, defendant BLAKE C. ESHERICK gave Michael A.

Lorusso cash.

5.      On or about August 28, 2001, a member of the

conspiracy, the precise identity being unknown, paid or caused to be

paid for a Rolex watch by charging the purchase price of the watch to

defendant NORMAN D. JEMAL's American Express credit card.

6.      On or about August 28, 2001, defendant BLAKE C.

ESHERICK gave Michael A. Lorusso a Rolex brand wrist watch.

7.      On or about a date in late August 2001 or early

September 2001, defendant BLAKE C. ESHERICK instructed a

Douglas Development employee to send the Rolex brand wrist watch

back to the jewelry store so that the watch's wristband could be

enlarged.

8.      On or about a date close but prior to October 7, 2001,

defendant BLAKE C. ESHERICK gave Michael A. Lorusso cash.

9.     On or about between October 10, 2001 and October 15, 2001, defendant BLAKE C. ESHERICK approved the payment by Douglas Development to American Express of $70 to pay for the wrist band repairs on the Rolex wrist watch.

10.     On or about October 10, 2001, a member of the conspiracy, the precise identity being unknown, caused a Douglas Development employee to pick up Michael A. Lorusso's vehicle for purposes of driving it to an automobile repair establishment in Virginia and having it repaired.

11.     On or about October 15, 2001, defendant NORMAN D. JEMAL caused to be prepared and signed check 2321, drawn on his own bank account, in the amount of $30,158.01, payable to American Express, as payment for the American Express bill containing the charges for the Rolex watch.

12.     On or about several dates in 2001 and 2002, members of the conspiracy caused tickets to be provided to Michael A. Lorusso for various events at the MCI Center as follows:

December 15, 2001 (Basketball - Washington Wizards vs. Miami Heat);

-43-

February 7, 2002 (Basketball - Washington Wizards vs. Sacramento
Kings); and

December 26, 2001 (Hockey - Washington Capitals vs. Philadelphia
Flyers).

13.     On or about February 8, 2002, a member of the
conspiracy caused an airline ticket to be purchased for Michael A.
Lorusso for air travel from Baltimore, Maryland to Fort Lauderdale,
Florida, said ticket being charged to NORMAN D. JEMAL's
American Express credit card.

14.     On or about February 22, 2002, a member of the
conspiracy, the precise identity of whom is unknown, caused an
airline ticket to be purchased for Michael A. Lorusso for air travel
from Baltimore, Maryland, to Las Vegas, Nevada, said ticket being
charged to NORMAN D. JEMAL's American Express credit card.

15.     Over the weekend from on or about May 17, 2002,
through on or about May 21, 2002, members of the conspiracy paid
for meals and hotel accommodations for Michael A. Lorusso in
Nevada.

16.     On or about May 21, 2002, defendant DOUGLAS

-44-

JEMAL purchased two pairs of cowboy boots for Michael A.

Lorusso, at a total cost in excess of $1,000.

The government need not prove that all of these overt acts were taken; but, to find a defendant guilty, you must all agree on at least one overt act that was done.

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. But it is up to the government to prove that such facts and circumstances existed and lead to that conclusion in this particular case.

In deciding whether an agreement existed, you may consider the acts and statements of all the alleged participants. In deciding whether the defendant became a member of that conspiracy, you may consider only the acts and statements of that particular defendant.

In summary, a conspiracy is a kind of partnership in crime. For any defendant to be convicted of the crime of conspiracy, the government must prove three things beyond a reasonable doubt: first, that during January 2001 to April 2004 there was an agreement to commit the crime of Bribery; second, that the defendant intentionally joined in that agreement; and third, that one of the people involved in the conspiracy did one of the overt acts charged.

**<u>Defendants' Objections to Government's Proposed Instruction No. 3.1:</u>**

Defendants object to this instruction because it unnecessarily and prejudicially emphasizes at the beginning of the instruction what the government is not required to prove, making it more akin to argument than a neutral jury instruction. The statement that "the government is not required to prove that the objective of the conspiracy was achieved" is confusing and misleading without further explanation, and contradicts the requirement that a conspirator perform an overt act in furtherance of the objectives of the conspiracy. This instruction is also unsupported by any authority, abbreviates the standard instructions defining the existence of a conspiratorial agreement and joinder in the conspiracy (including the requirement of a stake in the venture and the standard definitions of intent required), and is too lengthy and potentially confusing for the jury. Defendants respectfully request that the Court instead give Defendants' Proposed Instructions Nos. 14-17, which set forth and describe the elements of conspiracy in a manner that is more accurate, concise and neutral.

Defendants also object to the listing of the overt acts charged in the Indictment. If the Court intends to read the Indictment to the jury, the listing of the overt acts will be unnecessary and cumulative. In any event, the jury will be

sufficiently familiar with the overt acts, as the government will have had ample opportunity to present evidence relating to them during the trial. The government can focus the jury on any particular overt acts during its summation. The government's proposed instruction also omits the requirement that the jury unanimously agree on a specific overt act in furtherance of the conspiracy done in the District of Columbia.

Defendants further object to the fact that this instruction does not include sufficient guidance for the jury's consideration of the acts and declarations of co-conspirators. Defendants submit that Defendants' Proposed Instruction No. 18 is a more complete and accurate instruction on this point. Finally, Defendants object that this general conspiracy instruction does not include a separate unanimity instruction, such as Defendants' Proposed Instruction No. 19.

Defendants do not object to the Court's instructing the jury on Count Two prior to Count One. If the Court chooses to proceed in that manner, Defendants will modify their proposed instructions on Counts One and Two accordingly for the Court's convenience.

**Government's Proposed Instruction No. 3.2**

**Conspiracy to Commit Lesser Offense
of Payment of Unlawful Gratuities**

The defendants are also charged with Conspiracy to Pay Unlawful Gratuities as a lesser-included count of the charged offense of Conspiracy to Commit Bribery. You will note that the offense of Conspiracy to Pay Unlawful Gratuities is a lesser-included offense of Conspiracy to Commit Bribery, just as the offense of Paying Unlawful Gratuities is a lesser-included offense of Bribery.

The offense of Conspiracy to Pay Unlawful Gratuities is a conspiracy charge, and as such, the elements of the offense, each of which the government must prove beyond a reasonable doubt, are as follows:

- First, that between January 2001 and April 15, 2004, a conspiracy existed between two or more people, to commit the crime of Payment of Unlawful Gratuities.

- Second, the defendant intentionally joined in that conspiracy.

- Third, one of the conspirators did something for the purpose of carrying out the conspiracy, that is, one of the charged overt acts, as I have just instructed you.

You should consider these elements in light of the other instructions I

-48-

previously provided that define the crime of Conspiracy.

You should consider first whether a given defendant is guilty of the greater offense of Conspiracy to Commit Bribery. If you find the defendant guilty, do not go on to consider the lesser-included offense. If you find the defendant not guilty, go on to consider the lesser-included offense of Conspiracy to Pay Unlawful Gratuities.


**Defendants' Objections to Government's Proposed Instruction No. 3.2:**

Defendants object to this instruction for the reasons stated above in response to the Government's Proposed Instruction No. 3.0. Defendants also note that this instruction is completely unsupported by any authority.

## Government's Proposed Instruction No. 3.3

### **Unindicted, Unnamed, or Separately Tried Co-conspirators**

Some of the people who may have been involved in these events are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged and prosecuted or tried together in one proceeding.

Nor is there any requirement that the names of the all other conspirators be listed in the indictment. An indictment can charge a defendant with a conspiracy involving people whose names are not given, as long as the government can prove that the defendant conspired with one or more of them. Whether they are named or not does not matter.[24]

### **Defendants' Objections to Government's Proposed Instruction No. 3.3:**

Defendants object to this instruction because it is more akin to argument than a neutral jury instruction and is unsupported by any case law from the U.S. Court of Appeals for the District of Columbia Circuit. It is also inaccurate to say

---

[24]

United States Sixth Circuit Pattern Criminal Jury Instruction 3.06 (1991); see also United States v. Harris, 8 F.3d 943, 946-47 (2d Cir. 1993); United States v. Rogers, 118 F.3d 466, 478-79 (6th Cir. 1997); United States v. Lopez, 6 F.3d 1281, 1288 (7th Cir. 1993); United States v. Agofsky, 20 F.3d 866, 870-71 (8th Cir. 1994) cert. denied, 513 U.S. 909 (1994); United States v. Martinez, 96 F.3d 473, 477-78 (11th Cir. 1996) cert. denied, 519 U.S. 1133 (1997).

that it "does not matter" that unindicted co-conspirators are not on trial. Actions by the government to deem an individual a "co-conspirator" can have a profound impact on the trial, such as causing witnesses to invoke their Fifth Amendment rights and potentially justifying a "missing witness" instruction for the defense.

Further, the government's contention that the Indictment need not name a co-conspirator, so long as the government can prove that the defendant conspired with him, ignores the role of the grand jury. The government must identify any alleged co-conspirators to the grand jury and specify their identities to the Court and the defense before attempting to convict a defendant of conspiring with them.

## Government's Proposed Instruction No. 3.4

## <u>Conspiracy - Venue</u>

Some of the events that you have heard about happened in other places.

There is no requirement that the entire conspiracy take place here in Washington,

D.C.  But for you to return a guilty verdict in the conspiracy charge, the

government must convince you that one of the overt acts took place here in the

District of Columbia.

Unlike all the other elements that I have described, this is a fact the

government only has to prove by a preponderance of the evidence.  This means the

government only has to convince you that it is more likely than not that part of the

conspiracy took place here.

Remember that all the other elements I have described must be proved beyond a

reasonable doubt.[25]

---

[25]

United States Sixth Circuit Pattern Criminal Jury Instruction 3.07 (1991); <u>see also</u> <u>United States v. Gaviria</u>, 116 F.3d 1498, 1517 (D.C. Cir. 1997), <u>cert. denied</u> <u>sub nom</u> <u>Naranjo v. United States,</u> 522 U.S. 1082 (1998) (a conspiracy prosecution may be brought in any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators); <u>United States v. Lam Kwong-Wah</u>, 924 F.2d 298, 301 (D.C. Cir. 1991), <u>cert. denied,</u> 506 U.S. 901 (1992) ((The government bears the burden of establishing by a preponderance of the evidence that venue is proper(; (venue is an issue that normally must be submitted to the jury(); <u>United States v. North,</u> 910 F.2d 843, 912 n.52 (D.C. Cir. 1990), <u>op. modified on other grounds</u>, 920 F.2d 940 (D.C. Cir. 1990), <u>cert. denied,</u> 500 U.S. 941 (1991)  (District Court properly instructed jury to apply a preponderance-of-the-evidence standard to the question of venue).

**<u>Defendants' Objections to Government's Proposed Instruction No. 3.4:</u>**

Although the preponderance of the evidence standard is an accurate statement of past decisions, Defendants contend that because venue is a jurisdictional predicate to conviction, and must be proved to a jury, the Sixth Amendment requires the government to prove venue beyond a reasonable doubt.

Defendants further object to the sentence, "This means the government only has to convince you that it is more likely than not that part of the conspiracy took place here." This sentence is inaccurate; it does not matter whether part of the conspiracy took place in the District of Columbia. The government must prove that a charged overt act occurred here. Defendants also object that this instruction does not require unanimity. Defendants request that the following sentence be added to this instruction: "You must unanimously agree on a specific charged overt act in furtherance of the conspiracy that occurred here in the District; it is not sufficient if some of you find that one charged overt act occurred here, while others of you find that a different charged overt act occurred here."

# MAIL FRAUD INSTRUCTIONS

## Government's Proposed Instruction No. 4.0

## <u>Mail Fraud:  The Nature of the Offense Charged</u>

Count Three of the Indictment charges that, from in or about May 2001 and continuing through at least in or about January 2003, in the District of Columbia, defendants Douglas Jemal, Norman D. Jemal, and Blake C. Esherick, as principals, aiders and abettors, and coconspirators, knowingly and willfully devised and intended to devise a scheme (a) to obtain money or property from the District of Columbia by means of false and fraudulent pretenses and representations, <u>and</u> (b) to deprive the District of Columbia and the citizens of the District of Columbia of their right to the honest services of Michael A. Lorusso, a District of Columbia employee, free from deceit, favoritism, self-enrichment, self-dealing, and conflict of interest.  Count Three charges that the defendants used or caused to be used the United States mails in some fashion to advance or further the scheme.[26]

---

[26]

      Kevin F. O'Malley et al., 2A Federal Jury Practice & Instructions (5th ed. 2000),  § 47.01, at 310 (modified to reflect the charges in this case).

## **Defendants' Objections to Government's Proposed Instruction No. 4.0:**

Defendants object to this instruction in its entirety. The first paragraph of Defendants' Proposed Instruction No. 28 sufficiently introduces the statute.

Defendants also object to the inclusion of alternative bases of liability in this instruction for the same reasons as stated in response to the Government's Proposed Instruction No. 2.14. The inclusion of the phrase "as principals, aiders and abettors, and coconspirators" is unnecessary and completely unsupported by authority. No conspiracy is charged in this Count, and no Mail Fraud conspiracy is charged in Count One. Moreover, the jury will be instructed on aiding and abetting liability in a more appropriate manner later in the instructions.

**Government's Proposed Instruction No. 4.1**

**Mail Fraud:  The Statute Defining the Offense**

Section 1341 of Title 18 of the United States Code provides, in part, that:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, * * *" shall be guilty of an offense against the United States."

**Defendants' Objections to Government's Proposed Instruction No. 4.1:**

Defendants object to this instruction as unnecessary.

**Government's Proposed Instruction No. 4.2**

**<u>Mail Fraud (Money or Property):  The Essential Elements of the Offense</u>**

**<u>Charged</u>**

The Indictment alleges two different ways in which the defendants committed the offense of Mail Fraud:

First, that the defendants devised a scheme to obtain money or property from the District of Columbia by means of false or fraudulent pretenses or representations.

Second, that the defendants fraudulently deprived the District of Columbia and its citizens of their right to the honest and faithful services of a District of Columbia official, Michael A. Lorusso.

I will begin by instructing you on the first theory, that of or obtaining money or property from the District of Columbia through false or fraudulent pretenses, promises, or representations.

To sustain its burden of proof for the crime of Mail Fraud through a scheme or plan to obtain money or property by means of false pretenses, representations,

or promises, as charged in Count Three of the Indictment, the government must prove the following four essential elements beyond a reasonable doubt:

One:        The defendant knowingly devised or knowingly participated in a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

Two:        The false or fraudulent pretenses, representations, or promises were material;

Three:      The defendant had the intent to defraud; and

Four:       In advancing, or furthering, or carrying out a scheme to obtain money or property by means of false or fraudulent pretenses, representations or promises, the defendant used the mails or caused the mails to be used.[27]

I will now define the relevant terms in those four elements.

_____

[27]

     O'Malley et al., 2A Federal Jury Practice & Instructions § 47.03, at 314-15 (modified to reflect the charges in this case).

-58-

## <u>Defendants' Objections to Government's Proposed Instruction No. 4.2:</u>

Defendants object to this instruction because it does not sufficiently convey that Defendants must have "knowingly and willfully" participated in the scheme to defraud, with "specific intent" to accomplish its unlawful objectives.  <u>See</u> 2 Sand et al., <u>Modern Jury Instr.– Crim.</u> ¶ 44.01 Instr. 44-3.  Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 28, which is a more accurate statement of the law.  In the event that the Court prefers the government's approach of breaking the two different alleged wire fraud schemes into separate charges, Defendants request that the third element be described as follows:  "That the particular defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud."  <u>See</u> <u>id.</u>

## Government' Proposed Instruction No. 4.3

### Mail Fraud (Money or Property):  "Scheme"—Defined

The term "scheme" includes any plan or course of action to deceive or cheat a person or entity.[28]


### Defendants' Objections to Government's Proposed Instruction No. 4.3:

Defendants object to this instruction because it is incomplete and inaccurate. Schemes to "deceive" do not violate the wire fraud statute unless they are accompanied by an intent to harm the alleged victim by depriving the victim of money or property.  Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 29, which defines a "scheme or artifice to defraud" more accurately and completely within the context of this case.

---

[28]

Eleventh Circuit Criminal Jury Instruction No. 50.2.

**Government's Proposed Instruction No. 4.4**

## Mail Fraud (Money or Property): "False or Fraudulent Pretenses, Representations or Promises"—Defined

A false or fraudulent pretense, representation or promise is any statement or assertion that concerns a material or important fact or a material or important aspect of the matter in question. These terms include an actual, direct false statement, a half-truth, and a knowing concealment of a fact that is material or important to the matter in question.

For a statement or assertion to be false or fraudulent, the defendant must

(a)    have known that the statement or assertion was untrue when he made or used it; or

(b)    have made or used it with reckless indifference as to whether it was, in fact, true or false.[29]

## Defendants' Objections to Government's Proposed Instruction No. 4.4:

Defendants object to this instruction because it incorrectly instructs the jury that a false or fraudulent statement is a statement made with "reckless

---

[29]    Redbook Instruction No. 4.41 (modified to apply to facts of case).

-61-

indifference" as to its truth or falsity.  This instruction is based on the Red Book instruction for Fraud under the D.C. Code, not a federal model jury instruction describing a false or fraudulent statement within the context of the offense of Mail Fraud in violation of 18 U.S.C. §_1341.  Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 29, which is adapted from Judge Sand's <u>Modern Federal Jury Instructions</u>.

**Government's Proposed Instruction No. 4.5**

**Mail Fraud (Money or Property):  "Material"—Defined**

A "material fact" is a fact that would be of importance to a reasonable person in making a decision about a particular matter or transaction.[30]  A false or fraudulent statement, representation or promise can be material even if the decision maker did not actually rely on the statement, or even if the decision maker actually knew or should have know that the statement was false.[31]

The government need not prove that the scheme to defraud was successful.[32] Nor must it show that the victim of the scheme was pure of heart or without fault.[33]

Defendants' Objections to Government's Proposed Instruction No. 4.5:

Defendants object to this instruction because it is one-sided and argumentative, rather than a neutral statement of the law.  In addition, the final

---

[30]    O'Malley et al., 2A Federal Jury Practice & Instructions § 47.13, at 401.

[31]    Eleventh Circuit Criminal Instruction No. 50.1.

[32]    Durland v. United States, 161 U.S. 306, 315 (1896); United States v. Allard, 926 F.2d 1237, 1242 (1st Cir. 1991); United States v. Helmsley, 941 F.2d 71, 94 (2d Cir. 1991).

[33]    United States v. Camuti, 78 F.3d 738, 742 (1st Cir. 1996).

sentence of this instruction is confusing and irrelevant. The instruction also fails to instruct the jury that the Defendant must intend the representation to be material. In the event that the Court gives this instruction, Defendants request that the Court add the following sentence at the end of the first paragraph: "However, the Defendant must have intended that the false or fraudulent representation be material to the decision maker."

Defendants submit that Defendants' Proposed Instruction No. 31, which defines "materiality," is a more accurate and neutral statement of the law.

**Government's Proposed Instruction No. 4.6**

**Mail Fraud (Money or Property):  "Intent to Defraud"—Defined**

To act with an "intent to defraud" means to act knowingly and with the intention or purpose to deceive or to cheat.

An intent to defraud is accompanied, ordinarily, by a desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some person or entity.[34]

A defendant may be found to have a corrupt, fraudulent, or deceptive intent even if he possesses a dual intent—that is, partly a corrupt, fraudulent, or deceptive intent and partly a neutral intent, like friendship.  The formation of a friendship between a vendor and a public official does not excuse the vendor if part of his intent is corrupt,  fraudulent, or deceptive.[35]

---

[34]     O'Malley et al., 2A Federal Jury Practice & Instructions § 47.14, at 412.

[35]     United States v. Woodward, 149 F.3d 46, 71 (1st Cir. 1998) ("A defendant may be prosecution for deprivation of honest services if he has a dual purposes, i.e., if he is found to have intended both a lawful and an unlawful purpose to some degree.  If the jury finds that an unlawful purpose was present, it may convict the defendant."); United States v. Coyne, 4 F.3d 100, 113 (2d Cir. 1993) (a valid purpose that partially motivates a transaction that is corrupt in part "does not insulate participants in an unlawful transaction from criminal liability").

**<u>Defendants' Objections to Government's Proposed Instruction No. 4.6:</u>**

Defendants object to this instruction because it does not sufficiently convey that the offense of Mail Fraud requires that a defendant participate in a scheme "knowingly and willfully," with the "specific intent" to defraud.  <u>See</u> 2 Sand et al., <u>Modern Jury Instr.– Crim.</u> ¶ 44.01 Instr. 44-5.  The instruction is also inaccurate because schemes to "deceive" do not violate the wire fraud statute unless they are accompanied by an intent to harm the alleged victim by depriving the victim of money or property.  Defendants submit that Defendants' Proposed Instruction No. 32 is a more accurate statement of the intent requirement of the mail fraud statute.

Furthermore, Defendants object to the final paragraph of this instruction and submit that Defendants' Proposed Instruction No. 30 provides a more accurate and complete statement of the law of an alternative purpose on the part of a defendant.

## Government's Proposed Instruction No. 4.7

## Mail Fraud (Money or Property):  "Intent"—Explained

Someone's intent ordinarily cannot be proved directly, because there is no way of directly looking into the workings of the human mind.  But you may infer a defendant's intent from the surrounding circumstances. You may consider any statement made, or acts done or omitted, by a defendant and all other facts and circumstances received in evidence that indicate his intent.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or omitted.  It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that a defendant had the necessary state of mind.[36]

## Defendants' Objections to Government's Proposed Instruction No. 4.7:

Defendants object to this instruction because it is inappropriate and irrelevant to the offense of Mail Fraud.  This general description of intent is not

---

[36]

  See Redbook Instruction No. 3.02 (modified to apply to facts of case).  .

specific to Mail Fraud and is not part of the elements of that offense. Therefore, Defendants request that the Court not give this instruction. If, however, the Court decides to give this instruction, Defendants respectfully request that it be given as a stand-alone general instruction, and not incorporated into any of the offense-specific instructions.

## Government's Proposed Instruction No. 4.8

## <u>Mail Fraud (Money or Property):  "Use of the Mails"—Defined</u>

The use of the United States mails is an essential element of the offense of mail fraud as charged in Count Three of the Indictment.

The government is not required to prove that the defendant actually mailed anything.  The government is also not required to prove that the defendant intended that the mails would be used to further, advance, or carry out the scheme or plan to defraud or to obtain money or property by use of false or fraudulent pretenses, representations, or promises.

The government must prove beyond a reasonable doubt, however, that the mails were, in fact, used in some manner to further, advance, or carry out the scheme to defraud or to obtain money or property by false or fraudulent pretenses, representations, or promises.

The government may prove that a defendant caused the mails to be used by proving either

(a)     that a use of the mails would follow in the ordinary course of the defendant's business or events, or,

(b)     that a use of the mails by someone was reasonably foreseeable.

-69-

The government need not prove that any particular item mailed was itself false or fraudulent. The government also need not prove that any particular item mailed contained any false or fraudulent statement, representation, or promise, or contained any request for money or thing of value.[37] The government also need not prove that the use of the mails was intended as the specific or exclusive means of accomplishing the scheme.[38]

The government must prove beyond a reasonable doubt, however, that the use of the mails furthered, advanced, or carried out, in some way, the scheme or plan to defraud or to obtain money or property by means of false or fraudulent purposes, representations, or promises.[39]

A use of the mails furthers, advances, or carries out a scheme not just when the use of the mails is itself an essential element of the scheme. It is sufficient for a particular mailing to be incident to an essential part of the scheme or a step in the

---

[37] O'Malley et al., 2A Federal Jury Practice & Instructions § 47.04, at 348-49.

[38] Eleventh Circuit Criminal Instruction No. 50.1.

[39] Kevin F. O'Malley et al., 2A Federal Jury Practice & Instructions § 47.04, at 348-49.

plot of the scheme.

A use of the mails need not affirmatively help the perpetrator carry out a fraudulent scheme. The mailing element of this Count may be satisfied by a mailing that is in and of itself routine and innocent. The mailing element may also be satisfied by a mailing that is counterproductive in that it creates a paper trial from which the fraud may be discovered.[40]

Proof that a letter was mailed can be entirely by circumstantial evidence; there is no requirement that the government produce direct proof in the form of, for example, actual postmarked envelopes or Federal Express receipts. You may find that proof of a company's routine use of the postal service or a private or commercial interstate carrier is sufficient to meet the mailing requirement.[41]

A defendant may cause the use of the mails by paying a bill with a credit card, thus causing a bill to be mailed to him by his credit card company; for, the mailing of a credit-card bill would be reasonably foreseeable to the person using

---

[40]    United States v. Schmuck, 489 U.S. 705, 710-11 (1989).

[41]    United States v. Griffith, 17 F.3d 865, 874 (6th Cir. 1994); see also United States v. Waymer, 55 F.3d 564, 571 (11th Cir. 1995).

-71-

the credit card.  Similarly, a defendant may cause the use of the mails when he pays a credit card company by sending a check in the mail.[42]

A defendant uses the mails when he causes something to be delivered by the United States Postal Service.  He also uses the mails when he causes something to be delivered by a private or commercial interstate carrier by depositing the mailing or causing the mailing to be deposited with the private or commercial interstate carrier.[43]

The Indictment alleges sixteen separate mailings.  The government is not required to prove all sixteen mailings.  To find a defendant guilty of mail fraud, the jury must unanimously agree on at least one of the sixteen mailings.

**<u>Defendants' Objections to Government's Proposed Instruction No. 4.8:</u>**

This proposed instruction on "use of the mails" -- an element usually covered by one-three paragraphs in standard jury instructions -- is twelve

---

[42]    United States v. Woodward, 149 F.3d 46, 64-65 (1st Cir. 1998).

[43]    Eleventh Circuit Criminal Instruction No. 50.1.

paragraphs long, and full of argumentative and misleading rhetoric about what the government does not have to prove. Defendants object to this instruction in its entirety on the basis of its excessive length, argumentative rhetoric, and inaccurate statements of law, and ask that the Court instead give Defendant's two-paragraph proposed instruction of "use of the mails," Defendants' Proposed Instruction No. 33. The government's proposed instruction nowhere states the core of this element: that a defendant knowingly used or caused to be used the federal mails in furtherance of a scheme to defraud. Instead, the first three paragraphs confusingly suggest that a defendant need have no role in causing use of the mails if the mails "were, in fact, used in some manner to further advance or carry out the scheme . . . ."

Defendants object to the use of the word "perpetrator," as in paragraph eight of this instruction, because it is prejudicial. Defendants also object to paragraph nine of this instruction, which begins with the sentence, "Proof that a letter was mailed can be entirely by circumstantial evidence; there is no requirement that the government produce direct proof in the form of, for example, actual postmarked envelopes or Federal Express receipts." This sentence has the potential to mislead

the jury into thinking that the government does not need to prove an actual

mailing, which is not an accurate statement of the law.  See United States v.

LaBarbara, 129 F.3d 81, 84 (2d Cir. 1997) (standard of proof for use of the mails

is beyond a reasonable doubt; finding evidence insufficient to support mail fraud

conviction); United States v. Massey, 827 F.2d 995, 999 (5th Cir. 1987) ("the use

of circumstantial evidence does not relieve the government of its burden of

establishing use of the mails 'beyond a mere likelihood or probability, or by more

than mere speculation") (citation omitted); United States v. Jordan, 626 F.2d 928,

931 (D.C. Cir. 1980) (approving instruction that government is required to prove

beyond a reasonable doubt "that the defendants used the United States Postal

Service by mailing or by causing to be mailed some matter or thing for the purpose

of executing the scheme to defraud").  The second sentence of that paragraph is

also an incomplete statement of the law.  See Massey, 827 F.2d at 999

("Circumstantial evidence 'such as testimony regarding office practice' is

sufficient only 'so long as the circumstances proven directly support the inference

and exclude all reasonable doubt to the extent of overcoming the presumption of

innocence.") (citation omitted).  The Court may give a general instruction on

circumstantial evidence; there is no need to emphasize it here.

Defendants object to the tenth paragraph of the instruction, which is too specifically focused on the facts of the instant case and is more akin to argument than a neutral jury instruction.

Defendants further object to the lengthy qualifying paragraphs which obscure the requirement that the government must prove that the use of the mails furthered the scheme to defraud, that is, the mailings were incident to an essential part of the scheme to defraud, or sufficiently closely related to the scheme to defraud to have furthered, advanced or promoted the scheme to defraud.  See Pereira v. United States, 347 U.S. 1, 8 (1954) (mailing must be "incident to an essential part of the scheme"); United States v. Maze, 414 U.S. 395, 399 (1974) (finding that the evidence must show that the "mailings [or wires] were sufficiently closely related to [the] scheme").  This instruction fails to instruct the jury that if it finds that a particular mailing was connected to activity that the jury does not believe was part of the overall scheme to defraud charged in the Indictment, it must find that such a mailing was not in furtherance of the fraud.

Defendants do agree, however, that the last paragraph of the government's

proposed instruction, which requires jury unanimity on at least one of the

mailings, must be given.

**Government's Proposed Instruction No. 4.9**

## Mail Fraud (Money or Property):  "Private or Commercial Interstate Carrier"—Defined

A "private or commercial interstate carrier" includes any business engaged in the transmission, transportation, or delivery of messages or other articles in interstate commerce, that is, from any place in one state to any place in another state.  If a message or other article is deposited with such a carrier, the government need not prove that the message or article thereafter moved in interstate commerce from one state to another.[44]

## Defendants' Objections to Government's Proposed Instruction No. 4.9:

Defendants object to this instruction because it is inapplicable to the instant case, in which the Indictment alleges that all of the mailings at issue were mailed through the U.S. Postal Service.  See Indictment at 17 (¶ 5) (Defendants "did knowingly place in any post office and authorized depository for mail matter and

_____

[44]      Eleventh Circuit Criminal Instruction No. 50.1.

knowingly caused to be delivered by mail, the following items . . . .").

## Government's Proposed Instruction No. 4.10

## Mail Fraud (Money or Property):  No Claim of Right Defense

A "claim-of-right" to the money or property obtained or sought to be

obtained by fraud is not a defense to mail fraud or wire fraud.[45]   A defendant may

---

[45]

 For obvious reasons, a defendant is not entitled to resort to mail fraud or wire fraud as a means of "self-help" debt collection.  As explained by the Second Circuit:

> If [petitioner's] theory of self-help were the law, anyone who believed that he was legally entitled to benefits from a pension plan, or an insurance policy, or a government program, but who was concerned that he or she might nevertheless be denied such benefits, would be given carte blanche simply to lie to obtain those benefits.  Such a course of action would often be much easier than pursuing legal remedies through civil actions in court, and would guarantee success as long as the misrepresentation remained undiscovered.  We will not encourage people to lie to obtain benefits rather than pursue their rights in civil actions.  Such controversies may be resolved by civil suit or settlement, but cannot be won by using lies and deception.

United States v. Gole, 158 F.3d 166, 168-69 (2d Cir. 1998) (affirming conviction for mail fraud in rejecting claim trial court erred by preventing defense from raising claim-of-right defense), cert. denied, 526 U.S. 1078 (1999). Though the Second Circuit referenced certain benefits frauds, the same reasoning would naturally apply to the submission by an individual of fraudulent loan requests to obtain monies from a financial entity, or fraudulent invoices to obtain monies from the government; that there may be off-setting obligations from the institutional victim to the defendant is irrelevant and does not excuse otherwise criminal conduct.  See also United States v. Casey, 951 F.2d 892, 894 (8th Cir.1991) (that victim's debt to defendant exceed amount obtained by defendant through fraud is irrelevant to mail fraud liability), cert. denied, 504 U.S. 944 (1992); United States v. Richman, 944 F.2d 323, 330 (7th Cir.1991) ("mail fraud does not include a requirement that the defendant receive or intend to receive money or property in excess of an amount he was entitled to receive" (quotations and alterations omitted)); United States v. Martin, 798 F.2d 308, 310 (8th Cir. 1986) (affirming fraud conviction where trial court denied defense motion to present defense that

-79-

not resort to fraud to obtain payment of a debt.[46]

Thus, even if a person or entity owes a defendant money, or a defendant is legally entitled to receive money from a person or entity, a defendant is not entitled to obtain that money by the commission of acts that constitute mail fraud or wire fraud; and if he does so, he is guilty of those offenses regardless of any claim he had to the money. In other words, a defendant is still guilty even if he honestly believed he was entitled to monies he obtained through false pretenses, promises, or representations.

### Defendants' Objections to Government's Proposed Instruction No. 4.10:

Defendants object to this instruction that no "claim of right" defense exists to mail fraud. First, the instruction is unnecessary. The defense contends that every invoice submitted by Douglas Development Corporation ("DDC") was done

---

fraudulent transaction sought to obtain legitimately owed funds); United States v. Vitello, No. CR.03-555, 2004 WL 2496877, at *5-*8 (E.D. Pa. Nov. 2, 2004) (granting government motion in limine to preclude defense from presenting claim-of-right defense in fraud trial).

[46]

    United States v. Martin, 798 F.3d at 310 (citing United States v. Miller, 725 F.2d 462, 468 (8th Cir. 1984) (fraud cannot be used to obtain payment of a debt)).

in good faith, and without fraudulent intent.  The defense will not contend at trial that it was permissible to submit a fraudulent invoice on one transaction because the D.C. Government owed DDC money from a different transaction.  Second, the government's proposed instruction is confusing, because it confuses a "claim of right" or "set-off" defense with a defendant's good faith belief that he is entitled to receive the specific funds sought to be obtained.  A defendant's good faith belief that he is entitled to receive the specific funds sought to be obtained is a valid defense to mail fraud, both with respect to a "desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some person or entity," 2A O'Malley, et al., <u>Fed. Jury Practice & Instr.</u> § 47.14, at 412, and with respect to the defendant's understanding of the materiality of any alleged misrepresentations.

Defendants incorporate by reference their Opposition to the Government's Motion *In Limine* to Preclude Defendants from Mounting Claim-of-Right Defense to Fraud Charges and all arguments made with respect to that Opposition.

**Government(s Instruction No. 4.11**

## Mail Fraud (Honest Services):  The Essential Elements of the Offense

## Charged

That concludes the instructions on the first theory of mail fraud alleged in the Indictment.  I will now instruct you on the second.

The second theory of mail fraud alleged in the Indictment is that the defendants deprived the District of Columbia and its citizens of their right to the honest and faithful services of a District employee, Michael A. Lorusso, performed free from deceit, favoritism, bias, self-enrichment, self-dealing, and conflict of interest.

To sustain its burden of proof for the crime of using the mails to further a scheme or plan to deprive the District of Columbia of the honest services of Michael Lorusso, the government must prove the following four essential elements beyond a reasonable doubt:

One:         The defendant knowingly devised or participated in a scheme or plan to fraudulently deprive the District of Columbia and its citizens of their intangible right to the honest services of

Michael A. Lorusso;[47]

Two:        The scheme involved a failure to disclose a material fact;[48]

Three:      The defendant had an intent to defraud; and

Four:        In advancing, furthering, or carrying out this scheme to deprive

the government of the honest services of Michael Lorusso, the

defendant used the mails or caused the mails to be used.[49]


**<u>Defendants' Objections to Government's Proposed Instruction No. 4.11:</u>**

Defendants object to this instruction because, as discussed in more detail in

response to the Government's Proposed Instruction No. 4.13 below, it

inappropriately references the "conflict of interest" theory of honest services

---

[47]

    Eleventh Circuit Criminal Instruction No. 50.2.

[48]

    The government suggests that this element be added to the standard Eleventh Circuit jury instructions on honest services fraud in light of <u>United States</u> v. <u>Jockisch,</u> No. 04-14723, 2005 WL 3445579, at *3-*5 (11th Cir. Dec. 16, 2005), which affirmed honest services convictions on plain error grounds in rejecting a challenge to the trial court(s failure to instruct the jury on materiality(a definition not in the standard Circuit instruction.

[49]

    Eleventh Circuit Criminal Instruction No. 50.2 (modified to reflect facts of case and to conform with the government(s other proposed instructions).

fraud, which is not charged in the Indictment.  According to precedents not

binding here, honest services fraud in violation of either the mail or wire fraud

statute occurs in two scenarios: (1) bribery, where a public official is paid for a

particular decision or act, or (2) failure to disclose a conflict of interest resulting in

personal gain.  See United States v. Woodward, 149 F.3d 46, 54-55 (1st Cir.

1998); United States v. Antico, 275 F.3d 245, 262 (3d Cir. 2001).  Here, the

Indictment alleges honest services fraud only under a bribery theory.  The

Indictment does not allege that Lorusso failed to fulfill any purported duty to

disclose a conflict of interest.  Therefore, the honest services instruction given to

the jury should be limited to a theory of bribery.

Moreover, the second element set forth in this instruction, that "[t]he

scheme involved a failure to disclose a material fact," is an inaccurate statement of

the law, unsupported by the authority cited by the government.  As indicated

above, the conflict of interest theory of honest services fraud involves a failure to

disclose an actual conflict of interest, not simply a "fact."  Defendants submit that

Defendants' Proposed Instruction No. 30, which defines "deprivation of honest

services" within the context of this case, is a more accurate and relevant statement

of the law.  If, however, the Court decides to instruct the jury on the conflict of

interest theory of honest services fraud, Defendants respectfully request that they be permitted to submit proposed jury instructions at that time.

Defendants also object to this instruction for the same reason given in response to the Government's Proposed Instruction 4.2, that is, because it does not sufficiently convey that Defendants must have "knowingly and willfully" participated in the scheme to defraud, with "specific intent" to accomplish its unlawful objectives. See 2 Sand et al., Modern Jury Instr.– Crim. ¶ 44.01 Instr. 44-3. Defendants respectfully request that the Court instead give Defendants' Proposed Instruction 28, which combines both of the government's theories of mail fraud and is a more accurate statement of the law. In the event that the Court prefers the government's approach of breaking the two different alleged wire fraud schemes into separate charges, Defendants request that the third element be described as follows: "That the particular defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud." See id.

Finally, Defendants object to the absence of an instruction on unanimity with respect to the government's mail fraud theory. For these reasons, Defendants respectfully request that the Court give Defendants' Proposed Instruction No. 34,

which requires the jury to agree unanimously on one of the two theories of mail

fraud (i.e., honest services or money and property).


### Government's Reply to Defendants' Objections

Defendants object to the government's proposed instruction by contending

that the Indictment does not alert them that the government is proceeding, in part,

under a conflict of interest theory of honest services mail fraud.

The Indictment speaks unambiguously about the conflict of interest theory

the government has always intended on pursuing.  Thus, it notes in paragraph two

of the mail fraud count, under the heading "The Mail Fraud Scheme," that

> "DOUGLAS JEMAL, NORMAN D. JEMAL, and BLAKE
> ESHERICK * * *  devised and intended to devise a scheme to:  * * *
> (b) defraud and deprive the DC Government and the citizens of the
> District of Columbia of their right to the honest and faithful services
> of Michael A. Lorusso as an employee of OPM, performed free from
> deceit, favoritism, bias, self-enrichment, self-dealing and **conflict of
> interest**."

Indictment, Count Three, ¶ 2 (emphasis added).  The Indictment could not be

clearer that conflict of interest is a theory on which the government has been

proceeding; and it is not unfair to hold the defendants with knowledge of the plain

-86-

language of the Indictment.[50]

The defendants do not contend—nor could they—that conflict of interest is not a recognized and, indeed, elemental theory of honest services fraud. Having no arguments on the merits, defendants attempt to conjure up a procedural objection. The Court should look to the plain language of the Indictment and reject the defendants' efforts to avoid the obvious.

---

[50] Moreover, there is little doubt they have understood this point all along. The defendants have demonstrated to the Court that they know full well how to obtain more information about the Indictment. Thus, they aggressively litigated their motion for a bill of particulars, seeking to require the government to disclose greater detail than what was already provided in the thirty-nine page Indictment. See Defs. Mot. for a Bill of Particulars (Doc. 30) (Dec. 22, 2005). Yet in that motion defendants sought no clarifying information about the government's honest services theories. That silence speaks volumes.

## Government's Proposed Instruction No. 4.12

## <u>Mail Fraud (Honest Services):  "Scheme"—Defined</u>

The term "scheme" includes any plan or course of action to deceive or cheat a person or entity.[51]

## <u>Defendants' Objections to Government's Proposed Instruction No. 4.12:</u>

Defendants object to this instruction because it is repetitive of the Government's Proposed Instruction No. 4.3 and therefore unnecessary. Defendants also object to this instruction because, like Instruction No. 4.3, it is incomplete.  Schemes to "deceive" do not violate the wire fraud statute unless they are accompanied by an intent to harm the alleged victim by depriving the victim of money or property.  Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 29, which defines a "scheme or artifice to defraud" more accurately and completely within the context of this case.

---

[51]     Eleventh Circuit Criminal Jury Instruction No. 50.2.

**Government(s Instruction No. 4.13**

**Mail Fraud (Honest Services):  (Intangible Right of Honest Services((Defined**

The District of Columbia and its citizens has a right to the honest services of its public officials.  That means the District and its citizens have a right to their public officials( honest services, performed free from deceit, fraud, dishonesty, conflict of interest, and self-enrichment.[52]  Under the law, every employee representing or working for the government has a duty (called a fiduciary duty) to act honestly and faithfully in all of his or her dealings with his employer, and to transact business in the best interest of the employer.

A government(s employee(s fiduciary duty includes a duty to make full and fair disclosure to the employer of any material personal interest or profit the employee expects to derive or has derived from any act, decision, transaction or set of transactions in which he participates in the course of his employment.[53]

A private citizen may be convicted of honest services fraud even though he is not the public official and does not himself have the public official(s duty to

---

[52]

United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998).

[53]

See Eleventh Circuit Criminal Instruction No. 50.2.

provide honest services to the public.[54]  That is because mail fraud includes a

scheme to deprive another of the intangible right to honest services.[55]

The government does not need to show that the defendant caused any loss to

the District of Columbia.[56]

A defendant(s intent need not be completely corrupt, fraudulent, or

deceptive.  A defendant may be found to have the intent to defraud even if he

possesses a dual intent(that is, partly a corrupt, fraudulent, or deceptive intent and

partly a neutral intent, like friendship.  The formation of a friendship between a

vendor and a public official does not excuse the vendor from committing honest

services fraud if part of his intent is corrupt, fraudulent, or deceptive.[57]

---

[54]

    United States v. Paradies, 98 F.3d 1266, 1281-82 (11th Cir. 1996) (affirming private citizen(s honest services mail fraud conviction in rejecting argument that private citizen could not be convicted because he had no fiduciary duty to the city).

[55]

    See 18 U.S.C. § 1346.

[56]

    United States v. Sawyer, 85 F.3d 713, 724 (1st Cir. 1996).

[57]

    United States v. Woodward, 149 F.3d 46, 71 (1st Cir. 1998) ("A defendant may be prosecution for deprivation of honest services if he has a dual purposes, i.e., if he is found to have intended both a lawful and an unlawful purpose to some degree.  If the jury finds that an unlawful purpose was present, it may convict the defendant."); United States v. Coyne, 4 F.3d 100, 113 (2d Cir. 1993) (a valid purpose that partially motivates a transaction that is corrupt in part "does not insulate participants in an unlawful transaction from criminal liability").

The government does not need to prove that Lorusso would have been prohibited from participating in any official decision or taking any official action if he had disclosed his receipt of things of value from the defendant.  Nor must the government show that Lorusso could act unilaterally to benefit the defendant or that he was the only official with authority or influence over a particular governmental decision or action.[58]

It is no defense to a charge of honest services fraud that a government body or agency or the public benefitted in some way from an official action or decision that was induced or influenced by things of value given to a public official involved in the decision or action; nor must the government show that a public official or government would have made a different decision or taken a different action if a particular official involved in the decision or action had avoided or disclosed a conflict of interest.[59]  That is because the law of honest services is

---

[58]

    See United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997) (affirming fraud conviction involving bribery of single official in multi-member decision making body); Shushan v. United States, 117 F.2d 110, 115 (5th Cir. 1941) (affirming mail fraud convictions for scheme involving bribery of two members of board of commissioners where "the fact that the official who is bribed is only one of several and could not award the contract by himself does not change the character of the scheme").

[59]

    United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997).

not concerned with the wisdom or results of the government(s decisions, but rather with the manner in which the government makes it decisions.

### **Defendants' Objections to Government's Proposed Instruction No. 4.13:**

Defendants object to this instruction because it inappropriately references the "conflict of interest" theory of honest services fraud, which is not charged in Indictment.  According to precedents not binding here, honest services fraud in violation of either the mail or wire fraud statute occurs in two scenarios: (1) bribery, where a public official is paid for a particular decision or act, or (2) failure to disclose a conflict of interest resulting in personal gain.  See United States v. Woodward, 149 F.3d 46, 54-55 (1st Cir. 1998); United States v. Antico, 275 F.3d 245, 262 (3d Cir. 2001).  Here, the Indictment alleges honest services fraud only under a bribery theory.  The Indictment does not allege that Lorusso failed to fulfill any purported duty to disclose a conflict of interest.  Therefore, the honest services instruction given to the jury should be limited to a theory of bribery. Defendants submit that Defendants' Proposed Instruction No. 30, which defines "deprivation of honest services" within the context of this case, is a more accurate

and relevant statement of the law.

Even if the Indictment had charged a "conflict of interest" theory, Defendants would object to this instruction as inaccurate and incomplete. Title 18 of the United States Code, Section 1346 provides: "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." The statute nowhere refers to a failure to disclose a conflict of interest. In order for an undisclosed conflict of interest to rise to the level of a "deprivation . . . of the intangible right of honest services," the public official must fail to disclose that he has been influenced not to provide honest services. The statute criminalizes only actual impropriety, not the appearance of impropriety. The two different theories under the case law thus collapse on themselves. In addition, the "conflict of interest" theory based on non-disclosure, found nowhere in the statutory language, does not work well when applied to non-government employees. The government's proposed instruction does not require proof of the necessary element that the non-government employee defendant knew and willfully intended that the public official would not disclose an alleged conflict of interest.

However, if the Court decides that the jury should be instructed on the conflict of interest theory of honest services fraud, Defendants respectfully request that the Court allow them to submit a proposed instruction on the conflict of interest theory at that time.

In addition, Defendants object to the government's proposal that a defendant's intent need only be "partly" corrupt. In order to convict, the jury must find that the corrupt purpose predominated over any innocent purposes, and any instruction on this topic should so state.

### Government's Reply to Defendants' Objections

Defendants object to the government's proposed instruction by contending that the Indictment does not alert them that the government is proceeding, in part, under a conflict of interest theory of honest services mail fraud.

The Indictment speaks unambiguously about the conflict of interest theory the government has always intended on pursuing. Thus, it notes in paragraph two of the mail fraud count, under the heading "<u>The Mail Fraud Scheme</u>," that

> "DOUGLAS JEMAL, NORMAN D. JEMAL, and
> BLAKE ESHERICK * * *  devised and intended to

> devise a <u>scheme to</u>:  * * *  (b) defraud and <u>deprive the</u>
> <u>DC Government</u> and the citizens of the District of
> Columbia <u>of</u> their right to <u>the honest and faithful services</u>
> <u>of Michael A. Lorusso</u> as an employee of OPM,
> <u>performed free from</u> deceit, favoritism, bias, self-
> enrichment, self-dealing and **conflict of interest**."

Indictment, Count Three, ¶ 2 (emphasis added).  The Indictment could not be
clearer that conflict of interest is a theory on which the government has been
proceeding; and it is not unfair to hold the defendants with knowledge of the plain
language of the Indictment.[60]

The defendants do not contend—nor could they—that conflict of interest is
not a recognized and, indeed, elemental theory of honest services fraud.  Having
no arguments on the merits, defendants attempt to conjure up a procedural
objection.  The Court should look to the plain language of the Indictment and
reject the defendants' efforts to avoid the obvious.

---

[60]    Moreover, there is little doubt they have understood this point all along.  The
defendants have demonstrated to the Court that they know full well how to obtain more
information about the Indictment.  Thus, they aggressively litigated their motion for a bill of
particulars, seeking to require the government to disclose greater detail than what was already
provided in the thirty-nine page Indictment.  <u>See</u> Defs. Mot. for a Bill of Particulars (Doc. 30)
(Dec. 22, 2005).  Yet in that motion defendants sought no clarifying information about the
government's honest services theories.  That silence speaks volumes.

## Government's Proposed Instruction No. 4.14

## <u>Mail Fraud "Honest Services": "Material Fact"—Defined</u>

A "material fact" is a fact that would be of importance to a reasonable person in making a decision about a particular matter or transaction.[61]

## <u>Defendants' Objections to Government's Proposed Instruction No. 4.14:</u>

Defendants object to this instruction because it has the potential to mislead the jury, as it defines a term not supported by any authority as part of an element of the conflict of interest theory of honest services fraud. As explained the Defendants' response to the Government's Proposed Instruction No. 4.5, it is the scheme to defraud that must be material, and therefore an instruction defining a "material fact" is confusing. Furthermore, for the reasons already stated above in response to the Government's Proposed Instruction No. 4.11, Defendants object to any reference to the "conflict of interest" theory of honest services fraud. Defendants respectfully request that the Court instead give Defendants' Proposed

---

[61] O'Malley et al., 2A Federal Jury Practice & Instructions § 47.13, at 401.

Instruction No. 31 defining "materiality," because it is a more accurate statement of the law, and reflects the context of this case, where no failure to disclose a conflict of interest has been alleged in the Indictment.

## Government's Reply to Defendants' Objections

Defendants object to the government's proposed instruction by contending that the Indictment does not alert them that the government is proceeding, in part, under a conflict of interest theory of honest services mail fraud.

The Indictment speaks unambiguously about the conflict of interest theory the government has always intended on pursuing. Thus, it notes in paragraph two of the mail fraud count, under the heading "The Mail Fraud Scheme," that

> "DOUGLAS JEMAL, NORMAN D. JEMAL, and BLAKE ESHERICK * * * devised and intended to devise a scheme to: * * * (b) defraud and deprive the DC Government and the citizens of the District of Columbia of their right to the honest and faithful services of Michael A. Lorusso as an employee of OPM, performed free from deceit, favoritism, bias, self-enrichment, self-dealing and **conflict of interest**."

Indictment, Count Three, ¶ 2 (emphasis added). The Indictment could not be clearer that conflict of interest is a theory on which the government has been proceeding; and it is not unfair to hold the defendants with knowledge of the plain

-97-

language of the Indictment.[62]

The defendants do not contend—nor could they—that conflict of interest is not a recognized and, indeed, elemental theory of honest services fraud. Having no arguments on the merits, defendants attempt to conjure up a procedural objection. The Court should look to the plain language of the Indictment and reject the defendants' efforts to avoid the obvious.

---

[62] Moreover, there is little doubt they have understood this point all along. The defendants have demonstrated to the Court that they know full well how to obtain more information about the Indictment. Thus, they aggressively litigated their motion for a bill of particulars, seeking to require the government to disclose greater detail than what was already provided in the thirty-nine page Indictment. See Defs. Mot. for a Bill of Particulars (Doc. 30) (Dec. 22, 2005). Yet in that motion defendants sought no clarifying information about the government's honest services theories. That silence speaks volumes.

## Government's Proposed Instruction No. 4.15

## Mail Fraud (Honest Services):  "Intent to Defraud"—Defined

To act with an "intent to defraud" means to act knowingly and with the intention or purpose to deceive or to cheat.

An intent to defraud is accompanied, ordinarily, by a desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some person or entity.[63]

## Defendants' Objections to Government's Proposed Instruction No. 4.15:

Defendants object to this instruction because it is repetitive of Government's Proposed Instruction No. 4.6.  Defendants also object to this instruction because it does not sufficiently convey that Defendants must have "knowingly and willfully" participated in the scheme to defraud, with "specific intent" to accomplish its unlawful objectives.  See 2 Sand et al., Modern Jury Instr.– Crim. ¶ 44.01 Instr. 44-3.  Defendants respectfully request that the Court

---

[63] O'Malley et al., 2A Federal Jury Practice & Instructions § 47.14, at 412.

instead give Defendants' Proposed Instruction No. 32, defining "intent to

defraud," which is a more accurate statement of the intent requirement of the mail

fraud statute.

**Government's Proposed Instruction No. 4.16**

**<u>Mail Fraud (Honest Services):  "Intent to Improperly Influence Public Official in his Official Duties"—Explained</u>**

The government may demonstrate that a defendant had the intent to improperly influence a public official in his official duties by showing that the defendant gave something of value to the official with the intent that the thing of value would influence the public official in a decision or action within the official's scope of duties.  For example, you may find that a person with interests before a government agency who provides a pattern of gifts, meals, and entertainment to a public official to coax favorable official action or decisions from the official, or to obtain greater access to or a better relationship with the official, has an intent to improperly influence a public official in his official duties.[64]

In determining the intent of a defendant, you may consider all the circumstances, including whether Michael Lorusso continued to receive things of

---

[64]    <u>United States</u> v. <u>Sawyer</u>, 85 F.3d 713, 730-31 (1st Cir. 1996).

-101-

value after he was no longer employed by the District of Columbia.[65]


**Defendants' Objections to Government's Proposed Instruction No. 4.16:**

Defendants object to the second sentence of this instruction as inconsistent with the authority cited by the government and an inaccurate statement of the law. See United States v. Sawyer, 85 F.3d 713, 741 ("if [the defendant] had this limited intent -- to cultivate friendship rather than to influence an official act -- the federal statutes here involved [bribery and honest services fraud] would not be violated"). Defendants submit that Defendants' Proposed Instruction No. 30 is a more accurate statement of the law.

Defendants object to the last paragraph as argumentative and unnecessary.

---

[65]

       United States v. Sawyer, 239 F.3d 31, 47 (1st Cir. 2001).

## Government's Proposed Instruction No. 4.17

## <u>Mail Fraud (Honest Services):  "Conflict of Interest"—Defined</u>

A conflict of interest is any personal interest or profit a public official

expects to derive or has derived from any action, decision, transaction, or set of

transactions in which he participates in the course of his public employment.[66]

## <u>Defendants' Objections to Government's Proposed Instruction No. 4.17:</u>

Defendants object to this instruction because it is irrelevant in the instant

case, where the Indictment does not allege any facts that would support a charge

of honest services fraud based on a "conflict of interest" theory.  There are no facts

in the Indictment alleging a failure on  Lorusso's part to disclose a conflict of

interest, nor any mention of purported actions on Defendants' part to assist

Lorusso's in concealing a conflict of interest.  Therefore, this instruction should

not be given, as it will confuse the jury and prejudice Defendants.

In addition, this instruction sweeps far too broadly.  The phrase "personal

---

[66]

       See Eleventh Circuit Criminal Instruction No. 50.2.

interest" is not defined, and could mean almost anything. Defendants contend that that any "personal interest or profit" must be material enough to influence the public official's action, and that a "conflict of interest" instruction must so state.

If, however, the Court decides to give an instruction on the conflict of interest theory to the jury, Defendants respectfully reserve their right to submit a proposed instruction at that time.

## **Government's Reply to Defendants' Objections**

Defendants object to the government's proposed instruction by contending that the Indictment does not alert them that the government is proceeding, in part, under a conflict of interest theory of honest services mail fraud.

The Indictment speaks unambiguously about the conflict of interest theory the government has always intended on pursuing. Thus, it notes in paragraph two of the mail fraud count, under the heading "The Mail Fraud Scheme," that

> "DOUGLAS JEMAL, NORMAN D. JEMAL, and BLAKE ESHERICK * * * devised and intended to devise a scheme to:  * * * (b) defraud and deprive the DC Government and the citizens of the District of Columbia of their right to the honest and faithful services of Michael A. Lorusso as an employee of OPM, performed free from deceit, favoritism, bias, self-enrichment, self-dealing and **conflict of interest**."

Indictment, Count Three, ¶ 2 (emphasis added). The Indictment could not be clearer that conflict of interest is a theory on which the government has been proceeding; and it is not unfair to hold the defendants with knowledge of the plain language of the Indictment.[67]

The defendants do not contend—nor could they—that conflict of interest is not a recognized and, indeed, elemental theory of honest services fraud. Having no arguments on the merits, defendants attempt to conjure up a procedural objection. The Court should look to the plain language of the Indictment and reject the defendants' efforts to avoid the obvious.

---

[67] Moreover, there is little doubt they have understood this point all along. The defendants have demonstrated to the Court that they know full well how to obtain more information about the Indictment. Thus, they aggressively litigated their motion for a bill of particulars, seeking to require the government to disclose greater detail than what was already provided in the thirty-nine page Indictment. See Defs. Mot. for a Bill of Particulars (Doc. 30) (Dec. 22, 2005). Yet in that motion defendants sought no clarifying information about the government's honest services theories. That silence speaks volumes.

## Government's Proposed Instruction No. 4.18

## Mail Fraud "Honest Services": "Duty to Disclose"—Defined

A public official's duty to disclose material information need not be expressly imposed by statute or code; for a public official inherently owes a fiduciary duty to the public to make governmental decisions in the public's best interest.[68]

## Defendants' Objections to Government's Proposed Instruction No. 4.18:

Defendants renew their objection to any reference to the conflict of interest theory of honest services fraud as inappropriate in this case. Moreover, the definition of a public official's duty to disclose provided by the government in this instruction, which is based on a single non-precedential case, is not a complete and accurate statement of the law. By way of example, the U.S. Court of Appeals for the Third Circuit has held that a public official deprives the public of his honest

---

[68]

    United States v. Silvano, 812 F.2d 754, 759 (1st Cir. 1987) ("[T]he affirmative duty to disclose material information arises out of a government official's fiduciary relationship to his or her employer * * *.").

services in violation of Section 1346 when he "takes discretionary action that the official knows will directly benefit a financial interest that the official has concealed in violation of a state criminal law." United States v. Panarella, 277 F.3d 678, 691 (3d Cir. 2002) (emphasis added). Defendants again request that, if the Court decides it is inclined to instruct the jury on the conflict of interest theory of honest services fraud, Defendants be permitted to submit proposed jury instructions at that time.

## Government's Reply to Defendants' Objections

Defendants object to the government's proposed instruction by contending that the Indictment does not alert them that the government is proceeding, in part, under a conflict of interest theory of honest services mail fraud.

The Indictment speaks unambiguously about the conflict of interest theory the government has always intended on pursuing. Thus, it notes in paragraph two of the mail fraud count, under the heading "The Mail Fraud Scheme," that

> "DOUGLAS JEMAL, NORMAN D. JEMAL, and BLAKE
> ESHERICK * * * devised and intended to devise a scheme to: * * *
> (b) defraud and deprive the DC Government and the citizens of the
> District of Columbia of their right to the honest and faithful services
> of Michael A. Lorusso as an employee of OPM, performed free from

-107-

deceit, favoritism, bias, self-enrichment, self-dealing and **conflict of interest**."

Indictment, Count Three, ¶ 2 (emphasis added).  The Indictment could not be clearer that conflict of interest is a theory on which the government has been proceeding; and it is not unfair to hold the defendants with knowledge of the plain language of the Indictment.[69]

The defendants do not contend—nor could they—that conflict of interest is not a recognized and, indeed, elemental theory of honest services fraud.  Having no arguments on the merits, defendants attempt to conjure up a procedural objection.  The Court should look to the plain language of the Indictment and reject the defendants' efforts to avoid the obvious.

---

[69]    Moreover, there is little doubt they have understood this point all along.  The defendants have demonstrated to the Court that they know full well how to obtain more information about the Indictment.  Thus, they aggressively litigated their motion for a bill of particulars, seeking to require the government to disclose greater detail than what was already provided in the thirty-nine page Indictment.  See Defs. Mot. for a Bill of Particulars (Doc. 30) (Dec. 22, 2005).  Yet in that motion defendants sought no clarifying information about the government's honest services theories.  That silence speaks volumes.

**Government's Proposed Instruction No. 4.19**

**<u>Mail Fraud (Honest Services):  Defendant(s Actual Knowledge of Public Official(s Duty to Disclose(Explained.</u>**

The government is not required to prove that a defendant <u>knew</u> that the law required Michael Lorusso to disclose all material information to the District of Columbia, including receipt of material things of value provided by a defendant, because ignorance of the law is not a defense to mail fraud.[70]

**<u>Defendants' Objections to Government's Proposed Instruction No. 4.19:</u>**

Defendants object to any reference to the conflict of interest theory of honest services fraud as inappropriate in this case.  More specifically, Defendants object to this instruction, which is based on a single case, as an incomplete and inaccurate statement of the law.  By way of example, a district court applying Third Circuit law recently held that a defendant's knowledge of the public

---

[70]

      <u>United States</u> v. <u>Paradies,</u> 98 F.3d 1266, 1284-85 (11th Cir. 1996) (affirming honest services mail fraud convictions and holding that trial court correctly refused to instruct jury in honest services mail fraud case "that the defendants knew that their conduct was against the law," because the government "need only prove that the defendant had the intent to deceive, and ignorance of the law is no defense").

-109-

official's reporting obligation was required.  United States v. Holck, 398 F. Supp.

2d 338, 355 (E.D. Pa. 2005) (The government had the obligation of proving [the

defendants'] knowledge beyond a reasonable doubt, [and] cannot rely on a

vicarious theory of responsibility under the well worn dictum that 'ignorance of

the law is no excuse' to satisfy its burden that [the defendants] had knowledge of

[the official's] reporting obligation.").

Further, Defendants object to this proposed instruction as misleading.

While it may be accurate to say that Defendants need not know of a specific

statutory obligation of disclosure, Defendants could not have participated in a

scheme to fail to disclose an actual conflict of interest without knowingly and

willfully intending that the public official would fail to disclose the actual conflict

of interest in circumstances where he had an obligation to disclose, and the

Court's instructions should so state.

Defendants request that, if the Court decides it is inclined to instruct the jury

on the conflict of interest theory of honest services fraud, Defendants be permitted

to submit proposed jury instructions at that time.

## Government's Reply to Defendants' Objections

Defendants object to the government's proposed instruction by contending that the Indictment does not alert them that the government is proceeding, in part, under a conflict of interest theory of honest services mail fraud.

The Indictment speaks unambiguously about the conflict of interest theory the government has always intended on pursuing. Thus, it notes in paragraph two of the mail fraud count, under the heading "The Mail Fraud Scheme," that

> "DOUGLAS JEMAL, NORMAN D. JEMAL, and BLAKE ESHERICK * * * devised and intended to devise a scheme to: * * * (b) defraud and deprive the DC Government and the citizens of the District of Columbia of their right to the honest and faithful services of Michael A. Lorusso as an employee of OPM, performed free from deceit, favoritism, bias, self-enrichment, self-dealing and **conflict of interest**."

Indictment, Count Three, ¶ 2 (emphasis added). The Indictment could not be clearer that conflict of interest is a theory on which the government has been proceeding; and it is not unfair to hold the defendants with knowledge of the plain language of the Indictment.[71]

---

[71] Moreover, there is little doubt they have understood this point all along. The defendants have demonstrated to the Court that they know full well how to obtain more information about the Indictment. Thus, they aggressively litigated their motion for a bill of

The defendants do not contend—nor could they—that conflict of interest is not a recognized and, indeed, elemental theory of honest services fraud.  Having no arguments on the merits, defendants attempt to conjure up a procedural objection.  The Court should look to the plain language of the Indictment and reject the defendants' efforts to avoid the obvious.

---

particulars, seeking to require the government to disclose greater detail than what was already provided in the thirty-nine page Indictment.  <u>See</u> Defs. Mot. for a Bill of Particulars (Doc. 30) (Dec. 22, 2005).  Yet in that motion defendants sought no clarifying information about the government's honest services theories.  That silence speaks volumes.

## Government's Proposed Instruction No. 4.20

## <u>Mail Fraud (Money or Property and Honest Services):  The Good Faith Defense—Explained[72]</u>

The good faith of the defendants is a complete defense to Mail Fraud under either ground because good faith is inconsistent with the intent to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

A defendant does not act in good faith if, even though he honestly holds a certain opinion or belief, he also knowingly makes false or fraudulent pretenses, representations, or promises to others.

The mail fraud statute is written to subject to criminal punishment only those people who knowingly obtain money or property by means of false or fraudulent pretenses, representations, or promises.

While the term "good faith" has no precise definition, it means, among other things, an honest belief, a lack of malice, and an intention to avoid taking unfair advantage of another.

---

[72]
      O'Malley, Federal Jury Practice & Instructions § 47.16, at 417-18.

The burden of proving good faith does not rest with the defendant because the defendant has no obligation to prove anything to you. The government has the burden of proving to you beyond a reasonable doubt that the defendant acted with the intent to obtain money or property by means of false or fraudulent pretenses, representations, or promises or with the intent to deprive the District of Columbia or its citizens of their right to the honest services of Michael Lorusso.

If the evidence in the case leaves the jury with a reasonable doubt as to whether a defendant acted in good faith or acted willfully in an attempt to evade taxes, the jury must acquit the defendant.

**Defendants' Objections to Government's Proposed Instruction No. 4.20:**

Defendants object to this specific instruction on the good faith defense in the context of the offense of Mail Fraud because good faith is a defense to all of the charges in the Indictment, each of which requires specific intent. For this reason, Defendants' respectfully request that the Court instead give Defendants' Proposed Instruction No. 52, which applies to all of the charges in the Indictment.

Defendants object to the second paragraph of the proposed instruction,

which is incomplete and internally inconsistent. To illustrate the confusing nature of this paragraph, if a defendant holds opinions or beliefs inconsistent with an intent to defraud, then any alleged false representations cannot be done with fraudulent intent. Yet the government's proposed instruction suggests that making a false representation can trump good faith.

Further, if the Court adopts the government's approach and gives separate instructions under Count Three for honest services, the Court must repeat the element of a mailing in furtherance of the scheme.

Finally, Defendants object to the last sentence of this instruction because it incorrectly references "an attempt to evade taxes," which is not relevant to the offense of Mail Fraud as charged.

**Government's Proposed Instruction No. 4.21**

**Mail Fraud (Money or Property and Honest Services):**

**Bases of Criminal Liability**

As I have already instructed in connection with the Bribery count, there are four bases of criminal responsibility that you should consider to determine whether the government has proved the defendant guilty of Mail Fraud—either on the ground that the defendant obtained money or property through false or fraudulent pretenses, representations, or promises, or on the ground that the defendant deprived the District of Columbia and its citizens of their right to the honest services of Michael Lorusso.

**Defendants' Objections to Government's Proposed Instruction No. 4.21:**

Defendants object to this instruction because it is confusing -- it references "four bases of criminal responsibility" and then sets forth only two theories of liability. This instruction is also unnecessary and unsupported by any authority.

**FIRST DEGREE FRAUD INSTRUCTIONS**

**Government's Proposed Instruction No. 5.0**

**First-Degree Fraud:  The Nature of the Offense Charged**

Count Four of the Indictment charges that, in or about July 2001, defendant Blake C. Esherick, as a principal and by causing acts to be done, engaged in a scheme to defraud the District of Columbia by submitting a false invoice for $38,000 captioned "77 P Street, NE, D.O.E.S. Relocation Expenses."

**Defendants' Objections to Government's Proposed Instruction No. 5.0:**

Defendants object to the phrase "as a principal and by causing acts to be done" in this instruction because it is vague and confusing.

-117-

**Government's Proposed Instruction No. 5.1**

**First-Degree Fraud:  The Statute Defining the Offense**

Sections 3221(a) and 3222(a)(1) and of Title 22 of the District of Columbia

Code provide, in part, that:

> "A person commits the offense of fraud in the first degree if
> that person engages in a scheme or systematic course of conduct with
> intent to defraud or to obtain property of another by means of a false
> or fraudulent pretense, representation, or promise and thereby obtains
> property of another or causes another to lose property * * * and the
> value of the property obtained or lost is $250 or more."

**Defendants' Objections to Government's Proposed Instruction No. 5.1:**

Defendants object to this charge as unnecessary, and suggest that the

first paragraph of Defendants' Proposed Instruction No. 35 references the

statute in a more economical and less prejudicial way.

-118-

**Government's Proposed Instruction No. \_\_\_**

**<u>First-Degree Fraud: "Scheme"—Defined</u>**

As I have instructed you, a "scheme" includes any plan or course of action to deceive or cheat a person or entity.

**<u>Defendants' Objection:</u>**

Defendants object to this instruction because it is incomplete. Schemes to deceive do not violate the statute unless they are done with intent to deprive a person of money or property. Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 36, which is adapted from the Red Book standard instruction.

-119-

**Government's Proposed Instruction No.____**

**First-Degree Fraud:  Elements Defined**

Like Mail Fraud, First-Degree Fraud requires the government to show an intent to defraud and that the defendant made material false or fraudulent pretenses, representations, or promises.  I have already defined these terms for you in connection with my instructions on Mail Fraud.

**Defendants' Objection:**

Defendants object to this instruction because it inappropriately references the terms defined in the context of Mail Fraud.  Defendants respectfully request that the Court instead give Defendants' Proposed Instructions Nos. 37, 38 and 39, which are adapted from the Red Book standard instructions.

In addition, Defendants request that the Court give a unanimity instruction on Count Four, such as Defendants' Proposed Instruction No. 40.

# WIRE FRAUD INSTRUCTIONS

## Government's Proposed Instruction No. 6.0

## <u>Wire Fraud:  The Nature of the Offense Charged</u>

Count Five of the Indictment charges that, from on or about November 1, 2002, through on or about January 31, 2005, in the District of Columbia, defendants Douglas Jemal, Norman D. Jemal, and Blake C. Esherick, knowingly devised and intended to devise a scheme to defraud Morgan Stanley; Douglas Jemal's partner; and the Internal Revenue Service; and to obtain money under the control of Morgan Stanley by means of false and fraudulent pretenses and representations.

## <u>Defendants' Objections to Government's Proposed Instruction No. 6.0:</u>

Defendants object to this charge as unnecessary, and suggest that the first paragraph of Defendants' Proposed Instruction No. 41 references the statute in a more economical and less prejudicial manner.

## Government's Proposed Instruction No. 6.1

### Wire Fraud:  The Statute Defining the Offense Charged

Section 1343 of Title 18 of the United States Code provides, in part, that:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice," * * * shall be guilty of an offense against the United States.[73]

### Defendants' Objections to Government's Proposed Instruction No. 6.1:

Defendants object to this instruction as unnecessary.  Defendants'

Proposed Instruction No. 41 provides sufficient reference to the statute.

---

[73]

O'Malley et al., 2A Federal Jury Practice & Instructions § 47.06, at 360.

**Government's Proposed Instruction No. 6.2**

**Wire Fraud:  The Essential Elements of the Offense Charged**

To sustain its burden of proof for the crime of using a wire communication in interstate commerce to further a scheme or plan to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, as charged in Count Five of the Indictment, the government must prove the following three essential elements beyond a reasonable doubt:

One:       The defendant knowingly devised or knowingly participated in a scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises;

Two:       The defendant did so with the intent to defraud; and

Three:     In advancing, furthering, or carrying out the scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises, the defendant

(a)      transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce; or

-123-

(b)     caused the transmission of any writing, signal, or sound

of some kind by means of a wire, radio, or television

communication in interstate commerce.

**<u>Defendants' Objections to Government's Proposed Instruction No. 6.2:</u>**

Defendants object to this instruction because it does not sufficiently convey

that Defendants must have "knowingly and willfully" participated in the scheme to

defraud, with "specific intent" to accomplish its unlawful objectives.  <u>See</u> 2 Sand

et al., <u>Modern Jury Instr.– Crim.</u> ¶ 44.01 Instr. 44-3.  Defendants respectfully

request that the Court instead give Defendants' Proposed Instruction No. 41,

which is a more accurate statement of the law.

**Government' Proposed Instruction No. 6.3**

**<u>Wire Fraud:  Elements—Defined</u>**

Like Mail Fraud and First-Degree Fraud, Wire Fraud requires the

government to prove a scheme, the use of material false or fraudulent pretenses,

and the intent to defraud.  I have already you as to these terms as part of my

instructions on the other two fraud counts.

**<u>Defendants' Objections to Government's Proposed Instruction No. 6.3:</u>**

Defendants object to this instruction for the same reasons given in response

to the Government's Proposed Instructions Nos. 4.3-4.7.  Defendants submit that

Defendants' Proposed Instructions Nos. 42-44 more accurately define the elements

of Wire Fraud.

**Government's Proposed Instruction No. 6.4**

## <u>Wire Fraud: "Transmits by Means of Wire, Radio, or Television Communication in Interstate Commerce"—Defined</u>

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" means to send from one state to another by means of telephone or telegraph lines or by means of radio or television.

The phrase "transmits by means of wire, radio, or television communication in interstate commerce" includes a telephone conversation by a person in one state with a person in another state. It also includes the use of a fax machine to send information to a person or entity in a different state.

The use of a wire, radio, or television communication facility in interstate commerce is an essential element of the offense of wire fraud as charged in Count Five of the Indictment. The government need not prove that the defendant actually used a wire communication in interstate commerce or that the defendant even intended that anything be transmitted in interstate commerce by means of a wire, radio, or television communication to further, advance, or carry out the scheme or plan to defraud or to obtain money by means of false or fraudulent

-126-

pretenses, representations, or promises.

The government must prove beyond a reasonable doubt, however, that a transmission by a wire, radio, or television communication facility in interstate commerce was, in fact used in some manner to further, advance, or carry out the scheme to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

The government may prove that a defendant caused the use of the wire, radio, or television communication in interstate commerce proving either

(a)    that a use of the wire, radio, or television communication in interstate commerce would follow in the ordinary course of the defendant's business or events, or,

(b)    that a use of the mails by someone was reasonably foreseeable.

The government need not prove that the information transmitted by means of wire, radio, or television communication in interstate commerce was itself false or fraudulent. The government also need not prove that the information contained any false or fraudulent statement, representation, or promise, or contained any

request for money or thing of value.[74]  The government also need not prove that

the use of the wire, radio, or television communication in interstate commerce was

intended as the specific or exclusive means of accomplishing the scheme.[75]

The government must prove beyond a reasonable doubt, however, that the

use of the wire, radio, or television communication in interstate commerce

furthered, advanced, or carried out, in some way, the scheme or plan to defraud or

to obtain money or property by means of false or fraudulent purposes,

representations, or promises.[76]

A use of the wire, radio, or television communication in interstate

commerce furthers, advances, or carries out a scheme not just when it is an

essential element of the scheme.  It is sufficient for a particular use to be incident

to an essential part of the scheme or a step in the plot of the scheme.

A use of the wire, radio, or television communication in interstate

commerce need not affirmatively help the perpetrator carry out a fraudulent

---

[74]       O'Malley et al., 2A Federal Jury Practice & Instructions § 47.04, at 348-49.

[75]       Eleventh Circuit Criminal Instruction No. 50.1.

[76]       Kevin F. O'Malley et al., 2A Federal Jury Practice & Instructions § 47.04, at 348-49.

scheme.  The wire element of this Count may be satisfied by a use of the wire, radio, or television communication in interstate commerce that is in and of itself routine and innocent.  This element may also be satisfied by a use a wire, radio, or television communication in interstate commerce that is counterproductive in that it creates a paper trial from which the fraud may be discovered.[77]

Proof that information was faxed and thereby constituted a wire, radio, or television communication in interstate commerce can be entirely by circumstantial evidence; there is no requirement that the government produce direct proof.[78]

The Indictment alleges three separate uses of the wires.  The government is not required to prove all three wires.  To find a defendant guilty of mail fraud, the jury must unanimously agree on at least one of the three mailings.

**Defendants' Objections to Government's Proposed Instruction No. 6.4:**

Defendants object to this instruction for substantially the same reasons

---

[77]     United States v. Schmuck, 489 U.S. 705, 710-11 (1989).

[78]     See United States v. Griffith, 17 F.3d 865, 874 (6th Cir. 1994); see also United States v. Waymer, 55 F.3d 564, 571 (11th Cir. 1995).

given in response to the Government's Proposed Instruction No. 4.8.  Defendants

respectfully request that the Court instead give Defendants' Proposed Instruction

No. 45, which defines the term "use of wires in interstate commerce" more

accurately and concisely.

## Government's Proposed Instruction No. 6.5

## <u>Wire Fraud:  No Claim of Right Defense</u>

Claim-of-right is not a defense, as I explained to you in my instructions on the Mail Fraud count.

## <u>Defendants' Objections to Government's Proposed Instruction No. 6.5:</u>

Defendants object to this instruction for the same reasons given in response to the Government's Proposed Instruction No. 4.10.

## Government's Proposed Instruction No. 6.6

## **Wire Fraud:  Bases of Criminal Liability**

As with Bribery, its lesser-included offense of Gratuities, and Mail Fraud, there are four bases of criminal liability for Wire Fraud.

## **Defendants' Objections to Government's Proposed Instruction No. 6.6:**

Defendants object to this instruction for the same reasons given in response to the Government's Proposed Instructions Nos. 2.14 and 4.0.

Finally, Defendants object to the absence of an instruction on unanimity with respect to the offense of Wire Fraud and respectfully request that the Court give Defendants' Proposed Instruction No. 46, which sets forth this requirement.

## Government's Proposed Instruction 6.7

### Wire Fraud (Money or Property and Honest Services):  The Good Faith Defense—Explained[79]

As I instructed you in connection with Mail Fraud, good faith is a defense.

### Defendants' Objections to Government's Proposed Instruction No. 6.7:

Defendants object to this specific instruction on the good faith defense in the context of the offense of Wire Fraud because good faith is a defense to all of the charges in the Indictment, each of which requires specific intent.  For this reason, Defendants' respectfully request that the Court instead give Defendants' Proposed Instruction No. 52, which applies to all of the charges in the Indictment.

If the Court decides to give this instruction instead, Defendants respectfully request that the Court include the following language at the end of the instruction:

In making a finding as to a good faith defense, you must consider all the facts and circumstances surrounding the transaction that is the subject of the

---

[79]

     O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), § 67.25 at.640.

Indictment.  One factor evidencing good faith is whether contemporaneous entries on the corporate books and records are consistent with the Defendants' view of the transaction.  Factors showing lack of good faith are the existence of duplicate books and records and bookkeeping entries that alter or conceal a transaction.

# TAX EVASION INSTRUCTIONS

## Government's Proposed Instruction No. 7.0

### Tax Evasion:  The Nature of the Offense Charged

Counts Six, Seven, and Eight of the Indictment charge that, for calendar years 2001, 2002 and 2003, defendants Blake C. Esherick and Douglas Jemal, as principals, aiders and abetters, co-conspirators and by causing acts to be done, willfully attempted to evade Blake C. Esherick's income tax for the respective years.[80]

### Defendants' Objections to Government's Proposed Instruction No. 7.0:

Defendants object to the inclusion of alternative bases of liability in this instruction for the same reasons as stated in response to the Government's Proposed Instructions Nos. 2.14, 4.0 and 6.6.  The inclusion of the phrase "principals, aiders and abetters, and co-conspirators" is unnecessary and completely unsupported by any authority.  No conspiracy is charged in these

---

[80]    O'Malley, Grenig and Lee, Federal Jury Practice and Instructions (5th ed. 2000),  § 67.01, p. 531 (modified to reflect the charges in this case).

counts, and Count One does not charge a conspiracy to commit tax evasion.

Moreover, the jury will be instructed on aiding and abetting liability in connection

with these counts of the Indictment and therefore this instruction is unnecessary.

**Government's Proposed Instruction No. 7.1**

**Tax Evasion:  The Statute Defining the Offense**[81]

Section 7201 of Title 26 of the United State Code provides, in part that:

"Any person who willfully attempts in any manner to evade or defeat

any tax imposed by this title of the payment thereof shall * * *" be

guilty of a crime.


**Defendants' Objections to Government's Proposed Instruction No. 7.1:**

Defendants object to this charge as unnecessary, and suggest that the first

paragraph of Defendants' Proposed Instruction No. 47 references the statute in a

more economical and less prejudicial way.

---

[81]

O'Malley, Grenig and Lee, Federal Jury Practice and Instructions (5th ed. 2000),  § 67.02,
p. 531.

-137-

**Government's Proposed Instruction No. 7.2**

**<u>Tax Evasion—The Essential Elements of The Offense Charged</u>**

To sustain its burden of proof for the crime of willfully attempting "to evade or defeat any tax or the payment thereof," the government must prove the following three (3) essential elements beyond a reasonable doubt:

One:        For the specific calendar year, there existed a tax deficiency related to income taxes due and owing from Blake C. Esherick;

Two:        The defendants attempted to evade this tax as detailed in the Indictment; and

Three:      In attempting to evade such tax, the defendants acted willfully.[82]

---

[82]

    See, e.g., <u>United States v. Shorter</u>, 608 F. Supp. 871, 874 (D.D.C. 1985 ) ("[T]he existence of a tax deficiency is but one of the two essential elements of the crime, the other being an affirmative act of willful evasion." (citations omitted)), <u>aff'd</u> 809 F.2d 54, <u>cert. denied,</u> 484 U.S. 817 (1987); <u>United States v. (Arnett) Smith</u> , 267 F.3d 1154, 1165 (D.C. Cir. 2001) (Reversing upward sentencing departure on grounds that the defendant attempted to evade taxes:  "The elements of that crime are (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion.").  <u>See also,</u> <u>Sansone v. United States,</u> 380 U.S. 343, 351 (1965) ("The elements of § 7201 are willfulness; the existence of a tax deficiency, ... and an affirmative act constituting an evasion or attempted evasion of the tax, ... ." (citations omitted)); <u>United States v. Citron,</u> 783 F.2d

-138-

307, 312 (2d Cir.1986) ("The elements of a Section 7201 violation are (1) willfulness, (2) the existence of a tax deficiency, and (3) an affirmative act constituting an evasion or attempted evasion of the tax."); United States v. Goichman, 547 F.2d 778, 781 (3d Cir.1976) ("The elements of a Section 7201 violation are easily stated: the government must prove the existence of a tax deficiency, an affirmative act constituting an evasion or attempted evasion of the tax due, and willfulness." (citing Sansone)); United States v. Bishop, 264 F.3d 535, 545 (5th Cir. 2001) ("The crime of tax evasion as defined in 26 U.S.C. § 7201 has three essential elements: (1) the existence of a tax deficiency;  (2) willfulness; and (3) an affirmative act constituting evasion or attempted evasion of the tax." (citations omitted)), cert. denied, 535 U.S. 1016 (2002); United States v. Willis, 277 F.3d 1026, 1030 (8th Cir. 2002)  ("The government must prove three elements in order to obtain a conviction under § 7201: a tax deficiency, willfulness, and an affirmative act of evasion or attempted evasion of the tax." (citation omitted)); United States v. Marabelles, 724 F.2d 1374, 1377 (9th Cir.1984) ("[T]he elements of attempted income tax evasion (26 U.S.C. Section 7201 (1976)) are: (1) the existence of a tax deficiency, (2) willfulness in  attempted evasion of taxes, and (3) an affirmative act constituting an evasion or attempted evasion." (citations omitted)).

(footnote 3 continued)

O'Malley, Grenig and Lee suggest a slightly different first element:

In order to sustain its burden of proof for the crime of willfully attempting to evade or defeat a tax as charged in Count ____ of the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt:

One: A substantial income tax was due from Defendant _____ [in addition to that declared on the defendant's tax return] [in addition to that paid by the defendant];

Two: The defendant attempted to evade or defeat this [additional] tax as detailed in the indictment; and

Three: In attempting to evade or defeat such [additional] tax, Defendant _____ acted willfully.

-139-

**<u>Defendants' Objections to Government's Proposed Instruction No. 7.2:</u>**

Defendants object to the description of the first element in this instruction because it does not include the requirement that the government prove a "substantial" tax deficiency exists.  <u>See</u> 2B O'Malley et al., <u>Fed. Jury Practice & Instr.</u> § 67.03.

Defendants also object to the description of the second element because it does not include the requirement that the government must prove that the defendant undertook an "affirmative act" in attempting to evade or evading the tax.  <u>See</u> <u>Sansone v. United States</u>, 380 U.S. 343, 351 (1965) (requiring affirmative act constituting an evasion or attempted evasion of the tax).

———————————

O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), § 67.03, p. 535. The Government maintains that the requirement that it prove a "tax deficiency" rather than a "substantial income tax" in the first element of this instruction is a far more accurate statement of law, and, as noted above, has been endorsed by nearly every federal circuit.  The concept of "substantiality" is appropriately incorporated in the explanatory language associated with the definition of "tax deficiency," as set forth in the next instruction, which requires the government to prove that the defendant attempted to evade a "substantial <u>portion</u>" of the tax owed and not a particular undefinable "substantial" amount of tax dollars.

The proposed instruction is also misleading as to the requisite criminal intent of willfulness because it fails to treat it as a separate and distinct element of the offense.  See id. (setting forth "willfulness" as a separate element of criminal tax evasion).  The phrase used in the proposed instruction -- "the defendants acted willfully [in attempting to evade such tax]" -- infuses the criminal intent element with the second element, the affirmative act constituting attempted tax evasion. The requisite criminal intent of willfulness is the *sine qua non* of criminal tax evasion and must be respected as a distinct and separate element of the offense. The mere existence of a substantial tax deficiency due to a proposed IRS adjustment, without any criminal intent on the part of the taxpayer, results in a civil tax liability and possible civil tax penalties.  It is the criminal intent of "willfulness" that distinguishes the criminal tax offense from a civil tax liability. By employing "willfulness" as an adjective modifying the affirmative act of attempted tax evasion, the proposed instruction suggests that willful conduct resulting in a tax deficiency, without more, is sufficient evidence to establish criminal tax evasion.

This combined reference is patently misleading.  For example, at trial the

defense will seek to show that Defendants here "willfully" intended to exclude certain non-payroll payments from Form W-2 wage income reported to Defendant Blake Esherick, but they did so because of a good faith belief that such non-payroll payments were excluded from gross income as loan advances. The proposed instruction would dissuade the jury from considering, if not preclude consideration of, the defense position -- namely, that Defendants, while intending to omit the subject payment as a permissible exclusion from wage income, did not have any willful intent to evade or defeat tax.

For these reasons, Defendants respectfully request that the Court give Defendants' Proposed Instructions No. 47 (setting forth the elements of tax evasion) and No. 48 (defining "substantial additional tax") because they are a more accurate statement of the law.

**Government's Proposed Instruction No. 7.3**

**<u>Tax Evasion:  Bases of Liability</u>**

I have already described for you're the four ways in which a defendant may be proved guilty.

**<u>Defendants' Objections to Government's Proposed Instruction No. 7.3</u>**:

Defendants object to this instruction for the reasons already given in response to the Government's Proposed Instructions Nos. 2.14, 4.0 and 6.6. This instruction is unnecessary and completely unsupported by authority.

## Government's Proposed Instruction No. 7.4

## <u>Tax Evasion:  Proof of Precise Amount of Tax Owed Not Necessary</u>[83]

In considering the first element, that is, the existence of a tax deficiency, the government must prove beyond a reasonable doubt that the defendant willfully attempted to evade or defeat a substantial portion of the tax owed.  The term "substantial" is a relative term not measured in terms of gross or net income nor by the tax shown to be due and payable.  All the attendant circumstances must be taken into consideration.[84]

Although the government must prove a willful attempt to evade a substantial portion of tax, the government is not required to prove the precise

---

[83] O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000) § 67.08, p. 584.  This instruction is modified by the two sentences which further explain the concept of "substantiality."

[84] The term "substantial" is a relative term "not measured in terms of gross or net income nor by *** tax shown to be due and payable. All the attendant circumstances must be taken into consideration * * * *."  <u>United States v. Nunan</u>, 236 F.2d 576, 585 (2d Cir.1956), <u>cert. denied</u>, 353 U.S. 912 (1957).

amount of additional tax alleged in the indictment or the precise amount of additional tax owed.

### Defendants' Objections to Government's Proposed Instruction No. 7.4:

Defendants object to the definition of the term "substantial" in this instruction.  Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 48, which defines "substantial additional tax" more accurately and completely.  The government's proposed instruction fails to explain that the Indictment merely alleges a tax deficiency.  Whether there is a tax liability owed to the Internal Revenue Service is a question for the jury to determine.  Thus, the jury must find beyond a reasonable doubt that a <u>substantial</u> tax liability is owed to the Internal Revenue Service. The Government bears the burden of proving that tax deficiency beyond a reasonable doubt.  But the language employed by the government's proposed instruction emphasizes the criminal intent while

assuming that "a substantial portion of the tax" -- the very element at issue -- has already been proven.  Moreover, the instruction's reference to "a substantial portion of the tax owed" is confusing and misleading.  The tax owed can refer to (a) the tax due as reported on the original Form 1040, (b) the tax due as reported on an amended Form 1040X, (c) the alleged additional amount of tax due based on proposed audit adjustments summarized on a Form 4549 (Income Tax Examination Changes), or (d) the alleged additional amount of tax due based on a tax deficiency assessed by IRS.

In defining "substantial," this proposed instruction mixes defined terms in the Internal Revenue Code, such as "gross income," with commonly used terms, such as "net income," which are not used in the Internal Revenue Code.  In referring to "substantial" as a relative term, it is especially important to identify the comparison concepts in careful and exact terms.  To avoid confusion, especially since subsequent proposed

instructions address principles of tax law, the language of the jury

instructions should be consistent throughout and should be confined to

defined terms having meanings ascribed by the Internal Revenue Code.  For

this reason, Defendants also object to the sentence "All the attendant

circumstances must be taken into consideration."  This sentence is

confusing and presented without any explanation of what "attendant

circumstances" means in this context.

Finally, the last sentence of the Government's proposed instruction is

confusing and is without authority or relevance to this case.

If the Court decides to give this instruction, Defendants respectfully

request that it be altered to track the defined terms used in 26 U.S.C. § 61

(defining "gross income") and 26 U.S.C. § 63 (defining "taxable income")

as follows:

In considering the first element, that is, the existence of a substantial tax

deficiency, the government must prove beyond a reasonable doubt that the alleged

tax deficiency is in fact a tax liability that is owed to the Internal Revenue and that

the amount of such tax liability is "substantial."  The term "substantial" is relative

and is not measured in terms of "gross income" or  "taxable income," nor by the

tax originally reported on the return or by the additional tax alleged to be due and

payable.

**Government's Proposed Instruction No. 7.5**

**Tax Evasion:  "Attempt to Evade Taxes or Defeat Payment of Taxes"—Explained[85]**

In considering the second element, the phrase "attempt[s] to evade this tax or defeat payment of this tax" involves two things:  first, the formation of an <u>intent</u> to evade a tax, and second, willfully performing some <u>act</u> to evade payment of that tax.

The phrase "attempts in any manner to evade or defeat any tax" contemplates and charges that the defendants Blake Esherick and Douglas Jemal knew and understood that during the calendar year 2001, 2002 and 2003, defendant Blake Esherick owed substantially more federal income tax than had been paid for that year and then tried in some way to avoid that additional tax.

To show an "attempt in any manner to evade," therefore, the government must prove beyond a reasonable doubt that the defendants Blake Esherick and Douglas Jemal intended to evade the income tax due by Blake Esherick and that they committed, personally, as an aider and abettor, as a co-conspirator, or by

---

[85]

     Based on O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000) § 67.04 (p. 537).

-149-

causing acts to be done, some affirmative act to accomplish this intent to evade that tax.

By way of example only, affirmative acts of evasion may consist of covering up sources of income, handling one's affairs to avoid making the records usual in transactions of the kind, and any conduct the likely effect of which would be to mislead or to conceal as to the taxpayer's income and tax due and owing.[86]

The Indictment charges numerous acts by the defendants and caused by the defendants; you must be unanimous as to at least one act of evasion.[87]

## Defendants' Objections to Government's Proposed Instruction No. 7.5:

Defendants object to the third paragraph of this instruction -- specifically, the phrase "personally, as an aider and abettor, as a co-conspirator, or by causing acts to be done" -- because it is confusing and unnecessary.  Defendants

---

[86]

   Spies v. United States, 317 U.S. 492, 499 (1943) (acts of evasion include: "concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal").  This paragraph is not found in the standard instructions, but comes directly from the Supreme Court's decision in Spies, one of the leading cases on tax evasion.  This language provides fair, neutral and practical guidance to the jury in understanding the concept of an "act of evasion."

[87]

   This instruction has been provided simply to assure a unanimous verdict.

respectfully request that the jury be instructed on aiding and abetting liability in a separate instruction, as set forth in Defendants' Proposed Instruction No. 51.

Defendants also object to the fourth paragraph of this instruction because it is an attempt to marshal the evidence rather than set forth a neutral jury instruction. This instruction is prejudicial to Defendants because it is overly suggestive and improperly informs the jury that certain acts are affirmative acts of evasion, a decision that is for the jury alone to make. The proposed instruction purports to list examples of affirmative acts of criminal tax evasion taken from Spies v. United States, 317 U.S. 492 (1943). However, the proposed instruction omits the relevant context in that the list was specifically intended to provide examples of acts from which a willful attempt to evade tax could be inferred. The enumerated acts do not *per se* establish tax evasion. The proposed instruction also is selective in the examples that are cited. If illustrative examples are to be given to the jury, the instruction should be true to the Court's opinion in Spies by providing the following language:

Illustrative examples of acts from which a willful attempt to evade tax could be inferred include: keeping a double set of books, making false entries of alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs

-151-

to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal.

For these reasons, Defendants submit that Defendants' Proposed Instruction No. 49 is a more accurate and neutral statement of the law.

Finally, Defendants object to the inclusion of a unanimity instruction here. A unanimity instruction on the tax evasion counts of the Indictment should be given separately, and should include unanimity with respect to all alternative theories of conviction proposed by the government.

**Government's Proposed Instruction No. 7.6**

**<u>Tax Evasion:  "Willful"—Defined[88]</u>**

To sustain its burden of proof for the crimes of Tax Evasion as charged in

Counts Six through Eight of the Indictment, the government must prove beyond a

reasonable doubt that the defendant acted "willfully."

To act willfully means to act voluntarily and deliberately and intending to

violate a known legal duty.

Negligent conduct is not sufficient to constitute willfulness.

**<u>Defendants' Objections to Government's Proposed Instruction No. 7.6:</u>**

Defendants object to this instruction because it provides an incomplete

definition of willfully that does not include the requirement that the willful act

have some element of bad faith or evil intent.  See <u>Cheek v. United States</u>, 498

U.S. 192, 200-01 (1991); <u>Spies v. United States</u>, 317 U.S. 492, 498 (1943); <u>United

States v. Murdock</u>, 290 U.S. 389, 398 (1933).

The government's proposed instruction also fails to explain fully the nature

---

[88]

    O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), § 67.20
at.621.

of conduct that falls outside the definition of "willfulness."  Additional language is necessary to instruct the jury that willful intent is a subjective standard.  <u>See</u> <u>United States v. Pomponio</u>, 429 U.S. 10 (1972).  The defendant is not held to an objective standard that requires a reasonable belief.  <u>See</u> <u>Cheek</u>, 498 U.S. at 202 ("if [the defendant] asserted that he truly believed that the Internal Revenue Code did not purport to treat wages as income, and the jury believed him, the Government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief").

Defendants respectfully request that the Court instead give Defendants' Proposed Instruction No. 50, which is a more accurate statement of the law defining the term willfully.

**Government's Proposed Instruction No. 7.7**

**Tax Evasion:  The Good Faith Defense[89]**

As with Mail Fraud and Wire Fraud, there is a good-faith defense to the charge of Tax Evasion.

**Defendants' Objections to Government's Proposed Instruction No. 7.7:**

Defendants object to this specific instruction on the good faith defense in the context of the offense of Tax Evasion because good faith is a defense to all of the charges in the Indictment, each of which requires specific intent.  For this reason, Defendants' respectfully request that the Court instead give Defendants' Proposed Instruction No. 52, which applies to all of the charges in the Indictment.

If the Court decides to give this instruction instead, Defendants respectfully request that the Court include the following language at the end of the instruction:

In making a finding as to a good faith defense, you must consider all the facts and circumstances surrounding the transaction that is the subject of the Indictment.  One factor evidencing good faith is whether contemporaneous entries

---

[89]

O'Malley, Grenig and Lee, Federal Jury Practice and Instructions (5th ed. 2000), § 67.25 at.640.

on the corporate books and records are consistent with the Defendants' view of the transaction.  Factors showing lack of good faith are the existence of duplicate books and records and bookkeeping entries that alter or conceal a transaction.

**Government's Proposed Instruction No. 7.8**

**<u>Tax Evasion:  When The Offense Charged Is Complete</u>[90]**

As to Counts Six and Seven, relating to calendar years 2001 and 2002, if you find beyond a reasonable doubt from the evidence in the case that a fraudulent return was filed and that this was done willfully as charged, then you may find that the offense charged was complete when the fraudulent return was filed.  As to Count Eight, relating to calendar year 2003, if you find beyond a reasonable doubt from the evidence in the case that no return was filed as of April 15, 2004, then you may find that the offense charged was complete when the return was due.

The Government has introduced evidence that defendant Blake Esherick filed amended returns for calendar years 2001 and 2002 in 2005, and filed his calendar year 2003 tax return in 2005.  The government has made certain factual arguments based on the acts associated with the filing of the returns and the contents of the returns, such as, for example, that the returns constitute admissions as to certain of the facts contained therein, and reflect an attempt to ward off prosecution; the defendants have also set forth certain factual arguments based on the acts associated with filing of the returns and the contents of the returns, such

---

[90]

      O'Malley, Grenig and Lee, <u>Federal Jury Practice and Instructions</u> (5th ed. 2000), § 67.23, p. 638.

as, for example that the returns reflect the defendants' good faith attempt to comply with the tax laws.  It is up to you to consider this evidence and to give it the weight you decide it is entitled to receive.

**Defendants' Objections to Government's Proposed Instruction No. 7.8:**

Defendants object to this instruction as unnecessary and prejudicial. The defense will not contend that Defendant Blake Esherick had filed a return as of April 15, 2004.  But mere failure to file by this date does not constitute the offense of tax evasion. The first paragraph of this instruction has the potential to mislead the jury, in that the language "if you find beyond a reasonable doubt from the evidence in the case that no return was filed as of April 15, 2004, then you may find that the offense charged was complete when the return was due," could lead the jury to believe that if no return was filed as of that date, Defendant Esherick is guilty of tax evasion.  Defendants therefore object to this language and request that the Court instruct the jury that in this context, that the offense was "complete" does not mean that it had been "committed."

Defendants also object to the second paragraph of this instruction, which inappropriately references evidence which is the subject of a motion *in limine* filed by Defendants.  As set forth in more detail in the memoranda of law submitted in

support of Defendants' motion, this evidence should be excluded pursuant to Federal Rules of Evidence 403 and 407 as evidence of subsequent remedial measures that would unfairly prejudice the Defendants and result in needless complication of the trial.  See Memorandum of Law in Support of Defendants' Motion *In Limine* to Exclude Evidence of Amended Tax Returns and W-2 Forms and Reply Memorandum of Law in Support of Defendants' Motion *In Limine* to Exclude Evidence of Amended Tax Returns and W-2 Forms.

**Government's Proposed Instruction No. 7.9**

**Tax Evasion:  Introduction – Specific Instructions as to the Tax Laws**

The Indictment in this case alleges, among other acts of evasion, that the defendant, Blake Esherick, received from Douglas Development Corporation and Douglas Jemal four types of income that were not reported to the Internal Revenue Service.  As a general matter, the Indictment charges that this unreported income consists of payments from Douglas Development Corporation to Blake C. Esherick or for his benefit recorded as loans, payments from Douglas Development Corporation to various automobile finance companies to pay Blake Esherick's automobile loans, payments from Douglas Development Corporation to Blake Esherick's ex-wife, and the provision of free housing and related living expenses for Blake Esherick.

It is for you to determine whether these events occurred and whether these payments constituted income to Blake Esherick.  Accordingly, I hereby instruct you as to certain principles of the tax laws.

**Defendants' Objections to Government's Proposed Instruction No. 7.9:**

Defendants object to this instruction because it is unnecessary and merely restates the government's theory on the Tax Evasion counts of the Indictment.  If

the Court believes that instructions concerning the presumptive tax treatment of certain transactions are appropriate, Defendants request that this instruction be altered to read as follows:

The Indictment in this case alleges, among other acts of criminal tax evasion, that Defendant Blake Esherick received from Douglas Development Corporation and Douglas Jemal four types of income that should have been reported to but were willfully concealed from the Internal Revenue Service. As a general matter, the Indictment charges that this unreported income consists of payments from Douglas Development Corporation to Blake C. Esherick or for his benefit recorded as loans, payments from Douglas Development Corporation to automobile finance companies to pay Blake Esherick's two automobile loans, payments from Douglas Development Corporation to Blake Esherick's ex-wife, and the provision of free housing and related living expenses for Blake Esherick.

It is for you to determine whether there was unreported income that resulted in a substantial tax liability to Blake Esherick, which income Blake Esherick and Douglas Jemal willfully concealed from the Internal Revenue Service in order to evade or defeat the tax that Blake Esherick owed.

In addition to determining whether the government has proved that such transactions were income to Defendant Blake Esherick, you must also determine

whether the government has proved that Defendant Esherick knew that these transactions should have been treated as income.  If a defendant has a good faith belief that a transaction does not constitute taxable income, he cannot be guilty of tax evasion, even if his belief was mistaken.

Accordingly, I hereby instruct you as to certain principles of the tax laws.

**Government's Proposed Instruction No. 7.10**

**Tax Evasion:  "Gross income"—Defined**

"Gross income" as the term is used for the purpose of the tax laws, and as the term is used on the IRS "Form 1040," means all income from whatever source derived, including, but not limited to, compensation for services.  It includes income realized in any form, unless specifically excluded by law.  It generally means the receipt of an economic benefit or the receipt of economic value.[91]

I have just referred to certain types of compensation that are excluded by law from being considered "gross income."   These include such items as an employer's payment of certain employee health insurance premiums, or an employer's contribution to an employee's retirement account.  These specific exceptions are not relevant to this case.

For your purposes, gross income simply means all income from whatever source derived.

---

[91]

"An economic gain is includable in gross income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it.." United States v. Moore, 412 F.2d 974, 978 (5th Cir. 1969) (citing Rutkin v. United States, 343 U.S. 130 (1952)).

**Defendants' Objections to Government's Proposed Instruction No. 7.10:**

Defendants object to this instruction as unnecessary.  More specifically, Defendants object to the definition of "gross income" in this instruction as incomplete and misleading.  The instruction also does not include any examples of gross income relevant to this case, such as a loan or gift, and instead includes irrelevant examples that could be confusing to the jury.

If the Court decides to instruct the jury on the definition of "gross income," Defendants respectfully request that the Court instead use the following definition:

"Gross income" as the term is used for the purpose of the tax laws, and as the term is used on the IRS "Form 1040," means, except as otherwise provided, all income from whatever source derived.  It includes income realized in any form, including, but not limited to, compensation for services.  It generally means the receipt of an economic benefit or the receipt of economic value.

Income from certain sources is specifically excluded from the definition of "gross income" and need not be reported on the IRS Form 1040.  Gifts and loans are among the statutorily authorized exclusions from "gross income."  Employer payments for business use of a vehicle or an employer provided vehicle are subject to different rules under the tax law and, depending on the factual circumstances and whether certain requirements are met, may be excluded from gross income.

-164-

Certain employer payments to an employee, such as reimbursement of employee business expenses under a so-called "accountable plan," are excluded by law from being considered "gross income." These latter "accountable plan" exceptions, including an "accountable plan" for reimbursement of employee expenses related to the business use of a vehicle, are not relevant to this case.

The tax required to be paid is not computed on the "gross income" reported on the IRS Form 1040. Rather the tax law subtracts various amounts from "gross income" in order to arrive at so-called "taxable income." The tax liability is then computed by multiplying the applicable graduated tax rate against the resulting "taxable income." Among the subtractions from "gross income" are individual exemptions and either the standard deduction or itemized deductions in lieu of the standard deduction.

In addition to determining whether the government has proved that certain items were income of Defendant Blake Esherick, you must also determine whether the government has proved that Defendant Esherick knew that these items should have been treated as income. If a defendant has a good faith belief that an item does not constitute taxable income, he cannot be guilty of tax evasion, even if his belief was mistaken.

## Government's Proposed Instruction No. 7.11

## Tax Evasion: "Compensation"—Defined

As noted, amounts received as compensation by an employee from his employer constitute gross income. Thus, wages, salaries, commissions, compensation for services on the bases of a percentage of profits, bonuses, and other forms of compensation are considered income to the recipient. Compensation for services is taxable income regardless of the form—cash or noncash—in which it received. Generally, any economic benefit received under an arrangement with an employer is includable in the recipient's gross income to the extent of the value of the benefit received.[92] Where an employee has received payment in cash or in kind from his employer in addition to his reported salary, there is a strong presumption that such payments are added compensation and taxable to the employee.[93] Nonetheless, it is for you to determine whether such

---

[92]

"Compensation for personal services is taxable income regardless of the form, cash or noncash, in which it received. Generally, any economic benefit received under an arrangement with an employer is includable in the recipient's gross income to the extent of the value of the benefit received." 1 Mertens Law of Fed. Income Tax'n § 5A.03 (2005).

[93]

"Where an employee has received payments in cash or kind from his employer in addition to his agreed salary there is a strong presumption that such payments are additional compensation and taxable to the employee ..." United States v. Lee, 219 F. Supp. 225, 228 (W.D.S.C. 1963) (payments by an employer for a personal life insurance policy for employee considered income to employee).

-166-

payments occurred and whether they constituted taxable income.

### Defendants' Objections to Government's Proposed Instruction No. 7.11:

Defendants object to this instruction as highly prejudicial and misleading. This instruction as a whole, and particularly the fourth and fifth sentences, neglects to inform the jury that simply because an economic benefit is transferred between two people who happen to share an employer-employee relationship does not mean that the economic benefit was transferred pursuant to that relationship or must be treated as compensation for tax purposes. Without such clarification, this instruction is incomplete and inaccurate.

If the Court believes that an instruction defining compensation is necessary, Defendants request that the Court omit the final sentence of this instruction and add the following language:

This presumption may be rebutted by contrary evidence indicating that the non-payroll payment was a loan or a gift. Generally, the corporation employing an individual employee is treated as the employer for this purpose.

Even with a finding that a particular non-payroll payment constitutes wage income under the tax law, tax evasion as a criminal offense is not committed unless you also find beyond a reasonable doubt the specific criminal intent of

"willfulness."  The government must prove beyond a reasonable doubt that the non-payroll payment was wage income to Blake Esherick and that the defendants willfully intended to evade tax by not reporting such payment as wage income to Blake Esherick.

If you find that Blake Esherick and Douglas Jemal believed the non-payroll payments were excludible as employer loan advances or non-employer gifts from Douglas Jemal, personally, or otherwise excluded from income to Blake Esherick, however unreasonable such belief may be, you must find the defendants not guilty. If a defendant has a good faith belief that a transaction does not constitute taxable income, he cannot be guilty of tax evasion, even if his belief was mistaken.

## Government Proposed Instruction No. 7.12

## Tax Evasion:  Compensation in the Form of Payments by an Employer for the Employee's Benefit

If the employer compensates an employee for services in a form other than cash, the fair market value of the property or benefits received by the employee must be included in the employee's income.[94]  Payments by an employer of an employee's personal expenses, or payments by an employer that discharge an employee's personal obligations, such as payments of an employee's debts, benefit the employee directly and are likewise includable as taxable income.[95]  This is so

---

[94]

"If services are paid for in a form other than cash, the fair market value of the property or services accepted in payment must be included in the employee's income for purposes of computing his year-end tax liability."  United States v. Winchell, 564 F. Supp 131, 134 (D. Neb. 1983).  "[Gross income] includes income realized in any form."  Adams v. United States, 585 F.2d 1060, 1063 (Ct. Cl.1978) (citing 1966 Treasury Regulations: "'If services are paid for other than in money, the fair market value of the property or services taken in payment must be included in income.'").

[95]

See, e.g., United States v. Black, 843 F.2d 1456, 1460 (D.C. Cir. 1988) (tax evasion prosecution where corporations paid defendant's personal expenses:

> [I]t was uncontroverted that during the period covered by the indictment Black had no personal bank accounts and that many of Black's personal expenses were paid by checks drawn on accounts of these two corporations. . . .
>
> Evidence that Black paid for personal expenses with checks drawn on corporate accounts and that Black never truly considered the checks to be loans would be sufficient for conviction, for "[a]ll the law requires is that there be proof sufficient to establish that there has been a receipt of taxable income by the accused and a willful evasion of the tax thereon." [citation omitted] [footnote omitted.].);

because an employee realizes income if his personal expenses are paid by his

---

United States v. Helmsley, 941 F.2d 71, 77 (2d Cir. 1991) ("[B]y having the companies pay the expenses rather than distribute taxable income to the Helmsleys, the Helmsleys avoided personal income taxes."), cert. denied, 501 U.S. 1091 (1992); United States v. Chesson, 933 F.2d 298, 304 (footnote continued)

(5th Cir. 1991) (tax evasion prosecution where corporation paid for $600,000 of defendants' personal expenses); United States v. Durant, 324 F.2d 859, 863-64 (7th Cir. 1963) (tax evasion based on the payment by corporation of taxpayer's personal expenses: "[T]he district court properly recognized the additional factors revealed by the records, tending to prove a willful intent: (a) defendant knew the corporation was paying his expenses, (b) the payments were not considered loans by the parties, (c) defendant knew the corporate payments were income to him; and therefore properly found that defendant willfully failed to include them in his returns."), cert. denied, 377 U.S. 906 (1964); United States v. Hart, 324 F.3d 575 (8th Cir. 2003) (tax evasion plea where defendant had directed that "commission checks" from his employer, an automobile dealer, be funneled through third parties and then used to pay expenses "including mortgage, personal loans and credit card bills"); United States v. Smith, 698 F. Supp. 589, 593 (E.D. Pa. 1988) (tax evasion comviction based, in part, on acts of defendant whereby he "directed his employers to divert significant portions of his income to third parties in repayment of loan obligations, payment of mortgage commitments, and other such purposes." (citations omitted)); United States v. Gambone, 167 F.Supp.2d 803, 811-12 (2001) (payment by corporation of employee's mortgage payments as basis for income tax evasion prosecution.); Dunkin' Donuts Inc. v. Martinez, 2003 WL 685785, at *6 (S.D. Fla.) (Corporation suit for breach of franchise agreement, where the defendants "evaded federal taxes by willfully, systematically, pervasively and repeated deducting personal expense as business expenses," including child support obligations. In addition to the false corporate returns, "the corporate payments of the Martinezes' personal expenses, including the child support payments, were not disclosed as income on the Martinezes' personal federal income tax returns."). Even an employer's payment of an employee's personal medical bills is considered income to the employee:

> Unquestionably, the payments discharged a personal obligation of the decedent and thus benefitted him directly. Section 22(a) of the Internal Revenue Code of 1939 is broad enough to include in taxable income any economic or financial benefit conferred on an employee as compensation whatever the form or mode by which it is effected. [citations omitted]."

Estate of Karsten v. Comm'r, 13 T.C.M. (CCH) 1042, 1043-44 (1954).

employer, for, in such cases, the employee has received a tangible benefit.[96]

## **Defendants' Objections to Government's Proposed Instruction No. 7.12:**

Defendants object to this instruction as unnecessary and misleading.  In fashioning specific instructions using the allegations in the instant Indictment, the government is attempting to include argument in what should be neutral instructions designed to assist the jury in reaching its verdict.  The government's proposed instructions go too far, well beyond the standard instructions that are the basis of Defendants' Proposed Instructions on the Tax Evasion Counts, and are inappropriate.

If the Court believes that this instruction is appropriate, Defendants request that the following language be included at the end of the instruction:

In determining the amount of cash or the value of benefits that is taken into income by the employee, the tax law takes into account that an employer and employee may have offsetting obligations that are repaid within a short period of time, generally within a year, such that interest need not be accrued.  In such cases,

---

[96]    "Generally, an employee realize[s] income if his personal or business expenses are paid by his employer because a tangible benefit has been received.  Thus, an employer's payment of an employee's personal expenses, such as commuting-to-work expenses, vacation trips, and taxes, are usually treated as additional compensation to the employee and are includable in his income." 2006(2) CCH  ¶5508.036 (p. 17,796).

only the net amount of cash or the net value of benefits received from the employer would constitute wage income to the employee.

In addition to determining whether the government has proved that such transactions were income to Defendant Blake Esherick, you must also determine whether the government has proved that Defendant Esherick knew that these transactions should have been treated as income.  If a defendant has a good faith belief that a transaction does not constitute taxable income, he cannot be guilty of tax evasion, even if his belief was mistaken.

## Government's Proposed Instruction No. 7.13

### Tax Evasion:  Payment of Employee's Automobile Expenses

Similarly, when a company, on behalf of its employee, makes payment on the  employee's personal automobile loans, the payments constitutes income to the employee.  An employee is still entitled to deduct as a business expense the cost of his business use of his automobile.  But, where the employee owns an automobile, with which he may do with as he pleases, and where the monthly payments are the employee's obligation, the corporation's payments of the employee's obligations is a payment on behalf of the employee and is includable as compensation.[97]

### Defendants' Objections to Government's Proposed Instruction No. 7.13:

Defendants object to this instruction because it essentially instructs the jury to find Defendants Douglas Jemal and Esherick guilty on this charge.  This instruction is not a neutral jury instruction and is inappropriate.

Moreover, the reference to "automobile" in the tile and language of the

---

[97]

      "Petitioner owned the automobile and could do with it as he pleased. The monthly payments on the automobile were his obligation. When the corporation paid petitioner's obligation on an automobile to which he held title, the amount was a payment on behalf of petitioner. This of course does not mean that petitioner is not entitled to deduct as a business expense the cost of his business use of his automobile."  Davis v. Comm'r, 34 TCM (CCH) 1588, 1591-92 (1975).

government's proposed instruction is misleading and prejudicial. The vehicles named in the Indictment are a Chevy Tahoe and a Jeep. Each is a sports utility vehicle ("SUV") commonly used within the construction industry. See IRS Market Segment Specialization Program, "Construction Industry," released March 2005. For Federal tax purposes, an SUV is treated as a "truck." See Rev. Proc. 2003-75 (defining the term "trucks and vans" as passenger automobiles built on a truck chassis, including minivans and sport utility vehicles that are built on a truck chassis). Accordingly, the reference to "automobile" should be struck here and wherever it appears in any other proposed instruction and replaced with the term "truck."

In addition, the government's proposed instruction misstates the tax law governing the treatment of automobiles used in connection with employment. The tax law provides four different methods for treating the use of automobiles in connection with employment. Yet the Government's proposed instruction addresses only one of these four methods. Since the specific intent of "willfulness" requires violation of a known duty, it is essential that the jury receive instructions on the full extent and complexity of tax law.

If the Court believes this instruction is appropriate and should be given, Defendants request that the language of the instruction be altered to read as

-174-

follows:

<u>Tax Evasion:  Payment of Employee's Truck Expenses</u>

Payment of a personal obligation belonging to another is treated as a deemed transfer to the person for whose benefit the payment is made.  An employer payment on behalf of an employee results in a similar deemed transfer and is gross income to the employee, but the tax consequences will depend on the characterization of the deemed transfer as wage compensation or business expense reimbursement.

If the deemed transfer from the employer is treated as a business expense reimbursement under a non-accountable plan, the payment is reported on the Form W-2 and is gross income to the employee.  The employee is then entitled to deduct business expenses as miscellaneous itemized deductions, provided various requirements are met.  Other methods of treating vehicles and related expenses in connection with employment, such as employer reimbursement under an accountable plan, a vehicle provided by the employer as a "working condition fringe" or a "qualified transportation fringe" do not apply here.

 If you find that Blake Esherick and Douglas Jemal believed the company payments of on behalf of Blake Esherick were not income to Blake Esherick, however unreasonable such belief may be, you must acquit the Defendants.  If a

defendant has a good faith belief that a transaction does not constitute taxable income, he cannot be guilty of tax evasion, even if his belief was mistaken.

**Government's Proposed Instruction No. 7.14**

**Tax Evasion:  Provision of Housing as a Form of Income**

**[Proposal No. 1][98]**

The value of living quarters that an employee receives in addition to his

salary constitutes gross income to the employee.  There is a narrow exception to

this rule involving the provision of lodging by an employer, for the convenience of

the employer, on the employer's business premises and as a condition of

employment.[99]   Under those specific circumstances, the provision of living

---

[98]

      The Government expects that there will be no evidence to warrant an instruction that the provision of living quarters is not a form of income, and will oppose any effort to provide further instructions on this matter.   Nonetheless, the Government has provided an alternate instruction if the Court deems it warranted.

[99]

     The Treasury regulations make this explicit:

**Meals and living quarters**. – The value of living quarters or meals which an employee receives in addition to his salary constitutes gross income unless they are furnished for the convenience of the employer and meet the conditions specified in [26 U.S.C. § 119] and the regulations thereunder.

Reg. § 1.62-2(d)(3) (set forth at 2600(2) CCH  ¶5506, p. 17,710).

Title 26, United States Code, Section 119 provides, in pertinent part:

**Meals and lodging furnished to employee, his spouse, and his dependents, pursuant to employment.**--There shall be excluded from gross income of an employee the value of any meals or lodging furnished to him, his spouse, or any of his dependents by or on behalf of his employer for the convenience of the employer, but only if–

     (1)     in the case of meals, the meals are furnished on the business premises

-177-

quarters is not considered income to the employee.  I instruct you that this

exception is not relevant to the facts of this case and should not be considered by

you.

**[Alternate Proposal No. 2]**

The value of living quarters that an employee receives in addition to his

salary constitutes gross income to the employee, with the following exception:

Lodging provided by an employer for an employee is <u>not</u> considered

income <u>only</u> if these three conditions are met:

(1) the lodging is furnished for the convenience of the employer; and

(2) it is located on the business premises of the employer; and

(3) the employee is required to accept such lodging as a condition of

his employment.

The term "convenience of the employer" means that there is a direct

connection between the housing furnished the employee and the business interests

of the employer served thereby,[100] and that the lodging was furnished by an

_____

of the employer, or

(2)    in the case of lodging, the employee is required to accept such lodging
on the business premises of his employer as a condition of his employment.

[100]    <u>Bob Jones Univ. v. United States</u>, 670 F.2d 167 (Ct. Cl. 1982).

employer to further significantly the company's interests and not primarily for the personal use if the employee.[101]   That an employee may have conducted some work-related business at a residence provided by the employer, such as, for example, sometimes using his home office and telephone for work purposes, or hosting certain social events, is not sufficient to elevate the residence to the status of being 'on the business premises' functionally for the purposes of this exception.[102]   Whether a property is located on the "business premises of the employer" is largely a factual one requiring a commonsense approach.   Just because an employer owns an employee's home does not mean that the home is on the employer's premises.[103]

---

[101]

    Benninghoff v. Comm'r,  614 F.2d 398 (5th Cir. 1980).

[102]

    Provision of housing for college president:  "[T]he taxpayer conducted only limited college business in his home, such as sometimes using his home office and telephone for work purposes, meeting with students or faculty, and hosting certain social events. 'The occasional ... performance of work related duties at a residence provided by the employer does not constitute 'a significant portion of employee's duties,' and is not sufficient "to elevate the off-campus housing to the status of being 'on the business premises' functionally for the purposes of section 119.' "  Winchell v. United States, 563 F. Supp. 131, 136 (D.Neb. 1983) (citing Goldsboro Christian Schools v. United States, 436 F. Supp.1314, 1321-22 (E.D.N.C 1977); Bob Jones Univ., 670 F.2d at 177).

[103]

    Benninghoff v. Comm'r, 614 F.2d 398 (5th Cir. 1980).

**Defendants' Objections to Government's Proposed Instruction No. 7.14:**

Defendants object to this instruction because it essentially instructs the jury to find Defendants Douglas Jemal and Esherick guilty on this charge. This instruction is not a neutral jury instruction and is inappropriate.

If the Court believes that this instruction is appropriate, Defendants request the following addition at the end of the instruction:

If you find that Blake Esherick and Douglas Jemal believed the provision of housing was a non-employer gift from Douglas Jemal, personally, and Norman Jemal or was subject to rent that was deemed satisfied by capital improvement payments or was otherwise excluded from Blake Esherick's income, however unreasonable such belief may be, you must find the defendants not guilty. If a defendant has a good faith belief that a transaction does not constitute taxable income, he cannot be guilty of tax evasion, even if his belief was mistaken.

## Government's Proposed Instruction No. 7.15

## <u>Tax Evasion:  "Loans"—Explained</u>

A bona fide loan or advance is not taxable income because whatever

temporary economic benefit is derived from the use of the funds is offset by a

corresponding obligation to repay the funds  For this rule to apply, however, the

loan must be an existing, unconditional, and legally enforceable obligation for the

payment of a principal sum.[104]

Whether certain transactions constitute loans for income tax purposes is a

factual question involving several considerations, but a distinguishing

---

[104]

  "[T]he proceeds from a bona fide loan do not constitute income because whatever temporary economic benefit the borrower derives from the use of the funds is offset by the corresponding obligation to repay them." <u>Moore v. United States</u>, 412 F.2d 974, 978 (5th Cir. 1969). "For this rule to apply, however, the loan must be an existing, unconditional, and legally enforceable obligation for the payment of a principal sum." <u>Milenbach v. Comm'r</u>, 318 F.3d 924, 930 (9th Cir. 2003) (internal quotation marks omitted) (citation omitted).  It is up to the fact-finder to "look to the underlying economic substance of the transaction." <u>In re King</u>, 272 B.R. 281, 297 (Bankr. N.D. Okla. 2002).

  For taxation purposes, a loan has been defined as "an agreement either express or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest, as the parties may agree." <u>Welch v. Comm'r</u>, 204 F.3d 1228, 1230 (9th Cir. 2000). In determining whether to classify a transaction as a loan, courts examine the transaction as a whole. <u>Id.</u> <u>Collins v. Comm'r</u>, 3 F.3d 625, 631 (2d Cir. 1993) ("Loans are identified by the mutual understanding between the borrower and lender of the obligation to repay and a bona fide intent on the borrower's part to repay the acquired funds.") (emphasis omitted); <u>see also</u> <u>Geftman v. Com'r</u>, 154 F.3d 61, 69 (3d Cir. 1998) ("The determinative fact is the intention as it existed at the time of the transaction") (internal quotation marks omitted).

characteristic of a loan is the intention of both parties that the money advanced be repaid.[105]

In making this assessment, you may consider a number of factors as relevant in assessing whether a transaction is a true loan, such as: (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan; and (7) whether the parties conducted themselves as if the transaction were a loan. Although the factors are non-exclusive and no single factor is dispositive, they provide a way to distinguish a bona fide loan from a sham loan or a loan in name only.[106]

---

[105]

"Whether a certain transaction constitutes a loan for income tax purposes is a factual question involving several considerations, but a distinguishing characteristic of a loan is the intention of both parties that the money advanced be repaid." Moore, 412 F.2d at 978 (5th Cir. 1969).

[106]

"Courts have therefore considered a number of factors to be relevant when determining whether or not funds received constitute a loan, such as: (1) whether the promise to repay is evidenced by a note or other instrument, (2) whether interest was charged, (3) whether a fixed schedule for repayments was established, (4) whether collateral was given to secure payment, (5) whether repayments were made, (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan, and (7) whether the parties conducted themselves as if the transaction were a loan." Welch v. Comm'r, 204 F.3d at 1230. "Although the factors are non-exclusive and no single factor is dispositive, these indicia of a bona fide loan form a general basis upon which courts may analyze a transaction." Id. See also, Crowley v. Comm'r, 962 F.2d 1077, 1079 (1st Cir. 1992) (similar criteria).

Merely calling a transaction a loan is not sufficient to make it such. When money is acquired and there is no good faith intent on the part of the borrower to repay the funds advanced, such funds are income under the income tax laws and taxable as such.[107]

Finally, to establish a valid debt, the obligation to repay must be unconditional. Realization of income cannot be postponed by a contingent obligation to reimburse, such as a debt that become payable only when an employee leaves a company before a set date.[108] You should consider all the evidence to determine whether the specific payments at issue were non-taxable loans, or taxable income.

**Defendants' Objections to Government's Proposed Instruction No. 7.15:**

---

[107]

United States v. Wick, 34 Fed. Appx. 273, 276 n.4 (9th Cir. 2002). These two sentences formed part of an instruction provided by the trial court in a federal tax evasion prosecution. The trial court's use of this instruction was specifically noted as appropriate on appeal.

[108]

United States v. George, 420 F.3d 991, 998-99 (9th Cir. 1991) (in tax evasion prosecution, payments to defendant deemed income when received, despite contingent obligation to repay); Alexander Shokai, Inc. v. Comm'r, 34 F.3d 1480, 1485-86 (9th Cir. 1994) (same); McCormack v. Comm'r, 52 T.C.M. (CCH) 1321 (1987) (advance payment to employee treated as income in the year received, even though employee would have to "pay back" the amount if he ceased employment).

Defendants object to this instruction as incomplete and inaccurate.  If the Court decides that such an instruction is appropriate, however, Defendants request that this instruction be altered to read as follows:

A bona fide loan or advance is not taxable income because whatever temporary economic benefit is derived from the use of the funds is offset by a corresponding obligation to repay the funds.  For this rule to apply, however, the loan must be an existing, unconditional, and legally enforceable obligation for the payment of a principal sum.

Whether certain transactions constitute loans for income tax purposes is a factual question involving several considerations, but a distinguishing characteristic of a loan is the intention of both parties that the money advanced be repaid.  A bona fide loan does not require a written agreement.  An oral agreement between the parties, if intended as a loan, can constitute a bona fide loan.

In determining whether the parties intended a cash advance to be treated as a bona fide loan, you may consider a number of factors as relevant, such as: (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of

repaying the loan; and (7) whether the parties conducted themselves as if the transaction were a loan.  Although the factors are non-exclusive and no single factor is dispositive, they provide a way to distinguish a bona fide loan from a sham loan or a loan in name only.

Merely calling a transaction a loan is not sufficient to make it such. When money is acquired and there is no good faith intent on the part of the borrower to repay the funds advanced, such funds are income under the income tax laws and taxable as such.

Finally, to establish a valid debt, the obligation to repay must be unconditional.  Realization of income cannot be postponed by a contingent obligation to reimburse, such as a debt that become payables only when an employee leaves a company before a set date.  You should consider all the evidence to determine whether the specific payments at issue were non-taxable loans, or taxable income.

Even if you find that the alleged payments were not bona fide loans under the tax law, tax evasion as a criminal offense is not committed unless you also find beyond a reasonable doubt the specific criminal intent of "willfulness."  The government must prove beyond a reasonable doubt that the non-payroll payment was wage income to Blake Esherick and that the Defendants willfully intended to

-185-

evade tax by not reporting such payment as wage income to Blake Esherick.

Accordingly, if you find that Blake Esherick and Douglas Jemal believed that the

non-payroll payments alleged in the Indictment, including the child support

payments made on behalf of Blake Esherick, were loan advances from Douglas

Development Corporation and not wage income to Blake Esherick, then you must

find the Defendants not guilty.  If a defendant has a good faith belief that a

transaction does not constitute taxable income, he cannot be guilty of tax evasion,

even if his belief was mistaken.

## Government's Proposed Instruction No. 7.16

## <u>Tax Evasion:  "Gifts"—Explained</u>

As a general matter, the tax laws exclude from gross income "gifts" that are received by the taxpayer.  However, those laws do not exclude from a taxpayer's gross income any amounts transferred by an employer to or for the benefit of an employee, even when the employer labels the transfer a "gift."[109]

## <u>Defendants' Objections to Government's Proposed Instruction No. 7.16:</u>

Defendants object to this instruction as an incorrect statement of the law.  In 1986, subsequent to the Supreme Court's decision in <u>Commissioner v. Duberstein</u>, 363 U.S. 278 (1960), IRC §102(c) was added to provide that the gift exclusion from gross income does not apply to any amount transferred by or for an employer to, or for the benefit of an employee.  The presumption in IRC §102(c) can be rebutted, however.  Gift treatment was upheld in at least one post-1986 case.  <u>See</u> <u>Lane v. United States</u>, 286 F.3d 723 (4th Cir. 2002).  By contrast, the <u>Williams</u> case cited by the government involves unpersuasive facts.  The taxpayer there

---

[109]    26 U.S. C. § 102(c) (gift exception from income does <u>not</u> apply to "any amount transferred by or for an employer to, or for the benefit of, an employee."); see also <u>Williams</u> v. <u>Comm'r</u>, 120 Fed. Appx. 289 (10th Cir. 2005) (unreported $25,000 and $35,000 "bonuses" not "gift" from taxpayer's employer, even though they were close personal friends).

received three checks, two of which, contained the notation "Bonus."

For these reasons, if the Court decides to give this instruction, Defendants request that the language be altered to read as follows:

As a general matter, the tax laws exclude from gross income "gifts" that are received by the taxpayer.  However, the tax law does not exclude from a taxpayer's gross income any amounts transferred by or for an employer to, or for the benefit of, an employee, even when the employer labels the transfer a "gift." This statutory presumption may be rebutted by contrary evidence indicating that the transfer was in fact intended as a gift and outside the employment relationship.

Generally, the corporation employing an individual employee is treated as the employer for this purpose.  However, where the employer corporation is wholly owned by a single individual, the tax law treats the corporation as the alter ego of and "controlled" by such sole shareholder.

If you find that Blake Esherick and Douglas Jemal believed rent-free use of a house was excludible as non-employer gift from Norman Jemal and/or Douglas Jemal, personally, however unreasonable such belief may be, you must find the Defendants not guilty.  If a defendant has a good faith belief that a transaction does not constitute taxable income, he cannot be guilty of tax evasion, even if his belief was mistaken.

-188-

**Government's Proposed Instruction No. 8.0**

**<u>Aiding and Abetting</u>[110]**

You will recall that I previously instructed you on the four bases of criminal

liability.  As I explained then, the instructions you have received thus far, other

than the instructions concerning conspiracy, all deal with finding a defendant

guilty as a principal.  I shall now instruct you on what is meant by "aiding and

abetting."

You may find the defendant guilty of a crime charged in the Indictment

without finding that he personally committed each of the acts that make up the

crime or that he was present while the crime was being committed.  Any person

who in some way intentionally participates in the commission of a crime can be

found guilty either as an aider and abettor or as a principal offender.  It makes no

difference which label you attach.  The person is as guilty of the crime as he would

be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must

find that the defendant knowingly associated himself with the commission of the

---

[110]

    <u>Criminal Jury Instructions for the District of Columbia</u> (4th ed. rev. 2002) ("The Red Book")
§ 4.02.

crime, that he participated in the crime as something he wished to bring about, and that he intended by her/his actions to make it succeed.

Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by the defendant at the place and time the crime is committed is not by itself sufficient to establish his guilt. It is not necessary that you find that the defendant was actually present while the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor need the government prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other.

It is not necessary that the defendant have had the same intent that the principal offender had when the crime was committed, or that he have intended to commit the particular crime committed by the principal offender. An aider and abettor is legally responsible for the acts of other persons that are the natural and probable consequences of the crime in which he intentionally participates. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted in

-190-

committing the crime.

### **Defendants' Objections to Government's Proposed Instruction No. 8.0:**

Defendants object to the first paragraph of this instruction for the reasons already discussed with respect to the Government's Proposed Instructions Nos. 2.14, 4.0, 6.6 and 7.0.

Defendants also object to the final two paragraphs of this instruction as unnecessary and request that the Court instead give Defendants' Proposed Instruction No. 51, which is more concise.  These two paragraphs are bracketed as optional in the Red Book standard instructions, and are not needed in this case.

**Government's Proposed Instruction No. 9.0**

**Causing an Act to Be Done**[111]

I shall next instruct you on what is meant by "causing an act to be done."

You may find the defendant guilty of a crime charged in the Indictment without finding that he personally committed each of the acts constituting the offense or was personally present at the commission of the offense. A defendant is responsible for an act that he willfully causes to be done if the act would be criminal if performed by him directly or by another. To "cause" an act to be done means to bring it about. You may convict the defendant of the offense charged if you find that the government has proved beyond a reasonable doubt each essential element of the offense and that the defendant willfully caused such an act to be done with the intent to commit the crime.

---

[111]    Criminal Jury Instructions for the District of Columbia (4th ed. rev. 2002) ("The Red Book") § 4.05.

## **Defendants' Objections to Government's Proposed Instruction No. 9.0:**

Defendants object to this instruction as unnecessary.  The jury has already been instructed on aiding and abetting liability.

**Government's Proposed Instruction No. 10.0**

**Co-Conspirator Liability**

Finally, you should also consider a given defendant's guilt under the principle that I shall refer to a "coconspirator liability."

A defendant may be held criminally responsible for the commission of a crime if you find, beyond a reasonable doubt:

1.      That a conspiracy existed in that there was an agreement  between individuals to align themselves with others in the criminal venture;

2.      That having so aligned themselves together, one or more of them acted to commit the specified crime; and

3.      That the crime was committed in furtherance of the criminal venture in which the defendant had aligned himself with others.[112]

The reason for this rule is simply that a co-conspirator who commits a crime pursuant to a conspiracy is deemed to be the agent of the other conspirators.

---

[112]
        These instructions were approved in United States v. Lopez, 271 F.3d 472, 480  (3d Cir. 2001), cert. denied,  535 U.S. 908 (2002) (amended to refer to the "crime," or "charged crime," instead of "the substantive offense").

Therefore, all of the co-conspirators must bear criminal responsibility for the commission of the resulting crimes.[113]

Application of these Principles to Counts One and Two

The Indictment charges Conspiracy to Commit Bribery in Count One, and the substantive count of Bribery in Count Two.   I have already instructed you on the definition of conspiracy when I instructed you on Count One.   Accordingly, if you find, beyond a reasonable doubt, that the conspiracy described in Count One existed, that a given defendant was a member of the conspiracy, and that the offense of bribery set forth in Count Two was committed in furtherance of the conspiracy, you may find that defendant criminally responsible for the commission of the offense, even if that defendant did not personally commit the acts which constituted the offense.   If, however, you are not satisfied as to the existence of any of these elements, then you may not find the defendant guilty of the crime of bribery under the principles of co-conspirator liability.

Application of these Principles to Counts Three and Five and Six through

---

[113]

      1 L. Sand, et al., Modern Federal Jury Instructions (2004), Inst. 19-03,  p. 19-13..

Eight

It is not required that a conspiracy be charged in the indictment for

co-conspirator liability to apply, as long as the evidence at trial establishes beyond

a reasonable doubt that a conspiracy existed – as I have instructed you on that term

– and that the charged offense was committed in furtherance of the conspiracy.[114]

Thus, for example only, if you find that a conspiracy existed, and that a

particular defendant was a member of that conspiracy, and that the crime of, say

---

[114]

"Indictments do not recite the government's theory of proof, which is what the Pinkerton theory is." United States v. Edmond, 924 F.2d 261, 269 (D.C. Cir. 1991) (approving Pinkerton theory of liability where conspiracy was not charged in Indictment and defense had notice), cert. denied, 502 U.S. 838 (1991); United States v. Jackson, 627 F.2d 1198, 1216 (D.C. Cir. 1980); Criminal Jury Instructions for the District of Columbia (4th ed. rev. 2002) ("The Red Book") §4.02A, Inst. B. (setting forth instruction to be given "[w]hen conspiracy is not charged as a separate offense and the defendant is charged with a substantive offense committed by an alleged co-conspirator").  See also, United States v. Lopez, 271 F.3d at 480 ("It is not required that a conspiracy be charged in the indictment for Pinkerton liability to apply, as long as the evidence at trial establishes beyond a reasonable doubt that a conspiracy existed and that the substantive offense was committed in furtherance of the conspiracy ...."); United States v. Chairez, 33 F.3d 823, 827 (7th Cir. 1994) (same); United States v. Sanchez, 917 F.2d 607, 612 (1st Cir. 1990) ("We have held that the district court may give a Pinkerton charge even though the indictment does not plead vicarious liability."); United States v. Thirion, 813 F.2d 146, 152 (8th Cir. 1987) ("[T]he individual substantive counts need not make reference to co-conspirator liability in order for the jury to be so instructed.").  In any event, the Government provided notice in the Indictment that it shall establish liability under Pinkerton principles.  Counts Two, Three, and Six through Eight specifically charge the defendants as coconspirators, and Count Five specifically describes the uncharged participants as coconspirators.

Wire Fraud, was committed in furtherance of the conspiracy, then you may find

the defendant guilty of Wire Fraud, even if you find that the defendant did not

personally participate in the acts constituting the crime or did not have actual

knowledge of it.  This is by example only, and is solely an attempt to help you

understand the instructions.  To complete this example, if, however, you are not

satisfied as to the existence of any of these elements, then you may not find the

defendant guilty of the crime under the principles of co-conspirator liability.


**Defendants' Objections to Government's Proposed Instruction No. 10.0:**

Defendants object to this instruction because the government is not

necessarily entitled to a Pinkerton charge.  See United States v. Sperling, 506 F.2d

1323, 1341 (2d Cir. 1974) (Pinkerton charge "should not be given as a matter of

course"); United States v. Corr, 543 F.2d 1042, 1050 (2d Cir. 1976) ("where the

jury is required to resort to the inverse of Pinkerton and infer the existence of a

conspiracy from the series of disparate criminal offenses," the instruction should

not be given).  Defendants believe that the government's case is largely

circumstantial.  Where there is no direct proof that a defendant personally

committed the substantive offense and there is insufficient proof that he was a member of the conspiracy, the instruction should not be given.  See United States v. Glenn, 828 F.2d 855, 859-60 (1st Cir. 1987); United States v. Cantone, 426 F.2d 902, 905 (2d Cir. 1970) (reversing defendant's convictions on both substantive and conspiracy counts because Pinkerton rationale inapplicable). Defendants therefore request that if the Court is presently inclined to give a Pinkerton charge, the Court re-evaluate the propriety of such an instruction upon the conclusion of the government's case.

Defendants also object to the final paragraph of the instruction, which is unnecessary and has the potential to confuse the jury.

If the Court decides that a Pinkerton charge is warranted in this case, Defendants respectfully request that the Court allow Defendants to submit a proposed instruction at that time.

## Government's Proposed Instruction No. 11.0

## **Preparation of Witnesses (if applicable)**

You have heard testimony about witnesses meeting with attorneys or investigators before they testified.  It is perfectly proper for a lawyer or investigator to interview a witness in preparation for trial.  In fact, a prosecutor or defense attorney may have a duty to interview witnesses before trial.[115]


## **Defendants' Objections to Government's Proposed Instruction No. 11.0:**

Defendants object to the final sentence of this instruction, which is not part of the Seventh Circuit Pattern Criminal Jury Instruction cited by the government and is not based on any authority.  This sentence is based on a comment found under the heading "Obstructing Communications Between Witnesses and the Defense" to the ABA standard entitled "Investigative Function of Prosecutor" (cited in the committee comment section to the Seventh Circuit pattern instruction), which states: "It is not only proper but may be the duty of the

---

[115]      See Seventh Circuit Pattern Criminal Jury Instruction 1.07 (1999).

-199-

prosecutor and defense counsel to interview any person who may be called as a witness in the case (except that the prosecutor is not entitled to interview a defendant represented by counsel who declines such an interview)." ABA Standards, The Prosecution Function 3.1, Comment a (3d ed. 1993). As the heading and title indicate, this comment relates to the investigative function of a prosecutor and his or her responsibility not to obstruct communications between prospective witnesses and defense counsel. Therefore, it is inappropriate to include it as an instruction here, where the idea of a "duty" on the part of the prosecutor or defense counsel has the potential to confuse the jury.

## Government's Proposed Instruction No. 12.0

## Summary Witness Testimony (if applicable)

The testimony of _____, which summarizes certain records, has been received for the sole purpose of explaining facts disclosed by records, other documents, and testimony admitted as evidence in the case.  His/her summary testimony is not, in and of itself, proof of any facts.  His/her summary testimony is provided only as a matter of convenience.  You should give this summary testimony the weight you believe it deserves.[116]

## Defendants' Objections to Government's Proposed Instruction No. 12.0:

Defendants object to the second and third sentences as confusing and unnecessary.

---

[116] United States v. Lemire, 720 F.2d 1327, 1348 and at n.32 (D.C. Cir. 1983).

**Government's Proposed Instruction No. 13.0**

**<u>Charts and Summaries</u>**

[To be supplied later.]

**Government's Proposed Instruction No. 16.0**

**Submission of Indictment**

The Indictment has been submitted to you for your convenience in evaluating the charges in this case. The Indictment is merely the formal way of accusing a person of a crime to bring him or her to trial. You must not consider the Indictment as evidence of any kind. You may not consider it as any evidence of the defendant's guilt or draw any inference of guilt from it.

**Defendants' Objections to Government's Proposed Instruction No. 16.0:**

Defendants object to providing the Indictment to the jury. "There is no requirement that the indictment in any specific form be submitted to the jury." United States v. Cisneros, 26 F. Supp. 24, 55 (D.D.C. 1998) ("Indeed, unless a defendant so requests, the Court knows of no requirement that an indictment in its entirety must be placed into evidence or otherwise submitted to the jury."). In the event that the Court does submit the Indictment to the jury, Defendants request that a cautionary instruction, such as the Court's standard instruction, Red Book Instruction No. 2.06, be given. See Dallago v. United States, 427 F.2d 546 (1969)

(where trial court intends to provide jury with indictment, defense counsel should be notified and allowed to request cautionary instruction).

**PROPOSED JURY INSTRUCTIONS – PARTIES IN DISPUTE**

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS (DISPUTED)**

**Defendants' Proposed Instruction No. 14**

**Count One: Conspiracy -- 18 U.S.C. § 371**

In Count One of the Indictment, Defendants Douglas Jemal, Norman Jemal and Blake Esherick are charged with conspiring with one another to commit the offense of Bribery of a Public Official, in violation of Title 18, United States Code, Sections 201(b)(1)(A) & (C).

To prove a conspiracy as charged in Count One, the government must prove each of the following elements beyond a reasonable doubt:

> First:  That a conspiracy, as charged in the Indictment, actually existed -- that is, that a defendant and at least one other person entered into an agreement to commit the offense of Bribery of a Public Official;
>
> Second:  That the particular defendant knew the unlawful purpose of the agreement and joined in it willfully, with the intent to further the unlawful purpose; and
>
> Third:  That one of the members of the conspiracy committed an overt act in furtherance of the conspiracy, as alleged by the government, in

order to accomplish some object of the conspiracy.

If you find from your consideration of all the evidence that the government has proven each of these elements beyond a reasonable doubt with respect to a particular defendant, then you should find that defendant guilty of Count One. If, on the other hand, you find from your consideration of the evidence that the government has failed to prove any one or more of these elements beyond a reasonable doubt, then you should find that defendant not guilty.

Authority:   Adapted from 2 Kevin F. O'Malley et al., <u>Federal Jury Practice & Instructions - Criminal</u> § 31.02 (5th ed. 2000); <u>Fifth Circuit District Judges Association Pattern Jury Instructions (Criminal Cases)</u>, Instr. 2.20 (2001); 18 U.S.C. § 371 (2000); <u>United States v. Alston-Graves</u>, 435 F.3d 331, 336-37 (D.C. Cir. 2006) (listing elements of conspiracy); <u>United States v. Mellen</u>, 393 F.3d 175, 180-81 (D.C. Cir. 2004) (listing elements of conspiracy); <u>United States v. Treadwell</u>, 760 F.2d 327, 336 (D.C. Cir. 1985) ("[t]he existence of an 'agreement' is the essential element of the statutory crime of conspiracy"); <u>United States v. Whitley</u>, 670 F.2d 617, 620-21 (5th Cir. 1982) (emphasizing that the jury must first establish the existence of a conspiracy before considering whether a defendant was a member).

## <u>Government's Objections to Defendants' Proposed Instruction No. 14</u>

The government respectfully opposes defendants' proposed instruction as follows:

1.   The standard "Redbook" conspiracy instruction is far more succinct,

and, in the government's view, more readily understandable.  Although this is

certainly a "subjective" view,  we note, as but one example, the Redbook

instruction uses the phrase that a "conspiracy is a kind of partnership in crime."

This  commonsense description of the offense, well known to the parties and the

Court, conveys a clear and easily understood meaning to the jury.   Nothing in the

defendants' far-lengthier set of instructions is required by anything uniquely

associated with the charges in this case.  As noted in O'Malley, Greinig & Lee,

Federal Jury Practice and Instructions (5th ed. 2000):

> Care should be taken in this area [the conspiracy instructions]
>
> to give the jury only the information that it needs in order to
>
> discharge its responsibilities.  There has always been a tendency to
>
> "over instruct" in conspiracy cases and, perhaps, "overload" the jury
>
> with accurate, but non-essential information.

Vol. 2, ( 31.02(C), p. 241 (quoted in the Redbook, Inst. 4.93, Comment at p. 546.)

Thus, we submit that the defendants' proposed jury instructions 14, 15, 16 and 17,

setting forth elements with explanatory language, are neither appropriate nor

necessary, as the substance of each is subsumed within the standard Redbook

conspiracy instruction (and, as noted below, the instructions are legally flawed as

well).  We note as well that the standard Redbook conspiracy instruction has been

cited by the Court of Appeals for this Circuit with approval.  See In re Sealed

Case, 283 F.3d 349, 354  (D.C. Cir. 2002) (quoting language from Redbook

Instruction 4.92 (Conspiracy) with approval).

      2.     The defendants have attempted to insert a "wilfulness" element where

none is required.  Rather, the elements of the conspiracy are as follows: "(1) an

agreement to commit a specific offense (here, drug possession/distribution); (2)

knowing participation in the conspiracy with the intent to commit the offense; and

(3) commission of at least one overt act in furtherance of the conspiracy."  In re

Sealed Case, 283 F.3d at 354 (citing United States v. Wilson, 160 F.3d 732, 737

(D.C. Cir.1998).  These three elements, including the intent element, are

appropriately incorporated in the Redbook instruction.  See also United States v.

Treadwell, 760 F.2d 327, 333 (1985) (the government must prove that "the

defendant knowingly participated * * *."); United States v. Haldeman, 559 F.2d

31, 112 (1976) (jury must find the "[d]efendant knowingly participated in the

conspiracy with the intent to commit the offense * * * which was the object of the

conspiracy").   In this regard, their proposed instruction is simply wrong on the

law.

      The government does not object to standard instructions on intent, set forth

at Redbook Instruction 3.02, if the concept of "intent" needs further explanation.

-208-

3.     The government's proposed instructions also includes a lesser

included count of conspiracy to pay gratuities.

**Defendants' Proposed Instruction No. 15**

**Count One: Conspiracy -- First Element**

**Existence of an Agreement**

The first element of conspiracy that the government must prove beyond a reasonable doubt is the existence of an agreement -- that is, that at least two people knowingly entered into an agreement to violate the law by some joint or common plan or course of action. An agreement to violate the law need not be formal or written, or address every detail of the scheme. However, the government must prove beyond a reasonable doubt that there was a mutual understanding between two or more people to accomplish an unlawful act. Proof of this conscious understanding and deliberate agreement by the alleged members is a central requirement of a charge of conspiracy.

You must unanimously agree that the conspirators agreed to try to accomplish the objective alleged by the government -- in this case, Bribery of a Public Official. I will instruct you on the elements of the offense of Bribery of a Public Official in a few minutes.

Unless the government proves beyond a reasonable doubt that an agreement, as just defined, actually existed, then you must acquit each defendant.

-210-

Authority:    Adapted from 2 O'Malley et al., § 31.04; <u>United States v. Farrell</u>, No. CRIM.A. 03-311-1 (RWR), 2005 WL 1606916, at *4 (D.D.C. July 8, 2005) (proving a conspiracy requires showing an "agreement or mutual understanding between at least two people" to violate law).

## <u>Government's Objections to Defendants' Proposed Instruction No. 15</u>

The Government respectfully objects to the Defendants' Proposed Conspiracy Instruction No. 15 for the following reasons:

This substance of this is already contained in the standard Redbook conspiracy instruction proposed by the Government.

**Defendants' Proposed Instruction No. 16**

**Count One: Conspiracy -- Second Element**

**Joinder in the Conspiracy**

The second element of conspiracy that the government must prove beyond a reasonable doubt is individual membership or joinder in a conspiracy. If you are satisfied that the conspiracy alleged by the government existed, you must next ask yourselves who the members of the conspiracy were. In deciding whether a particular defendant was, in fact, a member of the conspiracy, you must consider whether he knowingly, willfully and intentionally joined the conspiracy.

The government must prove that the defendant knowingly and deliberately entered into an agreement with at least one other person to commit the substantive offense of Bribery of a Public Official by means of some common plan or course of action.

For a particular defendant to be deemed a participant in a conspiracy, he must have a stake in the venture or its outcome. You are instructed that, while proof of a financial interest in the outcome of a scheme is not essential, whether the defendant had such an interest is a factor that you may properly consider in determining whether or not the defendant was a member of the conspiracy charged by the government.

-212-

To satisfy its burden, the government must prove beyond a reasonable doubt that the particular defendant knowingly and willfully entered into the conspiracy, that is, into the agreement; and that he did so with a criminal intent, that is, with a purpose to violate the law; and that he agreed to take part in the conspiracy to promote and cooperate in its unlawful objectives.

An act is done "knowingly" if it is done intentionally and voluntarily. That is, the defendant's act must have been the product of the defendant's conscious objective rather than the product of a mistake or accident or mere negligence or some other innocent reason.

A person acts "willfully" if he acts intentionally, deliberately and purposely and with the intent to do what the law forbids, that is, knowing that his conduct was against the law and with the evil purpose to disobey or disregard the law. The defendant need not be aware of the specific law or rule that his conduct may be violating. The important question is whether the government has proven to you beyond a reasonable doubt that the defendant acted with an evil-meaning mind, that is to say, that he acted with knowledge that his conduct was against the law.

To be a member of a conspiracy, the particular defendant must knowingly and intentionally associate himself with a criminal venture, participate in it and try to make it succeed. Mere association with conspirators, knowledge of a

-213-

conspiracy or presence during conspiratorial discussions is not sufficient to convict a defendant of conspiracy. A person may know, or be friendly with, a member of a conspiracy, without being a conspirator himself. The fact that individuals may have assembled together and discussed common aims and interests does not necessarily establish the existence of a conspiracy.

I also want to caution you that mere knowledge of or acquiescence in the unlawful plan, without participation, is not sufficient. Moreover, the fact that the acts of a particular defendant happen to further the purposes or objectives of a conspiracy does not make that defendant a member of the conspiracy. More is required under the law. The particular defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

Authority:    Adapted from 2 O'Malley et al., § 27.05; 1 Sand et al., ¶ 19.01 Instr. 19-6 (second element of conspiracy "is that the defendant knowingly, willfully and voluntarily became a member of the conspiracy"), comment at 19-34 ("As the [conspiracy] instruction reflects, the willfulness of the defendant's participation in the conspiracy is a crucial element in the case for the government.") and ¶ 3A.01 Instr. 3A-3 ("willfully" means "to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law"); United States v. Feola, 420 U.S. 671, 686 (1975) ("Our decisions establish that in order to sustain a judgment of conviction on a charge

of conspiracy to violate a federal statute, the government must prove at least the degree of criminal intent necessary for the substantive offense itself."); United States v. Childress, 746 F. Supp. 1122, 1130 (D.D.C. 1990) (instructing that "mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient" and "defendant must have voluntarily participated in the conspiracy with knowledge of at least some of the purposes or objectives of the conspiracy") (emphasis omitted); United States v. Hubbard, 474 F. Supp. 64, 72 (D.D.C. 1979) (considering whether defendant had "stake in the venture" of conspiracy); United States v. Velez, 652 F.2d 258, 261-62 (2d Cir. 1981) (reversing conviction for court's refusal to include in supplemental charge to jury on conspiracy that defendant's participation had to be willful, since "[w]illful membership was a crucial element of the Government's case").

### Government's Objections to Defendants' Proposed Instruction No. 16

The Government respectfully objects to the Defendants' Proposed Conspiracy Instruction No. 16 for the following reasons:

1.    This requirement that an individual join the conspiracy is already contained in the standard Redbook conspiracy instruction proposed by the Government.

2.    This instruction, at several places, contains "wilfulness" intent language that, as discussed in relation to the prior proposed instruction, is not required by law.  The law in this Circuit is clear that the elements of the conspiracy are as follows: "(1) an agreement to commit a specific offense * * *;

(2) knowing participation in the conspiracy with the intent to commit the offense;

and (3) commission of at least one overt act in furtherance of the conspiracy." In

re Sealed Case, 283 F.3d at 354 (citing United States v. Wilson, 160 F.3d 732, 737

(D.C. Cir.1998); United States v. Treadwell, 760 F.2d 327, 333 (1985) (the

government must prove that "the defendant knowingly participated * * *.");

United States v. Haldeman, 559 F.2d 31, 112 (1976) (jury must find the

"[d]efendant knowingly participated in the conspiracy with the intent to commit

the offense * * * which was the object of the conspiracy").

      3.     This instruction employs numerous phrases which gut the

requirement that the government need only prove the existence of the

conspiratorial agreement, the defendant's joinder in the agreement, and a single

overt act which may, in fact, be lawful.  The  instruction is replete with references

that the jury must draw inferences based on each defendant's conduct.  This is not

the law.   It would not be inappropriate to instruct the jury that it must find:

      a.     each defendant's "conduct was against the law" (emphasis
added);

      b.     each "defendant acted with an evil-meaning mind, that is
to say, that he acted with knowledge that his conduct was
against the law" (emphasis added);

-216-

      c.     each defendant "participate[d] in it and tr[ied] to make it succeed."

Those proposed instructions flatly misstate the law. Given that the government must demonstrate only one overt and even lawful act which furthers the conspiracy, the law plainly does not require it to show that a particular conspirator not only acted but that his conduct in so acting was tinged with an evil intent. Indeed, the gist of a conspiracy is the conspiratorial <u>agreement</u>, that is, an agreement, an agreement to do what the law forbids, and a defendant's participation in the conspiracy may be proved in numerous ways, not just through conduct.

4.     There is no legal requirement whatsoever that a defendant have a "stake in the [conspiratorial] venture or its outcome."

5.     The Government does not object to standard instructions on intent, set forth at Redbook Instruction 3.02.

**Defendants' Proposed Instruction No. 17**

**Count One: Conspiracy -- Third Element**

**Overt Act**

The third element of conspiracy that the government must prove beyond a reasonable doubt is that one of the members of the alleged conspiracy knowingly performed at least one "overt act" in furtherance of the conspiracy during the existence or life of the conspiracy.  The term "overt act" means some type of outward, objective action performed by one of the members of the conspiracy that furthers the objectives of the conspiracy.  An overt act may itself be a lawful act; however, the act must be a step in achieving the conspiratorial objectives.

The government does not need to prove that the alleged conspirators committed all of the overt acts that the government alleges.  However, you must unanimously agree that the same overt act was committed.

Authority:     Adapted from 2 O'Malley et al., § 31.07; United States v. Gatling, 96 F.3d 1511, 1518 (D.C. Cir. 1996) (in order to convict under 18 U.S.C. § 371, jury must find that "at least one overt act was committed in furtherance of the conspiracy"); United States v. Small, 472 F.2d 818, 819-20 (3d Cir. 1972) (reversible error in failure to instruct that at least one overt act must be proved where statute requires such proof).

## <u>Government's Objections to Defendants' Proposed Instruction No. 17</u>

The government respectfully notes the following in response to the Defendants' Proposed Conspiracy Instruction No. 17.

The Government does not object to the contents of this instruction, other than to note that it is unnecessary in that these principles are set forth in the standard Redbook jury instruction.

**Defendants' Proposed Instruction No. 18**

**<u>Conspiracy -- Acts and Declarations of Co-Conspirators</u>**

In your consideration of the conspiracy offense charged in Count One of the Indictment, you should first determine from all the testimony and evidence in the case whether or not the conspiracy existed as charged, and only then move on to determine whether or not the particular defendant you are considering knew the unlawful purpose of that conspiracy and willfully joined it to further its unlawful purpose.

In determining whether the defendant you are considering was a member of the alleged conspiracy, however, you should consider only that evidence, if any, pertaining to his own acts and statements.  A defendant is not responsible for the other acts or declarations of other alleged participants until the government establishes beyond a reasonable doubt first that a conspiracy existed and second, from the evidence of his own acts and statements, that the defendant you are considering was one of its members.

The Court's admission of any out of court acts and statements by persons who the government charges were members of the conspiracy does not indicate a finding by me that a conspiracy existed, that the persons doing those acts or making those statements were members of a conspiracy, or that those acts or

-220-

statements were made in furtherance of a conspiracy.

Authority:    United States v. Whitley, 670 F.2d 617, 620-21 (5th Cir. 1982);
              United States v. Haldeman, 559 F.2d 31, 118 (D.C. Cir. 1976).


### Government's Objections to Defendants' Proposed Instruction No. 18

The Government respectfully objects to the proposed instruction for the

following reasons:

1.    It again references a "wilfull intent." This intent is not required.

2.    This instruction is not necessary; it covers the same legal principles

set forth in the basic "Redbook" instruction proposed by the government. For

example, the "Redbook" standard conspiracy instruction, proposed by the

government, provides: "A person may become a member of a conspiracy even if

that person agrees to play only a minor part, as long as that person understands the

unlawful nature of the plan and voluntarily and intentionally joins in it with the

intent to advance or further the unlawful object of the conspiracy."  Similarly: "In

deciding whether an agreement existed, you may consider the acts and statements

of all the alleged participants.  In deciding whether the defendant became a

member of that conspiracy, you may consider only the acts and statements of that

particular defendant."

    3.    This instruction intrudes on the jury deliberations by instructing the jury how it should proceed and the order in which it should consider the elements.

**Defendants' Proposed Instruction No. 19**

**<u>Conspiracy Unanimity</u>**

As I have already instructed you, Count One of the Indictment charges Defendants with conspiring with one another to commit the offense of Bribery of a Public Official.  The Indictment alleges a number of separate means or methods by which Defendants are accused of committing this offense.

The government is not required to prove all of the means or methods alleged in Count One of the Indictment.

However, in your consideration of a particular defendant on this Count, each one of you must agree that the same means or method alleged in Count One of the Indictment was, in fact, engaged in or employed by that defendant in conspiring to commit the offense of Bribery of a Public Official.  While you need not unanimously agree on each means or method engaged in or employed by the particular defendant you are considering, you must unanimously agree upon at least one such means or method as one of those engaged in by the defendant.

In other words, unless the government has proven the same means or method to each of you beyond a reasonable doubt, you must acquit that defendant of Count One.

Authority:    Adapted from 1A O'Malley et al., § 13.07.

-223-

**Government's Objections to Defendants' Proposed Instruction No. 19**

The government respectfully opposes defendants' proposed instruction as follows:

The Government objects to the instruction, which requires unanimity as to a "manner" or "method" of the conspiracy. The law requires the jury to be instructed that they must be unanimous as to the elements of the offense "including joining the conspiratorial agreement" not the "methods" to be used. Further, this instruction has the potential to be at least somewhat confusing in that the standard jury instructions make it clear that: "It is not necessary to find [the defendant] agreed to all the details of the crime, or that he knew the identity of all the other people the government has claimed were participating in the agreement. A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy." Criminal Jury Instructions for the District of Columbia (4th ed. rev. 2002) ("The Red Book" 4.93 (set forth at Government's Proposed Instruction No. 3.1). It is not difficult to posit examples where the crime of conspiracy could be committed without agreement on the

-224-

"methods" to be used.  If, for example, two individuals agreed (conspired) to rob a bank, and took overt acts toward that end (by watching the bank to determine when the guard takes his break and obtaining the combination to the safe), it would be no defense that one of the men intended on using a knife and the other a gun.

**Defendants' Proposed Instruction No. 20**

**Count Two: Bribery -- 18 U.S.C. § 201(b)(1)(A) & (C)**

In Count Two of the Indictment, Defendants Douglas Jemal, Norman Jemal and

Blake Esherick are charged with committing the offense of Bribery of a Public

Official, in violation of Title 18, United States Code, Sections 201(b)(1)(A) & (C).

To prove Bribery of a Public Official as charged in Count Two, the government

must prove each of the following elements beyond a reasonable doubt:

> First:  That the defendant directly or indirectly promised, offered, or
>
> gave something of value to a public official;
>
> Second:  That the defendant acted with intent to influence a particular
>
> future official act; and
>
> Third:  That the defendant acted corruptly, that is, with the purpose of
>
> accomplishing either an improper end result, or a lawful result by
>
> some unlawful method or means.

If you find from your consideration of all the evidence that each of these elements

have been proved by the government beyond a reasonable doubt for a particular

defendant, then you should find that defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any

of these elements has not been proved by the government beyond a reasonable

doubt for a particular defendant, then you must find that defendant not guilty.

I will now define some of these terms and elements for you.

Authority:    Adapted from Red Book Instr. 4.83; <u>Fifth Circuit District Judges
              Association Pattern Jury Instructions (Criminal Cases)</u>, Instr. 2.12
              (2001); <u>United States v. Sun-Diamond Growers of Cal.</u>, 526 U.S. 398,
              404-05 (1999) (explaining that bribery statute requires "a *quid pro
              quo*-- a specific intent to give or receive something of value *in
              exchange* for an official act"); <u>United States v. Shaffer</u>, 183 F.3d 833,
              841 (D.C. Cir. 1999) (explaining that bribery statute applies to a gift,
              offer, promise or demand in exchange for "some action in the
              future"); <u>United States v. Brewster</u>, 506 F.2d 62, 72 (D.C. Cir. 1974)
              (explaining that the briber must be the "mover or producer" of the
              specific official act); <u>United States v. Alfisi</u>, 308 F.3d 144, 149 (2d
              Cir. 2002) ("bribery involves the giving of value to procure a specific
              official action from a public official").

## Government's Objections to Defendants' Proposed Instruction No. 20

The government respectfully opposes defendants' proposed instruction as

follows:

Defendants' Proposed Instruction Nos. 20, 22, 26 and 27 misstate the settled

law of this case.

After substantial pre-trial litigation, this Court approved the "course of

conduct" bribery approach set forth in the Indictment.  The Court rejected the

defendants' contentions that the offense of bribery can only be proved by the

provision of a single bribe in exchange for a single act. Rather, this Court held that the Indictment properly charged a course of conduct, that is, the provision by the defendants of a series of things of value, over time, to corruptly influence a series of official acts. This ruling is "law of the case."

The defendants' proposed bribery instructions are totally inconsistent with the Court's ruling. Instead, the defendants have proposed instructions that track the legal arguments they previously advocated and the Court previously rejected. The defendants have operated as if, in the process of suggesting jury instructions, they are entitled to get a second chance at raising the arguments already soundly rejected.

The defendants may disagree with the ruling, but they show little respect for it. Indeed, the defendants have inserted flawed language (at odds with this Court's previous ruling) in no less than four of their seven proposed bribery instructions. In this regard, not only have the defendants failed to accommodate themselves to the Court's Order, they have gone so far as to propose instructions, or variations on instructions, that advance the precise legal position this Court has already rejected.

In contrast, the government's proposed instructions 2.0 through 2.5

-228-

represent the near verbatim tracking of standard jury instructions, with but slight modifications (that are clearly noted in the supporting footnotes). Government's proposed instruction 2.6 is set forth as a potential instruction based on anticipated developments at trial. Government's proposed instruction 2.7 is the only instruction that represents an attempt by the government to instruct the jury on the "course of conduct" charge set forth in the Indictment. Even though this is not a standard instruction, the government submits it is carefully and neutrally worded, captures the essence of the law, and is consistent with the Court's Order on this issue.

Turning thus to the specific instructions: each of Defendants' Proposed Instructions No. 20, 22, 26, and 27 employs inaccurate statements of law. These instructions state, in essence, that the bribery statute cannot be violated by a course of conduct (involving many acts and many things) but can only be violated by an intent to corruptly give a specific thing of value (singular) to corruptly influence a specific official act (singular). The flawed language in each of these instructions is set forth as follows:

- Defendants' Proposed Instruction No. 20. The defendants would have the Court instruct that the jury among the elements that it must

-229-

find the defendants intended "to influence a <u>particular</u> future official
act [singular]" (emphasis added);

- Defendants' Proposed Instruction No. 22.   The defendants again
  define the offense only in "singular" terms (that is, the  giving of a
  "<u>thing</u> [singular] of value to influence a <u>specific official act</u>
  [singular]") and use the term "quid pro quo," a term not found in any
  standard jury instruction on this matter (emphasis added);

- Defendants' Proposed Instruction No. 26 ("Bribery - Intent of the
  Giver/Intent of the Recipient") employs the same formulation: "[T]he
  ultimate issue for you to determine in connection with the bribery
  counts in the Indictment is whether the giver, a particular defendant,
  offered or provided the thing of value [singular] with corrupt intent to
  influence a particular official act [singular];"Defendants' Proposed
  Instruction No. 27 ("Bribery Unanimity") (same, with reference to a
  "<u>specific quid pro quo</u>") (emphasis added).

For reasons noted, each of these instructions is legally flawed and is
inconsistent with the law this Court settled by its prior ruling in this case.

-230-

**Defendants' Proposed Instruction No. 21**

**Count Two: Bribery -- First Element**

**"Something of Value" -- Defined**

The phrase "something of value" means any item, whether tangible or intangible, that the person giving or offering or the person demanding or receiving considers to be worth something.

The phrase "something of value" includes a sum of money, favorable treatment, a job or special consideration.

Authority:    Adapted from Devitt, Blackmar, Wolff & O'Malley, <u>Federal Jury Practice and Instructions</u>, § 25.10.

**Government's Objections to Defendants' Proposed Instruction No. 21**

The government respectfully opposes defendants' proposed instruction as follows:

The government objects to this instruction, which defines the term differently in two sentences, and yet is confusing and under-inclusive. Thus, the second sentence would not include such obvious and highly relevant things of

value as trips, meals, boots, or watches.

**Defendants' Proposed Instruction No. 22**

**Count Two: Bribery -- Second Element**

**"Intent to Influence an Official Act" -- Defined**

You have been instructed that, in order to convict a defendant of Bribery of a Public Official, you must find that he acted with "intent to influence an official act." In order to convict a particular defendant, you must find that the defendant intended to enter into a *quid pro quo* with the public official -- that is, that the defendant had a specific intent to give the public official something of value in exchange for a specific "official act" to be performed in the future -- a term that I will separately define for you in a moment. In addition, in order to convict a particular defendant, you must unanimously agree on each item of value offered or paid and the specific future official act intended to be influenced.

This intent standard is not satisfied if the defendant offered or provided a thing of value to the public official out of friendship, merely in order to ingratiate himself with the public official, to celebrate his status as a public official or to induce warm feelings or generalized sympathy from the public official toward the defendant's business or professional interests.

Authority:    Adapted from Red Book Instr. 4.83 comment at 519 ("The gravamen

of the offense [of bribery] is a *quid pro quo* in which 'acts are done in return for an agreement or understanding.'") (citation omitted); United States Attorney's Manual -- Criminal Resource Manual § 834 ("Subsections (b) and (c) of 18 U.S.C. § 201, which prohibit the offering or soliciting of bribes to or by Federal officials, require a showing of an intended quid pro quo."); Model Crim. Jury Instr. 9th Cir. 8.8 (comment) ("it may be appropriate to amend [an instruction on 18 U.S.C. § 201(b)(1)] with language requiring specific jury unanimity"); <u>United States v. Frega</u>, 179 F.3d 793, 807 (9th Cir. 1998) (approving instruction that "[a] gift or favor bestowed on a [public official] solely out of friendship, to promote good will, or for motive wholly unrelated to influence over official action does not violate the bribery statutes"); <u>United States v. Sun-Diamond</u>, 138 F.3d 961, 967 (D.C. Cir. 1998) ("[W]e have refused to allow the official act requirement to be satisfied by some vague hope of inducing warm feelings toward the donor. . . . [I]f Douglas furnished Espy with gifts merely to win his generalized sympathy for Sun-Diamond, those gifts would not be illegal gratuities . . . ."); <u>id.</u> at 968 ("the terms of the statute require a finding that the gifts were motivated by more than merely the giver's desire to ingratiate himself with the official generally, or to celebrate the latter's status"); <u>United States v. Shaffer</u>, 183 F.3d 833, 841 (D.C. Cir. 1999) (explaining that bribery statute applies to a gift, offer, promise or demand in exchange for "some action in the future").

## Government's Objections to Defendants' Proposed Instruction No. 22

The government respectfully opposes defendants' proposed instruction as follows:

Both paragraphs are entirely objectionable.

1.    We first note that the defendants have not chosen to use any standard

jury instructions for the intent element.   In contrast, the government has proposed

standard jury instructions that it seeks the Court to provide nearly verbatim.

2.     This instruction is flawed in that, for reasons set forth in the

Government's Objection to Defendants' Proposed Instruction No. 20, it misstates

the settled law in this case.  The defendants again define the offense only in

"singular" terms (that is, the  giving of a "<u>thing</u> [singular] of value to influence a

<u>specific official act</u> [singular]") and use the term "quid pro quo," a term not found

in either leading jury instruction treatise (O'Malley or Sands) on this matter.

3.     The second paragraph is objectionable in adding a confusing and

unnecessary elaboration to the intent element.  The case law requires an intent

element for both bribery (corrupt intent to influence) and gratuities (things of

value given for or because of acts done or to be done).  Thus, it is certainly

possible that someone could, for example, invite a government official as a

speaker at a conference and provide him hotel accommodations and a  T-shirt "and

in this way 'celebrate his status a public official'" without the intent to violate

either statute.

However,  the "intents" suggested as defenses by the defendants are not

mutually exclusive with the requisite criminal intent.  Thus, it would not be a

defense if the thing of value (say a $25,000 "award") was intended to "celebrate a public official's status" if the donor nonetheless possessed the corrupt intent that this "celebration" would also influence the official in the performance of his official duties; again, these are not mutually exclusive

Similarly, it is not a defense that a thing of value was provided by the donor "to ingratiate himself with the public official," if part and parcel of his "intent to ingratiate" was to thereby corruptly influence the public official in the performance of official duties; for "intending to ingratiate" is not mutually exclusive with "corruptly influencing." To the same end, it would not be a defense to the charged offenses that the giver intended "to induce warm feelings," if, part and parcel of his "intent to induce" these feelings was an intent to corruptly influence; again, these are not mutually exclusive intents. In short, possessing the intent suggested by the defendant does not necessarily negate the required criminal intent for conviction.

In sum, a defendant may have dual motives; some good, some bad. Under the law, if he is partly motivated by a corrupt motive, he is guilty even if another part of his motive may be explained by friendship, a desire to ingratiate, or otherwise neutral.

-236-

The proposed language, therefore, is confusing, and so incomplete and lacking in context as to be inaccurate in suggesting a defense where none exists.

We submit that the government's proposed bribery instructions, on balance, make it clear that to constitute a violation of the offense, the things of value must be given either to corruptly influence the public official in the performance of official acts, or must be provided as gratuities for acts done or to be done

**Defendants' Proposed Instruction No. 23**

**Count Two: Bribery -- Second Element**

**"Official Act" -- Defined**

The term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit. Acts unrelated to the public official's core public duties do not constitute "official acts." The mere fact that the official engages in or intends to engage in the act while representing himself as a public official does not automatically render that act "official" for purposes of the federal bribery statute. In order to be considered an "official act," the act must be of a significant enough nature so as to affect a formal government decision or action made or taken in fulfillment of the government's public responsibilities.

Authority:    18 U.S.C. § 201(a)(3); <u>United States v. Valdes</u>, 437 F.3d 1276 (D.C. Cir. 2006).

**<u>Government's Objection to Defendants' Proposed Instruction No. 23</u>**

The government respectfully opposes defendants' proposed instruction as follows:

Defendants' Proposed Instruction No. 23 defines "official act" in terms other than set forth by statute.   The defendants cite to <u>United States v. Valdes</u>, 437 F.3d 1276 (D.C. Cir. 2006),  but that panel opinion has been vacated and the case is pending rehearing <u>en banc</u>.   The government's proposed instruction on "official act" as set forth in Government's Proposed Instruction 2.4 closely tracks the <u>statute</u> (18 U.S.C. § 201(a)(3)) and the first part of the defendants' proposed definition: "An official act means any decision or action on any question or matter that may at any time be pending or which may by law be brought before any public official in his official capacity or in his place of trust."  For the purposes of this case, the government's definition is more than adequate.

**Defendants' Proposed Instruction No. 24**

**Count Two: Bribery -- Third Element**

**"Corruptly" -- Defined**

A defendant acts "corruptly" if the act is done willfully, and with the bad purpose of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means. In interpreting "corruptly," you should look to the traditional definition of the term -- that which is wrongful, immoral, depraved or evil.

Authority:    Adapted from 2 O'Malley et al., § 27.09; Arthur Andersen LLP v. United States, 544 U.S. 696, 705-06 (2005) (discussing definition of "corruptly" in context of obstruction of justice statute); United States v. Bonito, 57 F.3d 167, 171 (2d Cir. 1995) (defining "corruptly" in connection with 18 U.S.C. § 666); United States v. Strand, 574 F.2d 993, 995-96 (9th Cir. 1978) (defining "corruptly" in context of bribery statute).

**Government's Objection to Defendants' Proposed Instruction No. 24**

The government respectfully opposes defendants' proposed instruction as follows:

Defendants' Proposed Instruction No. 24 defines "corruptly" as "wrongful,

immoral, <u>depraved or evil</u>" (emphasis supplied).  This instruction is far removed

from the standard accepted definitions of "corruptly."  The government does not

have to prove the defendants were "depraved" or "evil."  Indeed, the Court might

sustain objections to any closing argument by the government stating that the

defendants were "depraved" or "evil."

**Defendants' Proposed Instruction No. 25**

**<u>Bribery -- Alternative Purpose</u>**

It is a defense to these charges if a defendant provided or offered a thing of value because of a personal or social relationship with the public official, or because of some other legal purpose.  As I explained to you, the government must prove beyond a reasonable doubt that a particular defendant corruptly offered or provided a thing of value "with intent to influence an official act."  This element requires you to focus on the intent of the particular defendant in offering the gift, rather than the intent of the recipient.  If you find that the evidence establishes that a particular defendant offered or provided a thing of value corruptly with intent to influence an official act, and that this unlawful purpose was a substantial or significant factor behind the offering or giving of the thing of value, then you may find this intent element met.

If, however, you find that the defendant you are considering offered or provided a thing of value out of friendship based on his personal or social relationship with the recipient, then you must acquit that defendant.

Authority:    Adapted from <u>United States v. Sawyer</u>, 85 F.3d 713, 741 (1st Cir. 1996) ("we think the jury needs to be told specifically that the

defendant has not violated the bribery component of the Travel Act . . . if his intent was limited to the cultivation of business or political friendship"); United States v. Biaggi, 909 F.2d 662, 683 (2d Cir. 1990) (Although "[a] valid purpose that partially motivates a transaction does not insulate participants in an unlawful transaction from criminal liability . . . the evidence must suffice to permit a jury to find beyond a reasonable doubt that the unlawful purposes were of substance, not merely vague possibilities that might attend an otherwise legitimate transaction."); United States v. Frega, 179 F.3d 793, 807 (9th Cir. 1998) (approving instruction that "[a] gift or favor bestowed on a [public official] solely out of friendship, to promote good will, or for motive wholly unrelated to influence over official action does not violate the bribery statutes").

## Government's Objection to Defendants' Proposed Instruction No. 25

The government respectfully opposes defendants' proposed instruction as follows:

1.    This is a non-standard instruction which, like Defendants' Proposed Instruction No. 23, improperly suggests a defense where none exists.  The defendants suggest that it is a defense to the charge of bribery that the defendants gave a thing of value that may have been given to the public official because of a "social and personal relationship with the public official."  This is confusing and incomplete, because there may have been such a friendship between the defendants and the public official, and yet, the defendants may nonetheless have

sought to bribe him (or pay him unlawful gratuities). Having a "purpose" of giving "because of a social and personal relationship" is not inconsistent with having a corrupt intent to influence. It is not uncommon for persons in a corrupt relationship to also have close "personal relationships"; ones lubricated by frequent social activities during which things of value and official acts are discussed. After all, "friends" don't report bribes.

Furthermore, this instruction is unnecessary. As noted, it is the government's burden to prove the defendants corruptly intended to influence official acts. If it cannot meet that burden, then the defendants' are entitled to an acquittal.

2.      The instruction describes the item given by the defendants to the official as a "gift"—a term which assumes as fact the very issue to be decided by the jury.

**Defendants' Proposed Instruction No. 26**

**Bribery -- Intent of the Giver/Intent of the Recipient**

The intent of the giver and the intent of the recipient in connection with each of the alleged things of value are not interdependent; the intent of each may differ, and you may not presume that the giver and recipient share the same intent. Although the intent of the recipient may be relevant to determining the intent of the giver, the ultimate issue for you to determine in connection with the bribery counts in the Indictment is whether the giver, a particular defendant, offered or provided the thing of value with corrupt intent to influence a particular official act.

Authority:   United States v. Anderson, 509 F.2d 312, 332 (D.C. Cir. 1974).

**Government's Objection to Defendants' Bribery Instruction No. 26**

The government respectfully opposes defendants' proposed instruction as follows:

For reasons set forth in the Government's Response to the Defendants' Proposed Instruction No. 20, this instruction is flawed.   In particular, the defendants again define the offense only in "singular" terms; that is,  "[T]he

-245-

ultimate issue for you to determine in connection with the bribery counts in the Indictment is whether the giver, a particular defendant, offered or provided the thing of value [singular] with corrupt intent to influence a particular official act [singular]."

The first sentence is objectionable because it uses the unnecessarily complex term "interdependent." We suggest that the government's formulation, at Government's Proposed Instruction No. 2.6, is preferable: "Finally, it is not necessary that the recipient of the alleged bribes have had the same intent as the payors of the alleged bribes. A bribe-payor's intent may differ completely from the bribe recipient's. Thus the bribe payor may be convicted of giving a bribe even though the recipient had no intention of altering his official activities, or even lacked the power to do so."

**Defendants' Proposed Instruction No. 27**

**<u>Bribery Unanimity</u>**

As I have already instructed you, Count Two of the Indictment charges Defendants with conspiring with committing the offense of Bribery of a Public Official. The Indictment alleges a number of things of value provided or offered to the public official and a number of official acts that Defendants allegedly intended to influence.

The government is not required to prove all of the things of value and all of the official acts alleged in Count Two of the Indictment.

However, in your consideration of a particular defendant on this Count, each one of you must agree that the same thing of value alleged in Count Two of the Indictment was, in fact, provided or offered by that defendant with the intent to influence the same particular future official act in committing the offense of Bribery of a Public Official.

In other words, unless the government has proven the same specific quid pro quo to each of you beyond a reasonable doubt, you must acquit that defendant of Count Two.

Authority:    Adapted from 1A O'Malley et al., § 13.07.

## Government's Objection to Defendants' Proposed Instruction No. 27

The government respectfully opposes defendants' proposed instruction as follows:

For reasons set forth in the Government's Response to the Defendants' Proposed Instruction No. 27, this instruction is flawed.   In particular, the defendants again define the offense only in "singular" terms, referencing the need for the jury to be unanimous as to the "same specific quid pro quo."  Again, the defendants attempt to insert into the jury instructions the precise theory this Court rejected when it denied defendants' motions to dismiss.

Thus, the term "quid pro quo" is not defined, but it naturally suggests the existence of a specific agreement between the bribe giver and recipient as to one specific official act; yet it is clear, as acknowledged by the defendants in their Proposed Instruction No. 26,  that the recipient may have a completely different intent from the giver and yet the bribe-giver can still be guilty.  To the same end, the instruction also suggests that the jury must be unanimous that the bribe be made to influence "the same particular future official act," which, as discussed

-248-

above, was rejected by the court when it ratified the government's charging theory in the Indictment and denied defendants' motions to dismiss.

The government has included proposed unanimity language that avoids the attempt by the defendant to alter the Indictment's charging theory.  Certainly, the jury must be instructed that they must be unanimous as to one or more of the things given, and one or more of the acts that the items given were corruptly intended to influence.  The government's proposed unanimity instruction, at Government's Proposed Instruction No. 27, fairly instructs the jury on the course of conduct theory and unanimity.

**Defendants' Proposed Instruction No. 27a**

**Lesser Included Offense: Giving an Unlawful Gratuity to a Public**

**Official -- 18 U.S.C. § 201(c)**

If you find that the government has proven beyond a reasonable doubt each of the three elements of the offense of Bribery of a Public Official as I have just described them to you, you should proceed no further on Count Two and report your guilty verdict on that count.

If, however, you find that the government has not proven beyond a reasonable doubt that the Defendants promised, offered or gave something of value with corrupt intent as I described those terms to you, then you must consider whether the Defendants committed the offense of Giving an Unlawful Gratuity to a Public Official, in violation of Title 18, United States Code, Section 201(c).

To prove the offense of Giving an Unlawful Gratuity to a Public Official, the government must prove each of the following elements beyond a reasonable doubt:

First:  That, on or about the date charged in the Indictment, the defendant knowingly and willfully gave something of value not authorized by law to Mr. Lorusso;

-250-

<u>Second</u>:  That the defendant did so for or because of official

acts performed or to be performed by Mr. Lorusso; and

<u>Third</u>:  At that time, Mr. Lorusso was a public official, by

virtue of his position as Deputy Director of the Office of

Property Management for the District of Columbia.

If you find from your consideration of the evidence that the

government has proven each of these elements beyond a reasonable doubt

with respect to a particular defendant, then you should find that defendant

guilty of the offense of Giving an Unlawful Gratuity to a Public Official.  If,

on the other hand, you find from your consideration of the evidence that the

government has failed to prove any one or more of these elements beyond a

reasonable doubt, then you should find that defendant not guilty.

I will now define some of these terms and elements for you.

Authority:    Adapted from 1 Sand et al., <u>Modern Fed. Jury Instr.</u> ¶ 16.01
              Instr. 16-7; <u>United States v. Campbell</u>, 684 F.2d 141, 147 (D.C.
              Cir. 1982) (approving jury instruction in gratuities case that
              defendant acted "knowingly and willfully"); <u>United States v.</u>
              <u>Brewster</u>, 506 F.2d 62 (D.C. Cir. 1974) (approving instruction
              that defendant acted "willfully and knowingly rather than by
              mistake or accident" in accepting illegal gratuity).

**Government's Objections to Defendants' Proposed Instruction No. 27a**

The government respectfully objects to this for the sole reason that it imports a "willfulness element." The defendants cite to the Sands jury instructions, but the cited instructions simply use a "knowing" intent element (as proposed by the Government). Moreover, the Comment to the jury instruction states: "Unlike bribery, the gratuity offense is not a crime of specific intent.[] To convict for giving a gratuity, it must be shown only that the act was committed knowingly.[]" 1 Sand et al., Modern Fed. Jury Inst. ¶ 16.01, Instr. 16-7, Comment (footnotes omitted).

Recent case law from this Circuit supports the instruction on a "knowing" intent. See United States v. Schaffer, 83 F.3d 833, 840 (D.C. Cir. 1999) ("As the trial court correctly instructed, a violation of this statute requires the presence of three separate elements: that the defendant (I) knowingly gave a thing of value; (ii) to a public official or person selected to be a public official; (iii) for or because of any official act performed or to be performed."), vacated as moot, 240 F.3d 45 (2001); see also United States v. Gatling, 96 F.3d 1511, 1522-23 (D.C. Cir. 1996) ("to convict for accepting a gratuity the jury need only find that the defendant acted 'knowingly and willingly.'") (citing United States v. Campbell, 684 F.2d

-252-

141, 148 (D.C. Cir. 1982).  Though the defendants have cited to cases where

a "willfulness" instructions was given, we respectfully submit that such

instruction is not required by statute nor required by case law in this

jurisdiction.

**Defendants' Proposed Instruction No. 27b**

**<u>Lesser Included Offense: Unlawful Gratuity</u>**

**"Knowingly and Willfully" -- Define**

A defendant does something "knowingly" if the act is done voluntarily and intentionally and not through accident, misunderstanding, inadvertence or other innocent reason.

A defendant does something "willfully" if the act is done intentionally, deliberately and purposely and with the intent to do what the law forbids, that is, knowing that one's conduct is against the law and with the evil purpose to disobey or disregard the law.

Authority:    Adapted from 1 Sand et al., <u>Modern Fed. Jury Instr.</u> ¶ 16.01
               Instr. 16-7 & ¶ 3A.01 Instr. 3A-3.

<u>Government's Objections to Defendants' Proposed Instruction No. 27b</u>

The Government respectfully objects to the proposed definitions of "knowingly" and "willfully."

As to "knowingly," the Government objects to the phrase "or other innocent reason" because it gives the jury no guidance on what facts would

fall into this category. The government recognizes that this language is in fact set forth in the cited Sands jury instructions. Nonetheless, the government requests that the Court use the standard definition of "knowingly" provided by Judge Sands:

> "You have been instructed that in order to sustain its burden of proof, the government must prove that the defendant acted knowingly. A person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness. Whether the defendant acted knowingly may be proven by the defendant's conduct and by all of the facts and circumstances surrounding the case."[117]

As noted in the Government's Objections to Defendants' Proposed instruction No. 27a, the elements, the government maintains that willfulness is not an element of the offense. Nonetheless, the proposed instruction is particularly inappropriate, requiring the government to prove "evil" intent as part of the proof of the gratuities offense. If this Court concludes that notwithstanding the government's arguments it shall instruct the jury on willfulness, we request that it use standard "wilfulness" language, again from Professor Sands:

> You have been instructed that in order to sustain

---

[117]    1 Sand et al., <u>Modern Fed. Jury Inst</u>. ¶ 3A.01, Instr. 3A-1, ("Knowingly").

-255-

its burden of proof the government must prove that the defendant acted willfully. "Willfully" means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law.

 The defendant's conduct was not "willful" if it was due to negligence, inadvertence, or mistake. (*If the defendant asserts a good faith misunderstanding of the law defense:* or was the result of a good faith misunderstanding of the requirement of the law.  In this connection, it is for you to decide whether the defendant acted in good faith, that is, whether he sincerely misunderstood the requirement of the law, or whether he knew what he was required to do and deliberately did not do so.)[118]

---

[118]     1 Sand et al., Modern Fed. Jury Inst. ¶ 3A.01, Instr. 3A-3, ("Willfully").

**Defendants' Proposed Instruction No. 27c**

**Lesser Included Offense: Unlawful Gratuity**

**"Something of Value" -- Defined**

I have already instructed you on the definition of "something of

value" with respect to the offense of Bribery of a Public Official.  You

should apply that definition in considering the offense of Giving an

Unlawful Gratuity to a Public Official as well.

**Government's Objections to Defendants' Proposed Instruction No. 27c**

The government respectfully opposes defendants' proposed

instructions for the same reasons discussed in its opposition to Defendants'

Proposed Instruction No. 21.

**Defendants' Proposed Instruction No. 27d**

**Lesser Included Offense: Unlawful Gratuity**

**"Official Act" -- Defined**

Again, I have already instructed you on the definition of "official act" with respect to the offense of Bribery of a Public Official. You should apply that definition in considering the offense of Giving an Unlawful Gratuity to a Public Official as well.

**Government's Objections to Defendants' Proposed Instruction No. 27d**

The government respectfully opposes this proposed instruction for the same reasons discussed in its opposition to Defendants' Proposed Instruction No. 23.

**Defendants' Proposed Instruction No. 27e**

**Lesser Included Offense: Unlawful Gratuity**

**"For or Because of an Official Act" -- Defined**

To satisfy the criminal intent requirement embodied in the phrase "for or because of any official act," the defendant must have given the thing of value to reward some past concrete official act or acts, or to enhance the likelihood of some future official act or acts, by the public official. This intent standard is not satisfied if the defendant offered or provided a thing of value to the public official out of friendship, merely in order to ingratiate himself with the public official, to celebrate his status as a public official or to induce warm feelings or generalized sympathy from the public official toward the defendant's business or professional interests.

Authority:  Adapted from United States v. Sun-Diamond, 138 F.3d 961, 967 (D.C. Cir. 1998) ("[W]e have refused to allow the official act requirement to be satisfied by some vague hope of inducing warm feelings toward the donor. . . . [I]f Douglas furnished Espy with gifts merely to win his generalized sympathy for Sun-Diamond, those gifts would not be illegal gratuities . . . ."); id. at 968 ("the terms of the statute require a finding that the gifts were motivated by more than merely the giver's desire to ingratiate himself with the official generally, or to celebrate the latter's status").

-259-

## <u>Government's Objections to Defendants' Proposed Instruction No. 27e</u>

The government respectfully opposes this proposed instruction for the same reasons discussed in its opposition to Defendants Proposed Instruction No. 22.

**Defendants' Proposed Instruction No. 27f**

**Lesser Included Offense: Unlawful Gratuity**

**Alternative Purpose**

It is a defense to these charges if a defendant gave a thing of value because of a personal or social relationship with the public official, or because of some other legal purpose.  As I explained to you, the government must prove beyond a reasonable doubt that a particular defendant knowingly and willfully gave a thing of value "for or because of an official act."  This element requires you to focus on the intent of the particular defendant in offering the gift, rather than the intent of the recipient.  If you find that the evidence establishes that a particular defendant gave a thing of value for or because of an official act, and that this unlawful purpose was a substantial or significant factor behind the giving of the thing of value, then you may find this intent element satisfied.

If, however, you find that the defendant you are considering gave a thing of value out of friendship based on his personal or social relationship with the recipient, then you must acquit that defendant.

Authority:      Adapted from United States v. Biaggi, 909 F.2d 662, 683

-261-

(2d Cir. 1990) (Although "[a] valid purpose that partially
motivates a transaction does not insulate participants in an
unlawful transaction from criminal liability . . . the evidence
must suffice to permit a jury to find beyond a reasonable doubt
that the unlawful purposes were of substance, not merely vague
possibilities that might attend an otherwise legitimate
transaction.").

## Government's Objections to Defendants' Proposed Instruction No. 27f

The government respectfully opposes this instruction for the same

reasons discussed in its opposition to Defendants' Proposed Instruction No.

25.

**Defendants' Proposed Instruction No. 27g**

**Lesser Included Offense: Unlawful Gratuity**

**Intent of the Giver/Intent of the Recipient**

The intent of the giver and the intent of the recipient in connection with each of the alleged things of value are not interdependent; the intent of each may differ, and you may not presume that the giver and recipient share the same intent.  Although the intent of the recipient may be relevant to determining the intent of the giver, the ultimate issue for you to determine in connection with each of the your consideration of the offense of Giving an Unlawful Gratuity to a Public Official is whether the giver, a particular defendant, gave the thing of value for or because an official act, as I have defined those terms for you.

Authority:   United States v. Anderson, 509 F.2d 312, 332 (D.C. Cir. 1974).

**Government's Objection to Defendants' Proposed Instruction No. 27g**

The government respectfully opposes this proposed instruction for the same reasons discussed in its opposition to Defendants' Proposed

Instruction No. 26.

**Defendants' Proposed Instruction No. 27h**

**Lesser Included Offense: Unlawful Gratuity**

**Unanimity**

As I have already instructed you with respect to the offense of Bribery of a Public Official, the Indictment alleges a number of things of value provided or offered to the public official and a number of official acts that Defendants allegedly intended to influence.

The government is not required to prove all of the things of value and all of the official acts alleged in the Indictment.

However, in your consideration of a particular defendant with respect to this offense, each one of you must agree that the same thing of value alleged in the Indictment was, in fact, provided or offered by that defendant with the intent to influence the same particular future official act in committing the offense of Giving an Unlawful Gratuity to a Public Official.

In other words, unless the government has proven the same specific thing of value given with the intent to influence the same particular future act to each of you beyond a reasonable doubt, you must acquit that defendant of the offense of Giving an Unlawful Gratuity to a Public Official.

Authority:    Adapted from 1A O'Malley et al., <u>Fed. Jury Practice & Instr.</u> § 13.07.


**<u>Government's Objections to Defendants' Proposed Instruction No. 27h</u>**

The government respectfully opposes this proposed instruction for the same reasons discussed in government's opposition to Defendants' Proposed Instruction No. 27.

**Defendants' Proposed Instruction No. 28**

**Count Three: Mail Fraud -- 18 U.S.C. §§ 1341, 1346**

In Count Three of the Indictment, Defendants Douglas Jemal, Norman Jemal and Blake Esherick are charged with committing the offense of Mail Fraud, in violation of Title 18, United States Code, Sections 1341 and 1346.

To prove Mail Fraud, as charged in Count Three, the government must prove each of the following elements beyond a reasonable doubt:

First:  (A) That the particular defendant devised and executed a scheme or artifice to deprive the D.C. government and the citizens of the District of Columbia of the "honest services" of Michael A. Lorusso, by means of false and fraudulent pretenses, representations or promises, as alleged in the Indictment; *or*

(B) That the particular defendant devised and executed a scheme or artifice to obtain money or property to which they were not legally entitled from the D.C. government by means of false and fraudulent pretenses, representations or promises, as alleged in the Indictment;

Second:  That the scheme or artifice to defraud was "material,"

-267-

that is, it would reasonably influence a person to part with money or property;

<u>Third</u>:  That the particular defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

<u>Fourth</u>:  That in furtherance or execution of this scheme, the particular defendant used or caused the mails to be used, as specified in the Indictment.

If you find from your consideration of all the evidence that all three of these propositions have been proved by the government beyond a reasonable doubt for a particular defendant and a particular count, then you should find that defendant guilty of that particular charge.

If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved by the government beyond a reasonable doubt for a particular defendant and a particular count, then you must find that defendant not guilty of that particular count.

-268-

I will now define some of these terms and elements for you.

Authority:        Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-3; 2A
                  O'Malley et al., § 47.03.

### Government's Objections to Defendants' Proposed Instruction No. 28

The government respectfully opposes defendants' proposed instruction as follows:

As an initial matter, the government objects to defendants' proposed mail fraud instructions to the extent they blend the two theories of mail fraud set forth in the Indictment—a scheme to obtain money or property by means of false representations (the money theory) and a scheme to deprive the District of Columbia of its rights to the honest services of Michael Lorusso (honest services)—into one, overly confusing mass of mail fraud instructions.

The better practice —one that would help the jury understand each of these indicted theories, particularly given the amount of instructions the honest services theory requires—is to split them into two, separate and identified sets of instructions.

-269-

The government's second overall objection to the defendants' set of mail fraud instructions is that it would instruct the jury that they must find that the "scheme or artifice" was "'material,' that is, it would reasonably influence a person to part with money or property."   The government concurs that, following <u>United States</u> v. <u>Neder</u>, 527 U.S. 1 (1999), materiality is a required element for mail fraud.  But, it makes little sense— and it would be confusing to the jury— to think of a "scheme" as being material.  The government respectfully submits that the better practice is for "material" to modify "false or fraudulent pretenses, representations, or promises," as proposed in Government's Proposed Instruction No. 4.2.  A jury can easily understand (and be instructed) that certain statements, representations, or promises might be material (in that "they would be of importance to a reasonable person in making a decision about a particular matter or transaction.")  See Government's Proposed Instruction No 4.5 (quoting O'Malley <u>et al</u>., 2A Federal Jury Practice & Instructions § 47.13, at 401 (5th ed. 2000).  It is a far more difficult and abstract concept to think of a "scheme" being "material."  Hence the Court should adopt the

government's proposed mail fraud formulations.[119]

---

[119]

      The Court should similarly adopt the government's proposed wire fraud formulations in lieu of the defendants' proposed wire fraud instructions, which, like their mail fraud counterparts, link materiality to the scheme, not the representations.

**Defendants' Proposed Instruction No. 29**

**<u>Count Three: Mail Fraud -- First Element</u>**

**"Scheme or Artifice to Defraud . . . By Means of False or Fraudulent Pretenses, Representations or Promises" -- Defined**

In order to convict a particular defendant of the offense alleged in Count Three, the government must first prove beyond a reasonable doubt the existence of a scheme or artifice to defraud (A) the citizens of the District of Columbia of the intangible right to honest services of Michael A. Lorusso, or (B) the District of Columbia of money or property to which he was not legally entitled, by means of false or fraudulent pretenses, representations or promises.

A "scheme to defraud" is a plan to deprive another of either (A) the intangible right of honest services, or (B) money or property, by trick, deceit, deception or swindle. A statement, representation, claim or document is "false" if it is untrue when made and was then known to be untrue by the person making it or causing it to be made. A representation or statement is "fraudulent" if it was falsely made with the intention to deceive. The failure to disclose information may also constitute a fraudulent representation if a particular defendant was under a legal duty to make such

-272-

a disclosure, he actually knew such a disclosure ought to be made, and he

failed to make such disclosure with the intent to defraud.


Authority:        Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-4.


## Government's Objections to Defendants' Proposed Instruction No. 29

The government respectfully opposes defendants' proposed

instruction as follows:

First, as noted above, the defendants seek to combine the two mail

fraud theories (money and honest services) into this one instruction, which

will only serve to confuse the jury.

Second, defendants purport to "adapt" their proposed instruction from

a treatise.  See Sand et al, 2 Modern Federal Jury Instructions–Criminal ¶

44.01, Instruction No. 44-4 (2005).  The defendants' edits are so vast,

one-sided, and extreme as to leave a considerable amount of critical

explanatory language and supporting context on their cutting-room floor.

Thus, Judge Sands in his treatise has the following definition, and the

words in **bold** are ones the defendants' have chosen, without explanation, to

omit from their proposal to the Court:

"**This first element is almost self-explanatory.**

"**A 'scheme or artifice' is merely a plan for the accomplishment of an object.**

"**A scheme to defraud is any plan, device or course of action to obtain money or property * * * by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence.**

"**'Fraud' is a general term which embraces all the various means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representations, suggestions or suppression of the truth, or deliberate disregard for the truth.**

"**Thus,** a 'scheme to defraud' is merely a plan to deprive another of money or property * * * by trick, deceit, deception or swindle.

"**The scheme to defraud is alleged to have been carried out by making false (or fraudulent) statements (representations) (claims) (documents).**

"A statement, representation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.

"A representation or statement is fraudulent if it was falsely made with the intention to deceive.

"**Deceitful statements of half truths or the concealment of material facts, and the expression of an opinion not honestly entertained may also constitute false or fraudulent statements under the statute.**

"**The deception need not be premised upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used may convey the false and**

-274-

**deceptive appearance. If there is a deception, the manner in which it is accomplished is immaterial.**

"The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal**, professional or contractual** duty to make such a disclosure, the defendant actually knew such disclosure ought to be made, and the defendant failed to make such disclosure with the intent to defraud.

**"The false or fraudulent representation (or failure to disclose) must relate to a material fact or matter.[120] A material fact is one which would reasonably be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision (e.g., with respect to a proposed investment).[121]**

**"This means that if you find a particular statement of fact to have been false, you must determine whether that statement was one that a reasonable person or investor might have considered important in making his or her decision. The same principle applies to fraudulent half truths or omissions of material facts.**

---

120

As noted above in its response to Defendants' Proposed Instruction No. 28, the government respectfully submits that "materiality" should modify "statement, representation, or promise," <u>not</u> "scheme." Here, the treatise relied on by the defendants correctly uses the concepts of materiality to modify "false or fraudulent representation"— the same approach suggested by the government. Interestingly, defendants take this very same approach when they define materiality. <u>See</u> Defs. Proposed Instruction No. 31 ("A statement or representation is 'material' * * *.").

121

In fairness, defendants propose to define materiality outside this particular instruction in its own specific instruction. <u>See</u> Defendants' Proposed Instruction No. 31. The balance of Judge Sands's instructions is not, however, found in the defendants' other instruction.

> **"The representations which the government charges were made as part of the scheme to defraud are set forth in paragraph ___ of the indictment, which I have already read to you. It is not required that every misrepresentation charged in the indictment be proved. It is sufficient if the prosecution proves beyond a reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud.**

> **[   ]**

> **"A scheme to defraud need not be shown by direct evidence, but may be established by all of the circumstances and facts in the case."**

>                    *                    *                    *

The government, which drew in large part from a different treatise for its proposed fraud instructions,[122] naturally submits that its proposed jury instructions are more clear and easily understood (not least because they attempt to avoid dated or hyperbolic terms like "swindle" or "evil"). But if the Court were to chose to draw more from defendants' preferred treatise, the government respectfully requests that it take most if not all of what Judge Sands has to say, and not just what defendants selected.

---

[122]
      O'Malley et al., 2A Federal Jury Practice & Instructions § 47.03, at 314 (5th ed. 2000)

-276-

**Defendants' Proposed Instruction No. 30**

**Count Three: Mail Fraud -- First Element**

**"Deprivation of Honest Services" -- Defined**

As explained above, the federal mail fraud statute applies to a scheme to defraud the public of the "intangible right to honest services" of a public official. The "honest services" that the public official in question, Michael A. Lorusso, owed the citizens of the District of Columbia were his unbiased and independent judgments and decisions on matters that were within his jurisdiction as Deputy Director, Office of Property Management for the District of Columbia government. In order to find that a particular defendant committed "honest services" mail fraud, you must find that the defendant acted with the specific intent to deprive the citizens of the District of Columbia of their right to these honest services of Mr. Lorusso.

In order to convict a particular defendant under the "honest services" mail fraud theory, you must find beyond a reasonable doubt that the defendant intended to bribe the public official in question -- in this case, Mr. Lorusso -- by providing Mr. Lorusso with a thing of value with intent to cause Mr. Lorusso to fail to carry out his official duties conscientiously or alter his official actions in a manner detrimental to the citizens of the

-277-

District of Columbia.

Not every breach of public trust, malfeasance in office, or instance of official misconduct that results in an official's personal gain is prohibited by the mail fraud statute. Providing a public official with a gift or thing of value does not deprive the public of its right to the official's "honest services" unless the defendant intends to influence the public official in the performance of official acts so as to cheat the public of its right to have official decisions made on the merits or free from biased decision-making for personal gain.

In addition, the mere acceptance of a gift or gratuity by a public official, without more, does not deprive the public of its right to the official's honest services. You may not find that a defendant intended to deprive the citizens of the District of Columbia of their right to Mr. Lorusso's "honest services" if a defendant provided Mr. Lorusso with a gift or gratuity as part of a simple cultivation of a business, political or personal friendship. Only if the defendant intended to alter a particular official action or actions of Mr. Lorusso based on the offering or giving of the gift or gratuity may you find that the defendant intended to deprive the citizens of the District of Columbia of their right to Mr. Lorusso's honest services.

-278-

Authority:  United States v. Mandel, 591 F.2d 1347, 1362 (4th Cir. 1979)
("the fraud . . . lies in the fact that the public official is not
exercising his independent judgment in passing on official
matters"); United States v. Sawyer, 85 F.3d 713, 725 (1st Cir.
1996) ("although a public official might engage in
reprehensible conduct related to an official position, the
conviction of that official for honest-services fraud cannot
stand where the misconduct does not actually deprive the
public of its right to [his] honest services, and it is not shown to
intend that result"); United States v. Rabbit, 583 F.2d 1014,
1024 (8th Cir. 1978) ("Every case of breach of public trust and
misfeasance in office in connection with which some mailing
has occurred does not and cannot fall within the confines of the
mail fraud statute."); Sawyer, 85 F.3d at 725 ("The broad scope
of the mail fraud statute . . . does not encompass every instance
of official misconduct that results in the official's personal
gain."); United States v. Brumley, 116 F.3d 728, 734 (5th Cir.
1997) ("the mere violation of a gratuity statute . . . will not
suffice"); United States v. DeFries, 129 F.3d 1293, 1306 (D.C.
Cir. 1997) ("To constitute a deprivation of 'honest services,'
the breach of fiduciary duty must have some element of
dishonesty."); United States v. Czubinski, 106 F.3d 1069, 1077
(1st Cir. 1997) (finding no "honest services" fraud offense
where "there [was] no suggestion that [the official] failed to
carry out his official tasks adequately, or intended to do so");
Sawyer, 85 F.3d at 741 ("if [the defendant] had this limited
intent -- to cultivate friendship rather than to influence an
official act -- the federal statutes here involved [bribery and
honest services fraud] would not be violated").

### Government's Objections to Defendants' Proposed Instruction No. 30

The government respectfully opposes defendants' proposed

instruction as follows:

First, as noted above, the defendants seek to combine the two mail

fraud theories (money and honest services) into this one instruction, which

will only serve to confuse the jury.

Second, defendants cite no established, well used proposed jury

instruction (either from a treatise or a circuit court) as authority for their

proposed definition of honest services.  By contrast, the government relies

primarily on pattern instructions approved for use by the United States

Court of Appeals for the Eleventh Circuit.[123]  It is far more prudent to start

with instructions that have already been vetted by an Appeals Court.

Third, even though it constitutes three paragraphs, the defendants'

proposed honest services instruction provides little assistance to the jury

about what it actually means to have a duty of honest services.  Thus,

defendants define it, unhelpfully, as follows:

---

[123]

See Government's Proposed Instructions Nos 4.11-4.21 (relying in large part on
Eleventh Circuit Criminal Instruction No. 50.2).

> "The 'honest services' that the public official in question, Michael A. Lorusso, owed the citizens of the District of Columbia were his unbiased and independent judgment on matters that were within his jurisdiction as Deputy Director, Official of Property Management for the District of Columbia."

Defs. Proposed Instruction No. 30.  By contrast, the government attempts to

provide the jury with a more clear definition, one that puts some actual meat

on the bones of this theory:

> "The District of Columbia and its citizens have a right to the honest services of its public officials.  That means the District and its citizens have a right to their public officials' honest services, performed free from deceit, fraud, dishonesty, conflict of interest, and self-enrichment.  Under the law, every employee representing or working for the government has a duty (called a fiduciary duty) to act honestly and faithfully in all of his or her dealings with his employer, and to transact business in the best interest of the employer.

> "A government's employee's fiduciary duty includes a duty to make full and fair disclosure to the employer of any material personal interest or profit the employee expects to derive or has derived from any act, decision, transaction or set of transactions in which he participates in the course of his employment.

> "A private citizen may be convicted of honest services fraud even though he is not the public official and does not himself have the public official's duty to provide honest services to the public.  That is because mail fraud includes a scheme to deprive another of the intangible right to honest services."

Government's Proposed Instruction No. 4.13 (footnotes omitted).  This

language comes nearly directly from case law.  In particular, the

-281-

government's proposal, unlike its defense counterpart, introduces the essential concept of a failure to disclose benefits; a notion that is at the heart of the honest services theory.

Further, the government also has a number of particular objections to defendants' proposed instruction. First, as to the second paragraph of defendants' proposed instruction, defendants would make honest services fraud just another form of bribery. Thus, their proposed instruction would require the government to prove that "the defendant <u>intended to bribe the public official</u> in question—in this case, Mr. Lorusso— by providing Mr. Lorusso with a thing of value with intent to cause Mr. Lorusso to fail to carry out his official duties * * *." Yet defendants cite <u>no</u> authority (no case, no treatise, no law review article) for the proposition that the government can prove an honest services fraud if an only if it proves all the elements of the bribery statute. All the law requires is that a defendant participate in a scheme to deprive honest services, not that he successfully bribe a public official. See 18 U.S.C. § 1346.

Second, as to the third paragraph of defendants' proposal, the first sentence asserts that "[n]ot every breach of public trust, malfeasance in office, or instance of official misconduct that results in an official's personal

gain is violated by the mail fraud statute"—a somewhat true statement that is highly misleading because it is simply incomplete and fails to explain the dividing line between breaches of trust that <u>do</u> violate the mail fraud statute, and breaches of trust that <u>don't</u>.[124]

Third, as to the fourth paragraph of defendants' proposal, the first sentence ("the mere acceptance of a gift * * *") and the last sentence of the paragraph ("giving of the gift * * *") are highly misleading. As an initial matter, the proposal uses the term "gift," which assume as fact an issue to be decided by the jury. Moreover, the rest of the paragraph does not clearly explain the dividing line between "acceptance of [things of value] by a public official" that "deprive the public of its right to the official's honest services" and those acceptances of things that do <u>not</u> deprive the public. Furthermore, the defendants flatly misstate the law by suggesting that the jury may not convict if any part of a defendant's motivation was neutral.

---

[124]
        The second sentence is also misleading:  the public's right to the honest services of a particular official could still be violated if an official took a thing of value from an interested party over whom his agency had jurisdiction (even if the interested party had a non-criminal motive) if the official had a duty to disclose such things, did not disclose it, had a scheme to deprive the public of their right to his honest services; hence that violation would be—in contrast to the defendants' proposed sentence—prohibited by the mail fraud and could result in a conviction of the public official; thus the statement is an incorrect statement of the law.

-283-

See Defs. Proposed Instruction No. 30, at ¶ 4 (not guilty if provided as "simple cultivation of a business, political or personal friendship"). But that statement has the law backwards, for it is clear that a jury <u>may</u> <u>convict</u> if any portion of a defendant's intent was criminal. See <u>United States</u> v. <u>Woodward</u>, 149 F.3d 46, 71 (1st Cir. 1998) ("A defendant may be prosecuted for deprivation of honest services if he has a dual purposes, <u>i.e.</u>, if he is found to have intended both a lawful and an unlawful purpose to some degree. If the jury finds that an unlawful purpose was present, it may convict the defendant."); <u>United States</u> v. <u>Coyne</u>, 4 F.3d 100, 113 (2d Cir. 1993) (a valid purpose that partially motivates a transaction that is corrupt in part "does not insulate participants in an unlawful transaction from criminal liability"). In short, contrary to defendants' assertions, it makes no difference if a part of a defendant's intent is "neutral," so long as part of it is also "criminal."

This final paragraph also, without explanation, shifts from "bribery," which appears in the second paragraph, to the seemingly lower burden of "gift or gratuity."

Thus, the government respectfully submits that the Court should use the government's proposed definition of honest services.

-284-

**Defendants' Proposed Instruction No. 31**

**Count Three: Mail Fraud -- Second Element**

**"Materiality" -- Defined**

As I have instructed you, the second element that the government must prove beyond a reasonable doubt is that the scheme or artifice to defraud was "material."

A statement or representation is "material" if it has a natural tendency to influence or is capable of influencing a decision or action of the person or entity to which it is addressed.

Authority:    Adapted from 1A O'Malley et al., § 16.11; Neder v. United States, 527 U.S. 1, 25 (1999) (materiality of falsehood is an element of the federal mail fraud, wire fraud, and back fraud statutes).

**Government's Objections to Defendants' Proposed Instruction No. 31**

The government respectfully opposes defendants' proposed instruction as follows:

First, as noted above, the defendants seek to combine the two mail fraud theories (money and honest services) into this one instruction, which will only serve to confuse the jury.

-285-

Second, as noted above, materiality should modify "representation or statement," not scheme. Defendants' Proposed Instruction No. 31 correctly does this, but that puts this proposed defense instruction in conflict with Defendants' Proposed Instruction No. 28, which has "material" modify "scheme or artifice."

**Defendants' Proposed Instruction No. 32**

**Count Three: Mail Fraud -- Third Element**

**"Intent to Defraud" -- Defined**

For Count Three, the third element that the government must prove beyond a reasonable doubt is that the particular defendant participated in a scheme to defraud knowingly, willfully and with the specific intent to defraud.

"Knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently. "Willfully" means to act knowingly and purposefully, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

In order to find that a particular defendant acted with the specific intent to defraud required for a conviction on Count Three, you must conclude beyond a reasonable doubt that the defendant acted deliberately with a bad or evil purpose to violate the law, for the purpose of (A) depriving the citizens of the District of Columbia of their intangible right to the honest services of Michael A. Lorusso, or (B) obtaining money or property to which he was not legally entitled from the D.C. government.

Authority:    Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-5.

## Government's Objections to Defendants' Proposed Instruction No. 32

The government respectfully opposes defendants' proposed

instruction as follows:

First, as noted above, the defendants seek to combine the two mail

fraud theories (money and honest services) into this one instruction, which

will only serve to confuse the jury.

Second, as with the selective editing of Judge Sands in Defendants'

Proposed Instruction No. 29, defendants delete without explanation a

considerable portion of the treatise's proposed instructions on "intent to

defraud."[125]  Thus, Judge Sands has the following definition, and the words

in **bold** are ones the defendants' have <u>omitted</u> from their proposal:

"The [third] element that the government must prove beyond a

---

[125]

Although the parties will quite reasonably adapt and edit instructions found in
treatises to fit the facts of a particular case, as the government itself did in its proposed
instructions, the defendants' failure to include straightforward, black-letter law that appears
in the treatise from which it drew its proposed instructions goes beyond adaptation to
material omission.

reasonable doubt is that the defendant participated in **the** scheme to defraud knowingly, wilfully, and with specific intent to defraud.

"'Knowingly' means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

"'Willfully' means to act knowingly and purposely, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or to disregard the law.

**"'Intent to defraud' means to act knowingly and with the specific intent to deceive, for the purpose of causing some financial or property loss to another * * *.**

**"The question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you to determine, like any other fact question. This question involves one's state of mind.**

**"Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.**

**"The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.**

**"Circumstantial evidence, if believed, is of no less value than direct evidence. In either case, the essential elements of the crime must be established beyond a reasonable doubt."[126]**

---

[126]    Judge Sands's proposed instruction then continues on with language setting forth the good-faith defense, which the government proposes as a separate instruction.  See, e.g.,

\*                  \*                  \*

Defendants' proposed instruction is also inappropriate in other ways. Thus, the last paragraph of their proposed instruction would require the government to prove that the defendants acted "deliberately with a bad or evil purpose."  The government does not have to prove the defendants were "evil"—a term that nowhere appears in the mail fraud statute.    Indeed, the Court might sustain objections to any closing argument by the government stating that the defendants were "evil."

---

Government's Proposed Instruction No. 4.18.

**Defendants' Proposed Instruction No. 33**

**Count Three: Mail Fraud -- Fourth Element**

**"Use of the Mails" -- Defined**

The fourth and final element that the government must establish beyond a reasonable doubt for Count Three is that the particular defendant used or caused to be used the federal mails in furtherance of the scheme to defraud. The mailing need not itself contain a fraudulent representation or purpose, or a request for money.

To convict a particular defendant, you must find that the mailing was incident to an essential part of the scheme to defraud, or sufficiently closely related to the scheme to defraud to have furthered, advanced or promoted the scheme to defraud. In order for a mailing to be in furtherance of the scheme to defraud, the scheme's completion or the prevention of its detection must have depended in some way on the charged mailing. Therefore, if you find that the scheme had reached fruition by the time of the charged mailing, or that the purpose of the mailing conflicted with, rather than promoted, the scheme to defraud, or increased the likelihood that the scheme would be detected, then the use of the mails was not in furtherance of the scheme to defraud and you must acquit that defendant.

-291-

Authority:  Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-6; 2B O'Malley et al., §§ 47.04, 47.08; Pereira v. United States, 347 U.S. 1, 8 (1954) (mailing must be "incident to an essential part of the scheme"); United States v. Maze, 414 U.S. 395, 399 (1974) (finding that the evidence must show that the "mailings [or wires] were sufficiently closely related to [the] scheme"); United States v. Frost, 125 F.3d 346, 358-59 (6th Cir. 1997) ("The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud . . . . The mails therefore must serve the purpose of executing or furthering the accomplishment of the scheme."  That is, "the use of the mails . . . ha[s] to be incident to an essential part of the scheme.") (citations and internal quotation marks omitted); Maze, 414 U.S. at 402-03 (holding that mailings were not "sufficiently closely related to respondent's scheme" to form the basis of a mail fraud conviction where the scheme had "reached fruition," and the mailings at issue did no more than increase the likelihood that the defendant's scheme would be detected); United States v. Castile, 795 F.2d 1273, 1278 (6th Cir. 1986) ("where the purpose of a mailing conflicts with, rather than promotes, the scheme to defraud, the mailing will not support a conviction under the mail fraud statute"); United States v. Diggs, 613 F.2d 988, 998-99 (D.C. Cir. 1979) (citing Maze and finding a "sufficiently close nexus" between the mailings and the fraudulent scheme).

## Government's Objections to Defendants' Proposed Instruction No. 33

The government respectfully opposes defendants' proposed instruction as follows:

First, as noted above, the defendants seek to combine the two mail fraud theories (money and honest services) into this one instruction, which will only serve to confuse the jury.

Second, once again, as with the selective editing of Judge Sands in Defendants' Proposed Instruction Nos. 29 and 32, defendants delete without explanation a considerable portion of the treatise's proposed instructions on "intent to defraud." Thus, Judge Sands has the following definition, and the words in **bold** are ones the defendants' have <u>omitted</u> from their proposal:

> "The [third] and final element that the government must establish beyond a reasonable doubt is the use of the mails in furtherance of **the** scheme to defraud. **The use of the mails as I have used it here includes material sent through either the United States Postal Service or a private or commercial interstate carrier.**
>
> "The mailed matter need not contain a fraudulent representation or purpose or request for money.
>
> **"It is not necessary for the defendant to be directly or personally involved in the mailing, as long as the mailing was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating.**
>
> **"In this regard, it is sufficient to establish this element of**

-293-

the crime if the evidence justifies a finding that the defendant caused the mailing by others.  This does not mean that the defendant must specifically have authorized others to do the mailing.  When one does an act with knowledge that the use of the mails will follow in the ordinary course of business or where such use of the mails can reasonably be foreseen, even though not actually intended, then he causes the mails to be used.  The government contends that it was reasonably foreseeable that the mails would be used in the ordinary course of business (e.g., to send confirmations of purchases), and therefore that the defendant caused the use of the mails.

"With respect to the use of the mails, the government must establish beyond a reasonable doubt the particular use charged in the indictment.  However, the government does not have to prove that the mailings were made on the exact date charged in the indictment.  It is sufficient if the evidence establishes beyond a reasonable doubt that the mails were used on a date substantially similar to the date charged in the indictment."

\*                    \*                    \*

In sum, the government requests that, to the extent the Court were to rely heavily on the defendants' preferred source for fraud instructions, it use all the material set forth in the treatise.

The government has additional concerns with defendants' proposed use-of-the-mails instruction.  First, the second paragraph of the instruction seeks to suggest to the jury that a use of the mails must have a far more important role to the scheme than what is called for under the law.  A use of the mails need not affirmatively help the perpetrator carry out a fraudulent

-294-

scheme.  The mailing element may be satisfied by a mailing that is in and of itself routine and innocent.  The element may also be satisfied by a use of the mails that is counterproductive in that it creates a paper trial from which the fraud may be discovered.[127]  The government also need not prove that the use of the mails was intended as the specific or exclusive means of accomplishing the scheme.[128]  These straightforward, black-letter rules of mailings appear nowhere in the defendants' proposed instruction.

The defendants' proposed instructions does, however, instruct the jury that a use of the mails that occurs after the fruition of the scheme.  See Defs. Proposed Instruction No. 33 ¶ 2.  The government respectfully submits that defendants' fruition language will likely be unnecessary.  The Indictment charges three sixteen separate uses of the mails, from June 2001, through June 2002.  The last alleged use of the mails concerns a payment by Douglas Jemal of boots purchased by Jemal for Michael Lorusso during a second trip to Vegas, in May 2002, paid for by Jemal for Lorusso.  That

---

[127]

     United States v. Schmuck, 489 U.S. 705, 710-11 (1989).

[128]

     Eleventh Circuit Criminal Instruction No. 50.1.

payment was sent to American Express on or about June 27, 2002.  As such,

that mailing was well within the timing of the alleged scheme; and thus the

factual dispute will not be about the timing of the mailing and when the

scheme was complete, so much as the intent of the parties.  See, e.g., United

States v. Woodward, 149 F.3d 46, 64-65 (1st Cir. 1998) (affirming mail

fraud conviction of legislator and rejecting argument that mailings to and

from lobbyist's credit card company to pay for items of value purchased for

legislator were outside scope of scheme because scheme had concluded).

## Defendants' Proposed Instruction No. 34

## <u>Mail Fraud Unanimity</u>

As I explained, Count Three of the Indictment charges the Defendants with violating the mail fraud statute. There has been evidence of more than one act upon which a conviction on this count may be based. The government alleges that the Defendants engaged in a scheme or artifice to defraud (A) the citizens of the District of Columbia of the intangible right to honest services of Michael A. Lorusso, *or* (B) the District of Columbia of money or property to which they were not legally entitled, by means of false or fraudulent pretenses, representations or promises. You may find a particular defendant guilty on this count if the government proves beyond a reasonable doubt that the defendant committed either of these acts. However, in order to return a guilty verdict on this count, all jurors must unanimously agree as to at least one of these specific acts. In other words, you must all agree that the defendant you are considering engaged in a scheme or artifice to defraud (A) the citizens of the District of Columbia of the intangible right to honest services of Michael A. Lorusso, *or* (B) the District of Columbia of money or property to which he was not legally entitled, by means of false or fraudulent pretenses, representations or

-297-

promises.

The Indictment alleges a number of separate means or methods by which the Defendants are accused of committing this offense. The government is not required to prove all of the means or methods alleged in Count Three of the Indictment.

However, unless the government has proven the same means or methods was engaged in or employed by the particular defendant to each of you beyond a reasonable doubt, you must acquit that defendant of Count Three.

Authority:        Adapted from Red Book Instr. 2.72; 2A O'Malley et al., §
                  47.17; adapted from 1A O'Malley et al., § 13.07.


**<u>Government's Objections to Defendants'  Proposed Instruction No. 34</u>**

The government respectfully opposes defendants' proposed instruction as follows:

First, as noted above, the defendants seek to combine the two mail fraud theories (money and honest services) into this one instruction, which will only serve to confuse the jury.

Second, defendants' proposed unanimity instruction is confusing in that it calls the government's two mail fraud theories "acts" rather than

theories.  See Defs. Proposed Instruction No. 34 ¶ 1 ("You may find a particular defendant guilty on this count if the government proves beyond a reasonable doubt that the defendant committed either of these acts.").

The government agrees that the jury should be instructed on unanimity.  But it believes that there are two necessary components to this: (1) the jury should be instructed on being unanimous on at least one theory; and (2) the jury should be instructed on being unanimous on at least one mailing.  The defendants' proposal, which is overly complex and wordy, does not accomplish this.  Instead, it purports to instruct the jury on an unexplained and unnecessary requirement that they be unanimous as to the "means and methods" used by the defendants.  As noted above, the jury can be instructed in simple and easily understood terms.

**Defendants' Proposed Instruction No. 35**

**<u>Count Four: Fraud in the First Degree (Felony) --</u>**
**<u>Title 22, D.C. Code, §§ 3221(a), 3222(a)(1)</u>**

In Count Four of the Indictment, Defendant Blake Esherick is charged with committing the offense of Fraud in the First Degree, in violation of Title 22, District of Columbia Code, Sections 3221(a) and 3222(a)(1).

To prove Fraud in the First Degree, as charged in Count Four, the government must prove each of the following elements beyond a reasonable doubt:

First:  That the defendant engaged in a scheme or systematic course of conduct;

<u>Second</u>:  That he did so with the intent to defraud someone or obtain property of another by means of a false or fraudulent pretense, representation or promise;

<u>Third</u>:  That, as a result of that scheme or systematic course of conduct, the defendant obtained property of another or caused another to lose property; and

<u>Fourth</u>:  That the property lost or obtained had a value of $250

-300-

or more.

If you find from your consideration of all the evidence that the government has proven each of these four elements beyond a reasonable doubt, then you should find Defendant Esherick guilty of Count Four.  If, on the other hand, you find from your consideration of the evidence that the government has failed to prove any one or more of these elements beyond a reasonable doubt, then you should find Defendant Esherick not guilty.

I will now define some of these terms and elements for you.

Authority:        Adapted from Red Book Inst. 4.41.


**Government's Objections to Defendants'  Proposed Instruction No. 35**

The government respectfully opposes defendants' proposed instruction as follows:

Count four, the District of Columbia first-degree fraud charge, involves alleges that Blake Esherick engaged in a scheme to defraud the District of Columbia of $38,000.  The government respectfully submits that Government's Proposed Instruction No. 5.2 is preferable in form to Defendant's Proposed Instruction No. 35 because it sets forth Esherick's name in the elements (reflecting that he is the only defendant charged in this

-301-

count) and because it speaks in terms of "money" being "lost or obtained,"

not property.

**Defendants' Proposed Instruction No. 36**

**Count Four: Fraud — First Element**

**"Scheme or Systematic Course of Conduct" -- Defined**

A scheme is any pattern of behavior calculated to deceive persons of ordinary prudence and comprehension.  A systematic course of conduct is a pattern of activity.  It need not exist over an extended period of time, but there must be more than an isolated act.

Authority:        Adapted from Red Book Inst. 4.41.

**Government's Objections to Defendants'  Proposed Instruction No. 36**

The government respectfully opposes defendants' proposed instruction as follows:

The term "scheme" will have to be defined throughout the jury instructions.  The government believes there is no good reason under District of Columbia law to define scheme for first-degree fraud purposes differently than scheme is defined under federal law for mail fraud and wire fraud.  Therefore, the government respectfully requests that the Court adopt Government's Proposed Instruction No. 5.3, which defines "scheme" simply as "any plan or course of action to deceive or cheat a person or entity."  The

-303-

government believes it is particularly important to inform the jury that a scheme need not involve a scheme to deceive a person; it also includes schemes to deceive entities, such as city governments.

**Defendants' Proposed Instruction No. 37**

**Count Four: Fraud -- Second Element**

**"Intent to Defraud . . . By Means of a False or Fraudulent Pretense, Representation or Promise" -- Defined**

To act with intent to defraud means to act knowingly and with the purpose to deceive or cheat. An intent to defraud ordinarily is accompanied by a desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or purpose to cause some loss to some person. The government need not prove that the defendant intended to defraud any particular person, so long as it proves that he intended to defraud any person.

A false or fraudulent pretense, representation or promise is any statement or assertion that concerns a material or important fact or a material or important aspect of the matter in question. The term includes an actual, direct false statement, a half-truth, and a knowing concealment of a fact that is material or important to the matter in question. The defendant must have known that the statement or assertion was untrue when he made or used it, or have made or used it with reckless indifference as to whether it was, in fact, true or false.

A material fact is a fact that would be important to a reasonable person in

making a decision about a particular matter or transaction.

To show that the property was lost or obtained as a result of the scheme or systematic course of conduct, the government must prove that, but for the defendant's scheme or systematic course of conduct, the property would not have been lost or obtained.

Authority:        Adapted from Red Book Inst. 4.41.

## Government's Objections to Defendants' Proposed Instruction No. 37

The government respectfully opposes defendants' proposed instruction as follows:

The terms "intent to defraud" and "false or fraudulent pretense, representation, or promise" need to be defined through the jury instructions. The government respectfully submits that there is no unique need under District of Columbia law to define these terms differently for first-degree fraud than for mail fraud and wire fraud.  Hence the government suggests that the Court adopt the government's proposed instructions on these topics— see Government's Proposed Instruction No. 4.4 ("False or Fraudulent Pretenses, Representations, or Promises"—Defined);

-306-

Government's Proposed Instruction No. 4.5 ("Material"—Defined);

Government's Proposed Instruction No. 4.6 ("Intent to Defraud"—Defined);

and Government's Proposed Instruction No. 4.7 ("Intent"—Explained)—

and that it give those instructions once, when it discusses mail fraud.  Then,

when it comes time to instructing the jury on first-degree fraud and wire

fraud, the Court can simply refer the jury back to the previous definitions.

Given the length of the instructions, it makes sense to simplify and expedite

the instructions where possible and where, as here, doing so will not do

harm to the clarity of the instructions or the requirements of the law.

**Defendants' Proposed Instruction No. 38**

**Count Four: Fraud -- Third Element**

**"Property of Another" -- Defined**

"Property of another" means anything of value owned by someone other than the defendant.

Authority:        Adapted from Red Book Inst. 4.41.

**Government's Objections to Defendants' Proposed Instruction No. 38**

The government respectfully opposes defendants' proposed instruction as follows:

The government believes that, since count four of the Indictment alleges that Blake C. Esherick defrauded the District of Columbia of $38,000, it would be far more simple for the elements to state speak in terms of losing or obtaining money, rather than adding a further abstraction and calling the money property.  Hence the government believes there is no need to define "property of another."

-308-

**Defendants' Proposed Instruction No. 39**

**Count Four: Fraud -- Fourth Element**

**Proof of Value**

You must decide whether the value of the property that Defendant Esherick allegedly obtained from another or caused another to lose was $250 or more. Value means fair market value at the time when and the place where the property was allegedly obtained or lost. Fair market value is the price that a buyer who is willing but not obliged to buy would pay an owner who is willing but not obliged to sell, considering all the ways the property could reasonably be used.

Do not speculate or guess at the value of the property. Base your determination only on the evidence.

Authority:       Adapted from Red Book Inst. 3.05.

**Government's Objections to Defendants' Proposed Instruction No. 39**

The government respectfully opposes defendants' proposed instruction as follows:

The government believes that, since count four of the Indictment alleges that Blake C. Esherick defrauded the District of Columbia of

-309-

$38,000, it would be far more simple for the elements to speak in terms of losing or obtaining money, rather than calling money "property." Hence the government believes there is no need to explain "proof of value." Either the defendant defrauded the District of Columbia of more than $250, or he did not.

## Defendants' Proposed Instruction No. 40

### Fraud Unanimity

As I have already instructed you, Count Four of the Indictment charges Defendant Esherick with Fraud in the First Degree. The Indictment alleges a number of separate means or methods by which the Defendant is accused of committing this offense.

The government is not required to prove all of the means or methods alleged in Count Four of the Indictment.

However, each one of you must agree that the same means or methods alleged in Count Four of the Indictment was, in fact, engaged in or employed by the Defendant in committing the offense of Fraud in the First Degree. While you need not unanimously agree on each means or methods engaged in or employed by the Defendant, you must unanimously agree upon at least one such means or method as one of those engaged in by the Defendant.

In other words, unless the government has proven the same means or methods to each of you beyond a reasonable doubt, you must acquit that defendant of Count Four.

Authority:      Adapted from 1A O'Malley et al., § 13.07.

-311-

### Government's Objections to Defendants' Proposed Instruction No. 40

The government respectfully opposes defendants' proposed instruction as follows:

Contrary to the defendants' assertions, count four of the Indictment does not "allege a number of separate means or methods" by which Blake C. Esherick is to have committed first-degree fraud; rather, it alleges one method: the preparation and submission of one fraudulent invoice. Hence there is no need to instruct the jury on unanimity as to methods and means of the scheme.

**Defendants' Proposed Instruction No. 41**

**Count Five: Wire Fraud -- 18 U.S.C. § 1343**

In Count Five of the Indictment, Defendants Douglas Jemal, Norman Jemal and Blake Esherick are charged with committing the offense of Wire Fraud, in violation of Title 18, United States Code, Section 1343.

To prove Wire Fraud, as charged in Count Five, the government must prove each of the following elements beyond a reasonable doubt:

First:  That the particular defendant knowingly devised and executed a scheme or artifice to obtain money or property to which he was not legally entitled from Morgan Stanley, Defendant Douglas Jemal's partner or the Internal Revenue Service ("IRS"), by means of false and fraudulent pretenses, representations or promises, as alleged in Count Five of the Indictment;

Second:  That the scheme or artifice to defraud was "material," that is, it would reasonably influence a person to part with money or property;

Third:  That the particular defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

-313-

<u>Fourth</u>:  That in furtherance or execution of this scheme, the particular defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce, as specified in Count Five of the Indictment.

If you find from your consideration of all the evidence that all three of these propositions have been proved by the government beyond a reasonable doubt for a particular defendant and a particular count, then you should find that defendant guilty of that particular charge.

If, on the other hand, you find from your consideration of all the evidence that any one of these propositions has not been proved by the government beyond a reasonable doubt for a particular defendant and a particular count, then you must find that defendant not guilty of that particular count.

I will now define some of these terms and elements for you.

Authority:        Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-3; 2A
                  O'Malley et al., § 47.07.

-314-

**Government's Objections to Defendants' Proposed Instruction No. 41**

The government respectfully opposes defendants' proposed instruction as follows:

Defendants' wire fraud instructions would instruct the jury that they must find that the "scheme or artifice was 'material,' that is, it would reasonably influence a person to part with money or property."

The government concurs that, following <u>United States</u> v. <u>Neder</u>, 527 U.S. 1 (1999), materiality is a required element for wire fraud. But, it makes little sense—and it would be confusing to the jury—to think of a "scheme" as being material. The government respectfully submits that the better practice is for "material" to modify "false or fraudulent pretenses, representations, or promises," as proposed in Government's Proposed Instruction No. 6.2-6.3. A jury can easily understand (and be instructed) that certain statements, representations, or promises might be material (in that "they would be of importance to a reasonable person in making a decision about a particular matter or transaction.") See Government's Proposed Instruction No 4.5 (quoting O'Malley <u>et al</u>., 2A Federal Jury Practice & Instructions § 47.13, at 401 (5th ed. 2000). It is a far more difficult and abstract concept to think of a "scheme" being "material."

-315-

Hence the Court should adopt the government's proposed wire fraud instructions.

**Defendants' Proposed Instruction No. 42**

**Count Five: Wire Fraud -- First Element**

**"Scheme or Artifice to Defraud . . . By Means of False or Fraudulent Pretenses, Representations or Promises"  -- Defined**

In order to convict a particular defendant of the offense alleged in Count Five, the government must prove beyond a reasonable doubt the existence of a scheme or artifice to defraud Morgan Stanley, Jemal's partner or the IRS of money or property to which he was not legally entitled, by means of false or fraudulent pretenses.

As I have already instructed you, a "scheme to defraud" is a plan to deprive another of money or property, by trick, deceit, deception or swindle. A statement, representation, claim or document is "false" if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is "fraudulent" if it was falsely made with the intention to deceive.  The failure to disclose information may also constitute a fraudulent representation if a particular defendant was under a legal duty to make such a disclosure, he actually knew such a disclosure ought to be made, and he failed to make such disclosure with the intent to defraud.

-317-

Authority:        Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-4.

### **Government's Objections to Defendants' Proposed Instruction No. 42**

The government respectfully opposes defendants' proposed instruction as follows:

Defendants purport to "adapt" their proposed instruction from a treatise. See Sand <u>et al</u>, 2 Modern Federal Jury Instructions–Criminal ¶ 44.01, Instruction No. 44-4 (2005). But, as noted in connection with some of the defendants' other proposed jury instructions, the defendants have made edits to the standard instructions that are so vast, one-sided, and extreme as to leave a considerable amount of critical explanatory language and supporting context on their cutting-room floor.

Thus, Judge Sands in his treatise has the following definition, and the words in **bold** are ones the defendants' have omitted from their proposal to the Court:

**"This first element is almost self-explanatory.**

**"A 'scheme or artifice' is merely a plan for the accomplishment of an object.**

-318-

"**A scheme to defraud is any plan, device or course of action to obtain money or property * * * by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive persons of average prudence.**

"**'Fraud' is a general term which embraces all the various means by which human ingenuity can devise and which are resorted to by an individual to gain an advantage over another by false representations, suggestions or suppression of the truth, or deliberate disregard for the truth.**

"**Thus,** a 'scheme to defraud' is merely a plan to deprive another of money or property * * * by trick, deceit, deception or swindle.

"**The scheme to defraud is alleged to have been carried out by making false (or fraudulent) statements (representations) (claims) (documents).**

"A statement, representation, claim or document is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.

"A representation or statement is fraudulent if it was falsely made with the intention to deceive.

"**Deceitful statements of half truths or the concealment of material facts, and the expression of an opinion not honestly entertained may also constitute false or fraudulent statements under the statute.**

"**The deception need not be premised upon spoken or written words alone.  The arrangement of the words, or the circumstances in which they are used may convey the false and deceptive appearance.  If there is a deception, the manner in which it is accomplished is immaterial.**

"The failure to disclose information may also constitute a fraudulent representation if the defendant was under a legal,

-319-

**professional or contractual** duty to make such a disclosure, the defendant actually knew such disclosure ought to be made, and the defendant failed to make such disclosure with the intent to defraud.

**"The false or fraudulent representation (or failure to disclose) must relate to a material fact or matter.[129]  A material fact is one which would reasonably be of concern to a reasonable and prudent person in relying upon the representation or statement in making a decision (e.g., with respect to a proposed investment).[130]**

**"This means that if you find a particular statement of fact to have been false, you must determine whether that statement was one that a reasonable person or investor might have considered important in making his or her decision.  The same principle applies to fraudulent half truths or omissions of material facts.**

**"The representations which the government charges were made as part of the scheme to defraud are set forth in paragraph ___ of the indictment, which I have already read to you.  It is not required that every misrepresentation charged in the indictment be proved.  It is sufficient if the prosecution proves beyond a**

---

[129]

As noted above in its response to Defendants' Proposed Instruction No. 28, the government respectfully submits that "materiality" should modify "statement, representation, or promise," not "scheme."  Here, the treatise relied on by the defendants correctly uses the concepts of materiality to modify "false or fraudulent representation"—the same approach suggested by the government.  Interestingly, defendants take this very same approach when they define materiality.  See Defs. Proposed Instruction No. 31 ("A statement or representation is 'material' * * *.").

[130]

In fairness, defendants propose to define materiality outside this particular instruction in its own specific instruction.  See Defendants' Proposed Instruction No. 31.

-320-

**reasonable doubt that one or more of the alleged material misrepresentations were made in furtherance of the alleged scheme to defraud.**

**[    ]**

**"A scheme to defraud need not be shown by direct evidence, but may be established by all of the circumstances and facts in the case."**

\*                    \*                    \*

As noted, the government, which drew in large part from a different treatise for its proposed fraud instructions,[131] naturally submits that its proposed jury instructions are more clear and easily understood (not least because they attempt to avoid terms like "swindle" or "evil").  But if the Court were to chose to draw more from defendants' preferred treatise, the government respectfully requests that it take most if not all of what Judge Sands has to say, and not just what defendants chose.

---

[131] O'Malley et al., 2A Federal Jury Practice & Instructions § 47.03, at 314 (5th ed. 2000)

**Defendants' Proposed Instruction No. 43**

**Count Five: Wire Fraud -- Second Element**

**"Materiality" -- Defined**

I have already instructed you on the definition of a "material"

statement or representation with respect to Count Three.  You should apply

this definition in considering the second element of Count Five as well.


Authority:          Adapted from 1A O'Malley et al., § 16.11; <u>Neder v. United</u>
                    <u>States</u>, 527 U.S. 1, 25 (1999) (holding that materiality of
                    falsehood is an element of the federal mail fraud, wire fraud,
                    and back fraud statutes).


**Government's Objections to Defendants'  Proposed Instruction No. 43**

The government respectfully opposes defendants' proposed

instruction as follows:

Although the government concurs that the Court should not have to

repeat common instructions over and over, the government respectfully

submits that its definition of materiality is preferable.  <u>See</u> Government's

Proposed Instruction No. 4.5 ("A 'material fact' is a fact that would be of

importance to a reasonable person in making a decision about a particular

-322-

matter of transaction.  A false or fraudulent statement, representation, or promise can be material even if the decision maker did not actually rely on the statement, or even if the decision maker actually knew or should have known that the statement was false.  The government need not prove that the scheme to defraud was successful.  Nor must it show that the victim of the scheme was pure of heart or without fault.") (footnotes omitted).

## Defendants' Proposed Instruction No. 44

## Count Five: Wire Fraud -- Third Element

## "Intent to Defraud" -- Defined

With respect to Count Five, the third element that the government must prove beyond a reasonable doubt is that the particular defendant participated in a scheme to defraud knowingly, willfully and with the specific intent to defraud.

As I have already instructed you, "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently. "Willfully" means to act knowingly and purposefully, with an intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law.

In order to find that a particular defendant acted with the specific intent to defraud required for a conviction on Count Five, you must conclude beyond a reasonable doubt that the defendant acted deliberately with a bad or evil purpose to violate the law, for the purpose of obtaining money or property to which he was not legally entitled from Morgan Stanley, Jemal's partner or the IRS.

Authority:        Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-5.

## Government's Objections to Defendants' Proposed Instruction No. 44

The government respectfully opposes defendants' proposed

instruction as follows:

As with the selective editing of Judge Sands in Defendants' Proposed

Instruction Nos. 28, 31, 32, and 42, defendants delete without explanation a

considerable portion of the treatise's proposed instructions on "intent to

defraud."  Thus, Judge Sands has the following definition, and the words in

**bold** are ones the defendants' have <u>omitted</u> from their proposal:

> "The [third] element that the government must prove beyond a
> reasonable doubt is that the defendant participated in **the** scheme to
> defraud knowingly, wilfully, and with specific intent to defraud.

> "'Knowingly' means to act voluntarily and deliberately, rather
> than mistakenly or inadvertently.

> "'Willfully' means to act knowingly and purposely, with an
> intent to do something the law forbids; that is to say, with bad
> purpose either to disobey or to disregard the law.

> **"'Intent to defraud' means to act knowingly and with the
> specific intent to deceive, for the purpose of causing some
> financial or property loss to another * * *.**

> **"The question of whether a person acted knowingly,
> willfully and with intent to defraud is a question of fact for you to**

determine, like any other fact question.  This question involves one's state of mind.

"Direct proof of knowledge and fraudulent intent is almost never available.  It would be a rare case where it could be shown that a person wrote or stated that as of a given time in the past he committed an act with fraudulent intent.  Such direct proof is not required.

"The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them.

"Circumstantial evidence, if believed, is of no less value than direct evidence.  In either case, the essential elements of the crime must be established beyond a reasonable doubt."[132]

\*                    \*                    \*

Defendants' proposed instruction is also inappropriate in other ways.

Thus, the last paragraph of their proposed instruction would require the

government to prove that the defendants acted "deliberately with a bad or

evil purpose."  The government does not have to prove the defendants were

"evil"—a term that nowhere appears in the mail fraud statute.    Indeed, the

---

[132]

Judge Sands's proposed instruction then continues on with language setting forth the good-faith defense, which the government proposes as a separate instruction.  See, e.g., Government's Proposed Instruction No. 4.18.

-326-

Court might sustain objections to any closing argument by the government

stating that the defendants were "evil."

**Defendants' Proposed Instruction No. 45**

**Count Five: Wire Fraud -- Fourth Element**

**"Use of Wires in Interstate Commerce" -- Defined**

For Count Five, the fourth and final element the government must
establish beyond a reasonable doubt is that the particular defendant used or
caused to be used an interstate wire communication in furtherance of the
scheme to defraud. The wire communication must pass between two or
more states, such as, for example, a telephone call or facsimile transmission
by a person in one state to a person in another state. The wire transmission
need not itself contain a fraudulent representation or purpose, or a request
for money.

To convict a particular defendant, you must find that the wire
transmission was incident to an essential part of the scheme to defraud, or
sufficiently closely related to the scheme to defraud to have furthered,
advanced or promoted the scheme to defraud. In order for a wire
transmission to be in furtherance of the scheme to defraud, the scheme's
completion or the prevention of its detection must have depended in some
way on the charged wire transmission. Therefore, if you find that the
scheme had reached fruition by the time of the charged wire transmission, or

that the purpose of the wire transmission conflicted with, rather than

promoted, the scheme to defraud, or increased the likelihood that the

scheme would be detected, then the use of the mails or wire transmission

was not in furtherance of the scheme to defraud and you must acquit that

defendant.


Authority:        Adapted from 2 Sand et al., ¶ 44.01 Instr. 44-6; 2B
                  O'Malley et al., § 47.08; Pereira v. United States, 347 U.S.
                  1, 8 (1954) (mailing must be "incident to an essential part of
                  the scheme"); United States v. Maze, 414 U.S. 395, 399
                  (1974) (finding that the evidence must show that the
                  "mailings [or wires] were sufficiently closely related to [the]
                  scheme"); United States v. Frost, 125 F.3d 346, 358-59 (6th
                  Cir. 1997) ("The federal mail fraud statute does not purport
                  to reach all frauds, but only those limited instances in which
                  the use of the mails is a part of the execution of the fraud . .
                  . . The mails therefore must serve the purpose of executing
                  or furthering the accomplishment of the scheme." That is,
                  "the use of the mails . . . ha[s] to be incident to an essential
                  part of the scheme.") (citations and internal quotation marks
                  omitted); Maze, 414 U.S. at 402-03 (holding that mailings
                  were not "sufficiently closely related to respondent's
                  scheme" to form the basis of a mail fraud conviction where
                  the scheme had "reached fruition," and the mailings at issue
                  did no more than increase the likelihood that the defendant's
                  scheme would be detected); United States v. Castile, 795
                  F.2d 1273, 1278 (6th Cir. 1986) ("where the purpose of a
                  mailing conflicts with, rather than promotes, the scheme to
                  defraud, the mailing will not support a conviction under the
                  mail fraud statute"); United States v. Diggs, 613 F.2d 988,
                  998-99 (D.C. Cir. 1979) (citing Maze and finding a
                  "sufficiently close nexus" between the mailings and the

fraudulent scheme).

## Government's Objections to Defendants' Proposed Instruction No. 45

The government respectfully opposes defendants' proposed

instruction as follows:

As with the selective editing of Judge Sands in many of defendants'

other proposed instructions, defendants delete without explanation a

considerable portion of the treatise's proposed instructions on "intent to

defraud." Thus, Judge Sands has the following definition, and the words in

**bold** are ones the defendants' have <u>omitted</u> from their proposal:

"The [third] and final element that the government must
establish beyond a reasonable doubt is the use of an interstate * * *
wire communication in furtherance of the scheme to defraud.

"The wire communication must pass between two or more
states, **as, for example, a telephone call between New York and
New Jersey. A wire communication also includes a wire transfer
of funds between banks in different states * * *.**

"**The use of the wires** need not contain a fraudulent
representation or purpose or request for money.

"**It is not necessary for the defendant to be directly or
personally involved in the wire communication, as long as the
communication was reasonably foreseeable in the execution of the
alleged scheme to defraud in which the defendant is accused of
participating.**

"In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by others. This does not mean that the defendant must specifically have authorized others to make the call or transfer the funds. When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used. The government contends that it was reasonably foreseeable that the wires would be used in the ordinary course of business (e.g., to transfer funds between banks), and therefore that the defendant caused the use of the wires.

"With respect to the use of the wires, the government must establish beyond a reasonable doubt the particular use charged in the indictment. However, the government does not have to prove that the use of the wires was made on the exact date charged in the indictment. It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date substantially similar to the date charged in the indictment."

\*          \*          \*

In sum, the government requests that, to the extent the Court were to rely on the defendants' preferred source for fraud instructions, it use all the material set forth in the treatise.

The government has additional concerns with defendants' proposed use-of-the-wires instruction. First, the second paragraph of the instruction seeks to suggest to the jury that a use of the wires must have a far more important role to the scheme than what is call for under the law. A use of

-331-

the wires need not affirmatively help the perpetrator carry out a fraudulent

scheme. The wiring element may be satisfied by a wiring that is in and of

itself routine and innocent. The element may also be satisfied by a use of

the wires that is counterproductive in that it creates a paper trial from which

the fraud may be discovered.[133] The government also need not prove that

the use of the wires was intended as the specific or exclusive means of

accomplishing the scheme.[134] These straightforward, black-letter rules of

wirings appear nowhere in the defendants' proposed instruction.

   The defendants' proposed instructions do, however, instruct the jury

that a use of the wires that occurs after the fruition of the scheme. See Defs.

Proposed Instruction No. 45 ¶ 2. The government respectfully submits that

that portion of the defendants' proposed instruction will be unnecessary.

The Indictment charges three separate uses of the wires, in November and

December of 2002. Inasmuch as the charged uses of the wires are part and

parcel of the alleged wire-fraud scheme, it is highly unlikely that there

---

[133]    United States v. Schmuck, 489 U.S. 705, 710-11 (1989).

[134]    Eleventh Circuit Criminal Instruction No. 50.1.

would be any issue as to whether the scheme had "reached fruition" before

December 2002.

## Defendants' Proposed Instruction No. 46

## Wire Fraud Unanimity

As I explained, Count Five of the Indictment charges the Defendants with violating the wire fraud statute. There has been evidence of more than one act upon which a conviction on this count may be based. The government alleges that the Defendants engaged in a scheme or artifice to defraud Morgan Stanley, Jemal's partner and the IRS of money or property to which they were not legally entitled, by means of false or fraudulent pretenses, representations or promises. You may find a particular defendant guilty on this count if the government proves beyond a reasonable doubt that the defendant engaged in a scheme to defraud any one of these parties. However, in order to return a guilty verdict on this count, all jurors must unanimously agree that at least one of these parties was defrauded. In other words, you must all agree that the defendant you are considering engaged in a scheme or artifice to defraud (A) Morgan Stanley, (B) Jemal's partner *or* (C) the IRS of money or property to which he was not legally entitled, by means of false or fraudulent pretenses, representations or promises.

Authority:    Adapted from Red Book Instr. 2.72; 2A O'Malley et al., §
              47.17.

-334-

## **Government's Objections to Defendants' Proposed Instruction No. 46**

The government respectfully opposes defendants' proposed instruction as follows:

Defendants flatly misstate the law. According to the defendants, "in order to return a guilty verdict on [the wire fraud] count, all jurors must unanimously agree that at least one of the parties was defrauded." Defs. Proposed Instruction No. 46. It is black-letter law that mail fraud requires only a scheme to defraud, not—as defendants propose—that defendants' scheme be successful.

Indeed, it is precisely because defendants have blatantly misstated the law that the government urges the Court to give the Government's Proposed Instruction No. 4.10, which informs the jury that it is no defense that someone believes he had a right to the money he sought to obtain through fraud. The government is concerned that, without such an instruction, the defendants may seek to inject such a legally inappropriate defense into the trial.

**Defendants' Proposed Instruction No. 47**

**Counts Six – Eight: Tax Evasion -- 26 U.S.C. § 7201**

Counts Six through Eight of the Indictment charge Defendant Blake Esherick with willfully attempting to evade and defeat the payment of income taxes due and owing by Defendant Esherick in each of calendar years 2001, 2002 and 2003 in violation of Title 26, United States Code, Section 7201.  These counts charge Defendant Douglas Jemal with aiding and abetting this conduct.  I will describe "aiding and abetting" in a few minutes.

In order to sustain its burden of proof on each of these counts of willfully evading and defeating the payment of income taxes, as charged in each of these counts, the government must prove the following three elements beyond a reasonable doubt:

First:  That a substantial income tax was due from Defendant Esherick in addition to that declared on Defendant Esherick's income tax return and that paid by Defendant Esherick;

Second:  That Defendant Esherick undertook an affirmative act to attempt to evade or defeat this additional tax, as detailed in

-336-

the Indictment; and

<u>Third</u>:  That in attempting to evade or defeat such additional

tax, Defendant Esherick acted willfully.

If you find from your consideration of all the evidence that each of

these elements have been proved by the government beyond a reasonable

doubt for a particular count, then you should find Defendant Esherick guilty

of that count.

If, on the other hand, you find from your consideration of all the

evidence that any of these elements has not been proved by the government

beyond a reasonable doubt for a particular count, then you must find

Defendant Esherick not guilty of that count.

I will now define some of these terms and elements for you.

Authority:      Adapted from 2B O'Malley et al., § 67.03; <u>Sansone v.</u>
                <u>United States,</u> 380 U.S. 343, 351 (1965) (requiring
                affirmative act constituting an evasion or attempted evasion
                of the tax).

## **Government's Objection to Defendants' Proposed Instruction No. 47**

The government respectfully opposes defendants' proposed instruction as follows:

1.    The instructions (and other of the defendants' Proposed Tax Instructions) refer to Douglas Jemal solely as an "aider and abettor." In fact, Douglas Jemal and Blake Esherick were specifically charged as "principals, aiders and abettors and co-conspirators."

2.    The defendants' first element requires "a substantial income tax was due" in addition to that declared and paid by Defendant Esherick. The defendants do not provide guidance as to the meaning of "substantial," and without such definition a jury can only be left to wonder what is meant by that term. We submit that the far better instruction as to the first element is: "For the specific calendar year, there existed a tax deficiency related to income taxes due and owing from Blake C. Esherick," with further explanation, as set forth by the government in its Proposed Instruction 7.6 that the defendants attempted to evade a "substantial portion of the tax owed."

**Defendants' Proposed Instruction No. 48**

**Counts Six – Eight: Tax Evasion -- First Element**

**"Substantial Additional Tax" -- Defined**

In order to prove that substantial additional tax was due, the government must prove beyond a reasonable doubt that (1) Defendant Esherick received substantial income in addition to what he reported on his income tax returns for the calendar years 2001-2003 and (2) that there was tax due in addition to what was shown to be due on his returns for those years.

The law provides that funds or property received from certain sources, such as gifts and loans, do not constitute taxable income. Since no income tax is levied on gifts and loans, they are not required to be reported as income.

It is up to you to decide whether certain funds are taxable or nontaxable to Defendant Esherick. In determining whether a payment of money or property to Defendant Esherick is a nontaxable gift or loan, you should look to the intent of the parties at the time the payment was made, particularly the intent of the person making the payment. Such payments are gifts if they proceed from a detached and disinterested generosity, out of

-339-

affection, respect, admiration, charity, or similar impulses.  Such payments

are loans if the parties intended for the recipient to be obligated to repay the

amount of the payments to the donor.  In making this determination, you

must look at all the facts and circumstances in this case.


Authority:        Adapted from United States v. Terrell, 754 F.2d 1139, 1149
                  & n.3 (5th Cir. 1985); Commissioner of Internal Revenue,
                  363 U.S. 278, 285-86 (1960).  See also United States v.
                  Pittman, 194 F.3d 59, 65 (2d Cir. 1999) (approving similar
                  instruction).


## Government's Objection to Defendants' Proposed Instruction No. 48

The government respectfully opposes defendants' proposed

instruction as follows:

The defendants' proposed definitions of loans and gifts are woefully

inadequate and fail to provide guidance to the jury on the other forms of

income at issue.  The Court should adopt the Government's Proposed

Instructions 7.9 through 7.16.

There is no legal basis whatsoever for the transactions at issue to be

considered "gifts," hence excludable from gross income, even if there were

a close relationship between defendants Douglas Jemal and Blake Esherick.

The tax laws make clear that income cannot be evaded by so facile a claim that payments from an employer to an employee are "gifts."

Thus the general language excluding gifts from being considered income is set forth at 26 U.S.C. § 102(a), which provides in part: "General Rule.— Gross income does not include the value of property acquired by gift * * *."  However, ( 102(c) of that provision that gift exception from income does <u>not</u> apply to "any amount transferred by or for an employer to, or for the benefit of, an employee."  See <u>Williams</u> v. <u>Comm'r</u>, 120 Fed. Appx. 289 (10th Cir. 2005) (unreported $25,000 and $35,000 "bonuses" not "gift" from taxpayer's employer, even though they were close personal friends).

Accordingly, not only does the government strenuously object to the defendants' instruction, but we request that the Court instruct the jury as follows.  "As a general matter, the tax laws exclude from gross income 'gifts' that are received by the taxpayer.  However, these tax laws do not exclude from gross income any amounts transferred by an employer to or for the benefit of an employee, even when the employer labels the transfer a 'gift.'"

-341-

**Defendants' Proposed Instruction No. 49**

**<u>Counts Six-Eight: Tax Evasion -- Second Element</u>**

**"Attempt to Evade or Defeat a Tax" -- Defined**

The phrase "attempt to evade or defeat a tax" involves two things: first, the formation of an intent to evade or defeat a tax; and second, willfully performing some act to accomplish the intent to evade or defeat that tax.

The phrase contemplates and charges that Defendant Esherick knew and understood that during each of the calendar years 2001 through 2003, he owed substantially more federal income tax than was declared on his federal income tax return for that particular year and that he tried in some way to avoid that additional tax.

In order to show an "attempt in any manner to defeat or evade income tax," therefore, the government must prove beyond a reasonable doubt that Defendant Esherick intended to evade or defeat the tax due and that Defendant Esherick also willfully did some affirmative act in order to accomplish this intent to evade or defeat the tax.

Authority:        Adapted from 2B O'Malley et al., § 67.04.


## Government's Objection to Defendants' Proposed Instruction No. 49

The government respectfully opposes defendants' proposed instruction as follows:

The government does not object to this instruction, as far as it goes. We submit that the government's proposed instructions are preferable in they (1) it provide examples—directly from the lead case on tax evasion (Spies v. United States, 317 U.S. 492 (1943))—as to what is meant by an act of evasion; (2) it provides for unanimity; and (3) it correctly references both Douglas Jemal and Blake Esherick.

**Defendants' Proposed Instruction No. 50**

**Counts Six-Eight: Tax Evasion -- Third Element**

**"Willfully" -- Defined**

As I have already instructed you, in order to sustain its burden of proof for the crime of tax evasion as charged in Counts Six through Eight of the Indictment, the government must prove beyond a reasonable doubt that Defendant Esherick acted "willfully."

To act willfully means to act voluntarily and deliberately, intending to violate a known legal duty with some element of bad faith or evil intent. The government must prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty. If a defendant has a good faith belief that he is not liable for a tax, he does not act willfully, even if his belief is objectively unreasonable.

Negligent conduct is not sufficient to constitute willfulness.

Authority:       Adapted from 2B O'Malley et al., § 67.20; <u>Cheek v. United States</u>, 498 U.S. 192, 200-01 (1991); <u>Spies v. United States</u>, 317 U.S. 492, 498 (1943); <u>United States v. Murdock</u>, 290 U.S. 389, 398 (1933).

## <u>Government's Objection to Defendants' Proposed Instruction No. 50</u>

The government respectfully opposes defendants' proposed instruction as follows:

The defendants seek to import "evilness" into this instruction on intent.  We do not object to the defendants' second sentence, which defines willfulness in the following terms: "The government must prove that the law imposed a duty on the defendant, that the defendant new of this duty, and that he voluntarily and intentionally violated that duty."  This is a fair definition, and consistent with the government's proposal, to wit: "To act willfully means to act voluntarily and deliberately and intending to violate a known legal duty."

## Defendants' Proposed Instruction No. 51

### Aiding and Abetting

As I have already mentioned, Counts Six through Eight of the Indictment charge Defendant Douglas Jemal with aiding and abetting Defendant Blake Esherick. The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by him through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about

-346-

the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find Defendant Douglas Jemal guilty on Counts Six through Eight unless you find beyond a reasonable doubt that every element of the offense charged in those counts and as defined in these instructions was committed by Defendant Blake Esherick, and that Defendant Douglas Jemal voluntarily participated in the commission of those offenses with the intent to violate the law.

You must unanimously agree upon the specific conduct that Defendant Douglas Jemal knew about and aided and abetted with intent to evade taxes.


Authority:      Adapted from United States v. Teffera, 985 F.2d 1082, 1086
                (D.C. Cir. 1993); United States v. Campbell, 702 F.2d 262,
                265 (D.C. Cir. 1983) ("In order to aid and abet the
                commission of an offense, a defendant must 'associate
                himself' with it, must 'participate in it as in something that
                he wishes to bring about,' and must 'seek by his action to

make it succeed.'") (quoting <u>Nye & Nissen v. United States</u>, 336 U.S. 613, 619 (1949)).


### **Government's Objections to Defendants' Proposed Instruction No. 51**

The government respectfully opposes defendants' proposed instruction because defendants have provided no good reason why the Court should not just give the Redbook Instruction on Aiding and Abetting.  <u>See</u> Redbook Instruction No. 4.02; <u>see also</u> <u>United States</u> v. <u>North</u>, 716 F. Supp. 644 (D.D.C. 1989) (relying on Redbook Instruction No. 4.02).

## Defendants' Proposed Instruction No. 52

## <u>Good Faith</u>

Good faith is a complete defense to all of the charges in the Indictment, because good faith on the part of a defendant is inconsistent with a finding that the defendant acted willfully, corruptly or with specific intent to violate the law, which are essential parts of the charges in each count in this case. The Defendants have no burden to prove that they acted in good faith, because the Defendants have no burden to prove anything in this case. The government must convince you, beyond a reasonable doubt, that each defendant acted willfully, corruptly or with intent to defraud, and, consequently, with a lack of good faith.

While the term "good faith" has no precise definition, it means, among other things, a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another. In considering whether or not a particular defendant acted in good faith, you are instructed that a person who acts on a belief or an opinion honestly held is not punishable merely because the belief or opinion turns out to be inaccurate, incorrect or wrong. An honest mistake in judgment or an error in management does not rise to the level of knowledge and willfulness

required by the statutes under which the Defendants are charged.

In determining whether or not the government has proven that a particular defendant acted in good faith or acted knowingly and willfully to defraud, the jury must consider all of the evidence in the case bearing on that defendant's state of mind.

If the evidence in this case leaves you with a reasonable doubt as to whether a particular defendant acted with the requisite fraudulent intent or in good faith, then you must acquit that defendant.

Authority:       Adapted from 3 Sand et al., ¶ 57.03 Instr. 57-25; 2A
                 O'Malley et al., § 40.16; 2B O'Malley et al., § 62.15;
                 United States v. Casperson, 773 F.2d 216, 223 (8th Cir.
                 1985).

## Government's Objections to Defendants' Proposed Instruction No. 52

The government respectfully objects to the defendants' proposed instruction for the following reasons. The government respectfully submits that its proposed good faith instruction, see Government's Instruction 4.20, is a clear and reasonable statement of the law.

The defendants' proposal misstates the law. Thus, defendants' proposed instruction states that "good faith * * * means * * * an absence of

* * * ill will."  But a defendant can be guilty of bribing a public official or depriving a city of its right to the honest services of a public official even if he has great fondness for the city and has no ill will towards it.  Similarly, the proposed instruction states that "an error in management does not rise to the [requisite] level of knowledge and willfulness"—a technically true but highly misleading statement.  Any deficiencies in defendants' management abilities does not excuse them if they otherwise had a criminal intent.

**Defendants' Proposed Instruction No. 53**

**Theory of Defense**

**[To be submitted at close of the Defendants' case]**

Authority:    Red Book Instr. 5.01 ("When a defense theory finds some support in the evidence and the law, the defendant is entitled to some mention of that theory in the district court's instructions.").

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

—————————————————— )
                                                    )
UNITED STATES                          )
                                                    )
        v.                                          )        Crim. No.  05-359-1, -2, -3 (RMU)
                                                    )
DOUGLAS JEMAL, *et al.*,             )
                                                    )
                Defendants.                    )
—————————————————— )

## LIST OF EXPERT WITNESSES

The Government intends on calling the following individuals as expert witnesses:

1)      Susy Hwang.

        Ms. Hwang is a Computer Forensic Examiner with the Federal Bureau of

Investigation.  She will testify concerning her forensic analysis of certain

computer evidence in this case, including the identification of documents and

other data she recovered or located as a result of these analyses.

2)      Jennifer Abbott.

        Ms. Abbott is a Revenue Agent with the Internal Revenue Service.  She will

testify concerning certain federal income tax calculations.

3)    Thomas Shields.

Mr. Shields is a commercial real estate appraiser who will testify as to his appraisal of a given property that he performed at the request of a lending institution.

4)    Donald Morris.

Mr. Morris is a real estate appraiser, who will testify as to his appraisal of given properties that he performed at the request of the D.C. Government and a lending institution.


Defendants' Objection:

Defendants object to Ms. Abbott's qualifications as a tax expert.

Defendants intend to call the following expert witnesses:

Richard D. Clark, CPA, MBA, MST

- Mr. Clark is a Certified Public Accountant licensed in Colorado, Virginia and the District of Columbia.  He has a Bachelor of Science in Business Management, a Master of Business Administration and a Master of Science in Taxation.  His work experience includes employment by the Internal Revenue Service as an Internal Revenue Agent, a Special Agent and a Group Manager in the Criminal Investigation Division.  In addition, he has been employed as a Tax Manager with Coopers & Lybrand, LLP, as the principal of his own CPA firm and as the Director, Financial Analysis and Risk Assessment at the Public Company Accounting Oversight Board.

- Mr. Clark is expected to testify as to his opinion that the Internal Revenue Service did not lose any tax revenue as a result of the $430,039.08 commission that was paid to MTD out of the "Rollover Account" for tenant improvements.

Bruce G. Dubinsky, MST, CPA, CVA, CFE

- Mr. Dubinsky is a Certified Public Accountant licensed in Maryland and the District of Columbia.  He has a Master of Science in Taxation and holds several other professional designations.  He is the director of the Forensic Accounting and Dispute Analysis Practice for the CPA firm of Klausner Dubinsky + Associates, P.C. in Bethesda, Maryland.

- Mr. Dubinsky is expected to testify on the following topics:

  - Specific transactions related to the Indictment, including the accounting and tax treatment for those transactions by Defendants, Douglas Development Corporation ("DDC") and DDC's independent Certified Public Accounting firm, Grossberg Company, LLP.

  - The proper tax treatment of specific items referenced in the Indictment, and the tax effect of each specific item contained in the Indictment for federal income and gift tax purposes.

  - Professional standards associated with the performance of services by Certified Public Accountants as well as the applicable governing rules for tax preparers practicing before the Internal Revenue Service.

- • Various definitions contained in the Internal Revenue Code.

- • The calculations of taxes allegedly owed as calculated by the Internal Revenue Service and the U.S. Government.

- Mr. Dubinsky is also expected to offer rebuttal testimony as to any matters raised by the government during its case-in-chief relating to those topical areas for which Mr. Dubinsky is qualified as an expert witness, which may include: accounting, taxation, forensic accounting, investment, professional standards for Certified Public Accountants, and accounting practices as related to the real estate development / management / construction industry.

Stephen Goldstein

- Mr. Goldstein is Vice Chairman of Studley, a national real estate firm, and is an expert in all facets of strategic planning and lease and sales transactions.

- Mr. Goldstein is expected to testify as to his opinion that the Master Lease and subsequent Addenda between various D.C. Government agencies and Cayre/Jemal's Gateway were all within market rates for similar commercial

rental space.  He is also expected to opine that the Second Addendum with DHS had slightly more favorable terms for the tenant than the First Addendum.


Oakleigh J. Thorne

- Mr. Thorne has worked in the field of real estate consulting and appraising since 1965.

- Mr. Thorne is expected to testify as to his opinion of the value of the Addison Road property as of August 15, 2001, and the value of the Addison Road property to the District of Columbia as an owner-user as of October 2002.

- Mr. Thorne is expected to testify regarding the relative value of 77 P Street to other properties owned by entities affiliated with Douglas Jemal as of December 31, 2001.  He is also expected to testify as to his opinion on the cash or investment risk of 77 P Street to Douglas Jemal throughout 2001.

-6-

Richard Watkins

- Mr. Watkins is a founding member of Watkins, Meegan, Drury & Company, L.L.C., a CPA firm based in Bethesda, Maryland. He is a Certified Public Accountant licensed in Maryland and practicing in Maryland, the District of Columbia, and Virginia. He has been licensed to practice since 1962, and is a member of the American Institute of Certified Public Accountants and the Maryland Association of Certified Public Accountants. He has a Master of Commercial Science from Benjamin Franklin University and is accredited in Business Valuation by the American Institute of Certified Public Accountants.

- Mr. Watkins is expected to testified as to the following opinions:

  - DDC's accounting department was understaffed and overworked throughout the period from 1999 through 2004.

  - In many companies and businesses, salaries are not purely a function of job title, but often depend on the specific circumstances and personalities of the individual employees.

  - It is common for small businesses to make loans to their employees.

-7-

- The 77 P Street property was not a cash drain on DDC.

- Morgan Stanley did not lose any money as a result of the $430,039.08 commission that was paid to MTD out of the "Rollover Account" for tenant improvements.

Government's Objection:

As noted in connection with the government's motions *in limine*, the government expects to file additional motions *in limine* concerning defendants' proposed experts.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| **v.** ) | **Crim. No.  05-359-1, -2, -3 (RMU)** |
| ) | |
| **DOUGLAS JEMAL, *et al.*,** ) | |
| ) | |
| **Defendants.** ) | |
| ———————————————————) | |

## <u>MOTIONS IN LIMINE</u>

<u>The government has filed four motions *in limine*</u>:

Motion to Limit and Control Direct Examination of Any Character Witnesses

Motion to Preclude Defendants from Introducing Evidence or Arguing that Others in Addition to Michael Lorusso Were Involved in Government Decisions

Motion to (1) Preclude Defendants from Introducing Evidence to Suggest that Michael Lorusso's Actions Benefitted the Public Interest and (2) Preclude Defendants from Eliciting Testimony from Expert Witness as to Reasonableness of 77 P Street Leases

Motion to Preclude Defendants from Mounting Claim-of-Right Defense to Fraud Charges


<u>The Defendants have filed three motions *in limine*</u>:

Motion to Exclude Evidence of Amended Tax Returns or W-2 Forms

Motion to Exclude Evidence of Prior Related Civil Lawsuit and Settlement

Motion to Exclude Evidence of Prior, Unrelated, Settled Vendor/Contractor Lawsuits


Copies of the motions, the oppositions, and the replies thereto (where applicable) follow.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                )
**UNITED STATES**               )
                                )
        **v.**                  )        **Crim. No.  05-359-1, -2, -3 (RMU)**
                                )
**DOUGLAS JEMAL**, *et al.*,     )
                                )
        **Defendants.**         )
_____)

## GOVERNMENT'S MOTION <u>IN LIMINE</u> TO LIMIT AND CONTROL
## <u>DIRECT EXAMINATION OF ANY CHARACTER WITNESSES</u>

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully requests pursuant to Federal Rules of Evidence 402, 403,

405(a), and 611 that the Court take appropriate steps to ensure that any defense character

witnesses do not testify about specific instances of conduct.

Rule 404(a)[1] of the Federal Rules of Evidence provides that a defendant may offer

"[e]vidence of a pertinent trait of character * * *."  Rule 405(a),[2] which sets forth the methods of

proving character, allows questions about specific instances of conduct only on cross

_____

[1]        Rule 404(a) provides, in relevant part:

"**(a) Character Evidence Generally.**  Evidence of a person's character or a trait of
character is not admissible for the purpose of proving action in conformity therewith on a
particular occasion, except:

        (1) **Character of Accused.**  Evidence of a pertinent trait of character offered by
        an accused, or by the prosecution to rebut the same * * *."

[2]        Rule 405(a) provides:

"**(a) Reputation or opinion.**  In all cases in which evidence of character or a trait of
character of a person is admissible, proof may be made by testimony as to reputation or
by testimony in the form of an opinion.  On cross examination, inquiry is allowable into
relevant specific instances of conduct."

examination. Thus, other than through cross examination, or in circumstances not present here,[3] the defense may not present character evidence through direct examinations that elicit testimony recounting specific instances of conduct.

Experience has shown, however, that character witnesses often stray into testimony recounting specific instances of conduct. This is true both for character witnesses called by defendants and those called by the government in rebuttal; and it is not necessarily because such witnesses are intentionally violating the Rules or court orders. Witnesses understandably wish to explain why they hold, or the community holds, someone in high esteem; and one common and persuasive method of justifying such views outside the confines of the Rules of Evidence is to describe specific instances where the person being praised lived up to the honored trait.

The drafters of Rule 405 specifically recognized this problem in precluding specific-instance character testimony on direct examination, noting that

> "of the three methods of proving character * * *, evidence of specific instances of conduct is the most convincing. At the same time, it possess the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time."

Fed. R. Evid. 405, Advisory Comm. Notes to 1972 Proposed Rules.

The Court has the power to ensure that character witnesses do not go beyond allowable evidence into testimony about specific instances of conduct. See McGlaughlin et al.,

---

[3]      Rule 405(b) provides that "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that conduct." That subsection does not apply here. It applies, as its language makes clear, only in cases where character is an essential element, such as in an entrapment defense. See, e.g., United States v. Thomas, 134 F.3d 975, 980 (9th Cir. 1998); see also Shakur v. United States, 32 F. Supp.2d 651, (S.D.N.Y. 1999) ("'Evidence of specific acts is permissible to prove character when the character of a person is an essential element of a charge, claim or defense. The permissive use of evidence of specific acts is regularly misinterpreted by trial lawyers. It is allowed only when character itself is an issue under substantive law * * *. When character is used circumstantially to prove a consequential fact, proof by specific instances is not permitted for practical reasons.'") (quoting Weinstein et al., 2 Weinstein's Federal Evidence § 405.04[4], at 405-41-42 (2d. ed 1997)).

Weinstein's Federal Evidence § 404.11[2][a], at 404-22-24 (2d ed. 2006), ("[T]he trial court retains its traditional discretion to limit the scope of the [character evidence] proof, as by <u>limiting the number of witnesses, or the manner in in which the proof is adduced</u>; or by controlling the order of proof.") (emphasis added) (footnotes omitted).  That power is located in its inherent power and, more specifically, in Rule 611(a), which provides that "[t]he Court shall exercise reasonable control over the mode * * * of interrogating witnesses and presenting evidence * * *."[4]  See Fed. R. Evid. 611(a).

The government therefore respectfully requests that the Court order defense counsel to prepare any character witnesses not to testify about specific instances of conduct and that it admonish any such witnesses outside the presence of the jury that they are not to testify about specific instances of conduct.  Moreover, in the event defense counsel are not able to reign in their character witnesses, the government respectfully requests that, at the very least, the Court order that direct examination of character witnesses be conducted solely through leading questions.  Such questions can be scripted to prevent witnesses from answering anything but acceptable questions; and the Rules specifically contemplate that trial courts may use their power to achieve this result.  Thus, Rule 611(c) specifically contemplates that "[l]eading questions * * * may be necessary to develop the witness' testimony."

---

[4]    The Court also has power under Rule 402 to exclude evidence about specific instances of conduct as legally irrelevant on direct examination.  It also has power under Rule 403 to exclude such evidence as posing a danger of "unfair prejudice, confusion of the issues, or misleading the jury," or on "considerations of "undue delay [or] waste of time * * *."  See Fed. R. Evid. 403.

WHEREFORE, the government's motion should be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By: _____

Mark H. Dubester
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on this 10th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

| | |
|---|---|
| Michele A. Roberts, Esquire | Paul F. Kemp, Esquire |
| Counsel for Douglas Jemal | Counsel for Blake C. Esherick |
| Akin Gump Straus Hauer & Feld LLP | Venable LLP |
| 1333 New Hampshire Avenue, NW | One Church Street, Fifth Floor |
| Washington, D.C. 20036 | Rockville, MD 20850 |

| | |
|---|---|
| Reid H. Weingarten, Esquire | Carol Elder Bruce, Esquire |
| Erik L. Kitchen, Esquire | Lawrence B. Bernard, Esquire |
| Brian M. Heberlig, Esquire | Counsel for Blake C. Esherick |
| Counsel for Douglas Jemal | Venable LLP |
| Steptoe & Johnson | 575 Seventh Street, NW |
| 1330 Connecticut Avenue, N.W. | Washington, D.C. 20004 |
| Washington, D.C. 20036 | |

| | |
|---|---|
| Christopher B. Mead, Esquire | Stanley McK. Brand, Esquire |
| Counsel for Douglas Jemal | Ross A. Nabatoff, Esquire |
| London & Mead | Counsel for Norman D. Jemal |
| 1225 19th Street, NW, Suite 320 | Brand Law Group |
| Washington, D.C. 20036 | 923 15th Street, NW |
| | Washington, D.C. 20005 |

_____
Timothy G. Lynch
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**UNITED STATES**                       )
                                        )
    **v.**           )    **Crim. No.  05-359-1, -2, -3 (RMU)**
                                        )
**DOUGLAS JEMAL, *et al.*,**            )
                                        )
    **Defendants.**   )
_____)

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE*
TO LIMIT AND CONTROL DIRECT EXAMINATION
<u>OF ANY CHARACTER WITNESSES</u>**

    Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick

("Defendants"), through counsel, hereby submit this opposition to the Government's Motion *In*

*Limine* to Limit and Control Direct Examination of Any Character Witnesses ("Gov't Mot. to

Limit Character Witnesses").  As an initial matter, the government's motion is premature, as it is

still more than a month before trial, and Defendants have not yet determined what type of

character evidence, if any, they will seek to offer.  Moreover, Federal Rule of Evidence 405

expressly allows a defendant to introduce character evidence "by testimony as to reputation or by

testimony in the form of an opinion," Fed. R. Evid. 405(a), and the language of the Rule itself

does not foreclose the admissibility of specific instances of conduct on direct examination.  For

these reasons, which are discussed in more detail below, the government's motion should be

denied.

## I.    ARGUMENT

    A criminal defendant is expressly permitted to introduce evidence regarding his

character at trial.  Federal Rule of Evidence 404(a)(1) provides that a defendant may offer

"[e]vidence of a pertinent trait of character," while Rule 405(a) provides that "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." Character evidence is of critical importance to a defense case; in fact, a jury may base an acquittal on character evidence alone. See United States v. Lewis, 482 F.2d 632, 636 (D.C. Cir. 1973); United States v. Wooden, 420 F.2d 251, 253 (D.C. Cir. 1969). See also United States v. Lewin, 467 F.2d 1132, 1139 (7th Cir. 1972) ("an accused has the right to offer evidence of his good character . . . to show that he was unlikely to have acted in the manner and with the intent charged in the indictment"); Michelson v. United States, 335 U.S. 469, 476 (1948) (defendant may present testimony of "the general estimate of his character").

As the government acknowledges, Defendants are clearly entitled to present evidence of their good character at trial. The government's motion presumes, however, that Defendants intend to introduce character evidence that does not fit within the parameters of Rules 404 and 405. As already noted, Defendants have not yet determined what specific evidence, if any, they intend to offer. Therefore, the government's motion is premature and should be denied.[1]

In any event, contrary to the government's argument, Rule 405(b) does not act an as an absolute bar to the admission of specific instances of Defendants' good conduct. The

---

[1] The Court will retain its discretion over the matter and can consider the scope of Defendants' presentation of evidence once the issue is ripe for decision.

With respect to the government's request that the Court to issue an order restricting defense counsel's questioning of character witnesses based on its inherent power and Federal Rule of Evidence 611, see Gov't Mot. to Limit Character Witnesses at 3, Defendants again submit that such an order would be premature at this point in the case. Furthermore, Defendants note that "[a]lthough decisions that a court makes under Rule 611 may indirectly affect whether proof is admitted, the Rule does not provide an independent ground for excluding otherwise-admissible evidence." United States v. Colomb, 419 F.3d 292, 297 (5th Cir. 2005).

advisory committee's note expressly contemplates testimony on direct examination as to "the nature and extent of observation and acquaintance upon which the [witness'] opinion is based." Fed. R. Evid. 405 advisory committee's note.  Moreover, the U.S. Court of Appeals for the Second Circuit has noted a trial court's discretion to permit a defendant to present evidence of specific instances of good conduct when such conduct bears on the defendant's intent to commit the charged offense.  <u>See</u> <u>United States v. Nachamie</u>, 28 Fed. Appx. 13, 21, 2002 WL 108341, at *4 (2d Cir. 2002) (noting that trial court permitted "some testimony as to specific instances of Martinez's charity toward senior citizens, enabling Martinez to argue that (contrary to the government's allegation) Martinez could not have intended 'to take advantage of the elderly'"). Similarly, in this case, testimony relating to specific instances of goodwill exhibited by the Defendants towards, for example, the District of Columbia, would bear on their purported intent to defraud the D.C. Government and its citizens, as alleged in Count Three of the Indictment.

In sum, the Court should deny the government's motion because it is premature and because the Federal Rules of Evidence do not definitively prohibit the introduction of specific instances of conduct on direct examination.

## II.    CONCLUSION

For all of the foregoing reasons, the Court should deny the government's motion to limit Defendants' presentation of character evidence.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: July 17, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. No. 05-359-01, -2, -3 (RMU)** |
| | : | |
| **DOUGLAS JEMAL, ET AL.** | : | |

**GOVERNMENT'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION IN LIMINE TO LIMIT AND CONTROL**
**DIRECT EXAMINATION OF ANY CHARACTER WITNESSES**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully replies to defendants' opposition to the government's motion in limine requesting that the Court take appropriate steps to ensure that any defense character witnesses do not testify about specific instances of conduct.

Defendants object to the government's motion in large part on the ground that it is premature because they "have not yet determined what specific [character] evidence, if any, they intend to offer."  See Defs. Opp. at 1.

But it is clear that this issue should be joined now, for two reasons.  First, despite their protestations to the contrary, defendants fully intend to call character witnesses.  Thus, they have requested that the Court instruct the jury on character witnesses.  See Joint Pretrial Statement. Moreover, in their opposition, they contend that "[c]haracter evidence is of critical importance to a defense case," id. at 2, and that "Defendants are clearly entitled to present evidence of their good character at trial."  Id.

But, second, and more importantly, the defendants put to rest any doubt about whether this issue is ripe because they have fully indicated their intent to flout the plain language of Rule 405.  Thus, defendants brazenly assert that

"in this case, testimony relating to specific instances of goodwill exhibited by Defendants toward, for example, the District of Columbia, would bear on their purported intent to defraud the D.C. Government and its citizens, as alleged in Count Three of the Indictment."

Defs. Opp. at 4.

Rule 405(a) specifically bars the defendants from eliciting direct-examination testimony from their character witnesses about specific instances of conduct, including "specific instances of goodwill." That point is not contested anywhere—not in the Rule, not in case law, not in the treatises—except, that is, in defendants' opposition. At most, they begrudgingly concede that "Rule 405(b) [sic] does not act as an absolute bar to the admission of specific instances of Defendants' good conduct." See id. at 3.

But, although in life absolutes are rare, Rule 405(a) does provide such an absolute bar to specific-instances testimony in a case like this, where character is not an essential element of a defense or charge.[1] Rule 405(a), which sets forth the methods of proving character, allows questions about specific instances of conduct only on cross examination. Thus, the drafters to Rule 405 note that "testimony of specific instances is not generally permissible on the direct examination of an ordinary opinion witness to character." Fed. R. Evid. 405(a), Advisory Comm. Note to 1972 Proposed Rules.

The defendants don't merely seek to skirt Rule 405(a); their effort to elicit testimony about "specific instances of goodwill" reveals an intent to ignore the heartland of this Rule. It would not be unreasonable to expect that they would offer the Court binding or at least persuasive authority for their "interpretation" of the Rule.

---

[1]     Significantly, defendants do not contend in their opposition that character is relevant to an essential element or charge, such that Rule 405(b) would apply.

-2-

But defendants' two proffered authorities cannot bear the weight of their extreme position.  First, defendants mistakenly seek refuge in language from the drafters of the Rule, who state that "opinion testimony on direct ought * * * [to] be confined to the nature and extent of observation and acquaintance upon which the opinion is based."  See Defs. Opp. at 3 (quoting Fed. R. Evid. 405(a), Advisory Comm. Note to 1972 Proposed Rules).  But the drafters plainly did not contemplate that testimony laying a foundation for the opinion would in itself allow the witness to testify as to specific instances of good conduct; for in the very same paragraph cited by defendants the drafters reaffirm that "testimony of specific instances is not generally permissible on direct examination * * *."  See Fed. R. Evid. 405(a), Advisory Comm. Note to 1972 Proposed Rules.

Character witnesses may discuss the basis of opinion or the basis for their knowledge of a witness's reputation; but, they may do so only by speaking in general terms, not by testifying as to "specific instances of goodwill" as the defendants have indicated they intend to proceed.

The defendants' second authority—an unpublished, nonbinding case—provides no grounds to avoid the clear language of Rule 405(a).  In that case, the Second Circuit affirmed a variety of fraud convictions in rejecting a contention that the trial court erred by excluding character witness testimony that was proffered as demonstrating the defendant's "good deeds and charitable works."  United States v. Nachamie, Case No. 00-1806, 28 Fed. Appx. 13, 20-21, 2002 WL 108341 (2d Cir. Jan. 25, 2001).  In doing so, the Court of Appeals noted that the trial court "did not err in limiting evidence of [defendant's] character" because character "was not an essential element of any of the charges against her."  See id.; see also Rule 405(b) (allowing evidence of specific instances of conduct only when relevant to an "essential element of a charge, claim, or defense").  The Second Circuit further rejected the defense challenge on the

ground that it was factually inaccurate; for the trial court <u>had</u> allowed "some testimony as to specific instances" of defendant's charity where "[t]he government did not object to such testimony * * *." <u>Nachamie</u>, 28 Fed. Appx. at 21 & n.1.

But, contrary to defendants' assertions, see Defs. Opp. at 3, <u>Nachamie</u> does <u>not</u> stand for the proposition that trial courts have discretion to ignore the plain language of Rule 405(a) and allow specific instances of conduct. It only holds that the trial court did not err in that case when it admitted such evidence in the absence of objections and where the defense argument on appeal was that the trial court should not have placed <u>any</u> limit on specific-instance testimony.

<u>Nachamie</u> does not help the defendants here because the government <u>does</u> object to such testimony, and the Rule forbids it.

Indeed, the unpublished opinion in <u>Nachamie</u> is, if anything, consistent with the government's position and, even more importantly, consistent with the law of the Second Circuit. See, <u>e.g.</u>, <u>United States</u> v. <u>O'Connor</u>, 580 F.3d 38, 43 (2d Cir. 1978). In <u>O'Connor</u>, the Second Circuit rejected an argument that the trial court had erred in precluding the defense from asking a witness about specific instances of the defendant's good character. <u>Id</u>. As the Court held,

> "[d]efense counsel had already elicited in general terms from the witness the information now sought to be made more specific. Much more importantly, the evidence should have been excluded in the first instance. Even the meat packers themselves could not have properly testified, over objection, as to appellant's non-receipt of bribes in their plants, <u>because such testimony would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts</u>."

<u>Id</u>. The Second Circuit does not allow what the defendants have stated they intend to do. No circuit does; and that's because the plain language of Rule 405 bars such efforts.

          *              *              *

When the government filed its motion <u>in limine</u>, it fully expected that the issue would be viewed as uncontroversial. After all, the language of Rule 405(a) is straightforward, and the

authorities are clear.  But, given the defendants' stated intent to ignore the plain language of the

Rule, the government is left with no choice but to ask the Court to order, pretrial, that any and all

direct examination questions of defense character witnesses be done strictly through leading

questions specifically designed to avoid defense witnesses (or their counsel) from straying into

specific instances of conduct.  The government has, accordingly, drafted a revised proposed

order to that effect.

WHEREFORE, the government's motion should be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By:    _____

Mark H. Dubester
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

## CERTIFICATE OF SERVICE

I hereby certify that, on this 18th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. No. 05-359-01, -2, -3 (RMU)** |
| | : | |
| **DOUGLAS JEMAL, ET AL.** | : | |

**GOVERNMENT'S MOTION <u>IN</u> <u>LIMINE</u> TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUING THAT OTHERS IN ADDITION TO <u>MICHAEL LORUSSO WERE INVOLVED IN GOVERNMENT DECISIONS</u>**

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully moves pursuant to Federal Rules of Evidence 402 and 403 for an order precluding the defendants from seeking to admit evidence or suggesting to the jury that there was no bribery, conspiracy, or fraud because Michael Lorusso lacked complete, unilateral power to provide City contracts or things of value to Douglas Development Corporation.

The law is clear that it is no defense that a bribe recipient lacks the power to provide a requested official action, service, or contract. Thus, a bribe-giver "may be convicted of giving a bribe even when the recipient * * * <u>lacked the power to</u>" do what the bribe-giver requested. <u>United States v. Anderson</u>, 509 F.2d 312, 322 (D.C. Cir. 1974) (emphasis added), <u>cert. denied</u>, 420 U.S. 991 (1975); <u>United States v. Gjieli</u>, 717 F.2d 968, 973 (6th Cir. 1983) (bribery law applies to "bribers who erroneously perceived that the duties of a public official would give that official the authority to accomplish the desired act."); <u>United States v. Dorri</u>, 15 F.3d 888, 890 (9th Cir. 1994) (approving instruction that it was "not a defense to the crime of bribery * * * that the demand of something of value was made by the public official to influence an official act * * * that the public official did not have the authority, power, or ability to perform the act for which the thing of value was demanded or sought" (first deletion in text; second deletion added)).

These principles hold true even when a bribe recipient is a single member of a multi-member government board, agency, or legislative body.  See United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997) (affirming fraud conviction involving bribery of single official in multi-member decision making body); Shushan v. United States, 117 F.2d 110, 115 (5th Cir. 1941) (affirming mail fraud convictions for scheme involving bribery of two members of board of commissioners where "the fact that the official who is bribed is only one of several and could not award the contract by himself does not change the character of the scheme").

Despite the clear law on this issue, defendants have indicated their intent to suggest to the jury that there was no bribery, fraud, or conspiracy because other government officials were involved in any decision or action taken by Mr. Lorusso.  Thus, defense counsel stated:

> "We believe * * * that there is a bunch of exculpatory evidence out there that suggests that many of the officials in the District of Columbia, not Lorusso, handled and approved these transactions and more than that, that these transactions were important to the District of Columbia, that they benefitted from these transactions and, indeed, they got full value from the transactions.
> * * *
> We need to show who communicated with whom to put the lie to the allegation that Lorusso was the public official to get [a certain act] done."

United States v. Jemal, et al, Crim. No. 05-359 (RMU), Transcript of Motions Hearing, March 20, 2006, at 16.

The natural course of the trial will make clear that individuals in the D.C. government were involved in various degrees in Lorusso's decisions and actions.  As examples, the attorneys for the (then) Office of Corporation Counsel reviewed certain of the leases for legal sufficiency (and not for financial merits).  Similarly, some of the agency directors or other personnel were involved in the decision to move their agencies.  At trial, the Government will naturally seek to prove that the defendants perceived Lorusso as having the apparent authority to take steps on

their behalf, and indeed, the facts will demonstrate that Lorusso was a critical, if not the only,

D.C. government official involved in leasing decisions or other acts affecting the defendants.

But as the case law cited above makes clear, defendants are not permitted to argue

directly or indirectly that it is a defense that Lorusso lacked the power to take acts for the

defendants.

The government therefore respectfully requests that the Court order (1) that the defense

not be permitted to argue or suggest that it is a defense that Lorusso lacked the ability to

accomplish, by himself, some of the acts taken by the D.C. government; and (2) that the defense

not be permitted to elicit testimony or other evidence that would, by its natural terms, tend to

support such an argument, without a proffer by the defense and without leave of the Court.

WHEREFORE, the government's motion should be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


By:    _____
       Mark H. Dubester
       Timothy G. Lynch, D.C. Bar No. 456506
       Assistant United States Attorneys
       555 4th Street, NW
       Room 5233
       Washington, D.C. 20530
       (202) 353-4862

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 10th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 05-359-01, -2, -3 (RMU)** |
| | : | |
| **DOUGLAS JEMAL, ET AL.** | : | |

### GOVERNMENT'S MOTION IN LIMINE TO
### (1) PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE TO SUGGEST THAT MICHAEL LORUSSO'S ACTIONS BENEFITTED THE PUBLIC INTEREST AND (2) PRECLUDE DEFENDANTS FROM ELICITING TESTIMONY FROM EXPERT WITNESS AS TO REASONABLENESS OF 77 P STREET LEASES.

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully requests pursuant to Federal Rules of Evidence 402 and 403 that the Court (1) preclude the defendants from introducing evidence attempting to demonstrate that the acts of Michael Lorusso related to Douglas Development Corporation were beneficial to the public interest in general or the District of Columbia in particular, and (2) preclude the defendants from introducing expert testimony that the D.C. government leases at 77 P Street were commercially reasonable.[1]

The law is clear that it is no defense that the defendant intended to influence an official act that was lawful or even desirable or beneficial to the public interest. See Sand et al., Modern Federal Jury Instructions (2004), Inst. 16-6, at p. 16-13. Similarly, O'Malley-Grenig-Lee, Federal Jury Practice and Instructions (5th ed. 2000) § 27.11 provides:

---

[1] There may be other instances at trial where the principles set forth in this pleading have force in precluding lay or expert opinion tending to show the city got a "good deal" as part of a defense. This pleading specifically mentions the proposed expert testimony that defendants noticed the Government in their expert disclosures.

> "It is not a defense to the crime of bribery as charged in [the Indictment] that the [offer] * * * of anything of value was made [to] * * * the public official to influence an official act which is actually lawful, desirable, or even beneficial to the public."

See also United States v. Dorri, 15 F.3d 888, 890 (9th Cir.), cert. denied, 513 U.S. 1004 (1994) (approving instruction that it was "not a defense to the crime of bribery * * * that the demand of something of value was made by the public official to influence an official act which is actually lawful, desirable or even beneficial to the public * * *. " (first deletion in text; second deletion added) (citing 2 Devitt & Blackmar, Federal Jury Practice & Instructions §§ 25.11, 25.12 (4th ed. 1990)).

Bribery requires the corrupt intent to influence a public official in the performance of official acts.  Permitting the defense to introduce affirmative evidence that Michael Lorusso's actions in connection Douglas Development Corporation benefitted the City, or expert testimony that the 77 P Street leases were "good" for the City, would inject purely irrelevant issues into the trial.

This is not an academic issue.  The defense has informed the government that they intend to call Stephen Goldstein, vice chairman of a national real estate firm, as an expert to testify that the 77 P Street leases were within market rates for comparable commercial real estate at that time.

But such testimony has no business being admitted in a bribery trial.  The bribery charge focuses on whether the defendants provided things of value to corruptly influence a public official.  The motive of the defendants is of course at issue, and the Government intends on proving that Douglas Jemal would be enriched by many millions of dollars by the various transaction in this case.  However, whether the 77 P Street lease terms procured through bribes were "unreasonable" is neither an element of the offense nor relevant to a recognized defense.

Accordingly, such evidence is legally irrelevant and should be excluded under Rule 402 of the Federal Rules of Evidence.

This evidence also should be excluded under Rule 403. The defendants seek to inject an unnecessary and potentially complicated factual issue—indeed, an issue that they believe is so complex that they need an expert to explain their position to the jury—where the issue, as noted, has absolutely no relevance to the elements of the offense. The potential for jury confusion is manifest and such a witness has no place consuming precious trial resources.

WHEREFORE, the government's motion should be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


By:    _____
       Mark H. Dubester
       Timothy G. Lynch, D.C. Bar No. 456506
       Assistant United States Attorneys
       555 4th Street, NW
       Room 5233
       Washington, D.C. 20530
       (202) 353-4862

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 10th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                )
**UNITED STATES**               )
                                )
    **v.**   )          **Crim. No.  05-359-1, -2, -3 (RMU)**
                                )
**DOUGLAS JEMAL**, *et al.*,     )
                                )
       **Defendants.**  )
_____)

**DEFENDANTS' CONSOLIDATED OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUING THAT OTHERS IN ADDITION TO MICHAEL LORUSSO WERE INVOLVED IN GOVERNMENT DECISIONS AND GOVERNMENT'S MOTION *IN LIMINE* TO (1) PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE TO SUGGEST THAT MICHAEL LORUSSO'S ACTIONS BENEFITTED THE PUBLIC INTEREST AND (2) PRECLUDE DEFENDANTS FROM ELICITING TESTIMONY FROM EXPERT WITNESS AS TO REASONABLENESS OF 77 P STREET LEASES**

        The government has filed two motions *in limine* asserting that if Defendants corruptly intended to influence Lorusso, it does not matter <u>legally</u> that he acted in the public interest, negotiated market-term leases, or was just one of many decision-makers.  However, if Lorusso was just one of many decision-makers, acted in the public interest, and negotiated market-term leases, it is significantly less likely <u>factually</u> that Defendants risked their reputations, business, and liberty in attempts to bribe Lorusso, less likely that Defendants understood that they had improperly influenced Lorusso, and less likely that Defendants had the corrupt intent to commit the offenses charged in the Indictment.  In criminal trials the Defendants' rights to present evidence disproving corrupt intent always come first.  The

government's arguments about the insufficiency of legal defenses belong in jury instruction requests, not motions *in limine*.[2]

## I.    INTRODUCTION

The Indictment alleges, in substantial part, that the Defendants provided various things of value to then Deputy Director of the District of Columbia's Office of Property Management Michael Lorusso ("Lorusso") in order to influence, or induce Lorusso to perform, a series of official acts relating to (a) the District's lease of and subsequent unconsummated effort to purchase a vehicle impound lot at 4800 Addison Road, Capitol Heights, Maryland, and (b) the District's lease of, and payment of invoices related to tenant improvements at, commercial office space in a building at 77 P Street, N.E., Washington, D.C.  See Indictment at 5-8 (¶¶ 15-16), 14-15 & 17 (¶ 4).  The evidence the government seeks to preclude Defendants from offering at trial should be admitted, as it goes to the essential elements of the offenses alleged, and will form a necessary and crucial part of the defense case.

---

[2] After receiving the government's Jencks package for Lorusso, it appears that the government has an obligation under D.C. Rule of Professional Conduct 3.8 ("Special Responsibilities of a Prosecutor") to concede that Lorusso was not improperly influenced.  The Jencks package confirms that Defendants and Lorusso never agreed, either explicitly or implicitly, that in exchange for any of the items of value alleged in the Indictment, Lorusso would perform any of the official acts listed in the Indictment.  At the pretrial hearing addressing Defendants' Motions to Dismiss, government counsel made the stunning admission that Lorusso had never agreed to do anything for the Defendants as a *quid pro quo*.  As a result of that admission, defense counsel wrote a letter to AUSA Dubester asking him comply with his obligations under Rule 3.8 to disclose "any evidence or information that the prosecutor knows or reasonably should know tends to negate the guilt of the accused or mitigates the offense . . . ."  See March 10, 2006 letter from Christopher B. Mead to AUSA Mark H. Dubester, attached as Exhibit 1 to this Opposition.  That letter specifically asked government counsel to disclose that the Defendants never asked for any favors, and Lorusso never agreed or intended to do any of the official acts listed in the Indictment in return for any items of value from the Defendants.  Defendants request that the Court ask government counsel to confirm that he has no proof of any *quid pro quo*, and reconsider Defendants' Motions to Dismiss when the government concedes what it should have in the briefing on those motions.

## II.     ARGUMENT

### A.     Evidence Regarding Other D.C. Government Officials

Defendants are entitled to show that individuals other than Lorusso were involved in decisions relating to Douglas Development Corporation ("DDC") because such evidence directly relates to Defendants' intent.  See, e.g., United States v. Hurn, 368 F.3d 1359, 1363 (11th Cir. 2004) ("a defendant must generally be permitted to introduce evidence directly pertaining to any of the actual elements of the charged offense" and "evidence pertaining to collateral matters that, through a reasonable chain of inferences, could make the existence of one or more elements of the charged offense . . . more or less certain").

Counts One and Two of the Indictment charge Defendants with conspiring to bribe and bribing Lorusso.  In order to prove that Defendants committed the offense of bribery, the government must prove beyond a reasonable doubt the following three elements: (1) Defendants directly or indirectly promised, offered, or gave something of value to Lorusso; (2) Defendants acted with intent to influence a particular future official act; and (3) Defendants acted corruptly, that is, with the purpose of accomplishing either an improper end result, or a lawful result by some unlawful method or means.  See Criminal Jury Instructions for the District of Columbia, Instr. 4.83 (4th ed. 2002); Fifth Circuit District Judges Association Pattern Jury Instructions (Criminal Cases), Instr. 2.12 (2001).  Thus, the government must prove at trial that Defendants had the corrupt intent necessary to satisfy the second and third elements of the offense.  The corrupt intent requirement "is in the nature of a *quid pro quo* requirement; that is, there must be 'a specific intent to give . . . something of value *in exchange* for an official act.'" United States v. Alfisi, 308 F.3d 144, 149 (2d Cir. 2002) (quoting United States v. Sun-Diamond Growers of Cal., 526 U.S. 398, 404-05 (1999)).  Evidence from which the jury could infer that

Defendants did not have this corrupt intent is therefore crucial to Defendants' case and should be allowed at trial.[3]

The government's case with respect to Defendants' alleged bribery of Lorusso in exchange for particular official acts benefiting DDC is completely circumstantial. Accordingly, evidence that other individuals in the D.C. Government had some role in making decisions that benefited DDC is critical because it bears on Defendants' intent in providing things of value to Lorusso. If there was little or no possibility that Lorusso could make a decision affecting DDC unilaterally, that is evidence from which the jury could infer that it is less likely that Defendants would seek to bribe Lorusso. The government has acknowledged in its motion that other individuals were in fact "involved in various degrees in Lorusso's decisions and actions." Government's Motion *in Limine* to Preclude Defendants from Introducing Evidence or Arguing that Others in Addition to Michael Lorusso Were Involved in Government Decisions ("Gov't Mot. to Preclude Evid. of Others") at 2. For example, the government points out that "the attorneys for the (then) Office of Corporation Counsel reviewed certain of the leases for legal sufficiency" and "some of the agency directors or other personnel were involved in the decision to move their agencies." Id. Yet the government now unfairly seeks to limit the Defendants' ability to establish these facts.

_____

[3] For the same reasons, Defendants will argue at trial that they provided things of value to Lorusso based on friendship or a personal relationship with him because such evidence tends to show that Defendants did not have the requisite intent needed to violate the bribery statute. See Defendants' Proposed Jury Instruction No. 25 (Bribery -- Alternative Purpose) (citing United States v. Frega, 179 F.3d 793, 807 (9th Cir. 1999) (approving instruction that "[a] gift or favor bestowed on a [public official] solely out of friendship, to promote good will, or for motive wholly unrelated to influence over official action does not violate the bribery statutes") and United States v. Sawyer, 85 F.3d 713, 741 (1st Cir. 1996) ("we think the jury needs to be told specifically that the defendant has not violated the bribery component of the Travel Act . . . if his intent was limited to the cultivation of business or political friendship")).

The government clouds the issue by arguing that "it is no defense that a bribe recipient lacks the power to provide a requested official action, service or contract." Id. at 1. But Defendants do not intend to present this evidence as an absolute defense to the bribery charges against them, and therefore the authority relied upon by the government is inapposite. Rather, Defendants seek to show that many individuals working for the District reviewed and approved the transactions at issue because such evidence will assist the jury in determining Defendants' intent in giving things of value to Lorusso. A defendant "is entitled to have the jury consider this [type of evidence], not as a complete defense like duress but as bearing on the specific intent required for the commission of bribery." United States v. Barash, 365 F.2d 395, 401-02 (2d Cir. 1966) (jury should have been instructed regarding threats of economic harm made by public official to defendant).

Finally, evidence that other D.C. Government officials were involved in decisions affecting DDC will also assist the jury in evaluating Lorusso's credibility as a witness. For example, testimony of other D.C. Government employees about the timing of certain decisions and Lorusso's role in the decision-making process may contradict Lorusso's testimony on those same subjects. Thus, this evidence will be a necessary component of the jury's consideration of the entire case at trial.

For these reasons, the Court should allow Defendants to present evidence that other individuals associated with the District of Columbia were involved in making the decisions involving DDC at issue in the instant case.

B.     **Evidence Regarding Benefit to the Public Interest and Reasonableness of the 77 P Street Street Leases**

Defendants should also be permitted to introduce evidence that the District benefited from the transactions at issue in the case, as well as expert testimony relating to the commercial reasonableness of the 77 P Street leases. Again, the government's motion misses the mark by arguing that "it is no defense [to bribery] that the defendant intended to influence an official act that was lawful or even desirable or beneficial to the public interest." Government's Motion *in Limine* to (1) Preclude Defendants from Introducing Evidence to Suggest that Michael Lorusso's Actions Benefitted the Public Interest and (2) Preclude Defendants from Eliciting Testimony from Expert Witness as to Reasonableness of 77 P Street Leases at 1. As with the evidence relating to other D.C. Government officials, Defendants do not seek to establish an absolute defense, but will instead offer this evidence as circumstantial proof bearing on their intent as to the alleged bribery of Lorusso.

Moreover, evidence that the transactions at issue were beneficial to the District and/or commercially reasonable in the context of the D.C. real estate market directly relates to whether Defendants had the intent to defraud the D.C. Government, as alleged in Count Three of the Indictment. See Indictment at 5-8 (¶¶ 15-16), 14-15 & 17 (¶ 4). Like the offense of bribery, the offense of mail fraud requires that the government prove specific intent on the part of the defendant. See 2 Leonard B. Sand et al., Modern Federal Jury Instructions - Criminal ¶ 44.01 Instr. 44-3 (Matthew Bender); 2 Kevin F. O'Malley et al., Federal Jury Practice & Instructions - Criminal § 47.03 (5th ed. 2000) (government must prove "that the particular defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud"). Therefore, evidence of the commercial

value and reasonableness of the transactions should be admitted as circumstantial evidence from which the jury could infer that Defendants did not have the requisite specific intent to defraud.

Defendants' proposed expert testimony is of particular importance in this respect. Defendants have disclosed to the government that they will seek to offer the testimony of Stephen Goldstein, the Vice Chairman of Studley, a national real estate firm.[4]  Mr. Goldstein is expected to testify that the leases and subsequent addenda between various D.C. Government agencies and Cayre/Jemal's Gateway for the space at 77 P Street were all within market rates for similar commercial space.  This testimony is necessary because proof demonstrating the reasonableness of the leases is relevant to an actual element of the offense of Mail Fraud -- Defendants' specific intent to defraud the D.C. Government.  It is self-evident that, all things being equal, the D.C. Government would seek to enter into commercially reasonable or valuable transactions.  The decision to enter into such transactions would not require any inducement or fraud on Defendants' part because of their objective value to the District.  Therefore, evidence that the transactions at issue were valuable or commercially reasonable necessarily bears on whether Defendants had the specific intent to defraud the D.C. Government.  Courts have recognized that, because of the difficulty of proving a defendant's actual mental state, a defendant should be allowed to introduce evidence from which the jury could infer his mental state.  See, e.g., Hurn, 368 F.3d 1365 ("Because proof demonstrating the 'reasonableness' of the defendant's beliefs [in tax case] was therefore indirectly relevant to an actual element of the offense ('willfullness') through a short chain of inferential reasoning, the defendant had the constitutional right to introduce it.") (citing and discussing United States v. Lankford, 955 F.2d

---

[4] Mr. Goldstein's qualifications are described in more detail in Defendants' Expert Disclosure.

1545, 1551 (11th Cir. 1992)).  Similarly, Defendants should be permitted to introduce evidence

relating to the value and/or commercial reasonableness of the transactions at issue.

## III.    CONCLUSION

For the foregoing reasons, the Court should deny the government's motions and

allow Defendants to present evidence relating to their intent at trial.


Respectfully submitted,


_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  July 17, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA　　　：
　　　　　　　　　　　　　　　　　：
　　　　v.　　　　　　　　　　　：　　Crim. No. 05-359-01, -2, -3 (RMU)
　　　　　　　　　　　　　　　　　：
DOUGLAS JEMAL, ET AL.　　　　：

GOVERNMENT'S REPLY TO
DEFENDANTS' CONSOLIDATED OPPOSITION
[SET FORTH IN DEFENDANT'S FILING DOCUMENT 88]
 TO GOVERNMENT'S MOTIONS IN LIMINE

The United States, through its attorney, the United States Attorney for the District of

Columbia, respectfully submits this response to Defendants' Consolidated Opposition to

Government's Motions in Limine, as set forth in Document 88.[1]

I .　Reply to the Defendants' Opposition to the Government Motion
In Limine related  to the "Involvement of Others" Defense

The issue as to the latitude of the defendants to elicit testimony – on direct or on cross –

that other individuals in the city Government were involved in the decisions made by Lorusso is

likely to be joined witness-by-witness.   The government has recognized that others were

involved.  Nonetheless, the fundamental legal principle must still pertain:   it is no defense to the

charge of bribing Lorusso that others may have been involved in some of the decisions in which

he played a part, or that he lacked the power, by himself, to carry out acts for which he was

bribed.  To the extent the defendants directly or indirectly attempt to elicit evidence related to the

involvement of others, the government will request the Court to instruct and remind the jury

---

[1]　　　The full caption is:  Defendants' Consolidated Opposition to Government's
Motion in Limine to Preclude Defendants from Introducing Evidence or Arguing That Others in
Addition to Michael Lorusso Were Involved in Government Decisions and Government's
Motion in Limine to (1) Preclude Defendants from Introducing Evidence to Suggest That
Michael Lorusso's Actions Benefitted the Public Interest and (2) Preclude Defendants from
Eliciting Testimony from Expert Witness as to Reasonableness of 77 P Street Leases.

clearly and in no uncertain terms of the applicable law making such evidence irrelevant. Moreover, defense counsel should be cautioned from implying in tone or in context in opening statement that the involvement of others is in any way a defense.

### II.  Reply to the Defendants' Opposition to the Government Motion In Limine Related  to the "D.C. Government Benefitted/Lease Terms were Reasonable" Defense.

The defendants persist in claiming their right to introduce testimony that the leases at issue "benefitted" the District of Columbia and were "commercially reasonable."  The defendants concede it is not a defense to the bribery charges, but instead say they will offer this as "circumstantial proof" bearing on their intent, though they do not explain the difference–for such evidence can bear on intent only if it is probative of non-culpable intent, and the law soundly rejects this inference.

The essence of defendants' argument is that the government's proof of their intent to bribe the D.C. Government is in some way negated if they can show that they did not, at the same time, intend to commit fraud in the lease terms as well.  But there is no logic to linking these two concepts, because it is clear that bribes can be made to influence "commercially reasonable" transactions.  As but one example, suppose the sales representative for a military equipment manufacturer proposed to sell $1 billion of weapons to the United States Army, and in doing so bribed the government's contracting official by paying him $100,000.  According to the defendants, it would be relevant to the defense to the charge of bribery that: 1) the government "benefitted" from the arms purchases, and 2) the terms of the sale price were otherwise "commercially reasonable," that is, that the government was not overcharged.  According to the defendants, in the face of such charges, an accused should be able to introduce evidence of what a great deal the government got (that is, the "commercial reasonableness" of the transactions), and how valuable the arms were to the national security (that is, how the government

-2-

"benefitted"), because, as defendants seem to imply, why would the company bribe a government official unless there were fraud, overcharging, and other harms to the government at the same time?

This example is apt. In this case, Douglas Jemal stood to gain about $100 million in leasing income, and stood to be able refinance a construction loan and obtain cash to pay off debts as a result of leasing 77 P Street in full. Moreover, he is not the only landlord in town. As with the above example, it is irrelevant if the D.C. Government may have "benefitted" from this transaction or obtained "commercially reasonable" lease terms, just as it would be irrelevant in the prior example if the United States "benefitted" from the military equipment or obtained the military equipment at "commercially reasonable" terms, if the evidence otherwise demonstrated the defense contractor obtained the contract through a bribe.

Fundamentally, the crime of bribery is designed to ensure that the processes of government decision-making – such as the decisions to lease office space – are not corrupted by improper inducements. Indeed, one can only imagine the outrage of defendant Douglas Jemal if he were to learn that he lost out on efforts to lease real estate to the D.C. Government to another real estate contractor who bribed the Deputy Director of the D.C. Government's Office of Property Management. It would hardly be a comfort to Mr. Jemal, and hardly a defense at the bribery trial of the real estate contractor who obtained the city lease through bribes, were it to be established that notwithstanding the corruption of the contracting process, the resulting lease terms were "commercially reasonable" and the city thereby "benefitted." To the contrary, the crime is complete when the bribe is paid or promised. In this case, therefore, it is truly of academic interest that an "expert" 5 years after the fact has concluded the city "benefitted" from the 77 P Street leases. The lack of relevance to this testimony is clear, and its potential to

confuse the jury compels the conclusion that whatever probativeness it may possess – and we maintain it possesses <u>none</u> whatsoever – is far outweighed by its prejudice, consumption of time, and potential to confuse the jury.  The Court should not allow such testimony in the trial.

Thus, for reasons set forth in the Government's proposed instructions, neither the defendants' proposed "benefit to the government" evidence nor its proposed "commercial reasonableness" theory is a defense, and the admission of such evidence is absolutely contrary to law as it relates to the bribery charges.

Having essentially conceded this evidence is not admissible in the bribery case, the defendants seek to introduce it in connection with the Mail Fraud charges.  But this fails because the defendants are not charged with Mail Fraud in connection with the lease terms.

In this regard, the heart of the defendants' argument consists of three illogical, inaccurate, and misleading assertions used to support the ultimate unfounded conclusion they urge on this Court.  The government takes them in turn:

- **Defendants argue**: "[P]roof demonstrating reasonableness of the leases is relevant to an actual element of the offense of Mail Fraud – Defendants' specific intent to defraud the D.C. Government."

   **Government's response**:  In truth and in fact, contrary to the implication suggested by the defendants, neither Mail Fraud theory set forth in the Indictment charges that the defendants overcharged the D.C. Government in connection with 77 P Street leases;  it is no defense to the charge that the defendants intended to defraud the D.C. Government in connection with one charged transaction that they did not intend to defraud in connection with another.

- **Defendants' second sentence**:  "It is self-evident that, all things being equal, the D.C. Government would seek to enter into commercially reasonable or valuable transactions."

   **Government's response**:  This is true as far as it goes, but it is incomplete:  what the D.C. Government wants – and is entitled to as a matter of law – is a fair process, consisting of arms length bargaining by public officials "free from deceit, favoritism, bias, self-enrichment, self-dealing and conflict of interest." Indictment at 16.  The defendants may wish to strike the balance so that a jury should be able

to  weigh the benefits of "commercial reasonableness" against the harm of a
government for sale.  Fortunately, the laws, as enacted by Congress and the
Courts, treat the resulting "reasonableness" of the transaction as irrelevant.

- **Defendants' third sentence**:  "The decision to enter into such transactions would
not require any inducement or fraud on Defendants' part because of their
objective value to the District."

   **Government's response**:  If this were the case, no automobile or computer
   manufacturers would offer rebates, no clothing stores would offer discounts,
   indeed no seller of merchandise would ever seek to "induce" a purchaser to part
   with his or her money by negotiating discounts, rebates, or, in this case bribes,
   because of the "objective value" of the items to the purchaser.  According to the
   defendants, they should be permitted to argue to the jury that, so long as the terms
   of the transaction are, at the end of the day,  within the realm of "commercial
   reasonableness" the "decision to enter such transactions [by the Government]
   would not require any inducement."  Not only is this argument illogical, but we
   submit that the Court can easily conclude it flies in the face of human experience.

- **Defendants' conclusion**:   Therefore, evidence that the transactions at issue were
valuable or commercially reasonable necessarily bears on whether Defendants
had the specific intent to defraud the D.C. Government.

   **Government's response**:  Because the prior three steps in the defendants'
   argument are so profoundly flawed, the conclusion is flawed as well.

Indeed, the government submits that the true state of the law is precisely contrary to the

assertion advanced by the defendants, and indeed,  "evidence that the transactions at issue were

valuable or commercially reasonable" in the context of the 77 P Street leases has absolutely no

relationship whatsoever to "whether Defendants had the specific intent to defraud the D.C.

Government" in connection with the other acts at issue.

*      *      *

Finally, we urge the Court to treat with caution the self-serving and bootstrapping

assertions that the contested evidence at issue in this Motion "will form a necessary and crucial

part of the defense case;" Consolidated Opposition at p. 2, or "a necessary component of the

jury's consideration of the entire case at trial," Id. at p.5, or that certain testimony is of

-5-

"particular importance."  Calling inadmissible evidence "important" or "crucial" does not render it admissible, and such labels add nothing to the defendants' arguments.  The government is on solid ground; it has cited black letter law and standard jury instructions for the principles on which it relies.

Although the defendants have argued in their Motions in Limine that the Government's offers of proof of certain issues (such as amended returns, proof that Douglas Development was facing a barrage of law suits from unpaid vendors) will invite a parade of horribles, threatening "mini-trials" and the use of precious Court resources, it is the defendants that seem determined to introduce evidence, including complicated expert opinion, the admission of which flies squarely in the face of settled law.  The government certainly recognizes the right of the defendants to present their case.  The government simply seeks that the Court hold the defendants to the presentation of evidence, no matter how complex, which, if fairly admitted, would actually set forth a defense, notwithstanding the defendants' claims that such evidence is "important."

WHEREFORE, the Government respectfully requests that the Court Grant Government's

Motions in Limine to (1) Preclude Defendants from Introducing Evidence to Suggest That

Michael Lorusso's Actions Benefitted the Public Interest and (2) Preclude Defendants from

Eliciting Testimony from Expert Witness as to Reasonableness of 77 P Street Leases.  .

RESPECTFULLY SUBMITTED,

KENNETH L. WAINSTEIN
DC Bar No. 451058.
UNITED STATES ATTORNEY

By:    _____
       MARK H. DUBESTER
       ASSISTANT UNITED STATES ATTORNEY
       DC Bar No. 339655
       TIMOTHY G. LYNCH
       ASSISTANT UNITED STATES ATTORNEY
       555 Fourth Street, N.W., Room 5917
       Washington, D.C.  20530
       Ph. (202) 514-7986

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 18th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 05-359-01, -2, -3 (RMU)** |
| | : | |
| **DOUGLAS JEMAL, ET AL.** | : | |

### GOVERNMENT'S MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM MOUNTING CLAIM-OF-RIGHT DEFENSE TO FRAUD CHARGES

The United States of America, through its attorney, the United States Attorney for the District of Columbia, respectfully moves pursuant to Federal Rules of Evidence 402 and 403 for an order precluding the defendants from seeking to introduce evidence that no person or entity was harmed by the alleged frauds, from arguing that point directly to the jury, or in seeking to leave that impression with the jurors. That type of evidence or argument is commonly described as a "claim-of-right" defense, and courts have uniformly rejected efforts by defense counsel to inject such a defense into federal fraud trials.

A defendant is not entitled to resort to fraud as a means of "self-help" debt collection; and, for that reason, a defendant may not argue that he should not be convicted for a fraudulent scheme because the money he sought to obtain through fraud was legitimately owed to him. As explained by the Second Circuit:

> "If [petitioner's] theory of self-help were the law, anyone who believed that he was legally entitled to benefits from a pension plan, or an insurance policy, or a government program, but who was concerned that he or she might nevertheless be denied such benefits, would be given carte blanche simply to lie to obtain those benefits. Such a course of action would often be much easier than pursuing legal remedies through civil actions in court, and would guarantee success as long as the misrepresentation remained undiscovered. We will not encourage people to lie to obtain benefits rather than pursue their rights in civil actions. Such controversies may be resolved by civil suit or settlement, but cannot be won by using lies and deception."

United States v. Gole, 158 F.3d 166, 168-69 (2d Cir. 1998) (affirming conviction for mail fraud in rejecting claim trial court erred by preventing defense from raising claim-of-right defense), cert. denied, 526 U.S. 1078 (1999).   Though the Second Circuit referenced certain benefits frauds, the same reasoning applies to the submission of fraudulent loan requests or fraudulent invoices to obtain monies from the government:  that there may be off-setting obligations from the institutional victim to the defendant is irrelevant and does not excuse otherwise criminal conduct.

      The appropriate remedy, then, and the one consistently followed by federal trial courts, is to preclude such evidence or argument from reaching the jury.  See United States v. Martin, 798 F.2d 308, 310 (8th Cir. 1986) (affirming fraud conviction where trial court denied defense motion to present defense that fraudulent transaction sought to obtain legitimately owed funds); United States v. Vitello, No. CR.03-555, 2004 WL 2496877, at *5-*8 (E.D. Pa. Nov. 2, 2004) (granting government motion in limine to preclude defense from presenting claim-of-right defense in fraud trial); see also United States v. Casey, 951 F.2d 892, 894 (8th Cir.1991) (affirming mail fraud and tax evasion convictions and rejecting defendant's claim that he was not guilty of fraud because he had $200,000 in unreimbursed expenses from the victim, and rejecting defendant's claim that he was not guilty of tax evasion because the government allegedly owed him $15,000), cert. denied, 504 U.S. 944 (1992); United States v. Richman, 944 F.2d 323, 330 (7th Cir.1991) (affirming mail and wire fraud convictions in rejecting defense claim that mail fraud requires "'that the defendant receive or intend to receive money or property in excess of an amount [he was] entitled to [receive].'") (quoting United States v. Ranke, 873 F.2d 1033, 1040 (7th Cir. 1989)).

Not only should claim-of-right evidence or argument be excluded under Rule 402 of the Federal Rules of Evidence as legally irrelevant as a defense to a fraud charge; it should be excluded under Rule 403 on the ground that it presents a "danger of unfair prejudice, confusion of the issues, or misleading the jury, [and] by considerations of undue delay [and] of time * * *." Fed. R. Evid. 403.

WHEREFORE, the government's motion should be granted.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY

By: _____
Mark H. Dubester
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on this 10th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| UNITED STATES ) | |
| ) | |
| v. ) | Crim. No.  05-359-1, -2, -3 (RMU) |
| ) | |
| DOUGLAS JEMAL, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S
MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM
MOUNTING CLAIM OF RIGHT DEFENSE TO FRAUD CHARGES**

In a typical criminal case, the Defendant tries to exclude or minimize prosecution
evidence about the harms suffered by victims.  In a telling indication of the weakness of its fraud
case, the government has filed a motion asking the Court "to preclude the defendants from
seeking to introduce that no person or entity was harmed by the alleged frauds . . . ."[5]  The
government's motion is wholly without merit.  The government has proposed jury instructions
acknowledging its burden to prove the Defendants' "desire or purpose to bring about some gain
or benefit to [themselves] or some other person or by a desire or a purpose to cause some loss to
some person or entity."  See, e.g., Government's Proposed Jury Instruction No. 4.6.  That no
"person or entity" suffered any damage is obviously relevant to the Defendants' intent, and to the
materiality of any alleged misrepresentations.

The government cites cases for the proposition that a defendant cannot use fraud
as self-help in collecting a debt that he would not otherwise recover.  If that is the government's

_____

[5] Government's Motion *In Limine* to Preclude Defendants from Mounting Claim-of-Right
Defense to Fraud Charges ("Gov't Motion") at 1.

concern, its motion is unnecessary.  The defense contends that every invoice submitted by

Douglas Development Corporation ("DDC") was done in good faith, without fraudulent intent,

and with the belief that DDC should and would be paid.  Defendants will not contend at trial that

it was permissible to submit a fraudulent invoice on one transaction because the D.C.

Government owed DDC money from a different transaction.

## I.    ARGUMENT

The government's motion principally relies on United States v. Gole, 158 F.3d

166, 168-69 (2d Cir. 1998), for the proposition that "a defendant may not argue that he should

not be convicted for a fraudulent scheme because the money he sought to obtain through fraud

was legitimately owed to him."  Gov't Mot. at 1.  That sentence overstates the holding in Gole;

comparing Gole to other Second Circuit cases not cited by the government illustrates the limits

of the government's argument.

Defendant Gole was a retired New York City firefighter.  He received disability

payments from the New York City Fire Department Pension Fund ("the Fund").  The Fund

calculated limits on outside income ("the Safeguard Amount") for disabled firefighters according

to a complicated formula.  The firefighters union disputed the way the Fund calculated the

Safeguard Amount.  Gole intentionally understated his outside income on forms submitted to the

Fund.  At trial, Gole admitted that he lied on the forms in order to keep his outside income under

the Safeguard Amount, but claimed that he believed the Fund had improperly calculated the

Safeguard Amount, and believed he was legally entitled to the benefits he collected.  The trial

judge instructed the jury that it was not a defense that Gole thought the Safeguard amount was

improperly calculated.  The Second Circuit found that instruction proper in the circumstances,

and affirmed Gole's conviction.

By contrast, the Second Circuit reversed the conviction of another disabled firefighter in United States v. Rossomando, 144 F.3d 197 (2d Cir. 1998). Rossomando admitted that he knowingly understated his outside income, but contended that he had been in a hurry to complete the forms, and, "based on his mistaken understanding of the applicable Safeguard Limitation -- allegedly obtained from speaking to union personnel and other Fire Department employees -- he believed that his outside earnings did not even approach, much less exceed, the level at which the Pension Fund would be entitled to reimbursement." 144 F.3d at 198.

The trial judge gave a good faith instruction, but qualified it as follows:

> In considering whether or not the defendant acted in good faith, you are instructed that a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. No amount of honest belief on the part of the defendant that the scheme would not ultimately result in a financial loss to the New York City Fire Department or its Pension Fund will excuse fraudulent actions or false representations by him to obtain money, provided, of course, that the government proves beyond a reasonable doubt that the defendant acted with the specific intent to defraud.

Id. at 199 (emphasis omitted).

The Second Circuit reversed Rossomando's conviction, holding: "We conclude that the Court's initial charge posed a genuine risk of confusing the jury into believing that it would be proper to convict Rossomando of mail fraud without finding that that he contemplated harm to the Pension Fund . . . ." Id. at 200-201 (citing United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987) ("Only a showing of intended harm will satisfy the element of fraudulent intent.")).

As the Rossomando and Starr cases illustrate, knowingly submitting an inaccurate claim for payment is not enough, standing alone, for criminal liability under the mail and wire fraud statutes. A common sense example illustrates the dangers of the government's sweeping

language.  Suppose a lawyer represents a corporate client in two separate litigation matters, and the client requires the lawyer to segregate his hours and submit separate bills for each of the two matters.  The lawyer's secretary prepares a bill for the first matter, but on the heading mistakenly says that the bill is for the second matter.  The lawyer notices the mistake, but is in a hurry to get the bill out, and believes the hours charged are legitimate and he is entitled to payment.  The lawyer mails the bill to the general counsel's office.

Under the theory of the government's motion *in limine*, the lawyer has knowingly submitted a false statement to obtain money.  The lawyer is not a felon, not just because the knowingly false statement was immaterial, but because the lawyer did not have fraudulent intent -- he did not intend to harm the company or obtain money that he was not entitled to receive.  He thought the invoice should and would be paid, regardless of any inaccuracies.  But the government in this case apparently would not allow the lawyer to introduce evidence that he thought he was entitled to payment, and would argue that the jury should be told that such a good faith belief was not a defense.

On the other hand, if the lawyer believed that the company owed him $5,000 from a previous bill that the general counsel disputed based on poor performance, the lawyer could not make up a false bill for $5,000 with fictional hours and submit it for payment.  That is the self-help fraud that the mail and wire fraud statutes forbid.  Defendants will not present such a "set-off" defense.

The additional cases cited by the government are entirely consistent with this distinction.  Indeed, the second case cited by the government, United States v. Vitillo, No. CR 03-555, 2004 WL 2496877 (E.D. Pa. Nov. 2, 2004), made the crucial point that a "claim of right" defense fails when it is just a "post hoc justification for the alleged misconduct."  Id. at *6.

-4-

<u>Vitillo</u> was a government contracting fraud case alleging padded hours. The government filed a motion *in limine* seeking to exclude expert accounting testimony that Vitillo's companies were actually entitled to more money than they were paid. The district court excluded such expert testimony offered as a post hoc "set-off," noting that such evidence was not a defense if the defendants knowingly falsified hours. <u>Id.</u> *8. However, the district court expressly admitted expert testimony that the companies' hourly billing system was riddled with mistakes, holding: "The accountants' testimony is relevant to establish the fact that there were numerous mistakes made in the formulation of the bills submitted, and that Defendants lacked the specific intent to commit the violation of [18 U.S.C. Section] 666." <u>Id.</u> at *9.

The government's additional cases all fit the pattern of attempted post hoc "set-off" defenses, or frauds perpetrated to collect otherwise uncollectible debts, rather than invoices submitted to collect money that the defendant honestly believed should and would be paid, regardless of any inaccuracies in bills. <u>See</u> <u>United States v. Casey</u>, 951 F.2d 892 (8th Cir. 1991) (attempt to withdraw guilty plea to Medicaid fraud; "set-off" claim that doctor was owed money for Medicaid claims that he did not submit did not negate element of guilty plea that he committed fraud on bills he did submit); <u>United States v. Richman</u>, 944 F.2d 323 (7th Cir. 1991) (inapplicable here, because case did not involve claim of right defense, but instead held that attorney who bribed insurance adjuster had defrauded insurance company of money and property by implicitly depriving insurer of the money paid to employee in bribes).

## II.    CONCLUSION

For all of the foregoing reasons, the Court should deny the Government's Motion

*In Limine* to Preclude Defendants from Mounting Claim-of-Right Defense to Fraud Charges.


Respectfully submitted,


_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: July 17, 2006

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 05-359-01, -2, -3 (RMU) |
| | : | |
| DOUGLAS JEMAL, ET AL. | : | |

## GOVERNMENT'S NOTICE OF INTENT
## TO FILE ADDITIONAL MOTIONS IN LIMINE

The Government respectfully gives notice to the Court that it is likely to file additional motions in limine.

In the course of the exchange of materials between the parties in connection with the preparation of the Joint Pretrial Statement, the defense has put the government on notice of certain of its proposed expert witnesses. Although the government was able to address one of the proposed experts in one of its Motions in Limine (related to the "commercial reasonableness" of certain leases), time did not permit the filing of such motions related to other proposed expert testimony for inclusion in the Joint Pretrial Statement. In addition, as of the date of the filing the Joint Pretrial Statement, that is, July 18, 2006, the government has not received a single page of discovery from the defendants. It is certainly likely that, upon review of the defendants' discovery, the government will discern issues the defendants seek to pursue which are inadmissible or should otherwise be excluded under the various rules of evidence.

Thus, the government respectfully submits that these is a compelling explanation for the government to file subsequent motions in limine. See Standing Order for Criminal Cases, ¶ 9.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
UNITED STATES,                  )
                                )
        v.                      )        Crim. No.  05-359-1, -2, -3 (RMU)
                                )
DOUGLAS JEMAL, *et al.*,         )
                                )
            Defendants.         )
_____)

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF AMENDED TAX RETURNS OR W-2 FORMS

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, hereby move this Court to preclude the government from admitting into evidence any amended tax returns or W-2 forms in support of Counts Six through Eight of the Indictment (the "Tax Evasion Counts").  The Court should exclude such evidence pursuant to Federal Rules of Evidence 403 and 407 as evidence of subsequent remedial measures that would unfairly prejudice the Defendants and result in needless complication of the trial.

I.      INTRODUCTION

        The Tax Evasion Counts charge Defendants Blake Esherick and Douglas Jemal with tax evasion based on certain payments from Douglas Development Corporation ("DDC") to Mr. Esherick or on his behalf that the government contends should have been reported as income by Mr. Esherick.  The Indictment alleges that the unreported compensation consisted of payments to Mr. Esherick's ex-wife, payments to Mr. Esherick, rent-free housing, payments for an automobile and payments to credit card companies.  Many of the payments at issue were recorded on the books and records of DDC as loans.  Defendants contend that such payments

were in fact loans, and that the other payments at issue were intended to be either loans or gifts that are not taxable compensation to Mr. Esherick.

In 2005, after learning about the nature of the government's investigation, Defendants, at the direction of their former counsel in an effort to settle this matter and convince the government not to bring charges, decided to resolve certain issues in favor of the government and file amended tax returns and W-2s. The amended tax returns and W-2s impute interest income to Mr. Esherick for the loans he received from DDC and also characterize other payments, such as housing and automobile expenses, as compensation to Mr. Esherick. In addition, DDC stopped making loans to Mr. Esherick and increased Mr. Esherick's salary. Notwithstanding these remedial measures, the government charged Defendants Esherick and Douglas Jemal with tax evasion.

The government has made clear that it intends to offer evidence of amended tax returns and/or W-2 forms at trial. The government first indicated its intent to offer such evidence in its Notice of Intent to Introduce Evidence Under Fed. R. Evid. 404(b) ("404(b) Notice").[6] Defendants, in their Motion *In Limine* to Exclude Evidence Alleged in the Government's Notice of Intent to Introduce Rule 404(b) Evidence ("Defendants' Motion *In Limine*"), asked the Court to exclude such evidence on the basis that, <u>inter alia</u>, it constituted evidence of subsequent

---

[6] Specifically, the government contended that the following evidence was "inextricably intertwined" with the charged offenses and therefore not subject to Rule 404(b):

> Alleged efforts to assist Defendant Esherick in the evasion of taxes in 1998 through 2000 and 2004 -- years prior and subsequent to the years covered by the Tax Evasion Counts. 404(b) Notice at 4; and

> Alleged actions to increase Defendant Esherick's reported compensation in 2005, and the payment of certain obligations by Defendant Esherick that had been paid previously by DDC -- subsequent to the last tax year covered by the Tax Evasion Counts. <u>Id.</u> at 4-5.

remedial measures, and is therefore prohibited by Rule 407.[7]  See Defendants' Motion *In Limine*

at 14-18.  The government filed an opposition brief in response to Defendants' motion, claiming

that amended tax returns have been "routinely" admitted in tax evasion cases.  See Government's

Opposition to Defendants' Motion *In Limine* to Exclude Evidence Alleged in Government's

Notice of Intent to Introduce Rule 404(b) Evidence at 8.  At the March 7, 2006 Motions Hearing

before the Court, counsel for Douglas Jemal argued that the amended returns constituted

subsequent remedial measures which should be excluded both for public policy reasons and

because their admission would result in unnecessary complication of the trial.  Transcript of

Mar. 7, 2006 Motions Hearing ("Tr.") 23.  In response, the government reiterated its intent to

introduce the amended tax returns at trial, comparing the Defendants' conduct in filing the

returns to "an attempt to basically return the money to [the] bank after they robbed the

bank . . . ."  Tr. 32.

---

[7] Rule 407 provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.  This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407.

The government has included on its preliminary list of trial exhibits[8] three of Defendant Esherick's amended tax returns and three amended W-2 forms.  The government has also requested, by a subpoena issued to Douglas Development Corporation on June 8, 2006, "all records which itemize and/or otherwise provide the calculations for all components of the additional income reflected in the amended W-2s for Blake Esherick issued for calendar years 2001, 2002, 2003 and 2004."[9]  Thus, it is clear that the government intends to offer both the amended tax returns and W-2 forms at trial.  For the reasons set forth below, the Court should exclude Government Exhibits 30 (Amended 2003 Tax Return for Blake Esherick), 32 (Amended 2002 Tax Return and W-2 Form for Blake Esherick), 33 (Amended 2001 Tax Return and W-2 Form for Blake Esherick), and 34 (Amended 2004 W-2 Form for Blake Esherick), as well as any other amended tax returns or W-2 forms offered by the government for admission at trial.[10]

## II.    ARGUMENT

The Court should preclude the government from introducing evidence regarding efforts on the part of the Defendants to take remedial measures by amending tax returns and W-2 forms after being placed on notice of the government's investigation.  The amended tax returns and W-2 forms are irrelevant to establishing Defendants' intent at the time they engaged in the

---

[8] Because the government has not yet disclosed its final exhibit list, Defendants do not know whether the government intends to maintain the numbering system used in its post-Indictment production of documents to Defendants.  For purposes of this motion, however, Defendants will reference the exhibits at issue using the government's present numbering system.

[9] The amended W-2s were prepared at the direction of counsel in anticipation of litigation.  Defendants anticipate that counsel for DDC will assert the work product doctrine over the records that itemize or provide the calculations for the additional income reflected in Mr. Esherick's amended W-2s.

[10] Defendants also continue to seek the exclusion of the evidence proffered in the government's 404(b) Notice.  The Court did not rule on Defendants' Motion *In Limine* to exclude such evidence at the initial motions hearing in this case.

conduct alleged in the Tax Evasion Counts.  Moreover, allowing the government to introduce such evidence creates perverse incentives and penalizes the Defendants for efforts to address the concerns of government investigators.  Finally, even if such evidence is deemed relevant, the minimal probative value of the evidence is far outweighed by the risk of unfair prejudice to the Defendants and needless complication of the trial.

An amended tax return is not admissible as proof of the defendant's purported fraudulent intent in submitting the original tax return.  As explained by the U.S. Court of Appeals for the Second Circuit in an analogous case, the filing of an amended tax return is "not an admission of fraud" and is actually encouraged by the taxing authorities.  United States v. Dyer, 922 F.2d 105, 108 (2d Cir. 1990) (rejecting government's claim that a taxpayer's filing of an amended tax return establishes fraudulent intent with respect to the original tax return).  The court held that "[a]t most, filing an amended return indicates that the taxpayer *now* believes he was mistaken at the time he filed the original return; in no way does it shade that minimal assumption toward proof of the requisite fraudulent intent" when filing the original return.  Id. See also Santopietro v. United States, 948 F. Supp. 145, 154 (D. Conn. 1996) (stating that "the filing of an amended return is not an admission of fraud and that it can only support an inference of a mistake"), aff'd in part, vacated in part, 166 F.3d 88 (2d Cir. 1999), overruled in part on other grounds by Sabri v. United States, 541 U.S. 600 (2004).  Similarly, in this case, any evidence of amended tax returns or W-2 forms is irrelevant to proving whether the Defendants willfully intended to evade taxes when preparing or filing the original documents.

Even if the evidence could be deemed relevant, its minimal probative value is substantially outweighed by the danger of unfair prejudice to Defendants because of its remedial nature.  In an analogous civil context, "courts have held that where a person is charged with

engaging in an intentional act alleged to violate the law, that person's subsequent decision to abandon the allegedly lawless conduct is a 'remedial measure' under [Federal Rule of Evidence] 407" and hence inadmissible. 23 Charles Alan Wright & Kenneth W. Graham, Jr., <u>Federal Practice & Procedure</u> § 5284 (1980) (collecting cases). For example, in <u>Malone v. Microdyne Corp.</u>, 26 F.3d 471, 480 (4th Cir. 1994), a securities fraud case, the Fourth Circuit held that the defendant's Form 10-K Annual Report, which was filed with the SEC after the allegedly misleading statements at issue in prior filings, was properly excluded by the district court under Rule 407. The plaintiffs argued that the Form 10-K included a disclosure that should have been included in two previous quarterly SEC filings, and that the document was admissible "as evidence of 'an admission of a hotly contested fact'" in the case. 26 F.3d at 480. The court disagreed, finding that "[t]he potential prejudice from introducing the Form 10-K is clear:  jurors likely would view its disclosure . . . as proof of culpable conduct, akin to a landlord's fixing a stairway after being sued by an injured tenant." <u>Id.</u> In addition, the court noted, "[t]he probative value of the Form 10-K for other purposes is dubious." <u>Id.</u> <u>See also</u> <u>Krouner v. Am. Heritage Fund, Inc.</u>, 899 F. Supp. 142, 147 (S.D.N.Y. 1995) (in securities fraud case, the court declined to consider a prospectus issued by the defendant in the year subsequent to the prospectus at issue in plaintiff's complaint); <u>SEC v. Geon Indus., Inc.</u>, 531 F.2d 39, 52 (2d Cir. 1976) (applying Rule 407).

    Similarly, the Court should exclude any evidence of the amended returns or W-2 forms because the government seeks to offer such conduct as evidence of Defendants' culpable conduct in prior years, a purpose that the policy behind Rule 407 clearly prohibits. Such evidence presents a grave danger that jurors would improperly conclude that Defendants decided to amend the forms after being put on notice of a government investigation because they

believed their prior conduct was unlawful -- much like the improper inference that could be drawn from "a landlord's fixing a stairway after being sued by an injured tenant." Microdyne, 26 F.3d at 480. In fact, Defendants could have lacked any criminal intent to evade taxes at the time the documents were prepared, but modified their conduct after receiving notice of the investigation so as to be conservative, eliminate any doubt and satisfy the concerns of the government in an effort to settle potential litigation.

Finally, as Defendants argued at the Motions Hearing, the Court should exclude this evidence pursuant to Rule 403 because the evidence would result in undue delay, complication of the issues, and the need for multiple additional witnesses at trial.[11] The Defendants decided to amend the tax returns at issue on the advice of counsel. Should the amended tax returns and W-2 forms be admitted at trial, Defendants might need to call witnesses to testify regarding that advice and the steps that led to the filing of the amended returns. This would, in effect, lead to a mini-trial on the decision to amend and the process of filing the amended returns -- all of which would take a significant amount of time and resources while distracting the jurors from the real issues in the case.

The Court has already made clear at the Motions Hearing that it is wary of the trial becoming "a kitchen-sink case." Tr. 50.[12] Evidence of acts not charged in the indictment

---

[11] In addition, the admission of extraneous tax-related documents at trial would severely prejudice Defendant Normal Jemal because he is not even charged in the Tax Evasion Counts.

[12] The Court stated:

> [T]here are any number of other reasons, as you know, contained in [Rule] 403 that give the court the authority to not permit evidence into the case.
>
> One of them is confusing the jury. Another one is time. Another one is cumulative evidence. So I want to disabuse both sides of the

should be excluded pursuant to Rule 403 if its introduction will create a "trial within a trial,"

United States v. Aboumoussallem, 726 F.2d 906, 912 (2d Cir. 1984) (quotation marks omitted),

or if the government is likely to spend more time "dealing with alleged wrongful conduct not

covered by the indictment than . . . dealing with the incidents" for which the defendant is

charged.  United States v. Jones, 570 F.2d 765, 769 (8th Cir. 1978).  Accordingly, the Court

should exclude this evidence pursuant to Rule 403.

### III.    CONCLUSION

        For the foregoing reasons, the Court should exclude any evidence of amended tax

returns or W-2 forms at trial.

                    Respectfully submitted,

                    _____

                    Reid H. Weingarten (D.C. Bar #365893)
                    Brian M. Heberlig (D.C. Bar #455381)
                    Steptoe & Johnson LLP
                    1330 Connecticut Avenue, N.W.
                    Washington, D.C.  20036-1795
                     (202) 429-3000

---

        notion that you are simply going to present evidence ad infinitum
        during the trial.  You are not. . . .

        So please keep those thoughts in mind, and specifically you,
        Mr. Dubester.  I mean this is not going to be a kitchen-sink case.

Tr. 49-50.

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  July 5, 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 05-359-01, -2 (RMU)** |
| | : | |
| **DOUGLAS JEMAL, ET AL.** | : | |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF
### AMENDED TAX RETURNS OR W-2 FORMS

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully opposes Defendants' Motion in Limine to Exclude Evidence

of Amended Tax Returns or W-2 Forms.  In support of this Opposition, the Government

respectfully submits:

The Indictment in this case charges that Douglas Jemal and Blake Esherick committed

tax crimes, charged for calendar years 2001, 2002 and 2003.  The conduct of the two men prior

to 2001 and subsequent to 2003 provides strong evidence of their criminal scheme.[1]

In June 2005, Esherick made statements concerning his income for calendar years 2001,

2002, 2003, and 2004.  Those statements are in the form of amended tax returns for 2001 and

2002, a late return for 2003, and a timely return (after an extension) for 2004.  (Amended W-2s

issued by Douglas Development accompanied the returns.)  These written statements of the

---

[1]    Thus, for example,

- it is relevant that from 1998 through 2004, Esherick never received a reported salary increase – but instead was paid at the steady rate of $70,200 per year – while the alleged unreported income grew at a steady rate, bringing his true compensation to a range of approximately $150,000 $200,000, and that in 2005 it was raised from $70,2000 to $300,000;

- it is relevant that the tax evasion scheme to demonstrate the roots of the tax evasion scheme by conduct that occurred prior to 2001.

defendant, signed under penalty of perjury, made with advice of counsel, are squarely admissible under Rule 801(d)(2) as admissions of a party-opponents. These statements are plainly reliable and relevant, case law squarely supports their admission, and the defendants' policy arguments are contrived.

We note at the outset that there is every reason to treat these statements as reliable: it is hard to believe that Esherick, under investigation and represented by counsel, would have at that time contemplated lying to the government. Moreover, the relevance of these statements is manifest: these were statements, under penalty of perjury, specifically addressing a critical issue in this case, namely, the amount and nature of the income Esherick actually received in 2001, 2002, and 2003 (and 2004).

It is certainly understandable that an individual facing tax investigations might do exactly what Esherick did in this case – file amended returns and pay back taxes in the hope the tax investigation would go away. The acts of Esherick in this regard are no different from the conduct of any individual under investigation who makes statements or engages in actions (such as "voluntary" pre-Indictment restitution) with the hope that by such statements or conduct he can dissuade law enforcement from charging him with a crime. However, in taking such steps, the taxpayer, like any individual under investigation, runs the risk that his statements or conduct will be used against him.

Thus, the law is overwhelmingly clear that amended returns may be used as evidence as to the existence of a prior year tax deficiency. See, e.g., United States v. Dale, 991 F.2d 819, 830-31, 851 (D.C. Cir.), cert. denied, 510 U.S. 906 (1993).[2] See, also, United States v. Dowell,

---

[2]    Defendants in Dale, when confronted with a criminal investigation, filed amended returns reversing two corporate deductions of $316,000 and $500,000 that had been fraudulently

446 F.2d 145, 147 (10th Cir. 1971) (affirming tax evasion convictions where amended returns

introduced at trial to prove a "a consistent pattern of underreporting large amounts of income"),

cert. denied, 404 U.S. 984 (1971); United States v. Rosenblum, 176 F.2d 321, 330 (7th Cir.)

(affirming tax evasion convictions where amended returns filed after commencement of

investigation used to demonstrate tax deficiency), cert. denied, 338 U.S. 893 (1949); United

States v. Santopietro, 948 F.Supp. 145, 154 (D.Conn. 1991) (jury permitted to consider amended

return filed by defendant after commencement of investigation); United States v. Nunan, 236

F.2d 576, 589 (2d Cir. 1956) (affirming tax evasion convictions, noting that "the filing of the

amended returns under the circumstances could give appellant no immunity on account of any

prior wilful misstatement or omission of taxable income. It was for the jury to consider these

items of proof together with all the other evidence in the case and give them such probative

weight on the issues as the jury might decide upon."), cert. denied, 353 U.S. 912 (1957).[3]

      Notably, the defendants do not cite a single case for the proposition that amended returns

may not be used by the government as admissions by the taxpayer in a tax evasion prosecution as

---

included on the 1986 corporate return and paying the corresponding taxes due and owing.  These
amended returns were used by the government at trial as proof of the inaccuracy of the original
return and as proof of the amounts due and owing.  The defendants in Dale attempted to portray
these amended returns as evidencing their good faith.  These facts are nearly identical to those of
this case.  The convictions were affirmed.

     [3]     In numerous other tax evasion prosecutions, the government's ability to admit
amended returns as part of the trial proceedings is simply taken for granted. See, e.g., United
States v. Neill, 964 F. Supp. 438 (D.D.C. 1997); United States v. Tucker, 133 F.3d 1208, 1212
(9th Cir. 1998) (amended returns admitted at trial); United States v.  Charroux, 3 F.3d 827, 831 at
n. 7 (5th Cir. 1993) (discussion of amended returns); United States v. Johnson, 893 F.2d 451, 454
(1st Cir. 1990)  (defendant filed amended returns for the charged years of evasion "in an effort to
bolster to bolster his defense of good faith"); United States v. Williams, 470 F.2d 915, 917 (2d
Cir. 1972) ("In 1969 after he learned of the criminal investigation which ultimately resulted in
his indictment, Williams filed amended returns for 1966 and 1967 and his father filed an
amended return for 1968.").  The returns typically provided bases for both government and
defense arguments at trial.

to the existence of prior unreported income or tax deficiency.   Even in <u>United States v. Dyer</u>, 922 F.2d 105 (2nd Cir. 1990), cited by the defendants, the Second Circuit did not disapprove of the admission of amended returns against the defendant in a tax evasion prosecution; it simply disapproved an inartful instruction that "permit[ted] the jury to infer willfulness <u>solely</u> from the filing of an amended return." <u>Dyer</u>, 922 F.2d at 108 (emphasis supplied).  The defendants otherwise rely on a body of law having nothing to do with criminal tax prosecutions, such as the law regarding repairs to broken stairways.  Arrayed against the criminal tax cases on point, the paucity of support for the defendants' position is telling.

Defendants' policy arguments are contrived and lend no basis to the suppression of evidence.  The defendants would treat Esherick's filing of the returns as little more than a game to be played on law enforcement.  They want the Internal Revenue Service to believe what Esherick has to say, but not a jury.  They want the returns and their contents to be evidence of good faith, but not evidence of a crime.

However, the written statements of Esherick were voluntary, not coerced, not in response to government interrogation, and they were made with advice of counsel.  Under these circumstances, there is no sound reason to impose on society the substantial cost of distorting the truth-seeking process by concealing such evidence from the jury.  Defendants' policy arguments reduce to the proposition that Esherick should be given, in effect, a form of testimonial immunity for his statements, even though it was Esherick who signed and filed the returns when he perceived that doing so was in his self-interest.  It is not surprising the defendants can find no case on point; for there is no sound reason that the law should provide an individual under tax

investigation the freedom to state whatever he pleases on an amended return, with no regard to truth or falsity.

Defendants finally observe that Esherick relied on the advice of counsel and, rather remarkably, use this as a basis to support their motion in limine. However, it is widely recognized that statements of an individual are <u>more</u> reliable, rather than less so, by the presence and involvement of counsel. <u>Miranda v. Arizona</u>, 384 U.S. 436, 470 (1966) ("counsel can mitigate the dangers of untrustworthiness"). It is hardly plausible that counsel advised Esherick not to tell the truth. The defendants nonetheless point to the role of counsel in the preparation of the returns as suggesting the possibility of complicated trial litigation arising from this issue. There is no reason to believe that such distractions are necessary or likely, or that the Court should look favorably upon this argument.[4]

* * *

In short, the law firmly supports the admissibility of these signed statements. The returns at issue could not be more reliable, straightforward and inherently relevant. No policy arguments support the suppression of this relevant evidence. Indeed, the policy arguments suggested by the defense would impose substantial societal costs by concealing relevant evidence from the jury

---

[4]    The government has profound incentives to keep the trial moving in a straight-ahead fashion, to have the jury focus on the government's case, and not have the jury distracted by side issues. The defendants have every right to defend as they see fit, but certainly, their incentives are not necessarily the same as the government's.

Thus, it is a sign of the true weakness of the defendants' position that they suggest that if the Court does not rule their way, they "<u>might</u>" present defenses of a nature that will necessitate a "trial within a trial." <u>Defendants' Motion</u> at 7, 8 (emphasis supplied). In essence, they say to the Court: if you rule the Government's way, you "might" regret it, though they say it much more diplomatically. There is substantial reason to treat with caution a defense argument along the lines that the offer of evidence by the government can only be addressed by legally and factually complicated defenses that threaten to derail the trial.

-5-

for the purpose of permitting individuals under tax investigation to play tactical games with the

government.

WHEREFORE, the government requests defendants' motion  be DENIED.


Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


By:    _____
Mark H. Dubester
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

-6-

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 12th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney

-7-

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) | |
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Crim. No.  05-359-1, -2, -3 (RMU)** |
| | ) | |
| **DOUGLAS JEMAL**, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE
EVIDENCE OF AMENDED TAX RETURNS OR W-2 FORMS**

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick

("Defendants"), through counsel, hereby submit this memorandum of law in further support of

their motion to preclude the government from admitting into evidence any amended tax returns

or W-2 forms in support of Counts Six through Eight of the Indictment (the "Tax Evasion

Counts").  The Court should grant Defendants' motion because the government improperly seeks

to admit Defendant Esherick's amended tax documents as proof of fraudulent intent at the time

of filing the original return.

While the government argues that the law allows amended returns to be admitted

"as evidence as to the existence of a prior year tax deficiency,"[13]  Government's Opposition to

_____

[13] Even this proposition is not completely supported by the cases cited by the
government.  In the majority of the cases, it is either unclear whether the government or the
defense sought the admission of the amended returns, see United States v. Dale, 991 F.2d 819
(D.C. Cir. 1993); United States v. Nunan, 236 F.2d 576 (2d Cir. 1956); United States v.
Charroux, 3 F.3d 827 (5th Cir. 1993); United States v. Williams, 470 F.2d 915 (2d Cir. 1972), or
apparent that the defendant was the party who wished to admit the returns, as evidence of good
faith, see United States v. Neill, 964 F. Supp. 438 (D.D.C. 1997); United States v. Tucker, 133
F.3d 1208 (9th Cir. 1998); United States v. Johnson, 893 F.2d 451 (1st Cir. 1990).  Thus, these

Defendants' Motion *in Limine* to Exclude Evidence of Amended Tax Returns or W-2 Forms ("Opp'n") at 2, the government in this case does not seek to admit Defendant Blake Esherick's amended tax returns or W-2 forms to support a finding that Esherick owed taxes in those years. Rather, the government seeks to admit this evidence as the basis for an inference by the jury that Defendant Esherick (and Defendant Douglas Jemal) had fraudulent intent at the time the original returns and W-2 forms were filed.  See id. at 1 (describing the evidence at issue as "provid[ing] strong evidence of [Defendants'] criminal scheme" charged in the Indictment).  This is forbidden by United States v. Dyer, 922 F.2d 105 (2d Cir. 1990), and the cases cited by the government do not hold to the contrary.

In cases involving allegations of tax evasion, the defendant's intent at the time of the original filing is a key element.  Defendant Esherick's amended tax returns and W-2 forms are not probative of his or Defendant Douglas Jemal's intent at the time they engaged in the conduct alleged in the Tax Evasion Counts because "[a]t most, filing an amended return indicates that the taxpayer *now* believes he was mistaken at the time he filed the original return; in no way does it shade that minimal assumption toward proof of the requisite fraudulent intent." Dyer, 922 F.2d at 108.

Moreover, policy considerations weigh in favor of the exclusion of the amended tax returns and W-2 forms.  As the court stated in Dyer, "[g]enerally, the filing of an amended tax return is not an admission of fraud," because the law encourages the filing of amended returns, and a taxpayer should not be penalized for attempting to correct errors.  Id.  Even the court in United States v. Dale, 991 F.2d 819 (D.C. Cir. 1993), the case upon which the government principally relies, approved an instruction to the jury which charged that "[t]he

---

cases do not provide much guidance in circumstances such as those in the present case, in which Defendants seek to exclude the amended returns and W-2 forms.

government encourages [the] use [of amended returns] as a means of correcting mistakes. Therefore, the filing of an amended return is not necessarily evidence of intentional misconduct in the filing of the original return." Id. at 851 (internal quotation marks omitted, alterations in original). Similarly, the court in United States v. Dowell, 446 F.2d 145 (10th Cir. 1971), also cited by the government, agreed that it was "a fair statement of the rule" to say that "willfulness 'involve[d] a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income,'" as indicated, for example, by the filing of an amended return. Dowell, 446 F.2d at 147. These propositions are squarely in line with Defendants' position, not the government's.

Finally, Defendants continue to maintain that the introduction of this evidence will unnecessarily delay and complicate the trial. Evidence that is to be offered for the purpose of having the jury draw an impermissible inference as to the Defendants' intent, and whose admission is disfavored for policy reasons, has no place in a streamlined trial. Thus, by moving for its exclusion, Defendants are trying to avoid a situation in which the trial becomes, as the Court has put it, "a kitchen-sink case."[14]

In sum, for the reasons stated above and in Defendants' moving papers, the Court should exclude Government Exhibits 30 (Amended 2003 Tax Return for Blake Esherick), 32 (Amended 2002 Tax Return and W-2 Form for Blake Esherick), 33 (Amended 2001 Tax Return and W-2 Form for Blake Esherick), and 34 (Amended 2004 W-2 Form for Blake Esherick), as

---

[14] The government chastises Defendants for not definitively stating what testimony or evidence they will present in response if the Court decides to allow such evidence at trial. Opp'n at 5 n.4. Contrary to the government's view, however, this reserve is a reflection of the realities of trial preparation and the adversary system. That is, Defendants have not yet decided how they would counter this evidence at trial. But even if they had, Defendants have no obligation to share their defenses with the government in advance of trial.

well as any other amended tax returns or W-2 forms offered by the government for admission at
trial.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  July 18, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES,** | ) | |
| | ) | |
| **v.** | ) | **Crim. No.  05-0359-1, -2, -3 (RMU)** |
| | ) | |
| **DOUGLAS JEMAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO
EXCLUDE EVIDENCE OF PRIOR RELATED CIVIL LAWSUIT AND SETTLEMENT**

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick

("Defendants"), through counsel, respectfully request that the Court, pursuant to Federal Rules of

Evidence 403 and 408, prohibit the government from introducing at trial any evidence that refers

to:  (1) the District of Columbia's ("District" or "City") civil False Claims lawsuit against

Defendants Douglas Jemal and Blake Esherick, which involved several of the same matters that

are the subject of the Indictment in this case; and/or (2) those Defendants' agreement to settle the

lawsuit.  Such evidence has no probative value in this case and will, instead, mislead or confuse

the jury, unduly delay the trial, and cause substantial prejudice to the Defendants.

**I.      BACKGROUND**

The Indictment alleges, in substantial part, that the Defendants provided various

things of value to then Deputy Director of the District's Office of Property Management Michael

Lorusso ("Lorusso") in order to influence, or induce Lorusso to perform, a series of official acts.

A substantial portion of the official acts at issue relate to the District's lease of, and payment of

invoices related to tenant improvements for, commercial office space in a building owned by

Defendant Douglas Jemal at 77 P Street, N.E., Washington, D.C.  The Indictment specifically

alleges that Lorusso approved certain invoices submitted by Defendants to the District, including

invoices for tenant build-out construction in the basement of 77 P Street, which were false,

excessive, irregular or otherwise unsupported (see, e.g., Indict. ¶ 16(e)(iii) & (v)).  The alleged

official acts also include Lorusso's efforts to cause the District to lease an impound lot at 4800

Addison Road (see, e.g., Indict. ¶ 16(a)), to attempt to cause the District to purchase 4800

Addison Road (see, e.g., Indict. ¶ 16(b)), to approve invoices relating to 4800 Addison Road

(see, e.g., Indict. ¶ 16(c)(iv)-(v)), and to attempt to cause the District to sell to Defendants a

historic firehouse at 438 Massachusetts Avenue (see, e.g., Indict. ¶ 16(c)).

In the Fall of 2002 and Spring of 2003, the District of Columbia City Council held

a series of oversight and investigative hearings related to the Office of Property Management,

Michael Lorusso, Douglas Jemal, and others.  Among the featured topics at the hearings were the

invoices related to the tenant build-out construction in the basement of 77 P Street, the alleged

overcharges at the impound lot at Addison Road, and the proposed purchase of Addison Road

and sale of the firehouse.  The City Council also publicly suggested that when the District

entered into various lease addenda for additional space at 77 P Street after the City Council

approved an initial lease for space there, the subsequent lease addenda were invalid because they

were not approved by the City Council.

Ultimately, in July 2003, the Attorney General of the District of Columbia, at the

public urging of a City Councilmember, filed in the Superior Court of the District of Columbia a

lawsuit against Douglas Jemal, Blake Esherick, and two of Mr. Jemal's companies (Douglas

Development Corporation and Cayre Jemal's Gateway) alleging violation of the District's civil

False Claims Act.  The District's complaint alleged that two invoices submitted for payment by

the defendants for the basement construction at 77 P Street were falsely presented, that the leases at 77 P Street were invalid for lack of City Council approval, and that the District was entitled to treble damages amounting to nearly $2.8 million.  See Complaint, District of Columbia v. Douglas Development Corporation et al., Civ. Action No. 03-006457 (Sup. Ct. D.C. July 29, 2003) (attached as Exhibit 1).

In September 2003, Mr. Jemal answered the complaint and filed numerous counterclaims for unpaid back rent, unpaid construction costs, unpaid furniture purchases, and other monies owed to him and his companies by the District of Columbia.  See Answer and Counterclaim (Sept. 9, 2003) (attached as Exhibit 2).   Mr. Jemal's counterclaims survived a motion to dismiss.

The parties ultimately agreed to settle the matter.  The negotiated settlement was contingent upon approval by the City Council, which ultimately approved the lease addenda in question and ended its hearings into the matter.  As part of the settlement, Mr. Jemal agreed to forego a substantial amount in certain back rent, unpaid construction costs, the cost of furniture purchased for the City, and other amounts owed to him.  He also agreed to return (with interest) the disputed amount he received from the City relating to the invoices for the basement of 77 P Street.

A summary of the amounts owed and agreed to be paid by both sides (and set off against each other to some degree) along with the disputed lease addenda were presented in January 2004 by the Mayor to the City Council.  By resolution in March 2004, the Council approved the lease addenda.  The net effect of the set-off amounts was that the City paid $800,000 to Mr. Jemal.  The settlement also addressed (and Mr. Jemal agreed to pay) disputed costs associated with the impound lot leased by the City at Addison Road in the approximate

amount of $42,000 and to re-negotiate (at a higher price than originally agreed) his purchase of

the historic firehouse from the City.  See Settlement Agreement (attached as Exhibit 3).

Furthermore, the settlement agreement expressly stated that it did not constitute an admission by

either Mr. Jemal or the District of any "liability or wrongful action or violation of any statute,

regulation, or common law right."  Id. ¶ 12.

   Thereafter, as part of the settlement, on March 3, 2004, the District of Columbia,

Douglas Jemal, Blake Esherick and the corporate entities entered a Stipulation of Dismissal

whereby those parties agreed to dismiss with prejudice all claims and counterclaims against each

other.  Two days later, Superior Court Judge Bush approved the dismissal and made a docket

entry to reflect it.

   In August 2004, some five months later, Mr. Jemal's companies received the first

in a series of Grand Jury subpoenas, with which he and his companies cooperated.

## II. ARGUMENT

###  A. Rule 408 Prohibits The Admission Of Evidence Relating To Settlement Of The False Claims Lawsuit

   The Court should prohibit the government from introducing evidence regarding

the prior False Claims lawsuit or its settlement because it is precisely the type of settlement

contemplated by Federal Rule of Evidence 408, which prohibits the admission of evidence

relating to the compromising of a claim "which was disputed as to either validity or amount" in

order "to prove liability for or invalidity of the claim or its amount."  Fed. R. Evid. 408.[15]

---

   [15] Rule 408 provides in full:

     Evidence of (1) furnishing or offering or promising to furnish, or
     (2) accepting or offering or promising to accept, a valuable

As the U.S. Court of Appeals for the District of Columbia Circuit has recognized, "[t]he subject of [Rule 408] is the admissibility of evidence (*in a civil or criminal case*) of negotiations undertaken to 'compromise a claim' in a civil action . . . ." United States v. Graham, 91 F.3d 213, 218 (D.C. Cir. 1996) (citation omitted) (emphasis added).[16]  The Fifth, Tenth, and Eleventh Circuits have all definitively held that Rule 408 requires the exclusion of civil settlement agreements in criminal cases.  See United States v. Hays, 872 F.2d 582, 589 (5th Cir. 1989) (admission of deposition excerpts explaining reasons for defendants entering into civil settlement agreement plain error under Rule 408); United States v. Bailey, 327 F.3d 1131, 1146 (10th Cir. 2003) (written civil settlement agreement between defendant and some of his business partners not admissible under Rule 408); United States v. Arias, 431 F.3d 1327, 1338 (11th Cir. 2005) (Rule 408 bars evidence of statement signed by defendant in response to state administrative complaint brought by Florida Department of Health against defendant's company which

---

consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.  This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

[16] The Graham court held that Rule 410 rather than Rule 408 "address[es] the admissibility of evidence concerning negotiations to 'compromise' a [prior] *criminal* case," while the instant case involves the admissibility of evidence regarding settlement of a prior *civil* case, to which Rule 408 clearly applies.

admitted liability and permitted the Department to enter a fine and final order).[17]  The decisions

of these Courts of Appeals make clear that applying Rule 408 to exclude evidence relating to

civil settlements in criminal cases is supported by the language of the Rule itself, the policy

interests behind it, and the D.C. Circuit's description of the Rule's scope in Graham.

          The plain language of Rule 1101(b) states that each of the Federal Rules of

Evidence -- including Rule 408 -- are generally applicable to criminal cases and proceedings.

Fed. R. Evid. 1101(b) ("These rules apply generally to civil actions and proceedings, . . . [and] to

criminal cases and proceedings . . . .").  The language of Rule 408 itself also does not expressly

preclude application in criminal cases.  See Arias, 431 F.3d at 1336-37 ("[W]here the drafters of

the Rules intended to prevent the application of a particular Rule to criminal cases, they provided

so expressly.  Where the drafters of Rule 408 did not expressly preclude application of Rule 408

to criminal cases, we are reluctant to construe that decision as inadvertent.") (citation omitted);

Bailey, 327 F.3d at 1146 n.6 ("We must assume that the drafters' failure to make any express

exclusion in 408 for criminal proceedings was meaningful.").  In fact, the last sentence of the

Rule specifically states that it "does not require exclusion when the evidence is offered for

another purpose, such as . . . proving an effort to obstruct a criminal investigation or

prosecution."  Fed. R. Evid. 408.  As the Eleventh Circuit has noted, "[i]f the drafters of Rule

408 intended the Rule to apply solely in civil cases, there would be no occasion to carve out an

exception for certain circumstances in criminal cases . . . ."  Arias, 431 F.3d at 1337.  See also

---

[17] While the Second, Sixth, and Seventh Circuits have held that Rule 408 does not apply
to criminal cases, see Manko v. United States, 87 F.3d 50, 54-55 (2d Cir. 1996); United States v.
Logan, 250 F.3d 350, 367 (6th Cir. 2001); United States v. Prewitt, 34 F.3d 436, 439 (7th Cir.
1994), we respectfully submit that this view is not supported by the language of the Rule itself or
the policy reasons behind it, and is therefore not the more well-reasoned position.

Bailey, 327 F.3d at 1146 ("the final sentence [of Rule 408] is arguably unnecessary if the Rule

does not apply to criminal proceedings at all").

Courts have also recognized that "applying Rule 408 to criminal cases furthers the

policy interests that undergird the Rule." Arias, 431 F.3d at 1337. On this point the Eleventh

Circuit has stated:

> It is self-evident that a defendant in a civil suit is far less likely to
> offer to settle a claim if evidence of that offer can later be
> introduced to prove criminal liability for the same conduct.
> Limiting Rule 408 to civil proceedings thus undermines the public
> policy in favor of compromise that the Rule aims to further.
> Moreover, while the Second Circuit has found that the interest in
> accurate determinations in criminal trials outweighs the interest in
> promoting civil settlements, this rationale overlooks a basic
> premise underlying Rule 408: evidence of compromise is not
> necessarily probative of liability. Indeed, the advisory committee's
> notes indicate that evidence of a settlement offer is often irrelevant
> to liability for the charged conduct, because "the [settlement] offer
> may be motivated by a desire for peace rather than from any
> concession of weakness of position." In this light, permitting the
> admission of civil settlement offers in subsequent criminal
> prosecutions actually compromises the accuracy of the jury's
> determination.

Id. (citation omitted). The admission of evidence relating to a defendant's willingness to enter

into a civil settlement carries with it the great danger of fatally prejudicing the jury against that

defendant:

> [A]s the framers of Rule 408 clearly contemplated, the potential
> impact of evidence regarding a settlement agreement with regard
> to a determination of liability is profound. It does not tax the
> imagination to envision the juror who retires to deliberate with the
> notion that if the defendants had done nothing wrong, they would
> not have paid the money back.

<u>Hays</u>, 872 F.2d at 589. Indeed, "the potential prejudicial effect of the admission of evidence of a settlement can be more devastating to a criminal defendant than to a civil litigant." <u>Bailey</u>, 327 F.3d at 1146.

In the instant criminal prosecution, Defendants seek to exclude precisely what is prohibited by Rule 408: evidence of negotiations relating to and acceptance of a compromise of the claims in a prior civil lawsuit. The validity of the invoices for the basement construction space at 77 P Street were disputed by the District when it filed a False Claims civil lawsuit about them. Similarly, the amount of back rent and other monies owed to Mr. Jemal by the City (as set forth in his counterclaim to the False Claims lawsuit) also was in dispute. When the City and Mr. Jemal agreed to settle the lawsuit and counterclaims, they entered precisely the type of civil agreement contemplated by Rule 408. Thus, evidence of the settlement is not admissible to prove liability for or the invalidity of the 77 P Street basement construction invoices or the disputed Addison Road invoices, both of which the Indictment alleges are false.

## B. Evidence Of The Settlement With The District Of Columbia Will Be Substantially More Prejudicial Than Probative, And Thus Should Be Excluded At Trial Pursuant To Rule 403

Even if the Court determines that Rule 408 does not prohibit admission of evidence relating to the settlement of the False Claims lawsuit, the evidence should be excluded under Rule 403. A court may exclude relevant evidence pursuant to Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The fact that Mr. Jemal and his companies agreed to settle the lawsuit with the City is not probative of the charges in this case. The claims and counterclaims in the lawsuit

were settled without ever being presented to a factfinder.  Thus, evidence relating to the lawsuit

merely consists of a set of unproven allegations without any final judgment.  Moreover, the

settlement agreement itself expressly provides that no party has admitted any liability or

wrongdoing.

        Furthermore, any minimal probative value the evidence may have is substantially

outweighed by the unfair prejudice the Defendants will suffer if it is presented at trial.  The

Supreme Court has explained that "[t]he term 'unfair prejudice,' as to a criminal defendant,

speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring

guilt on a ground different from proof specific to the offense charged."  Old Chief v. United

States, 519 U.S. 172, 180 (1997).  "'Unfair prejudice' within its context means an undue

tendency to suggest decision on an improper basis, commonly, though not necessarily, an

emotional one."  Id. (quoting Fed. R. Evid. 403 advisory committee's note).  The prior civil

settlement and lawsuit with the City involved some of the very same invoices and allegations

that appear in the Indictment.  Having no probative value, introduction of either the lawsuit or

the settlement could have only one purpose:  to prejudice Defendants in the eyes of the jury.  As

already discussed in the context of Rule 408, courts have found that the potentially devastating

prejudice to a criminal defendant resulting from the admission of an earlier civil settlement

clearly weighs in favor of excluding such evidence.  See Hays, 872 F.2d at 589 ("It does not tax

the imagination to envision the juror who retires to deliberate with the notion that if the

defendants had done nothing wrong, they would not have paid the money back.").

        The fact that Mr. Jemal agreed to forgo a substantial amount of money related to

77 P Street and Addison Road surely will be misread by the jury.  The jury will not necessarily

understand that Mr. Jemal made a business decision to settle rather than litigate the case, and to

choose to look forward to future and continued business with the District rather than argue over past disputed amounts.  In a criminal case like this, where the government's theory is that Mr. Jemal obtained leases, payment of invoices, or other city business corruptly by providing things of value to a city official, the danger is that the jury will mistakenly believe (on the face of the settlement) that Mr. Jemal "bought" his way out of a lawsuit.  See Arias, 431 F.3d at 1337 ("permitting the admission of civil settlement offers in subsequent criminal prosecutions actually compromises the accuracy of the jury's determination").  This is particularly worrisome where the negotiated settlement at issue here included Mr. Jemal's willingness to absorb or forgo a substantial amount of money for the good of his business relationship with the City.  That is precisely the type of improper "emotional" conclusion that Rule 403 seeks to prevent.

Finally, the inevitable delay and confusion of the issues that would result if the government is permitted to mention the civil lawsuit or its settlement at trial also weighs in favor of its exclusion.  See, e.g., United States v. Gambler, 662 F.2d 834, 839 (D.C. Cir. 1981) (upholding district court's exclusion of evidence of the damage amount pleaded in a civil complaint offered by the defense on cross-examination of a government witness "[b]ecause we believe that evidence of this type is generally of minimal probative value, resulting inevitably in confusion of the issues and delay").  Defendants would require a significant amount of time and additional witnesses and documentary evidence to explain to the jury how the settlement was negotiated, how the net payment was calculated, why it made good business sense for Mr. Jemal to agree to it, and all of the reasons why the District and the Council concluded that it was a good deal for the City.  Not only would this cause an otherwise unnecessary and avoidable delay at trial, but unless Mr. Jemal himself testifies about the settlement it is an effort that may be

impracticable and unfair to the Defendants.[18]  For all of these reasons, therefore, the Court

should exclude the evidence under Rule 403.

### III.    CONCLUSION

For the foregoing reasons, Defendants request that the Court prohibit the

government from mentioning at trial the prior lawsuit (or its settlement) between the District of

Columbia and Douglas Jemal, Blake Esherick and two of Mr. Jemal's companies.


Respectfully submitted,


_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

_____

[18]  Additionally, the fact that the settlement agreement provided for a net payment to
Mr. Jemal rather than to the City also will confuse the jury.

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  July 5, 2006

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES,                    )
                                  )
     v.                           )     **Crim. No.  05-0359-1, -2, -3 (RMU)**
                                  )
DOUGLAS JEMAL, et al.,            )
                                  )
          **Defendants.**            )
_____ )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PRIOR, UNRELATED, SETTLED VENDOR/CONTRACTOR LAWSUITS

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, respectfully request that the Court, pursuant to Federal Rules of Evidence 402, 403, and 408, prohibit the government from introducing at trial any evidence relating to nine civil lawsuits (and/or the agreements to settle those lawsuits) brought by various vendors and contractors against Douglas Development Corporation and other entities owned by Douglas Jemal, which the government has marked as Government Exhibits 690 through 698.

      The nine lawsuits do not relate to the allegations in the Indictment, and are therefore irrelevant to any of the issues at trial, because they are not the basis of any of the purportedly false invoices that Defendants allegedly submitted to the District of Columbia. Additionally, because each of the lawsuits was settled, evidence relating to them or their disposition constitutes exactly the kind of compromise of a disputed claim in a civil matter that is deemed inadmissible by Rule 408.  Finally, the nine lawsuits and their settlements have no probative value and their admission will, instead, mislead or confuse the jury, unduly delay the

trial, and cause substantial prejudice to the Defendants by suggesting that the Defendants are prone to wrongdoing because they have been sued and agreed to settle lawsuits.

## I.    BACKGROUND

Defendant Douglas Jemal is the owner and president of Douglas Development Corporation ("DDC"). Defendants Norman Jemal and Blake Esherick are respectively DDC's Vice President and Director of Leasing. In early 2001, Michael Lorusso ("Lorusso") became the Deputy Director of the District's Office of Property Management. The Indictment alleges that the Defendants provided various things of value to Lorusso in order to influence a series of official acts. A substantial portion of the official acts at issue relate to: (1) the District's lease of, and payment of tenant improvement construction invoices for, space at two properties owned by Defendant Douglas Jemal and managed by DDC: 77 P Street, N.E., Washington, D.C. ("P Street"), and 4800 Addison Road in Maryland ("Addison Road"); and (2) an attempt to cause the District to sell to Defendants an historic firehouse at 438 Massachusetts Avenue (the "firehouse").

The government has included on its preliminary exhibit list the court files for nine civil lawsuits filed by eight different contractors or service vendors, marked as Government Exhibits 690 through 698.[19] In essence, these lawsuits allege that DDC had not paid the contractors for services rendered. The exhibits at issue consist of approximately 450 pages of

---

[19] Because the government has not yet disclosed its final exhibit list, Defendants do not know whether the government intends to maintain the numbering system used in its post-Indictment production of documents to Defendants. For purposes of this motion, however, Defendants will refer to the nine exhibits at issue as Government Exhibits 690 through 698.

court documents.  Each of the nine exhibits contains a complaint and an answer, and some of the exhibits contain additional pre-trial pleadings, forms, or notations of docket entries.

Some of these lawsuits involve facts that allegedly occurred in 1999 and 2000, *before* Lorusso even began working for the District of Columbia.  Five of the lawsuits relate to services or materials allegedly provided at property locations *other than* 77 P Street, Addison Road, or the firehouse -- the three properties that are the subject of the Indictment.  *None* of the nine lawsuits involve any invoice alleged to be false in the Indictment.  *All* nine of the lawsuits were settled and dismissed after the parties reached a negotiated agreement.

Five of the Government Exhibits (Exhibits 691, 692, 693, 697, and 698) stem from disputes involving properties that are not mentioned in the Indictment:

- Exhibit 691 contains pleadings related to a lawsuit filed by Tri County Industries, Inc. against DDC regarding the removal of oil tanks and soil from 400 Massachusetts Avenue in March 2001, work for which plaintiff alleged it had not been paid by DDC.  The work site is adjacent to but not the same as the firehouse referenced in the Indictment and accordingly there are no allegations in the lawsuit related to the proposed sale of the firehouse by the District to Mr. Jemal.  The court file reflects that this action was settled and dismissed.

- Exhibit 692 contains pleadings related to a lawsuit filed by Adecco Employment Services, Inc. (a "temp" agency) alleging that DDC owed plaintiff $8,000 for temporary personnel provided to DDC in August 2000.  The court file reflects that this action was settled and dismissed.

- Exhibit 693 contains pleadings related to a lawsuit filed by Nery & Sons Corp. alleging that DDC failed to pay for electrical supplies and services that plaintiff provided in the second half of 2000 at properties located on F Street and elsewhere, none of which are mentioned in the Indictment.  The court file reflects that the parties reached an agreement to dismiss this action.

- Exhibit 697 contains pleadings related to a lawsuit filed by Washington Gas Light Company alleging that DDC failed to pay for public utility gas provided between February 2002 and June 2003 at 6856 Eastern Avenue, a property that is not the subject of the Indictment.  The court file reflects that this case was settled and dismissed.

- Exhibit 698 contains pleadings related to a lawsuit filed by Pavement Design & Engineering Consultants, Inc. against DDC for paving and sealing work it allegedly performed in or around September 2000 at nine named property sites, none of which are the subject of the Indictment. The action was settled and dismissed.

The other four Government Exhibits (Exhibits 690, 694, 695 and 696) contain

documents relating to settled lawsuits arising from work performed by contractors at 77 P Street

or Addison Road, but none of the work at issue is the subject of any invoice alleged in the

Indictment to be false or inflated:

- Exhibit 690 contains pleadings related to a mechanics lien lawsuit filed by Stalker Brothers, Inc. against DDC and Cayre Jemal's Gateway (a partnership including Defendant Douglas Jemal) for drywall and similar work alleged to have been performed by plaintiff, but not paid for by defendants, at 77 P Street between July 1999 and August 2001. The parties negotiated a settlement and the case was dismissed.

- Exhibit 694 contains pleadings related to a lawsuit filed by Keystone Plus Construction Corp. against DDC for excavation work performed at Addison Road during the year 2000, which is prior to Lorusso's tenure with the District and prior to any alleged dealings between Defendants and the District about this property. The lawsuit was settled and dismissed, according to the court file.

- Exhibit 695 and 696 contain pleadings related to two similar lawsuits filed by Neco Construction Management Corp. against DDC for labor and materials plaintiff allegedly provided during the first half of 2001 at Addison Road, for which plaintiff had not been paid by DDC. The court files reflect that both lawsuits were settled and dismissed simultaneously.

## II.    ARGUMENT

### A.    Government Exhibits 690 Through 698 Are Irrelevant And Should Be Excluded Pursuant To Rule 402

The nine lawsuits that are the subject of Government Exhibits 690 through 698

are irrelevant to the allegations in the Indictment and therefore should be excluded pursuant to

-4-

Federal Rule of Evidence 402, which provides that "[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402.

Specifically, Government Exhibits 691, 692, 693, 697, and 698 stem from vendor and contractor work that was not performed at 77 P Street, Addison Road, or the firehouse. The work was performed at properties that are not the subject of, nor even mentioned in, the Indictment. Additionally, three of these five lawsuits and settlements (Government Exhibits 692, 693, 698) predate the tenure of Lorusso, whom the Indictment alleges Defendants conspired to bribe. Thus, Government Exhibits 691, 692, 693, 697, and 698 are irrelevant and should be excluded.

Similarly, the remaining four Government Exhibits (690, 694, 695, 696), while stemming from work contractors performed at the properties 77 P Street or Addison Road, also do not involve any invoices referred to (or alleged to be false or inflated) in the Indictment. In fact, the work involved in the lawsuit contained in Exhibit 694 deals with allegations that entirely predate Lorusso's tenure with the District. Accordingly, the Court should not permit the government to use any of the nine Government Exhibits involving prior vendor/contractor lawsuits at trial.

**B.     Government Exhibits 690 Through 698 Reflect Prior Compromises Of <u>Disputed Civil Claims And Are Thus Inadmissible Pursuant To Rule 408</u>**

Even if the Court decides that any of the nine lawsuits are relevant, the Court nonetheless should preclude the government from introducing or referring to any of the lawsuits and/or their settlement at trial because their admission is barred by Federal Rule of Evidence 408. Rule 408 defines as inadmissible evidence relating to the compromising of a claim "which was disputed as to either validity or amount" in order "to prove liability for or invalidity of the

claim or its amount." Fed. R. Evid. 408.[20]  As the U.S. Court of Appeals for the District of

Columbia Circuit has recognized, "[t]he subject of [Rule 408] is the admissibility of evidence (*in*

*a civil or criminal case*) of negotiations undertaken to 'compromise a claim' in a civil action

. . . ." United States v. Graham, 91 F.3d 213, 218 (D.C. Cir. 1996) (citation omitted) (emphasis

added).[21]  Each of the nine lawsuits contained in the court files that comprise Government

Exhibits 690 through 698 contained claims and amounts that were disputed and ultimately

settled, as the court files reflect.  Thus, they are exactly the type of compromised claims or

amounts that Rule 408 defines as inadmissible.

### C. Government Exhibits 690 Through 698 Should Be Excluded Because Their Admission Would Cause Undue Delay And Substantial Prejudice To The Defendants At Trial

If the Court permits the government to introduce Government Exhibits 690

through 698 (and any reference to the lawsuits or settlements that are the subject of those

Exhibits) at trial, Defendants will be required to expend significant time, call additional

---

[20] For a more complete discussion of authorities supporting the application of Rule 408 in this case, see Defendants' Memorandum Of Law In Support Of Its Motion *In Limine* To Exclude Evidence Of Prior Related Civil Lawsuit And Settlement, filed simultaneously with the instant motion.

[21] The Graham court held that Rule 410 rather than Rule 408 "address[es] the admissibility of evidence concerning negotiations to 'compromise' a [prior] *criminal* case," while the instant case involves the admissibility of evidence regarding settlement of a prior *civil* case, to which Rule 408 clearly applies.  See also Defendants' Memorandum Of Law In Support Of Its Motion *In Limine* To Exclude Evidence Of Prior Related Civil Lawsuit And Settlement (citing and discussing United States v. Hays, 872 F.2d 582, 589 (5th Cir. 1989) (admission of deposition excerpts explaining reasons for defendants entering into civil settlement agreement plain error under Rule 408); United States v. Bailey, 327 F.3d 1131, 1146 (10th Cir. 2003) (written settlement agreement between defendant and some of his business partners not admissible under Rule 408); United States v. Arias, 431 F.3d 1327, 1338 (11th Cir. 2005) (Rule 408 bars evidence of statement signed by defendant in response to state administrative complaint brought by Florida Department of Health against defendant's company which admitted liability and permitted the Department to enter a fine and final order)).

witnesses, and introduce additional exhibits to explain each of the different allegations in the nine lawsuits, as well as the reasons why each suit was settled, in order to counter the misleading impression the jury would be given by hearing about such lawsuits and settlements. Rule 403 is designed to preclude evidence that will cause this type of "undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

The introduction of Government Exhibits 690 through 698 would also cause unfair prejudice to the Defendants that substantially outweighs any minimal probative value of the Exhibits.[22] The Court should exclude the nine exhibits because their cumulative nature (*i.e.*, indicating that DDC and other Douglas Jemal entities were sued on at least nine different occasions and on each occasion agreed to settle the lawsuit) will mislead and confuse the jury into drawing the improper conclusion that Defendants engaged in wrongdoing relating to their business. See Old Chief v. United States, 519 U.S. 172, 180 (1997) ("[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); see also United States v. Arias, 431 F.3d 1327, 1337 (11th Cir. 2005) ("permitting the admission of civil settlement offers in subsequent criminal prosecutions actually compromises the accuracy of the jury's determination").[23]

---

[22] A court may exclude relevant evidence pursuant to Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed. R. Evid. 403.

[23] The government has not informed Defendants of the purpose for which it will offer Government Exhibits 690 through 698. The court files contained in each Exhibit are limited to basic pleadings like complaints and answers and a docket notation reflecting that the case was settled and dismissed. There is no discovery, depositions, or other factual development to indicate anything more about how government would use these lawsuits at trial. Defendants therefore reserve the right to supplement this motion once the government's intention is clear.

## III.    CONCLUSION

For the foregoing reasons, Defendants request that the Court exclude all evidence relating to the vendor/contractor lawsuits and settlement agreements that are the subject of Government Exhibits 690 through 698.

Respectfully submitted,

_____

Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

-8-

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  July 5, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 05-359-01, -2, -3 (RMU) |
| | : | |
| DOUGLAS JEMAL, ET AL. | : | |

**GOVERNMENT'S OPPOSITION TO (1) DEFENDANTS' MOTION IN LIMINE TO**
**EXCLUDE EVIDENCE OF PRIOR RELATED CIVIL LAWSUIT AND SETTLEMENT,**
**AND (2) DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PRIOR,**
**UNRELATED, SETTLED VENDOR/CONTRACTOR LAWSUITS.**

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully opposes (1) defendants' motion in limine to exclude evidence

of a prior related civil lawsuit and settlement (involving the District of Columbia)[1] and (2)

defendants' motion in limine to exclude evidence of prior, unrelated, settled vendor/contractor

lawsuits.[2]

**INTRODUCTION**

I.    **Vendor Suits Against Douglas Development Corporation.**

In this case, as in most fraud or corruption cases, the government intends on proving a

motive to steal and a motive to bribe.  Thus, it will prove that, in 2001 and 2002, Douglas

Jemal's company was in significant financial distress.  Creditors, particularly construction

contractors, were being paid late or not at all and were repeatedly suing him and his company for

payment.  One way the government intends to establish and corroborate its proof of motive is by

---

[1]    That motion will be referred to herein as "Defs. D.C. Settlement Mot."  The
memorandum in support of that motion will be referred to as "Defs. D.C. Settlement Mem."

[2]    That motion will be referred to herein as "Defs. Vendor Settlements Mot."  The
memorandum in support of that motion will be referred to as "Defs. Vendor Settlements Mem."

introducing the numerous law suits filed against him and his company during 2001 and 2002 for

non-payment of bills.

These law suits are thus relevant for the following two points:

- first, at a minimum, they constituted potential liabilities (regardless of the merits of the suits); and

- second, they elucidate in a vivid way the existence of significant cash problems in the company. Jurors well understand that suits consume time and money and that persons and companies do not sue lightly. Jurors can properly infer that Douglas Development had severe payment problems when so many contractors reached the same decision that the only way to collect was to sue.

These law suits provide compelling evidence of the financial pressures endured by

Douglas Jemal in 2001 and 2002. It would truly crib the jury's assessment and appreciation of

Douglas Jemal's motives if the jury was kept unaware that his cash problems were so profound

that he was unable to pay routine debts and was as a result besieged by suing (or complaining)

vendors. In short, the fact of the lawsuits is probative, relevant, and indeed, particularly

powerful evidence of motive.[3]

The defendants root their motion in limine in Rule 408, which deals with the evidentiary

uses that can properly be made of certain acts which may occur in the course of civil litigation.

The government will analyze these provisions of law in the next Sections, but, for the following

reasons, the defendants' legal arguments are unavailing:

- Rule 408 does not operate to keep a party from being able to introduce into evidence the fact of a law suit or the dispute that led to the suit;

---

[3]       There are of course other ways the government could try to make this point. For example, it is possible to bring the contentions of financial distress to life through accountants or other opinion testimony of employees. Such evidence has obvious defects and may prove far from compelling to a jury, who may well perceive that different "experts" or employees may view the company's financial situation through completely different lenses.

- Rule 408 has a very limited reach: it only applies to bar a party from using the compromise of the dispute as proof of the validity or amount of the claim. Thus,

- in this case, notwithstanding the perfunctory Answers of Douglas Development to the numerous plaintiffs' Complaints, the plaintiffs' claims were not seriously disputed; and

- Rule 408 does not bar a party from using the settlement of the claims to prove motive of the defendants;

- Rule 408 does not appear to apply to criminal litigation in any event;

- Finally, we respectfully submit that this evidence will not overly complicate the trial or necessitate a series of mini-trials. The government has a right to establish the existence of outstanding debts, and its decision to rely on those instances where the complainants have actually sued and Douglas Development has actually settled is a particularly reasonable—indeed, a particularly reliable—way for it to proceed.

## II.    The District of Columbia's Suit Against Douglas Development.

In September 2001, Douglas Development submitted a claim to the D.C. Government for "tenant buildout reimbursement." This claim was approved by Michael Lorusso and paid by the D.C. Government. The funds were deposited in Douglas Development operating account, where they were quickly spent. They were not applied to the benefit of the D.C. Government.

In the summer of 2003, after a series of City Council hearings, the D.C. Government sought the return of these funds and sought other relief from Douglas Development. The D.C. Government filed suit. At some point, a city official inquired of Jemal what had happened to the $863,000. He replied that it was in escrow.

The defendants seek to suppress under Rule 408 mention of the law suit and mention of the terms of settlement. Though the defendants do not specifically raise this issue, we assume they also seek to suppress the statement of Douglas Jemal (or any other agent of his) as well.

-3-

This motion in limine should be denied, for largely the same reasons as the motion relating to the other civil law suits:

- Rule 408 does not operate to keep a party from being able to introduce into evidence the fact of a law suit;

- Rule 408 has a very limited reach: it only applies to bar a party from using the compromise as proof of the validity or amount of the claim. Thus, it does not bar a party from using the statements of an individual—in this case Jemal—made in the course of settlement negotiations, to prove aspects of intent and motive associated with the pending criminal case;

- Rule 408 does not appear to apply to criminal litigation in any event.

*                    *                    *

Because both motions involve the analysis of Rule 408 and raise common issues involving its application to criminal proceedings, we address both motions in this single pleading.

<u>**BACKGROUND**</u>

**I.    Factual Background**

A.    <u>Suits/Statements/Settlements Regarding Disputes with Vendors</u>.

The United States, through its agents, has located public records in various local courthouses that reflect ongoing efforts of construction contractors and other suppliers to obtain payment from Douglas Jemal and his related companies during the period of time addressed in the Indictment. These records thus reflect unpaid debts from prior to 2001, for which the vendors filed suit in 2001 and 2002; and unpaid debts in 2001 and 2002, for which law suits were filed in 2003. The government has provided records from the District of Columbia, and, not anticipating the motion in limine, has not yet finished copying certain similar records from

-4-

Montgomery County and Prince George's County. Several of the suits involve the very

properties that are at issue in this case.

These certified court records thus demonstrate the existence of numerous individuals and

entities demanding payment from Douglas Development. Putting aside the merits of the cases—

which are really not in dispute—the volume of lawsuits tends to demonstrate the dire financial

circumstances of Jemal during the years in question.

Thus, these law suits run the gamut from the small to the grand, and consist of the

following:

- GX 690: Stalker Brothers, Inc. v. Cayre Jemal Peoples, L.L.C., Civ. Action No. 02-265 (D.C. Sup. Ct. Jan. 14, 2002) (seeking enforcement of mechanic's lien and alleging contract and unjust enrichment claims for nonpayment of $74,619 for work performed at 77 P Street from July 1999 through August 31, 2001);

- GX 691: Tri County Industries Inc. v. Douglas Development Co., Civ. Action No. 01-6642 (D.C. Sup. Ct. Sept. 5, 2001) (seeking payment of $62,661.75 for removal of 500 gallon used oil tank at 400 Massachusetts Avenue, NW, between March 26 and May 7, 2001);

- GX 692: Adecco Employment Serv. Inc. v. Douglas Development Co., Civ Action No. 01-5371 (D.C. Sup. Ct. July 18, 2001) (seeking payment of $8,037 for employment services billed on August 21, 2000);

- GX 693: Neary and Sons Corp. v. Douglas Development Corp., Civ. Action No. 01-2789 (D.C. Sup. Ct. April 11, 2001) (seeking $31,258.41 for electrical services provided between July 2000 and December 2000);

- GX 694: The Keystone Plus Construction Corp. v. Douglas Development Corp., Civ. Action No. 03-406 (D.C. Sup. Ct. Jan. 21, 2003) (seeking enforcement of settlement agreement and breach of contract damages for nonpayment of $222,348 based on labor and materials provided in 2000);

- GX 695: Neco Construction & Mgmt. Corp. v. Douglas Development Corp., Civ. Action No. 03-2827 (D.C. Sup. Ct. April 11, 2003) (seeking $37,500 for labor and materials provided between June 29, 2001, and August 10, 2001);

- GX 696: Neco Construction & Mgmt. Corp. v. Douglas Development Corp., Civ. Action No. 03-2542 (D.C. Sup. Ct. April 2, 2003) (seeking $88,283.34 for labor

and materials provided at 4800 Addison Road between March 2001 and June 2001);

- GX 697: <u>Washington Gas Light Co.</u> v. <u>Douglas Development Corp.</u>, Civ. Action No. 03-5579 (D.C. Sup. Ct. July 9, 2003) (seeking payment of $13,679.64 for gas bill for February 15, 2002, through June 18, 2003);

- GX 698: <u>Pavement Design & Eng. Consultants, Inc.</u> v. <u>Douglas Development Corp.</u>, Civ. Action No. 01-56 (D.D.C. Jan. 11, 2001) (seeking payment of $96,561.50 for paving and sealing work performed in 2000).

B.    <u>Suit and Related Statements Regarding Dispute with District of Columbia.</u>

On July 29, 2003, the District of Columbia filed a complaint in the District of Columbia Superior Court against Douglas Development Corporation, Cayre Jemal's Gateway, L.L.C., Douglas Jemal, Blake C. Esherick, and Michael A. Lorusso for false claims, false statements, conversion, common law fraud, unjust enrichment, and (as to Lorusso only) breach of fiduciary duty. See <u>District of Columbia</u> v. <u>Douglas Development Corporation</u>, Civ. Action No. 03-6457 (D.C. Sup. Ct. July 29, 2003), Complaint. On September 9, 2003, defendants Douglas Development Corporation, Cayre Jemal's Gateway, L.L.C., and Douglas Jemal filed their answer, in which they denied the allegations in the City's complaint and brought counterclaims for breach of contract and unjust enrichment. See <u>id.</u>, Answer (Sept. 9, 2003). The parties to the litigation settled the lawsuit in or around March of 2004.

## II.    Legal Background

Rule 408 of the Federal Rules of Evidence provides:

"Evidence of (1) furnishing of or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a

witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or proceeding."

Fed. R. Evid. 408.

There are three limitations to the application of Rule 408, each of which is significant to analyzing defendants' motions. First and foremost, the Rule does not bar evidence of disputes, including lawsuits filed in connection with such suits; it only bars evidence of settlements and settlement negotiations. See id.

Second, the Rule only applies to"a claim which was disputed as to either validity or amount." See id. Thus, the drafters of the Rule note that

> "[t]he policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an admittedly due amount for a lesser sum. Hence the rule requires that the claim be disputed as to either validity or amount."

Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rules (citation omitted).[4]

Third, Rule 408 does not bar settlement-related information that is offered for a non-forbidden purpose, as it only bars the use of such evidence to "to prove liability for or invalidity of [a disputed] claim or its amount." Fed. R. Evid. 408. Thus, the Rule notes several situations

---

[4]    As noted in a leading treatise,
"[t]he [Rule's Advisory Committee's] Note requires a careful distinction between a frank disclosure during the course of negotiations—such as, "All right, I was negligent. Let's talk about damages"(inadmissible)—and the less common situation in which both the validity of the claim and the amount of damages are admitted—"Of course, I owe you the money, but unless you're willing to settle for less, you'll have to sue me for it" (admissible)."

Joseph M. McLaughlin et al., Weinstein's Federal Evidence § 408.06, at 408-25 (2d ed. 2006); see also In Re B.D. Int'l Discount Corp., 701 F.2d 1071, 1074 n.5 (2d Cir. 1983) (affirming trial court's admission of statement acknowledging debts owed to creditor because, at time of negotiation, validity and amount of claims not in dispute and debtor simply sought more time to pay); Firestone Tire & Rubber v. Hillow, 65 A.2d 338, 339-40 (D.C. Ct. App. 1949) (affirming trial court's admission of statement acknowledging liability for damage to plaintiff's automobile and promising to pay claimed amount less salvage costs because statement "unconditional and unqualified acknowledgment of liability and promise to pay").

where settlement information is not excludable, "such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or proceeding." Id. (emphasis added). The words "such as" indicate that the Rule does not list the only permissible uses of settlement information.[5]

Thus, courts have routinely admitted settlement-related evidence to show motive, see Resolution Trust Corp. v. Blasdell, 154 F.R.D. 675, 681 (D. Ariz. 1993) (admitting evidence of settlement letters and negotiations, over Rule 408 objections, to show motive); to show a scheme, see Broadstone Capital Corp. v Summa Med. Corp., 972 F.2d 1183, 1194 n.16 (10th Cir. 1992) (noting that Rule 408 would not bar settlement-related evidence offered to show defendant's loan scheme); and to show other violations, see Carney v. American Univ., 151 F.3d 1090, 1095 (D.C. Cir. 1998) (reversing trial court that forbid use of settlement letters proffered as being relevant to show independent civil rights violation unrelated to claim that was subject of letters).

## ARGUMENT

**I.     Rule 408 Does Not Bar Evidence of Civil Lawsuits or Settlements in Criminal Cases.**

The defendants' motions in limine should be denied as an initial matter because, as the Second, Sixth, and Seventh Circuits have held,[6] Rule 408 should not be held to apply at all to

---

[5]     Indeed, the drafters note that "bias," "prejudice," "undue delay," and "obstruction of justice" are only "illustrative situations." See Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rule; see also Charles A. Wright & Kenneth W. Graham, Jr., 23 Fed. Practice & Procedure § 5314 (1980) ("The listing of permissible uses of compromise evidence in Rule 408 is illustrative, not exhaustive. Any such use of evidence that is beyond the scope of the rule is permissible even if not mentioned * * *.") (footnote omitted).

[6]     The District of Columbia has yet to decide this issue. One case notes Rule 408 in passing. See United States v. Graham, 91 F.3d 213, 218 (D.C. Cir. 1996 ) ("The subject of [Rule 408] is the admissibility of evidence (in a civil or criminal case) of negotiations undertaken to 'compromise a claim' in a civil action * * *.") (dicta). But that discussion was not relevant to

-8-

criminal cases.  See United States v. Baker, 926 F.2d 179, 180 (2d Cir. 1991) (affirming stolen

goods convictions in rejecting claim that trial court erred by admitting testimony by defendant to

arresting FBI agent about "making [a] deal[]" in holding that "Rule [408] applies only to civil

litigation."); United States v. Manko, 87 F.3d 50, 55 (2d Cir. 1996) (reversing denial of habeas

petition on the ground that trial court abused its discretion in excluding civil settlement in tax

fraud case because "considerations of Rule 408 are inapplicable in criminal cases."); United

States v. Logan, 250 F.3d 350, 367 (6th Cir. 2001) (affirming false claims and wire fraud

convictions in rejecting claim that trial court erred by admitting settlement agreement because

"the plain language of Rule 408 makes it inapplicable in the criminal context."); United States v.

Prewitt, 34 F.3d 436, 439 (7th Cir. 1994) (affirming mail fraud convictions in rejecting claim

that trial court erred in admitting defendant's settlement-related statements to state agency

because "Rule 408 should not be applied to criminal cases").

      As one Second Circuit panel held, "encouraging settlement does not justify excluding

probative and otherwise admissible evidence in criminal prosecutions.  The public interest in the

disclosure and prosecution of crime is surely greater than the public interest in the settlement of

civil disputes."  United States v. Gonzalez, 748 F.2d 74, 78 (2d Cir. 1984).

      As the defendants note, three Circuit Court cases have applied Rule 408 to block

settlement-related evidence in criminal cases. See United States v. Hays, 872 F.2d 582 (5th Cir.

1989); United States v. Bailey, 327 F.3d 1131, (10th Cir. 2003); United States v. Arias, 431 F.3d

1327 (11th Cir. 2005).

---

the holding, and the issue of Rule 408's applicability to criminal cases was not presented
squarely for decision.

But defendants fail to acknowledge that, in each of those three cases, the settlement-related evidence was direct proof of, or directly related to, the elements in one or more of the charged criminal counts:

- In <u>Hays</u>, the trial court admitted evidence of a settlement agreement the defendants had reached with their savings and loan, and excerpts from civil depositions in which defendants explained why they entered the settlements, when the subject matter of the settlements was relevant to the charged offenses of conspiracy, misapplication of funds, and making false entries in the records of a federally insured savings and loan association. 872 F.2d at 583, 588-89;

- In <u>Bailey</u>, the trial court admitted in a prosecution alleging wire fraud based on misappropriate of partnership funds evidence from a civil settlement that the defendant had admitted withdrawing the partnership funds and placing them into his own account without authorization. 327 F.3d at 1144;

- In <u>Arias</u>, the trial court admitted, in a health care fraud trial alleging among other things that pharmacists were providing only labels and invoices rather than any actual medication, that a defendant pharmacist had admitted to drug-alteration allegations in a state administrative proceeding against him. 431 F.3d at 1336.

In short, all three Circuit Court cases applying Rule 408 to criminal cases do so where the settlement-related evidence is powerful evidence of or directly related to the charged conduct. Here, by contrast, the government does not intend to introduce evidence of the actual settlement of the District of Columbia's lawsuit. It seeks to introduce evidence of the settlement of suits brought by Douglas Development vendors and a statement made by Douglas Jemal about the whereabouts of funds provided by the District of Columbia. The evidence the government seeks to admit thus will not have the prejudicial effect of the evidence found harmful in <u>Hays</u>, <u>Bailey</u>, and <u>Arias</u>.

Accordingly, the Court should adopt the position of the Second, Sixth, and Seventh Circuits and hold that Rule 408 does not apply to bar evidence of civil settlements in criminal cases. But, in any event, it should not exclude settlement-related evidence here because the

evidence in question does not directly prove the charged conduct; and thus it is not at all similar

to the situations in Hays, Bailey, or Arias.

## II.    The Court Doesn't Have to Decide Whether Rule 408 Applies to Criminal Cases, Because the Relevant Evidence Here is Otherwise Admissible.

Although the Court should deny defendants' motions on the grounds that settlement

related evidence is not barred by Rule 408 in criminal cases, it does not need to decide that issue;

for the motions should also be denied because the evidence the government seeks to introduce is

squarely admissible under Rule 408.

### A.    Evidence About Disputes and Lawsuits is Admissible Under Rule 408.

The government is entitled to introduce evidence concerning the disputes between

Douglas Development Corporation and its vendors and evidence about lawsuits that arose from

those disputes; for Rule 408 only concerns settlements and settlement negotiations, not the suits

and disputes that preceded them.

Defendant nevertheless argue, in direct conflict with the Rule, that Rule 408 bars not only

settlement-related evidence (which is generally true but not dispositive here) but also evidence of

civil complaints and the disputes that led to the complaints (which is false).  See, e.g., Defs. D.C.

Settlement Mot. at 1 (moving to "exclude any evidence referencing the False Claims lawsuit");

Defs. D.C. Settlement Mem. at 1 ("moving to exclude "evidence that refers to * * * [the City's]

civil False Claims lawsuit" and "Defendants' agreement to settle the lawsuit"); id. at 4 ("The

Court should prohibit the government from introducing evidence regarding the prior False

Claims lawsuit or its settlement * * *."); Defs. Vendors Settlements Mot. at 1 (moving to

exclude "any evidence relating to nine settled lawsuits"); Defs. Vendors Settlements Mem. at 1

(seeking to "prohibit the government from introducing at trial any evidence relating to nine civil

lawsuits (and/or the agreements to settle those lawsuits)"); id. at 5 (arguing that Court should "preclude the government from introducing or referring to any of the lawsuits and/or their settlement").

Significantly, defendants cite no authority—no case, no treatise, no law review article— to support their position that Rule 408 bars not only settlement-related evidence but dispute-related evidence. The most likely reason they cite no such authority is that it finds absolutely zero support in the Rule. The plain language of the Rule does not bar any and all evidence related to disputes—e.g., the facts about the disputes and the civil complaints that flesh out the disputes—it only bars "[e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount * * *." Fed. R. Evid. 408.[7] That is, it only bars evidence dealing with the settlement of disputes, not about the disputes themselves.

That distinction is critical, for it helps explain why much of defendants' motions in limine is overbroad. The government intends to introduce, and is not barred under Rule 408 from introducing, (a) the fact of the District of Columbia lawsuits against Douglas Development Corporation, including the date on which it was filed; and (b) the facts of various lawsuits brought against Douglas Development by its vendors for non-payment, including the disputes

---

[7]    If defendants' unsupported reading of Rule 408 were correct, the language "(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise" would be superfluous; it would be enough for the Rule to have said "Evidence of a disputed claim is not admissible." See Donnelly v. Fed. Aviation Admin., 411 F.3d 267, 271 (D.C. Cir. 2005) ("We must strive to interpret a statute to give meaning to every clause and word, and certainly not to treat an entire subsection as mere surplusage.").

that led up to the filing of the lawsuits.  The Court should thus reject defendants' unsupported attempt to stretch Rule 408 well beyond its plain language and inherent policy choices.

Thus, at a bare minimum, the fact of the lawsuits brought by vendors and the District of Columbia is admissible.

B.    The Settlement Evidence Here Is Admissible Under Rule 408.

Even though evidence of disputes and lawsuits is undoubtedly admissible under Rule 408, the Court can and should admit more than just that evidence.  It should also admit evidence about the discussions and settlement of the vendors' lawsuits against Douglas Development Corporation, and it should admit certain statements made by Douglas Jemal regarding the validity and amount of money given to Douglas Development by the District of Columbia for developing the basement of 77 P Street.

The Court should do so on two grounds:  (1) most, if not all, of the disputes are not genuine, but are, instead, non-payment "disputes" about "admittedly due amount[s],"[8] such that Rule 408 does not apply; and (2) the settlement-related evidence will be offered for purposes not forbidden by Rule 408, viz., to show the defendants' motives and as direct evidence of the fraudulent schemes.

(i)    Rule 408 Does Not Bar Settlement-Related Evidence Regarding "Disputes" About Admitted Amounts or Debts.

As noted above, since Rule 408 applies only to "claims" that are "disputed as to validity or amount," it does not bar settlement-related evidence relating to claims that are not in genuine dispute.[9]

---

[8]    See Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rules.

[9]    See In Re B.D. Int'l Discount Corp., 701 F.2d at 1074 n.5 (affirming admission of statement acknowledging debts owed to creditor because, at time of negotiation, validity and amount of claims not in dispute and debtor was simply seeking additional time to pay); Firestone

The government believes that the evidence at trial will demonstrate that most, if not all, of the vendors' lawsuits against Douglas Development involved non-payment of "admittedly due amount[s],"[10] such that settlement-related evidence about the disputes is not excluded under the Rule.

For example, on December 21, 2001, a Gaithersburg, Maryland corporation, Stalker Brothers, Inc., filed a breach-of-contract complaint in the District of Columbia Superior Court seeking $74,619.00 for dry wall, painting, and wall covering work done from July 27, 1999, through August 31, 2001, at Douglas Development's 77 P Street property.  See Stalker Bros., Inc. v. Cayre Jemal Peoples, Inc., Civ. Action No. 02-265 (D.C. Sup. Ct. Jan. 14, 2002), Complaint at ¶¶ 2, 3, 6, 8.  Douglas Development had provided partial payment, but, according to the complaint, it had not made good on the remaining balance of nearly $75,000.  On February 19, 2002, defendants filed their answer to the Complaint, in which among their numerous affirmative defenses they formally asserted that "Defendant admits that Plaintiff has not been paid but disputes that Plaintiff is entitled to the amount of money as alleged in this Complaint."  See id., Answer at ¶ 8 (Feb. 19, 2002).  Despite having formally asserted that the debt was disputed, Douglas Development on or about April 11, 2002, gave a check to Stalker Brothers, Inc. for $74,619—the entire amount sought in the Complaint.  That Douglas Development paid the entire, claimed amount belies any notion that the amount was ever truly in dispute.  Under the circumstances, evidence related to the settlement of that complaint should not be barred by Rule 408 because the debt and its amount were undisputed.

Tire & Rubber, 65 A.2d at 339-40 (affirming admission of statement acknowledging liability for damage to plaintiff's automobile and promising to pay claimed amount less salvage costs because statement "unconditional and unqualified acknowledgment of liability and promise to pay").

[10]    Fed. R. Evid. 408, Advisory Comm. Note to 1972 Proposed Rules

-14-

The remaining suits similarly show that the disputes were not genuine and should not be barred under Rule 408:

- As to the <u>Tri County Industries</u> suit, Douglas Development records reveal that, notwithstanding the numerous affirmative defenses set forth in its answer, Douglas Development engaged in a pattern of regular payments that appear to have paid nearly the entire debt;

- As to the <u>Pavement Design & Engineering</u> suit, Douglas Development entered into a settlement agreement to pay the entire amount ($100,000) pursuant to a payment plan and to pay $110,000 if it breached the plan. Douglas Development thereafter breached, and plaintiffs obtained an order from U.S. District Court Judge Thomas Penfield Jackson permitting them to garnish Douglas Development's bank account for the balance due of $35,000 plus 18 percent interest. This was clearly a bona fide debt, settled in full, following yet another breach upon settlement;

- There are additional particular indicia of reliability associated with the <u>Keystone Plus Construction</u> lawsuit. The Court records reveal that the original debt was over $500,000 and Keystone and Douglas Development "settled" this debt for $450,000, pursuant to a payment plan. Only when Douglas Development breached the payment plan did Keystone bring suit to enforce the agreement.

    (ii)    Rule 408 Does Not Bar Settlement-Related Evidence
                 <u>Offered For Non-Forbidden Purposes</u>.

The settlement-related evidence about the disputes is also admissible because it is being offered for a legitimate, non-forbidden purpose: to show motive.

As noted above, Rule 408 does not bar settlement-related information that is offered for a non-forbidden purpose, as it only bars the use of such evidence to "to prove liability for or invalidity of [a disputed] claim or its amount." Fed. R. Evid. 408.

The suits by the various vendors are highly probative of the financial situation facing Douglas Development Corporation: despite owning over 100 properties, Douglas Jemal was facing a cash crunch in the time period described in the Indictment, such that it was financially critical for the defendants to find tenants for properties that were unfilled but which generated ongoing interest, property tax, and other expenses regardless of their tenant status; and the

-15-

financial crunch facing Douglas Development was reflected in its continuing and widespread inability to pay its creditors on a timely basis. Hence the disputes with vendors are probative of the defendants' financial condition and thus relevant to show the defendants' motives in bribing a public official who could assist them in filling unleased properties with paying government tenants. See Resolution Trust Corp., 154 F.R.D. at 681 (holding that Rule 408 does not bar settlement-related evidence offered to show motive).

Another potential settlement-related portion of evidence the government seeks to introduce at trial is a statement made by Douglas Jemal at a meeting with District of Columbia officials to discuss a variety of issues, including the whereabouts of $863,299.28 provided by the City to Douglas Development on or about September 28, 2001, for construction of New Economy Act space in the basement of his 77 P Street property. At that meeting, Douglas Jemal represented that the money provided to Douglas Development (but which had not been spent on construction in the basement of 77 P Street), had been placed "in escrow" for the City.

The government expects that the evidence at trial will conclusively demonstrate that Jemal's assertion was false and that it offers, among other things, concrete evidence of his knowledge and participation in a scheme to defraud the District of Columbia. That is because the evidence will demonstrate that the $863,299.28 provided to Douglas Development was not placed in escrow for the City's benefit but was, instead, immediately upon receipt from the City put into the Douglas Development Corporation's operating account, after which a check for half that amount, or $431,000, was sent to one of Jemal's partners, Joseph Cayre, because Jemal was facing pressure from Cayre to pay partnership debts. Hence the government will seek to introduce Jemal's statement to D.C. officials about the City's money being held in escrow—not

as proof that Douglas Development owed that money to the City[11]—but to show the falsity of the assertion and as proof of Jemal's scheme. See Broadstone Capital Corp, 972 F.2d at 1194 n.16 (holding that Rule 408 does not bar settlement-related evidence offered to show a scheme).

### III.   The Suits, Statements, and Settlements Are Highly Relevant.

As discussed above, contrary to defendants' claims, the disputes and settlements of the vendors' disputes, as well as Jemal's statements about City money purported in escrow, are highly relevant to establish the defendants' motives and (as to Jemal's statements) relevant to establishing fraud. Moreover, although vendor disputes and lawsuits arising from the properties at 77 P Street, 4800 Addison Road, and the 400 block of Massachusetts Avenue are particularly relevant, given the central role they play in this case, all the vendor disputes in an around the period described in the Indictment are relevant to showing the financial difficulties of Douglas Development Corporation. They are therefore admissible under Rule 402.

### IV.   The Evidence Should Not Be Excluded Under Rule 403.

#### A.   The Evidence Is Not Unfairly Prejudicial.

The evidence relating to Douglas Development Corporation's inability to pay its creditors on a timely basis has a very significant probative value. Any prejudice to the defendants from this evidence is more than outweighed by its probative value. In particular, the government is not seeking to introduce this evidence to suggest that "[d]efendants engaged in wrongdoing relating to their business." See Defs. Vendor Settlements Mem. at 7. It is doing so to give the jury a reason for them to understand why someone like the defendants would, despite their seemingly large financial and real-estate holdings, engage in criminal conduct.

---

[11]   Jemal's statement is also admissible under Rule 408 because it is acknowledging that the $863,299.28 is actually owed: if the money were placed in escrow for the City's benefit, there could be no genuine dispute that the money was owed to the City; and, if there is no genuine dispute about a debt, Rule 408 does not bar statements about that debt.

B.    The Evidence Will Not Be Unduly Time-Consuming.

The government respectfully submits that evidence concerning the disputes and settlement with vendors will not consume significant trial time. The defendants contend that they would be forced to "call additional witnesses, and introduce additional exhibits to explain each of the different allegations in the nine lawsuits, as well as the reasons why each suit was settled." Defs. Vendor Settlements Mem. at 7. But if, as the government believes, the evidence would show the defendants largely paid at or near the full amount requested in the complaints, there are not likely to be genuine contested issues.[12]

Moreover, the suits and settlements are being offered to show the financial pressures facing the defendants, and the defendants have other ways to rebut the inference the government seeks to draw. Indeed, the defense has informed the government that it intends to call an expert who seeks to opine that the 77 P Street property was not a significant financial risk to Douglas Jemal.[13]

In short, there is little reason to believe that evidence concerning the disputes and settlements relating to Douglas Development vendors will take up extensive trial time, particularly since the government possesses certified copies of the court files. See Fed. R. Evid. 902.

---

[12]    Once again, defendants raise the specter of mini-trials to bolster otherwise weak arguments. The defendants will put on the defense of their choosing, subject to the Rules of Criminal Procedure, the Rules of Evidence, and the Orders of the Court. But the vague threat of multiple (unnecessary and unfounded) mini-trials should not qualify as a reason to exclude highly probative evidence.

[13]    See Defendants' Expert Disclosure of Oakleigh J. Thorne, Opinion 4 ("Mr. Thorne believes that, based on the equity available in the portfolio of properties owned by Douglas Jemal related entities, 77 P St. did not represent any substantial cash or investment risk to Mr. Jemal through 2001."). Thus, the defense wishes to introduce a retroactive analysis of the salutary financial health of Douglas Development properties while precluding far more probative contemporaneous records that cast such a rosy view into question.

-18-

**CONCLUSION**

The defendant's motions in limine should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


By: _____
Mark H. Dubester
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that, on the 12th day of July, 2006, I caused to be served by e-mail, and that on this 13th day of July I caused to be served by electronic filing, a copy of the foregoing motion and following proposed order to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney

-20-

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **UNITED STATES** | ) | |
| | ) | |
| **v.** | ) | **Crim. No.  05-0359-1, -2, -3 (RMU)** |
| | ) | |
| **DOUGLAS JEMAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## CONSOLIDATED REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE* (1) TO EXCLUDE EVIDENCE OF PRIOR, UNRELATED, SETTLED VENDOR/CONTRACTOR LAWSUITS AND (2) TO EXCLUDE EVIDENCE OF PRIOR RELATED CIVIL LAWSUIT AND SETTLEMENT

Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick ("Defendants"), through counsel, hereby submit this reply memorandum of law in further support of their motions *in limine* to prohibit the government from introducing at trial any evidence that refers to (1) nine settled lawsuits filed by various vendors and contractors against Douglas Development Corporation ("DDC") and other entities owned by Defendant Douglas Jemal (the "vendor/contractor lawsuits"), and (2) the District of Columbia's settled civil False Claims lawsuit against Defendants Douglas Jemal and Blake Esherick (the "District lawsuit"). This evidence should be barred as irrelevant under Federal Rule of Evidence 402, unduly prejudicial under Federal Rule of Evidence 403, and inadmissible evidence of compromise negotiations under Federal Rule of Evidence 408.

## I.    ARGUMENT

### A.    The Court Should Exclude Evidence Relating To The Vendor/Contractor Lawsuits Under Rules 402 and 403

Evidence relating to the vendor/contractor lawsuits against DDC and other Douglas Jemal entities is irrelevant and should not be admitted at trial. As discussed in more detail in Defendants' moving papers, five of the lawsuits (Government Exhibits 691, 692, 693, 697 and 698) stem from disputes involving properties that are not even referenced in the Indictment. The other four lawsuits (Government Exhibits 690, 694, 695 and 696) relate to work performed by contractors at 77 P Street or Addison Road, but the Indictment makes no allegation that any invoice relating to such work was false or inflated. Additionally, four of the lawsuits and settlements (Government Exhibits 692, 693, 694 and 698) predate Lorusso's tenure with the District. Because none of the lawsuits bear on the allegations in the Indictment, they do not "hav[e] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would [otherwise] be," Fed. R. Evid. 401, and should be excluded from admission at trial.

The government contends that evidence of these unrelated, settled lawsuits is relevant to show Defendants' alleged financial distress and motive for committing the charged crimes. However, even if marginally relevant, any probative value is substantially outweighed by the unfair prejudice to Defendants and the "needless presentation of cumulative evidence." Fed. R. Evid. 403. A company's settlement of civil lawsuits does not establish financial distress, but is highly prejudicial to Defendants because jurors may make incorrect inferences from multiple suits about Defendants' business practices. Moreover, such evidence may require Defendants to introduce additional evidence about these lawsuits and settlements to provide

appropriate context.  Finally, the government itself has admitted that evidence of the

vendor/contractor lawsuits is unnecessary and cumulative, by conceding that "[t]here are of

course other ways the government could try to make this point."  Government's Opposition to

(1) Defendants' Motion *In Limine* to Exclude Evidence of Prior Related Civil Lawsuit and

Settlement, and (2) Defendants' Motion *In Limine* to Exclude Evidence of Prior, Unrelated,

Settled Vendor/Contractor Lawsuits ("Opp'n") at 2 n.3.  There is no reason or need to extend the

scope of this trial to include discussion of the vendor/contractor lawsuits.

### B.    The Court Should Exclude Evidence Relating To The Vendor/Contractor Lawsuits Pursuant to Rule 408

Evidence of the vendor/contractor lawsuits is also prohibited under Federal Rule

of Evidence 408.[1] The government argues that Rule 408 does not bar admission of evidence of

---

[1] As set forth more completely in Defendants' moving papers, Defendants urge the Court to follow the *dicta* of the U.S. Court of Appeals for the District of Columbia Circuit in United States v. Graham, 91 F.3d 213 (D.C. Cir. 1996), as well as the holdings of the Fifth, Tenth and Eleventh Circuits, see United States v. Hays, 872 F.2d 582, 589 (5th Cir. 1989); United States v. Bailey, 327 F.3d 1131, 1146 (10th Cir. 2003); United States v. Arias, 431 F.3d 1327, 1338 (11th Cir. 2005), and find that Rule 408 applies to criminal cases.  See Graham, 91 F.3d at 218 ("[t]he subject of [Rule 408] is the admissibility of evidence (in a civil or criminal case) of negotiations undertaken to 'compromise a claim' in a civil action . . . .") (citation omitted) (emphasis added).

The government attempts to distinguish the application of Rule 408 in Hays, Bailey and Arias by claiming that in those cases "the settlement-related evidence was direct proof of, or directly related to, the elements in one or more of the charged criminal counts."  Opp'n at 10; see also id. at 10-11 ("[A]ll three Circuit Court cases applying Rule 408 to criminal cases do so where the settlement-related evidence is powerful evidence of or directly related to the charged conduct.").  However, the government acknowledges that "the settlement-related evidence will be offered . . . as direct evidence of the fraudulent schemes" in the Indictment.  Id. at 14.  This basis is similar to that offered by the government in Hays, and rejected by the court.  See Hays, 872 F.2d at 589 ("[T]he Government urges that that evidence of the settlement agreement assisted the jury in its understanding of the breadth of the conspiracy.  In our view, this purpose stands at direct odds with the clear mandates of Rule 408 . . . .").

the lawsuits' existence, and does not bar evidence offered for purposes other than to prove liability for the claim.  Opp'n at 2-3.  But a close reading of the government's brief reveals that the government does not merely wish to rely on the fact of the lawsuits or offer the evidence for a permitted purpose.  Rather, the government argues that the lawsuits are relevant because they demonstrate "the existence of significant cash problems" at DDC.  Id. at 2.  Such an inference is based, however, on the proposition that DDC and the other entities were in fact liable for the claims at issue -- which is exactly the purpose Rule 408 prohibits.  Fed. R. Evid. 408 (settlement evidence "not admissible to prove liability for or invalidity of the claim or its amount").  The government does not cite to any case in which evidence similar to that at issue here was admitted as proof of a defendant's criminal motive.  The single case relied on by the government for the proposition that the evidence it seeks to introduce is admissible as proof of Defendants' motive is a civil case in which a district court allowed evidence regarding the pre-complaint negotiations between the parties in order to demonstrate the plaintiff's motive to file a retaliatory lawsuit against the defendants.  See Resolution Trust Corp. v. Blasdell, 154 F.R.D. 675, 681 (D. Ariz. 1993).  Thus, it is inapposite to the present case and cannot serve as the basis for the admission of the contested evidence.

        The government also argues that none of the lawsuits involved fall within the scope of Rule 408 because the amounts at issue were not "truly in dispute."  Opp'n at 14.  Contrary to the government's position, however, DDC or another entity initially litigated each of these matters and thus disputed the claims.  The settlement of a claim does not indicate that the amount at issue was never truly in dispute, because there are any number of reasons that a party may choose to settle a lawsuit.  It may be an economic decision to settle rather than bear the

costs of litigation, or "a desire for peace rather than from any concession of weakness of position." Fed. R. Evid. 408 advisory committee note.

### C.    Evidence Relating To The District Lawsuit Should Not Be Admitted At Trial

For similar reasons, the Court should also exclude evidence of the District lawsuit at trial. First, the government states in its opposition brief that it intends to introduce "the fact of the District of Columbia lawsuits [*sic*] against Douglas Development Corporation, including the date on which it was filed." Opp'n at 13. However, the fact that Defendants Douglas Jemal and Blake Esherick were engaged in litigation with the District and agreed to settle that lawsuit is not probative of the charges in this case. The claims and counterclaims in the District lawsuit were settled without ever being presented to a factfinder, and thus the "fact" of the lawsuit merely comprises a set of unproven allegations that can only serve to prejudice the jury against Defendants.

The government also intends to introduce a statement made by Defendant Douglas Jemal to a District of Columbia official in the course of compromise discussions about $863,000 being "in escrow." Id. at 3. The government claims that Jemal's statement is admissible because (1) the government asserts it is false and (2) "it is acknowledging that the $863,299.29 is actually owed." Id. at 17 & 17 n.11. However, as the factual context and timing of the statement clearly demonstrate -- the District lawsuit was filed in July of 2003 and the statement was made in the summer of 2003 -- Jemal spoke in the course of compromise negotiations with the District in an effort to resolve the lawsuit. Therefore, the statement falls squarely within Rule 408's prohibition and is not admissible. See Fed. R. Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is likewise not admissible."); see also Bailey, 327 F.3d at 1146

(district court erred by allowing testimony that defendant had admitted in settlement agreement to withdrawing over $1.3 million from partnership accounts and placing the funds in his account).  Moreover, a statement that funds are in escrow does not suggest that the amount is no longer in dispute.  To the contrary, funds may be placed in escrow while a dispute is being resolved.

The government contends that Jemal's statement is relevant because it demonstrates motive and is "concrete evidence of his knowledge and participation in a scheme to defraud the District of Columbia."  Opp'n at 17.  Again, the government's argument is framed in terms of motive, but actually focuses on the validity of the claim.  Because this purpose is forbidden by Rule 408, however, the government should be precluded from introducing the statement at trial.  In addition, for the reasons stated above with respect to the vendor/contractor lawsuits, the government has cited no authority for the proposition that a statement made in the course of civil settlement negotiations can be admitted to prove motive without implicating Rule 408.

## II.    CONCLUSION

For the foregoing reasons, Defendants request that the Court prohibit the

government from offering any evidence at trial related to the vendor/contractor lawsuits or the

District lawsuit.

Respectfully submitted,

_____

Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: July 18, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
UNITED STATES                           )
                                        )
        v.                              )        Crim. No.  05-359-1, -2, -3 (RMU)
                                        )
DOUGLAS JEMAL, *et al.*,                )
                                        )
                Defendants.             )
_____)

**LIST OF PRIOR CONVICTIONS**

There are no convictions of the Defendants.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| ) | |
| **UNITED STATES** ) | |
| ) | |
| **v.** ) | **Crim. No. 05-359-1, -2, -3 (RMU)** |
| ) | |
| **DOUGLAS JEMAL,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**GOVERNMENT'S LIST OF EXHIBITS**[1]

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 1 | Rolex Watch | | | | |
| 2 | Cowboy boots | | | | |
| 3 | Cowboy boots | | | | |
| 3A | Photo of 2 & 3 | | | | |

---

[1] Because of the volume of exhibits, the parties will submit numbered copies of the exhibits to the Court on CD rather than including them in this submission.

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 4 | Travel Agency Records | | | | |
| 4A | Declaration of Records Custodian | | | | |
| 5 | Fidelity Bank Records | | | | |
| 5A | Declaration of Custodian - Fidelity | | | | |
| 6 | ADP Records - Employer and employee W-2s 2002 | | | | |
| 7 | ADP Records - Employer and employee W-2s 2003 | | | | |
| 6A | Declaration of Records - ADP | | | | |
| 8 | Settlement Docs - 111 Mass Ave | | | | |
| 8A | Declaration of Custodian – Commercial Settlements | | | | |
| 9 | **[NOT YET MARKED]** | | | | |
| 10 | Bellagio Hotel Records for 2001 | | | | |
| 10A | Declaration of Custodian | | | | |
| 11 | Bellagio Hotel Records for 2002 | | | | |
| 12 | Photos of Bellagio | | | | |
| 13 | Records from J Brown Jewelers | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 13A | Declaration of Custodian of Records | | | | |
| 14 | Records from the Boot Barn | | | | |
| 14A | Declaration of Records Custodian | | | | |
| 15 | Records from the Barbary Coast | | | | |
| 15A | Declaration of Custodian of Records from Barbary Coast Hotel | | | | |
| 16 | Records from Domains | | | | |
| 16A | Declaration of Custodian of Records | | | | |
| 17 | HBL Records | | | | |
| 17A | Declaration of Custodian - HBL | | | | |
| 18 | Sabra Amex | | | | |
| 18A | Declaration - See 60A | | | | |
| 19 | Douglas Development Amex | | | | |
| | **DOCUMENTS GENERALLY RELATED TO ESHERICK** | | | | |
| 20 | 1998 Esherick Return | | | | |
| 21 | 1998 IRS Information Reports Program (IRP) | | | | |
| 22 | 1999 Esherick 1040 | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 23 | 1999 Esherick IRP | | | | |
| 24 | 2000 1040 - ESHERICK | | | | |
| 25 | 2000 IRP - ESHERICK | | | | |
| 26 | 2001 1040 - ESHERICK | | | | |
| 27 | 2001 IRP - ESHERICK | | | | |
| 28 | 2002 1040 - ESHERICK | | | | |
| 29 | 2002 IRP - ESHERICK | | | | |
| 30 | 2003 RETURN - ESHERICK | | | | |
| 31 | IRP 2003 - ESHERICK | | | | |
| 32 | 2002 Amended Return - ESHERICK | | | | |
| 33 | 2001 Amended Return - ESHERICK | | | | |
| 34 | 2004 1040 - ESHERICK | | | | |
| 35 | Smith Barney Records | | | | |
| 35A | Affidavit | | | | |
| 36 | BBT Esherick Bank Records - 2001 | | | | |
| 36A | Declaration of BBT Records Custodian | | | | |
| 37 | BBT Esherick records - 2000 | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| 37A | BBT Declaration of Custodian | | | | |
| 38 | Eagle Bank records - Esherick | | | | |
| 38A | Eagle Bank Declaration of Custodian | | | | |
| 38B | Eagle Bank Deposit Items | | | | |
| 38C | Eagle Bank cover letter with Deposit Items | | | | |
| 38D | Eagle Bank, new items per Rule 17(c) subpoena | | | | |
| 38F | Custodian Affidavit for 38D | | | | |
| 39 | Eagle Bank Credit Application records | | | | |
| 40 | Adams Bank Records - ESHERICK | | | | |
| 40A | Adams Bank Declaration of Records Custodian | | | | |
| 41 | Cap One Credit Card - ESHERICK | | | | |
| 41A | Custodian of Records Declaration | | | | |
| 42 | BBT records - less than $250 - | | | | |
| 42A | Declaration of BBT Records Custodian | | | | |
| 43 | BBT & T small Items, rule 17(c) subpoena | | | | |
| 43A | (Invoice with 43) | | | | |
| 44 | Bank or America (Rule 17c) credit card records | | | | |

The title at the top of the table reads: UNITED STATES v. JEMAL et al

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 44A | Affidavit from Bank of America | | | | |
| 45 | ESHERICK deposition, 3/25/04 | | | | |
| 46 | ESHERICK trial testimony | | | | |
| 47 | ESHERICK financial statement | | | | |
| 48 | 12/07/01 - Complaint for Absolute Divorce - Blake Esherick and Barbara Gill | | | | |
| 49 | Child Support Obligation Worksheet | | | | |
| 50 | Records from Regional Title | | | | |
| 50A | Declaration of Custodian - Regional Title | | | | |
| 51 | D. Jemal Settlement Statement | | | | |
| 52 | N. Jemal Settlement Statement | | | | |
| 53 | First Liberty National Bank Records | | | | |
| 53A | Declaration of Records Custodian | | | | |
| 54 | MTD Records - Adams National Bank | | | | |
| 54A | Declaration of Custodian of Records | | | | |
| 55 | Articles of Incorporation - MTD | | | | |
| 56 | Certifcate of of Lack of Record of Tax Returns - MTD - 2000-2003 | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v.  JEMAL et al | | | | |
| 57 | Esherick transcript | | | | |
| 58 | Specified DDC payroll account  records for 2000 | | | | |
| 59 | NOT MARKED | | | | |
| | | | | | |
| | **DOUGLAS JEMAL DOCUMENTS** | | | | |
| 60 | D. Jemal Amex | | | | |
| 60A | Declaration of Custodian of Records | | | | |
| 61 | Adams Bank D. Jemal Records (2001) | | | | |
| 61A | Declaration of Custodian of Records | | | | |
| 62 | N. Jemal- Adams Bank Jemal Records | | | | |
| 63 | D. Jemal Adams Bank Checks | | | | |
| 64 | D. Jemal, First Union Account__ | | | | |
| | | | | | |
| | **NORMAN JEMAL DOCUMENTS** | | | | |
| 65 | N.  Jemal Amex Account xxx 26004 | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 65A | Declaration of Custodian of Records | | | | |
| 66 | N. Jemal Amex Acct. xxx 21003 | | | | |
| 67 | N. Jemal Amex Acct. xxx11009 [Optima] | | | | |
| 68 | HSBC, CAYRE-JEMAL GATEWAY RECORDS | | | | |
| 69 | Miscellaneous DDC documents | | | | |
| | | | | | |
| | **MISCELLANEOUS TAX DOCUMENTS** | | | | |
| 70 | 1999 Jemal's Fairfield Farms (JFF), Form 1065 | | | | |
| 71 | 2000 JFF Form 1065 | | | | |
| 72 | 2001 JFF Form 1065 | | | | |
| 73 | 2001 work papers for JFF 1065 | | | | |
| 74 | 2002 JFF Form 1065 | | | | |
| 75 | 2002 work papers for JFF 1065 | | | | |
| 76 | Hotek-Brownell correspondence | | | | |
| 77 | 1998 Cayre Jemal People's 1065 and work papers | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 78 | 1999  Cayre Jemal People's 1065 and work papers | | | | |
| 79 | 2000  Cayre Jemal People's 1065 and work papers | | | | |
| 80 | 2001  Cayre Jemal People's 1065 and work papers | | | | |
| 81 | 2002  Cayre Jemal's Gateway Holdings 1065 and work papers | | | | |
| 82 | 2002 Cayre Jemal's Gateway LLC 1065 and work papers | | | | |
| 83 | 2003 Cayre Jemal's Gateway Holdings 1065 and work papers | | | | |
| 84 | Misc. DDC payroll account records | | | | |
| 85 | excerpts from D. Jemal's 2001 tax return form 1040 & "Trial Balance" DJ/General Ledger | | | | |
| 86 | excerpts from N. Jemal's 2001 tax return | | | | |
| 87 | excerpts from N. Jemal's 2002 tax return | | | | |
| 88 | excerpts from D. Jemal's 2002 tax return | | | | |
| 89 | **[NOT YET MARKED]** | | | | |
| 90 | Erie Insurance | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 91 | Prime Pay - 1999 W-2s | | | | |
| 91A | Prime Pay - Cover letter | | | | |
| 92 | Prime Pay - 2000 W-2s | | | | |
| 93 | Prime Pay - 2001 W-2s | | | | |
| 94 | Prime Pay - N. Jemal pay history, 1999 and 2000 | | | | |
| 95 | Prime-Pay - 2001 W-2s | | | | |
| | | | | | |
| | **SUBPOENAED DDC DOCUMENTS** | | | | |
| 96 | Affidavit by DDC/ Travis re: authenticity of DDC Amex payments | | | | |
| 96A | copies of DDC documents re: Amex payments | | | | |
| 96B | copies of DDC documents re: Otis elevator $1300 invoice | | | | |
| 96C | 11/06/05 D. Jemal subpoena | | | | |
| 97 | Affidavit by DDC/Travis re: authenticity of records produced by subpoena | | | | |
| 98 | Affidavit #1 by Sabra Quinn | | | | |
| 98A | DDC documents re: $38,000 invoice | | | | |

| UNITED STATES v.  JEMAL et al |
|---|---|---|---|---|---|

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| 98B | DDC documents re:  $99,000 invoice | | | | |
| 98C | 12/03/04 DDC subpoena | | | | |
| 99 | Affidavit #2 by Sabra Quinn | | | | |
| 100 | MTD invoice (from 101) | 033613 | | | |
| 101 | folder with documents "Listing Agreement 77 P Street" | 033597-612, 613 (without | | | |
| 102 | 2 voided checks to Staubach | 033364-88 | | | |
| 103 | letter - 12/28/01 Lorusso to O'Brien, re: $97,203.74 payment from pool Acct. | 033389 | | | |
| 104 | Mental Health Tenant Improvement (TI) draw #2 | 33392-033416 | | | |
| 105 | letter - 12/27/01 Lorusso to O'Brien, re: $97,161.50 payment from pool Acct. | 033417-419 | | | |
| 106 | Staubach Memo re: "Invoices DOES TI Draw Pkg 4" (11/01/01) | 033420-452 | | | |
| 107 | Staubach Memo re: "Invoices DOES TI Draw Pkg 3B" (8/28/01) | 033453-498 | | | |
| 108 | Staubach Memo re: "Invoices DOES TI Draw Pkg 2" (7/18/01) | 033499-517 (?) | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| UNITED STATES v. JEMAL et al | | | | | |
| 109 | 4/30/01 Staubach invoice for $97,161.49 | 033518-542 | | | |
| 110 | 8/27/01 HOK invoice with note | 033545-47 | | | |
| 111 | 8/28/01 DOES TI Draw 3A | 033548-554 | | | |
| 112 | 9/13/01 miscellaneous correspondence. - Fremont draw, includes Staubach Co. and HOK | 033555-561 | | | |
| 113 | copy of $67 million loan agreement binder | 009793-010295 | | | |
| 114 | Cochran & Mann invoices, 7/31/01 | 044585 - | | | |
| 115 | Beautify Professional $2,750 invoices, 10/24/01 | - 602 | | | |
| 116 | Documents re: $99,000 | 044597-601 | | | |
| 117 | Brownell-Dimond letter 4/8/03 | 044602 | | | |
| 118 | DDC lease commission documents - $756,061.18 | 046786-046882 | | | |
| 119 | DDC lease commission documents - $526,344.42 | 046817-823 | | | |
| 120 | DDC lease commission documents - $142.722.48 | 046824-829 | | | |
| 121 | MTD folder | 046830-842 | | | |
| 121(A) | OTR/DCRA D.C. Govt. Cashiers Office receipt, $100.00, 8/01/02 | (831) | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 121(B) | Govt. of D.C. Cert. of Organization, 8/01/02 | 833-36 | | | |
| 121(C) | 8/29/02 fax cover sheet to IRS Re: "Form 8832 (MTD)" from Esherick | 837-38, 40 | | | |
| 121(D) | IRS Correspondence | 839, 841 | | | |
| 121(E) | Sabra-Esherick emails about stationery | 42 | | | |
| 122 | Bruce Frazier work documents | 046864-66 | | | |
| 123(A) | DDC - Sabra Amex records, 12/17/01 check 96410 | 040832-857 | | | |
| 123(B) | DDC - Sabra Amex records, 11/16/01 check 95839 | 040858-79 | | | |
| 123(C) | DDC - Sabra Amex records, 10/15/01 check 95144 | 040883-907 | | | |
| 123(D) | DDC - Norm Jemal - Amex, 8/2/01 check 93558 | 040947-950 | | | |
| 123(E) | DDC - Norma Jemal Amex, 7/9/01 check #92873 | 040965-971 | | | |
| 124 | Amex 2002 folder | 040972 | | | |
| 124A | N. Jemal Amex 6/6/02 check 100141 | 041008-011 | | | |
| 124B | N. Jemal Amex 9/12/02 ck. 102286 | 041119-46 | | | |
| 124C | N. Jemal Amex 3/7/02 ck. 98117 | 041221-224 | | | |

| | UNITED STATES v.  JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 125A | refinance folder | | | | |
| 126A | MCI Center 4/4/02 invoice, paid 5/15/02, ck. 99729 | 040226-227 | | | |
| 126B | MCI Center 12/26/01 (CJ check 1/10/02 2388) | 040229-30 | | | |
| 126C | MCI Center 12/01 invoice (4/17/02 ck. 99119) | 040232-34 | | | |
| 126D | MCI Center 11/2/00 (pd. 1/10/01 88896) | no Bates number | | | |
| 126(E) | MCI Center 5/01 invoice, pd. 7/25/01, ck. 93364 | no Bates numbers | | | |
| 127 | DDC to Investment & Loan, Fremont - 9/13/01 letter | 035722-36 | | | |
| 128 | 7/18/01 Staubach DOES TI Draw #2 | 035768-71 | | | |
| 129 | 10/26/01 check # 5455470 Cayre Jemal's Gateway documents re: $929,299.28 | 038946-48 | | | |
| 130 | DC  DOES #1 - 5/23/01 Staubach MEMO to DDC | 036354-83 | | | |
| 131 | letter to Fremont (6/11/01) - includes commission claims for Staubach Co.) and CBRE ($583,793.80) RE: "People's Warehouse Application No. 5" | 036351-54 | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| \multicolumn{6}{UNITED STATES v. JEMAL et al} | | | | | |
| 132 | misc Documents to Fremont, including Staubach Co. invoice for $48,580.75 | 035870-76 | | | |
| 133 | Invoices for 77 P Street, DHS, including pool credit adjustment | 039202-319 | | | |
| 134 | Documents related to Addison Road | 000863-85 | | | |
| 135 | Documents, including proposed letters of intents | | | | |
| 136 | Original DDC documents re: $10/30/01 check to D. Jemal for $100,000 | 047328-330 | | | |
| 137 | Original Spinello lease documents | 000548-63 | | | |
| 138-149 | **[NOT YET MARKED]** | | | | |
| 150 | Folder containing check stubs and check requests for Esherick | 042199-042245 | | | |
| 150A | 12/14/04 check $10,000 to Esherick, #188476 Chck Invoice | | | | |
| 150B | 12/2/04 - $9000 ck, DDC to Esherick, invoice #188062 | | | | |
| 150C | 11/19/04, #1039- $9,000 to Esherick | | | | |
| 150D | 10/29/04, #186536- $4,000 to Esherick | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 150E | 10/21/04, ck. to Esherick #185962- $5,000 | | | | |
| 150F | 10/10/04, ck. to Esherick #85085- $2,500 | | | | |
| 150G | 9/28/04, ck. to Esherick #184807- $3,500 | | | | |
| 150H | 9/15/04, ck. to Esherick #184344- $4,000 | | | | |
| 150I | 9/1/0/04, ck. to Esherick #183752- $9,000 | | | | |
| 150J | 8/6/04, ck. to Esherick ck #181737- $7,000 | | | | |
| 150K | 7/22/04, ck. to Esherick ck. #180856- $4,000 | | | | |
| 150L | 7/9/04, ck. to Esherick ck. #180269- $3,000 | | | | |
| 150M | 6/18/04, ck. to Esherick ck. #178966- $5,000 | | | | |
| 150N | 5/28/04, ck. to Esherick ck. #178208- $5,000 | | | | |
| 150O | 5/11/04, ck. to Esherick ck. #17500- $3,000 | | | | |
| 15OP | 5/4/04, ck. to Esherick ck. #116867- $4,000 | | | | |
| 150Q | 4/22/04, ck. to Esherick ck. #116544- $3,000 | | | | |
| 150R | 4/1/04, ck. to Esherick #115989- $3,000 | | | | |
| 150S | 3/22/04, ck. to Esherick #115613- $3,000 | | | | |
| 150T | 2/25/04, ck. to Esherick # 114946- $4,000 | | | | |
| 150U | 2/2/04, ck. to Esherick #114391- $5,000 | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| 150V | 1/6/04, ck. to Esherick #113906- $3,000 ($108,000 in total) | | | | |
| 151 | Folder with caption "Barbara Gill" | | | | |
| 151A | 12/29/03- $1,356, Ck. #113696 - paid to Barbara Gill | | | | |
| 151B | 12/3/03- $1,356, Ck. #113096 | | | | |
| 151C | 10/28/03- $1,356, Ck. #112472 | | | | |
| 151D | 9/30/03- $1,356, Ck. #111870 | | | | |
| 151E | 9/3/03- 1,356, Ck. #111188 | | | | |
| 151F | 7/29/03- $1,356, Ck. #110369 | | | | |
| 151G | 6/30/03- $1,356, Ck. #109513 | | | | |
| 151H | 6/4/03- $2,400, Ck. #108750 | | | | |
| 151I | 4/29/03- $2,400, Ck. #107767 | | | | |
| 151J | 4/10/03- $2,400 Ck. #106942 | | | | |
| 151K | 3/5/03, $2400, Ck. #106126 | | | | |
| 151L | 2/5/03, $2400, Ck. #105437 | | | | |
| 151M | 12/3/02, $2400, Ck. #104093 | | | | |
| 151N | 10/2/02, $2400, 102721 VOIDED | | | | |

UNITED STATES v. JEMAL et al

| \multicolumn{5}{c}{UNITED STATES v.  JEMAL et al} |
|---|

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| 151O | 10/1/02, $2100, 102711 VOIDED | | | | |
| 152 | Folder Barbara Gill 2004 | 02277-87 | | | |
| 152A | 10 check stubs written to Barbara Gill | 042278-87 | | | |
| 153 | 4/8/03 $50,000 ck. #107104 to Leibner & Potkin, P.C. | 0444616-618 | | | |
| 154 | 4/14/04 $52,523.65, ck 116412 VOIDED, to Esherick | 044619-22 | | | |
| 155 | 9/23/02 $21,000 ck. 102525 - Regional Title Co. | 044623-25 | | | |
| 156A | 9/27/02 - ck.  to Cap One Bank - 102634 - $1500 | 044626-29 | | | |
| 156B | 9/27/02 - ck.  to Cap One Bank - 102635 -$1500 | 044630-33 | | | |
| 157 | misc utility invoices for 6001 Nevada Avenue | 044707-752 | | | |
| 158A | 111609, check to First USA Bank with attachments re: $5677.71, Nevada Avenue | 044753-68 | | | |
| 158B | ck.  111667, $2652.35, 9/18/03 - DC Water & Sewage Authority (DCWASA) re: 6001 Nevada Avenue | 69-79 | | | |
| 158C | ck.  112850, $2093.68, 11/12/03 DC WASA Re: 6001 Nevada Ave. | 80-84 | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 158D | Ck. 112630, $1067.95, 11/5/02 DCWASA Re: 6001 Nevada Ave. | 85-91 | | | |
| 158E | Pepco Invoice, $440.86, Re: 6001 Nevada Ave. | 044814-815 | | | |
| 158F | Ck. #112362, $178.153.98, 10/17/03 to Pepco & attached invoices | 044833-37 | | | |
| 159A | ck #111577, 9/16/03 $4650 to Ruben Lopez | 045307-321 | | | |
| 159B | #110656, 8/7/03, $2688.48, Ruben Lopez | 322-34 | | | |
| 159C | #110755, 8/11/03, $36.15, Rigoberto Lopez | 35-37 | | | |
| 159D | #113831, 12/31/03, $8780, A&H Painting Co. | 38-53 | | | |
| 159E | #110904 8/19/03, $3800 A&H Painting Co. | 54-56 | | | |
| 159F | #110754, 8/11/03, $16,150 - Jose Paz Landscaping, Inc. | 65-61 | | | |
| 159G | #3338, $2000 11/20/03, Jose Paz Landscaping (paid from Cayre Jemal's Peoples) | 62-69 | | | |
| 159H | 52873, $400, 10/14/03, Jose Paz Landscaping (Pd from JC Cayre North Capitol) | 70-76 | | | |
| 159I | #111272, $422.00 Suite Images | 419-20 | | | |
| 159J | #112798 $10,820.16 11/5/03 Washington Gas | 421-89 | | | |
| 159K | #112708, $15,529.96 10/29/03, Washington Gas | 490-532 | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 160 | #111450, $2288.87  9/10/03 - Ck.  to DC Treasurer Re: property tax 6001 Nevada Ave. | 044984-986 | | | |
| 161 | #45609, $105.61 8/11/03 American Express (Jemal's Shops of CC, LLC) | 987-045006 | | | |
| 162A | Esherick W2 - 2000 | 040594 | | | |
| 162B | Esherick W-2 2001 | 040595 | | | |
| 162C | Esherick W-2 2002 | 040596 | | | |
| 162D | Esherick W-2 2003 | 040597 | | | |
| 163 | Folder - Advance Requests (to Esherick) | 040603-621 | | | |
| 163A | #104646  - 12/30/02 - $1000, to Esherick | 04-05 | | | |
| 163B | #101767 8/20/02 $2000, to Esherick | 09-10-11 | | | |
| 163C | #103453 $2000 11/1/02, to Esherick | 12 | | | |
| 163D | #101534 $5000 8/8/02, to Esherick (Reimbursement) | 12-14 | | | |
| 163E | #100648 $3000 7/2/02, to Esherick | 15 | | | |
| 163 F | #99906  5/24/02  $2000, to Esherick | 16-17 | | | |
| 163G | #98084 3/6/02 $3000, to Esherick | 18-19 | | | |
| 163H | #103898  11/21/02 $5000 | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 164 | Advance Requests folder | 040622-652 | | | |
| 164A | Ck Inv. #112895 11/13/03 $3000, to Esherick * | 23-24 | | | |
| 164B | #112274 10/16/03 $2000, Ck. invoice to Esherick     * | 25-27 | | | |
| 164C | #111705 9/23/03 $5000    * | 28-30 | | | |
| 164D | #111989 10/7/03 $3000    * | 31-33 | | | |
| 164E | #111203 9/3/03 $3000 | 34-36 | | | |
| 164F | #110847  8/14/03 $5000   * | 37-39 | | | |
| 164G | #109762  7/8/03 $3000    * | 40-42 | | | |
| 164H | #108515  5/29/03  $3500   * | 42-45 | | | |
| 164I | #108287  5/16/03  $6000   * | 46-47 | | | |
| 164J | #106136 3/5/03 $4000    * | 48-49 | | | |
| 164K | #113459 12/15/03 $5000   * | 50-51 | | | |
| 164L | #113075 $3000 11/25/03   * | 52 | | | |
| 165 | folder "Chrysler Financial Corp." | 044634-044663 | | | |
| 165A | #97015, 1/15/02 $1500 - paid to Chrysler | 635-36 | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 165B | #97858 2/26/02 $1500 | 37-38 | | | |
| 165C | #98278 3/14/02 $1500 | 39-40 | | | |
| 165D | #99194 4/22/92 $1500 | 41-42 | | | |
| 165E | #99914 5/28/02 $1500 | 43-44 | | | |
| 165F | #100393- 6/13/03 $1,500 | 45-46 | | | |
| 165G | #100621- 6/28/02 $1,500 | 47-48 | | | |
| 165H | #101249- 7/26/02 $1,500 | 49-50 | | | |
| 165I | #103088- 10/15/02 $1,500 | 51-52 | | | |
| 165J | #103839- 11/19/02 $1,500 | 53-55 | | | |
| 165K | #106580- 3/18/03 $1,500 | 56-59 | | | |
| 165L | #110118- 7/18/03 $1,573.68 | 61-63 | | | |
| 166 | Pepco invoices containing amnt. for 4800 Addison Road | 000662-696 | | | |
| 167A | #101390 8/1/02 $867.25 GMAC | 044666-67 | | | |
| 167B | #100089 6/4/02 $867.25 | 68-69 | | | |
| 167C | #99421 5/2/02 $867.25 to GMAC | 70-71 | | | |
| 167D | #98797 4/5/02 $867.25 | 72-73 | | | |
| 167E | #97975 3/1/02 867.25 | 74-75 | | | |

| | | | | | |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 167F | #97300 2/1/02 $867.25 | 76-77 | | | |
| 167 G | #96654 1/3/02 867.25 | 78-79 | | | |
| 167 H | #96150 12/4/01 $867.25 | 80-81 | | | |
| 167 I | #95514 11/1/01 867.25 | 82-83 | | | |
| 167 J | #94884 10/4/01 $867.25 | 84-85 | | | |
| 167 K | #94104 9/1/01   $867.25 | 86-87 | | | |
| 167 L | #93545 8/2/01   $867.25 | 88-89 | | | |
| 167 M | #92713 7/3/01 867.25 | 90-91 | | | |
| 167 N | #92029 5/3/01 867.25 | 92-93 | | | |
| 167 O | #90964 4/12/01 867.25 | 94-95 | | | |
| 167 P | #91409 5/1/01 867.25 | 96-97 | | | |
| 167 Q | #90626 4/2/01 867.25 | 98-99 | | | |
| 167 R | #89850 3/1/01 867.25 | 44700-701 | | | |
| 167 S | #89315 2/2/01 867.25 | 702-03 | | | |
| 167 T | #88675 1/02/1   $867.25 | 704-05 | | | |
| 167 U | summary page | 044664-665 | | | |
| 168A | copy of Ck. 1058 to Esherick, $2000 | 048072 | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 168B | copy of ck. 94356, 9/12/02, $2000 | 048069-71 | | | |
| 168C | ck. stub for 96398 12/14/01 for $3,000 | 048068 | | | |
| 168D | ck. stub for 96578, 12/24/01 $10,000 | 048066-067 | | | |
| 169 | ck. stubs payroll account 2001 | 047962-93 | | | |
| 170A-L | Operating account by month 2001 | | | | |
| 171A-L | Payroll account by month 2001 | | | | |
| 172 A-L | Cayre Jemal peoples account by month 2001 | | | | |
| 173A-L | Operating account by month 2002 | | | | |
| 174A-L | Payroll account by month 2002 | | | | |
| 175 A-L | Cayre Jemal peoples account by month 2002 | | | | |
| 176A-L | Operating account by month 2003 | | | | |
| 177A-L | Payroll account by month 2003 | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 178 A-L | Cayre Jemal peoples account by month 2003 | | | | |
| 179 | General Ledger - 2000 | 041825-042035 | | | |
| 180 | General Ledger - 2001 | 026332-565 | | | |
| 181 | General Ledger - 2002 | 026567-822 | | | |
| 182 | General Ledger - 2003 | 026823–27371 | | | |
| 183 | People's General Ledger 1998 | 026428 | | | |
| 184 | People's 1999 | | | | |
| 185 | People's 2000 | | | | |
| 186 | People's 2001 | | | | |
| 187 | People's 2002 | | | | |
| 188 | People's 2003 | 026290-331 | | | |
| 189 | Fairfield Farms General Ledger 1998 | 026035 | | | |
| 190 | Fairfield Farms 1999 | 026036-46 | | | |
| 191 | Fairfield Farms 2000 | 026047-55 | | | |
| 192 | Fairfield Farms 2001 | 026056-79 | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 193 | Fairfield Farms 2002 | 026080-105 | | | |
| 194 | CBRE marketing plan documents | | | | |
| 195 | settlement documents- Citicorp $12.5M loan, GTM Architects | 9764-9792 | | | |
| 196 | 5/24/01 letter of intent | 12864-65 | | | |
| 197A | Brownell 11/18/02 letter to Cayre | | | | |
| 197B | Brownell 12/18/01 letter to Cayre | | | | |
| 198 | Production re: "loan repayments" | | | | |
| 199 | **[NOT YET MARKED]** | | | | |
| | | | | | |
| | **DOCUMENTS FROM SEARCH OF ESHERICK'S HOUSE** | | | | |
| 200A | Eagle Bank - notices of checks paid against NSF | | | | |
| 200B | Eagle Bank correspondence re: loan | | | | |
| 201A | Eagle -  Statements and copies of transaction items - 2000 | | | | |
| 201B | Eagle -  Statements and copies of transaction items - 2001 | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 201C | Eagle - Statements and copies of transaction items - 2002 | | | | |
| 201D | Eagle - Statements and copies of transaction items - 2003 | | | | |
| 201E | Eagle - Statements and copies of transaction items - 2004 (w/exception of 2004) | | | | |
| 202 | Statements and transaction items - November 2004, | | | | |
| 203 | January 2005 | | | | |
| 204 | Statement and transaction items Feb 2005 | | | | |
| 205 | Eagle loan document | | | | |
| 206 | Chrysler payment coupons | | | | |
| 207 | Tag renewal notice for Mercedes | | | | |
| 208 | Nationwide documents, Barbara Gill & Esherick 12/30/99 | | | | |
| 209 | Esherick pay stubs | | | | |
| 210 | Miscellaneous. invoices for 6001 Nevada Ave. | | | | |
| 211 | check book | | | | |
| 212 | US Airways//Bank of America credit card statements | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 213 | PEPCO statements | | | | |
| 214 | **[NOT YET MARKED]** | | | | |
| 215 | **[NOT YET MARKED]** | | | | |
| 216 | **[NOT YET MARKED]** | | | | |
| | | | | | |
| | **CELL PHONE RECORDS** | | | | |
| 217 | 10/30/05 Judy Franklin of Cingular Wireless Declaration of Custodian and Lorusso's 2003 cell phone records | | | | |
| 218A-L | Lorusso cell - 2001 | | | | |
| 219A-M | Lorusso cell - 2002 | | | | |
| 220A-L | Esherick cell 2001 | | | | |
| 221A-L | Esherick cell 2002 | | | | |
| 222A-L | Esherick cell 2003 | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 223A-L | NOT NUMBERED | | | | |
| 224A-L | D. Jemal cell - 2001 | | | | |
| 225A-L | NOT NUMBERED | | | | |
| 226A-L | NOT NUMBERED | | | | |
| 227A-L | N. Jemal cell - 2001 | | | | |
| 228A-L | N. Jemal cell - 2002 | | | | |
| 229A-L | NOT NUMBERED | | | | |
| | | | | | |
| | **DOCUMENTS FROM SEARCH OF DOUGLAS DEVELOPMENT CORP. OFFICES** | | | | |
| 230 | Connex Folder / 4800 Addison Road FOLDER | | | | |
| 231 | Thomas Tours Folder Re: Addison Road | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 232 | Marketing Brochure - Jemal's Washington Gateway | | | | |
| 233 | Original documents related to refinancing request | | | | |
| 234 | Marketing letter re: 77 P Street | | | | |
| 235 | Esherick fax to Michael Larusso w/ attached ltrs re: 77 P Street | | | | |
| 236 | D. Jemal handwritten 10/28/01letter to Joe Cayre | | | | |
| 237 | (Photocopy) 6001 Nevada Avenue lease dated 7/27/03 | | | | |
| 238 | (Original) 6001 Nevada Avenue lease dated 7/27/03 | | | | |
| 239 | Boot Barn "Thank you" letter | | | | |
| 240 | Addison Road plat | | | | |
| 241 | DDC financing Dec.'98 - Feb.'01 | | | | |
| 242 | Vehicles Manual #3 - Driver's Co. Insurance & DMV info. | | | | |
| 243 | DDC 2002 Financing documents | | | | |
| 244 | Settlement folder - Addison Road | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 245 | Leasing folder - Addison Road | | | | |
| 246 | Handwritten notes -yellow pad | | | | |
| 247 | **[NOT YET MARKED]** | | | | |
| 248 | **[NOT YET MARKED]** | | | | |
| 249 | **[NOT YET MARKED]** | | | | |
| | | | | | |
| | **DOCUMENTS FROM DC GOVERNMENT** | | | | |
| 250 | Receipt of Documents from SA Larry Carr to David Garnett | | | | |
| 251 | Original invoice & Copy of Check regarding $38,000 payment | | | | |
| 252 | Supporting documents for June & July 01 rent for 77 P Street | | | | |
| 253 | Documents related to $99,000 payment, July & August 01 - 77 P St. | | | | |
| 254 | Documents related to August & September '01 rent payments (77 P) for $381,268.66 | | | | |
| 255 | Documents related $2.3 million cost overrun | | | | |
| 256 | Documents related to New Economy Payments | | | | |

| \multicolumn{6}{c}{UNITED STATES v.  JEMAL et al} |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 257 | Documents related to invoice Draw #4, $200 K | | | | |
| 258 | Documents concerning DC Dept of Mental Health Lease @ 77 P | | | | |
| 259 | Addison Road documents regarding $266 K payment | | | | |
| 260 | October 2001 83 K Addison Road check receipt | | | | |
| 261 | Addison Road document re: $260Kinvoice | | | | |
| 262 | DC Water INVOICE for $86,438.30 | | | | |
| 263 | " " for $2,410.17 | | | | |
| 264 | " " for $1,113.94 | | | | |
| 265 | 9/19/01 letter of intent proposal, New Economy Act Space | | | | |
| 266 | 8/30/01 Letter of intent proposal, New Economy Act Space | | | | |
| 267 | New Economy Act reimbursement invoices | | | | |
| 268 | New Economy Act supporting documentation attached to Exh. 267c | | | | |
| 269 | Fax copy of Exhibit #265 | | | | |
| 270A | 77 P St Original Lease | | | | |

| UNITED STATES v.  JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 270B | 77 P St. 1st Addendum, 4/26/01 | | | | |
| 270C | 77 P St.  11/15/01 Addendum | | | | |
| 270 D | 77 P St   2nd 7/19/02 Addendum | | | | |
| 270 E | 77 P 3rd Addendum 7/19/02 | | | | |
| 270 F | 77 P St. 4th Addendum 8/20/02 | | | | |
| 271 | 2nd set documents related to invoice Draw #4 (see exhibit #257) | | | | |
| 272 | 77 P St, expanding sq. footage invoice | | | | |
| 273 | **[NOT YET MARKED]** | | | | |
| 274 | **[NOT YET MARKED** | | | | |
| 275 | Addison Road, letter of intent 363,000 sq ft | | | | |
| 276 | Original Addison Road lease dated 8/15/01 | | | | |
| 277 | Original Addison Road Amendment of lease for purchase option, 12/14/01 | | | | |
| 278 | Addison Road Blueprint (large) | | | | |
| 279 | Addison road supporting DOCUMENTS, $260K invoice | | | | |
| 280 | April 8 2003 letter - Brownell to Dimond. Re: Internal Audit | | | | |

| \multicolumn{6}{c}{UNITED STATES v. JEMAL et al} |
|---|

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| 281 | May 7, 2003 letter, Esherick to Dimond. Re: 3rd Lease Amendment pymnt | | | | |
| 282 | Original Millenium appraisal report for Addison Road; 3/02/03 | | | | |
| 283 | Esherick to Lorusso letter re: executed 450 H st. lease 4/19/01 (copy) | | | | |
| 284 | Esherick to Lorusso letter re: parking at 450 H St. (Copy) | | | | |
| 285 | 450 H St. lease b/w Jemal Liggins, LLC & DC, 7/18/01 | | | | |
| **286- 299** | **NOT YET MARKED** | | | | |
| | | | | | |
| | **DOCUMENTS FROM SEARCH OF COMPUTERS** | | | | |
| 300 | Addison Road Invoice to Faith Scott from Paul Millstein | | | | |
| 301 | R.D. Zimmerman Invoice - Excel Doc | | | | |
| 302 | 11/26/01 Fire Damage Spread Sheet Re: 4800 Addison Road | | | | |
| 303 | Misc. spreadsheets re: 4800 Addison Road | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 304 | Money Trail Document | | | | |
| 305 | 11/26/01 letter to Balmford re: fire damage @ Addison Road | | | | |
| 306 | 3/1/02 letter to Balmford re: fire damage @ Addison Road | | | | |
| 307 | Fire Damage Spreadsheet | | | | |
| 308 | 9-12-01 memo - Millstein to Green re: 4800 Addison Road Impound Lot | | | | |
| 309 | 5-24-01 letter of intent to DC Govt re: Addison Road (lease proposal) | | | | |
| 310 | (7-12-01) $38,000 invoice to city re: 77 P St., NE | | | | |
| 311 | 9-19-01 proposed letter of intent/Re: 77 P Street, NW | | | | |
| 312 | $66,000 invoice, 9/26/01, RE: 77 P St. NW | | | | |
| 313 | 9-27-01 invoice for $100,000 Build out reimbursement | | | | |
| 314 | 9-18-00 letter to Adams Bank re: BCE $0 rent | | | | |
| 315 | Draft of 7804 Radnor rent /sales advertisement | | | | |
| 316 | invoice for Dept. of Human Services | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 317 | Las Vegas itinerary - 2002 | | | | |
| 318 | Letter from Carla Burr re: Addison Road, 8-22-01 | | | | |
| 319 | $166,375 invoice for Aug. & Sept. '01 | | | | |
| 320 | MTD letterhead | | | | |
| 321 | MTD letterhead w/702 H Street Address | | | | |
| 322 | MTD letterhead w/Eastern Avenue Address | | | | |
| 323 | Draft of MTD Invoice | | | | |
| 324 | Draft of MTD invoice | | | | |
| 325 | MTD invoice | | | | |
| 326 | 3-1-03 letter from Rowe to Perry RE: H&M Woodies, 1025 F St. NW | | | | |
| 327 | 8-26-02 water bill letter | | | | |
| 328 | water billings - adjusted bill | | | | |
| 329 | memo to Dave re: Bills to Esherick paid | | | | |
| 330 | MTD invoice RE: 77 P Street, NW | | | | |
| 331 | 4800 Addison Road Fire Damage Costs | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 332 | Labor Materials and Subcontracts for DC Impound Lot Job | | | | |
| 333 | Draft Impound Lot Package | | | | |
| 334 | Labor Costs by Account Job | | | | |
| 335 | Costs to Build and Install Steps and Ramps to Trailers. 10/17/01 ltr. From Millstein to Roberts. | | | | |
| 336 | Itinerary for Las Vegas [1999] | | | | |
| 337 | Las Vegas Itinerary 2000 | | | | |
| 338 | Esherick and N. Jemal Itinerary for Las Vegas, May 16-21, 2004 | | | | |
| 339 | D. Jemal and J. Brownell Itinerary for Las Vegas, May 16-20, 2005 | | | | |
| 340 | D. Jemal, J. Brownell, N. Jemal and Esherick Itineraries for Vegas, May 23-25, 2004 | | | | |
| 341 | MTD Invoice (final).  11/01/02 | | | | |
| 342 | Daily Time Records 5/28-6/2/01 | | | | |
| 343 | "  "   6/4-6/10/01 | | | | |
| 344 | "  "   6/11-6/16/01 | | | | |
| 345 | "  "   6/18-6/24/01 | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 346 | "  "  9/17-22/01 | | | | |
| 347 | "  "  9/24-29/01 | | | | |
| 348 | "  "  10/1-10/7/01 | | | | |
| 349 | Esherick 1999 Tax Return | | | | |
| | | | | | |
| | **OTHER MISCELLANEOUS DOCUMENTS** | | | | |
| 350 | Misc DDC records - American Express Account Statements | | | | |
| 351 | Misc Morgan Stanley - DDC records | | | | |
| 352 | Appraisal of 4800 Addison Road by United Bank. | | | | |
| 353 | 4800 Addison Road Impound Lot & Warehouse Appraisal | | | | |
| 354 | 4800 Addison Road Jemal Fairfield Farms Lease, 8/15/01. | | | | |
| 355 | Undated/Unsigned Addison Road lease extension | | | | |
| 356 | 77 P Street Appraisal, as of 10/01/02. | | | | |
| 357 | Miscellaneous DDC documents | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 358 | Miscellaneous DDC documents | | | | |
| 359 | Miscellaneous DDC documents re: Staubach | | | | |
| 360 | American Express Account Statement | | | | |
| 361 | 4/26/01 Lease RE: 77 P Street, NW. | | | | |
| 362 | Miscellaneous documents | | | | |
| 363 | Photo of Watch | | | | |
| 363 | Photo of Cowboy boots | | | | |
| 365 | Miscellaneous documents re: Staubach | | | | |
| 366 | Miscellaneous documents re: Great Scott Moving Inc. | | | | |
| 367 | Miscellaneous General Ledger documents | | | | |
| 368 | Misc year-to-date ledger CASH documents | | | | |
| 369 | Travel itinerary: N. .Jemal, Lorusso, Escherik, D. Jemal, Brownell & Robe | | | | |
| 370 | **[ NOT YET MARKED]** | | | | |
| 371 | Miscellaneous General Ledger documents as of 12/31/02 | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 372 | Fairfield Farm documents, 1999 Form 1065 | | | | |
| 373 | page from Hotek calendar, 10/27/04 | | | | |
| 374 | Misc DDC documents | | | | |
| 375 | Checks to Barbara Gill, 12/03/02, 3/05/03 | | | | |
| 376 | Copy of SECU statement, RE: Barbara Gill | | | | |
| 377 | DOCUMENTS re: Millstein taxes | | | | |
| 378 | MTD invoice | | | | |
| 379 | G. Myers list of outstanding bills | | | | |
| 380 | Settlement sheet, sale of 7804 Radnor | | | | |
| 381 | contracts for sale Radnor Road properties | | | | |
| 382 | photo #1 of 6001 Nevada | | | | |
| 383 | photo #2 of 6001 Nevada | | | | |
| 384 | Contract documents 6001 Nevada | | | | |
| 385 | Payment materials to Bruce Frazier | | | | |
| 386 | Miscellaneous documents re: Cayre | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 387 | Copy of check to DDC from Cayre Jemal's People. | | | | |
| 388 | Miscellaneous documents re: Cayre, MTD invoice 11/01/02 | | | | |
| 389 | DDC $38,000 invoice | | | | |
| 390 | Miscellaneous invoices - Pepco | | | | |
| 391 | Miscellaneous invoices - 6001 Nevada, 9/16/03 | | | | |
| 392 | General Ledger documents as of 12/31/99 | | | | |
| 393 | MTD documents | | | | |
| 394 | DDC General Ledger documents 12/31/01 | | | | |
| 395 | Memo to Medding, Re: Wiring Instructions | | | | |
| 396 | MTD lien release and subordination | | | | |
| 397 | **[ NOT YET MARKED]** | | | | |
| 398 | **[ NOT YET MARKED]** | | | | |
| 399 | **[ NOT YET MARKED]** | | | | |
| 400 | Miscellaneous American Express documents-RE: Sabra J. Gould | | | | |
| 401 | Miscellaneous DDC documents | | | | |

| UNITED STATES v. JEMAL et al |
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| --- | --- | --- | --- | --- | --- |
| 402 | Miscellaneous  documents | | | | |
| 403 | **[ NOT YET MARKED]** | | | | |
| 404 | DDC general gedger documents RE: LOANS as of 12/31/99 | | | | |
| 405 | GL documents re: Potomac Valley Bank | | | | |
| 406 | GL documents re: Brownell | | | | |
| 407 | DDC checks re: Norwest, Wells Fargo, Bank of America | | | | |
| 408 | DDC checks re: Chrysler | | | | |
| 409 | settlement sheet $67 million | | | | |
| 410 | loan agreement, 11/19/02 b/w Cayre Jemal's Gateway holding and Morgan Stanley. | | | | |
| 411 | Construction TI Reserve documents | | | | |
| 412 | Fax from Brownell to Rodney Shenman | | | | |
| 413 | spreadsheet re: woodies | | | | |
| 414 | Construction Management Agreement re: MTD | | | | |
| 415 | email Perry to Haddad | | | | |
| 416 | MTD invoice | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 417 | 912 F Street Budget | | | | |
| 418 | 912 F Street Budget #2 | | | | |
| 419 | Memo to Haddad | | | | |
| 420 | Documents related to Addison Road Connex lease | | | | |
| 421 | overhead photo of Addison Road | | | | |
| 422 | overhead photo of Addison Road | | | | |
| 423 | collection of documents re: leasing 77 P Street, CB Richard Ellis | | | | |
| 424 | overhead photo of Addison Road | | | | |
| 425 | overhead photo of Addison Road | | | | |
| 426 | lease negotiation documents for Addison Road | | | | |
| 427 | Miscellaneous IRS documents- Esherick taxes | | | | |
| 428 | Miscellaneous Maryland divorce documents - Esherick | | | | |
| 429 | MD financial statement | | | | |
| 430 | Davis Construction documents re: painting for move damage | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 431 | Document collection re: items for Lorusso | | | | |
| 432 | Document collection - leases | | | | |
| 433 | Document collection - invoices | | | | |
| 434 | Sabra affidavit | | | | |
| 435 | Documents re: $38,000 invoice | | | | |
| 436 | Documents re: $99,000 invoice | | | | |
| 437 | Documents re: Use of wires | | | | |
| 438 | Mailing chart | | | | |
| | | | | | |
| | **DOCUMENTS SUBPOENAED FROM DOUGLAS DEVELOPMENT CORPORATION SUBPOENAED DOCUMENTS (continuing from 199)** | | | | |
| 450 | Addison Road water bills | 133791-13800 | | | |
| 451 | Fax: Millstein to Green | 12847-12850 | | | |
| 452 | Maurice Electric invoices | 13531-13566 | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 453 | Phoenix Concrete Cutting | 13497-13501 | | | |
| 454 | Greenwald invoices | 13370-13373 | | | |
| 455 | Griffith Invoices | 13374-13380 | | | |
| 456 | Long Fence invoices | 13413-13426 | | | |
| 457 | Magnolia Plumbing invoices | 13435-13457 | | | |
| 458 | Rentals Unlimited Invoices | 13475-13477 | | | |
| 459 | United Rentals Invoices | 12711-12758 | | | |
| 460 | 5-3-01 letter from Lorusso to Millstein | 12789 | | | |
| 461 | Fires Submission #1 | 037923-038013 | | | |
| 462 | Fire Submission #2 | 038091-038183 | | | |
| 463 | Spread sheet and supporting invoices - Addison Road | 039613-039693 | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 464 | Aggregate Dirt Solutions folder | 01245, 46, 49, 50 | | | |
| 465 | single page regarding Addison Road bill to DC Govt | 039696 | | | |
| 466 | CBRE Marketing documents | 008829-44; 80-86; 8900-8905 | | | |
| 467 | 6/8/2000 Cayre-Jemal letter | 1872-1873 | | | |
| 468 | 11/11/2002 Cayre-Jemal letter | 1876 | | | |
| 469 | 11/19/2002 Cayre-Jemal letter agreement | 1869-1871 | | | |
| 470 | 10/24/00 Jemal-Cayre letter | 6597-98 | | | |
| 471 | Addison Road invoice documents | 038014-038090 | | | |
| 472 | Alliance Mechanical Mechanics lien documents | 037016-037024 | | | |
| 473 | Millstein-Phipps correspondence | 037109-111 | | | |
| 474 | DDC Eagle Bank money market account | 27372-27426 | | | |
| 475 | DDC Harbour Gank account | 28519-28568 | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 476 | GSA lease | 771-803 | | | |
| **477-499** | **NOT MARKED** | | | | |
| 500 | Staubach Co. Documents | | | | |
| 501 | Goldfarb Contact Report | | | | |
| 502 | Hard Rock Café records re: Lorusso, 2001 | | | | |
| 503 | AirTran records | | | | |
| 504 | Misc documents from GMAC | | | | |
| 505 | Staubach Co. Documents re: June 2002 payment | | | | |
| 506 | Long Fence invoice to DDC 6/29/01 | | | | |
| 507 | Long Fence invoice to DDC 11/13/01 | | | | |
| **508-524** | **[NOT YET MARKED]** | | | | |
| | | | | | |
| | **DOCUMENTS FROM OTHER SOURCES** | | | | |
| 525 | Morgan Stanley documents | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 526 | Villegas doucments re: New Economy Act proposal | | | | |
| 527 | Petrossian bar menu | | | | |
| 528 | Documents from Kauffman re: move damage, Punch List | | | | |
| 529 | Documents from Firewatch Services re: billings summer 2001 | | | | |
| 530 | Documents from Tyco re: billings for 77 P Street, "Activity for purged Jobs, 10/25/00. | | | | |
| 531A-Z | Zimmerman documents | | | | |
| 532 | copy of the Addison Road appraisal | | *l* | | |
| 533 | Fax re: estimate of fire damage, from Esherick to Morris | | | | |
| 534 | Draft of front page of appraisal | | | | |
| 535 | copy of 12/14 email from Halbert to Lorusso | | | | |
| 536A | 11/14/2001 email - Morris to Lorusso | | | | |
| 536B | 11/14/2001 email - Morris to Halbert | | | | |
| 536C | 11/16/2001 email - Morris to Morris | | | | |
| 537 | 12/10/2001 email Morris to colleagues | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| **538-549** | **NOT MARKED** | | | | |
| | | | | | |
| | **COMPUTER DOCUMENTS (CONTINUED FROM 349)** | | | | |
| 550 | Esherick 2002 return | | | | |
| 551 | Esherick 2003 return | | | | |
| 552 | Rusty Jarboe job offer | | | | |
| 553 | Esherick MBNA credit card application | | | | |
| 554 | 7/1/03 letter to B. Bill to Ehserick | | | | |
| 555 | GTM settlement documents | | | | |
| 556 | invoice - Pacheco | | | | |
| 557 | Cartegna job offer letter | | | | |
| 558 | Organizational chart | | | | |
| 559 | Letter from Brownell to Kai 8/14/01 re checks | | | | |
| 560 | Kai Hills balance sheet | | | | |
| 561 | 9/18/01 Escherik ltr. to Hinson re: Adams Bank | | | | |
| 562 | Long Fence recap | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|----------|-------------|-----------|---------|-----------|--------|
| \multicolumn | UNITED STATES v. JEMAL et al | | | | |
| 563 | MEMO from Swaggerty to D. Jemal | | | | |
| 564 | Letter re: Esherick trip to Quebec | | | | |
| **565-574** | **NOT MARKED** | | | | |
| | | | | | |
| | **DOCUMENTS RELATED TO CALCULATIONS OF ESHERICK'S TAXES** | | | | |
| 575 | Revenue Agent's Report | | | | |
| 576 | Schedule A | | | | |
| 577 | Schedule A-1 | | | | |
| 578 | Schedule A-2 | | | | |
| 579 | Schedule A-3 | | | | |
| 580 | Schedule A-4 | | | | |
| 581 | Schedule A-5 | | | | |
| 582 | Schedule A-6 | | | | |
| 583 | 2000 Income | | | | |
| 584 | 2004 Income | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 585 | Agent prepared 2001 Return | | | | |
| 586 | Agent prepared 2001 Schedule A | | | | |
| 587 | Agent prepared 2002 Return | | | | |
| 588 | Agent Prepared 2002 Schedule A | | | | |
| 589 | Agent Prepared 2003 Return | | | | |
| 590 | Agent Prepared 2003 Schedule A | | | | |
| **591-599** | **NOT MARKED - LIKELY TO BE ADDITIONAL ESHERICK SUMMARY FINANCIAL DOCUMENTS** | | | | |
| | | | | | |
| | ***EMAILS FROM DC GOVT*** | | | | |
| 600 | Esherick to Lorusso, 9/25/01 re: Draft of New Economy Amendment (unsigned) | | | | |
| 601 | Esherick to Lorusso, 10/26/01 re: New DC, Second Addendum (unsigned) | | | | |
| 602 | Email from Esherick to Greg Lubar – and Lorusso - 11/7/02 re: "DC lease" (addendum - unsigned) | | | | |
| 603 | Esherick to Lorusso, 11/13/01 Addendum for DOMH | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 604 | Esherick to Lorusso, 11/19/01 Letter for Addison Road | | | | |
| 605 | Esherick to Lorusso, 11/19/01 Letter for Addison Road (2) | | | | |
| 606 | Grace Carr to Lorusso and Esherick, 11/20/01 | | | | |
| 607 | Esherick to Lorusso, 12/13/01, Addison Road amended lease - amended term 1.04 | | | | |
| 608 | Sabra to Kevin Green and Lorusso, 9/13/01 re: Impound lot memo from Millstein | | | | |
| 609 | Sabra to Lorusso - 9/21/01 -New Economy proposal | | | | |
| 610 | Kauffman to Millstein and N. Jemal, Lorusso 10/31/01, re: payments | | | | |
| 611 | Kauffman to N. Jemal, Millstein and Lorusso re: payments, 10/8/01 | | | | |
| 612 | Esherick to Lorusso, 7/10/01; re draft Addison Road lease | | | | |
| 613 | T. Roberts to Lorusso, 8/6/01 re: Addison Road Permits, from Milstein | | | | |
| 614 | Esherick to Lorusso, 7/10/01, letter of draft terms | | | | |

| | | | | | |
|---|---|---|---|---|---|
| UNITED STATES v. JEMAL et al | | | | | |
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 615 | McKenzie to Lorusso, cc: Esherick re 77 P Street, 4th Addendum | | | | |
| 616 | Esherick to Lorusso, - second addendum - 77 P streeet | | | | |
| 617 | Esherick to Lorusso, 9/25/01, re: Draft of New Economy Amendment | | | | |
| 618 | Lorusso to Esherick, 12/6/02, "save this address" | | | | |
| 619 | Esherick to Lorusso, McKenzie, 11/27/02, re: 4th and 5th Amendments | | | | |
| 620 | Esherick to Lorusso, 11/22/02, re: 4th and 5th Amendments | | | | |
| 621 | Esherick to Lorusso, 11/25/02, re: DHS Space | | | | |
| 622 | Esherick to Lorusso, 10/31/02, "Getting ready to walk into a meeting" | | | | |
| 623 | Esherick to Lorusso, 11/1/02, re: "How are you doing?" | | | | |
| 624 | Esherick to Lorusso, 9/16/02, with XL spreadsheet re leases, 77 P Street | | | | |
| 625 | Esherick to Lorusso and others, 9/12/02, re: Dept Transportation space occupancy | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 626 | Esherick to Lorusso, 9/12/02 re: Springworks lease | | | | |
| 627 | Esherick to Lorusso, 8/21/02, re: tenant estoppels on 77 P Street loan | | | | |
| 628 | Esherick to Lorusso, 8/15/02, design coordination meeting | | | | |
| 629 | Esherick to Lorusso, 8/7/02, 4th and 5th Amendment leases | | | | |
| 630 | Esherick to Lorusso, 8/5/02, 4th and 5th Amendment | | | | |
| 631 | Esherick to Lorusso, 7/3/02, New Economy | | | | |
| 632 | Esherick to Lorusso, 7/2/02, DHS Amendment | | | | |
| 633 | Esherick to Lorusso, 6/21/02, in house attorney | | | | |
| 633 | Esherick to Lorusso, 6/21/02, "Give 920 RI lease to Thigpen" | | | | |
| 634 | Esherick to Lorusso, 6/21/02, "Who is Michael Bullock?" | | | | |
| 635 | Esherick to Lorusso, 6/20/02, draft of 920 RI Ave. lease | | | | |
| 636 | Esherick to Lorusso, 4/25/02 - Firehouse Lease | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 637 | Esherick to Lorusso, 4/10/02 - Firehouse Lease | | | | |
| 638 | several emails, Molaison to Esherick re: new economy, wall detail | | | | |
| 639 | several emails, Heath to Esherick re: New Economy | | | | |
| 640 | two emails, Coyne to Esherick re: space | | | | |
| 641 | Raj to Esherick re: DDOT, 11/15/02 | | | | |
| 642 | Esherick to Lorusso, 12/09/02, re: Fifth Amendment | | | | |
| 643 | Stuart Smith to Esherick re: Addison Road appraisal, 5/12/03 | | | | |
| 644 | Kauffman to Esherick, 4/21/03, re: 77 P St commission pool disbursements | | | | |
| 645 | Esherick to Timothy Dimond, 2/24/03, re: Firehouse lease | | | | |
| 646 | Esherick to Timothy Dimond, 2/7/03, 77 P Street spread | | | | |
| 647 | Esherick to Dimond, 1/15/03 re: Fifth Addendum | | | | |
| 648 | Esherick to Dimond, 1/15/03 re: Firehouse | | | | |

| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
|---|---|---|---|---|---|
| | UNITED STATES v. JEMAL et al | | | | |
| 649 | Kauffman email re: N. Jemal | | | | |
| 650 | Kauffman email re: N. Jemal | | | | |
| 651 | Kauffman email re: payments | | | | |
| **652-685** | **NOT YET MARKED** | | | | |
| | | | | | |
| | **MISCELLANEOUS COURT RECORDS** | | | | |
| 686 | DHI Construction Corp. v. DDC, et al. (V228247) Montgomery Co. Maryland Circuit Court | | | | |
| 687 | St. Paul Fire and Marine Insurance Co. v. DDC (Civil 214182) Montgomery Co. Maryland Circuit Court | | | | |
| 688 | Cochran & Mann Inc. v. DDC (Civil 247366) Montgomery Co. Maryland Circuit Court | | | | |
| 689 | , Columbia Woodworking, Inc v. Jemals Scuderi Limited Partnership, et al.(CAE 03-20208) PG Co. Maryland | | | | |
| 690 | Stalker Bros., Inc. v. Cayre Jemal Peoples, LLC, et al, CA 265-02 (DC Super Court) | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 691 | Tri-County Industries Inc. v. DDC, CA 6642-01 (DC Super Court) | | | | |
| 692 | Adecco Employment v. DDC CA 5371-01 (DC Super. Court) | | | | |
| 693 | Neary & Sons v. DDC CA 2789-01 (DC Super. Court) | | | | |
| 694 | Keystone Plus Construction Corp v. DDC, CA 406-03 (DC Super. Ct.) | | | | |
| 695 | Neco Construction & Management Corp. v. DDC, CA 03-2827 (DC Super. Ct) | | | | |
| 696 | Neco Construction & Management Corp. v. DDC, CA 03-2542 (DC Super. Ct) | | | | |
| 697 | Certified Case File Washington Gas Light v. DDC CA 03-5579 (DC Super Ct.) | | | | |
| 698 | CERTIFIED Case File Pavement Design & Engineering v. DDC, Civil Action 01-0056 (TPJ). | | | | |
| | | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| | **PRINCE GEORGE'S COUNTY ZONING HEARING DOCUMENTS** | | | | |
| 699 | Determination by Judge that lot not useable as impound lot<br>Jemal Fairfield Farms, LLC v. Co. Council of PG Co. | | | | |
| 700 | Transcript #1 - Hearing Before Zoning Examiner 11/30/01 | | | | |
| 701 | Transcript #2, 12/17/01 | | | | |
| 702 | PG Co. Certification | | | | |
| 703 | Large and/or Original Exhibits Form | | | | |
| 704 | Recommended Decision of Hearing Examiner, 2/1/02 | | | | |
| 705 | Notice of Final Decision of the District - Council - 4/10/02 | | | | |
| 706 | Exhibit List - Zoning Hearing Examiner | | | | |
| 707 | Exh. 1 - Request for Validation of Permit Issued in Error - signed by PM - 7/18/01 | | | | |
| 708 | Exh. 2 - 6/15/01 permit, PG Co. | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 709 | Exh. 5 - 7/5/01 Memo, request to Rescind Permit | 00 | | | |
| 710 | Exh. 6 - 7/9/01 letter informing permit issued in error | | | | |
| 711 | Exh. 7 - 7/18/01 Millstein letter | | | | |
| 712 | Exh. 8 - 7/18/01 DDC to PG Co. re: owners of 4800 Addison Road | | | | |
| 713 | Exh.s 9-17 - misc exhibits | | | | |
| 714 | Exh. 20 - permit application dated 5/23/01 | | | | |
| 715 | Exhs. 23, 24, 25, 27, 28, 33, 34 | | | | |
| 716 | Exh. 35 - Bulding Permit Application Checklist | | | | |
| 717 | exh 36 - Rita Watts statement | | | | |
| 718 | exh. 37 - 5/24/01 letter of intent | | | | |
| 719 | exh. 38 -- 4800 Addison Rd lease | | | | |
| 720 | exh 39 - 4800 Addison Road costs list | | | | |
| 721 | exh. 40(a)-(d) - Santelis $1242.50 check | | | | |
| 722 | exh. 41(a)-(g) - Long Fence | | | | |
| 723 | exh. 42(a)-(f) - Long Fence | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 724 | exh. 43(a)-(d) - Long Fence | | | | |
| 725 | exh. 44(a)-(c) - Long Fence | | | | |
| 726 | exh. 45(a)-(hhh) - Maurice Electrical | | | | |
| 727 | exh. 46 (Labor Expended) | | | | |
| 728 | exh. 47(1)-(q) Troop position reports 6/1-6/25 | | | | |
| 729 | exh 48(a)-(h) Troop position reports 9/13-10/01 | | | | |
| 730 | exhibits 49-53 (50, 51 Request for Varience) | | | | |
| 731 | Miscellaneous documents from Prince George's County court file | | | | |
| | | | | | |
| | **702 H STREET SEARCH WARRANT MATERIALS** | | | | |
| 732 | inventory - 702 H St | | | | |
| 733 | evidence recovery log - 702 H Street | | | | |
| 734 | diagram - 702 H street | | | | |
| 735 | photos - 702 H street | | | | |
| | | | | | |

| | UNITED STATES v. JEMAL et al | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| | **6151 TUCKERMAN SEARCH WARRANT MATERIALS** | | | | |
| 736 | inventory - 6151 Tuckerman | | | | |
| 737 | evidence recovery log - 6151 Tuckerman | | | | |
| 738 | diagram - 6151 Tuckerman | | | | |
| 739 | photos - 6151 Tuckerman | | | | |
| 740 | inventory - 6001 Nevada | | | | |
| 741 | evidence recovery log - 6001 Nevada | | | | |
| 742 | diagram - 6001 Nevada | | | | |
| 743 | photos - 6001 Nevada | | | | |
| | | | | | |
| | **MORE ESHERICK SEARCH DOCUMENTS** | | | | |
| 750 | Esherick Shell Credit Card Statements (2001, 2002, 2003) | | | | |
| 751 | Esherick Exxon Mobil credit card statements (2001, 2002, 2003) | | | | |
| 752 | Esherick Sunoco credit card statements (2001, 2002, 2003) | | | | |

| UNITED STATES v. JEMAL et al | | | | | |
|---|---|---|---|---|---|
| Exh. No. | Description | Bates Nos. | ID'd By | Date Id'd | Admt'd |
| 753 | C&C Landscaping, Inc. statements sent to Esherick c/o 6001 Nevada Ave. | | | | |
| 754 | Trugreen Chemlawn statements sent to Stephanie Glick c/o 6001 Nevada Ave | | | | |
| 755 | Orkin statements sent to 6001 Nevada Ave. | | | | |
| 756 | DHR Technologies, LLC statements sent to Esherick c/o 6001 Nevada Ave. | | | | |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| **UNITED STATES** ) | |
| ) | |
| **v.** ) | **Crim No. 05-359-1, -2, -3 (RMU)** |
| ) | |
| **DOUGLAS JEMAL**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**DEFENDANTS' EXHIBIT LIST**

Defendants Douglas Jemal, Norman D. Jemal and Blake Esherick, through counsel, respectfully submit the following list of exhibits that the defense intends to introduce in its case-in-chief.

| Exhibit No. | Date | Description |
|---|---|---|
| 1 | 1999 | 1999 DDC Tax Return |
| 2 | 1999 | 1999 DDC Tax Return - Cover page for signature date |
| 3 | 1999 | 1999 Tax Return for Cayre Jemal's Peoples LLC |
| 4 | 1999 | 1999 Grossberg Working Papers for DDC Tax Return |
| 5 | 2000 | 2000 DDC Tax Return |
| 6 | 2000 | Grossberg Tax Short-Form 1065 Preparation Checklist for Cayre Jemal's Peoples LLC |
| 7 | 2000 | 2000 DDC Tax Return - Cover page for signature date |
| 8 | 2000 | 2000 Tax Return for Cayre Jemal's Peoples LLC |

| 9  | 2000 | 2000 Grossberg Working Papers for DDC Tax Return |
| 10 | 2001 | 2001 DDC Tax Return |
| 11 | 2001 | Millstein 2001 Calendar |
| 12 | 2001 | Esherick 2001 Calendar |
| 13 | 2001 | Lease between Potomac Creek Associate and the District of Columbia - 955 L'Enfant Plaza North Building |
| 14 | 2001 | List of DDC Properties as of 2001 |
| 15 | 2001 | 2001 Tax Return for Cayre Jemal's Peoples LLC |
| 16 | 2001 | 2001 Grossberg Working Papers for DDC Tax Return |
| 17 | 2002 | 2002 DDC Tax Return |
| 18 | 2002 | List of DDC Properties as of 2002 |
| 19 | 2002 | Grossberg Tax Individual Income Tax Short-Form 1040 Preparation Checklist for Douglas and Joyce Jemal |
| 20 | 2002 | 2002 AICPA 1120S Long Checklist |
| 21 | 2002 | 2002 AICPA 1120S Short Checklist |
| 22 | 2002 | 2002 AICPA 1120S Mini Checklist |
| 23 | 2002 | 2002 Tax Return for Cayre Jemal's Gateway LLC, Formerly Cayre Jemal's Peoples LLC |
| 24 | 2002 | 2002 Grossberg Working Papers for DDC Tax Return |
| 25 | 2003 | 2003 AICPA 1120S Short Checklist |
| 26 | 2003 | 2003 AICPA 1120S Mini Checklist |
| 27 | 2003 | 2003 AICPA 1120S Long Checklist |
| 28 | 2003 | 2003 DDC Tax Return |
| 29 | 2003 | 2003 Form 1065 Tax Return for Cayre Jemal's Gateway Holdings, LLC |
| 30 | 2003 | 2003 Form 1065 Tax Return for Cayre Jemal's Gateway Holdings, LLC - formerly Cayre Jemal's Peoples LLC |
| 31 | 2006 | List of Current DDC Properties |
| 32 | 2006 | Douglas Development Corp. 2006 Portfolio Summary |

| 33 | 2006 | 2006 RSMeans Facilities Construction Cost Data 21st Annual Edition |
|----|------|---------------------------------------------------------------------|
| 34 | 10/11/1989 | Settlement Statement for 7804 Radnor Road |
| 35 | 7/1/1994 | Title 31 Code of Federal Regulations, Subtitle A, Part 10 |
| 36 | 2/5/1999 | Letter from L. Smoot to P. Millstein re: Thank you for use of Douglas Group suite |
| 37 | 12/23/1999 | Letter from D. Jemal to J. Cohen re: 4800 Addison Road with index of documents attached |
| 38 | 2/3/2000 | Email from D. Jemal to J. Brownell re: FYI |
| 39 | 4/5/2000 | Email from J. Brownell to N. Jemal re: FYI |
| 40 | 5/17/2000 | Email from PWBUILD90@aol.com to N. Jemal; cc'd to W. Gorham re: Fairfield Farms Layout & Proposal |
| 41 | 6/1/2000 | Letter from N. Jemal to P. Wharton re: Proposal to Community Development Partners LLC to lease space at 4800 Addison Rd |
| 42 | 10/18/2000 | Email from B. Esherick to N. Jemal re: [no subject] |
| 43 | 10/26/2000 | Cayre Jemal's Gateway LLC and Fremont Secured Promissory Note for $39,630,000 |
| 44 | 10/26/2000 | Cayre Jemal's Gateway LLC and Assignment of Rents and Leases |
| 45 | 10/26/2000 | Cayre Jemal's Gateway LLC and Fremont Deed of Trust and Fixture Filing |
| 46 | 10/26/2000 | Cayre Jemal's Gateway LLC and Fremont Completion and Performance Guaranty (Bridge Loan) |
| 47 | 10/26/2000 | Cayre Jemal's Gateway LLC and Fremont Repayment Guaranty (Bridge Loan) |
| 48 | 10/26/2000 | Cayre Jemal's Gateway LLC and Fremont Environmental Indemnity |
| 49 | 10/26/2000 | Letter from B. Esherick to S. Mode re: Proposal to DC Govt to lease space at 77 P Street |
| 50 | 1/10/2001 | Email from L. Hotaling to T. Dimond re: FW: Date to Vacate Brentwood Road Site |
| 51 | 1/24/2001 | Email from J. Koskinen to T. Dimond re: DPW Impoundment Lot |
| 52 | 1/25/2001 | Email from M. Mallus to B. Esherick, D. Jemal, P. Millstein re: Washington Gateway |
| 53 | 1/26/2001 | Email from L. Hotaling to DPW/Executive Leadership; cc'd to T. Dimond re: FW: For your review: OCP and OPM front burner reports |
| 54 | 1/31/2001 | Email from N. Jemal to E. Herman re: 1023 31st Street |

| 55 | 2/1/2001 | Email from N. Jemal to E. Herman re: 1023 31st Street |
| 56 | 2/6/2001 | Email from N. Jemal to D. Jemal; cc'd to B. Esherick, G. Cois, P. Millstein, T. Roberts re: peoples warehouse |
| 57 | 2/7/2001 | Email from N. Jemal to D. Jemal, B. Esherick, P. Millstein re: 77 p street |
| 58 | 2/8/2001 | Email from N. Jemal to M. Mallus re: DOES |
| 59 | 2/8/2001 | Letter from N. Jemal to S. Plott re: Proposal to Communications Construction Group, CCG to lease space at 4800 Addison Rd |
| 60 | 2/8/2001 | Letter from M. Mallus, B. Owen; cc'd to D. Jemal re: Request for Proposal, 77 P Street, NE, Washington, DC |
| 61 | 2/14/2001 | Letter from E. Herman to M. Mallus; cc'd to R. Snowden, K. Cross, G. Irish re: Counteroffer to Lease Space at 77 P Street, NE |
| 62 | 2/14/2001 | Marked Up version of DOES Counteroffer to Lease Space at 77 P Street, NE |
| 63 | 2/20/2001 | Email from T. Dimond to C. Arnold re: 1536 U St. |
| 64 | 2/21/2001 | Email from R. Hayes to T. Dimond re: Does Funding Request 2 |
| 65 | 2/22/2001 | Email from E. Herman to J. Miller, C. Barbera; cc'd to C. Arnold, T. Dimond re: Lease for DOES (attached) |
| 66 | 2/22/2001 | Email from E. Herman to T. Dimond re: Lease for DOES |
| 67 | 2/27/2001 | Email from T. Dimond to G. McCarthy; cc'd to C. Briggs, J. Koskinen, C. Arnold re: DOES Relocation |
| 68 | 2/28/2001 | Email from J. Koskinen to T. Dimond, M. Lorusso re: FW: The Anacostia |
| 69 | 3/2001 | Addendum to 1536 U Street Lease |
| 70 | 3/2/2001 | Email from Kauffman to Lorusso re: 609-625 H Street |
| 71 | 3/9/2001 | Email from T. Dimond to E. Herman; cc'd to M. Lorusso re: DOES HQ/Labor Standard Relocation |
| 72 | 3/12/2001 | Email from J. Koskinen to T. Dimond re: 955 L'Enfant Lease |
| 73 | 3/14/2001 | Email from E. Herman to T. Dimond, M. Lorusso; cc'd to M. McShea, K. Kauffman re: DOES Followup on Use Issue at 955 L'Enfant |
| 74 | 3/14/2001 | Email from T. Dimond to J. Koskinen re: FW: L'Enfant Plaza and 77 P St. |
| 75 | 3/15/2001 | Email from E. Herman to T. Dimond, C. Barbera, M. Lorusso; cc'd to K. Kauffman, M. McShea, G. O'Brien re: Summary of Costs with 77 P Information |

| 76 | 3/16/2001 | Email from J. Koskinen to A. Altman, D. Taylor, A. Omer, E. Price, C. Toney; cc'd to T. Dimond, M. Lorusso re: master facilities plan |
| 77 | 3/16/2001 | Email from E. Herman to C. Barbera; cc'd to T. Dimond, M. Lorusso re: 77 P |
| 78 | 3/19/2001 | Email from E. Herman to C. Colemanhall, K. Cross, T. Dimond, M. Lorusso; cc'd to F. Mobilio, K. Kauffman re: Floor Selection at 77P |
| 79 | 3/19/2001 | Email from E. Herman to C. Barbera, T. Dimond, M. Lorusso re: 77 P Street |
| 80 | 3/19/2001 | Email from J. Koskinen to T. Dimond, M. Lorusso re: FW: councilmember ambrose re: rfk impoundment |
| 81 | 3/19/2001 | Staubach fax to N. Jemal attaching redlined version of counteroffer re DOES lease |
| 82 | 3/20/2001 | Email from E. Herman to N. Jemal; cc'd to C. Barbera, T. Dimond, M. Lorusso, K. Kauffman re: 77 P Lease |
| 83 | 3/20/2001 | Email from J. Koskinen to T. Dimond, M. Lorusso re: FW: Proposed Imound Lot at RFK |
| 84 | 3/21/2001 | Email from E. Herman to T. Dimond, M. Lorusso re: 77 P Street |
| 85 | 3/21/2001 | Email from E. Herman to N. Jemal, P. Millstein, L. Potkin; cc'd to T. Dimond, M. Lorusso, C. Barbera re: 77 P Workletter |
| 86 | 3/21/2001 | Email from E. Herman to C. Barbera; cc'd to T. Dimond, M. Lorusso re: 77 P Lease |
| 87 | 3/21/2001 | Email from E. Herman to potkin@bellatlantic.net; cc'd to C. Barbera, N. Jemal, T. Dimond, M. Lorusso, K. Kauffman re: Review of Lease |
| 88 | 3/22/2001 | Email from E. Herman to T. Dimond re: 77 P Lease |
| 89 | 3/22/2001 | Email from C. Barbera to M. Lorusso; cc'd to R. Santora re: FW: lease number 77P DCFL 0103 |
| 90 | 3/22/2001 | Lease overview from M. Lorusso to A. Rivlin through T. Dimond and N. Gandhi (submitted to E. Herman) |
| 91 | 3/23/2001 | Email from C. Barbera to E. Herman, C. Barbera; cc'd to 'lane', E. Herman, N. Jemal, A. Occhetti, M. Lorusso re: Workletter |
| 92 | 3/23/2001 | Email from E. Herman to T. Dimond, C. Barbera; cc'd to K. Kauffman, G. Lubar re: 77P Lease |
| 93 | 3/23/2001 | Fax from F. Mobilio of HOK to P. Millstein; cc'd to T. Dimond, C. Arnold, M. Lorusso, J. Philip, E. Herman, K. Kauffman re: DOES Relocation-77 P Street |
| 94 | 3/26/2001 | Email from C. Barbera to M. Lorusso, E. Herman; cc'd to J. McKenzie re: 77 P Street |

| 95 | 3/29/2001 | Email from J. Koskinen to T. Dimond, M. Lorusso; cc'd to L. Hotaling, C. Briggs re: Letter from Council Member Ambrose regarding Impoundment Lot |
| 96 | 3/29/2001 | Email from J. Koskinen to E. Gaull; cc'd to E. Price, E. Martin, T. Dimond, M. Lorusso re: Forest Haven site for impound lot |
| 97 | 3/30/2001 | Letter from A. Williams to Chairman Linda Cropp re: Consideration of "77 P Street, NE, Lease Approval Emergency Declaration Resolution fo 2001" (proposed resolution and record of official council vote attached) |
| 98 | 4/2/2001 | Email from K. Kauffman to T. Dimond, M. Lorusso, J. Philip re: DOES P & H Streets: Locksets on doors |
| 99 | 4/2/2001 | Memo from N. Gandhi to T. Dimond re: Certification of Funding for 77 P Street NE |
| 100 | 4/2/2001 | Memo from N. Gandhi to T. Dimond re: Certification of Funding for 77 P Street NE (with handwritten notes) |
| 101 | 4/2/2001 | Memo from P. Jones to Members of the Council re: Referral of Proposed Legislation |
| 102 | 4/3/2001 | Memo from B. Jumper to L. Cropp through N. Gandhi re: DOES Relocation to 77 P Street, NE |
| 103 | 4/3/2001 | Council of the District of Columbia Legislative Information Management System: 77 P Street, NE, Lease Approval Emergency Declaration Resolution of 2001 |
| 104 | 4/4/2001 | Memo from C. Coleman Hall to D. Johnson through K. Cross re: Update on P Street Move |
| 105 | 4/5/2001 | Email from K. Kauffman to K. Clark, N. Jemal; cc'd to E. Herman, T. Dimond, M. Lorusso re: DOES 77P St, 3rd Floor |
| 106 | 4/5/2001 | Email from K. Clark to K. Kauffman, K. Clark, N. Jemal; cc'd to E. Herman, T. Dimond, M. Lorusso re: DOES 77 P St, 3rd floor |
| 107 | 4/9/2001 | Email from E. Herman to T. Dimond, M. Lorusso; cc'd to K. Cross, G. Irish, C. Colemanhall, J. Philip re: DOES Move Status Update 4/9/01 |
| 108 | 4/10/2001 | Proposal from DDC to P. Evans of Long & Foster Real Estate re: 4800 Addison Road |
| 109 | 4/11/2001 | Letter from B. Esherick to E. Ylitalo re: Proposal to PerScholas Washington, Inc. to lease space at 4800 Addison Rd |
| 110 | 4/16/2001 | Email from E. Herman to M. Lorusso re: Control Board/77 P |
| 111 | 4/16/2001 | Email from T. Dimond to K. Kauffman; cc'd to M. Lorusso re: FW: Additional Telephone requirements for 77 P Street |

| 112 | 4/16/2001 | Davis Construction Corporation - DOES Progress Meeting Number Three Agenda |
| 113 | 4/16/2001 | Davis Construction Corporation - DOES Progress Meeting Number Three Agenda (with handwritten notes) |
| 114 | 4/17/2001 | Email from K. Kauffman to T. Dimond; cc'd to M. Lorusso, E. Herman re: FW: Additional Telephone Requirements for 77 P Street |
| 115 | 4/18/2001 | Email from E. Herman to M. Lorusso; cc'd to T. Dimond, K. Cross, J. Brenton, R. Snowden re: Priority Items That Need Immediate Attention-DOES |
| 116 | 4/18/2001 | Statement of Work re:DOES Relocation to 609/625 H Street and 77 P Street (submitted by K. Cross) |
| 117 | 4/19/2001 | Email from E. Herman to A. Occhetti, C. Barbera, M. Lorusso re: Control Board Questions/Comments |
| 118 | 4/19/2001 | Email from J. Koskinen to E. Gaull; cc'd to E. Martin, M. Lorusso, T. Dimond re: Impound Lot |
| 119 | 4/19/2001 | Memo from C. Byron to K. Cross; cc'd to G. Irish, R. Berry, G. Scogins re: Certification of Funding Availability |
| 120 | 4/19/2001 | Memo from T. Dimond to N. Gandhi re: Certification of Funding for P Street NE |
| 121 | 4/19/2001 | Memo from C. Byron, Jr. to T. Dimond; cc'd to A. Occhetti, K. Cross, G. Irish, T. Evans re: Certification of Funding for Lease Agreement at #77 "P" Street, NE |
| 122 | 4/20/2001 | Email from E. Herman to M. Lorusso, A. Occhetti re: Revisions to Lease at 77P |
| 123 | 4/23/2001 | Email from E. Herman to M. Lorusso re: Revisions to Lease at 77P; attachment: table from E. Herman to M. Lorusso re: DOES - District of Columbia/955 L'Enfant Plaza North, SW (10yr w/termination): Projected Costs for leasing space/billing period June-July |
| 124 | 4/24/2001 | Email from C. Barbera to A. Occhetti; cc'd to E. Herman, M. Lorusso re: 77 P Street |
| 125 | 4/26/2001 | Letter from F. Smith to T. Dimond; cc'd to N. Gandhi, J. Abadie, C. Barbera re: Approval of Financial Plan and Budget for P Street Lease |
| 126 | 4/26/2001 | Email from E. Martin to M. Lorusso re: 77 P |
| 127 | 5/2/2001 | Email from E. Price to T. Dimond, E. Martin re: FW: Relocation of Brentwood Road Facilities |
| 128 | 5/4/2001 | Email from P. Cross to J. Brownell re: Kent Island Property |
| 129 | 5/4/2001 | Email from A. Reece to T. Dimond; cc'd to GrahamWOne@aol.com re: FW: mayor dumping abandoned cars all over city |

| 130 | 5/4/2001 | Email from L. Hotaling to T. Dimond; cc'd to GrahamWOne@aol.com re: mayor dumping abandoned cars all over city |
| 131 | 5/7/2001 | Email from E. Herman to T. Dimond, M. Lorusso; cc'd to K. Kauffman, F. Mobilio re: 77 P St. Permit |
| 132 | 5/9/2001 | P Street Contractors Meeting Update |
| 133 | 5/9/2001 | Letter from M. Langhirt at the Hartford Company to C. Young re: Quote #01-7035 Revision 1 DC Govt New York Ave 3rd Floor |
| 134 | 5/11/2001 | Email from Southwest Airlines to M. Lorusso (biginc account) re: Ticketless Confirmation for Las Vegas flight |
| 135 | 5/15/2001 | Email from J. Koskinen to L. Hotaling, W. Lewis, D. Allen; cc'd to S. Alemi, T. Henderson, S. Asher, T. Dimond, M. Lorusso, E. Price, E. Martin, L. Burris re: Lot R - Interim Use on Parking Enforcement |
| 136 | 5/15/2001 | Memo from K. Cross to M. Lorusso re: 77 P Street Furniture and overal signage |
| 137 | 5/15/2001 | Letter from S.M. Brooks (GSA Account Executive) to K. Cross (DOES) re: Haworth Furniture Quote/77 P St. 3rd Floor |
| 138 | 5/16/2001 | Directions to Addison Road |
| 139 | 5/17/2001 | Email from K. Kauffman to F. Mobilio;  cc'd to T. Dimond, M. Lorusso re: DOES Odds and Ends |
| 140 | 5/17/2001 | Email from L. Hotaling to G. Mitchell, K. Green; cc'd to M. Lorusso re: FW: impoundment lot |
| 141 | 5/18/2001 | Email from L. Hotaling to M. Lorusso re: impoundment lot |
| 142 | 5/18/2001 | Easy Access Corporation Invoice to Davis Construction Corp. for $70,849.07 |
| 143 | 5/21/2001 | Project Management - Enterprise Business Group DC Govt - DOES ISDN BRI PROJECT: Customer/Vendor Meeting Minutes from JoVonne Day-Miles, Verizon Project Manager |
| 144 | 5/22/2001 | Application for Payment from Gichner Iron Associates, Inc. to Davis Construction Corp. for Maryland 95 Executive Center |
| 145 | 5/22/2001 | Dept of Consumer and Regulatory Building and Land Regulation Administration Building Permit for 77 P Street, NE - Permission Granted to DDC |
| 146 | 5/23/2001 | Email from L. Hotaling to C. Barbera, R. Rigsby, A. Teal, D. Gorman; cc'd to J. Koskinen, M. Lorusso, T. Dimond, K. Green, E. Coard re: Possible red flag: impounding in Maryland |

| 147 | 5/23/2001 | Davis Construction Corporation - DOES Progress Meeting Number Four Agenda |
| 148 | 5/23/2001 | DOES Relocation 77 P Street, NE, Project Schedule Tenant Improvements |
| 149 | 5/23/2001 | Prince George's County Permit Application for Jamalis Fairfield Farms - USE Revision (applicant is Tom Milbourne); Prince George's County Permit Application for Jamalis Fairfied Farms - USE (applicant is Paul Millstein) |
| 150 | 5/25/2001 | Email from L. Hotaling to P. Miller, G. Mitchell, M. Lorusso, N. Mapp, L. Ellis, K. Green, W. Thomas, J. Roberts, T. Sigamoni, P. Hairston; cc'd to T. Dimond, J. Koskinen, M. Myers re: Site Visit at New Impoundment Lot |
| 151 | 5/25/2001 | Email from M. Myers to M. Lorusso re: Site Visit at New Impoundment Lot |
| 152 | 5/25/2001 | Email from T. Dimond to L. Hotaling re: Site Visit at New Impoundment Lot |
| 153 | 5/25/2001 | Project Management - Enterprise Business Group DC Govt - DOES ISDN BRI PROJECT: Customer/Vendor Meeting Minutes from JoVonne Day-Miles, Verizon Project Manager |
| 154 | 5/30/2001 | Fax from R. Fidler at Communications Construction Group to N. Jemal re: Attached A Signed Exhibit D (4800 Addison Rd Lease) |
| 155 | 5/30/2001 | Davis Construction Corporation - DOES Progress Meeting Number Five Agenda |
| 156 | 5/30/2001 | Davis Construction Corporation - DOES Progrees Meeting Number Five: Agenda |
| 157 | 5/31/2001 | Email from R. Wood (OCTO) to H. Metcalf; cc'd to C. Colemanhall re: The Movers |
| 158 | 5/31/2001 | Email from P. Cohn to M. Bailey, E. Price; cc'd to E. Martin, D. Bracey re: Proposal to the RLA to exchange Parcel 38 for the firehouse FBO CPPH |
| 159 | 6/1/2001 | Fax from M. Mallus to N. Jemal, B. Esherick re: RFP from Brian (RFP attached to cover sheet) |
| 160 | 6/5/2001 | Application for Payment from Interstate Interiors to Davis Construction Corp. for Jemal's GW/77 P St NE in the amount of $17,667.00 |
| 161 | 6/8/2001 | Letter from B. Owen, M. Mallus to B. Sullivan; cc'd to D. Jemal, N. Jemal, B. Esherick re: Request for Proposal, 77 P Street, Affiliated Computer Systems (ACS) |
| 162 | 6/8/2001 | Project Management - Enterprise Business Group DC Govt - DOES ISDN BRI PROJECT: Customer/Vendor Meeting Minutes from JoVonne Day-Miles, Verizon Project Manager |

| 163 | 6/11/2001 | Memo from K. Cross to All 500 C Street Managers re: Move Preparation |
| 164 | 6/20/2001 | Davis Construction Corporation - DOES Progress Meeting Number Eight Agenda |
| 165 | 6/20/2001 | Davis Construction Corporation - DOES Progrees Meeting Number Eight: Agenda (with handwriting) |
| 166 | 6/21/2001 | Letter from E. Herman to P. Millstein re: Department of Employment Services |
| 167 | 6/22/2001 | Casework Job #3049-2001 to Davis Construction Corp. re: P St. Desk & Lobby Panel in the amount of $14,393 |
| 168 | 6/24/2001 | Weekly Time and Distribution Report for Oscar Garcia |
| 169 | 6/24/2001 | Weekly Time and Distribution Report for Lacey Lord Jr and Juan Arue |
| 170 | 6/24/2001 | Weekly Time and Distribution Report for William Geris and William Burnett II |
| 171 | 6/24/2001 | Weekly Time and Distribution Report for Michael Mohun and Noe Aguilar |
| 172 | 6/24/2001 | Weekly Time and Distribution Report for Alex Amaya and Joseph Martin |
| 173 | 6/24/2001 | Weekly Time and Distribution Report for Alexis Olivar and Gilbert Green |
| 174 | 6/24/2001 | Weekly Time and Distribution Report for Darnell Bradshaw and Eric Porter |
| 175 | 6/24/2001 | Weekly Time and Distribution Report for Edgar Thompson and James Bryant |
| 176 | 6/24/2001 | Weekly Time and Distribution Report for Marlow Bush and Christopher Watts |
| 177 | 6/24/2001 | Weekly Time and Distribution Report for Randy Capron and Lars Haggblom |
| 178 | 6/24/2001 | Weekly Time and Distribution Report for Phillip Pine and Jeffrey Tibbs |
| 179 | 6/24/2001 | Weekly Time and Distribution Report for Arturo Castro and Gregory Pine |
| 180 | 6/24/2001 | Weekly Time and Distribution Report for Abraham Soto and Arturo Castro |
| 181 | 6/27/2001 | Email from L. Hotaling to S. Asher, L. Burris, J. Koskinen; cc'd to T. Dimond, P. Graham, K. Green, E. Price, N. Gandhi, W. Upshaw, E. Martin re: Impound Lot Funding |
| 182 | 6/28/2001 | Application for Payment from Flooring Solutions, Inc to Davis Construction Corp. for 77 P Street East West Lobbies in the amount of $73,003 |
| 183 | 6/29/2001 | Email from J. Koskinen to L. Hotaling, K. Green, G. Mitchell, M. Myers, L. Ellis; cc'd to T. Dimond, M. Lorusso re: The Maryland Question |

| 184 | 6/29/2001 | Memo from G. Irish to J. Jacobs re: DOES Risk Management Quarterly Report |
| 185 | 6/30/2001 | Email from L. Hotaling to J. Koskinen, K. Green, G. Mitchell, M. Myers, L. Ellis; cc'd to T. Dimond, M. Lorusso re: The Maryland Question |
| 186 | 6/30/2001 | Application and Certification for Payment from Stalker Brothers, Inc. to DDC for $78,370 |
| 187 | 7/1/2001 | Weekly Time and Distribution Report for Alex Amaya and Michael Mohun |
| 188 | 7/1/2001 | Weekly Time and Distribution Report for Lacey Lord Jr and Juan Arue |
| 189 | 7/1/2001 | Weekly Time and Distribution Report for William Geris and Oscar Garcia |
| 190 | 7/1/2001 | Weekly Time and Distribution Report for William Burnett II and Joseph Martin |
| 191 | 7/1/2001 | Weekly Time and Distribution Report for Pablo Castro and Noe Aguilar |
| 192 | 7/1/2001 | Weekly Time and Distribution Report for Alexis Olivar and Manuel Cruz |
| 193 | 7/1/2001 | Weekly Time and Distribution Report for Darnell Bradshaw and Eric Porter |
| 194 | 7/1/2001 | Weekly Time and Distribution Report for James Strett and James Bryant |
| 195 | 7/1/2001 | Weekly Time and Distribution Report for Christopher Watts and Edgar Thompson |
| 196 | 7/1/2001 | Weekly Time and Distribution Report for Randy Capron and Marlow Bush, Jr |
| 197 | 7/1/2001 | Weekly Time and Distribution Report for for Jeffrey Tibbs and Lars Haggblom |
| 198 | 7/1/2001 | Weekly Time and Distribution Report for Abraham Soto and Arturo Castro |
| 199 | 7/3/2001 | DDC Letter from J. Brownell to J. Cohen re: 4800 Addison Road |
| 200 | 7/6/2001 | Email from S. Asher to L. Burris, J. Koskinen, T. Dimond, L. Hotaling; cc'd to P. Graham, K. Green, P. Laporte re: Impound Lot funding |
| 201 | 7/9/2001 | Email from K. Kauffman to J. Philip, M. Lorusso re: FW: DOES Relocation |
| 202 | 7/9/2001 | Email from K. Kauffman to M. Lorusso re: DOES - 77P Street |
| 203 | 7/9/2001 | Email from J. Koskinen to L. Burris; cc'd to T. Dimond, M. Lorusso re: cars on the street |
| 204 | 7/11/2001 | Memo from R. Berry to T. Dimond through G. Irish re: Memorandum of Understanding OPM and DOES/LSB |
| 205 | 7/11/2001 | Memorandum of Understanding between the DOES, Labor Standards Bureau, and OPM |

| 206 | 7/11/2001 | Davis Construction Corporation - DOES Progress Meeting Number Nine Agenda |
| 207 | 7/12/2001 | Memo from C. Byron to G. Irish; cc'd to F. Berry, R. Berry, C. Coleman-Hall re: Unbudgeted Moving Obligations (7/3/01 DOES Analysis of purchase orders) |
| 208 | 7/16/2001 | Email from K. Kauffman to H. Metcalf; cc'd to E. Murphy, J. Philip, M. Lorusso, R. Wood re: 77 P second floor build out status |
| 209 | 7/16/2001 | Letter from M. Langhirt at the Hartford Company to S.M. Brooks at Price Modern re: Quote #01-7035 Revision 3 77 P Street, NE |
| 210 | 7/17/2001 | Email from K. Kauffman to M. Lorusso, J. Philip re: 77 P second floor build out status |
| 211 | 7/17/2001 | Fax from N. Jemal to G. Lubar re: 77 P Street Proposal |
| 212 | 7/17/2001 | Tricon Construction, Inc. Work Authorization #10625 for Davis re: DOES 77 P NE in the amount of $1,072.00 |
| 213 | 7/18/2001 | DOES Network News, Volume 2, Issue 10 |
| 214 | 7/20/2001 | Email from C. Colemanhall to D. Stancell, D. Johnson, P. Vann, Y. ?lough, H. Metcalf, E. Murphy, C. Lynch, R. Bauer, C. Roeslin, F. Berry, S. Lane re: Furniture Installation Meeting |
| 215 | 7/20/2001 | Email from T. Dimond to J. Koskinen, L. Hotaling; cc'd to K. Green, M. Lorusso re: Addison road |
| 216 | 7/20/2001 | Davis Construction Corp. Invoice #S0202-71 to DDC (P. Millstein) re: Jemal's Gateway for $537,484 (subcontractor summary for $396,993 attached) |
| 217 | 7/20/2001 | District of Columbia check issued by the Office of Finance and Resource Management (includes payment for $38k invoice) |
| 218 | 7/21/2001 | Cochran & Mann, Inc Job Work Order #8434 to Davis Construction Corp. re: DOES in the amount fo $320 |
| 219 | 7/25/2001 | Email from E. Herman to T. Dimond re: Department of Mental Health |
| 220 | 7/25/2001 | Application and Certification of Payment from Stalker Brothers Inc. to DDC for $183,360 |
| 221 | 7/26/2001 | Email from D. Stancell to C. Lynch, E. Murphy; cc'd to C. Colemanhall, D. Johnson re: Furniture Move |
| 222 | 7/26/2001 | Pricing sumbision from J. Carter to K. Clark re: DOES 3rd Floor - WA#10625-Repair Damage by others |
| 223 | 7/26/2001 | Tricon Construction Inc. Work Authorization #8917 for Davis re: DOES 2nd Floor in the amount of $679 |

| 224 | 7/27/2001 | Proposal from DDC to L. Ganem of Communications Construction Group re: 4800 Addison Road |
| 225 | 7/27/2001 | DDC Letter from N. Jemal to L. Ganem re: Proposal to Communications Construction Group, CCG to lease space at 4800 Addison Rd |
| 226 | 7/28/2001 | Cochran & Mann, Inc. Job Work Order #8435 for Davis Construction Corp. re: DOES Overtime Compensation in the amount of $320 |
| 227 | 7/31/2001 | Email from T. Dimond to L. Law; cc'd to J. Williamson re: [no subject] |
| 228 | 7/31/2001 | Price Modern Invoice to DOES re: Purchase Order No. P1000855 for $499,409.54 |
| 229 | 8/1/2001 | Fax from R. Ellis, M. Mallus to N. Jemal re: ACS @ 77 P Street (8/1/01 Counter proposal from B. Sullivan attached) |
| 230 | 8/2/2001 | Email from T. Bullock to L. Hotaling, M. Myers, M. Lorusso; cc'd to S. Gang, K. Green, T. Dimond, J. Koskinen re: Reporter Query Update |
| 231 | 8/2/2001 | Email from M. Krainak to M. Lorusso; cc'd to C. Barbera re: 4800 Addison road |
| 232 | 8/3/2001 | Email from M. Krainak to 'lane'; cc'd to M. Lorusso re: 4800 Addison Rd Lease (08/02/2001) |
| 233 | 8/6/2001 | Memo from R. Crouch to L. Inabinet at Price Modern re: DC Government #01-7035 |
| 234 | 8/6/2001 | Letter from J. Carter, Sr (Tricon) to K. Clark re: DOES - 2nd Floor - WA #8917 - Overtime WE 7/21/01 |
| 235 | 8/7/2001 | Fax from N. Jemal to G. Lubar re: 77 P Street Proposal |
| 236 | 8/7/2001 | Letter from N. Jemal to G. Lubar of Staubach re: 4th floor space at 77 P |
| 237 | 8/8/2001 | Fax from N. Jemal to G. Lubar re: Dept of Mental Health |
| 238 | 8/8/2001 | Letter of Funding Intent by Department of Mental Health for 77 P Street, NE |
| 239 | 8/9/2001 | Memo from M. Lorusso to A. Rivlin through N. Gandhi through T. Dimond re: DMH Addendum and lease overview |
| 240 | 8/9/2001 | Letter to J. Cohen re: 4800 Addison Road (7/9/01 Letter from Brownell to Cohen attached) |
| 241 | 8/9/2001 | Letter from K. Clark to K. Kauffman re: DOES pending changes and deductions from the Overtime Allowance |
| 242 | 8/12/2001 | Davis Construction Corp. Work Order #11492 to DOES |

| 243 | 8/15/2001 | 4800 Addison Road: Initial Lease |
| 244 | 8/15/2001 | HOK Invoice- DOES |
| 245 | 8/15/2001 | 4800 Addison Road Direct Capitalization Pro Forma as of August 15, 2001 |
| 246 | 8/16/2001 | Letter from B. Esherick to R. Jasper re: Proposal to DC Dept of Parks and Recreation re: lease space at 3330-3360 New York Ave, NE |
| 247 | 8/19/2001 | Davis Construction Corp. Work Order #11493 to DOES |
| 248 | 8/21/2001 | Staubach Invoice No. 2086-1860-17472 to D. Jemal re: commission payment due $312,416.82 |
| 249 | 8/26/2001 | Davis Construction Corp. Work Order #11494 to DOES |
| 250 | 8/26/2001 | Davis Construction Corp. Work Order #8340 to DOES |
| 251 | 8/28/2001 | Email from K. Kauffman to K. Clark re: DOES Phase 2 power |
| 252 | 8/29/2001 | Fax from Flooring Solutions Inc. to K. Clark re: DOES 3rd Floor FSI Job#2004, Change Order #4 (Temporay Carpet Patch work on) |
| 253 | 8/31/2001 | Email from T. Dimond to M. Knisley re: mh space |
| 254 | 9/2/2001 | Davis Construction Corp. Work Order #8341 to DOES |
| 255 | 9/4/2001 | Email from L. Hotaling to J. Koskinen; cc'd to T. Dimond, M. Lorusso, K. Green, J. Roberts, G. Mitchell re: The Maryland Question |
| 256 | 9/4/2001 | Email from L. Hotaling to L. Ellis, K. Green, J. Roberts, S. Rennie; cc'd to G. Mitchell, N. Mapp, P. Hairston, W. Thomas, W. Bernhardt, R. Brown, A. Isaacs, T. Dimond, M. Lorusso re: Addison Road Lot |
| 257 | 9/4/2001 | Email from G. Irish to T. Dimond; cc'd to M. Lorusso, C. Byron, R. Berry, C. Hall re: Meeting tomorrow on funding for labor standards |
| 258 | 9/6/2001 | DOES Unbudgeted Move Items |
| 259 | 9/7/2001 | Email from M. Hodge to M. Lorusso; cc'd to J. Greenberg, E. Price, E. Martin re: Net 2000 Funds Expenditure |
| 260 | 9/10/2001 | Memo from F. Falwell to F. Scott re: Certificate of Funding |
| 261 | 9/12/2001 | Email from J. Greenberg to M. Lorusso; cc'd to F. Scott, M. Hodge re: status of negotiations/agreement for tech space |

| 262 | 9/19/2001 | Invoice #3109 from Ricco Design to DOES for $7,814.52 |
| 263 | 9/24/2001 | Email from M. Lorusso to M. Hodge, J. Greenberg, M. Lorusso; cc'd to E. Martin re: [no subject] |
| 264 | 9/24/2001 | Memo from C. Coleman Hall to F. Berry; cc'd to Irish, Harder, Harper, Tolson, My files re: Furniture: Walk Through Assessment |
| 265 | 9/25/2001 | Email from J. Greenberg to M. Lorusso; cc'd to M. Hodge, E. Martin re: affordable facilities/master lease |
| 266 | 9/25/2001 | Email from M. Hodge to J. Greenberg re: FW: affordable facilities/master lease |
| 267 | 9/25/2001 | Email from J. Greenberg to M. Lorusso; cc'd to M. Hodge re: please call so we can wrap things up |
| 268 | 9/26/2001 | Sign-off Sheet re: Memorandum of Understanding for transfer of $1M for Net 2000 implementation to OPM |
| 269 | 9/26/2001 | New Memorandum of Agreement for New Economy signed by E. Price |
| 270 | 9/27/2001 | Email from J. Greenberg to E. Martin, M. Lorusso, M. Hodge, F. Scott, F. Falwell re: funds have been transferred |
| 271 | 9/28/2001 | United Rentals Invoice to DDC for $1,761.74 |
| 272 | 10/1/2001 | Letter from D. Jemal to J. Cayre re: opening of The Washington Opera Studio (invitation attached) |
| 273 | 10/4/2001 | Invoice and corresponding check from DDC to Branch Electric, Branch Data Comm for $1,658.15 |
| 274 | 10/6/2001 | Grossberg Tax Short-Form 1065 Preparation Checklist for Jemal's Fairfield LLC |
| 275 | 10/10/2001 | Letter from B. Esherick to M. Lorusso re: Proposal to DC Govt to lease space at 3330-3360 New York Ave, NE |
| 276 | 10/11/2001 | Letter from B. Esherick to M. Lorusso re: Proposal to DC Govt-DHS to lease space at 641 S Street NW |
| 277 | 10/12/2001 | Memo from S.M. Brooks at Price Modern to L. Smith at DOES; cc'd to M. Neale, C. Hall re: DC Employment Services, 77 P Street NE 3rd Floor PO #P1000995 |
| 278 | 10/17/2001 | Letter from N. Jemal to E. Price; cc'd to D. Jemal re: information on H&M as a Woodies tenant |
| 279 | 10/18/2001 | Email from K. Kauffman to M. Lorusso re: DMH 77P St budget |
| 280 | 10/18/2001 | Email from Kauffman to Jemal and Millstein re: DOES 77 P Reimbursements |
| 281 | 10/18/2001 | Invoice and corresponding check from DDC to United Electric Supply Co., Inc. for $3,813.47 |
| 282 | 10/22/2001 | Email from Kauffman to Clark re: Summary of Payments for DOES |

| | | |
|---|---|---|
| 283 | 10/23/2001 | Memo from C. Coleman Hall to L. Rumbaugh re: Payments to be made to Haworth and Price Modern |
| 284 | 10/24/2001 | Invoice and corresponding check from DDC to United Rentals for $5,547.47 |
| 285 | 10/25/2001 | Letter of Funding Intent by Department of Mental Health for 77 P Street, NE (no Govt letterhead) |
| 286 | 10/25/2001 | Letter of Funding Intent by Department of Mental Health for 77 P Street, NE (DC Govt Letterhead) |
| 287 | 10/26/2001 | DDC Check to G. Galentine for $5,160.02 |
| 288 | 10/29/2001 | HOK Invoice- DOES |
| 289 | 10/29/2001 | Invoices and corresponding check from DDC to Lee's Gas Supplies, Inc. for $3,795.62 |
| 290 | 10/29/2001 | United Rentals Invoice to DDC for $1,671.44 |
| 291 | 10/30/2001 | Email from T. Dimond to M. Evans; cc'd to W. Huston, R. Woodson, M. Lorusso re: ABRA Relocation |
| 292 | 10/30/2001 | Invoice and corresponding check from DDC to United Electric Supply Co., Inc. for $806.00 |
| 293 | 11/1/2001 | DOES P Street - Tenant Improvement Invoice Log |
| 294 | 11/6/2001 | Invoice and corresponding check from DDC to Lawnie J. Brown for $298.17 |
| 295 | 11/7/2001 | Email from B. Esherick to G. Lubar, M. Lorusso re: FW: DC. Lease |
| 296 | 11/7/2001 | Invoice and corresponding check from DDC to Hilltop Sand and Gravel Co., Inc. for $26,313.00 |
| 297 | 11/7/2001 | Invoice and corresponding check from DDC to Lee's Gas Supplies, Inc. for $211.54 |
| 298 | 11/9/2001 | Letter from M. Neale at Price Modern to L. Smith at DOES; cc'd to J. Harper, Jr. re: clarification of the charges for installation of the furniture for the P Street building (includes 3 attachments) |
| 299 | 11/12/2001 | United Rentals Invoice to DDC for $912.65 |
| 300 | 11/14/2001 | Email from C. Barbera to M. Lorusso re: Legal Sufficiency 77P Amendment |
| 301 | 11/15/2001 | Staubach Invoice No. 208-18-00-0000 to D. Jemal re: commission payment due $88,587.00 |
| 302 | 11/15/2001 | United Rentals Invoice to DDC for $1,141.00 |
| 303 | 11/19/2001 | Application No. 7 File containing: Letter from G. Galentine to T. Morowski at Fremont Investment & Loan; cc'd to P. Millstein, J. Brownell re: People's Warehouse 77 P Street Application No. 7 (application attached) |
| 304 | 11/19/2001 | Invoice for $565.90 and corresponding check from DDC to United Rentals for $2,916.03 |

| 305 | 11/19/2001 | Invoice and corresponding check from DDC to United Rentals for $2,916.03 |
| 306 | 11/20/2001 | Letter from N. Jemal to S. Frankel re: 77 P Street Proposal (1st Floor) |
| 307 | 11/20/2001 | Letter from N. Jemal to P. Larkin re: 77 P Street Proposal (5th Floor) - DC CFO Copy |
| 308 | 11/20/2001 | Letter from N. Jemal to P. Larkin re: 77 P Street Proposal (5th Floor) - DOH Copy |
| 309 | 11/20/2001 | Letter from N. Jemal to S. Frankel re: 77 P Street Proposal (5th Floor) - Alcohol Beverage Control Board Copy |
| 310 | 11/20/2001 | Letter from N. Jemal to S. Frankel re: 77 P Street Proposal (6th Floor) |
| 311 | 11/26/2001 | DDC Invoice to Jemal's Fairfield Farms LLC for $6,855.00 |
| 312 | 11/28/2001 | Letter from M.Goss at Ricco Design to J. Harper (DOES) re: Response to Price Modern Request for Contract Modification |
| 313 | 12/6/2001 | Memo from T. Dimond to E. Martin; cc'd to K. Koskinen, E. Price, G. Irish, B. Jumper, H. Mosley, M. Lorusso, C. Byron re: Request for #3 DOES funding on relocation for 2002 |
| 314 | 12/7/2001 | Email from T. Dimond to J. Koskinen, E. Price; cc'd to M. Lorusso re: Addison Road/ATF |
| 315 | 12/7/2001 | Email from J. Koskinen to T. Dimond, E. Price; cc'd to M. Lorusso, C. Barbera, N. Gandhi, G. McDonald, R. Hays, A. Calhoun re: Addison Road/ATF |
| 316 | 12/11/2001 | Email from L. Hotaling to L. Ellis, S. Rennie; cc'd to G. Mitchell, K. Green, J. Roberts, M. Brown, W. Bernhardt, R. Brown, M. Lorusso re: Addison Road Floor Plan |
| 317 | 12/12/2001 | Email from J. Greenberg to M. Lorusso; cc'd to E. Martin re: confirming tour of master lease space |
| 318 | 12/20/2001 | Email from S. Studabaker (C&W) to M. Krainak; cc'd to M. Lorusso, T. Dimond, S. Frankel re: Copy of Appraisal Report on WMATA Georgia Avenue / Petworth |
| 319 | 12/27/2001 | Letter from B. Esherick to M. Lorusso re: Proposal to DC Govt-Office of Procurement to lease space at 77 P Street NW |
| 320 | 12/31/2001 | Joe Cayre Statement of Net Worth |
| 321 | 12/31/2001 | Cayre-Jemal's Gateway 77 P Street NW Loan Budget Summary |
| 322 | 12/31/2001 | Cayre-Jemal's Gateway 77 P Street NW Loan Budget Summary |

| 323 | 12/31/2001 | Cash Position as of December 31, 2001 |
| 324 | 12/31/2001 | P Street Asset Value Ratio to the Total Portfolio's Value |
| 325 | 12/31/2001 | Douglas Development Corp. Property Summary as of December 31, 2001 |
| 326 | 12/31/2001 | Cayre Jemal's Gateway (Peoples) Fremont Loan Balance Account # 2500 |
| 327 | 1/3/2002 | Email from T. Dimond to E. Price, J. Koskinen; cc'd to M. Lorusso re: DPW |
| 328 | 1/4/2002 | Letter from B. Esherick to M. Lorusso re: Proposal to DC Govt-Alcoholic Beverage Consumption Board to lease space at 77 P Street NW |
| 329 | 1/8/2002 | Email from L. Hotaling to R. Washington; cc'd to T. Dimond, M. Lorusso, S. Green, T. Henderson, G. Mitchell, K. Green re: Economic Develop at 900 NJ, SE & DC Village |
| 330 | 1/24/2002 | Email from J. Greenberg to M. Lorusso re: can we set up a time to tour the proposed tech space(s)? |
| 331 | 2/1/2002 | Email from E. Valencia to M. Lorusso; cc'd to D. Tangherlini; K. Anderson re: Facility questions and interests |
| 332 | 2/1/2002 | Letter from S. Hochman, G. Arabak to B. Owen, M. Mallus re: Proposal with respect to leasing space on 1st floor and lower level of 77 P Street |
| 333 | 2/5/2002 | Email from S. Frankel to M. Lorusso; cc'd to B. Sullivan re: Pooled funds (attachment: DC Government Pooled Funds as of 2/5/02) |
| 334 | 2/14/2002 | HOK Invoice- DOES |
| 335 | 2/15/2002 | HOK Invoice- DOES |
| 336 | 2/21/2002 | Letter from B. Esherick to B. Sullivan re: Proposal to DC Govt (MPD) to lease space in 77 P Street |
| 337 | 2/21/2002 | Letter from B. Esherick to G. Teasley re: Proposal to DOH to lease space at 77 P Street |
| 338 | 2/22/2002 | Email from E. Valencia to V. McIver; cc'd to R. Ravilla, M. Lorusso, K. Anderson re: Visit to People's Warehouse |
| 339 | 2/22/2002 | Letter from B. Esherick to G. Teasley re: Proposal to DC Govt (DOH) to lease space in 77 P Street |
| 340 | 2/27/2002 | Email from E. Valencia to M. Lorusso; cc'd to K. Anderson, R. Ravilla, D. Tangherlini re: People's Warehouse - DDOT's interested |
| 341 | 3/7/2002 | Email from J. Williams to T. Dimond re: Meeting with Mike Lorusso |

| 342 | 3/13/2002 | Email from L. Hotaling to J. Koskinen and A. Davis; cc'd to T. Dimond, M. Lorusso, E. Price, E. Martin re: Follow-up Issues from Public Briefing on Spending Pressures--URGENT |
| 343 | 3/15/2002 | Letter from B. Esherick to M. Lorusso re: Proposal to District of Columbia Government, New Economy Act to lease space in 77 P Street |
| 344 | 3/22/2002 | Email from J. Philip to T. Dimond; cc'd to M. Lorusso re: Problems with Uncompleted Building Work @ DOES |
| 345 | 4/3/2002 | Memo from T. Dimond to G. Irish re: DOES Tenant Fit Out |
| 346 | 4/9/2002 | Proposal from DDC to L. Ganem of Communications Construction Group re: 4800 Addison Road |
| 347 | 4/11/2002 | Email from Lorusso to Kauffman re: Commission Pool Disbursement |
| 348 | 4/13/2002 | Email from O'Brien to Kauffman re: Commission Pool Disbursements |
| 349 | 4/22/2002 | Email from D. Thigpen to L. Potkin; cc'd to M. Lorusso, C. Barbera, J. Stanford re: Firehouse Lease - District Revisions (PL-02-154) |
| 350 | 4/22/2002 | Letter from P. Judy to R. Fidler of Communications Construction Group re: Executed Second Addendum to Lease |
| 351 | 4/24/2002 | Fax from C. Byron to M. Lorusso re: Intra-Dist Transfer from AMO to DOES |
| 352 | 5/1/2002 | Loan No. 950113952 First Amendment to Deed of Trust and Other Loan Documents among Cayre Jemal's Gateway LLC, D. Jemal, J. Cayre, and Fremont |
| 353 | 5/2/2002 | Email from R. Warsh to M. Lorusso re: Wednesay Meeting Agenda |
| 354 | 5/6/2002 | Email from Beckford to Galen, Brownell, Mettings, N. Jemal and Staubach re: DOES and Dept of Mental Health |
| 355 | 5/7/2002 | Email from J. Koskinen to N. Bravo, K. Robinson, G. McCarthy; cc'd to T. Dimond, M. Lorusso re: Fate of $2.9 Million for CFO |
| 356 | 5/7/2002 | Email from E. Price to J. Greenburg, M. Lorusso; cc'd to E. Martin re: meeting to plan master lease facility/tech affordable facility |
| 357 | 5/7/2002 | Lease between the District of Columbia and Jemal's Firehouse LLC for 438 Massachusetts Avenue, NW |
| 358 | 5/8/2002 | Email from J. Greenberg to M. Jasso, M. Lorusso; cc'd to E. Martin, C. Toney re: background info. For |

meeting on Friday/master lease space

| 359 | 5/15/2002 | Masterfile Update Cayre Jemal's Peoples LLC 77 P Street as of 1/8/02 detailing Loan Disbursement to CB Richard Ellis; cancelled check from L&P to CB Richard Ellis for $384,383.03 |
| 360 | 5/17/2002 | Letter from M. Lorusso to G. O'Brien re: Disbursement from DC Govt/Staubach Co. Commission Pool Account ($411K Int'l Builders invoice and Staubach check attached) |
| 361 | 5/29/2002 | Email from C. Byron, Jr. to M. Lorusso; cc'd G. Irish, T. Dimond, E. Martin, T. Carter, B. Jumper, M. Mohamed, H. Mosley, G. Scoggins, R. Berry, F. Hollis re: Move Funds: FY 2002 MOU $1.2M (revised e-mail) |
| 362 | 5/30/2002 | HOK Invoice- Dept. of Mental Health |
| 363 | 5/30/2002 | HOK Invoice- Dept. of Mental Health |
| 364 | 5/31/2002 | Invoice from RMA Chauffered Transportation to DDC - DOES |
| 365 | 6/1/2002 | Grossberg Tax Short-Form 1065 Preparation Checklist for Jemal's Fairfield LLC |
| 366 | 6/4/2002 | Email from C. Barbera to M. Lorusso; cc'd to T. Dimond re: OPM authority to lease without using licensed real estate brokers |
| 367 | 6/11/2002 | Email from N. Jemal to N. McKinney re: Addison Rd. Warehouse |
| 368 | 6/13/2002 | Memo from T. Dimond to H. Tillery re: 2003 Budget Reductions & Proposed Reforms |
| 369 | 6/20/2002 | Email from M. McShea to G. O'Brien; cc'd to B. Peck re: Disbursements from Pool Account |
| 370 | 6/21/2002 | Memo from I. Jones to J. Buford re: Certification of Funding for Acquiring Additional Leased Space |
| 371 | 6/23/2002 | Email from A. Occhetti to C. Barbera, M. Krainak; cc'd to M. Lorusso and T. Dimond re: Impoundment Lot Resolution |
| 372 | 6/25/2002 | Email from H. Tillery to T. Dimond, M. Lorusso; cc'd to W. Howland re: Outstanding Actions |
| 373 | 6/25/2002 | Letter from B. Esherick to M. Lorusso re: Proposal to District of Columbia Government, New Economy Act to lease space in 77 P Street |
| 374 | 6/28/2002 | Email from E. Valencia to M. Lorusso to K. Anderson, D. Tangherlini, R. Quammen, S. Terry, W. Lewis, T. Henderson re: Peoples Warehouse Lease |
| 375 | 6/28/2002 | 77 P Street Draw 9 Tenant Improvements |

| 376 | 6/28/2002 | Letter from D. Medding to M. Gorin of Fremont Investment & Loan; cc'd to P. Millstein, J. Brownell re: People's Warehouse 77 P Street Application No. 9 |
| 377 | 7/11/2002 | Email from J. McKenzie to D. Gorman; cc'd to A. Occhetti, C. Barbera and M. Lorusso re: 4800 addison rd. - certification of emergency resolution and resolution to declare and emergency |
| 378 | 7/11/2002 | Email from C. Barbera to A. Occhetti; cc'd to M. Lorusso and J. McKenzie re: 4800 Addison Road |
| 379 | 7/15/2002 | Email from J. Parks to T. Dimond; cc'd to C. Colvin, G. Teasley, S. Rodgers, J. Parks re: Relocation to 77 P St.<br>& Capital Budget |
| 380 | 7/17/2002 | Morgan Stanley Fax from B. Black to J. Brownell re: Revised 77 P Street Term Sheet |
| 381 | 7/18/2002 | Email from T. Dimond to J. Parks, T. Dimond, cc'd to C. Colvin, G. Teasley, S. Rodgers and J. Parks re: Relocation to 77 P St. & Capital Budget |
| 382 | 7/18/2002 | Email from N. Francis to H. Tillery; cc'd to W. Howland, T. Dimond re: Capital Budget, DHS Relocation & Roof Repairs, Gales & Bundy |
| 383 | 7/18/2002 | Email from J. McKenzie to 'lane', M. Lorusso; cc'd to C. Barbera re: DC Lease - jemal - case no. PL-02-228 |
| 384 | 7/18/2002 | Letter from G. Galentine to J. Brownell; cc'd to D. Jemal, P. Millstein re: 108-112 South Washinton St. Rooftop Demolition and Repair Invoice No. 1 |
| 385 | 7/19/2002 | Fax from C. Cossey at Fremont to G. Galentine re: Jemal's Gateway - 950113952 (completion of request to advance funds attached) |
| 386 | 7/20/2002 | Email from H. Tillery to T. Dimond, W. Howland, N. Francis; cc'd to M. Lorusso, H. Tillery re: Capital Budget, DHS Relocation & Roof Repairs, Gales & Bundy |
| 387 | 7/25/2002 | Email from M. Haddad to J. Brownell re: Woodies - computing Doug's fees |
| 388 | 7/25/2002 | Memo from J. Parks to M. Lorusso through C. Colvin; cc'd to T. Dimond, H. Tillery, S. Rodgers, L. Burris, G. Teasley, B. Stewart, J. Philips re: Follow-up to 7/22/02 Meeting Regarding DHS' Relocation to P Street |
| 389 | 7/26/2002 | Department of the Treasury - Final Regulations Governing Practice Before the IRS (Circular 230) effective 7/26/02 |
| 390 | 7/30/2002 | Email from T. Dimond to H. Tillery; cc'd to W. Howland re: Deputy Director Assessment |

| 391 | 7/30/2002 | Email from N. Francis to M. Lorusso; cc'd to W. Howland re: DHS Move |
| 392 | 7/30/2002 | Email from N. Jemal to 'evglaw' re: Education |
| 393 | 7/31/2002 | Email from J. Greenberg to M. Lorusso; cc'd to E. Martin re: follow up to our meeting of July 26 regarding master lease space |
| 394 | 8/1/2002 | Letter from A. Schwartz (Schwartz Engineering, Inc.) to P. Millstein re: 77P Street Tenant - New Economy |
| 395 | 8/2/2002 | Email from M. Lorusso to R. Ravilla re: Space at 77 P Street |
| 396 | 8/2/2002 | Memo from J. Parks to M. Lorusso through C. Colvin; cc'd to T. Dimond, H. Tillery, S. Rodgers, L. Burris, J. Philips, B. Stewart, G. Teasley re: Program Outline for DHS' Relocation to 77 P Street NE |
| 397 | 8/5/2002 | Email from J. Parks to M. Lorusso, L. Burris; cc'd to T. Dimond, H. Tillery, W. Stewart, J. Philip, G. Teasley, S. Rodgers, C. Colvin, J. Parks re: on behalf of James Parks |
| 398 | 8/6/2002 | Email from J. Greenberg to M. Lorusso re: please call me ASAP |
| 399 | 8/6/2002 | Email from J. Greenberg to M. Lorusso; cc'd to E. Martin, E. Price re: please call me ASAP |
| 400 | 8/7/2002 | Email from N. Francis to M. Lorusso re: FW: on behalf of James Parks |
| 401 | 8/8/2002 | Email from M. Lorusso to R. Brewster, M. Lorusso; cc'd to J. Buford, C. Wilson re: Lease for space at 77 P Street, NE |
| 402 | 8/9/2002 | Email from T. Dimond to H. Tillery re: Office Space |
| 403 | 8/12/2002 | Email from R. Ravilla to M. Lorusso; cc'd to D. Tangherlini, K. Anderson, V. McIver re: Space at 77 P Street |
| 404 | 8/13/2002 | Email from S. Morel to M. Lorusso; cc'd to W. Whisonant re: Space for Human Services at 77 P Street |
| 405 | 8/13/2002 | Email from E. Onyekwere to M. Lorusso; cc'd to K. Anderson, R. Ravilla re: Additional Rent for Lower Level Space |
| 406 | 8/14/2002 | Email from M. Lorusso to J. McKenzie re: FW: lease amendments |
| 407 | 8/15/2002 | Letter from B. Esherick to G. Teasley re: Proposal to DC Govt (DOH) to lease space in 60 Florida Ave |
| 408 | 8/19/2002 | Email from J. McKenzie to M. Lorusso, 'potkin@bellatlantic.net'; cc'd to J. Stanford re: 77 P 4th Addendum - PL-02/228 |
| 409 | 8/19/2002 | Email from J. McKenzie to 'lane', M. Lorusso; cc'd to B. Esherick re: DC Lease - jemal - case no. PL-02-228 |

| 410 | 8/23/2002 | Doc Imaging.Com Inc. Completed Order Invoice #111696 to DDC re: 77P-New Economy for $60.91 |
| 411 | 8/27/2002 | Letter from Peck to Dimond re: Transaction register for OPM project (current register enclosure with 6/26/02 corresponding Staubach invoice) |
| 412 | 8/30/2002 | Letter from D. Medding to M. Gorin of Fremont Investment & Loan; cc'd to P. Millstein, J. Brownell re: People's Warehouse 77 P Street Application No. 10 (application attached) |
| 413 | 9/4/2002 | Staubach Invoice No. 7114-1860-25101 to B. Esherick re: commission payment due $221,776.00 |
| 414 | 9/4/2002 | Letter from P. Millstein to DOH Soil Erosion/Storm Water Management re: development of Jemal lot on New York Ave. |
| 415 | 9/9/2002 | Email from N. Jemal to 'evglaw' re: Jemal's Addison Road |
| 416 | 9/9/2002 | Email from M. Lorusso to N. Francis re: DHS Relocation |
| 417 | 9/10/2002 | Email from S. Rabin to J. Herrington; cc'd to J. Philip, M. Lorusso, H. Lewis, A. Jackson, N. Ingraham, F. Villegas, S. Frazier re: EMA Furniture Contract |
| 418 | 9/10/2002 | Letter from Peck to Dimond re: Transaction register for OPM project |
| 419 | 9/11/2002 | Email from M. Lorusso to T. Usry, J. Parks; cc'd to W. Willard, D. Fortune, H. Tillery, N. Francis, M. Alexander, T. Dimond, W. Howland re: OCP/DHS Relocation |
| 420 | 9/12/2002 | Email from N. Francis to H. Tillery, W. Howland and E. Taylor re: FW: 4800 Addison |
| 421 | 9/13/2002 | Email from N. Francis to A. Occhetti; cc'd to T. Dimond re: 4800 Addison |
| 422 | 9/13/2002 | Hickok invoice for Department of Human Services |
| 423 | 9/16/2002 | Email from A. Occhetti to C. Murray, G. McCarthy, B. Kreiswirth; cc'd to T. Dimond, E. Lloyd, M. Alexander, <br> N. Francis re: Addison Road Emergency Legislation |
| 424 | 9/16/2002 | Letter from P. Judy to M. Lorusso re: Rent Schedule Adjustment 77 P Street, NW (schedule attached) |
| 425 | 9/23/2002 | Email from J. Koskinen to B. Molina; cc'd to N. Bravo, H. Tillery, T. Dimond, M. Lorusso re: Information Questions from Chairman Cropp |
| 426 | 9/23/2002 | Email from J. Koskinen to T. Dimond, B. Molina; cc'd to N. Bravo, H. Tillery, T. Dimond, M. Lorusso, G. McCarthy, K. Robinson re: Information Questions from Chairman Cropp |

| 427 | 9/26/2002 | Letter from F. Villegas (Int'l Builders) to B. Esherick re: The New Economy - Construction Proposal (11/6/02, 11/7/02, 11/13/02 Fax Cover sheets re: Revised Tenant Construction Proposal); 11/13/02 Letter from S. Frazier (Project Manager) to P. Millstein re: The New Economy - Base Building Construction Proposal; 11/14/02 Letter from S. Frazier to P. Millstein re: The New Economy Final Revised Tenant Construction Proposal |
|-----|-----------|---|
| 428 | 9/26/2002 | Group Goetz Architects, PC Invoices to DDC re: The New Economy for professional services from 8/30/02 to 9/26/02 |
| 429 | 10/1/2002 | Memo of Understanding for Intra-District Funding |
| 430 | 10/1/2002 | 4800 Addison Road Direct Capitalization Pro Forma as of October 1, 2002 |
| 431 | 10/2/2002 | Letter from M. Parrish to D. Jemal re: Government Lease of 4800 Addison Road |
| 432 | 10/3/2002 | Email from W. Howland to D. Shepherd; cc'd to C. Graham, H. Tillery, C. Colvin, S. Saulter, M. Jordan, T. Dimond, M. Kellems and J. Koskinen |
| 433 | 10/7/2002 | Email from S. Salter to M. Jordan, J. Koskinen, C. Graham, M. Kellems, H. Tillery, T. Dimond, C. Colvin; cc'd to T. Gentle, G. Ferguson, L. French, M. Richard, W. Howland re: DHS Move -- UPDATE |
| 434 | 10/7/2002 | Letter from D. Medding to M. Gorin; cc'd to P. Millstein, J. Brownell re: People's Warehouse 77 P Street Application No. 11 |
| 435 | 10/8/2002 | Email from R. Rafter to P. Millstein re: 4800 Addison Rd. Stop Work Directive (Directive attached) |
| 436 | 10/9/2002 | Email from W. Howland to T. Dimond; cc'd to N. Francis re: FW: Addison Road Impoundment Lot |
| 437 | 10/9/2002 | Email from K. Robinson to W. Howland, E. Price, G. McCarthy; cc'd to H. Tillery, J. Koskinen, T. Dimond, M. Lorusso, and N. Francis re: Addison Road Impoundment Lot |
| 438 | 10/10/2002 | Email from R. Ravilla to M. Lorusso; cc'd to D. Tangherlini, K. Anderson re: DDOT status |
| 439 | 10/11/2002 | Email from K. Robinson to J. Koskinen, E. Price, G. McCarthy, W. Howland; cc'd to H. Tillery re: Addison Road Impoundment Lot |
| 440 | 10/15/2002 | Hickok invoice for Department of Human Services |
| 441 | 10/21/2002 | Testimony of Timothy F. Dimond before the Council of the District of Columbia Subcommittee on Human Rights, Latino Affairs, and Property Management |

| 442 | 10/21/2002 | Email from H. Tillery to K. Robinson, J. Koskinen, E. Price, M. Alexander, T. Dimond, M. Lorusso, T. Bullock re: FW: Addison Questions/Responses |
| 443 | 10/21/2002 | Email from J. Koskinen to H. Tillery, K. Robinson, M. Alexander, M. Lorusso, T. Dimond, T. Bullock re: Addison Road |
| 444 | 10/22/2002 | Email from N. Francis to K. Robinson, H. Tillery; cc'd to T. Dimond and M. Lorusso re: Addison Road/GSA |
| 445 | 10/22/2002 | Email from T. Bullock to N. Francis, H. Tillery, T. Dimond, M. Lorusso; cc'd to W. Howland, E. Price, J. Koskinen, A. Teal, K. Robinson, and E. Lloyd re: Addison Road Purchase |
| 446 | 10/22/2002 | Email from J. Koskinen to T. Dimond re: Addison Road/GSA |
| 447 | 10/23/2002 | Email from L. Hotaling to H. Tillery re: Addison Road Purchase |
| 448 | 10/24/2002 | Email from N. Francis to H. Tillery; cc'd to T. Dimond, W. Howland re: Addison Road |
| 449 | 10/24/2002 | Email from J. Koskinen to H. Tillery and T. Bullock re: Addison Road Update |
| 450 | 10/28/2002 | Email from M. Haddad to J. Brownell re: Jemal/Cayre Properties |
| 451 | 10/29/2002 | Email from T. Dimond to N. Francis; cc'd to H. Tillery and W. Howland re: Items from Last Week's One-on-One |
| 452 | 10/29/2002 | Email from M. Lorusso to N. Francis, T. Dimond; cc'd to W. Howland re: DHS Move |
| 453 | 10/30/2002 | Email from K. Coyne to B. Esherick, M. Lorusso; cc'd to P. Hapstak, S. Frazier, B. Calis, M. Le Tourneur re: DDOT |
| 454 | 10/31/2002 | Invoice from Group Goetz Architects to DDC re: The New Economy |
| 455 | 10/31/2002 | Group Goetz Architects, PC Invoices to DDC re: The New Economy for professional services from 9/26/02 to 10/31/02 |
| 456 | 11/1/2002 | Memorandum from H. Tillery to Mayor A. Williams re: 4800 Addison Road |
| 457 | 11/9/2002 | Loan Closing Statement for 77 P |
| 458 | 11/14/2002 | Letter from L. Potkin to OPM Attn: Chief Property Management Officer; cc'd to D. Jemal re: Lease agreement between the District of Columbia and Jemal's Firehouse, LLC |
| 459 | 11/15/2002 | Email from T. Henderson to W. Lewis, R. Ravilla; cc'd to M. Lorusso, R. Quammen, P. Graham re: Certification 77P |

| 460 | 11/18/2002 | Email from N. McKinney to N. Jemal re: Addison Road |
| 461 | 11/18/2002 | Email from B. Esherick to J. Brownell re: FW: DDOT Furniture Pricing (11/15/02 Herman Miller Lease Proposal attached) |
| 462 | 11/19/2002 | Email from R. Ravilla to W. Lewis, T. Henderson; cc'd to M. Lorusso, R. Quammen, P. Graham, K. Anderson, D. Tangherlini re: Certification for 77P (financing availability certification form attached) |
| 463 | 11/19/2002 | Department of Public Works, Office of Financial Management Financing Availability Certification for Lease of First Floor and Basement space for DDOT operation at 77 P Street NE |
| 464 | 11/19/2002 | Department of Public Works, Office of Financial Management Financing Availability Certification for Lease of First Floor and Basement space for DDOT operation at 77 P Street NE (with handwritten notes) |
| 465 | 11/20/2002 | Application and Certificate for Payment made by James G. Davis Construction to DDC for The New Economy in the amount of $77,250 |
| 466 | 11/22/2002 | Email from B. Esherick to K. McIllwrath re: FW: DC Lease (4th and 5th Amendments attached) |
| 467 | 11/25/2002 | Email from B. Clark to J. Brownell re: Questions |
| 468 | 11/25/2002 | Email from D. Medding to J. Brownell re: [no subject] |
| 469 | 11/27/2002 | Email from B. Esherick to M. Lorusso, J. McKenzie re: FW: dc. Lease |
| 470 | 11/28/2002 | Group Goetz Architects, PC Invoice to DDC re: The New Economy for professional services from 11/1/02 to 11/28/02 |
| 471 | 11/29/2002 | Application and Certificate for Payment made by International Builders, Inc. to DDC for The New Economy in the amount of $250,117 |
| 472 | 11/29/2002 | Application and Certificate for Payment made by International Builders, Inc. to DDC for The New Economy in the amount of $322,922 |
| 473 | 12/2/2002 | Fax from S. Frazier to P. Millstein re: PCO #1(Project: New Economy modifying duct work); 12/18/02 fax from S. Frazier to P. Millstein re: PCO #1 (Project: New Economy add'l electrical items); 12/30/02 Fax from S. Frazier to P. Millstein re: PCO #3 (Project: New Economy modifying gas, water, and waste lines) |
| 474 | 12/2/2002 | Fax from L. Hotaling to T. Dimond attaching response to auditor on impound lot property |

| | | |
|---|---|---|
| 475 | 12/3/2002 | Email from F. Scott to M. Lorusso re: 77 P Street |
| 476 | 12/5/2002 | Email from N. Francis to H. Tillery; cc'd to W. Howland, T. Dimond, M. Lorusso re: Office of Administrative hearings lease and build out |
| 477 | 12/5/2002 | Morgan Stanley Prospectus Supplement |
| 478 | 12/6/2002 | Email from D. Tangherlini to J. Deatrick re: 77 P Street |
| 479 | 12/9/2002 | Email from H. Tillery to K. Hester, N. Francis; cc'd to T. Dimond, T. Usry, H. Sayed, D. Wooden, H. Tillery re: Addison Road Appraisal |
| 480 | 12/9/2002 | Letter from D. Jemal to M. Parrish re: Better Option at 3300 75th Avenue |
| 481 | 12/9/2002 | Application and Certificate for Payment made by James G. Davis Construction to DDC for The New Economy in the amount of $77,250 |
| 482 | 12/12/2002 | Email from R. Shenman to J. Brownell re: [no subject] |
| 483 | 12/12/2002 | Email from R. Shenman to J. Brownell; cc'd to B. Blakck re: FW: [no subject] |
| 484 | 12/18/2002 | Email from H. Tillery to N. Francis, M. Lorusso, T. Dimond, M. Alexander; cc'd to J. Parks, W. Howland, C. Graham, C. Colvin re: DHS Move |
| 485 | 12/19/2002 | Email from N. Francis to H. Tillery; cc'd to M. Lorusso, W. Howland re: DHS Move |
| 486 | 12/20/2002 | Email from B. Black to D. Jemal, J. Brownell, P. Millstein, B. Esherick, N. Jemal; cc'd to T. Jackivicz, S. Holmes, B. Sampson re: 77 P Street |
| 487 | 12/20/2002 | Email from B. Black to D. Jemal, J. Brownell, P. Millstein, B. Esherick, N. Jemal; cc'd to T. Jackivicz, S. Holmes, B. Sampson re: 77 P Street (with handwriting) |
| 488 | 12/22/2002 | Jemal's Darth Vadar Purchase Settlement |
| 489 | 12/23/2002 | Email from T. Dimond to H. Tillery, cc'd to N. Francis re: Property for Impound Lot |
| 490 | 12/26/2002 | Group Goetz Architects, PC Invoice to DDC re: The New Economy for professional services from 11/29/02 to 12/26/02 |
| 491 | 12/31/2002 | Application and Certificate for Payment made by International Builders, Inc. to DDC for The New Economy in the amount of $211,425 |
| 492 | 12/31/2002 | Application and Certificate for Payment made by International Builders, Inc. to DDC for The New Economy |

|     |           | in the amount of $279,140 |
|-----|-----------|---------------------------|
| 493 | 1/2/2003  | Email from K. Coyne to B. Esherick; cc'd to P. Hapstak, K. Clark, M. Lorusso re: DDOT |
| 494 | 1/8/2003  | Email from M. Lorusso to J. McKenzie re: Fifth Addendum |
| 495 | 1/10/2003 | Email from E. Onyekwere to M. Lorusso; cc'd to J. Deatrick, V. McIver re: Request for authorization |
| 496 | 1/16/2003 | Application and Certificate for Payment made by Mechanical Design Systems, Inc. to DDC for The New Economy in the amount of $7,846 |
| 497 | 1/17/2003 | Email from T. Dimond to J. Greenberg, M. Alexander, D. Toland; cc'd to E. Martin and A. Hubbard re: IT Master Lease Program |
| 498 | 1/27/2003 | Email from N. Francis to T. Dimond, L. Hotaling re: Ft. Meyer |
| 499 | 1/28/2003 | Email from E. Onyekwere to K. Anderson, K. Donahue, J. Deatrick, T. Dimond re: Meeting with Douglas Development: resolution to parking problem at 64 New York Avenue |
| 500 | 1/28/2003 | Email from D. Medding to S. Quinn re: Donation |
| 501 | 1/30/2003 | Group Goetz Architects, PC Invoice to DDC re: The New Economy for professional services from 12/27/02 to 1/30/03 |
| 502 | 2/12/2003 | Email from N. Jemal to P. Millstein, D. Jemal re: GSA whs space |
| 503 | 2/12/2003 | Email from J. Greenberg to J. Philip; cc'd to D. Toland, T. Dimond, E. Martin re: Meeting Agenda for Thursday Meeting @ 10:30 |
| 504 | 2/20/2003 | Email from N. Jemal to S. Alter re: Bouchard & Associates disposition contact(s) |
| 505 | 2/21/2003 | Email from A. Jiminez to T. Dimond; cc'd to M. Alexander re: Re 4800 Addison Road |
| 506 | 2/24/2003 | Application and certification for payment from International Builders to DDC for The New Economy |
| 507 | 2/27/2003 | Email from M. Alexandra to F. Scott, T. Dimond re: Human Services move to 77 P Street |
| 508 | 2/28/2003 | Email from J. Greenberg to J. Philip and A. Hubbard; cc'd to D. Toland, E. Martin and T. Dimond re: Meeting on Master Lease Space & Agenda/Project List |
| 509 | 2/28/2003 | Invoice from DDC to DC Office of Property Management for Occupancy Costs in the amount of $357,913.03 |
| 510 | 2/28/2003 | Application and certificate for payment made by James G. Davis Construction to DDC for 77 P Street, NE in |

the amount of $578,223

| | | |
|---|---|---|
| 511 | 3/13/2003 | Letter from B. Esherick to T. Dimond re: Official Confirmation of DDOT's acceptance of 77 P Street space |
| 512 | 3/18/2003 | Letter from P. Millstein to R. Branch (Washington Convention Center); cc'd to D. Jemal re: use of 4800 Addision Rd for 30 days free of charge |
| 513 | 3/20/2003 | Letter from L. Dawley (Washington Convention Center) to P. Millstein re: use of 4800 Addison free of charge |
| 514 | 3/24/2003 | Letter from B. Esherick to T. Dimond re: Invoice for rent related to MPD's use of 607 K Street |
| 515 | 3/27/2003 | Letter from N. Jemal to J. Cayre; cc'd to D. Pfeffer, H. Fuchs, M. Haddad re: Second Lease Amendment for 801 N. Capitol St. Between DC Govt and Jemal's Cayre North Capitol |
| 516 | 3/28/2003 | Email from T. Dimond to B. Jumper; cc'd to W. Howland, M. Alexander re: FW: DHS Move |
| 517 | 3/31/2003 | Email from J. Greenberg to T. Dimond; cc'd to E. Martin re: tech space/expenditures and meeting request |
| 518 | 4/1/2003 | Email from E. Onyekwere to W. Bernhardt, J. Trammel, J. Deatrick, K. Donahue, K. Anderson; cc'd to G. Viteri, K. Hired, M. Campos, R. Brown, C. Zaner, M. Malloy, A. Alvarez re: Douglas Development's Unpaid $74,000.00 Nucoat Invoice |
| 519 | 4/7/2003 | Invoice from DDC to OPM (Faith Scott) for DOT @ 77 P Street for $507,971.70 |
| 520 | 4/8/2003 | Email from T. Klisiewecz to D. Medding re: 77 P Street Lease |
| 521 | 4/8/2003 | Memo from G. Teasley (DHS) to T. Dimond; cc'd to C. Graham, J. Parks, V. Clayborne re: DHS move to 64 New York Ave. |
| 522 | 4/8/2003 | Letter from R. Kew to T. Dimond; cc'd to N. Francis re: Potential Sites for Relocation of DC Impound Lots |
| 523 | 4/10/2003 | Email from W. Howland to H. Tillery, E. Price, C. Barbera, M. Krainak, E. Martin, M. Alexander, N. Francis, D. Adams, M. Dunn, T. Dimond re: Addision Road Impoundment Lot Acquisition |
| 524 | 4/14/2003 | Memo from D. York to T. Dimond; cc'd to J. Buford, R. Brewster re: Certification of Funding for Acquired Leased Space at 77 P Street NE (5/1/03-9/30/03)` |
| 525 | 4/21/2003 | Invoice from DDC to OPM (Faith Scott) for DOT @ 77 P Street for $357,913.03 |
| 526 | 4/24/2003 | Email from C. Barbera to S. Smith re: 4800 Addison Road |
| 527 | 4/28/2003 | Email from D. Medding to N. Jemal re: Utilities |

| 528 | 4/30/2003 | American Mechanical Services Invoice Nos. J3657-4/5 and 2Q18393/J3656-4/5 for $23,069.12 and $58,408.56 (5/7/03 DDC Check for $81,477.68) |
| 529 | 5/5/2003 | Email from C. Barbera to S. Smith re: FW: LMD01549 |
| 530 | 5/8/2003 | Email from H. Tillery to C. Barbera, E. Price, T. Dimond, W. Howland, M. Alexander re: 77 P Street |
| 531 | 5/15/2003 | Email from C. Barbera to E. Price, H. Tillery, W. Howland, T. Dimond, M. Alexander re: 77 P Street (revised document attached) |
| 532 | 5/15/2003 | Memo from J. Jeter to T. Dimond; cc'd to J. Buford, R. Brewster, D. Shepherd, B. Jumper re: Certification of Fuding for Acquired Lease Space at 77 P Street NW (6/1/03-9/30/03) |
| 533 | 5/19/2003 | Email from T. Dimond to M. Kraniak (draft version of Dimond prepared statement attached) |
| 534 | 5/19/2003 | Email from T. Dimond to J. Koskinen (draft version of Dimond prepared statement attached) |
| 535 | 5/19/2003 | Email from J. Koskinen to T. Dimond (draft version of Dimond prepared statement attached) |
| 536 | 5/19/2003 | Memo from J. Jeter to T. Dimond; cc'd to J. Buford, R. Brewster, D. Shepherd, B. Jumper, R. Lewis re: Certification of Funding for Acquired Lease Space at 77 P Street NE (6/1/03-9/30/03) |
| 537 | 5/28/2003 | Email from L. Hotaling to C. Barbera, T. Dimond; cc'd to W. Howland, H. Tillery, T. Adams, K. Green re: FW: FW: CSX Site |
| 538 | 6/3/2003 | Memorandum from T. Dimond to J. Parks and G. Teasley, cc'd to H. Tillery, C. Graham, B. Howland, B. Jumper, D. Sheppard, N. Francis re: DHS Lease-77 P. Street, N.W. Requested Change Orders |
| 539 | 6/5/2003 | Email from B. Esherick to K. McIlwrath re: FW DDOT |
| 540 | 6/10/2003 | Email from T. Dimond to N. Francis, C. Barbera, W. Howland, H. Tillery, M. Krainak, D. Clark; cc'd to M. Alexander re: Draft |
| 541 | 6/16/2003 | OPM Project Status Report |
| 542 | 6/26/2003 | Settlement Statement for 6001 Nevada Ave |
| 543 | 11/25/2003 | Letter from N. Jemal to M. Worsley re: Proposal to World Vision to lease space at 4800 Addison Rd |
| 544 | 12/5/2003 | Email from M. Worsley to N. Jemal, cc'd to C. Jones re: World Vision Proposal |
| 545 | 12/31/2003 | 2003 Tax return and working papers for Cayre Jemal's Gateway Holdings LLC |

| 546 | 4/7/2004 | Email from B. Esherick to C. Mitten; cc'd to D. Jemal, N. Jemal re: [no subject] |
| 547 | 6/14/2004 | Email from D. Jemal to N. Jemal re: FW: [no subject] |
| 548 | 10/7/2004 | Email from B. Fried to N. Jemal re: 4800 Addison Rd |
| 549 | 10/18/2004 | Email from B. Esherick to D. Jemal, N. Jemal re: FW: LEASE/60 Florida Ave., NE/OAH (126946) |
| 550 | 12/28/2004 | Parking License Agreement by and among Cayre Jemal's Gateway, LLC and Cayre Jemal's Gateway Holdings, LLC and the District of Columbia for 64 New York Ave, NW |
| 551 | 1/17/2005 | License Agreement-Summary for Jemal's Fairfield Farms and Spiniello Companies, Inc. |
| 552 | 2/16/2005 | Proposal from R. Haught to N. Jemal re: 4800 Addison Road Proposal |
| 553 | 6/2/2005 | Esherick check #1500 from the Eshericks to DDC for $245,040.16 (signed by S. Esherick) |
| 554 | 6/3/2005 | Eagle Bank DDC deposit stub recording $245,040.16 from Esherick |
| 555 | 7/20/2005 | Summary - Lower Level Addendum: Cayre Jemal's Gateway, LLC - 64 New York Avenue, NE (7/20/05-9/1/05 Invoices and Lower Level Addendum attached) |
| 556 | 1/19/2006 | Email from A. Occhetti to B. Esherick re: invoice for Amy RE Takoma |
| 557 | 2/1/2006 | Letter from A. Padro (Shaw Main Streets) to D. Jemal re: Shaw Champion Award |
| 558 | 4/12/2006 | DC Mayor's Press Briefing - DVD |
| 559 | 6/26/2006 | Studley Selected Lease Comparables |
| 560 | 1/01-12/01 | 2001 DDC General Ledger |
| 561 | 1/01-12/01 | Douglas Jemal Personal General Ledger |
| 562 | 1/01-12/01 | Norman Jemal Personal General Ledger |
| 563 | 1/02-11/02 | Monthly balance sheets/statements for Cayre Jemal's Peoples' HSBC Account |
| 564 | 1/02-12/02 | 2002 DDC General Ledger |
| 565 | 1/02-12/02 | Douglas Jemal Personal General Ledger |
| 566 | 1/02-12/02 | Norman Jemal Personal General Ledger |
| 567 | 1/03-12/03 | Douglas Jemal Personal General Ledger |

| 568 | 1/03-12/03 | Norman Jemal Personal General Ledger |
| 569 | 1/19/02-3/15/02 | F&M Bank - Maryland Account Records for B. Esherick |
| 570 | 1/99-12/99 | 1999 DDC General Ledger |
| 571 | 10/1/00-9/30/01 | FY 2001 Performance Review for OPM |
| 572 | 10/1/2001-present | DDC Development Labor for 4800 Addison Road DC Government Impound Lot |
| 573 | 10/24/01, 10/25/01, 10/26/01, 10/29/01, 11/6/01, 11/19/01, 11/20/01 | Douglas Troop Positions |
| 574 | 10/3/01, 10/17/01, 11/21/01 | Douglas Troop Positions |
| 575 | 11/14/02-5/7/03 | International Builders Inc Invoices to DDC for 77 P Street - New Economy |
| 576 | 11/22/02, 11/26/02 | Fax from B. McGarrity to B. Esherick re: American Office Proposal (proposal attached) |
| 577 | 12/02/02-6/17/03 | American Office Purchase Orders for 77 P Street - DDOT |
| 578 | 12/94-1/06 | DDC Portfolio Summary |
| 579 | 6/01-12/02 | Initial Lease (2nd & 3rd Floors) Total Rents for 77 P Street, NW |
| 580 | 9/28/01-10/23/01 | 4800 Addison Road Expenses |
| 581 | n/a | Cayre Jemal's Gateway DC, LLC Base Rent Schedules and Key Dates (handwritten notes on document) |
| 582 | n/a | Letter from B. Owen, M. Mallus to T. Milley, R. Aumiller; cc'd to D. Jemal re: Request for Proposal, 77 P Street, Carefirst |
| 583 | n/a | Various General Ledger pages detailing American Office payments (corresponding checks attached); |
| 584 | n/a | Letter from P. Millstein at DDC to Jemal's Fairfiled Farms LLC Attn: Jack Brownell re: Fire Damage at 4800 |

Addison Road

| 585 | n/a | Handwritten notes on furniture installation for third floor of 77 P Street |
| 586 | n/a | 77 P Street, and 609/625 H Street, NE Relocation Update |
| 587 | n/a | DOES 77 P Street office designations for the third floor |
| 588 | n/a | Letter from S.M. Brooks (GSA Account Executive) to L. Smith (DOES) re: Installation Quote/77 P St. 3rd Floor (quote attached) |
| 589 | n/a | DOES 77 P Street office designations for the second floor |
| 590 | n/a | Memo from G. Irish to Senior Managers; cc'd to Move Committee re: DOES Move |
| 591 | n/a | Office Move Instructions |
| 592 | n/a | 77 P Street - Application 2 - Tenant Improvements Commissions |
| 593 | n/a | Certification of Funding for DC Government Leases or Purchases re: 64 New York Ave, NE |
| 594 | n/a | 77P Street, NW Chronology |
| 595 | n/a | DOES Lease Options for Headquarters Relocation Ability to Execute |
| 596 | n/a | The Avalon Theater Before and After Photos |
| 597 | n/a | 1330 U Street, NW Before and After Photos |
| 598 | n/a | DDC Property Listing |
| 599 | n/a | ReedSmith Invitation to Las Vegas Dinner with A. Williams and E. Price |
| 600 | n/a | Letter from A. Williams to B. Esherick re: Gratitude for visiting with the Washington, DC delegation during the ICSC Convention in Las Vegas |
| 601 | n/a | Addison Road Impound Lot Overview |
| 602 | n/a | Land Cost Analysis |
| 603 | n/a | Jemal's Addison Road Stabilized Income & Expenses |
| 604 | n/a | Douglas Jemal Real Estate Portfolio |
| 605 | n/a | Prince George's County Landscape Manual |

| 606 | n/a | Press Release: "District Negotiates Interim Site for Vehicle Impoundment Lot" |
| 607 | n/a | Curriculum Vitae of Bruce Dubinsky |
| 608 | n/a | Curriculum Vitae of Dick Clark |
| 609 | n/a | Bound Book of DDC Completed Redevelopment Projects |
| 610 | n/a | Statement on Standards for Tax Services No. 3, Certain Procedural Aspects of Preparing Tax Returns |
| 611 | n/a | AICPA General Standards - Account Principles ET Section 201 |
| 612 | n/a | AICPA ET Section 56 - Articles V--Due Care |
| 613 | n/a | IRS Publication 15-A: Employer's Supplemental Tax Guide |
| 614 | n/a | Photo of N. Jemal, P. Millstein, D. Jemal, and B. Esherick |
| 615 | n/a | Photo of N. Jemal |
| 616 | n/a | Photo of D. Jemal |
| 617 | n/a | Photo of S. Esherick and B. Esherick |
| 618 | n/a | Photo of B. Esherick |
| 619 | n/a | Photo of B. Esherick's children: Tayler, Grayson, Douglas |
| 620 | n/a | Photo of B. Esherick's house at 6001 Nevada Ave. |
| 621 | n/a | 77 P Street Department of Human Services Tenant Allowance Spreadsheets |
| 622 | n/a | Studley Report |
| 623 | n/a | Qualification - Oakleigh J. Thorne, MAI, CRE |
| 624 | n/a | TCI's Practice Areas |
| 625 | n/a | Jemal's Fairfield Farms LLC - Addison Road - Land Sales Adjustment Grid |
| 626 | n/a | Summary of Commercial Lot Premiums in the District |
| 627 | n/a | Extraordinary prices paid for key parcels |
| 628 | n/a | Warehouse NNN Rent Analogues |
| 629 | n/a | Tow Truck Trip Study |

| 630 | n/a | Wisconsin Ave to Overlook Ave - Overview |
| 631 | n/a | Wisconsin Ave to Overlook Ave - Directions |
| 632 | n/a | Tenley Cir N to Addison Road- Overview |
| 633 | n/a | Tenley Cir N to Addison Road - Directions |
| 634 | n/a | L'enfant Plaza to Finish - Overview |
| 635 | n/a | L'enfant Plaza to Finish - Directions |
| 636 | n/a | L'enfant Pla to Addison Road - Overview |
| 637 | n/a | L'enfant Pla to Addison Road - Directions |
| 638 | n/a | 13th St. NE to Overlook Ave - Overview |
| 639 | n/a | 13th St. NE to Overlook Ave - Directions |
| 640 | n/a | 13th St. NE to Addison Road - Overview |
| 641 | n/a | 13th St. NE to Addison Road - Directions |
| 642 | n/a | Branch Ave S to finish - Overview |
| 643 | n/a | Branch Ave S to finish - Directions |
| 644 | n/a | Branch Ave to Addison Rd - Overview |
| 645 | n/a | Branch Ave to Addison Rd - Directions |
| 646 | n/a | Douglas Development Corp. Property Summary |
| 647 | n/a | 7804 Radnor Road Pictures |
| 648 | n/a | CD containing DDC 77 P Street Plans and Construction Drawings for Tenant Improvement |
| 649 | n/a | CD containing 77 P Street Base Building Drawings |
| 650 | n/a | CD containing pictures of DDC Properties |
| 651 | n/a | 64 New York Ave NE: From the Outside In CD |
| 652 | n/a | Historical Tax Information re: 901 7th Street |
| 653 | n/a | Historical Tax Information re: 1311-1313 F Street |

| | | |
|---|---|---|
| 654 | n/a | Historical Tax Information re: 2715 M Street |
| 655 | n/a | Historical Tax Information re: 700-702 7th Street |
| 656 | n/a | Historical Tax Information re: 111 Mass Ave |
| 657 | n/a | Historical Tax Information re: 910-916 F Street |
| 658 | n/a | Historical Tax Information re: 1025 F Street |
| 659 | n/a | Historical Tax Information re: 1328-1348 Florida Ave |
| 660 | n/a | Historical Tax Information re: 704-718 8th Street |
| 661 | n/a | Historical Tax Information re: 726-738 7th Street |
| 662 | n/a | Historical Tax Information re: 800 F Street |
| 663 | n/a | Historical Tax Information re: Shepherd Park Plaza |
| 664 | n/a | Historical Tax Information re: 1630 Connecticut Ave |
| 665 | n/a | Historical Tax Information re: 6856 Eastern Ave (Takoma Park) |
| 666 | n/a | Historical Tax Information re: 4001 Brandywine |
| 667 | n/a | Historical Tax Information re: 3600 M Street |
| 668 | n/a | Historical Tax Information re: 1900 Half Street |
| 669 | n/a | 2003 and 2004 Nevada Ave Expenses - Esherick |
| 670 | n/a | 77 P Street Disbursements - Base Building Reconciliation (with handwriting) |
| 671 | 6/27/2001 | Wire Confirmation from S. Maglanque at Fremont to G. Galentine re: leasing commissions reduced by $165,071.42 |
| 672 | 1/7/2003 | Letter from D. Medding to R. Shenman of Morgan Stanley re: 77 P Street Loan #02-11797 Application No. 2 (application attached) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                      )
UNITED STATES                         )
                                      )
        v.                            )        Crim. No.  05-359-1, -2, -3 (RMU)
                                      )
DOUGLAS JEMAL, *et al.*,              )
                                      )
              Defendants.             )
_____)

**<u>STIPULATIONS</u>**

There are no stipulations at this time.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

<table>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>UNITED STATES</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>Crim. No.  05-359-1, -2, -3 (RMU)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>DOUGLAS JEMAL, <em>et al.</em>,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>Defendants.</td><td>)</td><td></td></tr>
</table>

_____ )

## GOVERNMENT'S PROPOSED VERDICT FORM

## COUNT ONE - CONSPIRACY

### Defendant Douglas Jemal

(a)    How do you find the defendant, Douglas Jemal, as to Count One of the Indictment, Conspiracy to Commit Bribery?

Not Guilty_____    Guilty_____

If your verdict is Guilty, do not consider the lesser included count of Conspiracy to Pay Unlawful Gratuities.  If your verdict above is Not Guilty, then reach the following verdict:

(b)    How do you find the defendant, Douglas Jemal, as to Count One of

the Indictment on the lesser-included count of Conspiracy to Pay Unlawful

Gratuities?

Not Guilty_____     Guilty_____

**Defendant Norman Jemal**

(a)     How do you find the defendant, Norman Jemal, as to Count One of

the Indictment, Conspiracy to Commit Bribery?

Not Guilty_____     Guilty_____

If your verdict is Guilty, do not consider the lesser-included count of Conspiracy

to Pay Unlawful Gratuities.  If your verdict is Not Guilty, then reach the following

verdict:

(b)     How do you find the defendant, Norman Jemal, as to Count One of

the Indictment on the lesser-included count of Conspiracy to Pay Unlawful

Gratuities?

Not Guilty_____     Guilty_____

**Defendant Blake C. Esherick**

(a)     How do you find the defendant, Blake C. Esherick, as to Count One

of the Indictment, Conspiracy to Commit Bribery?

Not Guilty_____     Guilty_____

-2-

If your verdict is Guilty, do not consider the lesser-included count of Conspiracy to Pay Unlawful Gratuities.  If your verdict is Not Guilty, then reach the following verdict:

(b)    How do you find the defendant, Blake C. Esherick, as to Count One of the Indictment on the lesser-included count of Conspiracy to Pay Unlawful Gratuities?

Not Guilty_____    Guilty_____

## Count Two - Bribery

### Defendant Douglas Jemal

(a)    How do you find the defendant, Douglas Jemal, as to Count Two of the Indictment, Bribery?

Not Guilty_____    Guilty_____

If your verdict is Guilty, do not consider the lesser-included count of Payment of Unlawful Gratuities.  If your verdict above is Not Guilty, then reach the following verdict:

(b)    How do you find the defendant, Douglas Jemal, as to Count Two of the Indictment on the lesser-included count of Payment of Unlawful Gratuities?

Not Guilty_____    Guilty_____

-3-

### Defendant Norman Jemal

(a)     How do you find the defendant, Norman Jemal, as to Count Two of the Indictment, Bribery?

Not Guilty_____     Guilty_____

If your verdict is Guilty, do not consider the lesser-included count of Payment of Unlawful Gratuities.  If your verdict is Not Guilty, then reach the following verdict:

(b)     How do you find the defendant, Norman Jemal, as to Count Two of the Indictment on the lesser-included count of Payment of Unlawful Gratuities?

Not Guilty_____     Guilty_____

### Defendant Blake C. Esherick

(a)     How do you find the defendant, Blake C. Esherick, as to Count Two of the Indictment, Bribery?

Not Guilty_____     Guilty_____

If your verdict is Guilty, do not consider the lesser-included count of Payment of Unlawful Gratuities.  If your verdict is Not Guilty, then reach the following verdict:

(b)     How do you find the defendant, Blake C. Esherick, as to Count Two

of the Indictment on the lesser-included count of Payment of Unlawful Gratuities?

Not Guilty_____    Guilty_____

## Count Three - Mail Fraud

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Three of the Indictment, Mail Fraud?

Not Guilty_____    Guilty_____

### Defendant Norman Jemal

How do you find the defendant, Norman Jemal, as to Count Three of the Indictment, Mail Fraud?

Not Guilty_____    Guilty_____

### Defendant Blake C. Esherick

How do you find the defendant, Blake C. Esherick, as to Count Three of the Indictment, Mail Fraud?

Not Guilty_____    Guilty_____

## Count Four - Fraud in the First Degree

### Blake C. Esherick

How do you find the defendant, Blake C. Esherick, as to Count Four of the Indictment, Fraud in the First Degree?

Not Guilty_____    Guilty_____

## Count Five - Wire Fraud

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Five of the Indictment, Wire Fraud?

Not Guilty_____    Guilty_____

### Defendant Norman Jemal

How do you find the defendant, Norman Jemal, as to Count Five of the Indictment, Wire Fraud?

Not Guilty_____    Guilty_____

**<u>Defendant Blake C. Esherick</u>**

How do you find the defendant, Blake C. Esherick, as to Count Five of the

Indictment, Wire Fraud?

Not Guilty_____    Guilty_____

**<u>Count Six - Tax Evasion (2001)</u>**

**<u>Defendant Douglas Jemal</u>**

How do you find the defendant, Douglas Jemal, as to Count Six of the

Indictment, Tax Evasion (for 2001)?

Not Guilty_____    Guilty_____

**<u>Defendant Blake C. Esherick</u>**

How do you find the defendant, Blake C. Esherick, as to Count Six of the

Indictment, Tax Evasion (for 2001)?

Not Guilty_____    Guilty_____

## Count Seven - Tax Evasion (2002)

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Seven of the Indictment, Tax Evasion (for 2002)?

Not Guilty_____    Guilty_____


### Defendant Blake C. Esherick

How do you find the defendant, Blake C. Esherick, as to Count Seven of the Indictment, Tax Evasion (for 2002)?

Not Guilty_____    Guilty_____


## Count Eight

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Eight of the Indictment charging Tax Evasion (for 2003)?

Not Guilty_____    Guilty_____

**Defendant Blake C. Esherick**

How do you find the defendant, Blake C. Esherick, as to Count Eight of the

Indictment, Tax Evasion (for 2003)?

Not Guilty_____    Guilty_____

Foreperson sign and date the completed verdict form.

_____    _____
Foreperson                                    Date

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**UNITED STATES**                                   )
                                                    )
    **v.**                       )    **Crim. No.  05-359-1, -2, -3 (RMU)**
                                                    )
**DOUGLAS JEMAL,** *et al.,*                        )
                                                    )
    **Defendants.**               )
_____ )


**<u>DEFENDANTS' PROPOSED VERDICT FORM</u>**


**<u>COUNT ONE - CONSPIRACY</u>**

    **<u>Defendant Douglas Jemal</u>**

    (a)    How do you find the defendant, Douglas Jemal, as to Count One of the Indictment, Conspiracy to Commit Bribery?

            Not Guilty_____    Guilty_____

    **<u>Defendant Norman Jemal</u>**

    (a)    How do you find the defendant, Norman Jemal, as to Count One of the Indictment, Conspiracy to Commit Bribery?

            Not Guilty_____    Guilty_____

### Defendant Blake C. Esherick

(a)    How do you find the defendant, Blake C. Esherick, as to Count One of the Indictment, Conspiracy to Commit Bribery?

Not Guilty_____    Guilty_____

## Count Two - Bribery

### Defendant Douglas Jemal

(a)    How do you find the defendant, Douglas Jemal, as to Count Two of the Indictment, Bribery?

Not Guilty_____    Guilty_____

### Defendant Norman Jemal

(a)    How do you find the defendant, Norman Jemal, as to Count Two of the Indictment, Bribery?

Not Guilty_____    Guilty_____

### Defendant Blake C. Esherick

(a)    How do you find the defendant, Blake C. Esherick, as to Count Two of the Indictment, Bribery?

Not Guilty_____    Guilty_____

## Count Three - Mail Fraud

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Three of the Indictment, Mail Fraud?

Not Guilty_____     Guilty_____

### Defendant Norman Jemal

How do you find the defendant, Norman Jemal, as to Count Three of the Indictment, Mail Fraud?

Not Guilty_____     Guilty_____

### Defendant Blake C. Esherick

How do you find the defendant, Blake C. Esherick, as to Count Three of the Indictment, Mail Fraud?

Not Guilty_____     Guilty_____

## Count Four - Fraud in the First Degree

### Blake C. Esherick

How do you find the defendant, Blake C. Esherick, as to Count Four of the Indictment, Fraud in the First Degree?

Not Guilty_____     Guilty_____

## Count Five - Wire Fraud

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Five of the

Indictment, Wire Fraud?

Not Guilty_____    Guilty_____

### Defendant Norman Jemal

How do you find the defendant, Norman Jemal, as to Count Five of the

Indictment, Wire Fraud?

Not Guilty_____    Guilty_____

### Defendant Blake C. Esherick

How do you find the defendant, Blake C. Esherick, as to Count Five of the

Indictment, Wire Fraud?

Not Guilty_____    Guilty_____

## Count Six - Tax Evasion (2001)

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Six of the Indictment, Tax Evasion (for 2001)?

Not Guilty_____    Guilty_____

### Defendant Blake C. Esherick

How do you find the defendant, Blake C. Esherick, as to Count Six of the Indictment, Tax Evasion (for 2001)?

Not Guilty_____    Guilty_____

## Count Seven - Tax Evasion (2002)

### Defendant Douglas Jemal

How do you find the defendant, Douglas Jemal, as to Count Seven of the Indictment, Tax Evasion (for 2002)?

Not Guilty_____    Guilty_____

**Defendant Blake C. Esherick**

How do you find the defendant, Blake C. Esherick, as to Count Seven of the

Indictment, Tax Evasion (for 2002)?

Not Guilty\_\_\_\_\_    Guilty\_\_\_\_\_


**Count Eight**

**Defendant Douglas Jemal**

How do you find the defendant, Douglas Jemal, as to Count Eight of the

Indictment charging Tax Evasion (for 2003)?

Not Guilty\_\_\_\_\_    Guilty\_\_\_\_\_

**Defendant Blake C. Esherick**

How do you find the defendant, Blake C. Esherick, as to Count Eight of the

Indictment, Tax Evasion (for 2003)?

Not Guilty\_\_\_\_\_    Guilty\_\_\_\_\_


Foreperson sign and date the completed verdict form.


_____    _____
Foreperson                                          Date