UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :
                                  :
                                  :    Crim. No. 05-359-01,-02, 0-3 (RMU)
                                  :
DOUGLAS JEMAL, et al              :

## GOVERNMENT'S MOTION IN LIMINE TO EXCLUDE PROPOSED EXPERT TESTIMONY OF RICHARD WATKINS

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the Court bar defendants from eliciting opinion testimony from Richard Watkins as to four of his five proposed opinions. Pursuant to paragraph nine of the Court's Standing Order for Criminal Cases, the government respectfully submits that there is good cause to submit this motion after the filing of the Joint Pretrial Statement.

### INTRODUCTION

Defendants, through Mr. Watkins's testimony, seek to construct and describe for the jury a hypothetical company – a version of Douglas Development that might have existed in the years during which the crimes charged in the Indictment occurred.[1] This "might have been" company contained an accounting departments that might have made mistakes in executive compensation, and was run by executives – Douglas Jemal and Blake Esherick – that might have possessed certain non-criminal intents in handling Esherick's financial matters.[2]

In creating the imaginary Douglas Development, the defendants' expert relies on remarkably few and disparate facts. First, he examined Douglas Development's accounts

---

[1] A copy of the defendants notice as to the proposed testimony of Richard Watkins, entitled "Expert Disclosure," is attached to this pleading as "Attachment 1."

[2] Presumably, this hypothetical company operated under the tax laws that the defendants seek to have their tax expert, Bruce G. Dubinsky, set forth in his testimony.

payable and accounts receivable departments. He concluded that those departments were understaffed and made mistakes, and, accordingly came to the conclusion that mistakes might therefore have made in handling Esherick's compensation.[3] In addition, he looked at compensation and loan arrangements of <u>other</u> employers and <u>other</u> employees in <u>other</u> companies and drew conclusions as to what might have been the intent of the defendants in handling compensation and loan arrangements in <u>this</u> company.[4]

Notably, it is clear upon review of the "Expert Disclosure" associated with Mr. Watkins that he did not consider some of the very best evidence of Esherick's and Douglas Jemal's intent, such as Esherick's credit applications (that report a higher income than Esherick and Douglas Jemal (through Douglas Development) reported to the Internal Revenue Service (IRS)) and Esherick's tax returns themselves, which contain manifestly false deductions (and thus evidence an intent to defraud the IRS). He did not consider that Esherick himself was an experienced accountant and had personal involvement in directing the preparation of Douglas Development checks for his benefit. Not surprisingly, based on his self-limiting view of the materials he reviewed, he concluded that mistakes might have occurred.

There is no methodology, reliability or usefulness to this testimony. We urge the Court to

---

[3] The actual language was artfully drafted. The expert opines that "it is not surprising that mistakes would happen in accounting for the employee loans and other compensation." Expert Disclosure at 5.

[4] The actual language in the Expert Disclosure was that the loans "very likely enhanced loyalty."

exercise its role as a "gatekeeper" and exclude the bulk of the proposed testimony of Mr. Watkins.

## ARGUMENT

### I. The Proposed Testimony of Richard Watkins.

The defendants have proposed to call Richard Watkins, an accountant, to render certain opinions. The first three proposed expert opinions relate to the tax charges in this case: (1) that Douglas Development's accounting department was understaffed and "mistakes were made;" (2) that salaries * * * depend on the specific circumstances and personalities of the individual employees;" and (3) that "small businesses [commonly] make loans to their employees * * * to enhance loyalty," and mistakes could have been made with such loans. The fourth proposed opinion would paint a rosy financial picture for Douglas Development's 77 P Street property in 2001 and the following years. The fifth proposal would opine that Morgan Stanley "did not lose money" from the actions connected with Count Five of the Indictment.

As shown below, the Court should bar the defense from seeking to elicit testimony on proposed opinions one, two, three, and five.

### II. Expert Testimony as to the Tax Counts.

1. <u>Opinions One through Three ("Mistakes Could Happen[ed]")</u>

Defendants, apparently conceding errors in accounting for Esherick's compensation, seek to defend the tax evasion counts by contending that the errors resulted from innocent mistake and not from criminal intent. To support their defense, the defendants seek to call Mr. Watkins to testify – in essence – that "mistakes [could have] happen[ed]." This testimony should be excluded.

-3-

First, and most plainly, nothing about this issue requires expert testimony. Jurors well understand that mistakes can occur in any organization. (Moreover, Mr. Watkins does not describe what mistakes occurred and why they were the result of overstaffing.) This is the type of issue that can be easily addressed with real live fact witnesses – including witnesses who still work for Douglas Development. These witnesses can testify as to how and why they actually prepared checks to Blake Esherick or for his benefit, and how these payments were accounted for in the books of the company. These issues are not complex. Because the proposed testimony that "mistakes [could have] happened" does not "address an issue beyond the common knowledge of the average layman," United States v. Vallejo, 237 F.3d 1008, 1019 (9th Cir. 2001) (applying Daubert)[5], it must not be admitted. United States v. Mitchell, 49 F.3d 769, 780 (D.C. Cir. 1995) (affirming trial court's refusal to qualify expert testify involving "matters of general knowledge, * * * squarely within the traditional province of the jury."); Hibiscus Associates Ltd. v. Board of Trustees of Policeman and Firemen, 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves."); Andrew v. Metro N. Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989) ("For an expert's testimony to be admissible under this Rule, however, it must be directed to matters within the witness's scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help." (citing cases)). In short, because the proposed testimony addresses a factual issue that is squarely with the competence of the jury to

---

[5] Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993)

consider and resolve, the proposed testimony will not "assist the trier of fact to understand the evidence," Fed. R. Evid. 702, and should not be admitted.

Not only is the testimony not useful, but, at its core, it is not "scientific." The crux of the proffer is that because there were mistakes in certain parts of Douglas Development's accounting department–namely, accounts payable and accounts receivable–there may have been mistakes in accounting for executive compensation as well.[6] Though presented as a matter of "expert" inference, this opinion is little more than conjecture. There are significant reasons why an organization would be exceptionally careful in handling matters associated with the finances and compensation of the highest level employees. For one, the bosses would insist on it; for another, payroll mistakes would cause significant problems among the employees of a company, so companies have a strong incentive not to permit such mistakes to happen. Moreover, there are numerous distinctions between the resources and skills of an organization required to handle accounts payable and accounts receivable functions–high volume activities consisting of many thousands of accounting entries in order to keep track of income and expenses for over 100 properties–and the resources and skills necessary to account for executive compensation (which can, conceivably, be handled without any errors by one skilled employee). The fact that there were insufficient resources in the former area has no relationship as to whether there were insufficient resources in the latter. Mr. Watkins offers no explanation–let alone an explanation

---

[6] The defendants wish to go into the history of Douglas Development's accounting, for example, and establish that there were mistakes in handling of the accounts receivable (rent payments) that, indeed, cost Douglas Development money. See Expert Disclosure at pp. 2-4. It is hard to conceive a more factually complicated but at the same time legally remote starting point for the analysis. The is a significant inferential gulf between problems in Douglas Development's accounts receivable and the "possibility" of "mistakes" in handling Esherick's compensation.

rooted in a reliable set of principles or rigorous methodology—to justify his claim that the existence of mistakes in some of the accounting operations of the company (e.g., accounts payable and receivable) supports his conclusion that mistakes occurred in accounting for Esherick's compensation.[7] This is raw speculation; it is not science.

"Rule 702 requires trial courts to act as 'gatekeepers' to ensure that the methodology underlying the expert testimony is valid and the expert's conclusion is based on 'good grounds.'" Groobert v. Georgetown College, 219 F.Supp. 2d 1, 6 (D.D.C. 2001) (Urbina J.) (citing Daubert). Thus, the focus of this Court is properly on the "principles and methodology" employed by Mr. Watkins. Id. However, no "principles or methodology" have been suggested which support the inference that because "mistakes were made" in certain aspects of Douglas Development's accounting processes, "mistakes [could have been] made" in connection with Esherick's compensation. At bottom, the government submits the testimony at issue is based on little more than the witness's "subjective belief [and] unsupported speculation" and is thus unreliable. Id. (citing Daubert at 509).[8] We urge this Court to exercise its proper role as a "gatekeeper" to exclude this unreliable testimony.[9]

---

[7]  Jurors can also consider evidence not considered by the expert, including what they can glean of the relationship of Esherick and Douglas Jemal, and other conduct of the two men, such as their participation in the bribery conspiracy, and the preparation and submission of other false financial forms and claims to the government.

[8]  This Court would be well justified in concluding that "'there is simply too great an analytical gap between the data [that is the existence of "mistakes" in some areas of Douglas Development's accounting] and the opinion proffered.'" Id. (citing Gen. Electric Co. v. Joiner, 522 U.S. 136, 143 (1997).

[9]  Because this Court is required to function as a "gatekeeper," its decision to exclude proffered expert testimony will be reviewed under exceptionally deferential standards. As the Supreme Court stressed: "[T]he trial judge must have considerable leeway in deciding in a

2.  Opinion Two ("Salaries Depend on the Employee")

The defendants would also have Mr. Watkins testify that "in many companies and business, salaries are not set purely [as] a function of job title, but often depend on the specific circumstances of personalities of the individuals." Expert Disclosure at 4. However, what "many other" companies do or do not do has no relevance to this case and hence such evidence should be excluded under Rule 402 of the Federal Rules of Evidence ("Evidence which is not relevant is not admissible."). Similarly, the defendants would have Mr. Watkins testify as to factors that induce employees to accept "lower" salaries, such as "a close relationship with their employer, or their hopes for a big reward or payoff in the future." Expert Disclosure at 5. This, again, is nothing more than an attempt for the witness to testify as to what Esherick's and Douglas Jemal's intent might have been. What other employers and other employees in other companies do is irrelevant. Fed. R. Evid. 402.

3.  Opinion Three ("Loans Engender Loyalty")

Finally, as to the compensation issue, the defendants propose to have Mr. Watkins testify that "[i]t is common for small business to make loans to their employees. The DDC loans to employees alleged in the indictment very likely enhanced loyalty and employee retention."

---

particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. at 152 (1999). Accordingly, a district court's decision to exclude expert testimony will be reviewed for an abuse of discretion. Gen. Elec. Co. v. Joiner, 522 U.S.137,142 (1999). See also United States v. Clark, 24 F.3d 257, 268 (D.C. Cir. 1994) ("'[A] district court has broad discretion regarding the admission or exclusion of expert testimony, and reversal of a decision on these matters is appropriate only when discretion has been abused.'" (quoting Joy v. Bell Helicopter Textron, Inc., 999 F.2d 549, 567 (D.C.Cir.1993)); United States v. Day, — F.Supp. 2d —, 2006 WL 1216648 at * 3 (D.D.C., May 8, 2006) (referencing abuse of discretion standard, citing Kumho, Gen. Elec. Co. v. Joiner, and Clark).

Expert Disclosure at 5.

As to the first assertion, it is irrelevant whether other small business make loans to their employees. See Fed. R. Evid. 402.

The second assertion—that DDC "loans" to employees "very likely enhanced loyalty and employee retention"—is not appropriate expert testimony for three reasons:

1. First, it assumes the very facts to be decided by the jury: that the payments to Esherick recorded as loans were in fact loans;

2. Second, jurors understand human nature and understand that certain benefits bestowed by a company on its employees—such as loans (if these were loans)— may create loyalty. Jurors do not need an expert for such an obvious point. See cases discussed at p. 4, supra.

3. Third, Mr. Watkins presumes to testify as to the intent of the defendants, namely, that the purported "loans" were "very likely" intended by Douglas Jemal to further "loyalty" and "retention" and "very likely" had the concomitant impact on Esherick of enhancing his "[intent to be] loyal" and "[intent to be] retained." The expert cannot testify to the "very likely" intentions of either of the two defendants. Fed. R. Evid. 704(b) (whether a criminal defendant "has a mental state or condition constituting an element of the crime charged" is an "ultimate issue" that is reserved "for the trier of fact alone"); Kohatsu v. United States, 351 F.2d 898, 905 (9th Cir. 1965) (excluding expert testimony regarding accounting mistakes because "[t]he accountant's opinion or conclusion that the errors resulted from

appellant's carelessness, without intent to evade his income tax, would have been improper as going beyond the scope of his expert competence").

For the above reasons, this Court should exclude the proposed opinions 1, 2 and 3 of Mr. Watkins.

### III.    Expert Testimony as to the Wire Fraud Count.

The defendants also propose that Mr. Watkins testify that Morgan Stanley suffered no loss as a result of the conduct alleged in Count Five in the Indictment. But that testimony should be excluded as irrelevant under Rule 402 because no loss was alleged in the Indictment, and the absence of any loss is <u>not</u> a defense to the charges. See Government's Motion <u>In</u> <u>Limine</u> to Preclude Defendants from Mounting Claim-of-Right Defense to Fraud Charges. Finally, there is no need for "expert" testimony on this topic, where real witnesses can provide this decidedly non-expert testimony (if it were relevant).

\* \* \*

If an attorney at trial were to ask a witness – even a witness with an abundance of direct knowledge of the accounting processes of Douglas Development and a familiarity with the behavior and personalities of the defendants – to opine on what "might have" occurred, such questions would be the subject of an immediate objection and the objection would be sustained. The proposed testimony of Mr. Watkins is, at its core, no different.

There is virtually nothing in Mr. Watkins' proposed testimony which would actually assist the jury. His conclusions do not stem from an accepted set of reliable principles or methodologies. Rather, for reasons set forth above, they are unfounded, and certainly are not sufficiently reliable to justify consideration by the jury. In any event, any possible probative

value – and the government maintains there is none – is dwarfed by the unfair prejudice and confusion of the issues that would result from the testimony.[10]

## CONCLUSION

The Court should exclude the proposed expert testimony of Mr. Watkins except as to proposed opinion four.

RESPECTFULLY SUBMITTED,

KENNETH L. WAINSTEIN. D.C. Bar No. 451058.
UNITED STATES ATTORNEY

By: /s/

MARK H. DUBESTER, D.C. Bar No. 339655
TIMOTHY G. LYNCH, D.C. Bar No. 456506
ASSISTANT UNITED STATES ATTORNEYS
555 Fourth Street, N.W., Room 5917
Washington, D.C.  20530
(202) 514-7986

---

[10] See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of July, 2006, I caused to be served by electronic filing a copy of the foregoing Motion, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Mark H. Dubester
Assistant United States Attorney