UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 05-359-01, -2, -3 (RMU) |
| | : | |
| DOUGLAS JEMAL ET AL. | : | |

**GOVERNMENT'S REQUEST FOR HEARING TO
ADDRESS POTENTIAL CONFLICT-OF-INTEREST ISSUE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully requests that the Court address a potential conflict of interest issue at the August 8, 2006, Pretrial Conference. One of the firms representing defendant Douglas Jemal, Akin Gump Strauss Hauer & Feld LLP (Akin Gump), intends to be part of a defense team that would cross examine a likely government witness, Fernando Villegas, even though (1) he was represented by Akin Gump on the same matters as will be the subject of his testimony and (2) his credibility will likely be attacked as he testifies as a cooperator before his sentencing judge.

**BACKGROUND**

Fernando Villegas, a cooperator and potential government witness, was represented by the law firm of Akin Gump, and at least two of its attorneys, Mark J. MacDougall and Anthony W. Swisher, in connection with his testimony before the D.C. City Council in 2003. A critical part of the Council's inquiry involved Villegas's purchase of furniture from Italy at the request of Douglas Development Corporation and Michael Lorusso. That furniture was intended for use in space being rented by the D.C. Government at Douglas Development's 77 P Street property.

Akin Gump also represented Villegas and his company in responding to grand jury subpoenas in this case.

On July 16, 2003, Villegas signed a letter written on Akin Gump stationery by attorneys MacDougall and Swisher that purports to waive conflict issues involving the firm's simultaneous representation of Mr. Villegas and Mr. Jemal. That letter is attached as Exhibit 1. The letter does not suggest that Mr. Villegas could be cross examined by an Akin Gump attorney. Rather, it gives a far more modest range of possible adverse consequences: that, in the event of a conflict, Akin Gump might have to withdraw from representing Mr. Villegas, Mr. Jemal, or both of them (or, that a court might disqualify Akin Gump from such representation). These are the only potential risks specified in the letter.[1]

In early 2004, agents from the Federal Bureau of Investigation executed search warrants at various locations, including at Villegas's home and business offices. At about that time, Mr. Villegas obtained new counsel, from the law firm of Schertler & Onorato. Ultimately, Mr. Villegas pleaded guilty to bribery conspiracy charges and agreed to cooperate with the United States.[2]

Following indictment of Douglas Jemal, Michele A. Roberts, Esquire, a partner of Akin Gump attorneys MacDougall and Swisher, entered her appearance on behalf of Mr. Jemal in 2005.

---

[1] The letter recites that Mr. Villegas consulted with outside counsel, Phillip Inglima, Esquire, of Baach Robinson & Lewis PLLC, for the purpose of obtaining advice regarding the letter. The government has not inquired of Mr. Inglima as to the discussions he had with Mr. Villegas and Mr. Inglima's understandings of the scope of the waiver.

[2] See United States v. Villegas, 04-453 (RMU).

In or about late June 2006, government counsel expressed concern to Ms. Roberts over the potential conflict in Akin Gump being part of a defense team that would cross examine its former client.[3] Ms. Roberts forwarded to the government the July 13, 2003, letter noted above and requested that the government (1) not contact Mr. Villegas's counsel on this issue, and (2) raise any conflict questions it had directly with the Court. Accordingly, the government has not contacted Mr. Villegas's attorney to discuss these issues, and it has raised this issue for the Court's consideration.

## DISCUSSION

### I. The Legal Landscape

This Court has "an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" United States v. Davis, 780 F. Supp. 21, 23 (D.D.C. 1991), quoting Wheat v. United States, 486 U.S. 153, 160 (1988).

The government's concern in filing this pleading is to protect the validity of any convictions in this case. Thus, it is vital that defendant Douglas Jemal clearly and unequivocally waive any potential conflicts that may arise as a result of Akin Gump's representation of Mr. Villegas. To that end, the government is concerned about Akin Gump's duty of loyalty to its

---

[3] For a variety of reasons the government can discuss in greater detail if the Court requests, the government was under the impression that Ms. Roberts would not be participating in this litigation as trial counsel. Given its understandable reluctance to be seen as raising ethical issues in connection with a highly reputable law firm and such a highly esteemed member of the bar, the government did not speak with Ms. Roberts about the potential conflict until it came to understand that Ms. Roberts was in fact intending to serve as one of defendant Douglas Jemal's trial attorneys.

former client (Mr. Villegas), its duty of loyalty to its present client (Mr. Jemal), and how it can reconcile those potentially conflicting duties.

To assist the Court, the government hereby sets forth the applicable Rules of Professional Conduct and provides an analysis of the legal issues associated with Akin Gump's participation in the trial. The government provides this analysis so that, at the end of the day, there can be no question as to the scope and effectiveness of Douglas Jemal's waiver; for Douglas Jemal's knowing and full waiver of conflict issues is essential.

In the government's view, Akin Gump's representation of Mr. Jemal and Mr. Villegas implicates two main areas under the District of Columbia Rules of Professional Conduct: first, the duty to maintain confidences (Rule 1.6); and second, the duty to avoid conflicts adverse to current (Rule 1.7) and former (Rule 1.9) clients, and, significantly, even clients who are represented by other lawyers at the same firm (Rule 1.10).[4]

### A. Duty of Secrecy

Rule 1.6 strictly prohibits a lawyer from revealing a client's confidences or secrets and from using such information to the disadvantage of the client, to the advantage of the lawyer, or to the advantage of a third party. See D.C. Rule Prof. Conduct 1.6(a). The Rule explicitly applies to current and former clients. See Rule 1.6(f) ("The lawyer's obligation to preserve the client's confidences and secrets continues after the termination of the lawyer's employment.").[5]

---

[4] This Court's Local Criminal Rules establish that the District of Columbia Rules of Professional Conduct apply to proceedings in federal court. See LCrR 57.26.

[5] Rule 1.6(d) provides an exception whereby "[a] lawyer may use or reveal client confidences or secrets: (1) With the consent of the client affected, but only after full disclosure to the client."

Thus, for example, an attorney may not use former Client A's confidences to cross examine Client A in representing a new client ("Client B"), because that use of confidences would be to the advantage of a third party (Client B) and, notably, the attorney (who would be receiving fees from Client B); and it would be to the disadvantage of Client A if he faced possible adverse consequences from being found untruthful.

    B.    <u>Duty of Loyalty</u>

        *A.*    *The General Rules*

Rule 1.7 prohibits attorneys from two types of conflict situations, one that may not be waived by the affected clients, and one that may be waived.

Rule 1.7(a), which sets forth the conflict rule that may <u>not</u> be waived, provides that "[a] lawyer shall not advance two or more adverse positions in the same matter." D.C. Rule Prof. Conduct 1.7(a). As the drafters to the Rule note, "[t]he absolute prohibition * * * applies * * * to situations in which a lawyer would be called upon to espouse adverse positions for different clients in the same matter." Rule 1.7(a) Cmt. 4.

Rule 1.7(b), which applies to conflicts that <u>may</u> be waived, provides that, absent a knowing waiver from all affected clients, an attorney is barred from representing a new client ("Client B") with respect to a matter under any of three different scenarios:

    (1) if she would take a position adverse to an existing client ("Client A"), even if Client A is unrepresented or represented by another attorney in the matter (Rule 1.7(b)(1));

    (2) if her representation of Client B is likely to be adversely affected by her representation of Client A (Rule 1.7(b)(2)); or

(3) if her representation of Client A is likely to be adversely affected by her representation of Client B (Rule 1.7(b)(3)).[6]

As noted, Rule 1.7(c) provides an exception to Rule 1.7(b) where "each potentially affected client provides consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation." See D.C. Rule Prof. Conduct 1.7(c). Akin Gump bears the burden of showing effective consent. See D.C. Rule Prof. Conduct 1.7 Cmt. 20 ("[U]nder District of Columbia substantive law, the lawyer bears the burden of proof to demonstrate the existence of consent.").

Furthermore, consent depends on the effectiveness of the disclosure. See Rule 1.7(c).[7] Here, for example, the July 13, 2003, letter signed by Mr. Villegas did not speak of any "possible adverse consequences" other than that Akin Gump might have to withdraw from representing

---

[6] Rule 1.7(d) provides that "[i]f a conflict not reasonably foreseeable at the outset of a representation arises under paragraph (b)(1) after the representation commences, and is not waived under paragraph (c), a lawyer need not withdraw from any representation unless the conflict also arises under paragraph (b)(2), (b)(3), or (b)(4)."

Experienced criminal counsel would have no difficulty foreseeing that a particular client might cooperate with the government and testify against another defendant involving the same or a substantially similar matter. Hence this exception has no applicability here.

[7] The drafters' comment to Rule 1.7 provides:

"Disclosure and consent are not mere formalities. Adequate disclosure requires such disclosure of the parties and their interests and positions as to enable each potential client to make a fully informed decision as to whether to proceed with the contemplated representation. * * * Full disclosure also requires that clients be made aware of the possible extra expense, inconvenience, and other disadvantages that may arise if an actual conflict of position should later arise and the lawyer be required to terminate the representation."

D.C. Rule Prof. Conduct 1.7 Cmt. 19.

Mr. Villegas, Mr. Jemal, or both of them—even though one reasonably foreseeable adverse consequence to Mr. Villegas would be Akin Gump attorneys cross examining him on behalf of Mr. Jemal. Akin Gump bears the burden of showing that any waiver decision was the product of a full and fair disclosure. See Avianca, Inc. v. Corriea, 705 F. Supp. 666, 680 (D.D.C. 1989) ("Where an attorney takes a position that is actually or potentially adverse to his client, the burden is on the attorney to show that he made a full, affirmative disclosure and acted with the utmost good faith.").

### B. Former Clients

Rule 1.9 expands the duty to avoid conflicts under Rule 1.7 even to when a representation ends. Thus, an attorney must avoid a conflict with former Client A when (1) new Client B's matter is "the same or a substantially related matter" to former Client A's matter and (2) new Client B's interests are materially adverse to the interests of former Client A. See D.C. Rule Prof. Conduct 1.9; see also Rule 1.9 Cmt. 2 ("When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited.").

### C. Law Firms

Rule 1.10 expands an attorney's general duty to avoid conflicts (under Rule 1.7), and to avoid conflicts with former clients (under Rule 1.9), to avoiding conflicts with current and former clients of the attorney's law firm—regardless of whether the attorney has or had anything to do with the representation of the firm's other present or former client. See D.C. Rule Prof.

Conduct 1.10;[8] see also Rule 1.10 Cmt. 6 ("[A] firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty the client"); Rule 1.10 Cmt. 11 ("[A] partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm."). Thus, an attorney at law firm AG cannot represent new client B if (a) one of the attorney's law partners at law firm AG previously represented former Client A and (b) Client B's representation would be materially adverse to former Client A regarding the same or similar matter on which firm AG represented former Client A.

    D.    Case Law

A federal trial court in this jurisdiction granted a government motion to disqualify a defendant's attorney whose law partner had previously represented a cooperator who would be testifying for the government at the defendant's trial. United States v. Davis, 780 F. Supp. 21 (D.D.C. 1991). In that case, the defendant agreed to waive the conflict issue, but the cooperator did not. Id. at 22. The Court relied on two rules of the District of Columbia Rules of Professional Conduct—Rule 1.9 and Rule 1.10—in holding that attorney Gary Kohlman, Esquire, could not represent the defendant because his law partner, Mark J. Rochon, Esquire, had

---

[8] There can be no doubt that Rule 1.10 has such a broach scope—one that goes so far as to bar substantially related representations adverse to an attorney's law partner's former client—because the Rule specifically mentions in its text both Rule 1.7 (the general conflict rule) and Rule 1.9 (the rule applicable to former clients). Thus, Rule 1.10 states that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, * * * [or] Rule 1.9 * * *." See D.C. Rule Prof. Conduct 1.10; see also Rule 1.7 Cmt. 1 ("The application of Rule 1.7(a) and Rule 1.7(b) to specific facts must also take into consideration the principles of imputed disqualification described in Rule 1.10."); Rule 1.7 Cmt. 23 ("All the references in Rule 1.7 and its accompanying Comments to the limitation upon a 'lawyer' must be read in light of the imputed disqualification provisions of Rule 1.10, which affect lawyers practicing in a firm."); Rule 1.9 Cmt. 1 ("The principles in Rule 1.7 determine whether the interests of the present and former clients are adverse.") (emphasis added).

represented the cooperator. See id. at 23. Moreover, the court disqualified the former client's law partner even though both attorneys assured the court that "no information has flowed to Kohlman [from Rochon] regarding the cooperating individual's case and that none will flow to him in the future." Id. The court's primary source of concern was that the former client would be subject to cross examination designed to make him look untruthful:

> "The cooperating individual will testify in this case as a result of the matter on which he consulted Rochon. His credibility, like that of any witness, will be at issue. Therefore, the pending charge against the cooperating individual and his motivation for testifying will arise as matters of impeachment. The relevance of those facts also demonstrates the existence of a material conflict between the cooperating individual's interests and the present defendant's. * * * [T]he cooperating individual should not face cross-examination on those issues from Rochon's law partner. On the other hand, the defendant Dennis Davis' interest requires zealous impeachment of the cooperating individual, and his attorney should not be inhibited because of a potential breach of confidentiality toward a former client." Id.

The court also rejected the attorney's contention that he would have other, sufficient means of impeaching the cooperator (such as through discovery and under Brady v. Maryland, 373 U.S. 83 (1963)), so that the court did not need to be concerned about any breach of confidentiality toward a former client. Id. In the court's view, "the appearance of unfairness would remain regardless of Kohlman's actual source of the information." Id. Finally, the court disqualified the attorney even though it was clear the court held the attorney in high esteem. See id. ("The conflict of interest rules apply to all attorneys, including those whom a particular judge considers to have high ethical standards.").

In Wheat v. United States, the Supreme Court affirmed a trial court's refusal to accept a defendant's waiver of conflict-free counsel, holding that a "District Court must recognize a presumption in favor of petitioner's counsel of choice, [but that] that presumption may be

overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat v. United States, 486 U.S. 153, 164 (1988). The case involved a defense counsel (Iredale) who would, in representing the defendant (Wheat), be called upon to cross examine a witness and alleged co-conspirator (Bravo) who had pleaded guilty while being represented by Iredale. Id. at 155-56. The Supreme Court affirmed the trial court's refusal to allow Wheat to hire Bravo's counsel because such representation would violate the attorney's duty of loyalty to both men:

> "In the likely event Bravo were called to testify [against Wheat], Iredale's position in representing both men would become untenable, for ethical proscriptions would forbid him to cross-examine Bravo in any meaningful way. By failing to do so, he would also fail to provide petitioner with effective assistance of counsel."

Id. at 156.

Similarly, in United States v. McKissick, the trial court relied on Wheat in granting a government motion to disqualify an attorney (Robertson) from representing a defendant (McKissick) at a homicide trial when (1) Robertson also represented a likely government witness (Speaks) who was being represented by Robertson in a different homicide case; and (2) Robertson intended to cross examine Speaks by suggesting that Speaks had told Robertson something different than what Speaks had testified to in the grand jury. United States v. McKissick, Case No F-6040-90, 120 Daily Wash. L. Rep. 633 (D.C. Sup. Ct. Jan. 30, 1992) (Mem. Op.) (Attached as Exhibit 2). Even though both McKissick and Speaks had waived their right to conflict-free counsel, Robertson could not maintain his duty of loyalty to both clients while cross-examining Speaks: "Unless the words 'duty' and 'loyalty' are given a very peculiar

meaning[,] it is not proper for a lawyer to cross examine a current client[⁹] for the purposes of showing that he is not a truthful person and that he committed perjury when he gave prior testimony under oath." McKissick, 120 Daily Wash. L. Rep. at 639. The court also rejected Robertson's argument that he had not learned of any other information about Speaks that he could use to impeach Speaks during McKissick's trial. In the court's view, McKissick's "attorney is duty bound to seek out information which could be used to discredit Mr. Speaks should he testify consistent with his testimony before the grand jury. Obviously, Mr. Speaks' attorney is unable ethically to conduct such an investigation." Id.

In raising this issue, the government is not suggesting that Ms. Roberts has obtained access to client confidences of Mr. Villegas. For purposes of this pleading, it can be assumed she has not and indeed, it can be assumed that she would be able to wall herself off from the attorneys in Akin Gump who possess such confidences. However, the "[Rules of Professional Conduct] are prophylactic measures designed to prevent potential conflicts from developing into actual conflicts and to maintain the integrity of the profession by guarding against the appearance of a conflict." United States v. Davis, 780 F.Supp at 23.[10] Accordingly, the analysis and resolution of the conflict issue does not turn on the subjective good faith of a given attorney.

---

⁹   McKissick involved representation of two current clients, not a current client and a former client. But, as Rule 1.9 makes clear, there is no difference for conflicts purposes between a former client and a current client where the representation involves the same or substantially related matter and the new client's interests are materially adverse to the former client.

10   "[M]aintaining confidence in [the legal system] system and in the legal profession is of the utmost importance. In this regard, courts should be reluctant to sacrifice the interests of clients and former clients for the perceived business interest of lawyers." Roberts & Schaefer Co. v. San-Con, Inc., 898 F. Supp 356, 363 (S.D.W.Va. 1995) (disqualifying the firm of Steptoe & Johnson for conflict arising upon merger with another firm).

## II. Request for Court Assistance

The government seeks the Court's assistance in resolving these conflict issues.

As an initial matter, there is a legitimate question whether Akin Gump has an unwaiveable conflict under Rule 1.7(a). Here, one of its attorneys could find herself advancing two materially adverse positions in the same trial: "Douglas Jemal is being truthful (and you should acquit him on all counts) and Fernando Villegas [whose duty of loyalty is imputed to me and who faces adverse consequences at sentencing] is being untruthful." See Rule 1.7(a) Cmt. 4 ("The absolute prohibition of paragraph (a) applies * * * [where] a lawyer would be called upon to espouse adverse positions for different clients in the same matter.").

Assuming the conflict arises under Rule 1.7(b) and may be waived under Rule 1.7(c), the government seeks the Court's assistance in determining whether there have been effective waivers based on full and fair disclosures of all possible adverse consequences, or whether such waivers must now be effected. Thus, the government urges the following:

(1) That the Court undertake to clarify the scope of the ethical obligations of Akin Gump to its former client, Mr. Villegas, so that Mr. Jemal may truly apprehend any potential constraints on Akin Gump's advocacy on Mr. Jemal's behalf;

(2) That, based upon that understanding, Douglas Jemal be required to waive any and all potential conflicts in having Akin Gump as trial counsel;

(3) That the Court ascertain whether Mr. Villegas has waived any and all conflict of interest issues concerning Akin Gump's representation of Villegas and Mr. Jemal following a full and fair disclosure of possible adverse consequences;

(4)     That, absent a knowing waiver by Mr. Villegas following full and fair disclosure, the Court consider whether Akin Gump may participate as trial counsel in this matter and, if so, under what conditions.

WHEREFORE, we request this Court consider this pleading and address these issues at the August 8, 2006, Pretrial Conference.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar No. 451058
UNITED STATES ATTORNEY

By:  _/s/_____
Mark H. Dubester, D.C. Bar No., 339655
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of August, 2006, I caused to be served by electronic filing a copy of the foregoing motion and following proposed order, to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, NW
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Mark H. Dubester
Assistant United States Attorney

-14-