UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Crim. No. 05-359-01, -2, -3 (RMU) |
| DOUGLAS JEMAL ET AL. | : |

**GOVERNMENT'S REPLY IN SUPPORT OF ITS REQUEST FOR HEARING TO ADDRESS POTENTIAL CONFLICT-OF-INTEREST ISSUE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this reply to "Defendant Douglas Jemal's Response to the Government's Request for Hearing to Address Potential Conflict-of-Interest-Rule [sic]" (hereinafter "Akin Gump Response").

As shown below, the Akin Gump Response to the government's request[1] raises more questions than it answers and, regrettably, does not appear to appreciate the seriousness of the conflicts issues present here. Put simply, Akin Gump has not met its burden of demonstrating either that it maintained the client confidences of its client, Fernando Villegas, or that Mr. Villegas and Douglas Jemal knowingly consent to the firm's representation of Mr. Jemal at a trial in which Mr. Villegas will be testifying (and cross examined) as a government cooperator who implicates Mr. Jemal and his co-conspirators. Thus, as this conflict now stands, Akin Gump will be part of a defense team that will try to destroy the credibility of a former client before that client's sentencing judge as the client testifies on the same subjects on which he was represented by Akin Gump. Finally, contrary to the representations of Akin Gump, the government expects that Mr. Villegas's likely testimony would be damaging to Mr. Jemal and his co-conspirators.

---

[1] See Government's Request for Hearing to Address Potential Conflict-of-Interest Issue (hereinafter "Government Request").

# BACKGROUND

## I. THE CONFLICT ISSUES AND "WAIVERS"

### A. Chronology

The Akin Gump Response gives a misleading impression as to the amount of time and effort it expended on Mr. Villegas's behalf, when it began representing him, and the issues encompassed in that representation.

First, Akin Gump fails to reveal that it, too, represented Fernando Villegas before the District of Columbia City Council. Akin Gump correctly notes that Mr. Villegas was represented at a hearing before the City Council in June 2003 by Dickson Young, Esquire.[2] See Akin Gump Response at 2. But Akin Gump does not mention that, at 10:00 a.m., on Monday, July 14, 2003, Mark MacDougal and Anthony Swisher of Akin Gump represented Mr. Villegas at a highly contentious hearing before the City Council Subcommittee on Human Rights, Asian-Pacific Islander and Latino Affairs, and Property Management.[3] Throughout the hearing, Mr. Villegas declined on Fifth Amendment grounds to answer question after question about Michael Lorusso and Douglas Jemal.[4] Thus, any implication that Akin Gump was not involved in representing Mr. Villegas before the City Council would be false.

---

[2] That hearing was held on June 6, 2003.

[3] See Transcript of Hearing Before D.C. City Council Subcommittee on Human Rights, Asian-Pacific Islander and Latino Affairs, and Property Management (July 14, 2003) (hereinafter "Council Hearing Tr.") (Attached as Exhibit 1). At the hearing, Mr. MacDougall stated unequivocally: "We are here as Mr. Villegas' counsel. We also – we are also counsel to IBI." See Council Hearing Tr. at 18. IBI is an acronym for International Builders, Incorporated.

[4] Given that the questions posed at the City Council hearing deal with some of the same issues raised in the Indictment, Mr. Villegas will likely be cross examined at trial about subjects for which he was prepared by his Akin Gump attorneys.

Second, contrary to the Akin Gump Response, which states that Mr. Villegas hired Akin Gump "[i]n July of 2003,"[5] the City Council hearing reveals that Akin Gump's representation of Mr. Villegas appears to have begun no later than June 19, 2003. Thus, Subcommittee Chairman Jim Graham states:

> "[Mr. Villegas] was properly served on June 16th, but declined to appear at that hearing. On June 19th, uh, because that, uh, uh, his new counsel had advised us that he was – the – the new counsel was not prepared, uh, to engage in these hearings. However, uh, the – the new, uh, law firm, Akin Gump, presented us with a letter assuring us that Mr. Villegas was 'anxious to cooperate with the investigation.'"

Council Hearing Tr. at 1.

Nearly three weeks after Akin Gump began representing Mr. Villegas, "on July 7, 2003, Mr. Jemal sought to engage [Akin Gump] * * * to represent him in connection with ongoing investigations relating to the lease of office space, acquisition of furniture and other equipment by the District of Columbia, as well as the conduct of certain present and former government officials." See Letter to Fernando Villegas from Mark J. MacDougall, Esquire and Anthony W. Swisher, Esquire (July 16, 2003) (Attached as Exhibit 1 to Government's Request) (hereinafter "Villegas Waiver").[6]

Mr. Jemal executed a generic conflicts waiver drafted by Akin Gump partner John M. Dowd, Esquire.[7] Mr. Jemal hand-dated the conflicts waiver as occurring on July 7, 2003 (the

---

[5] Akin Gump Response at 2.

[6] On July 7, 2003, or July 8, 2003, a "representative of Mr. Jemal spoke with [Mr. Villegas]" regarding the "potential conflict of interest with regard to Akin Gump's representation of Mr. Jemal," even though Mr. Villegas was a represented party. See Villegas Waiver at 1.

[7] See Exhibit A to Akin Gump's Response (Letter to Douglas Jemal from John M. Dowd, Esquire (July 14, 2003)) (hereinafter "Jemal Waiver").

date he "sought to engage" Akin Gump),[8] even though the typed date of that waiver is July 14, 2003 (the date of Mr. Villegas's contentious hearing before the City Council).[9]

Akin Gump sought a waiver from Mr. Villegas on July 16, 2003, two days after the City Council hearing at which Mr. Villegas declined on Fifth Amendment grounds to answer a number of questions that in no uncertain terms revealed to Akin Gump counsel the potential conflict between Mr. Villegas and Mr. Jemal, including[10]:

(1)   "is Douglas Jemal your landlord at 1424 K Street, NW?" (see Council Hearing Tr. at 14);

(2)   "at 1424 K Street NW, Suite Number 500, are you — are you paying below-market rent to Douglas Jemal or Douglas Development?" (id.);

---

[8]   See Villegas Waiver at 1.

[9]   That Douglas Jemal executed his waiver as of July 7, 2003, tends to suggest that Akin Gump clearly understood the potential conflict between Mr. Jemal and Mr. Villegas and, indeed, felt so strongly about the conflict that it wanted to be covered for the week between Mr. Jemal's initial consultation and the date the waiver was drafted, or July 7, 2003 through July 14, 2003.

[10]   Chairman Graham also stated to Mr. Villegas in the presence of his attorneys:

"Then again, we have Douglas Development, specifically Douglas Jemal, agree out of the clear blue to write a check for $318,000 to Global Furniture Resources, a company, which, by your testimony, you are the only employee and you are the owner. But you have no interest in 77 P in terms of DHS, uh, you have no relationship with Douglas Development in terms of DHS. But the shrewd and wise businessperson, Douglas Jemal, agrees to write you a check I April [sic] of this year — not last year, in April of this year — long after Lorusso is gone. Lorusso is history; Mr. Jemal is writing you a check, signing it himself for $318,000 with no apparent obligation whatsoever to provide furniture for the Department of Human Services."

Council Hearing Tr. at 19.

-4-

(3) "what is your relationship with Douglas Jemal, and how did it come about that Mr. Jemal agreed to pay for $636,000 worth of furniture, which your company, Global Furniture Resources, ordered from Italy, ostensibly for the Department of Human Services his landlord?" (id.);

(4) "I mean, how did it come about that Douglas Jemal or — and/or — Douglas Development agreed to pay for this furniture?" (id.);

(5) "So, I — I'm trying to understand what the relationship is between you and your company International Builders, and your company Global Furniture Resources, and Douglas Jemal. And here's the question. Did Michael Lorusso speak on your behalf to Douglas Jemal in terms of this DHS furniture and say, 'Mr. Jemal, we want you to work with the financing or the purchase of this furniture for Global Furniture Resources, for Fernando Villegas, as part of an overall deal whereby the D.C. government would be filling 77 P Street?' Was this part of an overall scheme where you were favored because others were favored — a tit for tat, Mr. Villegas?" (id. at 19-20).

The Villegas Waiver drafted by Messrs. MacDougall and Swisher two days after those questions were raised asserts that "there did not appear to be any activity in which you and Mr. Jemal participated that would present a conflict of interest."[11]

Third, Akin Gump does not mention in its response the extent of its other work on Mr. Villegas's behalf. More than three months after the City Council hearing, on October 29, 2003, the government served a grand jury subpoena on Mr. Villegas's business, IBI, by faxing a copy of the subpoena to Mr. Villegas's Akin Gump attorney, Mark MacDougall.[12]

---

[11]  See Villegas Waiver at 1. Putting aside the mistaken factual premise in that statement, the letter is highly misleading as a matter of law: there can be a conflict of interest between two clients even if the clients have not "participated" in "any activity."

[12]  Akin Gump thus supervised a document production that involved approximately four boxes containing several thousand pages of documents.

More than three months later, on or about February 11, 2004, the Federal Bureau of Investigation executed a search warrant at Mr. Villegas's residence, at 2103 O Street, NW, and at the offices of Mr. Villegas's business, IBI, at 1424 K Street, NW. At the time the search warrant was executed, Mr. Villegas was still represented by Mr. MacDougall and Akin Gump.[13]

### B. The Waivers

The Jemal and Villegas waivers are significant in the different language and approaches they use, and by whom they were written. Mr. Villegas, the client first-in-the-door at Akin Gump, is advised to seek outside counsel before signing his conflicts waiver; Mr. Jemal is not. Mr. Villegas is informed that, in the event of a conflict, the firm might have to withdraw from representing him, Mr. Jemal, "or both" of them;[14] Mr. Jemal is advised merely that "one of [them] may have to retain new counsel."[15] Mr. Villegas's waiver is two pages long; Mr. Jemal's is one short paragraph. Mr. Villegas was represented by a partner and associate of Akin Gump; Mr. Jemal was represented by a partner who is the head of Akin Gump's entire litigation practice.

## II. THE TIMING OF THE GOVERNMENT'S REQUEST

Akin Gump questions the timing of the government's request. Thus, it states that the government did not object to Akin Gump's participation in meetings with government counsel, see Akin Gump Response at 2-3, and that it did not object when Akin Gump partner Michele A. Roberts, Esquire entered her appearance in this case at arraignment. See id. at 3.

---

[13]  One useful measure of the extent of Akin Gump's work on behalf of Mr. Villegas would be the firm's itemized billing records.

[14]  Villegas Waiver at 1.

[15]  Jemal Waiver at 1.

As an initial matter, Akin Gump's conflict is of its own making, and one that needed to be resolved regardless of when, or even if, the government raised it with the Court. A conflict is a conflict even if no witness or party brings it to the attention of a court or other body.

In any event, the government had a reasonable basis for believing Ms. Roberts was not going to appear as trial counsel. After the defendants were arraigned, one of undersigned counsel had a conversation with one of Douglas Jemal's attorneys, who told government counsel that Ms. Roberts would not be participating in the trial because, among other things, there were not enough significant witnesses to split up among and between all of Mr. Jemal's attorneys. The truth of that counsel's statement appeared to be borne out by what happened next: (1) all the Douglas Jemal motions, oppositions, and replies were signed and filed by attorneys from Steptoe & Johnson and argued by attorneys from that firm or by Christopher Mead, Esquire, of London & Mead; (2) Ms. Roberts did not appear on February 23, 2006, when, as part of the discovery process, the Federal Bureau of Investigation made evidence obtained through search warrants available for review by defense counsel; (3) Ms. Roberts did not appear at the March 7, 2006, motions hearing at which dispositive motions and fundamental evidentiary issues at trial were raised and discussed; (4) Ms. Roberts did not appear at the March 20, 2006, motions hearing at which the Court handled highly significant discovery issues and discussed the number of potential jurors to be called for trial; (5) <u>five</u> attorneys had entered appearances on behalf of Mr. Jemal alone, and government counsel was hard pressed to see how all five would actually participate at trial; and (6) Ms. Roberts did not appear on March 21, 2006, or March 30, 2006, when counsel for Mr. Jemal met with one of undersigned counsel and the Chief of the Fraud and

Public Corruption Section of the United States Attorney's Office to request that the government postpone any additional indictments of Jemal for tax evasion.

Under the circumstances, the government reasonably believed that Ms. Roberts would not be participating at trial; and it behaved reasonably thereafter: it discussed its concerns with Ms. Roberts once it appeared that she was, after all, intending to participate in the trial; it did not discuss these issues with Mr. Villegas, at her request, even though such conversations could have expedited this process and obviated the need for such extensive briefing; and it filed its request with the Court, again at her request, only when it became clear that that was the only way these issues were going to be ventilated and resolved. Put simply, the government acted in good faith.

## DISCUSSION

### I. AKIN GUMP HAS NOT MADE AN ADEQUATE SHOWING.

As the government noted in its initial filing, Akin Gump bears the burden of showing (1) that it took steps to ensure that no Villegas confidences have been shared with any member of Akin Gump's Jemal defense team, and (2) that Mr. Jemal and Mr. Villegas knowingly consent to Akin Gump's continuing representation of Mr. Jemal, even if that means, among other things, that Akin Gump attorneys participate in a defense team that would cross examine Mr. Villegas at trial. See Government Request at 3-7. Akin Gump has failed to make either showing.

#### A. Akin Gump's Unwaived Duty of Secrecy to Mr. Villegas

As to Akin Gump's continuing duty of secrecy to Mr. Villegas, it would appear that Akin Gump never established any wall or process to ensure that attorneys, paralegals, and secretaries privy to Villegas confidences would not intentionally or inadvertently reveal them to individuals working on the Jemal representation, and that Akin Gump's Jemal team would not otherwise

have access to Villegas materials.[16] Thus, it is not sufficient for Akin Gump to assert that "Ms. Roberts has not engaged in any conversation with Mark MacDougall or Anthony Swisher regarding their prior representation of Fernando Villegas." Akin Gump Response at 4. The government respectfully submits that it is essential for Akin Gump to demonstrate that no Akin Gump personnel—no partner, counsel, associate, or paralegal—on the Jemal team has been exposed to <u>any</u> Villegas client confidences.

Given the absence of a conflicts wall, the government requests that the Court order that all Akin Gump personnel with any connection to the Villegas and Jemal representations be available to testify to assure the Court that there is no such taint.[17]

**B.    Akin Gump's Unwaived Duties of Loyalty**

Akin Gump's answer to the government's request that the Court clarify the scope of the firm's duties of loyalty to Mr. Villegas and Mr. Jemal is that "the waivers previously executed by Douglas Jemal and Fernando Villegas where [sic] knowing waivers." Akin Gump Response at 4. But those waivers do not come close to meeting the standard required under the Rules of Professional Conduct.

Rule 1.7(c) provides an exception to the conflicts bar in Rule 1.7(b) where "each potentially affected client provides consent to such representation after <u>full</u> <u>disclosure</u> of the

---

[16]    Had there been such precautions, the government assumes they would have been given a prominent place in the Akin Gump Response.

[17]    Another approach the Court could consider is reviewing <u>in</u> <u>camera</u> Akin Gump's billing statements for the Villegas and Jemal representations to see whether any firm personnel billed time to both matters and, if so, when.

existence and nature of the possible conflict and the possible adverse consequences of such representation." See D.C. Rule Prof. Conduct 1.7(c) (emphasis added). Akin Gump bears the burden of showing effective consent. See D.C. Rule Prof. Conduct 1.7 Cmt. 20 ("[U]nder District of Columbia substantive law, the lawyer bears the burden of proof to demonstrate the existence of consent."). The Rule's drafters state:

> "<u>Disclosure and consent are not mere formalities</u>. Adequate disclosure requires such disclosure of the parties and their interests and positions as to enable each potential client to make a fully informed decision as to whether to proceed with the contemplated representation. * * * Full disclosure also requires that clients be made aware of the possible extra expense, inconvenience, and other disadvantages that may arise if an actual conflict of position should later arise and the lawyer be required to terminate the representation."

D.C. Rule Prof. Conduct 1.7 Cmt. 19 (emphasis added); see also <u>Avianca, Inc</u>. v. <u>Corriea</u>, 705 F. Supp. 666, 680 (D.D.C. 1989) ("Where an attorney takes a position that is actually or potentially adverse to his client, the burden is on the attorney to show that he made a full, affirmative disclosure and acted with the utmost good faith.").

Measured against those standards, Akin Gump has not come close to meeting its burden, for the waivers it drafted do not provide an adequate disclosure of possible adverse consequences to either Mr. Villegas or Mr. Jemal. Mr. Villegas's waiver does not inform him of one <u>obvious</u> potential adverse consequence of him allowing Akin Gump to represent Mr. Jemal: that, if he cooperated with the government, and Akin Gump remained Mr. Jemal's attorney, his former law firm would likely try to destroy his credibility before his sentencing judge in its defense of Mr. Jemal. See, <u>e.g.</u>, <u>United States</u> v. <u>Davis</u>, 780 F. Supp. 21 (D.D.C. 1991) (disqualifying attorney whose law partner had previously represented a cooperator because attorney would have to attack

cooperator's credibility in defense of new client).[18]  The Jemal waiver does not inform Mr. Jemal that, despite Rule 1.3's requirement that Akin Gump attorneys represent him zealously and without prejudice, Akin Gump attorneys might have institutional incentives not to investigate or cross examine Mr. Villegas too thoroughly, lest they run the risk of being seen as violating their duties of loyalty and secrecy to Mr. Villegas.  Finally, neither waiver makes Mr. Villegas or Mr. Jemal "aware of the possible extra expense, inconvenience, and other disadvantages that may arise if an actual conflict of position should later arise * * *."  See D.C. Rule Prof. Conduct 1.7 Cmt. 19.

Those inadequate disclosures produced the waivers on which Akin Gump exclusively relies in its response.

---

[18]  It is significant that the Akin Gump Response does not attempt to distinguish Davis; Wheat v. United States, 486 U.S. 153, 164 (1988); or United States v. McKissick, Case No F-6040-90, 120 Daily Wash. L. Rep. 633 (D.C. Sup. Ct. Jan. 30, 1992) (Mem. Op.), other than implicitly, through its blanket statement that the Jemal and Villegas "waivers" were adequate.  The government does note, however, that, in Wheat and McKissick, defense counsel were disqualified even though both the new and former clients had agreed to waive their right to conflict-free counsel.  Hence it was incumbent upon Akin Gump to explain why, even if the Jemal and Villegas waivers were adequate, the firm should be allowed to participate in a defense that has a significant potential to be adverse to its former client.

As for its citation to United States v. Gonzalez-Lopez, 126 S.Ct. 2557 (June 26, 2006), see Akin Gump Response at 5, the government notes that (1) Gonzalez-Lopez involved wholly inapposite facts, where the trial court refused to grant a motion to appear pro hac vice—an error so obvious the government conceded the point, see Gonzelez-Lopez, 126 S.Ct. at 2561; (2) the case indicates that Wheat remains good law because it cites Wheat with approval and quotes the passage in Wheat about courts' "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession," see 126 S.Ct. at 2566; and (3) the Supreme Court takes pains to clarify that it is not changing the rule that trial courts have discretion to deny a defendant's "demand that a court honor his waiver of conflict-free representation," see id at 2665.

In sum, neither Mr. Villegas nor Mr. Jemal has waived the particular conflict in which Akin Gump now finds itself. Assuming the conflict is even waiveable, both individuals should be required to execute waivers in roughly the form drafted by the government for Mr. Jemal.

## II.   VILLEGAS'S LIKELY TESTIMONY WILL BE ADVERSE TO JEMAL ET AL.

Let there be no doubt: Mr. Villegas's likely testimony would be adverse to the interests of Douglas Jemal—a point made clear as early as July 14, 2003, through the questions posed to Mr. Villegas by the City Council. At a minimum, Mr. Villegas's likely testimony would corroborate government evidence that the defendants gave Michael Lorusso things of value; and Mr. Villegas would do this through testimony about damaging admissions made by one of the three co-conspirator-defendants. The government also submits that Mr. Villegas would provide other testimony that would likely be detrimental to Mr. Jemal's defense.

## III.   REQUEST FOR COURT ASSISTANCE

The government seeks the Court's assistance in resolving these conflict issues.

The government respectfully submits that there remains an open question whether Akin Gump's conflict is even waiveable, given that one of its attorneys could find herself advancing two materially adverse positions in the same trial.

Assuming the conflict is waiveable, the government respectfully requests that the Court hear from Mr. Villegas and his present counsel to determine their position on whether Mr. Villegas will waive any conflict of interest. That step is necessary because Mr. Villegas's July 16, 2003, waiver is plainly not adequate.

The government respectfully submits that, if Mr. Villegas is willing to waive the conflict, that the Court appoint outside counsel for Mr. Jemal, so that he may be advised whether to sign the waiver proposed by the government.

If either Mr. Villegas or Mr. Jemal is not willing to waive the conflict under terms similar to those proposed by the government, the government respectfully requests that the Court consider whether Akin Gump may participate in the defense of Douglas Jemal, and, if so, under what conditions.

Finally, given Akin Gump's ongoing duty of secrecy to Mr. Villegas, the government respectfully requests that the Court order that any and all Akin Gump personnel involved in either or both of the Villegas and Jemal representations be available at a hearing so they can be questioned about whether any of them has worked on both matters and whether any Villegas confidences were accessed by Jemal defense team members.

WHEREFORE, we request this Court consider this pleading and address these issues at the August 8, 2006, Pretrial Conference.

Respectfully submitted,

KENNETH L. WAINSTEIN, D.C. Bar No. 451058
UNITED STATES ATTORNEY

By: _____
Mark H. Dubester, D.C. Bar No., 339655
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

CERTIFICATE OF SERVICE

    I hereby certify that, on this 7th day of August, 2006, I caused to be served by electronic filing a copy of the foregoing reply to:

Michele A. Roberts, Esquire
Counsel for Douglas Jemal
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson
1330 Connecticut Avenue, NW
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Timothy G. Lynch
Assistant United States Attorney