**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| v. | ) | Crim. No.  05-0359-1, -2, -3 (RMU) |
| | ) | |
| DOUGLAS JEMAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE***
**TO PRECLUDE THE GOVERNMENT FROM INTRODUCING**
**EVIDENCE REGARDING DOUGLAS JEMAL'S PERSONAL FINANCES**

   The Court should preclude the government from introducing evidence regarding

(1) Defendant Douglas Jemal's pattern of weekly cash withdrawals, and (2) payments from

Douglas Development Corporation to Douglas Jemal.  Such evidence is irrelevant.  Moreover,

any probative value of such evidence is far outweighed by its potential to cause unfair prejudice

to Defendants.

   Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as

"evidence having any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the

evidence."  Fed. R. Evid. 401.  Rule 402 provides that "[e]vidence which is not relevant is not

admissible."  Fed. R. Evid. 402.  In addition, a court may exclude relevant evidence pursuant to

Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403; see also Old Chief v.

United States, 519 U.S. 172, 180 (1997) ("[t]he term 'unfair prejudice,' as to a criminal

defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

As the Court is aware, the Indictment alleges that Defendants engaged in a conspiracy to bribe Michael Lorusso, as well as substantive counts of bribery and "honest services" mail fraud based on the same conduct. The Indictment alleges that the things of value given to Mr. Lorusso include two cash payments from Defendant Blake Esherick. Indictment at 11 (¶¶ 4 & 8). The government has indicated that it intends to elicit evidence regarding Defendant Douglas Jemal's practice of having his assistant, Ms. Darlene Brown, cash a check for him nearly every week. The government apparently intends to argue that this cash was available as a potential source of funds that Douglas Jemal could have given to Blake Esherick to use to pay Mr. Lorusso.

The inference that the government would have the jury draw from this "evidence" is extremely attenuated. Virtually every week for years, Douglas Jemal has cashed a check for $2,000 on Thursday or Friday to take with him to the New York area for the weekend. Mr. Jemal gives the vast majority of these funds to his wife for her financial obligations. This pattern was consistent throughout the relevant time period in which the government alleges that Mr. Lorusso received the two cash payments. Absent some showing by the government that Douglas Jemal's cash withdrawal practices changed at or around the times of these alleged cash payments, the evidence at issue has absolutely no probative value. Accordingly, the proffered evidence is irrelevant and inadmissible under Federal Rules of Evidence 401 and 402.

Even if marginally relevant, the Court should exclude this evidence pursuant to Rule 403 because its probative value, if any, is substantially outweighed by the risk of unfair

prejudice to Mr. Jemal.  This evidence is improper "lifestyle" evidence that has the potential to appeal to class prejudice and bias the jury against the Defendants.  The jury may view weekly cash withdrawals of several thousand dollars as excessive and hold it against Mr. Jemal for reasons of class biases wholly unrelated to this case.

In <u>United States v. Stahl</u>, 616 F.2d 30 (2nd Cir. 1980), the court reversed a bribery conviction based in part on the government's improper references to the wealth of the defendant, who happened to be a real estate entrepreneur.  While the district court had admonished the government for emphasizing the defendant's wealth because "it impermissibly equates success, affluence and a single minded occupation with one's business affairs with greed and corruption," the Court of Appeals found that the government's emphasis on the defendant's wealth so exceeded the limits of propriety that this curative jury instruction was insufficient to cure the prejudice to the defendant and overturned the conviction.  <u>Id</u>. at 31-32; <u>see also</u> <u>United States v. Jackson-Randolph</u>, 282 F.3d 369, 376 (6th Cir. 2002) ("This court has already recognized that prosecutorial appeals to wealth and class biases can create prejudicial error, violating a defendant's right to due process of law under the Fifth Amendment.") (citations omitted).

Here, the inevitable prejudice that the Defendants will suffer if the government is permitted to elicit evidence of Douglas (and Norman) Jemal's affluence and substantial personal expenditures will jeopardize their right to a fair trial.  This concern is even greater given the "lifestyle" evidence that the government has emphasized already in trial.  In its opening statement, the government gratuitously referred to the fact that Douglas Jemal owned a boat. Tr. 345.  Similarly, during the testimony of Sabra Quinn, the government spent several minutes highlighting the fact that Defendant Blake Esherick took an expensive family vacation to Florida.

-3-

Tr. 1387-94.  The Court should preclude the government from introducing additional class and

lifestyle evidence to prevent further prejudice to Defendants.

For similar reasons, the Court should exclude any evidence regarding the amounts

of money that Douglas Jemal paid himself from the Douglas Development corporate bank

accounts.  As the Court is aware, Douglas Development is a private corporation owned 100% by

Douglas Jemal.  The government does not allege that Douglas Jemal evaded his own personal

income taxes or committed any crimes related to the payment of funds from Douglas

Development to Douglas Jemal.  As the sole owner of the company, Douglas Jemal had the right

to obtain whatever funds he wanted from the corporate treasury (and for that matter to pay

whatever funds he deemed appropriate to his son, Norman Jemal, as a salary).  Douglas Jemal

borrowed money from Douglas Development at various times and loaned money to Douglas

Development at other times.  This evidence has nothing to do with this case.  Defendants cannot

conceive of any possible relevance of evidence indicating the amounts of money that Douglas

Jemal paid himself.  Accordingly, the Court should exclude this irrelevant evidence under Rule

401.

The government will likely argue that Douglas Jemal paid for certain items of

value to Mr. Lorusso, such as cowboy boots and a few meals, on his personal credit card and

paid for those credit card bills out of his personal accounts.  The Defendants have no objection to

the government presenting evidence about the specific credit card transactions related to

Mr. Lorusso and the specific personal financial transactions of Douglas Jemal that paid for the

credit card bills.  This evidence would be narrow and to the point.  However, the Court should

not permit the government to offer evidence regarding a multitude of Douglas Jemal's personal

financial transactions merely because a few isolated transactions may be relevant to the allegations in this case.

Finally, if the Court is inclined at all to consider admitting this evidence, Defendants respectfully urge the Court to defer decision on this issue until after the testimony of Michael Lorusso. Defendants anticipate that Mr. Lorusso's testimony regarding these purported cash payments will be so discredited by cross-examination as to be wholly incredible. If so, the balance of probative value versus unfair prejudice to the Defendants may well be tipped in Defendants' favor following Mr. Lorusso's testimony. In other words, the Court may well conclude that the potential prejudice to the Defendants from this improper lifestyle and class evidence outweighs its probative value because of the lack of credible evidence of any cash payments at all.

For these reasons, the Court should exclude any evidence of cash cashing by Douglas Jemal and payments from Douglas Development Corporation to Douglas Jemal.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

Michele A. Roberts (D.C. Bar #337998)
Jeffrey M. King (D.C. Bar #461644)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4306

-5-

Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C.  20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  September 22, 2006