UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. 05-359 (RMU) |
| | : | |
| DOUGLAS JEMAL ET AL. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL THE
GOVERNMENT TO COMPLY WITH ITS OBLIGATIONS
UNDER *BRADY, GIGLIO*, AND D.C. RULE OF PROFESSIONAL CONDUCT 3.8

The United States of America, through its attorney, the United States Attorney for the

District of Columbia, respectfully opposes defendants' motion to compel certain discovery. In

opposition thereto, the government submits:

INTRODUCTION

The first page and half of the defendants' pleading deserves little in the way of comment

but to note the following: the defendants maintain that Mr. Lorusso had corrupt relationships with

nearly every person and entity with which he was involved with the sole exception of the

defendants, notwithstanding the undisputed evidence that: 1) they gave him numerous things of

value, 2) Mr. Lorusso took numerous steps of enormous financial benefit to them, and,

3) Mr. Lorusso has actually pleaded guilty to having a corrupt relationship with them and thus has

backed up his assertion of a corrupt relationship by his willingness to subject himself to loss of

freedom for his conduct.

Second, the government urges the Court to review the Government's discovery letter of

July 20, 2006 (attached to the defendants' motion). The broad disclosures, far more than the law

requires, reflect the government's abundant good faith in meeting its due process obligations and,

in particular, meeting the defendants' requests. Subsequent to July 20, 2006, at the request of the

defendants, the government has provided additional financial information, including, for example, certain underlying transaction information relating to Lorusso's use of his government credit cards.[1]

Thus, the government, for the most part, does not object to the defendants' requests (or notes that no such documents exist that are responsive). Accordingly, the government does not respond to the defendants' legal contentions but to note that in agreeing to production of materials, the government does not concede that the materials are required to be disclosed as Brady materials – that is, they are not affirmatively "exculpatory" (indeed, for the most part, they have nothing to do with the defendants) – nor are they Giglio materials, that is, they do not provide material grounds for cross-examination of Lorusso.[2]

We respond to defendants' specific requests in turn.

---

[1]     Indeed, for the most part, the items sought by the defendants in the instant September 29, 2006 pleading would have been provided weeks prior to trial if the defendants had only requested them in a timely fashion. Instead, most of the items were requested of the government starting September 22 or the week starting Monday, September 25. Moreover, some of the requests in the instant September 29 pleading are burdensome, requiring government counsel to dig through files and obtain certain confirmations from other agencies – the sort of work that is nearly impossible while government counsel are in trial or preparing for the next day.

[2]     Furthermore, the defendants' repeated citation to "Rule 3.8" of the Bar Rules is inapposite, for this Bar Rule does not impose upon prosecutors disclosure obligations other than what the Constitution (Brady, Giglio) already requires. The District of Columbia Court of Appeals has made it clear that, consistent with the Commentary to D.C. Bar R. 3.8(e) (2006), this Rule "'is not intended either to restrict or to expand the obligations of prosecutors derived from the United States Constitution, federal or District of Columbia statutes, and court rules of procedure.'" Boyd v. United States, — A.2d — (D.C. Ct. App.), 2006 WL 2769550 * 16 at fn. 30 (Sept. 28, 2006).

GOVERNMENT'S RESPONSE TO DEFENDANTS' SPECIFIC REQUESTS

A.     "Missing Notes."  The government is unaware of any notes of interviews of Mr. Lorusso that have not been produced.  We wish to address one area in particular as to which the defendants believe additional notes may exist.  In connection with the July 10, 2006 discovery letter, government counsel had a conference call with Mr. Lorusso and his attorneys concerning some of his pre-2001 activities.  Government counsel drafted that portion of the discovery letter on the computer close in time to the time of the conversation.

B.     "Other Evidence."  The government, in its July 10, 2006, discovery letter, provided the defendants an abundance of information related to Mr. Lorusso and his activities over 7 years ago, well prior to his joining the D.C. Government.

One area that the defendants seek to examine Mr. Lorusso is his activities related to two investment programs in 1999 and 2000, prior to working for the DC Government.  One was called "Resource F," a company for which he performed primarily office work under the direction of Charles Dyer.  The other was through an individual, Dexter Wadsworth, in New York.  The government, in its July discovery letter, provided the defendants substantial information about these two programs.  Moreover, the defendants have obtained information related to Lorusso's activities from the emails that were disclosed.  In addition, although the Court ruled in March that the government was not required to turn over to the defendants the SEC depositions of Lorusso, the government did so anyway.  The government also disclosed to the defendants, and acknowledged in its opening statement to the jury, that in connection with at least one of these programs, Mr. Lorusso "structured" a cash investment by breaking it up into deposits in amounts less than $10,000.  Finally, prior to trial, the government provided the defendants the grand jury

-3-

testimony of one of the investors ("DK"), and an FBI 302 of another of the investors with Mr. Lorusso ("AZ"). There can be no credible contention that any aspect of this conduct of Mr. Lorusso has not been properly disclosed, let alone "suppressed." (Indeed, the defendants have known the actual identities of the investors for months and presumably have been interviewing each and every one.)[3] In short, they have no need for any additional materials on this topic.

The defendants, well-knowing of Mr. Lorusso's impending testimony, have requested additional information on these topics. To the government's recollection, certain aspects of their requests were first made in the defendants' September 29 pleading, to which the government now responds.

As to witnesses: As noted, the defendants already possess the essential facts associated with Mr. Lorusso's conduct, including the witnesses' names. Nonetheless, the government agrees to provide grand jury testimony of and FBI 302s associated with other individuals who invested because of or through Lorusso. To the extent possible, these materials will be provided on Monday, October 2, 2006.

As to materials in the possession of law enforcement authorities in Boston related to "Resource F": On Friday, September 29, 2006, the US Attorney's Office for the District of Columbia (USAO-DC), made a request to the US Attorney's Office for the Eastern District of Massachusetts (USAO-EDMA) for any additional materials related to Mr. Lorusso that were uncovered in its criminal investigation of Resource F that should be disclosed under the

---

[3]      See, United States v. Blakely, 986 F. Supp 600, 604 (D.D.C. 1997) (citing cases). The law is clear that the government has "no duty to turn over the actual transcript where the defendant knows of the witness's identity." United States v. Grossman, 843 F.2d 78, 85 (2d Cir. 1988).

government's due process obligations.  It is USAO-DC's understanding that the USAO-EDMA worked closely with the Boston offices of the SEC in its investigation of Resource F, and is knowledgeable of the contents of those files as well.  The USAO-DC has stressed to USAO-EDMA the urgency of this request.

As to materials related to "Dexter Wadsworth":  In response to the September 29, 2006 discovery pleading, the USAO-DC has contacted a senior attorney at the SEC to determine whether there has ever been a securities investigation of Dexter Wadsworth (and derivatively, of Mr. Lorusso) in connection with activities in the late 1999-2000 time frame.  Again, the USAO-DC has stressed the urgency of this request to the SEC.

C.    The language in the plea agreement concerning the "Full and Complete Accounting of Assets" relates to the need to disclose such assets for purposes of sentencing.  Mr. Lorusso has yet to be referred for a pre-sentence report.

D.    Plea Agreement Information.  In this case, as in many cases, the agreement as to the ultimate guidelines range is part and parcel of the resolution of all the terms, not just the guideline terms, embodied in the plea agreement–with the intent of achieving a fair level of incarceration in light of the facts known to the government at that time.  The defendants have cited no case that holds they may get at the internal thoughts of the various prosecutors – including the line prosecutor, layers of supervisors, up to the United States Attorney personally–who, on behalf of the United States, variously agreed that the ultimate guideline sentence that was the subject of the agreement preserved the interests of the United States.  Even with respect to the guideline terms standing alone, however, the agreement as to the ultimate guidelines range reflects the resolution of a host of disputed legal and factually complex

-5-

guidelines issues (including such practical issues as to what conduct is "readily provable" at the time of the plea), and not necessarily an attempt to agree on a specific guideline calculation. Finally, the only relevant issue for cross-examination is not what the government may have calculated as to various guidelines scenarios, but what the witness may have understood or believed to be his exposure if he went to trial and did not plead guilty. No grounds have been provided, and no grounds exist, for permitting the exploration into the intents of the prosecutors as to why and how the United States reached agreement on the guidelines calculations in this case.

E.    Lorusso's Financial Information.  The government has attempted to provide to the defendants Lorusso's financial information for 2001 through 2003, that is, the dates provided in the Indictment.  The government agrees to provide financial information prior to those dates as requested by the defendants.  In addition, the government has inquired of the D.C. Government whether there were any "expense account" type payments for Mr. Lorusso, in addition to the travel card and credit card.  The D.C. Government has stated that there were no additional expense accounts.

F.    "No Quid Pro Quo."  Mr. Lorusso cannot testify to the defendants' intent.  The most he can testify to is what he perceived the defendants' intent to be and what he understood the nature of his relationship with the defendants to be.  The government expects that Mr. Lorusso will testify that he understood and believed that each and every thing of value was given to him by the defendants with the intent to corruptly influence him in the performance of his official duties, that he understood and believed that the defendants were, in essence, taking care of him in exchange for his taking care of the defendants, and that he understood and believed that he had an agreement with the defendants whereby they would give him things of value and that he

-6-

would do official acts that would benefit them. We further expect that Mr. Lorusso would say, consistent with his sworn plea of guilty, that he conspired and agreed with the defendants to commit the offense of Bribery, that is, that the defendants would and did corruptly give him things of value to influence official acts, and that he corruptly received and accepted things of value from the defendants in return for being influenced in the performance of official acts. We further expect Mr. Lorusso to say, consistent with his sworn plea of guilty, that it was a goal that he and the defendants would unjustly enrich themselves by means of a scheme whereby Mr. Lorusso would take actions as a DC Government official of financial benefit to the defendants, in exchange for which the defendants would provide things of value to Mr. Lorusso and take other actions of value and benefit to him. These representations are consistent with the statements made by government counsel in open Court in March of this year.

Moreover, at its core, the information sought by the defendants by this discovery request is irrelevant. The law could not be more clear that:

[d]irect evidence of intent is unnecessary, however. To prove bribery under § 201, the government is not required to prove an expressed intention (or agreement) to engage in a quid pro quo. Such an intent may be established by circumstantial evidence. * * * Also, the government need not show that the defendant intended for his payments to be tied to specific official acts (or omissions). Bribery requires the intent to effect an exchange of money (or gifts) for specific official action (or inaction), but each payment need not be correlated with a specific official act. * * * Rather, it is sufficient to show that the payor intended for each payment to induce the official to adopt a specific course of action. * * * In other words, the intended

-7-

exchange in bribery can be "this for these" or "these for these," not just "this for

that."

United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998) (citations omitted). See also

United States v. Quinn, 359 F.3d 666, 673 (4th Cir. 2004) (citing Jennings).[4]

## CONCLUSION

As noted, the government is, for the most part, agreeing to give the defendants what they

seek. The government shall continue to press the USAO-MA and the SEC as to disclosable

materials that relate to Lorusso. The government requests that, in light of the representations in

this pleading, the defendants' Motion be denied, subject to their being able to renew their motion

depending on the government's compliance with its representations in this pleading.

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____

Mark H. Dubester, D.C. Bar No. 339655
Timothy G. Lynch, D.C. Bar No. 456506
Assistant United States Attorneys
555 4th Street, NW
Room 5233
Washington, D.C. 20530
(202) 353-4862

---

[4]    See also Modern Jury Instructions, Instruction No. 16-6 ("[R]emember that it is
the defendant's intent to influence the public official's actions * * * which is important.").

-8-

CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of October, 2006, I caused to be served by electronic filing a copy of the foregoing motion to:

Michele A. Roberts, Esquire
Jeffery M. King, Esquire
Counsel for Douglas Jemal
Akin Gump Strauss Hauer & Feld
LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

Mark H. Dubester
Assistant United States Attorney