UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
**UNITED STATES,**                  )
                                    )
    **v.**                        )   Crim. No.  05-0359-1, -2, -3 (RMU)
                                    )
**DOUGLAS JEMAL, et al.,**          )
                                    )
    **Defendants.**               )
_____)

### DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S
### MOTION TO PRESENT CUMULATIVE EVIDENCE REGARDING ADDISON ROAD

      The Court should deny the portion of the government's motion for miscellaneous relief that seeks permission to introduce more evidence regarding the rental rate at Addison Road, including: (a) the testimony of Saul Golbfarb, whom the Court previously excluded as cumulative, and (b) a letter of intent from another prospective tenant at Addison Road that was never accepted by Douglas Development without even calling a witness to permit cross-examination on this irrelevant, completely distinguishable failed lease attempt.

      Enough is enough.  The government has already call four witnesses (Mr. DiNardo, Ms. Thomas, Mr. Loesberg, and Mr. Haught) on this side-issue.  After hearing from three of these witnesses, the Court gave the government one more witness to make its point but denied further testimony on this issue as cumulative.  The Court should not permit any further testimony along these lines as cumulative.  The Court certainly should not permit the government to introduce documents from yet another prospective tenant without giving the Defendants an opportunity to cross-examine a witness to demonstrate that this unexecuted deal is completely irrelevant and distinguishable from the District of Columbia's impound lot lease.

At the outset, it is important to note that the Defendants are not charged in the Indictment with leasing the Addison Road property at an inflated rental rate. The Court has now heard from the government's chief cooperating witness, Mr. Lorusso. Defendants' respectfully submit that despite the government's best effort to mislead the jury into believing that the Defendants inflated the Addison Road lease rate with Mr. Lorusso's assistance, Mr. Lorusso in fact conceded on cross-examination that he proposed the $2.75 per square foot rental rate based on a comparable prior lease executed by the District's Metropolitan Police Department and the Defendants agreed.

On direct examination, the government asked the following questions:

```
2878:19 Q.   Did you look at any other properties in PG County that
     20 determined whether those other properties might be feasible for
     21 an impound lot?
     22 A.   No, I did not.
     23 Q.   And did you obtain an appraisal to determine whether this
     24 was a fair price?
     25 A.   No, not for the rental of the property.
2879: 1 Q.   Did you ask to see comparables?
      2 A.   No, I did not.
      3 Q.   And tell the jury your understanding of what comparables
      4 are?
      5 A.   Comparables, again, it's sometimes easier to do it in a
      6 residential real estate, would be properties that contain
      7 similar features to the subject property.
      8 Q.   Did you look at any other properties in Maryland or
      9 Virginia?
     10 A.   No, we did not.
                                * * *
2881:10 Q.   Did you have any basis whatsoever to know whether $2.75 a
     11 square foot for an unused parking spot around a dilapidated
     12 warehouse, whether that was a fair price?
     13 A.   No, I did not.
```

Tr. 2878-81. Thus, the government attempted to leave the impression through this questioning that the Defendants had selected the $2.75 per square foot rental rate out of thin air and duped Mr. Lorusso into signing the lease with inadequate knowledge of the market.

In fact, Mr. Lorusso conceded on cross-examination that he proposed the $2.75 per square foot rental rate based on a comparable lease -- the figure that Defendants agreed upon

without negotiating for a higher rental rate than what the District was already paying for a similar lease near Addison Road involving the parking of police vehicles. On cross-examination, Mr. Lorusso testified:

```
3307: 7  Q.   Well, that was my question.  Not with Douglas Development.
       8  You discussed the price to be paid for the lease with D.C.
       9  officials before Las Vegas.
      10  A.   We discussed a price and I created a matrix of values that
      11  started at $2 a foot and went to $3 a foot, because I knew that
      12  in Las Vegas I wouldn't have a laptop computer.  So I had this
      13  aid with me.  That's why I recollect that the first time I spoke
      14  to Douglas about it was in Las Vegas.
      15  Q.   Okay.  But there's no question, is there, that you had
      16  discussed price with D.C. public officials and you had created
      17  this matrix with varying costs.  True?
      18  A.   That's true.
      19  Q.   And one of the prices that you discussed with D.C. public
      20  officials was $2.75 per square foot, correct?
      21  A.   We discussed a range, because we didn't know what tenant
      22  fit-out or other things, so the range was between 2 and $3 a
      23  square foot.
      24  Q.   So it's not true, is it, you certainly didn't want to leave
      25  the impression that at the Bellagio bar you and someone from
3308: 1  Douglas Development just pulled the number 2.75 out of the air?
       2  You certainly didn't want to leave that impression with this
       3  jury, did you?
       4  A.   Through negotiation, Douglas and myself --
       5           THE COURT:  Give the short answer first, please.
       6           THE WITNESS:  I'm sorry.  No, I did not want to leave
       7  that impression.
       8  BY MR. WEINGARTEN:
       9  Q.   Because the number 2.75 doesn't come out of thin air.  It
      10  comes right from the lease that the Metropolitan Police had on
      11  New York Avenue, a short distance from Addison Road, where they
      12  park their cars, isn't that true, sir?
      13  A.   I believe that's accurate.
      14  Q.   So the number 2.75 is precisely what the Metropolitan
      15  Police Department was paying on New York Avenue, and you knew
      16  that, did you not?
      17  A.   I believe I knew that at the time.
      18  Q.   And that was discussed with D.C. officials before you got
      19  on the plane to go to Las Vegas.
      20  A.   That is correct.
                              * * *
3314:22  Q.   Did I understand you correctly that when you got to Las
      23  Vegas, you had negotiations with someone -- you certainly told
      24  the FBI with Blake, now you're telling the jury with Douglas --
      25  and you quickly got to a price, 2.75, correct?
3315: 1  A.   That's correct.
       2  Q.   The same price that the Metropolitan Police Department paid
       3  for space on New York Avenue a very short distance from Addison
       4  Road, correct?
       5  A.   I believe that's correct.
```

Tr. 3309-08, 3314-15.

In light of this undisputed testimony that the rental rate at Addison Road was derived from a highly analogous comparable lease previously executed by the District, Defendants submit that whatever rental rate a few private companies proposed to lease different portions of Addison Road for different uses than the District of Columbia is completely irrelevant. The Court would be well within its discretion to deny the government's motion pursuant to Federal Rules of Evidence 401 and 402.

In any event, the proposed testimony of Mr. Goldfarb is clearly cumulative. Pursuant to Federal Rule of Evidence 403, a trial court "enjoys broad discretion to reduce 'undue delay, waste of time, or needless presentation of cumulative evidence.'" United States v. North Am. Reporting, Inc., 740 F.2d 50, 54 n.5 (D.C. Cir. 1984) (quoting Fed. R. Evid. 403); see also United States v. Am. Tel. & Telegraph Co., 83 F.R.D. 323, 340 (D.D.C. 1979) ("The Federal Rules of Evidence grant substantial discretion to the Court with respect to the exclusion of needlessly repetitive testimony, whether written or oral.") (citing Fed. R. Evid. 403 & 611(a)). In the exercise of this discretion, courts have often curtailed or excluded witness testimony on the grounds that it would result in undue delay of the trial, expend valuable time and judicial resources, or merely repeat testimony or evidence already presented. See North Am. Reporting, 740 F.2d at 54 n.5 (affirming district court's exclusion of individual defendant's testimony in mail fraud case about specific instances of undercharging and the dollar amount thereof because "the prolonged enumeration of the numerous instances" of undercharging "would have created . . . undue delay" and "testimony regarding the actual dollar amount of the total alleged undercharges would have had no probative value"); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1194 (2d Cir. 1989) (affirming district court's exclusion of certain testimony and

documents "on the ground that their relevance, if any, was outweighed by their propensity for confusion and their cumulative nature"); United States v. Shelton, 736 F.2d 1397, 1409-10 (10th Cir. 1984) (affirming district court's reduction in number of vendor witnesses permitted to be called by defendant in mail fraud case from 78 to 5 because "the testimony of the other vendors would have been repetitious and cumulative"); United States v. Guardia, 955 F. Supp. 115, 118 (D.N.M. 1997) (excluding four government witnesses under Rule 403 because their testimony "add[s] little probative value to the testimony of the [other] witnesses but ha[s] the definite potential to confuse the jury and unnecessarily extend the trial").

The Court can also swiftly reject the government's claim that the cross-examination of Mr. Loesberg, in which the defense established that Mr. Loesberg was not personally involved in any of the negotiations with Douglas Development, somehow justifies permitting the government to call Mr. Goldfarb as a witness at this stage. If the government deemed his testimony important, it could have called him after it called Mr. Loesberg. Following Mr. Loesberg's testimony, the Court gave the government the opportunity to "[p]ick one more witness along these lines, whoever that may be, call them to the stand and that will be the end of it." Tr. 2448. The government chose to call Mr. Haught as its final witness on this topic rather than Mr. Goldfarb. Under these circumstances, the government has itself to blame for not being able to "complete the story" told by Mr. Loesberg and should not be granted leave to call Mr. Goldfarb when it declined to do so previously.

The government also mischaracterizes the import of Mr. Goldfarb's proposed testimony by claiming that it shows that the rate the District paid to lease Addison Road was inflated. Based on the Jencks material, Defendants expect that Mr. Goldfarb would testify that

the counter-proposal he received from Norman Jemal was contingent on the agreement of Mr. Goldfarb's client to vacate the premises on thirty (30) days notice.  Thus, it was not a long-term lease proposal like the impound lot lease.  In essence, it was a proposal to get some use out of the property that was otherwise sitting vacant while Douglas Development was waiting for a real tenant, like the District of Columbia, to come along and sign a long term lease on the property.  For all of these reasons, the Court should exclude the testimony of Mr. Goldfarb.

       The Court should also preclude the government from introducing Government Exhibit 247 -- another unexecuted lease proposal submitted by a private company to Douglas Development to rent Addison Road.  In addition to the reasons set forth above that justify the exclusion of this document, the document is also hearsay without a proper foundation laid that it is a business record of Aggregate & Dirt Solutions.

       Most importantly, however, the Court should not permit the government to introduce this document without calling a witness from Aggregate & Dirt Solutions to permit cross-examination on the circumstances surrounding the proposal and any related negotiations.  Admitting the document on its own without permitting the Defendants to cross-examine a witness on its contents would violate Defendants' Sixth Amendment right to confront the witnesses against them.  The solution to this problem is obvious:  exclude this irrelevant and cumulative evidence.  However, if the Court is inclined to permit it, the Court must require the government to call a witness from Aggregate & Dirt Solutions to permit cross-examination on the many differences between this unexecuted proposal and the lease signed by the District to rent a portion of Addison Road for use as an impound lot.

The Defendants also object to the admission of the two remaining search documents that the government seeks to admit without calling a witness -- GX 239 and DX 243. GX 239 is a handwritten thank you note from the Boot Barn. The government claims that the exhibit is necessary to corroborate Lorusso's testimony that Douglas Jemal shopped at the Boot Barn. The government has already introduced Douglas Jemal's credit card statement reflecting the purchase of the boots at the Boot Barn. The handwritten note is unnecessary, cumulative, and hearsay.

GX 243 appears to be a list of Douglas Development Corporation financings in 2002. The government cannot establish the accuracy of this document without a witness, nor can it establish that it is a proper business record. The government called several witnesses, like David Medding, who could have laid a proper foundation for this document if one existed. The Court should not permit the government to introduce this record without a proper witness to lay the foundation and demonstrate that it is a business record that falls within an exception to the hearsay rule.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

Michele A. Roberts (D.C. Bar #337998)
Jeffrey M. King (D.C. Bar #461644)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W., Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated: October 10, 2006