UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
UNITED STATES,                  )
                                )
        v.                      )        Crim. No.  05-359-1, -2, -3 (RMU)
                                )
DOUGLAS JEMAL, et al.,          )
                                )
            Defendants.         )
_____)


**DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL ON
THE PUBLIC CORRUPTION COUNTS (COUNTS ONE, TWO AND THREE)**

        Defendants Douglas Jemal, Norman D. Jemal, and Blake Esherick

("Defendants"), through counsel, hereby move this Court, pursuant to Federal Rule of Criminal

Procedure 29(a), for a judgment of acquittal on Counts One, Two and Three of the Indictment

(the "Public Corruption Counts") because the evidence is insufficient to sustain a conviction on

those counts.  Defendants respectfully request oral argument on this motion.  A proposed Order

is attached.

                            Respectfully submitted,

                            _____
                            Reid H. Weingarten (D.C. Bar #365893)
                            Brian M. Heberlig (D.C. Bar #455381)
                            Steptoe & Johnson LLP
                            1330 Connecticut Avenue, N.W.
                            Washington, D.C.  20036-1795
                             (202) 429-3000

                            Michele A. Roberts
                            Jeffrey M. King
                            Akin Gump Strauss Hauer & Feld LLP
                            1333 New Hampshire Avenue, N.W.
                            Washington, D.C.  20036
                            (202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal


Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal


Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  October 14, 2006

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **v.** | ) | **Crim. No.  05-359-1, -2, -3 (RMU)** |
| | ) | |
| **DOUGLAS JEMAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL ON
THE PUBLIC CORRUPTION COUNTS (COUNTS ONE, TWO AND THREE)**

The Court should enter a judgment of acquittal on Counts One, Two and Three of
the Indictment (the "Public Corruption Counts"), alleging conspiracy to commit bribery, bribery,
and honest services fraud because the government has failed to prove the necessary *quid pro quo*
required to sustain those charges.  Michael Lorusso, the government's chief cooperating witness,
testified that there was no nexus between anything of value that he received and any specific
official act that may have been related to the Defendants' business interests.  Instead, Lorusso
testified at length about his genuine friendship with the Defendants and their mutual exchange of
gifts.  Although Lorusso attempted to embellish an otherwise legitimate exchange of gifts based
on friendship with claims that the gifts also rewarded his close business relationship with
Defendants, even such motivations do not rise to the level of corrupt intent to influence official
acts required to sustain a conviction for bribery.  No reasonable jury could convict the
Defendants on the Public Corruption Counts based on the evidence established at trial.

## I.     BACKGROUND

Counts One and Two of the Indictment allege that the Defendants conspired to bribe a public official, in violation of 18 U.S.C. § 371 (Count One), and bribed a public official, in violation of 18 U.S.C. § 201(b)(1)(A) & (C) (Count Two).  Count Three of the Indictment alleges that the Defendants violated the mail fraud statute, 18 U.S.C. §§ 1341 and 1346, by engaging in a scheme to defraud to (a) obtain money from the District of Columbia by false pretenses, and (b) deprive the District of Columbia and its citizens of their right to the "honest services" of Michael Lorusso.  Indictment at 16 (¶ 2).[1]  The "honest services" portion of Count Three is based entirely on bribery.  See id. (¶ 3) (alleging that the purpose of the scheme to defraud was for the defendants to provide things of value to Lorusso to induce him to take official actions to benefit the Defendants).[2]  The factual allegations underlying these Public Corruption Counts are identical.  Compare Indictment at 5-10 (¶¶ 15-16) (identifying the things of value and official acts at issue in the conspiracy charge) with id. at 14-15 (alleging the same things of value and official acts in the bribery charge) and id. at 17 (¶ 4) (re-alleging paragraphs 15 and 16 of Count One as the sole factual basis for Count Three).

The Indictment does not allege that the Defendants gave any particular thing of value to Lorusso in exchange for any specific official action.  Rather, Count One alleges that between May 2001 and late-2002, the Defendants gave a series of things of value to Lorusso, see

---

[1] This motion applies only to the "honest services" prong of Count Three and seeks a judgment of acquittal on that aspect of the charge and/or an order striking that portion of the charge from the Indictment.  Defendants are separately filing a motion for judgment of acquittal on Count Three for failure to establish a proper mailing in furtherance of the alleged scheme to defraud.  That motion applies to Count Three in its entirety.

[2] In some limited instances, inapplicable here as discussed below, other Circuits have held that an "honest services" charge can also be based on a failure to disclose a conflict of interest resulting in personal gain.  United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998); United States v. Pantarella, 277 F.3d 678, 690 (3d Cir. 2002).

Indictment at 5-6 (¶ 15), and that Lorusso performed a series of official actions to benefit DDC. See id. at 6-8 (¶ 16). Similarly, Count Two alleges -- in a single count of bribery -- that during the same nineteen-month period, the Defendants gave eleven things of value to Lorusso, purportedly to influence Lorusso in the performance of five general categories of "actions in the nature of" certain official acts, as well as other unspecified "numerous routine actions involving the exercise of discretion . . . ." Indictment at 14-15. Count Two fails to allege any specific official acts that fall within these general categories.

The only government witness whose testimony had any bearing on whether the Defendants acted with the requisite corrupt intent to influence a public official in the performance of official acts was Michael Lorusso, the official whom the Defendants allegedly bribed in this case. Lorusso's testimony established conclusively that he had no discussions with the Defendants in which any *quid pro quo* was discussed. Lorusso further testified that there was no nexus or "one-to-one relationship" between any thing of value he received and any official act. Tr. 3077. Instead, Lorusso testified extensively about his "genuine friendship" with Blake Esherick, Tr. 3289, and confirmed that he engaged in a mutual exchange of gifts with the Defendants based on friendship. Tr. 3260-61. On the current record, no reasonable juror could conclude beyond a reasonable doubt that the Defendants corruptly intended to provide the things of value to Lorusso as part of a *quid pro quo* in order to influence Lorusso's official acts.

## II.    ARGUMENT

### A.    Legal Standard

Federal Rule of Criminal Procedure 29(a) provides in relevant part:

After the government closes its evidence or after the close of all
the evidence, the court on the defendant's motion must enter a

> judgment of acquittal of any offense for which the evidence is
> insufficient to sustain a conviction.

Fed. R. Crim. P. 29(a).  In considering a Rule 29 motion, the court must grant relief "when the evidence…is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime."  United States v. Payton, No. 81-1792, 1982 U.S. App. LEXIS 21154, at *8 (D.C. Cir. Mar. 9, 1982) (citing United States v. Staten, 581 F.2d 878, 882 (D.C. Cir. 1978) (citation omitted)).  While the evidence must be viewed in the light most favorable to the government, the Court is required to take a "hard look at the evidence and accord the government the benefit of only 'legitimate inferences.'"  United States v. Recognition Equip., Inc., 725 F. Supp. 587, 588 (D.D.C. 1989) (noting that the court should not "indulge in fanciful speculation or bizarre reconstruction of the evidence" when considering a Rule 29 motion).  "'The trial judge should not allow the case to go to the jury if the evidence is such as to permit the jury to merely conjecture or to speculate as to defendant's guilt.'" United States v. Morrow, No. 04-355 (CKK), 2005 U.S. Dist. LEXIS 11753, at *11 (D.D.C. June 13, 2005) (quoting United States v. Bethea, 442 F.2d 790, 792 (D.C. Cir. 1971)).

In resolving this motion, the Court should consider all evidence presented in the government's case-in-chief and on cross-examination of the government's witnesses.  United States v. Brodie, 403 F.3d 123, 133-34 (3d Cir. 2005).  Defendants contend that the Court should grant this motion immediately due to the lack of sufficient evidence to sustain a conviction. However, if the Court reserves decision on this motion under Rule 29(b), the Court must later resolve this motion solely on the basis of the evidence at the time the ruling was reserved without consideration of any evidence that may be presented in the defense case-in-chief.  Fed. R. Crim. P. 29(b); see also United States v. Wahl, 290 F.3d 370, 375 (D.C. Cir. 2002).

**B.** **The Government Has Failed To Prove Any *Quid Pro Quo* Required To Sustain A Conviction On The Public Corruption Counts**

The federal bribery statute provides in relevant part:

> Whoever– (1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official . . . with intent– (A) to influence any official act; or . . . (C) to induce such public official . . . to do or omit to do any act in violation of the lawful duty of such official . . . shall be . . . imprisoned for not more than fifteen years . . . .

18 U.S.C. § 201(b)(1)(A) & (C).

The Supreme Court has stated that this bribery statute requires "a *quid pro quo* -- a specific intent to give or receive something of value *in exchange* for an official act." United States v. Sun-Diamond Growers, 526 U.S. 398, 404 (1999). The Supreme Court's decision confirmed what the D.C. Circuit had long recognized, that "[t]he bribery section makes necessary an explicit *quid pro quo* which need not exist if only an illegal gratuity is involved; the briber is the mover or producer of the official act . . . ." United States v. Brewster, 506 F.2d 62, 72 (D.C. Cir. 1974). Indeed, following Sun-Diamond, the D.C. Circuit reiterated that the bribery statute requires the thing of value to be linked explicitly to a specific official action, stating that:

> bribery requires a *quid pro quo*, and accordingly can be seen as having a two-way nexus. That is, bribery typically involves an intent to affect the future actions of a public official through giving something of value, and receipt of that thing of value then motivates the official act.

United States v. Shaffer, 183 F.3d 833, 841 (D.C. Cir. 1999), vacated as moot by Presidential pardon, 240 F.3d 245 (D.C. Cir. 2001); see also United States v. Alfisi, 308 F.3d 144, 149 (2d Cir. 2002) ("bribery involves the giving of value to procure a specific official action from a public official.") (emphasis added).

In this case, the government has failed to prove the *quid pro quo* necessary to sustain a conviction on the Public Corruption Counts.[3]  The only witness who testified on this issue was Lorusso.  Near the conclusion of his direct testimony, the government asked Lorusso to describe in his own words the relationship between the official acts he performed related to Douglas Development and the things of value that he received from the Defendants.  Lorusso's response confirms that there was no *quid pro quo*.  According to Lorusso, "[t]here was no one-to-one relationship between an item of value and a specific lease or other thing.  In other words, there was no incentivized [sic] program.  No one said to me, when you sign this lease you will get this thing."  Tr. 3077-78.  Rather than attempt to establish any direct nexus between any specific thing of value and any specific official act, the government elicited in chronological fashion certain things of value that Lorusso received from the Defendants in particular months and certain official acts related to Douglas Development that Lorusso happened to perform in the same months.  See, e.g. Tr. 2929-30 (August 2001); 2953-54 (October 2001); 2970-71 (November 2001).  The lack of any nexus between the things of value and the official acts was obvious from the awkward manner in which the government elicited this evidence from Lorusso without ever asking him whether any particular thing of value was connected to any specific official act.

On cross-examination, Lorusso confirmed there was no *quid pro quo*:

Q.     Isn't it true that there was never, in all the time you dealt with Douglas Development, a specific *quid pro quo* asked or given

---

[3] The Court declined to dismiss the Indictment prior to trial for failure to <u>allege</u> the necessary *quid pro quo*, stating that "at least on its face, the indictment does allege that there is a connection between the bribes and Mr. Lorusso's actions."  Transcript of March 7, 2006 Hearing at 13.  For the reasons set forth herein, Defendants respectfully submit that the trial record establishes no such connection between any thing of value and the official acts at issue.

by you in connection with anything you received of value from them?

A.    <u>There was never any action that I took that was tied to a particular gift, no.</u>

Tr. 3350 (emphasis added).

On re-direct examination, the government gave Lorusso a final opportunity to describe in his own words the connection between the things of value and the official acts. Lorusso described the things of value as "rewarding me for both the tenor of what I was doing and the closeness of our relationship."  Tr. 3626.  When asked to explain further, Lorusso stated: "I mean that they were kind of thank-you gifts for providing the closeness and the monetary enhancement that my actions caused their company."  <u>Id.</u>[4]  Again, Lorusso failed to describe anything even remotely resembling a *quid pro quo* that would satisfy the bribery statute.  Based on this testimony, the Court should grant the Defendants a judgment of acquittal on the Public Corruption Counts.

Moreover, Lorusso confirmed that the mutual exchange of gifts with Blake Esherick and Douglas Jemal was based on friendship, not any specific *quid pro quo*.  Lorusso testified:  "I do consider myself friends with Blake Esherick, and we did give each other gifts." Tr. 3260.  Lorusso also testified that he consistently told the government that he exchanged gifts with the Defendants out of friendship.  Tr. 3260-61.[5]  Gifts motivated by friendship do not

_____

[4] Under no scenario could a "thank-you gift" be a bribe.  A reward or "thank-you gift" could conceivably be an illegal gratuity, in violation of 18 U.S.C. § 201(c)(1)(A), if it was connected to a particular official act.  <u>See</u> <u>Sun-Diamond</u>, 526 U.S. at 414 (to establish a violation of the gratuities statute, "the Government must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given.").  Here, however, Lorusso made clear that "[t]here was never any action that I took that was tied to a particular gift."  Tr. 3350.

[5] In a rare moment of candor, Lorusso confirmed that he knew that if he simply told the prosecutors that he exchanged things of value with the Defendants out of friendship, he would

violate the bribery statute.  See United States v. Frega, 179 F.3d 793, 807 (9th Cir. 1998) ("A gift

or favor bestowed on a [public official] solely out of friendship, to promote good will, or for

motive wholly unrelated to influence over official action does not violate the bribery statutes").

Lorusso provided other testimony that establishes that, at best, the gifts were part

of an effort to build a relationship between Lorusso and the Defendants rather than any specific

*quid pro quo*.  Lorusso testified on direct examination that he viewed the mutual exchange as

simply "building a relationship that would last outside or after my employment with the District

of Columbia."  Tr. 3077.  Indeed, Lorusso testified that he hoped that Douglas Jemal would

make recommendations that would help him find employment after the District of Columbia.

Tr. 3341.  On re-direct examination, Lorusso testified that the things of value were rewards or

"thank-you gifts" celebrating the "closeness of [their] relationship."  Tr. 3626.  This testimony is

similar to the evidence that the Supreme Court held insufficient to satisfy even the lesser

gratuities statute in Sun-Diamond.

At issue in Sun-Diamond was whether the illegal gratuities statute, 18 U.S.C.

§ 201(c), which prohibits giving something of value to a public official "for or because of any

official act performed or to be performed by such public official," prohibited the giving of

gratuities merely because of a public official's position or status without any showing of a nexus

between the thing of value and a specific official act.  526 U.S. at 399.  The Supreme Court held

that the statute did not prohibit such gifts, but rather required the government to provide a link

between the thing of value and "a specific 'official act' for or because of which it was given."

---

not receive a §5K letter because he would not be "cooperating" with the investigation.  Tr. 3349.
This testimony made clear that Lorusso embellished an otherwise legitimate exchange of gifts
based on friendship -- albeit not far enough to render the conduct within the scope of the bribery
statute -- to get leniency from the prosecutors.

Id. at 414.  In so ruling, the Court specifically rejected the government's position that the statute

prohibited:

- a gratuity provided to a public official "to build a reservoir of goodwill that might ultimately affect one or more of a multitude of unspecified acts, now and in the future,"

- "'any effort to buy favor or generalized goodwill from an official who either has been, is, or may at some unknown, unspecified later time, be *in a position to act* favorably to the giver's interests,'" or

- a gratuity that was "'motivated, at least in part, by the recipient's *capacity to exercise governmental power or influence* in the donor's favor' without necessarily . . . [being] connected to a particular official act."

Id. at 405-06 (holding that the government's interpretation "does not fit comfortably within the

statutory text"); see also United States v. Sun-Diamond, 138 F.3d 961, 967 (D.C. Cir. 1998)

("[W]e have refused to allow the official act requirement to be satisfied by some vague hope of

inducing warm feelings toward the donor. . . . [I]f Douglas furnished Espy with gifts merely to

win his generalized sympathy for Sun-Diamond, those gifts would not be illegal gratuities . . .

."); id. at 968 ("the terms of the statute require a finding that the gifts were motivated by more

than merely the giver's desire to ingratiate himself with the official generally, or to celebrate the

latter's status").

         If these examples were squarely rejected by the Supreme Court as insufficient to

violate the illegal gratuities statute, it follows that the similar "relationship building" exchange of

gifts described by Lorusso is necessarily insufficient to sustain a conviction on the bribery

charges alleged in the Public Corruption Counts.

**C.    The Bribery Statute Prohibits Only Payments That Influence Future Official Acts, Not Rewards For Past Performance**

The D.C. Circuit has long recognized that the bribery statute applies only to payments intended to influence future official acts.  To be covered by the bribery statute, the bribe payment must be "the mover or producer of the official act."  <u>Brewster</u>, 506 F.2d at 72.  In contrast, "[t]he gratuity section [], <u>unlike the bribery section</u> [], applies to past official acts as well as future ones."  <u>Id.</u> at 68 (emphasis added); <u>see also</u> <u>United States v. Sun-Diamond Growers</u>, 138 F.3d 961, 966 (D.C. Cir. 1998) (stating that the gratuity statute, "in contrast to bribery," applies to a payment "for a past government favor"), <u>aff'd</u>, 526 U.S. 398 (1999).  The D.C. Circuit confirmed this interpretation after the Supreme Court decided <u>Sun-Diamond</u>, stating:

> Bribery is entirely future-oriented, while gratuities can be either forward or backward looking.  In other words, whereas bribery involves the present giving, promise, or demand of something in return for some action in the future, an unlawful gratuity can [apply to past or future official acts].

<u>Shaffer</u>, 183 F.3d at 841.

Here, the government has failed to prove that any specific thing of value motivated or produced a single official act.  Lorusso himself testified that, to the contrary, the things of value were "thank-you gifts" that rewarded Lorusso for "the closeness of [their] relationship" and the general "monetary enhancement" that resulted from Lorusso's actions as a whole.  Tr. 3626.  By definition, "thank-you gifts" are provided after-the-fact and are incapable of motivating or influencing future official action.

In addition to Lorusso's testimony, the objective evidence has demonstrated that in some of the months that the government highlighted in its chronological fashion, the things of value came after the official acts.  For instance, in October 2001, the government elicited

- 10 -

evidence that Lorusso approved three Douglas Development invoices for payment on October 4, 2001, and that Lorusso purportedly received cash from Blake Esherick around October 7, 2001 and repairs to his Audi automobile on October 10, 2001.  See Tr. 2953-54.  Necessarily, the Audi repairs could not have induced Lorusso to approve the invoices that he already approved a week earlier.  Simply stated, without the concrete nexus contemplated by Sun-Diamond, mere temporal proximity between a thing of value and an official act is insufficient to sustain a conviction under the bribery statute.  The government has proven nothing more than temporal proximity.

Moreover, it bears noting that the Indictment alleges in each of the Public Corruption Counts a variety of things of value and official acts spanning approximately two years.  As alleged, many of the things of value come after the official acts.  For instance, the gift of a Rolex watch occurred on August 31, 2001, well after Lorusso signed the letter of intent to lease the impound lot at Addison Road on May 25, 2001.  Similarly, Lorusso received the cowboy boots in May 2002, well after the majority of the invoices at issue were approved in October 2001 or February 2002.  Indeed, it defies common sense to contend that Defendants intended to influence Lorusso to cause the D.C. government to lease an impound lot from Douglas Jemal in May 2001 by Blake Esherick's offer of a custom-made suit to Lorusso for his birthday in August 2002.  Tr. 3071.  Yet that "official act" and that "thing of value" are alleged in each of the Public Corruption Counts.

These alleged gifts that occurred several months after Lorusso performed the alleged official acts on behalf of the Defendants could not possibly have "motivate[d] the official act," Shaffer, 183 F.3d at 841, or been "the mover or producer of the official act."  Brewster, 506 F.2d at 72.  The Indictment is fatally flawed because it alleges, as bribery, that several payments

were intended to "influence" official acts or "induce" Lorusso to do or omit to do official acts

that <u>had already taken place several months earlier</u>.  The Court should enter a judgment of

acquittal because such payments do not constitute bribery.


   D.    **There Is No Evidence That Douglas And Norman Jemal Participated In Any
          Conspiracy With Michael Lorusso To Commit Bribery**

          Count One charges the Defendants with conspiring with Lorusso to commit the

offense of bribery.  On cross-examination, Lorusso specifically testified that the only conspiracy

in which he participated was the so-called "special projects fund" conspiracy with Blake

Esherick -- a completely implausible story that is a variance from the conspiracy charged in the

Indictment.  Lorusso's testimony made clear there was no criminal conspiracy involving Douglas

and Norman Jemal.

          On cross-examination, Lorusso testified:


          3350:15 Q.  There was never an agreement between you and anyone sitting
                16 in any of these tables that you would take any official action
                17 in return for anything you received from them?
                18 A.  I would say that that's inaccurate.
                19 Q.  You think there was an agreement.
                20 A.  Yes.  Certainly Blake and I had an agreement.
                21 Q.  You had an agreement with Blake -- you understand an
                22 agreement, there's a meeting of the minds?
                23 A.  Yes.
                24 Q.  I'm going to do something for you if you do something for
                25 me.
          3351: 1 A.  Yes.
                2 Q.  And what was the agreement with Blake?
                3 A.  I had an agreement with Blake that we would work together
                4 to help further my future by providing extra income and other
                5 things for me.
                6 Q.  Okay.  Why don't we talk about that.  That's the retirement
                7 fund, the special projects fund?
                8 A.  Special projects fund, yes.

Tr. 3350-51.

The circumstances surrounding this so-called "special projects fund" described by Lorusso demonstrate conclusively that there was no conspiracy involving Douglas and Norman Jemal.  In essence, Lorusso testified that he agreed with Blake Esherick to approve phony invoices prepared by Mr. Esherick on Douglas Development letterhead, and split with Mr. Esherick the proceeds of these bogus invoices paid with District money.  Tr. 2892-93.  The government attempted to lead Lorusso into testifying that this purported scheme was intended to help Mr. Esherick in his position at Douglas Development.  Tr. 2893.  However, Lorusso rejected that characterization, stating:  "I don't know that it was to help his position at Douglas Development.  I think it was to enhance his personal life."  Tr. 2894.

In fact, on cross-examination, Lorusso conceded that this so-called conspiracy was utterly inconsistent with the interests of Douglas Development, and therefore necessarily inconsistent with the interests of Douglas and Norman Jemal.  On cross-examination, Lorusso testified:

> 3352:12 Q.  All right.  Well, if that was true, Blake would be acting
>      13 utterly inconsistent, if it were true, with the interests of
>      14 Douglas Development, correct?
>      15 A.  That's correct.
>      16 Q.  He would be betraying Douglas?
>      17 A.  That's correct.
>      18 Q.  So it's your testimony that Blake Esherick was corruptly
>      19 throwing his lot in with you as opposed to staying consistent
>      20 with Douglas.
>      21 A.  I don't think that's wholly accurate.  I think the money
>      22 was not Douglas Development money, it was District money.  And
>      23 he was in, as you had previously stated, as dire financial needs
>      24 as I am.
>      25 Q.  Well, certainly, if Douglas Development's title was on a
> 3353: 1 phony invoice or voucher or something, he was putting Douglas
>       2 Development at great risk, correct?
>       3 A.  That's correct.
>       4 Q.  So if your story is true, Blake Esherick decided that he
>       5 was going do something utterly inconsistent with Douglas Jemal's
>       6 interest, wouldn't he?  If your story's true.

- 13 -

7  A.   That would require conjecture on my part as to what Blake's
8  intent was.

Tr. 3352-53.

Based on this testimony, no reasonable juror could conclude that Douglas and Norman Jemal entered into a conspiracy with Lorusso to commit the offense of bribery.  Even if believed, the so-called "special projects fund" conspiracy described by Lorusso was concealed from Douglas and Norman Jemal and fundamentally inconsistent with their interests. Accordingly, the Court should enter a judgment of acquittal on Count One as to Douglas and Norman Jemal.

E.    **The "Honest Services" Charge Cannot Be Sustained On A Conflict Of Interest Theory**

"Honest services" fraud by public officials may be committed in one of two circumstances:  "(1) bribery, where a legislator was paid for a particular decision or action, or (2) failure to disclose a conflict of interest, resulting in personal gain."  United States v. Woodward, 149 F.3d 46, 54 (1st Cir. 1998); see also United States v. Panarella, 277 F.3d 678, 690 (3d Cir. 2002) (same).  For the reasons set forth above, the evidence is insufficient to sustain a conviction on Count Three based on the bribery theory of honest services fraud due to the lack of any *quid pro quo*.  At most, the evidence establishes that the Defendants gave gifts to Lorusso to generate warm feelings and friendship from Lorusso -- conduct that has been deemed insufficient to violate the honest services statute.  See United States v. Potter, -- F.3d --, 2006 WL 2578382, at *6 (1st Cir. Sept. 8, 2006) ("We have held that favors, such as lunches, golf games, and sports tickets, may be modest enough and sufficiently disconnected from any inferable improper quid pro quo that a factfinder might conclude that only business friendship was at work, or at least nothing more than a warm welcome was being sought by the favor giver.")

- 14 -

This should end the Court's inquiry with respect to the "honest services" portion of Count Three because that charge alleges only a bribery theory. The Indictment simply does not allege that Lorusso failed to fulfill any purported duty to disclose a conflict of interest. However, even if the Court concludes this theory is properly raised by the allegations in the Indictment, the government has also failed to prove any facts sufficient to sustain a conviction under the conflict of interest theory of honest services fraud.

Other Circuits have recognized that an "honest services" charge can be based on the failure to disclose a conflict of interest in only a few limited circumstances -- none of which apply in this case. The U.S. Court of Appeals for the Third Circuit has addressed the circumstances in which an "honest services" charge can be based on the failure to disclose a conflict of interest, and held:

> [W]here a public official conceals a financial interest <u>in violation of state criminal law</u> and takes discretionary action in his official capacity that the official knows will directly benefit the concealed interest, the official has deprived the public of his honest services.

<u>Panarella</u>, 277 F.3d at 680 (emphasis added). In that case, an honest services conviction was upheld because the legislator to whom things of value were provided concealed the receipt of those gifts in violation of a Pennsylvania criminal statute that required public officials to file annual Statements of Financial Interest disclosing the receipt of things of value from individuals with official matters before the public official. <u>Id.</u> at 696.

In this case, by contrast, there is no evidence in the record that Lorusso violated any District of Columbia criminal statute that required him to disclose the receipt of things of value from the individuals or entities in question. Absent such evidence, an honest services charge based on the nondisclosure of a "conflict of interest" should not stand. <u>See</u> <u>Panarella</u>, 277 F.3d at 695 ("a public official commits honest services fraud if he takes discretionary action that

- 15 -

he knows directly benefits a financial interest that the official concealed in violation of state criminal law"); United States v. Margiotta, 688 F.2d 108, 143 (2d Cir. 1982) ("Where a statute, particularly a criminal statute, does not regulate specific behavior, enforcement of inchoate obligations should be by political rather than criminal sanctions.") (Winter, J., concurring in part and dissenting in part).  Given the lack of evidence that Lorusso violated a District of Columbia criminal statute requiring the disclosure of information regarding things of value he may have received from the Defendants, the Court should grant a judgment of acquittal on Count Three.

Furthermore, the government has presented no evidence that Defendants knew of any financial disclosure obligations of Lorusso or whether Lorusso failed to comply with those obligations.  Based on a similar failure of proof, a district court held that two defendants could not be held liable as co-conspirators for a Philadelphia city official's failure to report favors received from a bank where the defendants worked.  United States v. Holck, 398 F. Supp. 2d 338, 355 (E.D. Pa. 2005).  In that case, the court emphasized:

> The government had the obligation of proving [the defendants'] knowledge beyond a reasonable doubt, [and] cannot rely on a vicarious theory of responsibility under the well worn dictum that "ignorance of the law is no excuse" to satisfy its burden that [the defendants] had knowledge of [the official's] reporting obligation. Even if there had been some publicity about [the official's] unreported receipt of these loans, there is no assurance that it would have reached the eyes or ears of [the defendants].

Id.  Similarly, here, without any evidence that the Defendants had knowledge of Lorusso's purported disclosure obligations and any failure to comply with those obligations, the government has failed to prove that the Defendants committed honest services fraud under a conflict of interest theory.

In addition, the government has presented no evidence that the citizens of the District of Columbia were actually deprived of Lorusso's honest services as a result of his

- 16 -

purported failure to disclose a conflict of interest.  In order to constitute honest services fraud, an official's breach of a general fiduciary duty by nondisclosure must occur in tandem with some other conduct that actually results in depriving the public of the official's honest services.  See United States v. Sawyer, 85 F.3d 713, 725 (1st Cir. 1996) (honest services fraud conviction cannot stand "where the conduct does not actually deprive the public of its right to [the official's] honest services, and is not shown to intend that result"); United States v. Brumley, 116 F.3d 728, 734 (5th Cir. 1997) ("If the [public] employee renders all the services his position calls for, and if these and all other services rendered by him are just the services which would be rendered by totally faithful employee, and if the scheme does not contemplate otherwise, there has been no deprivation of honest services."); United States v. Bush, 522 F.2d 641, 648 (7th Cir. 1975) (only when the "failure to provide honest and faithful services is combined with [a public official's] material misrepresentations . . . and his active concealment that an illegal fraud occurs which is cognizable under § 1341.").  In other words, the government must prove harm to the public as a result of the alleged scheme to defraud.  Defendants respectfully submit that the government has proved no such harm here.  At best, the government established that Lorusso did things his job required him to do -- like approve invoices for payment and return phone calls -- and perhaps did them faster for the Defendants than others.  In the absence of any testimony or other evidence that the public was actually deprived of Lorusso's honest services, the government's conflict of interest theory fails.

          Moreover, even assuming that the government could prove that Lorusso's conduct amounted to honest services fraud under the conflict of interest theory, the government has not proven this charge as to the Defendants because the evidence presented at trial has not established that the Defendants had the specific intent to deprive the public of Lorusso's honest

services.  To prove honest services fraud as to a non-public official, "the government must prove that the target of the scheme is the deprivation of the official's honest services."  Sawyer, 85 F.3d at 725.  Thus, the government must prove that the Defendants knowingly and willfully participated in a scheme to deprive the public of Lorusso's honest services with the specific intent to achieve that result.

        Typically, the government seeks to establish a non-public official's specific intent in this respect through proof of steps taken by the defendant to conceal his relationship with the public official.  For instance, in Panarella, the defendant took numerous steps to conceal his relationship with the legislator, including directing third parties to make payments to the legislator on his behalf and asking a third party to lie to a reporter about the nature of the payments.  277 F.3d at 681.  Evidence of this type of conduct has been required by other courts considering the same issue.[6]  No such evidence has been presented here.  Instead, "[t]he absence of an attempt to actively conceal the conduct not only contributes to a finding that [the Defendants'] conduct did not constitute a § 1341 scheme to defraud, . . . [but] also tends to negate a finding that [the Defendants] entertained the requisite intent to defraud."  United States v. McNeive, 536 F.2d 1245, 1252 (8th Cir. 1976).

---

      [6] See, e.g., United States v. Martin, 228 F.3d 1, 18 (1st Cir. 2000) (government's substantial evidence that defendant willingly participated in and, in fact, sponsored, scheme to defraud employer of employee's honest services by, inter alia, encouraging employee to gather as much information about employer as possible prior to leaving the company, formed sufficient basis for aiding and abetting liability); United States v. Fernandez, 282 F.3d 500, 503-05 (7th Cir. 2002) (defendants submitted false paperwork and created shell company as part of bid-rigging scheme designed to deprive town of right to honest services of mayor and village architect); United States v. Potter, No. CR 03-081, 2005 WL 2367677, at *10 (D.R.I. Sept. 27, 2005) (reasonable jury could find that defendants intended to deceive the public based on evidence that they sought to conceal the true nature of payments to public official's law firm).

- 18 -

## III.     CONCLUSION

For the foregoing reasons, the Court should enter a judgment of acquittal on the

Public Corruption Counts (Counts One, Two and Three) because the evidence is insufficient to

sustain convictions on those charges.

Respectfully submitted,

_____

Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
 (202) 429-3000

Michele A. Roberts
Jeffrey M. King
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C.  20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

Paul Kemp
Carol Elder Bruce
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4400

Counsel for Blake Esherick

Dated:  October 14, 2006