UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES** ) | |
| ) | |
| v. ) | Crim. No. 05-359-1, -2, -3 (RMU) |
| ) | |
| **DOUGLAS JEMAL**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### DEFENDANTS' OBJECTION TO GOVERNMENT'S CLAIM OF RIGHT JURY INSTRUCTION IN LIGHT OF EVIDENCE AT TRIAL, OR, IN THE ALTERNATIVE, MOTION TO AMEND PROPOSED INSTRUCTION

The Court reserved ruling on the Government's request for a "claim of right" jury instruction until after it had heard the evidence. The Court has now indicated a preliminary decision to give a "claim of right" instruction. Defendants object to the Government's proposed instruction, both because the evidence demonstrated that Defendants' conduct did not fit within the "claim of right cases," and because the Government's proposed instruction is an incorrect statement of law. The Government's proposed instruction is almost identical to a district court instruction that the Second Circuit found to be reversible error in United States v. Rossomando, 144 F.3d 197 (2d Cir. 1998).

The "claim of right" cases cited by the Government principally involve situations where a defendant submitted a fraudulent invoice on one transaction, but argued that he was not guilty because he was owed the money from a different transaction, or cases where a defendant submitted a fraudulent claim because he knew that the recipient would disagree that he was entitled to the money. Neither situation applies here. Defendants have not introduced evidence to suggest that that they were owed money by Joe Cayre or the D.C. Government, and therefore

could submit allegedly false invoices to recover a pre-existing debt.  Rather, most starkly in the case of the MTD transaction, Defendants have argued that they made false representations on the MTD invoice believing that they were entitled to receive the real estate commission under the terms of the partnership agreement with Joe Cayre and the loan documents with Morgan, Stanley, and that any falsehoods were done to avoid Joe Cayre hassling Douglas Development over fees it was entitled to.  Defendants contend that the undisputed evidence establishes that any inaccuracies in the MTD invoice were not material, and were not done with fraudulent intent to deprive Cayre or Morgan Stanley of money.  The Government's proposed "claim of right" instruction might mislead a jury to convict even if the jury concluded that Defendants did not believe the MTD invoice was material, and even if the jury concluded that Defendants believed they were entitled to the commission billed by MTD.

I.     **THE EVIDENCE DOES NOT SUPPORT A CLAIM OF RIGHT INSTRUCTION.**

The Government's proposed "claim of right" instruction reads as follows:

> A "claim-of-right" to the money or property obtained or sought to be obtained by fraud is not a defense to mail fraud or wire fraud.  A defendant may not resort to fraud to obtain payment of a debt.
> Thus, even if a person or entity owes a defendant money, or a defendant is legally entitled to receive money from a person or entity, a defendant is not entitled to obtain that money by the commission of acts that constitute mail fraud or wire fraud; and if does so, he is guilty of those offenses regardless of any claim he had to the money.  In other words, a defendant is still guilty even if he honestly believes he was entitled to monies he obtained through false pretenses, promises, or representations.

Government's Proposed Instruction No. 4.10 (citations omitted).

This "claim of right" instruction did not come from any standard or pattern jury instructions, nor from any jury instruction treatise.  Instead, a footnote to the Government's requested instruction quoted at length from <u>United States v. Gole</u>, 158 F.3d 166, 168-69 (2d Cir.

1998), and cited several other "self-help" cases. Notably, the quote from Gole contains none of the language in the Government's proposed instruction.

The Government's proposed instruction dramatically overstates the holding in Gole; comparing Gole to other Second Circuit cases not cited by the Government illustrates the limits of the Government's argument. Defendant Gole was a retired New York City firefighter. He received disability payments from the New York City Fire Department Pension Fund ("the Fund"). The Fund calculated limits on outside income ("the Safeguard Amount") for disabled firefighters according to a complicated formula. The firefighters union disputed the way the Fund calculated the Safeguard Amount. Gole intentionally understated his outside income on forms submitted to the Fund. At trial, Gole admitted that he lied on the forms in order to keep his outside income under the Safeguard Amount, but claimed that he believed the Fund had improperly calculated the Safeguard Amount, and believed he was legally entitled to the benefits he collected. The trial judge instructed the jury that it was not a defense that Gole thought the Safeguard amount was improperly calculated. The Second Circuit found that instruction proper in the circumstances, and affirmed Gole's conviction.

By contrast, the Second Circuit reversed the conviction of another disabled firefighter in United States v. Rossomando, 144 F.3d 197 (2d Cir. 1998). Rossomando admitted that he knowingly understated his outside income, but contended that he had been in a hurry to complete the forms, and, "based on his mistaken understanding of the applicable Safeguard Limitation— allegedly obtained from speaking to union personnel and other Fire Department employees—he believed that his outside earnings did not even approach, much less exceed, the level at which the Pension Fund would be entitled to reimbursement." 144 F.3d at 198.

The trial judge gave a good faith instruction, but qualified it as follows:

> In considering whether or not the defendant acted in good faith, you are instructed that a belief by the defendant, if such a belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith. No amount of honest belief on the part of the defendant that the scheme would not ultimately result in a financial loss to the New York City Fire Department or its Pension Fund will excuse fraudulent actions or false representations by him to obtain money, provided, of course, that the government proves beyond a reasonable doubt that the defendant acted with the specific intent to defraud.

144 F.3d at 199.

The district court's instructions in Rossomando were almost identical to the Government's proposed claim of right instruction here. The Second Circuit reversed Rossomando's conviction, holding: "[w]e conclude that the Court's initial charge posed a genuine risk of confusing the jury into believing that it would be proper to convict Rossomando of mail fraud without finding that that he contemplated harm to the Pension Fund, see, e.g. United States v. Starr, 816 F.2d 94, 98 (2d Cir. 1987) ("Only a showing of intended harm will satisfy the element of fraudulent intent.") . . . ." 144 F.3d at 200-201.

As the Rossomando and Starr cases illustrate, knowingly submitting an inaccurate claim for payment is not enough, standing alone, for criminal liability under the mail and wire fraud statutes. The Government must also prove "that some actual harm or injury was contemplated by the schemer. " United States v. Reid, 533 F.2d 1255, 1264 & n.34 (D.C. Cir. 1976).

The additional cases cited by the Government are entirely consistent with this distinction. Indeed, another case cited by the Government, United States v. Vitillo, No. CR 03-555, 2004 WL 2496877 (E.D. Pa. Nov. 2, 2004), made the crucial point that a "claim of right" defense fails when it is just a "post hoc justification for the alleged misconduct." Id. at *6. Vitillo was a government contracting fraud case alleging padded hours. The Government filed a motion *in limine* seeking to exclude expert accounting testimony that Vitillo's companies were actually

entitled to more money than they were paid. The district court excluded such expert testimony offered as a post hoc "set-off," noting that such evidence was not a defense if the defendants knowingly falsified hours. Id. at *8. However, the district expressly admitted expert testimony that the companies' hourly billing system was riddled with mistakes, holding: "[t]he accountants' testimony is relevant to establish the fact that there were numerous mistakes made in the formulation of the bills submitted, and that Defendants lacked the specific intent to commit the violation of [18 U.S.C. section] 666." Id. at *9.

The Government's additional cases all fit the pattern of attempted post hoc "set-off" defenses, or frauds perpetrated to collect otherwise uncollectible debts, rather than invoices submitted to collect money that the defendant honestly believed should and would be paid, regardless of any inaccuracies in bills. See United States v. Casey, 951 F.2d 892 (8th Cir. 1991)(attempt to withdraw guilty plea to Medicaid fraud; "set-off" claim that doctor was owed money for Medicaid claims that he did not submit did not negate element of guilty plea that he committed fraud on bills he did submit); United States v. Martin, 798 F.2d 308 (8th Cir. 1986)("The evidence indicated that Martin believed that if he gave the check to Modern Grain Systems he would never get his commission. So he took the check and converted it to his own use by putting it in his bank account."); United States v. Miller, 725 F.2d 462 (8th Cir. 1984)(attempt to fraudulently collect pre-existing debt in separate transaction); United States v. Richman, 944 F.2d 323  (7th Cir. 1991)(inapplicable here, because case did not involve claim of right defense).

**II.    THE GOVERNMENT'S PROPOSED INSTRUCTION IS OBJECTIONABLE.**

The Government's proposed claim of right instruction erroneously reads the critical requirement of fraudulent intent out of the mail and wire fraud statutes. It is hornbook law that

"the critical element in a 'scheme to defraud' is fraudulent intent." <u>United States v. Reid</u>, 533 F.2d 1255, 1264 n.34 (D.C. Cir. 1976)(quoting <u>United States v. Regent Office Supply Co.</u>, 421 F.2d 1174, 1180 (2d Cir. 1970))(quotation marks omitted).  To establish fraudulent intent, the government must, "at a minimum, prove that defendants <u>contemplated</u> some actual harm or injury to the victims." <u>United States v. Starr</u>, 816 F.2d 94, 98 (2d Cir. 1987); <u>see also</u>, <u>Reid</u>, 533 F.2d at 1264 n.34 (government must show "that some actual harm or injury was contemplated by the schemer.")  The Government's claim of right instruction, and most egregiously its last sentence, eliminates this critical element of fraudulent intent by advising the jury that:

> In other words, a defendant is still guilty <u>even if he honestly believed</u> he was entitled to monies he obtained through false pretenses, promises, or representations.

This instruction wrongly tells the jury, "It doesn't matter what the defendants intended; it doesn't matter if they contemplated harm to Cayre or Morgan Stanley."  The law is exactly the opposite.

Instruction 4.10 also erroneously eliminates the good faith defense to mail and wire fraud.  The Government, the defense, and this Court are all in agreement that good faith is a complete defense to all charges in the indictment.  A defendant's good faith belief that he is entitled to receive the specific funds sought to be obtained is a valid defense to mail fraud, both with respect to a "desire or purpose to bring about some gain or benefit to oneself or some other person or by a desire or a purpose to cause some loss to some person or entity," 2A O'Malley, et al., <u>Fed. Jury Practice & Instr.</u> § 47.14, at 412, and with respect to the defendant's understanding of the materiality of any alleged misrepresentations.  Yet Instruction 4.10 advises the Jury that, "A 'claim of right' to the money or property obtained or sought to be obtained by fraud is not a defense to mail fraud or wire fraud . . ." and the defendant "is guilty of these offenses regardless of any claim he had to the money."  At a minimum, this language will confuse the jury as to

whether there is any good faith defense to wire fraud.  At worst, the last sentence of the instruction emphatically instructs that good faith <u>is not</u> a defense: "a defendant is still guilty <u>even if he honestly believed</u> he was entitled to monies he obtained through false pretenses, promises, or representations."

Defendants respectfully submit that giving this claim of right instruction would be reversible error because it eliminates a critical element of the crime of mail fraud and deprives the Defendants of the complete defense of good faith.  If the Court feels that it must give a claim of right instruction, Defendants request that the Court give the following instruction, which is a more accurate and neutral statement of the law:

> A defendant may not resort to fraud to collect a pre-existing debt.  Thus, even if a person or entity owes a defendant money, a defendant is not allowed to obtain that money in a separate transaction by the commission of acts that constitute mail fraud or wire fraud; and if does so, he is guilty of those offenses regardless of any claim he had to the pre-existing debt.  In other words, if a defendant believes that he is owed money from a company, he is not allowed to submit a fraudulent invoice to that company in an unconnected transaction in order to collect that pre-existing debt.  However, if a defendant knowingly submits an inaccurate or misleading invoice honestly believing that the inaccuracies are not material and that he would be entitled to receive the money even if the invoice was accurate, he is not guilty of wire or mail fraud.  Good faith is always a complete defense.

Defendants contend that even their proposed alternative instruction is not warranted by the evidence, and is unnecessarily confusing.  If the Government proposed this instruction, Defendants would object to it.  However, while preserving their objections to this alternative proposal, Defendants request that the Court mitigate the prejudice to them by giving this alternative claim of right instruction.

**CONCLUSION**

For all of the foregoing reasons, the Court should not give a claim of right instruction to the jury. In the alternative, and over Defendants' continuing objections, the Court should give the alternative claim of right instruction proposed by the Defendants.

Respectfully submitted,

_____
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000

Michele A. Roberts
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 887-4306

Christopher B. Mead
London & Mead
1225 19th Street, N.W.
Suite 320
Washington, D.C. 20036
(202) 331-3334

Counsel for Douglas Jemal

Stanley M. Brand
Ross Nabatoff
The Brand Law Group
923 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 662-9700

Counsel for Norman Jemal

        Paul Kemp
        Carol Elder Bruce
        Venable LLP
        575 7th Street, N.W.
        Washington, D.C.  20004
        (202) 344-4400

        Counsel for Blake Esherick

Dated:  October 17, 2006