UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. 05-359 (RMU) |
| | : | |
| DOUGLAS JEMAL ET AL. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE TESTIMONY SUGGESTING SEC DETERMINED [MICHAEL] LORUSSO HAD NOT BROKEN THE LAW, AND TO PROHIBIT SUCH ARGUMENT IN GOVERNMENT'S REBUTTAL.**

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendants' motion.

## BACKGROUND

Lead Counsel for Douglas Jemal, Reid H. Weingarten, Esquire, cross examined Michael Lorusso for nearly three days: on the afternoon of Wednesday, October 4, 2006; all day on Thursday, October 5, 2006; and all day on Friday, October 6, 2006. Lead Counsel for Blake Esherick, Paul F. Kemp, Esquire, cross examined Mr. Lorusso on the morning of Wednesday, October 11, 2006.[1] On the afternoon of Wednesday, October 11, 2006, Mr. Weingarten re-cross examined Mr. Lorusso.

In portions of the cross-examination that comprised a full seventy-four pages of trial transcript, see Tr. 3150-84, 3192-94, and 3205-43, defendants sought to tar Mr. Lorusso with collateral bad acts related to his dealings with Charles Dyer and Dexter Wadsworth—acts not specifically connected to his relationship with the defendants. Defendants also sought to suggest that the government had forgiven Mr. Lorusso for serious securities law violations in connection with his plea of guilty to conspiracy to commit bribery. See Tr. 3239-43.

---

[1] Counsel for Norman Jemal chose not to cross examine Mr. Lorusso. Tr. 3600.

On redirect examination, the government sought to provide the jury some context to understand the seventy-four pages of cross examination on Mr. Lorusso's collateral conduct. Thus, the government asked Mr. Lorusso if he had been sued civilly by the Securities and Exchange Commission; whether he had been fined by the SEC; and whether he had been barred from the securities business. Tr. 3600-03. Mr. Lorusso answered those questions in the negative, based on his personal knowledge. See id. The only objection to this testimony from defendants' trial counsel was to the form of the government's questions. See Tr. 3601.

The government also sought to provide the jury evidence of <u>Mr. Lorusso's</u> understanding of what, if any, role his conduct in connection with the securities issues played in his plea agreement in his criminal case. Thus, in the portion of the transcript defendants did <u>not</u> cite in their motion, the government asked the following questions:

"Q. And what is the date of the second [SEC] deposition?

"A. Friday, June 21, 2002.

"Q. Okay. Mr. Lorusso, when did you plead guilty * * *?

"A. I believe it was after that date. [ ] It appears to be October 6, 2004. [ ]

"Q. Okay. So you were last deposed in June 2002 and you pled guilty sometime after October 2004, is that fair to say?

"A. Yes, sir.

"Q. And you haven't heard anything from the SEC; is that correct?

"A. That is correct.

"Q. <u>To your knowledge</u>, when you entered into this plea agreement, did this have anything to do with whether the SEC decided to bring any action against you?

"A. No."

Tr. 3604-05 (emphasis added). Defendants' trial counsel raised no contemporaneous objections to this line of inquiry. See id. Nor did trial counsel ask Mr. Lorusso any questions on these issues during re-cross examination. See Tr. 3667-75.

On 1:37 a.m., on Friday, October 20, 2006, nearly ten days after Mr. Lorusso had left the witness stand, after both sides had rested, and after the government had completed its closing argument, one of Mr. Jemal's auxiliary attorneys filed the instant motion to strike the testimony of Mr. Lorusso on pages 3601 through 3603 of the transcript (but not pages 3604 through 3605). The motion contends, among other things, that Mr. Lorusso's testimony was hearsay and that the government was improperly vouching for his credibility before the SEC. The motion cites no case, treatise, or law review article justifying its timing, let alone any authority supporting the substantive relief it seeks.

## DISCUSSION

### I.  Defendants Have Waived Any Objections To Mr. Lorusso's Testimony.

Having waited nearly ten days to object, defense counsel's objection to the testimony of Mr. Lorusso is untimely and has been waived. See Fed. R. Evid. 103(a)(1). As stated in the leading evidence treatise,

> "An objection to the admission of evidence must be 'timely' * * *. An objection is 'timely' if it is made as soon as the opponent knows, or should know, that the objection is applicable. This will allow the trial court and the proponent of the evidence to respond to the objection * * *.
>
> "The requirement of a contemporaneous objection means that an objection must usually be made after a question has been asked but before an answer has been given, although this rule is not rigid. Flexibility is required because a question that is not objectionable may elicit an unresponsive, objectionable reply.

Moreover, sometimes a witness answers so rapidly that no objection can be interposed in time, or evidence previously admitted without objection becomes objectionable in light of later testimony.

"What is not proper is remaining silent when an objectionable question is asked in the hope that the answer will be favorable and, if it is not, raising the objection at that point. Gambling on the answer to an improper question generally constitutes waiver of the objection.

"A motion to strike will be considered timely if it is made as soon as the error is apparent."

McLaughlin et al., 1 Weinstein's Federal Evidence § 103.11[1] (2d ed. 2006).

Here, it is without question that defendants knew or should have known about their proffered basis for objecting to the redirect examination of Mr. Lorusso <u>at the time the questions were posed and answered</u>. Defendants had spent <u>hours</u> cross examining Mr. Lorusso on alleged securities law violations, and it was hardly difficult for the experienced trial counsel in this case to understand and predict that government counsel would seek to put those hours of cross examination in context by asking the questions it did. Defendants' trial counsel <u>did</u> object contemporaneously, but only to the form of the government's questions, not to their substance. Under Rule 103, defendants' objections have thus been waived.

Defendants' motion should also be rejected outright because it represents pure tactics. Had they objected contemporaneously, the Court would have had a variety of steps it could have taken to ameliorate any problems with the record. Now, having waited until the close of the government's case, defendants seek a tactical result—one that would draw extraordinary, negative attention to just one particular portion of the government's case, out of time and out of context.

Inasmuch as the defendants waited so long—not one second, one minute, one day, or one week, but nearly ten days, before raising their objections—they waived any such objections and their motion should be rejected without need for any further analysis. See, e.g., United States v. Rivera-Santiago, 872 F.2d 1073, 1085 (1st Cir. 1999) (affirming drug conspiracy and related convictions over claim that trial judge erred in admitting co-conspirator's statement on the ground that "[d]efense counsel's motion at the close of the evidence to strike the statement does not meet the requirement of [Rule 103] that there be a 'timely objection.'").

## II.    Mr. Lorusso's Testimony Was *Not* Hearsay.

Defendants' contention that Mr. Lorusso's redirect testimony was hearsay warrants only a brief response. A witness can speak from personal knowledge of what has or has not happened to him. When Mr. Lorusso testified that he had not been sued, fined, or barred from the securities business, he was testifying based on his personal knowledge—not on anything the SEC or its attorneys had told him. If the government had asked Mr. Lorusso whether the SEC's attorneys had said they were not going to bring any action against him, that would be a question calling for a hearsay answer. But the government did not pose any such question, and thus Mr. Lorusso's testimony that, to his knowledge, he had never faced any type of sanction from the SEC is something he can testify to without relying on hearsay. Certainly, defendants cited no case to the contrary.

### III. The Redirect Was A Fair Response.

A central theme of the defendants' cross examination—one explored over two separate days—was that Mr. Lorusso was a bad man who had engaged in sophisticated, fraudulent securities law violations; and that those serious violations had been forgiven by the United States when Mr. Lorusso entered into a plea agreement. Question after question, hour after hour, day after day were used to explore and exploit that theme.

Hence it was entirely fair and appropriate for the government to let the jury know that, for all that time spent on the subject on cross examination, there never had been any type of action brought against Mr. Lorusso by the SEC, and that the SEC's attorneys had not sought any further information from him (either through depositions or through document requests). If defendants are allowed to explore collateral bad acts at great length, the government should be allowed to put those acts in context; to show what, if anything, came of the depositions done by the SEC—particularly given that Mr. Lorusso was deposed by the SEC more than two years before he ever met with attorneys from the U.S. Attorney's Office, and thus there was plenty of time for the SEC to investigate and pursue Mr. Lorusso for his actions. The government's redirect simply constituted fair response.

Most importantly, if trial counsel for Mr. Jemal wished to further clarify any issues raised by the government's redirect questions, trial counsel could have done so in the time allotted for him on re-cross examination. Thus, not only did the defendants fail to raise timely objections under Rule 103, they had a remedy available at the time through re-cross examination that they

did not use—all of which is another way of saying that the defendants did not truly feel that there was anything objectionable about the redirect.[2]

It was also fair and appropriate—and, apparently, defendants agree on this point—for the government to elicit evidence about Mr. Lorusso's understanding as to the relationship, if any, between his plea agreement and any securities law violations. There was no such link, and it was fair and reasonable for the jury to know that, in reaching a plea agreement with Mr. Lorusso, the government had not forgiven him for any securities law violations.

Finally, defendants state that "this Court cannot allow an Assistant U.S. Attorney to vouch for the credibility of Lorusso's SEC testimony in this courthouse." Defs. Mot. at 7. Putting aside the heated rhetoric—a quality often seen in early morning work but which one usually hopes to see withdrawn upon it seeing the light of day—the government is not vouching for Lorusso's SEC testimony by asking him whether he knows of any adverse action taken against him by the SEC. Those are two, separate issues. Whether Mr. Lorusso was testifying truthfully in his SEC depositions was a subject defendants' trial counsel explored for hours. Whether Mr. Lorusso was ever sued, fined, or otherwise barred by the SEC is a different issue—one that was fair to explore given defendants' extensive treatment of this collateral issue.

---

[2] The defendants now contend that the SEC did not know the full extent of Mr. Lorusso's activities, and that the SEC's attorneys believed that Mr. Lorusso was lying. See Defs. Mot. at 3-4. Defendants apparently fail to see that those ideas are flatly inconsistent: if the SEC attorneys believed Mr. Lorusso had been lying, as defense counsel feels confident to state as if it were fact, why would the SEC not pursue further action against Mr. Lorusso? Why would they not seek more information from him, to uncover "the full scope of his * * * conduct"? See id. at 3.

## CONCLUSION

Defendants' motion should be denied.

                                        Respectfully submitted,

                                        JEFFREY A. TAYLOR
                                        UNITED STATES ATTORNEY

By:       /s/
                                        Mark H. Dubester, D.C. Bar No. 339655
                                        Timothy G. Lynch, D.C. Bar No. 456506
                                        Assistant United States Attorneys
                                        555 4th Street, NW
                                        Room 5233
                                        Washington, D.C. 20530
                                        (202) 353-4862

CERTIFICATE OF SERVICE

I hereby certify that, on this 22nd day of October, 2006, I caused to be served by electronic filing a copy of the foregoing opposition to:

Michele A. Roberts, Esquire
Jeffery M. King, Esquire
Counsel for Douglas Jemal
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036

Paul F. Kemp, Esquire
Counsel for Blake C. Esherick
Venable LLP
One Church Street, Fifth Floor
Rockville, MD 20850

Reid H. Weingarten, Esquire
Erik L. Kitchen, Esquire
Brian M. Heberlig, Esquire
Counsel for Douglas Jemal
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

Carol Elder Bruce, Esquire
Lawrence B. Bernard, Esquire
Counsel for Blake C. Esherick
Venable LLP
575 Seventh Street, NW
Washington, D.C. 20004

Christopher B. Mead, Esquire
Counsel for Douglas Jemal
London & Mead
1225 19th Street, NW, Suite 320
Washington, D.C. 20036

Stanley McK. Brand, Esquire
Ross A. Nabatoff, Esquire
Counsel for Norman D. Jemal
Brand Law Group
923 15th Street, NW
Washington, D.C. 20005

_____
Mark H. Dubester
Assistant United States Attorney