UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on September 30, 2004

**FILED**

OCT 2 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Crim. No. 05-0359 |
| v. | : | |
| | : | GJO |
| DOUGLAS JEMAL, | : | |
| NORMAN D. JEMAL, | : | |
| BLAKE ESHERICK, | : | Charges: |
| | : | |
| Defendants. | : | 18 U.S.C. § 371 (Conspiracy) |
| | : | |
| | : | 18 U.S.C. § 201 (Bribery) |
| | : | |
| | : | 18 U.S.C. §§ 1341, 1346 (Mail Fraud |
| | : | and Honest Services Fraud) |
| | : | |
| | : | 18 U.S.C. § 1343 (Wire Fraud) |
| | : | |
| | : | 18 U.S.C. §2 (Aiding and Abetting |
| | : | and Causing an Act to be Done) |
| | : | |
| | : | 26 U.S.C. § 7201 (Tax Evasion) |

## Re-Typed INDICTMENT

## COUNT ONE
(Conspiracy)

### I. INTRODUCTION

#### A. The Parties

At all times material to this Count:

1.     Defendant DOUGLAS JEMAL was owner and President of Douglas

Development Corporation (Douglas Development) with offices at 702 H Street, NW,

-2-

Washington, D.C. Defendant DOUGLAS JEMAL, by himself and with others, owned numerous parcels of real estate in the District of Columbia metropolitan area.

2.    Douglas Development managed real estate owned by defendant DOUGLAS JEMAL. Douglas Development leased properties owned by Douglas Jemal, collected rents, maintained such properties, supervised and managed development of the properties, and performed other property-management functions.

3.    Defendant NORMAN D. JEMAL was defendant DOUGLAS JEMAL's son and an employee of Douglas Development. Among defendant NORMAN D. JEMAL's responsibilities was that of leasing properties managed by Douglas Development.

4.    Defendant BLAKE C. ESHERICK was an employee of Douglas Development. Among defendant BLAKE C. ESHERICK's responsibilities was that of leasing properties managed by Douglas Development. Defendant ESHERICK's responsibilities included finding tenants for defendant DOUGLAS JEMAL's properties at 4800 Addison Road, Capitol Heights, Maryland, and 77 P Street, NE, Washington, D.C., further described in paragraphs 5 and 6.

5.    "Jemal's Fairfield Farms, LLC" was an entity owned 80% by defendant DOUGLAS JEMAL and 20% by defendant NORMAN D. JEMAL. Jemal's Fairfield Farms, LLC, owned a property at 4800 Addison Road, Capitol Heights, Maryland, which it purchased in 1999 for approximately $1.5 million. The property contained a warehouse and surrounding land, a portion of which was paved and useable as a parking lot.

6.    "Cayre Jemal's Gateway, LLC," also known as "Cayre Jemal's Peoples, LLC," was an entity owned 50% by defendant DOUGLAS JEMAL and 50% by an entity controlled by another individual. This individual will be hereafter referred to as JEMAL's partner. Cayre

-3-

Jemal's Gateway owned the building and property at 77 P Street, NE, Washington, D.C. (77 P Street), which it purchased in 1998 for approximately $5 million. In substance, JEMAL and his partner were each 50% owners of 77 P Street.

7.      Michael A. Lorusso was, from approximately November, 2000, through January, 2003, an employee of the District of Columbia Government (DC Government), holding the position of Deputy Director, Office of Property Management (OPM). Among his duties was arranging for the leasing of office and other space for use by agencies of the DC Government and dealing with landlords or representatives of landlords on matters related to the DC Government's leasing of space.

### B.   The Status of 77 P Street in 2001

8.      In or about 1998, defendant DOUGLAS JEMAL borrowed money from his partner to purchase JEMAL's share of Cayre Jemal's Gateway, and on other occasions borrowed money from his partner for other purposes. As of 2001, JEMAL owed his partner approximately $19 million.

9.      In 1998, 1999 and 2000, Cayre Jemal's Gateway borrowed monies from various lenders to develop the property, including taking out a "construction loan" of approximately $39 million.

10.     Starting in 1999, defendant DOUGLAS JEMAL, through Douglas Development, sought to obtain tenants for 77 P Street. It was the intent of defendant DOUGLAS JEMAL that if and when tenants would sign leases for space in 77 P Street, defendant JEMAL would be able to obtain a new loan secured by the property and use the loan proceeds to pay off the outstanding construction loan, pay off loans to his partner, and have a source of cash for personal purposes.

-4-

11.    As of April 2001, no tenants had signed leases to occupy space at 77 P Street.

### C.  The Status of 4800 Addison Road in 2001

12.    As of May 2001, Douglas Development, on behalf of Jemal's Fairfield Farms,

was making loan payments of approximately $15,000 per month as repayment for the loan to

purchase 4800 Addison Road. This amount was in excess of the rental income. No tenant was at

that time paying rent to use the paved lot. It was the intent of defendant DOUGLAS JEMAL that

if and when tenants would sign leases for space at 4800 Addison Road, defendant JEMAL would

obtain new loans secured by the property and obtain cash for personal and business purposes.

### II.  THE CONSPIRACY

13.    From in or about January 2001 through April 15, 2004, in the District of

Columbia and elsewhere, defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE

C. ESHERICK did willfully, unlawfully and knowingly combine, conspire, confederate and

agree together with each other to commit the offense of Bribery of a Public Official, that is, for

defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK to corruptly

give, offer and promise Michael A. Lorusso things of value to influence official acts of Michael

A. Lorusso and to induce Michael A. Lorusso to do and to omit to do acts in violation of Michael

A. Lorusso's official duties, in violation of Title 18, United States Code, Sections 201(b)(1)(A)

& (C) (Bribery).

### III.  GOAL OF THE CONSPIRACY

14.    It was a goal of the conspiracy that the defendants DOUGLAS JEMAL,

NORMAN D. JEMAL and BLAKE C. ESHERICK, personally and through Douglas

Development, would enrich and reward themselves, each other, and entities under their control,

-5-

by committing criminal offenses against governmental entities, and to conceal the conspiracy and its objects and the acts undertaken in furtherance of it.

### IV.  MANNERS AND MEANS

To further the objects and goals of the conspiracy, defendants and others known and unknown to the grand jury would and did use the following manners and means:

15.    On numerous dates from May 2001 through late 2002, defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK, personally and through Douglas Development, took a variety of actions to provide things of value to Michael A. Lorusso, including:

      a.    In or about May 2001, inviting Michael A. Lorusso to accompany them on a trip to Las Vegas, Nevada, and paying for his hotel accommodations at the Bellagio Hotel;

      b.    In or about July or August 2001, giving Michael A. Lorusso cash;

      c.    In or about August 2001, giving Michael A. Lorusso a Rolex brand men's wrist watch;

      d.    In or about October 2001, giving Michael A. Lorusso cash, a portion of which was divided between Lorusso and defendant BLAKE C. ESHERICK;

      e.    In or about October 2001, paying for over $1,000 in repairs for Michael A. Lorusso's personal automobile;

      f.    In or about February 2002, offering to take Michael A. Lorusso on a trip to Florida and purchasing airline tickets for Michael A. Lorusso for this trip;

-6-

g.     In or about May 2002, providing airfare from BWI Airport to Las

Vegas, Nevada, and providing hotel accommodations and various meals for

Michael A. Lorusso in Las Vegas, in connection with a trip by Douglas

Development employees to Las Vegas,

h.     In or about May, 2002, while in Las Vegas, Nevada with

Michael A. Lorusso,  purchasing two pairs of cowboy boots for him at a cost of

over $1,000;

I.     On several dates in 2001 and 2002, providing limousine service for

Michael A. Lorusso for local transportation in the District of Columbia area;

j.     On several dates in 2001 and 2002, providing tickets and making

tickets available for Washington Wizards and Washington Capitals games to

Michael A. Lorusso at Douglas Development's private box at the MCI Center;

k.     Providing other items of value not specified above.

16.     Said actions were made with the intent of influencing Michael A. Lorusso to use

his official position to benefit Douglas Development and defendant DOUGLAS JEMAL, and to

obtain Lorusso's services on an "as needed" basis, so that when the opportunity presented itself

Lorusso would take action on Douglas Development's and defendant DOUGLAS JEMAL'S

behalf, said actions by Lorusso consisting of the following, among others:

a.     Causing the DC Government to lease 4800 Addison Road for use

as a vehicle impoundment lot at a cost of approximately $998,000 per year;

b.     Attempting to cause the DC Government to purchase 4800

Addison Road for approximately $12.5 million, even after an appraiser informed

-7-

Lorusso that the fair market value was substantially less than that amount;

      c.      Causing the DC Government to enter into leases of a value in excess of $100 million as a tenant in 77 P Street over the approximate ten-year term of the leases and signing lease-related documents on behalf of the DC Government and various of its agencies;

      d.      Causing the DC Government to make payments to Douglas Development in response to a variety of invoices, including invoices which were fraudulent, excessive, duplicative, irregular and otherwise unsupported, namely:

      i.      Undated, unnumbered and unsigned invoice, submitted approximately in or about July 2001, for $38,000 for "D.O.E.S. Relocation Expenses";

      ii      August 8, 2001 invoice for $99,000 for "additional construction management services";

      iii.      September 26, 2001 invoice for $66,000 for "77 P Street, NW, New Economy, Reimbursement for Telco Room Buildout";

      iv.      September 27, 2001 invoice for $100,000 for "Build Out Reimbursement";

      v.      September 28, 2001 invoice for $863,299.28 for "Reimbursement for Tenant Construction [,] 77 P Street, NW, New Economy";

      vi.      February 2002 invoice in the amount of approximately $261,000 for construction at 4800 Addison Road;

      e.      Using DC Government funds under the control of a third party to

-8-

pay over $377,000 of financial obligations of Douglas Development related to

tenant improvements at 77 P Street, thereby saving Douglas Development that

same amount; and,

      f.      Otherwise taking steps of benefit to Douglas Development in

connection with numerous routine issues involving and relating to the DC

Government's leasing of space through Douglas Development.

    17.    Defendant BLAKE C. ESHERICK was the Douglas Development employee who

dealt primarily with Michael A. Lorusso on leasing matters on behalf of Douglas Development

and personally provided Lorusso several items mentioned in paragraph 15 above, such as

extending invitations to Las Vegas, providing Lorusso the Rolex watch and providing Lorusso

cash.

    18    Defendants DOUGLAS JEMAL and NORMAN D. JEMAL obtained the services

of BLAKE C. ESHERICK, including his commission of dishonest acts on their behalf as

described above, and obtained the personal loyalty of defendant BLAKE C. ESHERICK, by

rewarding and compensating ESHERICK, and ESHERICK knowingly received such

compensation, in forms which: a) would not be and were not reported to the Internal Revenue

Service; b) would be falsely and deceptively recorded and difficult to detect as income to

ESHERICK in the books and records of Douglas Development; and c) could be characterized as

loans, innocent accounting decisions or accounting mistakes of others, rather than culpable and

concerted attempts by defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C.

ESHERICK to evade  ESHERICK's income tax obligations.  In particular, the defendants

DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK caused ESHERICK to

-9-

be compensated in the following ways:

    a.    By causing payments to be made directly from Douglas

Development to defendant BLAKE C. ESHERICK's ex-wife for the purposes of

paying ESHERICK's personal financial obligations;

    b.    By causing numerous payments to be made directly to defendant

BLAKE C. ESHERICK, apart from the standard Douglas Development payroll

checks;

    c.    By falsely recording numerous checks payable to defendant

BLAKE. C. ESHERICK in Douglas Development's books as loans or advances,

even though there was no written loan agreement between Douglas Development

and ESHERICK, there were few if any repayments, and there was no interest ever

charged to ESHERICK in the books of Douglas Development or paid by

ESHERICK to Douglas Development;

    d.    By causing payments to be made for vehicles owned personally by

defendant BLAKE C. ESHERICK;

    e.    By providing defendant BLAKE C. ESHERICK housing

accommodations  in a Bethesda, Maryland house jointly owned by defendants

DOUGLAS JEMAL and NORMAN D. JEMAL and by having Douglas

Development pay for utilities at this house and house-related expenses;

    f.    By having defendant DOUGLAS JEMAL purchase a residential

property selected by defendant BLAKE C. ESHERICK in the District of

Columbia in June of 2003 for $825,000, by making payments on the $625,000

-10-

mortgage loan and making payments for certain renovations and repairs, and by

permitting ESHERICK to reside in that residence rent-free; and

g.    By reporting to the Internal Revenue Service that defendant

BLAKE C. ESHERICK's gross income in each of the calendar years 2001, 2002

and 2003 was $70,200.

<u>OVERT ACTS</u>

In furtherance of the above-described conspiracy and to carry out the objectives thereof,

the defendants carried out the following acts:

1.    In or about a date in early May 2001, defendant BLAKE C. ESHERICK

invited Michael A. Lorusso to go to Las Vegas with himself and others from Douglas

Development.

2.    On or about a day in or about mid-May 2001, a member of the conspiracy

used, or caused defendant NORMAN D. JEMAL's American Express credit card to be

used, to pay for Michael A. Lorusso's room at the Bellagio Hotel in Las Vegas.

3.    On or about July 9, 2001, defendant NORMAN D. JEMAL caused checks

to be prepared, payable to American Express, drawn on a Douglas Development and a

personal bank account, to pay for the American Express bill containing the Bellagio Hotel

charges, described above. .

4.    In or about July or August 2001, the precise date being unknown,

defendant BLAKE C. ESHERICK gave Michael A. Lorusso cash.

5.    On or about August 28, 2001, a member of the conspiracy, the precise

identity being unknown, paid or caused to be paid for a Rolex watch by charging the

-11-

purchase price of the watch to defendant NORMAN D. JEMAL's American Express credit card.

6.    On or about August 28, 2001, defendant BLAKE C. ESHERICK gave Michael A. Lorusso a Rolex brand wrist watch.

7.    On or about a date in late August 2001 or early September 2001, defendant BLAKE C. ESHERICK instructed a Douglas Development employee to send the Rolex brand wrist watch back to the jewelry store so that the watch's wristband could be enlarged.

8.    On or about a date close but prior to October 7, 2001, defendant BLAKE C. ESHERICK gave Michael A. Lorusso cash.

9.    On or about between October 10, 2001 and October 15, 2001, defendant BLAKE C. ESHERICK approved the payment by Douglas Development to American Express of $70 to pay for the wrist band repairs on the Rolex wrist watch.

10.    On or about October 10, 2001, a member of the conspiracy, the precise identity being unknown, caused a Douglas Development employee to pick up Michael A. Lorusso's vehicle for purposes of driving it to an automobile repair establishment in Virginia and having it repaired.

11.    On or about October 15, 2001, defendant NORMAN D. JEMAL caused to be prepared and signed check 2321, drawn on his own bank account, in the amount of $30,158.01, payable to American Express, as payment for the American Express bill containing the charges for the Rolex watch.

12.    On or about several dates in 2001 and 2002, members of the conspiracy

-12-

caused tickets to be provided to Michael A. Lorusso for various events at the MCI Center as follows:

        a.      December 15, 2001 (Basketball - Washington Wizards vs. Miami Heat);

        b.      February 7, 2002 (Basketball - Washington Wizards vs. Sacramento Kings); and

        c.      December 26, 2001 (Hockey - Washington Capitals vs. Philadelphia Flyers).

13.     On or about February 8, 2002, a member of the conspiracy caused an airline ticket to be purchased for Michael A. Lorusso for air travel from Baltimore, Maryland to Fort Lauderdale, Florida, said ticket being charged to NORMAN D. JEMAL's American Express credit card.

14.     On or about February 22, 2002, a member of the conspiracy, the precise identity of whom is unknown, caused an airline ticket to be purchased for Michael A. Lorusso for air travel from Baltimore, Maryland, to Las Vegas, Nevada, said ticket being charged to NORMAN D. JEMAL's American Express credit card.

15.     Over the weekend from on or about May 17, 2002, through on or about May 21, 2002, members of the conspiracy paid for meals and hotel accommodations for Michael A. Lorusso in Nevada.

-13-

16.     On or about May 21, 2002, defendant DOUGLAS JEMAL purchased two

pairs of cowboy boots for Michael A. Lorusso, at a total cost in excess of $1,000.

(Conspiracy, in violation of Title 18, United States Code,
Section 371)

## COUNT TWO
(Bribery)

From between in or about May 2001 and December 2002, in the District of Columbia and

elsewhere, defendants DOUGLAS JEMAL, NORMAN D. JEMAL and BLAKE C. ESHERICK,

as principals, aiders and abetters and coconspirators, did corruptly, give, offer and promise

Michael A. Lorusso, a public official of the District of Columbia, things of value, as set forth in

the following table:

|    | DATE | THING OF VALUE |
|----|------|----------------|
| a. | In or about May 2001 | Hotel accommodations at the Bellagio Hotel, Las Vegas, Nevada; |
| b. | In or about August 2001 | Cash; |
| c. | In or about late August 2001 | Rolex men's wrist watch; |
| d. | In or about September or October 2001 | Cash; |
| e. | In or about October 2001 | Repairs to Lorusso's Audi automobile; |
| f. | In or about February 2002 | Trip to Florida; |
| g. | In or about May 2002 | Air travel, hotels, and several meals in Las Vegas; |
| h. | In or about May 2002 | Cowboy boots; |

-14-

|  | DATE | THING OF VALUE |
|---|---|---|
| i. | Numerous dates in 2001 and 2002 | Meals and entertainment, specifically including meals at the Capital Grille, Zola's and other District of Columbia restaurants, and tickets to events at the MCI Center; |
| j. | Various unknown dates | Use of Douglas Development's limousine service for local travel in the District of Columbia area; |
| k. | Unknown date in 2002 | Offer of a custom-made suit; |

to influence official acts of Michael A. Lorusso and to induce Michael A. Lorusso to do and to

omit to do acts in violation of Michael A. Lorusso's official duties, so that when the opportunity

presented itself, Lorusso would take actions on defendant DOUGLAS JEMAL's and Douglas

Development's behalf, to include:

    i)      actions in the nature of causing the DC Government to enter into leases of

            property owned in whole or in part by defendant DOUGLAS JEMAL;

    ii)     actions in the nature of causing the DC Government to attempt to purchase

            property owned by defendants DOUGLAS JEMAL and NORMAN D. JEMAL;

    iii)    actions in the nature of causing the DC Government to pay invoices submitted for

            payment by Douglas Development, including invoices which were false,

            fraudulent, unsupported, duplicate or excessive;

    iv)    actions in the nature of causing DC Government funds to be used to pay for

            financial obligations of Douglas Development; and

-15-

v)      numerous routine actions involving the exercise of discretion in connection with

the DC Government's relationship with Douglas Development.

(Payment of Bribes to Public Official, in violation of
Title 18, United States Code, Sections 201(b)(1)(A) & (C),
and Aiding and Abetting and Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2)


## COUNT THREE
Mail Fraud (Money and Honest Services)

### I. Introduction

1.      Paragraphs One through Twelve of Count One of this Indictment are realleged and

incorporated by reference as if stated in full.

### II. The Mail Fraud Scheme

2.      From in or about May 2001 and continuing through at least in or about January

2003, in the District of Columbia and elsewhere, defendants DOUGLAS JEMAL, NORMAN D.

JEMAL and BLAKE ESHERICK, as principals, aiders and abettors and coconspirators,

knowingly and willfully devised and intended to devise a scheme and artifice: a) to defraud and

deprive the DC Government and to obtain money by means of false and fraudulent pretenses and

representations; and b) to defraud and deprive the DC Government and the citizens of the District

of Columbia of their right to the honest and faithful services of Michael A. Lorusso as an

employee of OPM, performed free from deceit, favoritism, bias, self-enrichment, self-dealing and

conflict of interest.

### III. Purpose of the Scheme

3.      The purpose of the scheme was for the defendants to provide things of value to

-16-

Michael A. Lorusso and thereby induce him to take actions as a DC Government official to

financially benefit and enrich, directly and indirectly, defendants DOUGLAS JEMAL,

NORMAN D. JEMAL, BLAKE C. ESHERICK and companies under their control.

### IV.   Description of the Scheme

It was part of the scheme and artifice to defraud that:

4.    Paragraphs Fifteen and Sixteen of Count One of this Indictment are re-alleged as

if set forth in full.

### V.  Use of the Mails and Interstate Carrier

5.    On or about the dates set forth below, the defendants, for the purposes of

executing the above-described scheme, did knowingly place in any post office and authorized

depository for mail matter and knowingly caused to be delivered by mail, the following items:

|  | Date<br>On or About | Item mailed | Description of Mailing |
|---|---|---|---|
| 1(a) | June 22, 2001 | American Express statement of NORMAN D. JEMAL, containing Bellagio Hotel charges | American Express statement, addressed to Norman D. Jemal, 702 H Street, NW Washington, D.C. |
| 1(b) | July 17, 2001 | Check drawn on account of Douglas Development in the amount $21,939.37 | check mailed from Washington D.C. to American Express, Newark, NJ |
| 2(a) | September 22, 2001 | American Express statement of NORMAN D. JEMAL, containing charges from Fred Brown Jewelers | American Express statement, addressed to Norman D. Jemal 702 H Street, NW Washington, D.C. |
| 2(b) | October 15, 2001 | Check drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount  of $30,158.01 | check mailed from Washington, D.C. to American Express, Newark, NJ |

-17-

| | Date On or About | Item mailed | Description of Mailing |
|---|---|---|---|
| 3(a) | October 1, 2001 | American Express statement of Douglas Development employee, containing charges from Fred Brown Jewelers in the amount of $70 | American Express statement, addressed to Douglas Development employee, 702 H Street, NW Washington, D.C. |
| 3(b) | October 17, 2001 | Check drawn on account of Douglas Development, payable to American Express, in the amount of $5,061.84 | check mailed from Washington, D.C. to American Express, Newark, NJ |
| 4(a) | November 1, 2001 | American Express statement of Douglas Development employee, containing charges from auto repair business amount of $1,326.92 | American Express statement, addressed to Douglas Development employee, 702 H Street, NW, Washington, D.C |
| 4(b) | November 16, 2001 | Check drawn on account of Douglas Development, payable to American Express, in the amount of $12,558.56 | check mailed from Washington, D.C. to American Express, Newark, NJ |
| 5(a) | February 22, 2002 | American Express statement of NORMAN D. JEMAL, containing charges for hotel reservations in Las Vegas and payments to a travel agency for airline ticket to Florida for "Lorusso/M" | American Express statement, addressed to Norman D. Jemal, 702 H Street, NW Washington, D.C. |
| 5(b) | March 24, 2002 | Checks drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount of $3,014.82, and on account of Douglas Development, in the amount of $521.84 | checks mailed from Washington, D.C. to American Express, Newark, NJ. |

-18-

| | Date On or About | Item mailed | Description of Mailing |
|---|---|---|---|
| 6(a) | February 28, 2002 | American Express statement of NORMAN D. JEMAL, containing charges for American West airline ticket from Baltimore to Las Vegas for "Lorusso/M" | American Express statement addressed to Norman D. Jemal 702 H Street, NW Washington, D.C. |
| 6(b) | March 16, 2002 | Checks drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount of $9,115.61, and on account of Douglas Development, in the amount of $5,019.33 | checks mailed from Washington, D.C. to American Express Chicago, Ill. |
| 7(a) | May 29, 2002 | American Express statement of NORMAN D. JEMAL, containing charges in Las Vegas | American Express statement, addressed to Norman D. Jemal, 702 H Street, NW Washington, D.C. |
| 7(b) | June 14, 2002 | Check drawn on account of NORMAN D. JEMAL, payable to American Express, in the amount of $11,209.85. | checks mailed from Washington, D.C. to American Express, Chicago, Ill |
| 8(a) | June 19, 2002 | American Express statement of Douglas Jemal, containing charges in Las Vegas, including the Boot Barn | American Express statement, addressed to Douglas Jemal, 702 H Street, NW Washington, D.C. |
| 8(b) | June 27, 2002 | Check drawn on account of Douglas Jemal, payable to American Express, in the amount of $14,408.34 | checks mailed from Washington, D.C. to American Express, Newark, NJ |

(Mail Fraud, in violation of Title 18, United States Code, Sections 1343 and 1346, and Aiding and Abetting and Causing and Act to be Done, in violation of Title 18, United States Code, Section 2)

-19-

## **COUNT FOUR**
(Wire Fraud)

### I. Introduction

1.      Paragraphs One, Two and Four of Count One of this Indictment are realleged and incorporated by reference as if stated in full.

2.      Norman D. Jemal was defendant DOUGLAS JEMAL's son and an employee of Douglas Development. Among Norman D. Jemal's responsibilities was that of leasing properties managed by Douglas Development.

3.      Participant #1 was an employee at Douglas Development and a conspirator and aider and abettor in this count. This individual is not charged in this count or named in this Indictment;

4.      Participant #2 was an employee at Douglas Development and a conspirator and an aider and abettor in this count. This individual is not charged in this count or named in this Indictment;

5.      "Cayre Jemal's Gateway, LLC," also known as "Cayre Jemal's Peoples, LLC," was an entity owned 50% by defendant DOUGLAS JEMAL and 50% by an entity controlled by another individual. (This individual will be hereafter referred to as JEMAL's partner.) Cayre Jemal's Gateway owned the building and property at 77 P Street, NE, Washington, D.C. (77 P Street), which it purchased in 1998 for approximately $5 million. In substance, JEMAL and his partner each were 50% owners of 77 P Street.

6.      From 1998 through 2001, Cayre Jemal's Gateway borrowed monies from various lenders to develop 77 P Street, and as of November 2002, Cayre Jemal's Gateway owed approximately $40 million on a construction loan. In addition, Cayre Jemal's Gateway owed

-20-

money to defendant DOUGLAS JEMAL's partner, and defendant DOUGLAS JEMAL

personally owed monies to his partner related to other personal borrowings. As of 2001, JEMAL

owed his partner in excess of $19 million.

      7.     An entity called "MTD Real Estate Services, LLC" (occasionally referred to as

"MTD") was incorporated in the District of Columbia by the attorneys for Douglas Development

in or about August of 2002. The initials MTD correspond to the first initials of sons of defendant

DOUGLAS JEMAL, Participant #1 and defendant BLAKE C. ESHERICK.

      8.     On or about November 19, 2002, defendant DOUGLAS JEMAL, on behalf of the

entities that owned 77 P Street, signed loan documents in relation to a $67 million loan from

Morgan Stanley Mortgage Capital, Inc. (Morgan Stanley). The terms of the loan provided that

the loan proceeds would be disbursed as follows:

- approximately $41 million was to be distributed to pay off a lender
  for an outstanding construction loan;

- approximately $7 million was to be held back by the lender and
  placed in escrow, to be used solely to finance certain construction
  and related costs; this portion of the loan proceeds was referred to
  as a "tenant improvement [TI] construction reserve" (tenant
  improvement reserve);

- approximately $19 million was held back and to be distributed
  when all the tenants – DC Government agencies – had moved into
  77 P Street and were paying rent.

      9.   The loan agreement setting forth the terms related to the tenant improvement reserve

-21-

stated that the tenant improvement reserve funds were to be disbursed "directly to ... third party

vendors and/or contractors that provide invoices, receipts and other similar written documents."

The term "third party vendor and/or contractor" was not defined. The agreement further stated:

"In no event shall Agent disburse the [Tenant Improvement] Construction Deposit directly to

Borrower." The term "borrower" was defined in the loan agreement as "Cayre Jemal's Gateway

Holdings, LLC a District of Columbia limited liability corporation."

10.     By means of correspondence between Douglas Development and defendant

DOUGLAS JEMAL's partner prior to the November 19, 2002 loan settlement, it was agreed that

JEMAL's partner would receive nearly all the $19 million that was held back by the lender – the

third category of funds described in paragraph 7 above – as partial repayment for the loans from

the partner to Cayre Jemal's Gateway and from the partner to defendant DOUGLAS JEMAL.

11.     In or about December 2002, defendant DOUGLAS JEMAL had a need for

approximately $400,000 in order to complete the purchase of a property in the District of

Columbia.

## II.  Wire Fraud Scheme

12.     From on or about November 1, 2002 through on or about January 31, 2005, in the

District of Columbia, defendants DOUGLAS JEMAL,  BLAKE C. ESHERICK, Participant #1

and Participant #2, willfully, unlawfully and knowingly devised and intended to devise a scheme

and artifice to defraud Morgan Stanley and JEMAL's partner, and to obtain money under the

control of Morgan Stanley, by means of false and fraudulent pretenses and representations.

-22-

### III. Purpose of the Fraud Scheme

13.    It was the purposes of the fraud scheme that the defendants and participants would

enrich defendant DOUGLAS JEMAL and others by means of a scheme whereby the defendants

and participants would use false and fraudulent documents to obtain proceeds from the lender out

of the tenant improvement reserve for the personal use of defendant DOUGLAS JEMAL and

others in such a way as to: a) conceal from defendant DOUGLAS JEMAL's partner that

defendants DOUGLAS JEMAL and others had obtained a portion of the loan proceeds for their

personal use and benefit; and b) conceal from Morgan Stanley that defendants DOUGLAS

JEMAL and others had obtained funds from the TI Construction Reserve for their personal use

and benefit.

### IV. Description of the Scheme

It was part of the scheme and artifice to defraud that:

14.    On or about November 18, 2002, Participant #2 signed a memo to JEMAL's

partner, explaining details of the loan, which stated in part:

> Note that $7 million is being held back to fund the remaining
>
> tenant improvement and leasing commissions (all of these are to
>
> outside brokers). [emphasis supplied]

15.    On or about November 21, 2002, two days after settlement, Douglas Development

submitted its first "draw" request to Morgan Stanley for a disbursement of approximately over

$3.5 million from the tenant improvement reserve.  Among the invoices submitted to justify the

draw was an invoice from MTD Real Estates Services (MTD) to Cayre Jemal's Gateway in the

amount of $430,039.08.  Said invoice was false, fraudulent and misleading as follows:

-23-

a.   The invoice stated that the payment was due for representation of the DC Government Department of Transportation, when in fact, MTD had no agency relationship with the DC Government Department of Transportation;

b.   The invoice set forth a commission schedule based on a ten year lease, when in fact the actual lease was for 8 ½ years;

c.   The invoice represented that MTD had an address at Eastern Avenue, NW, Washington, D.C., though the defendants BLAKE ESHERICK, DOUGLAS JEMAL and Participant #1 did not have offices at the Eastern Avenue address;

d.   Even though the invoice represented that MTD had an address at 6856 Eastern Avenue, NW, the phone number on the invoice was a phone number of a fax line at Douglas Development;

e.   The invoice bore little or no relationship to the actual lease terms.

16.   This false, fraudulent and misleading invoice was approved for payment by defendant BLAKE C. ESHERICK.

17.   In response to a request from Morgan Stanley for a "lien release" and wiring information related to MTD, the defendants and Participants took the following acts:

a.   They obtained the signature of an acquaintance of defendant DOUGLAS JEMAL on a "lien release" document, when in truth and in fact, this

-24-

individual had no knowledge of the affairs of MTD and no knowledge of the representations in the document;

b.    On or about December 10, 2002, defendant DOUGLAS JEMAL signed documents opening an account at Adams National Bank (Adams) in the name of MTD; defendant DOUGLAS JEMAL was the only signor on the MTD Adams account and the address on the account was the address of Douglas Development;

c.    The defendants and Participants caused a memorandum to be prepared, purportedly from the acquaintance referenced in paragraph (a), above, to Douglas Development's Controller, setting forth the wiring instructions for the MTD Adams account, when, in truth and in fact, the acquaintance was unaware of this memorandum, did not give permission to use his name in any such memorandum, and was unaware of any such bank account or wiring instructions;

d.    Participant #1 sent by telefax the lien release and the memorandum containing wiring instructions described in the preceding paragraph from the offices of Douglas Development, in Washington, D.C. to the offices of the lender, in New York, NY.

18.    On or about December 12, 2002, the lender authorized the transmission by wire of $430,039.08 from accounts located outside the District of Columbia to the MTD Adams account in the District of Columbia, and said funds were in fact wired.

-25-

19.     On or about December 13, 2003, Participant # 2 and Norman D. Jemal directed

        that $400,000 be wired out of the MTD Adams account to the account of a

        settlement company, where the funds were used by defendant DOUGLAS JEMAL

        and Norman D. Jemal to purchase a property in the District of Columbia.

20.     On December 16, 2003, a $30,000 check was written from the MTD Adams

        account payable to Douglas Development, leaving a small balance in the MTD

        Adams account; thus, nearly the entire $430,039.08 was used for the benefit of

        defendant DOUGLAS JEMAL, and just a few dollars remained in the possession

        or control of MTD.

### V. Use of Wires

For the purpose of executing the above scheme and artifice to defraud, defendants

DOUGLAS JEMAL,  BLAKE C. ESHERICK, and others did cause to be transmitted by wire the

following writing, signs, signals and sounds:

1.      On or about November 18, 2002, a telefax  from the District of Columbia to

        defendant DOUGLAS JEMAL's partner in New York, NY;

2.      December 10, 2002, a telefax from the District of Columbia to Morgan Stanley in

        New York, NY;

3.      On or about December 12, 2002, approximately $430,039.08 by wire from a bank

        outside the District of Columbia to the MTD Adams account in the District of

        Columbia.

(Wire Fraud in violation of Title 18,
United States Code, Section 1343, and Aiding and Abetting and
Causing an Act to be Done, in violation of Title 18, United States Code, Section 2)

-26-

## COUNT FIVE
(Tax Evasion 2001)

1.    Defendant DOUGLAS JEMAL was owner and President of Douglas

Development Corporation (Douglas Development) with offices on 702 H Street, NW,

Washington, D.C.

2.    Douglas Development managed real estate owned by defendant DOUGLAS

JEMAL.

3.    Norman D. Jemal was defendant DOUGLAS JEMAL's son and an employee of

Douglas Development.  He is not charged in this count.  Defendant DOUGLAS JEMAL and

Norman D. Jemal jointly owned a property at 7804 Radnor Road, Bethesda, Maryland (the

"Bethesda house").

4.    Defendant BLAKE C. ESHERICK was an employee of Douglas Development.

5.    During calendar year 2001, defendant BLAKE C. ESHERICK received weekly

salary payments from Douglas Development based on an annual salary of $70,200 (less a

contribution to his "401K" plan); these salary payments were paid from Douglas Development's

payroll account and handled by a company which provided payroll services to Douglas

Development.

### II.  Tax Evasion

6.    From on or about January 1, 2001 through March 23, 2003, in the District of

Columbia and elsewhere, defendants DOUGLAS JEMAL, BLAKE C. ESHERICK, as

principals, aiders and abettors and coconspirators, did willfully attempt to evade and defeat the

payment of a large part of the income taxes due and owing by defendant BLAKE C. ESHERICK

to the United States of America for the calendar year 2001, by:

-27-

A.    concealing and attempting to conceal from all proper officers of the United States

of America the true and correct income of defendant BLAKE C. ESHERICK for

calendar year 2001 by the following acts:

1.    causing BLAKE C. ESHERICK to receive the following as part of his

compensation in 2001:

I.    payments of $27,100 by check directly from Douglas Development

to BLAKE C. ESHERICK's ex-wife; said checks were prepared by

Douglas Development personnel and signed by defendant

DOUGLAS JEMAL;

ii.    payments in excess of approximately $20,000 by checks directly

from Douglas Development to BLAKE C. ESHERICK; said

checks were prepared by Douglas Development personnel and

signed by defendant DOUGLAS JEMAL;

iii.    rent-free housing, to include utilities at the Bethesda house, of a

fair market rental value of approximately of $2,000 per month; the

checks for the mortgage payment for the house were prepared by

Douglas Development personnel and signed by Norman D. Jemal;

iv.    payments in excess of $10,000 in the form of checks directly from

Douglas Development as payments for an automobile personally

owned by and used by BLAKE C. ESHERICK; said checks were

prepared by Douglas Development personnel and signed by

defendant DOUGLAS JEMAL;

-28-

2.    on or about a date in 2002, submitting to the Internal Revenue Service a Form W-2 reporting defendant BLAKE C. ESHERICK's "wages and earning" as $66,000, that is, solely the amount paid to ESHERICK through *Douglas Development's* standard payroll process, based on a salary of approximately $70,200 less a "401K" contribution, and not including the aforesaid items of compensation;

3.    by causing the above income items to be recorded in the books and records of Douglas Development, or, in the case of the Bethesda house, handled through the personal bank account of Norman Jemal, so as to conceal defendant BLAKE C. ESHERICK's true compensation;

B.    in or about various dates in 2001, causing Douglas Development to withhold and pay to the Internal Revenue Service taxes of $2,842 from defendant BLAKE C. ESHERICK's salary, that is, the amount withheld solely on the $66,000 income that ESHERICK was paid through Douglas Development's standard payroll process with no withholding on the aforesaid income items;

C.    on or about March 23, 2003, causing to be prepared, signed, filed and mailed a false and fraudulent federal income tax return, Form 1040, for calendar year 2001, for defendant BLAKE C. ESHERICK, said return being false and fraudulent in that:

1.    the return represented, at line 22, that BLAKE C. ESHERICK's total income for calendar year 2001 was $70,135, when, in truth and in fact,

-29-

BLAKE C. ESHERICK's total income for calendar year 2001 was substantially in excess of that amount;

2.    the return represented at line 36, that BLAKE C. ESHERICK had itemized deductions of $47,721, as set forth in Schedule A, consisting in part of home mortgage interest and points of $26,996, as reported on Schedule A, line 10, and real estate taxes of $3,956, as reported on Schedule A, line 6, when in truth and in fact, BLAKE C. ESHERICK did not have itemized deductions of $47,721, did not pay mortgage interest of $26,996 and did not pay real estate taxes of $3,956 in calendar year 2001;

3.    the return represented, at line 58, that BLAKE C. ESHERICK's total income ax due and owing for calendar year 2001 was $1,394 when in truth in truth and in fact, BLAKE C. ESHERICK's income tax due was substantially in excess of that amount.

(Attempt to Evade and Defeat Taxes and Payment Thereof, in violation of Title 26,
United States Code, Section 7201,
and Aiding and Abetting and
Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2) )

## COUNT SIX
(Tax Evasion 2002)

1.    Paragraphs One through Four of Count Six are incorporated by reference as if set out in full.

2.    During calendar year 2002, defendant BLAKE C. ESHERICK received weekly salary payments from Douglas Development based on an annual salary of $70,200 (less a "401K"

-30-

contribution); these salary payments were paid from Douglas Development's payroll account and

handled by a company that provided payroll services for Douglas Development.

## II. Tax Evasion

3.     From on or about January 1, 2002 through March 23, 2003, in the District of

Columbia and elsewhere, defendants BLAKE C. ESHERICK, DOUGLAS JEMAL, as

principals, aiders and abettors and coconspirators, did willfully attempt to evade and defeat the

payment of a large part of the income taxes due and owing by BLAKE C. ESHERICK to the

United States of America for the calendar year 2002 by:

A.     concealing and attempting to conceal from all proper officers of the United States

of America the true and correct income of defendant BLAKE C. ESHERICK for

calendar year 2002 by the following acts:

1.     causing defendant BLAKE C. ESHERICK to receive compensation in

2002 in forms not reported to the Internal Revenue Service, including:

I.     payments of $26,950 directly from Douglas Development to

BLAKE C. ESHERICK's ex-wife; said checks were prepared by

Douglas Development personnel and signed by defendant

DOUGLAS JEMAL;

ii.     payments of approximately in excess of $20,000 in the form of

checks directly from Douglas Development to BLAKE C.

ESHERICK; said checks were prepared by Douglas Development

personnel and signed by defendant DOUGLAS JEMAL;

iii.     payments of $3000 directly to a credit card account of BLAKE C.

-31-

ESHERICK.

iv.    rent-free housing, to include utilities, in the Bethesda house, of a

fair rental value of approximately of $2,000 per month; checks for

the mortgage payment for the house were prepared by Douglas

Development personnel and signed by Norman D. Jemal;

v.     payments in excess of $23,000 in the form of checks directly from

Douglas Development as payments for automobiles personally

owned by BLAKE C. ESHERICK; said checks were prepared by

Douglas Development personnel and signed by defendant

DOUGLAS JEMAL;

2.    on or about a date in 2003, submitting to the Internal Revenue Service a

Form W-2 reporting defendant BLAKE C. ESHERICK's "wages and

earning" as $66,000, that is, solely the amount paid to ESHERICK through

Douglas Development's standard payroll process based on a salary of

$70,200 less a 401K contribution, and not including the aforesaid items of

compensation;

3.    by causing the above income items to be recorded in the books and records

of Douglas Development, in the case of the Bethesda house, handled

through the personal bank account of Norman Jemal, so as to conceal

BLAKE C. ESHERICK's true compensation;

-32-

B.     in or about various dates in 2002, causing Douglas Development to pay

withholding to the Internal Revenue Service of a total of $3,295, that is, the

amount withheld solely on the $66,000 paid through Douglas Development's

standard payroll process, with no withholding on the aforesaid income items; and,

C.     causing to be prepared, signed, filed and mailed a false and fraudulent federal

income tax return, Form 1040, for calendar year 2002, for defendant BLAKE C.

ESHERICK, said return being false and fraudulent in that:

1.     the return represented, at line 22, that BLAKE C. ESHERICK's

total income for calendar year 2002 was $66,000, when, in truth

and in fact, BLAKE C. ESHERICK's income for calendar year

2002 was substantially in excess of that amount;

2.     the return represented at line 38 that BLAKE C. ESHERICK had itemized

deductions of $59,899, as set forth in Schedule A, consisting in part of

home mortgage interest and points of $26,078, as reported on Schedule A,

line 10, and real estate taxes of $4,389, as reported on Schedule A, Line 6,

when in truth and in fact, BLAKE C. ESHERICK did not have itemized

deductions of $59,899, did not pay mortgage interest of $26,078 and did

not pay real estate taxes of $4,389 in calendar year 2002;

3.     the return represented, at line 55, that the BLAKE C. ESHERICK's

total tax due for calendar year 2002 was $0 when in truth in truth

-33-

and in fact, BLAKE C. ESHERICK's income tax due was

substantially in excess of that amount.

(Attempt to Evade and Defeat Taxes and Payment Thereof, in violation of Title 26,
United States Code, Section 7201,
and Aiding and Abetting and
Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2)

**COUNT SEVEN**
(Tax Evasion 2003)

Introduction

1.      Paragraphs One through Four of Count Six are incorporated by reference as if set

out in full.

2.      During calendar year 2003, defendant BLAKE C. ESHERICK received weekly

salary payments based on an annual salary of $70,200 less a "401K" contribution; these salary

payments were paid from Douglas Development's payroll account and handled by a company

which provided payroll services.

II.  Tax Evasion

3.      During the calendar year 2003, defendant BLAKE C. ESHERICK had and

received gross income of approximately in excess of $150,000, resulting in taxable income in

excess of approximately over $140,000; upon said taxable income there was owing to the United

States of America an income tax in excess of approximately $40,000; well knowing and

believing the foregoing facts, defendants BLAKE C. ESHERICK, DOUGLAS JEMAL, as

principals and aiders and abettors and coconspirators, did willfully attempt to evade and defeat a

-34-

large part of the income tax due and owing by him to the United States of America and payment

thereof for said calendar year by:

     A.    on or before April 15, 2004, in the District of Columbia, failing to make an

          income tax return, as required by law, to any proper officer of the Internal

          Revenue Service;

     B.    on or before April 15, 2004, failing to pay to the Internal Revenue Service

          said income tax;

     C.    concealing and attempting to conceal from all proper officers of the United

          States of America the true and correct income of defendant BLAKE C.

          ESHERICK for calendar year 2003 by the following acts:

          1.    causing defendant BLAKE C. ESHERICK to receive compensation in

               2003 in forms not reported to the Internal Revenue Service, including:

               I.    payments of $22,536 directly from Douglas Development to

                    BLAKE C. ESHERICK's ex-wife; each of said checks was

                    prepared by Douglas Development personnel and signed by

                    defendant DOUGLAS JEMAL;

               ii.    payments of approximately in excess of $45,500 in the form of

                    checks directly from Douglas Development to BLAKE C.

                    ESHERICK; each of said was checks prepared by Douglas

                    Development personnel and signed by defendant DOUGLAS

                    JEMAL;

-35-

iii.    a payment in excess of $5000 directly to American Express as payment for expenses incurred personally by BLAKE C. ESHERICK;

iv.    from in or about January 2003 through approximately July 2003, rent-free housing, to include utilities, in the Bethesda house owned by defendant DOUGLAS JEMAL and Norman D. Jemal, of a fair rental value of approximately of $2,000 per month; checks for the mortgage payment for the house were prepared by Douglas Development personnel and signed by Norman D. Jemal;

v.    from in or about August 2003 through December 2003, rent-free housing, to include utilities, in a Washington, D.C. house purchased by defendant DOUGLAS JEMAL for $825,000 in June 2003 at defendant BLAKE C. ESHERICK's request; said property had a fair-market value rental value of $3,000 per month and checks for the mortgage payment for the house were prepared by Douglas Development personnel and signed by defendant DOUGLAS JEMAL;

vi.    payments in excess of $3,000 in the form of checks directly from Douglas Development as payments for an automobile personally owned by defendant BLAKE C. ESHERICK; each of said checks was prepared by Douglas Development personnel and signed by defendant DOUGLAS JEMAL;

-36-

2.      by causing the above income items to be recorded in the books and

        records of Douglas Development or, in the case of the Bethesda house

        and the 6001 Nevada Avenue house, handled through the personal bank

        accounts of defendant DOUGLAS JEMAL and Norman Jemal, so as to

        conceal defendant BLAKE C. ESHERICK's true compensation;

3.      in or about Spring 2004, submitting to the Internal Revenue Service a

        Form W-2 reporting defendant BLAKE C. ESHERICK's "wages and

        earning" as $66,000, that is, solely the amount paid to ESHERICK

        through Douglas Development's standard payroll process and not

        including the aforesaid items of compensation;

-37-

D.      in or about various dates in 2003, causing Douglas Development to pay

withholding to the Internal Revenue Service of a total of $1,727, that is, the

amount withheld solely on the $66,000 paid through Douglas Development's

standard payroll process, with no withholding on the aforesaid income items.

(Attempt to Evade and Defeat Taxes and Payment Thereof, in violation of Title 26,
United States Code, Section 7201,
and Aiding and Abetting and
Causing an Act to be Done, in violation of
Title 18, United States Code, Section 2)


A TRUE BILL:


FOREPERSON



ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA