## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Crim. No. 05-359-01, -2, -3 (RMU)** |
| | : | |
| **DOUGLAS JEMAL, ET AL.** | : | |

## DECLARATION OF CHRISTOPHER B. MEAD

I declare under penalty of perjury the following:

1.      I am over 18 years of age and competent to testify about the matters in this Declaration from personal knowledge.

2.      I am one of the attorneys representing Douglas Jemal in this case, and attended all trial proceedings.

3.      On the morning of October 18, 2006, just before reading final instructions to the jury, the Court provided counsel with a written copy of the instructions. The Court had previously issued rulings on various contested instructions requested by the parties, and the Court's clerks had orally discussed parts of the instructions with counsel on October 17, but counsel had never previously received a written draft of the final instructions. I followed along in the written instructions as the Court read them to the jury.

4.      The Court's instructions on Count Four contained the following two paragraphs in response to the Government's request for a "claim of right" instruction:

>        A claim of right to money or property obtained or sought to be obtained by fraud is not a defense to mail fraud or wire fraud; that is, a defendant may not resort to fraud to collect a preexisting debt. Thus, even if a person or entity owes a defendant money, a defendant is not allowed to obtain that money in a separate transaction by the commission of acts that constitute mail fraud or wire fraud. And, if he does so, he's guilty of those offenses regardless of any claim he had to the preexisting debt. In other words, if a defendant believes that he is owed

money from a company, he's not allowed to submit a fraudulent invoice to that company in an unconnected transaction in order to collect preexisting debt. And, good faith is always a complete defense.

There is another consideration to bear in mind in deciding whether or not a defendant acted in good faith. You are instructed that if the defendant participated in the scheme to defraud, then a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that the defendant acted in good faith. If a defendant participated in the scheme for the purpose of causing some financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme would ultimately make a profit for the investors, will excuse fraudulent actions or false representations by him.

Tr. 4324-25.

5.     I was surprised by the second paragraph of the Court's claim of right instruction. I have gone back and checked the Government's requested jury instructions, and confirmed that the Government never requested the second paragraph.

6.     I had briefed an objection to any claim of right instruction the night before, and I recognized sentences from the second paragraph as being identical to instructions that the Second Circuit had ruled constituted reversible error in the case of United States v. Rossomando, 144 F.3d 197 (2d Cir. 1998). Because I did not believe that either party had requested the second paragraph, and because the second paragraph had not been included in the Court's mail fraud instructions on Count Three, I assumed that the second paragraph was a word processing mistake.

7.     After the Court excused the jury for lunch, and after my co-counsel had noted objections to the instructions (including an objection to any claim of right instruction), I asked to address the Court. I pointed out that the second paragraph of the claim of right instruction on Count Four contained language that the Second Circuit had found confusing in Rossomando, and

argued that the Court should give a curative instruction. The Court directed counsel to attempt to reach agreement on a curative instruction during the lunch hour, and left the bench.

8.      The Court's clerks approached Government counsel and me to discuss the second paragraph. While I cannot remember precise words, I remember clearly that I began by arguing that the Court had to tell the jury that the second paragraph was incorrect. I remember that Government counsel objected to telling the jury that the instruction was incorrect as unduly emphasizing the issue, and that the Court's clerks indicated that they doubted the Court would tell the jury that any previously-read instructions were incorrect. I remember the Court's clerks and Government counsel saying that correcting the written instructions that went back to the jury during their deliberations would be sufficient. I remember saying during this discussion that I said that I believed that Government counsel did not want language in the instructions that the Second Circuit had found to be reversible error, and that Mr. Dubester neither disagreed with me nor argued that the second paragraph should remain in the written instructions that went back to the jury. While I cannot remember the precise words spoken, I understood clearly from our conversation that the Court's clerks would remove the second paragraph from the claim of right instruction in the written version of the instructions that went back to the jury, and that the Court would consider adding an agreed curative instruction.

9.      Government counsel and the Court's clerks and I then attempted to reach agreement on a curative instruction. The night before we had filed Defendants' Objection To Government's Claim Of Right Jury Instruction In Light Of Evidence At Trial, Or, In The Alternative, Motion To Amend Proposed Instructions. In that pleading, we had requested the following instruction: "However, if a defendant knowingly submits an inaccurate or misleading

invoice honestly believing that the inaccuracies are not material and that he would be entitled to

receive the money even if the invoice was accurate, he is not guilty of wire or mail fraud."

Government counsel agreed to the concept of a curative instruction, but disagreed with the text of

the previously-proposed instruction. Together we hand-wrote an agreed proposed instruction

along the lines of that concept. The Court's clerks took the hand-written instruction back to

chambers, and I left the courtroom for lunch.

       10.     The Court then requested to see counsel in chambers about the proposed agreed

curative instruction. In chambers, with the Court's clerks in attendance, the Court told

Government counsel that he believed the proposed agreed curative instruction conflicted with the

Government's expressed views on the claim of right issue. I then expressed the view that the

claim of right cases dealt with fraudulent attempts to collect pre-existing debts, and that the

Court's first paragraph in the claim of right instructions had captured that concept. However, I

argued that we needed to cure the erroneous impression created by the second part of the claim of

right instruction that a defendant could be convicted of mail fraud for knowingly submitting an

inaccurate invoice even if the defendant believed he was entitled to the funds sought in that

transaction. I used the example of a lawyer working on two matters for a corporate client, with

instructions to bill the matters separately. I presented the hypothetical of the lawyer seeing that

the amounts billed were accurate, but also noticing that his secretary had typed the wrong matter

on the bill. I asked what would happen if the lawyer did not want to take the time to correct the

typo, and sent the bill to the client. In that circumstance, the lawyer would have knowingly

submitted a false invoice to the client, with the intention of causing the client to part with money.

I argued that it could not be a crime if the lawyer believed that the bill was otherwise accurate,

and he was entitled to the money. The distinction, I argued, was that if the client had wrongly failed to pay a previous bill, the lawyer could not create a fictitious bill to collect the unrelated, pre-existing debt.

11.    While Government counsel did not necessarily agree with my argument, he did not object to a curative instruction. In consultation with counsel, the Court then edited the agreed proposed instruction to make it clearer. The Court and counsel agreed on the following curative instruction: "However, if a defendant knowingly submits an inaccurate or misleading document, honestly believing that the inaccuracies are not material, and that he did not intend to defraud, as I have used that term, he is not guilty of mail or wire fraud."

12.    I do not recall any discussion in chambers with the Court about deleting the second paragraph of the Court's previously-read claim of right instruction. I had an understanding from my previous discussion with the Court's clerks that the second paragraph would be deleted from the written instructions that went back to the jury. The context of our conversation in chambers was that I was arguing that the Court's instructions were confusing and would give the jury the wrong impression of the law about submitting a false invoice; if the instruction was correct, there would have been no need to discuss a curative instruction. I had vehemently objected to the language in the second paragraph as an incorrect statement of law that was reversible error. I understood that the agreed curative instruction would be a replacement and correction for the second paragraph of the claim of right instruction, not an addition to it. I never agreed to leave the second paragraph of the claim of right instruction in the written instructions that went to the jury.

13.    After the discussion in chambers, the Court re-instructed the jury about claim of

right.  Consistent with my understanding that the second paragraph of the claim of right

instruction would be deleted, the Court did not read the second paragraph.

     I declare under penalty of perjury that the foregoing is true and correct. Executed on

December 4, 2006.



Christopher B. Mead