HONORABLE RICARDO M. URBINA, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

UNITED STATES OF AMERICA  : Docket No.: <u>CR-05-359-01</u>

APR 1 7 2007

vs.  : SSN:

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

JEMAL, Douglas  : Disclosure Date: <u>January 16, 2007</u>

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
(X) There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____      1/30/07
Prosecuting Attorney                                Date

### For the Defendant

(CHECK APPROPRIATE BOX)
( ) There are no material/factual inaccuracies therein.
( ) There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_____  _____       _____  _____
Defendant                     Date                 Defense Counsel                Date

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>January 30, 2007</u>, to U.S. Probation Officer <u>Renee Moses-Gregory</u>, telephone number <u>(202) 565-1348</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

**FOR THE COURT**

By: Gennine A. Hagar, Acting Chief
United States Probation Officer



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

January 30, 2007

Renee L. Moses-Gregory
United States Probation Department
United States District Court for the District of Columbia
3rd and Constitution Avenue, N.W.
Washington, D.C. 20001

<u>Comments on Pre-Sentence Report for Douglas Jemal</u>

Dear Ms. Moses-Gregory:

The purpose of this letter is to provide the following comments on the Pre-Sentence Report.

¶ 22. Mr. Brownell's role. Mr. Brownell provided false and misleading information to Mr. Cayre, and was fully involved in the scheme. He was responsible for dealing with Morgan Stanley on the loan, was involved in dealing with Mr. Cayre on the Jemal-Cayre loans, handled the loan for 111 Massachusetts Avenue (and would have known of a need for another $400,000 at settlement) and was responsible for transferring $400,000 from the MTD account at Adams Bank to the settlement attorney.

¶ 28. Sophisticated Means. The "sophisticated means" adjustment under §2B1.1(b)(8)(C) is required in this case. The defendants committed the following acts to accomplish the fraud and avoid detection:

- creation of false and misleading memo to Cayre informing him of commissions from the TI to "outside brokers;"

- careful creation of false MTD letterhead, crafted to suggest that MTD was a legitimate firm unrelated to Douglas Development or Douglas Jemal, so as to avoid questions or scrutiny from Morgan Stanley or Cayre; this letterhead went through several drafts to accomplish maximum deceptive effect;

- creation of false invoice purportedly from MTD to the partnership entity, purportedly for representing the DC Government in securing space at 77 P Street; this document was utterly false and was "approved" by Esherick for payment;

- opening of MTD bank account at Adams Bank;

- obtaining Rowe's signature on the lien release;

- preparation of memo, purportedly from Rowe to Medding, informing Medding of the Adams Bank MTD account number (when, in truth, Rowe had no idea of the existence of this account);

- preparation of subsequent lulling letter from Brownell to Cayre, informing Cayre that: "We have accelerated this [buildout] process as if we were the ones receiving all of the buildout funds, when we in fact realize that all of it is going to you;"

- wiring funds directly from the MTD account to the account of a settlement attorney (within 24 hours), so as to further conceal the transaction and the disposition of the funds so acquired.

This falls squarely within the contemplation of the "sophisticated means" enhancement. As the Application Notes to the Guidelines provide:

> "'[S]ophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. * * * Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means."

§2B1.1, App. Note 6(B) (2002 ed.). Though the examples of the Application Note are illustrative, the example provided – namely, the use of a sham or shell corporation to accomplish the crime and avoid detection – applies to the fraud in this case. As one District Court has stated:

> "The use of offshore bank accounts implies that the perpetrator has used a means that will protect his or her identity. Similarly,

> 'transactions through corporate shells' implies conducting business through corporate entities <u>designed to shield the identity of the ultimate controlling person(s) or decision maker(s)</u>. In both instances, the examples describe 'means' that are 'sophisticated' at <u>protecting against the discovery of the scheme or the identification of the person responsible for or benefitting from the fraudulent scheme</u>.

United States v. Lewis, 907 F. Supp 683, 686 (S.D.N.Y 1995) (emphasis supplied). In this case, the defendants used the shell corporate entity precisely "to shield the identity of the ultimate controlling person(s) or decision maker(s)." and to "protect[] against the discovery of the scheme or the identification of the person responsible for or benefitting from the fraudulent scheme."

Moreover, the "sophisticated means" enhancement would apply when the overall fraud scheme is intricate, even if no particular step is particularly elaborate. See, e.g., United States v. Halloran, 415 F.3d 940 (8th Cir. 2006) ("While certain aspects of Halloran's scheme were not especially complex or especially intricate, * * * his total scheme was undoubtably sophisticated. * * * Halloran's scheme did not involve a single fraudulent act, but a complex series of fraudulent transactions. To accomplish his multi-layered plot, Halloran required the use of a corporate entity, numerous fraudulent documents and forged notary stamps. His elaborate scheme also required him to manipulate official property records by recording fictitious transfers of property and to exploit numerous individuals by forging their signatures on various fraudulent documents." (citations omitted)); United States v. Jackson, 346 F.3d 22, 25 (2nd Cir. 2003) ("[E]ven if each step in the scheme was not elaborate, the total scheme was sophisticated in the way all the steps were linked together so that Jackson could perceive and exploit different vulnerabilities in different systems in a coordinated way."). Similarly, the defendants in this case used a false corporate entity, numerous fraudulent documents, and obtained the signature of Michael Rowe – essentially a forgery in that it represented that Rowe was a principal in MTD – precisely to "exploit different vulnerabilities" of Morgan Stanley and Joseph Cayre "in a coordinated way." The sophistication of the defendants' conduct thus warrants the two level adjustment under §2B1.1(8)(C).

¶ 31.    Vulnerable Victim.    The government urges a two level increase for "vulnerable victim." In this case, Esherick (and Jemal) targeted Michael Rowe to facilitate the crime of conviction. They had Michael Rowe sign the lien release and used his name on a memo purportedly providing Morgan Stanley with wiring instructions. These documents were required by Morgan Stanley to release the funds it controlled in escrow.[1]

---

[1]    Rowe had no knowledge of the significance of the lien release, the existence or use of the bank account, the wiring information, the wiring information memorandum, the purposes to which those documents were to be put, the "operations" of MTD, the funds collected by MTD, or any other aspects of MTD. Tr. 1298-1301.

The Court and jury observed Michael Rowe testify. His demeanor was of a very simple, gullible, trusting individual, and, with due respect to Mr. Rowe, it was apparent there were aspects of his personality that made it obvious to the defendants that he was an easy target of exploitation and that they could use him as an innocent dupe. Thus, the defendants in a cynical fashion implicated Rowe as a participant in a fraud scheme, causing deep and obvious stress and anxiety. It is noteworthy that even the defense counsel described Mr. Rowe as having been "hit one too many times" – implying he was an object of amusement.

> Mr. Rowe, Mike Rowe. Mike Rowe, the victim. I wrote it down to pull out the transcript because I didn't want to get this wrong. It's the prosecutor's view that they, meaning Douglas Development, specifically meaning Douglas, took advantage of that poor man. And I think this is one we should spend a couple minutes on, because I think this sort of really catches the different viewpoints here.
>
> Who is Rowe. We laughed on occasion when Rowe was here. He said some funny things. Maybe he was hit one too many times when he was playing with the Colts or doing kickboxing, maybe not.

Trial Tr., October 19, 2006 at 4498-99.

The "vulnerable victim" is not required to be the named victim of the offense of conviction.[2]

---

[2] See, e.g., United States v. Bachynsky, 949 F.2d 722, 735 (5th Cir. 1991), cert. denied, 506 U.S. 850 (1992) (in prosecution of physician for submitting false diagnoses to third parties to obtain reimbursement, unknowing patients were vulnerable victims even though insurance companies and the Department of Defense were defrauded); United States v. Echevarria, 33 F.3d 175, 180 (2nd Cir. 1994) (in prosecution of defendant for falsely representing self as doctor and obtaining Medicare reimbursements, exploited patients were vulnerable victims even through economic impact was on the government (following Bachynsky)); United States v. Yount, 960 F.2d 955, 957 (11th Cir. 1992) ("vulnerable victim" enhancement applies in prosecution of bank officer for money laundering of funds stolen from elderly bank account holders even though they were not "victims" of the offense of conviction); United States v. Haggard, 41 F.3d 1320, 1325 (9th Cir. 1994) (in prosecution of prisoner for false statements for claiming to know where a body was buried, family members were vulnerable victims even though the harm caused to them was not an element of the any of the crimes of conviction: ("[C]ourts may look beyond the four corners of the charge to the defendant's underlying conduct in determining whether someone is a 'vulnerable victim' under section 3A1.1."); United States v. Cruz, 106 F.3d 1134, 1136 (3rd Cir. 1997) (vulnerable victim enhancement applied with respect to twelve year old passenger in carjacking: "except for the Sixth Circuit, all of the

¶¶ 60, et seq.   Financial Circumstances.  It does not appear that the Pre-Sentence Report has taken into account the equity of Mr. Jemal in all his solely owned corporations (the "LLC's").  The government shall attempt to locate personal financial statements of Mr. Jemal.  It is the government counsel's recollection these represent a net worth far in excess of the amount set forth in the Pre-Sentence Report.  (Notwithstanding Jemal's net worth, the evidence at trial conclusively established the profound day to day liquidity problems he faced during the time frame surrounding the crime of conviction.)

¶ 88.  Grounds for an Upward Departure.  The Court heard evidence that Esherick, as an agent for Jemal, prepared several false documents that defrauded the D.C. Government, that Esherick and Jemal provided a city official things of value (all of which were paid for directly or indirectly by Jemal), and that as part of the wire fraud scheme Jemal was a direct participation in the victimization of Michael Rowe (if the Court were to decline the "vulnerable victim" enhancement.).

These circumstances would both be relevant in considering an upward departure, and in deciding whether the Court should exercise its discretion in declining to depart downward.

¶ 88.  Grounds for a Downward Departure.  The government respectfully submits that there are no reasonable or adequate grounds for a downward departure.  The defendants' theories that their patently fraudulent MTD invoice threatened no risk of harm, when boiled down, reduce to little more than "we have too many resources to be held accountable" for a fraud for which any one else, of fewer means, would be sentenced to jail.  The defendants' claims that they intended no loss and thus had no criminal intent were presented to and soundly rejected by the jury, which found, beyond a reasonable doubt, that the defendants did, in fact, have criminal intent.

I welcome the opportunity to address any questions you may have.  I can be reached at (202) 514-7986.

Sincerely,

Mark H. Dubester
Assistant United States Attorney

---

circuits that have considered this issue have held that the vulnerable victim does not have to be the victim of the offense of conviction.")

-5-